# EXHIBIT 3

George A. Zelcs (*pro hac vice*)
   gzelcs@koreintillery.com
Robert E. Litan (*pro hac vice*)
   rlitan@koreintillery.com
Randall P. Ewing, Jr. (*pro hac vice*)
   rewing@koreintillery.com
Jonathon D. Byrer (*pro hac vice*)
   jbyrer@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
   stillery@koreintillery.com
Jamie Boyer (*pro hac vice*)
   jboyer@koreintillery.com
Michael E. Klenov, CA Bar #277028
   mklenov@koreintillery.com
Carol O'Keefe (*pro hac vice*)
   cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Karma M. Giulianelli, CA Bar #184175
   karma.giulianelli@bartlitbeck.com
Glen E. Summers, CA Bar # 176402
   glen.summers@bartlitbeck.com
Jameson R. Jones (*pro hac vice*)
   Jameson.jones@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewetta St. Suite 1200,
Denver, Colorado 80202
Telephone: (303) 592-3100
Facsimile:  (303) 592-3140
*Attorneys for Plaintiffs and the Proposed*
*Class in Carr v. Google, LLC, et al.*

Peggy J. Wedgworth (*pro hac vice*)
   pwedgworth@milberg.com
Robert A. Wallner (*pro hac vice*)
   rwallner@milberg.com
Elizabeth McKenna (*pro hac vice*)
   emckenna@milberg.com
Blake Yagman (*pro hac vice*)
   byagman@milberg.com
Michael Acciavatti (*pro hac vice*)
   macciavatti@milberg.com
**MILBERG PHILLIPS GROSSMAN LLP**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Telephone: 212-594-5300
Facsimile: 212-868-1229
*Counsel for Plaintiffs and the Proposed Class*
*in Bentley v. Google LLC, et al.*


Elizabeth C. Pritzker, CA Bar#146267
   ecp@pritzkerlevine.com
Bethany Caracuzzo, CA Bar#190687
   bc@pritzkerlevine.com
Caroline Corbitt, CA Bar #305492
   ccc@pritzkerlevine.com
**PRITZKER LEVINE, LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
Telephone: (415) 805-8532
Facsimile: (415) 366-6110
*Counsel for Plaintiffs and the Proposed Class*
*in Carroll v. Google, LLC, et al.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Play Consumer Antitrust Litigation* | |
| | CASE NO. 3:20-CV-05761 JD |
| *Related Actions:* *Epic Games, Inc. v. Google, LLC*; 3:20-CV-05671-JD *In re Google Play Developer Antitrust Litigation*, 3:20-CV-5792-JD | **DECLARATION OF KARMA M. GIULIANELLI IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL** |
| | DATE:                December 31, 2020 TIME:                 10 a.m. COURTROOM:    Via Zoom JUDGE:              Hon. Judge Donato |

I, Karma M. Giulianelli, declare as follows:

1.    I am a partner in the law firm of Bartlit Beck LLP and am one of the attorneys representing Plaintiffs in this action. I am a member of the California bar and am admitted to practice in this Court.

2.    I submit this declaration in support of Plaintiffs Motion to Appoint Interim Class Counsel. The contents of this declaration are based on my personal knowledge and on information and documents provided to me by Bartlit Beck LLP. If called as a witness, I could and would competently testify thereto.

3.    Attached as Exhibit A is a true and correct copy of the Benchmark Litigation article titled Benchmark US 2020 awards – New York winners announced!

4.    Attached as Exhibit B is a true and correct copy of The American Lawyer article titled The American Lawyer Announces Litigation Department of the Year Finalists.

5.    Attached as Exhibit C is a true and correct copy of the BTI Consulting article titled 37 Law Firms Most Feared in Litigation.

6.    Attached as Exhibit D is a true and correct copy of The American Lawyer article titled At 25, Bartlit Beck Is Still on Trial. Is Its Model Winning?

1    7.    Attached as Exhibit E is a list of Bartlit Beck's class action experience.

2    8.    Attached as Exhibit F is a true and correct copy of the Legal 500, Firm Profile,

3    Bartlit Beck.

4    9.    Attached as Exhibit G is a true and correct copy of the American Lawyer article

5    titled 2nd Circuit Wipes out $15M in Damages Awarded in Airline-Booking Antitrust Case.

6    10.    Attached as Exhibit H is a true and correct copy of the Law Week Colorado article

7    titled Court Resolves Family Business Feud.

8    11.    Attached as Exhibit I is a true and correct copy of the Denver Post article titled

9    Denver Oil Tycoon Jack Grynberg Not Entitled to $400 million in Back Pay in Family Feud,

10   Judge Rules;

11   12.    Attached as Exhibit J is a true and correct copy of the Benchmark Litigation article

12   titled The Definitive Guide to America's Leading Litigation Firms & Attorneys.

13   13.    Attached as Exhibit K is a true and correct copy of the Law 360 article titled Trial

14   Pros: Bartlit Beck's Chris Lind.

15   14.    Attached as Exhibit L is a true and correct copy of the Chicago Lawyer article titled

16   The Next Generation, Rising Stars of the Trial Bar.

17        Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

18   and correct and that I executed this declaration on November 23, 2020 in Denver, Colorado.

19

20                                      /s/ Karma M. Giulianelli
                                        Karma M. Giulianelli

21

22

23

24

25

26

27

28

# EXHIBIT A

# Benchmark US 2020 awards - New York winners announced!

27 February 2020 | by Michael Rafalowich

Tags: Debevoise & Plimpton   Wiggin and Dana   Polsinelli   Ulmer & Berne   Kirkland & Ellis   Blackwell Burke   Simpson Thacher & Bartlett   Gass Weber Mullins   Sills Cummis & Gross   United States (National)   Alabama   Arkansas   Connecticut   District of Columbia   Delaware   Florida   Iowa   Illinois   Indiana   Kansas   Kentucky   Louisiana   Massachusetts   Maryland   Maine   Michigan   Minnesota   Missouri   Mississippi   North Carolina   North Dakota   New Hampshire   New Jersey   New York   Ohio   Pennsylvania   Rhode Island   South Carolina   Tennessee   Texas   Virginia   Vermont   Wisconsin   West Virginia   Georgia (State)   Dispute resolution

On February 27th **Benchmark Litigation** hosted the first part of it ninth annual US awards in which it recognized the country's most distinguished litigators and their firms for their work over the past twelve months.

This year for the first time the brand is having two seperate ceremonies, one on the East coast at the **Pierre, New York** on _February 27_ and one on the West coast at **The St Regis, San Francisco** on _March 5_.

In New York the sold-out audience saw Katherine Forrest of Cravath Swaine & Moore and Ted Wells of Paul Weiss inducted into the _Benchmark Litigation Hall of Fame_. Wells also took the coveted award of "_Trial Lawyer of the Year._"

Another highlight of the evening was Simpson Thacher's Jonathan Youngwood collecting the _Pro Bono award_ for his firm for its work in the Brown v. Madison County case concerning racially motivated policing.

Firms from over half of the states plus DC were represented in the room. More firms will be attending the inaugural West Coast ceremony on March 14. Please click the link below to see the shortlist for that ceremony or email **rebecca.synnott@euromoneyny.com** for more details.

**_Benchmark US Awards West Coast Ceremony shortlist_**

Photographs from the New York award ceremony may be found **_HERE_**.

Congratulations to the winners, all of which are listed below:

# STATE FIRM AWARDS

**Alabama Firm of the Year**
Lightfoot Franklin & White

**Arkansas Firm of the Year**
Quattlebaum Grooms & Tull

**Connecticut Firm of the Year**
Wiggin and Dana

**Delaware Firm of the Year**
Ross Aronstam & Moritz

**District of Columbia Firm of the Year**
Williams & Connolly

**Florida Firm of the Year**
Podhurst Orseck

**Georgia Firm of the Year**
King & Spalding

**Illinois Firm of the Year**
Kirkland & Ellis

**Indiana Firm of the Year**
Faegre Baker Daniels

**Iowa Firm of the Year**
Nyemaster Goode

**Kansas Firm of the Year**
Rouse Frets Goss White Gentile & Rhodes

**Kentucky Firm of the Year**
Stites & Harbison

**Louisiana Firm of the Year**
Barrasso Usdin Kupperman Freeman & Sarver

**Maine Firm of the Year**
Preti Flaherty Beliveau & Pachios

**Maryland Firm of the Year**
Nelson Mullins Riley & Scarborough

**Massachusetts Firm of the Year**
Choate Hall & Stewart

**Michigan Firm of the Year**
Bodman

**Minnesota Firm of the Year**
Blackwell Burke

**Mississippi Firm of the Year**
Brunini Grantham Grower & Hewes

**Missouri Firm of the Year**
Polsinelli

**New Hampshire Firm of the Year**
Nixon Peabody

**New Jersey Firm of the Year**
Sills Cummis & Gross

**New York Firm of the Year**
Wachtell Lipton Rosen & Katz

**North Carolina Firm of the Year**
Smith Anderson

**North Dakota Firm of the Year**
Zuger Kirmis & Smith

**Ohio Firm of the Year**
Ulmer & Berne

**Pennsylvania Firm of the Year**
Saul Ewing Arnstein & Lehr

**Rhode Island Firm of the Year**
Adler Pollock & Sheehan

**South Carolina Firm of the Year**
Nelson Mullins Riley & Scarborough

**Tennessee Firm of the Year**
Bradley

**Texas Firm of the Year**
Gibbs & Bruns

**Vermont Firm of the Year**
Paul Frank + Collins

**Virginia Firm of the Year**
Hunton Andrews Kurth

**West Virginia Firm of the Year**
Bowles Rice

**Wisconsin Firm of the Year**
Gass Weber Mullins

# PRACTICE AREA FIRMS OF THE YEAR

**Antitrust Firm of the Year**
Winston & Strawn

**Appellate Firm of the Year**
Gibson Dunn & Crutcher

**Bankruptcy Firm of the Year**
Proskauer

**General Commercial Firm of the Year**
Paul Weiss Rifkind Wharton & Garrison

**Insurance Firm of the Year**
Blank Rome

**Intellectual Property Firm of the Year**
Williams & Connolly

**International Arbitration Firm of the Year**
Cleary Gottlieb Steen & Hamilton

**Product Liability Firm of the Year**
Nelson Mullins Riley & Scarborough

**Securities Firm of the Year**
Simpson Thacher & Bartlett

**White Collar Crime/Enforcement/Investigations Firm of the Year**
Debevoise & Plimpton

**Boutique Firm of the Year Firm of the Year**
Kaplan Hecker & Fink

**Plaintiff Firm of the Year**
Pomerantz

**Trial Firm of the Year**
Bartlit Beck

# LABOR & EMPLOYMENT AWARDS

### Labor & Employment Management-Side Firm of the Year
Seyfarth Shaw

### Labor & Employment Management-Side Attorney of the Year
Elise Bloom
Proskauer

### Labor & Employment Employee-Side Firm of the Year
Sanford Heisler & Sharp

**Labor & Employment Employee-Side Attorney of the Year**
Shannon Liss-Riordan
Lichten & Liss-Riordan

# PRACTICE AREA ATTORNEYS OF THE YEAR

**Antitrust Attorney of the Year**
Kevin Orsini
Cravath Swaine & Moore

**Appellate Attorney of the Year**
Willy Jay
Goodwin

**Bankruptcy Attorney of the Year**
Martin Bienenstock
Proskauer

**General Commercial Attorney of the Year**
Orin Snyder
Gibson Dunn & Crutcher

**Insurance Attorney of the Year**
Robert Horkovich
Anderson Kill

**Intellectual Property Attorney of the Year**
Max Tribble
Susman & Godfrey

**International Arbitration Attorney of the Year**
Michael Kim
Kobre & Kim

**Product Liability Attorney of the Year**
Allison Brown
Skadden

**Securities Attorney of the Year**
Adam Hakki
Shearman & Sterling

**White Collar Crime/Investigations/Enforcement Attorney of the Year**
Sean Hecker
Kaplan Hecker & Fink

**Plaintiff Attorney of the Year**
Bill Reid
Reid Collins & Tsai

**Trial Lawyer of the Year**
Ted Wells
Paul Weiss Rifkind Wharton & Garrison

# HALL OF FAME

**Katherine Forrest**
Cravath Swaine & Moore

**Ted Wells**
Paul Weiss Rifkind Wharton & Garrison

# IMPACT CASES

- *New York v. ExxonMobil (Paul Weiss Rifkind Wharton & Garrison)*
- *US v. Bogucki (Kaplan Hecker & Fink)*
- *CNN v. Trump (Gibson Dunn & Crutcher)*
- *Title Source Inc. v. HouseCanary Inc. (Susman Godfrey)*
- *O'Connor v. Uber (Gibson Dunn & Crutcher; Lichten & Liss-Riordan)*
- *In re the Financial Oversight and Management Board for Puerto Rico (Proskauer)*
- *Boston Cab Dispatch v. Uber (Boies Schiller & Flexner)*
- *Brown vs. Madison County (Simpson Thacher & Bartlett)*
- *Fiat Chrysler settlements (Sullivan & Cromwell; Lieff Cabraser Heimann & Bernstein; and Cleary Gottlieb Steen & Hamilton)*
- *Sears Chapter 11 (Weil Gotshal & Manges; Cleary Gottlieb Steen & Hamilton; Paul Weiss Rifkind Wharton & Garrison; and Akin Gump Strauss Hauer & Feld)*

# Pro Bono Firm of the Year

Simpson Thacher & Bartlett

Once again, we at *Benchmark Litigation* extend our congratulations to all of the evening's winners and attendees and thank our guests for their continuing support of our projects.

The new *Benchmark Litigation* research cycle is already underway. Firms can register their interest, find full timelines and a list of FAQs, and download all relevant documents **HERE**.

# Related articles

> Blackwell Burke Secures 1st Posthumous Pardon in Minnesota

> Gordon Rees adds commercial trio in Philadelphia and New York

> Q&A with Allegra Lawrence-Hardy of Lawrence & Bundy

> Q&A with Weil Gotshal's David Lender & Luna Barrington

> Reed Smith adds lawyers in Dallas and Philadelphia

---

© Euromoney Institutional Investor PLC 2020

Registered Office: 8 Bouverie Street, London EC4Y 8AX, United Kingdom

# EXHIBIT B

# _The American Lawyer Announces Litigation Department of the Year Finalists_

Law.com (Online)

This article also appears in the following ALM publications:

The American Lawyer

October 1, 2019 Tuesday

Copyright 2019 ALM Media Properties, LLC All Rights Reserved Further duplication without permission is prohibited

# LAW.COM

**Length:** 498 words

# Body

The nominations were plentiful and the competition fierce. After weeks of judging and debate, The American Lawyer is pleased to announce our editors' picks for finalists in our Litigation Department of the Year Awards.

Over the past several weeks, editors from around the country have read through details on hundreds of cases, learned about the philosophy of firms' litigation departments and strategy, and generally amassed a deeper sense of the tremendous work being done on behalf of clients around the globe. Our finalists below represent firms we feel are at the core of industry-changing matters, leading the charge on their clients' most important cases and operating at a level that sets them apart from their peers. They show prowess now and demonstrate a staying power that will keep clients coming back.

Below, we announce the finalists for our general Litigation Department of the Year category, as well as our specialty categories, our best national specialty/boutique firms, and our regional Litigation Departments of the Year. The finalist are presented in alphabetical order. The winner in each category will be announced at our annual gala, _The American Lawyer Industry Awards_ in New York on Dec. 4. Congratulations to our finalists!

Finalists for Litigation Department of the Year - General

- Cravath, Swaine & Moore
- Gibson, Dunn & Crutcher
- O'Melveny & Myers
- Paul, Weiss, Rifkind, Wharton & Garrison
- Quinn, Emanuel, Urquhart & Sullivan
- Sidley Austin

Litigators of the Year (Grand Prize Winner announced Dec. 4)

The American Lawyer Announces Litigation Department of the Year Finalists

- Ted Boutrous of Gibson, Dunn & Crutcher
- Evan Chesler of Cravath, Swaine & Moore
- Shay Dvoretzky of Jones Day
- Roberta Kaplan of Kaplan Hecker & Fink
- David Lender of Weil, Gotshal & Manges
- Sigrid McCawley of Boies Schiller Flexner
- Sharon Nelles of Sullivan & Cromwell
- Rob Saunders of Skadden, Arps, Slate, Meagher & Flom

Finalists for Products Liability Department of the Year

- Arnold & Porter
- Covington & Burling
- Dechert
- O'Melveny & Myers

Finalists for Intellectual Property Department of the Year

- Fish & Richardson
- Morgan, Lewis & Bockius
- Perkins Coie
- Williams & Connolly

Finalists for Regulatory/White-Collar Department of the Year

- Covington & Burling
- Gibson, Dunn & Crutcher
- Paul, Weiss, Rifkind, Wharton & Garrison
- Sullivan & Cromwell

Finalists for the National Specialty/Boutique Litigation Firm of the Year

- Bartlit Beck
- Fish & Richardson
- Keker Van Nest & Peters
- Stris Maher
- Susman Godfrey
- Wheeler Trigg O'Donnell
- Yetter Coleman

Regional Litigation Departments of the Year Finalists

California

The American Lawyer Announces Litigation Department of the Year Finalists

- Fish & Richardson
- Gibson, Dunn & Crutcher
- Latham & Watkins
- O'Melveny & Myers
- Orrick, Herrington & Sutcliffe

Florida
- Greenberg Traurig
- Holland & Knight

Georgia
- Greenberg Traurig
- Jones Day
- King & Spalding

New Jersey
- Greenberg Traurig
- McCarter & English

Pennsylvania
- Cozen O'Connor
- Dechert
- Hogan Lovells

Texas
- Akin, Gump, Strauss, Hauer & Feld
- Baker Botts
- Susman Godfrey

To book your table at the awards gala, please contact Andre Sutton at 757.721.9020 or email _asutton@alm.com_.

**Load-Date:** October 2, 2019

# EXHIBIT C

# 37 Law Firms Most Feared in Litigation

**bticonsulting.com**/themadclientist/37-law-firms-most-feared-in-litigation

By Michael
Rynowecer

October 17, 2018

Advantage goes to the feared.

Good strategy stops others from acting before they start. The most feared firms make their opponents either stop or change what they are doing. Feared firms have the upper hand as the opposing side is reacting to your changes—meaning you can better drive the process.

Clients change their views on law firms to be feared based on law firm behavior—and what they hear from their peers. This year, clients point to these specific behaviors:

## Unpredictable

The most feared law firms will do things their opponents don't expect. Until just 2 years ago, clients felt like they could anticipate the strategy opposing counsel would take—no more. The Fearsome Foursome and other feared firms stand out for their new, unexpected, and winning strategies.

## Show of Force

These feared client teams want to start off with a show of force. They bring a lot of talented attorneys to bear early and come on strong. This initial surge lets the other side know they are in for a bigger fight than they ever dreamed—and their client is wildly committed to getting the outcome they want. It may cost more, but clients are convinced it's the cheapest way to go over the life of the matter.

## Cut Through Complexity

The most feared law firms cut through complexity swiftly and decisively. This is a real advantage as complex matters are the fastest growing segment of the litigation market.

## Unrelenting

Fearsome firms are unrelenting in meeting their client's goal—and their behavior lets everyone know of their unmatched commitment—including the opposing side.

## Please join me congratulating the following 37 law firms:

**The BTI Fearsome Foursome**—the most feared law firms in litigation.

- <u>Gibson Dunn</u>

- <u>Kirkland & Ellis</u>

- <u>Quinn Emanuel</u>

- <u>Skadden</u>

□

**The BTI Awesome Opponents**—these firms are nipping at the heels of the Fearsom Foursome.

- <u>Bartlit Beck Herman Palenchar & Scott</u>

- <u>Jones Day</u>

- <u>Sidley</u>

- <u>Wachtell, Lipton, Rosen & Katz</u>

- <u>Winston & Strawn</u>

**The Fearsome Foursome Honor Roll**

- <u>Arnold & Porter</u>

- <u>BakerHostetler</u>

- <u>Carpenter Lipps & Leland</u>

- <u>Choate, Hall & Stewart</u>

- <u>Clark Hill</u>

- <u>Crowell & Moring</u>

- <u>Diamond McCarthy</u>

- <u>Fox Rothschild</u>

- <u>Gray, Ritter & Graham</u>

- <u>Hughes Hubbard & Reed</u>

- <u>Lewis Brisbois</u>

- <u>Manatt</u>

- <u>Maynard Cooper & Gale</u>

- <u>McDermott Will & Emery</u>

- <u>Morgan Lewis</u>

- <u>Morrison & Foerster</u>

- <u>Munger, Tolles & Olson</u>

- <u>Nixon Peabody</u>

- <u>Nossaman</u>

- <u>O'Melveny</u>

- <u>Paul, Weiss</u>

- <u>Quarles & Brady</u>

- <u>Robbins Geller Rudman & Dowd</u>

- <u>Sullivan & Cromwell</u>

- <u>Susman Godfrey</u>

- <u>Weitz & Luxenberg</u>

- <u>Wigdor</u>

- <u>Williams & Connolly</u>

Being Fearsome is one the biggest differentiators in the market today. The number of Fearsome Firms is shrinking; meaning the more Fearsome your firm, the more you stand out, to clients and the other side. It is the Fearsome firms who have nothing to fear.

Learn more about how your firm can take advantage of how client behavior and spending is changing for 2019—and what your firm can do to adapt, in the new ***<u>BTI Litigation Outlook 2019: Changes, Trends and Opportunities for Law Firms</u>***. Available now.

MBR

(Research based on more than 350 in-depth interviews, with top legal decision makers conducted between January 11, 2018 and August 28, 2018.)

# EXHIBIT D

An ALM Publication

# THE
# AMERICAN LAWYER | THE AM LAW DAILY

---

# At 25, Bartlit Beck Is Still on Trial. Is Its Model Winning?

## An 80-lawyer trial boutique may have lessons to teach Big Law about developing talent.

**By Roy Strom**
December 6, 2018

• For a quarter-century, national litigation boutique Bartlit Beck has made its name in a declining business: trials.

• The firm's talent model may provide insights for a lower-leveraged Big Law market.

This fall Bartlit Beck moved into renovated office space in Chicago, complete with all the modern touches: Windows where walls used to be, maximalist video screens and a minimalist mock court that the firm says is what digital-first courtrooms of the future will look like.

The renovation coincided with the anniversary of Bartlit Beck's founding 25 years ago, when a group of trial lawyers broke away firm from Kirkland & Ellis—which, not for nothing, now houses more than 600 attorneys just down the street. For all the office's new-fangled features, the space still honors the history of the building that houses it: Chicago's original criminal courthouse, constructed in 1893. Conference rooms are named after high-profile trials that occurred here, such as the infamous Black Sox scandal following the rigged 1919 World Series. An old-fashioned safe where court files were stored is still intact.

The modern space in an old building is fitting for a young law firm that is, in many ways, a throwback to an earlier time. Bartlit Beck has become one of the country's best-known brands for courtroom advocacy thanks to a model that cherishes one-on-one mentorship, demands teamwork and envisions a partnership track for every lawyer at the firm.

And in an age of ever-declining trials, Bartlit Beck still goes to the finish line on a higher percentage of cases than almost any law firm in the country. From 2009 through late 2018, the firm went to trial in nearly 20 percent of its



**Bartlit Beck's renovated offices in Chicago.**

(Credit: Garrett Rowland | Design by Gensler)

completed cases in five major types of litigation, according to data from Lex Machina. That compares to a range of 7 to 9 percent for four of the nation's best-known Big Law trial firms: Kirkland & Ellis, Quinn Emanuel Urquhart & Sullivan, Gibson, Dunn & Crutcher and Skadden, Arps, Slate Meagher & Flom.

There are a number of reasons why Bartlit Beck goes to trial so often. The simplest one is that they win. Jason Peltz, the second managing partner in the firm's history, who gained the title earlier this year, said the firm has historically won about 85 percent of its cases that go to verdict.

The firm has to know its track record, since a portion of its fees in virtually every case is paid only if the firm is successful. As Bartlit Beck looks toward its next 25 years, leaders say they have no plan to change that model, and they are most focused on attracting the next generation of top trial lawyers. Its hiring is vastly different from the standard



**See You in Court**
Closed cases taken to trial, 2009-Present

Source: Lex Machina ⊚ Percentage cases taken to trial

**Trials in Decline**
U.S. Civil Trials, 1995-2017

Source: United States Courts

Big Law approach. Roughly 80 percent of the firm's lawyers are partners (67 partners, 15 associates and 2 special counsel are listed on its website), and it adds only one to two new associates a year.

Many expect large law firms will struggle to maintain their traditionally high leverage models as technology makes the practice of law more efficient—and as clients become increasingly reluctant to pay high billable rates to train inexperienced lawyers. In that scenario, bigger firms could look to incorporate aspects of Bartlit Beck's talent and training model.

They could start with a simple question: When a firm expects every lawyer to become a partner, what does it mean to be an associate?

**Business Is Good**

Fred Bartlit left Kirkland & Ellis in 1993, after 33 years at the firm, taking 18 lawyers with him, including fellow name partner Phil Beck. Bartlit and Beck left following a dispute over the merits of alternative and success-based fees. With a belief that the billable hour only fueled inefficiency, Bartlit in a 1995 American Lawyer article evangelized the rise of success-based payments and predicted a proliferation of firms like his. That revolution remains to be seen. The New York Times is still running op-eds decrying "The Tyranny of the Billable Hour."

However he planned to get paid, Bartlit didn't necessarily pick the ideal climate to grow a trial firm. The number of civil trials in U.S. federal courts has been more than cut in half since the firm has been in business. In 2017, there were 4,234 such trials, compared to 10,395 in 1995.

Still, the firm has made a good business out of going to court, even if it declines to discuss compensation or profitability figures. Its reputation remains burnished by



Jason Peltz

the work Bartlit and Beck did to help George W. Bush win a contested Florida election in 2000, with Time Magazine calling Beck "Bush's new star" for his work cross-examining a Democratic voting machine expert. In more recent years, it has worked on behalf of major clients including Citadel, DuPont, United Technologies, Nicor Inc. and Bissell Corp.

Bartlit Beck this year was selected among a group of nine top litigation firms by BTI Consulting Inc., joining a list that included Gibson Dunn, Kirkland & Ellis, Quinn Emanuel and Skadden (the top four) and Jones Day, Sidley Austin, Wachtell, Lipton, Rosen & Katz and Winston & Strawn.

Peltz, the managing partner, says clients often select Bartlit Beck to send a message to their opponent in litigation. That reputation is also part of why the firm goes to trial more frequently than other firms, but Peltz said it also can lead to better settlements.

"It absolutely sends a signal to the other side that this case will be ready for trial," Peltz said. "We want to send that signal. Because sometimes when the case is most ready for trial, that's when you can get the best settlement."

**No Secret Sauce**

According to Peltz, the firm works on every matter from the start as if it will be proceeding all the way to trial. That's why lawyers with first-hand trial experience are so valuable, and why Bartlit Beck does all it can to fast-track its young lawyers' development. Associates can't prepare a case as if it's going to trial if they don't know what a trial entails.

Bartlit Beck also staffs cases differently than other firms. It works in smaller teams composed of more experienced lawyers compared to most large firms. The average lawyer at the firm has been practicing for 16 years. It also doesn't typically hire lateral partners

"People ask me all the time, 'What's your specialty?'" Peltz said. "Our specialty is making complicated matters simple. Our specialty is presenting a client's case in a very credible, simple, real way to juries across the country. And in doing so, being the teacher to juries along with the judge and ourselves—because we're all learning all the time."

Lawyer development remains a core component of the firm's model. Thirty percent of Bartlit Beck lawyers have first-chair trial experience, the firm says. Last year, 64 percent of its lawyers appeared in court on a substantive issue; 72 percent took defended a deposition; and 57 percent held a substantive role on a trial team.

Rebecca Weinstein Bacon

"Every member of the firm that we work with, from the newest associate to Phil Beck, works closely with our in-house team on all aspects of our cases and makes valuable contributions," said Shawn Fagan, chief legal officer at Citadel. "They are collaborative, creative, and deliver results for Citadel."

### Recruiting for Emotional Intelligence

Nico Martinez is an example of the kind of candidate the firm attracts. A 2013 Stanford Law graduate and a 2005 College Jeopardy champion, Martinez joined in 2016 following three years as a clerk, first for a federal appeals judge, then a U.S. district court judge and finally a California Supreme Court justice.

"I knew Bartlit Beck was extremely selective in its hiring, and so I think just to get an interview in some ways felt like an achievement," Martinez said.

Martinez said on his first day at the firm, he showed up in the Chicago office, signed some employment-related forms



Nico Martinez

and flew with a trial team to meet a client in New York City. They were preparing for a trial scheduled in just a few months.

The firm's associate pool also benefits from the firm's rejection of the billable hour and its belief that every lawyer it hires has the potential to make partner. Martinez said that means associates don't view each other as competition and they often help each other. For instance, when Wesley Morrissette, a 2014 graduate of Northwestern University Pritzker School of Law, was tabbed to give an oral argument in the U.S. Court of Appeals for the Seventh Circuit this year, a group of about five associates helped him prepare, Martinez said.

"If somebody gets to stand up in court in a high-profile case and cross-examine a witness a couple weeks after joining the firm, that's a huge benefit to the firm overall and to me, because I know these are people I'm going to be able to work with for many years," Martinez said.

As for what Bartlit Beck looks for in its associates, Rebecca Weinstein Bacon, a partner, said it's about emotional intelligence as well as brains and credentials. Much of the interview process is a sort of personality test designed to answer one question: Does the person seem presentable in front of judges and juries?

"We're looking for high EQ," Bacon said. "And I think we can tell when somebody has high EQ and when they don't."

Either way, it won't be long before Bartlit Beck takes another case to trial, and another jury weighs in.

*Based in Chicago, **Roy Strom** has been reporting on the legal world since 2011. He covers law firms with a focus on how the Big Law business model is changing. He writes a weekly column for Law.com called "The Law Firm Disrupted," covering changes in the legal services market. He can be reached at rstrom@alm.com. On Twitter: @RoyWStrom*

Reprinted with permission from the AMLAW DAILY featured on December 6, 2018 © 2018 ALM Media Properties, LLC. All rights reserved. Further duplication without permission is prohibited. For information, contact 877-257-3382 or reprints@alm.com. # 002-12-18-07

# EXHIBIT E

## BARTLIT BECK CLASS ACTION EXPERIENCE

### Dismissals and Favorable Class Certification Decisions

#### Gordon, et al. v. Sabre
Represented Sabre in a Section 1 antitrust case brought as putative class action by purchasers of airline tickets. Plaintiffs claimed Sabre conspired with its competitor "global distribution services" operators to require certain terms in their contracts with airlines, which allegedly caused plaintiffs to overpay for airline tickets. Won a motion to dismiss 100% of plaintiffs' claimed damages, and then a denial of class certification in light of claims for equitable relief only.

#### In re Teflon® Product Liability Litigation
Represented DuPont in an MDL in S.D. Iowa comprised of twenty-three alleged class actions brought on behalf of consumers who claimed to have purchased cookware coated with Teflon® and other non-stick coatings manufactured by DuPont. Defeated class certification in all matters. Petition for appeal rejected by the United States Court of Appeals for the Eighth Circuit. Cases voluntarily dismissed with prejudice.

#### Baycol® Litigation
Represented Bayer in proposed consumer class actions regarding Baycol®. Defeated federal class certification. Obtained injunction preventing state class-action litigation and argued the United States Supreme Court appeal regarding propriety of that injunction. Defeated class certification in several state courts. After class certification was granted in Pennsylvania (Philadelphia Court of Common Pleas), successfully struck plaintiff's key expert and obtained summary judgment.

#### In re Genetically Modified Rice Litigation
Defended Bayer CropScience and related companies in multidistrict proposed class actions arising from the introduction of genetically modified rice into commercial rice supply. Defeated class certification.

#### YAZ®/Yasmin® Litigation
Represented Bayer in putative class action MDL in N.D. Illinois relating to YAZ® and Yasmin® oral contraceptives. Class allegations dismissed on a motion to strike.

#### WeightSmart® Litigation
Defended Bayer in consumer fraud class actions involving certain Bayer OneADay® products. Defeated nationwide class certification in the district court, and successfully briefed and argued before the United States Court of Appeals for the Third Circuit that certification of a New Jersey consumer class was inappropriate. The Carrera v. Bayer appellate decision, establishing plaintiffs' obligation to prove that class membership is ascertainable, is the leading defense-side precedent on ascertainability.

#### Coumadin® Litigation
Represented DuPont in a series of antitrust and consumer fraud class actions directed at alleged misrepresentations regarding Coumadin® and its generic competition. Defeated multiple class certification attempts, leading to settlement.

### Trinity ET Plus Guardrail Litigation
Represented Trinity in individual and class action litigation in federal and state courts challenging the safety of Trinity's ET Plus guardrail system. Defeated class action brought in S.D. Illinois by purchasers of guardrail products. Case dismissed after deposition of plaintiffs' expert.

### Firefighter Hearing Loss Litigation
Represented Federal Signal in Illinois state class action litigation involving firefighters alleging hearing loss from exposure to emergency-vehicle sirens. On appeal, defeated certification of a proposed design-defect "issue class."

### Swidler v. Georgia-Pacific
Represented Georgia-Pacific in putative class action in Florida State Court alleging that building products manufactured by Georgia-Pacific caused damage in consumers' homes. Case dismissed.

### Dollie Williams v. Macon County Greyhound Park
Represented Macon County in Rule 23(f) appeal in the United States Court of Appeals for the Eleventh Circuit. Obtained reversal of class certification.

### In re Factor VIII or IX Concentrate Blood Products Litigation
Represented Bayer in MDL in N.D. Illinois alleging personal injuries from use of allegedly contaminated blood-based derivatives. Defeated class certification.

### Neuser v. Carrier
Represented Carrier in multiple consumer class action lawsuits relating to secondary heat exchangers in furnaces manufactured by Carrier. Won summary judgment and denial of class certification in Wisconsin. Other lawsuits then settled.

### Other Representative Class Action Matters

### In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation
Represented Whirlpool in N.D. Ohio bellwether consumer class action trial of plaintiffs' claims of design defect and breach of implied warranty. After four-week jury trial, jury deliberated fewer than two hours before returning complete defense verdict.

### Wagner v. NL Industries
Represented NL Industries in ten-week class action jury trial in Philadelphia Court of Common Pleas of claims of 7,500 residents seeking several hundred million dollars in personal injury and property damages due to lead emissions from factory over 35 years. Jury verdict for NL on all issues.

### Metropolitan Mortgage & Securities Litigation
Represented Ernst & Young in federal securities class action suit and related arbitrations surrounding the collapse and bankruptcy of Metropolitan Mortgage & Securities Co., a $2 billion investment, real estate, and insurance conglomerate. Plaintiffs alleged accountants' negligence relating to audit work. Won back-to-back complete defense verdicts in separate trials involving

claims for hundreds of millions in investment losses brought by Metropolitan's insurance subsidiary and the bankrupt estate. Class action case settled favorably shortly before trial.

### Vioxx® Consumer Class-Action Litigation
Represented Merck in Missouri state court class action brought on behalf of consumers alleging economic losses from purchases of Vioxx®, as well as a New Jersey state court class action by payors of prescription benefits. Obtained reversal of class certification in New Jersey Supreme Court. Litigation favorably resolved.

### In re TyCom Ltd. Securities Litigation
Represented Tyco International in class action suit in D. New Jersey which plaintiffs sought over $1 billion in damages for alleged securities fraud. Plaintiffs alleged that Tyco violated Section 10(b) of the Securities Exchange Act and Section 11 of the Securities Act in connection with the July 2000 TyCom IPO. The case settled favorably before trial.

### Overby v. Tyco International Ltd. (ERISA Litigation)
Represented Tyco International in class action suit brought in D. New Hampshire under ERISA on behalf of participants in Tyco's retirement plans. Plaintiffs sought over $1 billion in damages. Case settled favorably for Tyco.

### Brazen v. Tyco International
Represented Tyco in class action securities law claim brought in Illinois in Cook County State Court relating to registration statement issued by Tyco in connection with a merger with Mallinckrodt. Case settled.

### Cole v. Asurion and T-Mobile
Represented Asurion and T-Mobile in class action brought in C.D. California by T-Mobile subscriber who purchased cell phone insurance and claimed, on behalf of 1.4 million consumers, that Asurion and T-Mobile did not sufficiently disclose the terms of the insurance. Won stay of case pending individual class member arbitrations. Case settled after oral argument of plaintiff's appeal of stay to Ninth Circuit.

### Imprelis® Litigation
Represented DuPont in product liability litigation in D. Delaware and E.D. Pennsylvania, including putative class actions comprised of more than 37,000 plaintiffs, alleging widespread property damage caused by DuPont's Imprelis® herbicide. Defeated preliminary injunction sought by plaintiffs in D. Delaware. Litigation favorably resolved.

### LaPlant v. Northwestern Mutual
Represented Northwestern Mutual in purported class actions in W.D. Wisconsin alleging breach of contract and breach of fiduciary duty arising out of the determination of dividends for certain annuities. Litigation favorably resolved.

### In re Domestic Drywall Antitrust Litigation
Represent USG in E.D. Pennsylvania Sherman Act MDL. Plaintiffs allege defendants conspired to fix, raise, maintain, and stabilize prices for gypsum drywall. Class claims favorably resolved and litigation continues with opt out plaintiffs.

**Aspirin Combination Products Litigation**
Represent Bayer in MDL in E.D. New York comprised of eleven alleged class actions relating to Bayer aspirin combination products. Litigation favorably resolved.

# EXHIBIT F

# Firm Profile > Bartlit Beck LLP > Chicago, United States

legal500.com/firms/52205-bartlit-beck-llp/53230-chicago-usa/

## Bartlit Beck LLP Offices

Bartlit Beck LLP
COURTHOUSE PLACE, 54 WEST HUBBARD STREET
CHICAGO, IL 60610
United States

Visit website 1 312 494 4400 1 312 494 4440

## Bartlit Beck LLP > The Legal 500 Rankings

### Dispute resolution > Product liability, mass tort and class action - defense: pharmaceuticals and medical devices Tier 2

Bartlit Beck LLP specializes in individual and consolidated personal-injury litigation, federal multi-district litigation and coordinated state-court proceedings. The firm also has expertise in class actions, notably those based on environmental torts and consumer fraud. Practice head Jason Peltz has experience in a range of commercial litigation, including breach of contract, patent infringement, product liability, fraud and securities. Also recommended are Kaspar Stoffelmayr, whose experience includes single-plaintiff catastrophic injury cases, MDLs and nationwide class actions; and Philip Beck , a renowned trial lawyer with a focus on mass tort, product liability, commercial and financial cases. All named practitioners are based in Chicago.

### Practice head(s):

Jason Peltz

### Other key lawyers:

Philip Beck; Sean Gallagher; Rebecca Weinstein Bacon; Kaspar Stoffelmayr; Adam Hoeflich

### Key clients

Bayer Corporation

ConocoPhillips Co.

Johnson & Johnson and its subsidiary Ethicon

Trinity Industries, Trinity Highway Products

Walgreens

Arconic

Merck

## Dispute resolution > General commercial disputes Tier 3

Chicago and Denver-based litigation boutique Bartlit Beck LLP has built a formidable reputation in handling complex, precedent-setting cases for industry-leading clients. 2019 proved to be a very busy year for the firm, with a number of significant victories and heavy involvement in widely publicized product liability matters. Sean Gallagher is acting for Johnson & Johnson in nationwide pelvic mesh litigation, recently securing a rare defense jury verdict in Philadelphia, while Kaspar Stoffelmayr is representing Walgreens in federal MDL cases related to the opioid crisis. Other strengths of the team include IP and antitrust litigation. In an example, Karma Giulianelli defended Otterbox in the District of Colorado against allegations of antitrust violations, securing a favorable settlement in April 2019. The practice saw five partner promotions in January 2020, each of whom have considerable trial experience, as is typical of the firm's approach to training up its associates.

## Practice head(s):

Jason Peltz

## Other key lawyers:

Rebecca Weinstein Bacon; Philip Beck; Sean Gallagher; Sean Grimsley; Hamilton Hill; Chris Lind; Jameson Jones; Karma Giulianelli; Kaspar Stoffelmayr; Steven Derringer; John Hughes; Christopher Landgraff; Brian Pestes; Adam Mortara; Jeffrey Hall; Glen Summers

## Testimonials

'The depth of talent is second to none because the "all-stars" are committed to and have spent years mentoring and training each lawyer at the firm. As a consequence, every lawyer staffing a case brings sound independent legal judgment to the representation and is a true value-add to the engagement. Lawyers staffing trial teams are truly complementary to one another insofar as staffing decisions capitalize on the strengths of each lawyer, and clearly reflect the value a lawyer's innate skills bear to the needs required to be successful at trial. The lawyers are master storytellers who truly use

*technology to simplify the complex.'*

*'Glen Summers is a superior legal strategist and tactician with impeccable judgment and instincts. He inspires client confidence and has a commanding court room presence. A go-to first-chair trial lawyer with the bona fides, instincts, judgment and work ethic to back it up. Hamilton Hill is a disarmingly juror-friendly legal assassin. He is a relatable, empathetic story teller who makes the complex simple. Dan Taylor is an up and coming all-star, who consistently minimizes court room risk by winning on his papers. Kat Hacker marries factual development with impeccable legal judgment. She is wise beyond her years.'*

## Key clients

Bayer

United Technologies

Hewlett Packard Enterprise

EY

Whirlpool

USG

Gilead

Walgreens

Sabre

Spirit Aerosystems

PwC

Trinity

## Dispute resolution > Product liability, mass tort and class action - defense: toxic tort Tier 3

Bartlit Beck LLP has expertise in products liability and mass tort litigation in the pharmaceutical and chemical industries. The firm acts in individual and consolidated personal injury litigation, as well as federal multidistrict litigation and coordinated state court proceedings. In terms of class actions, the practice's experience includes environmental torts, consumer fraud, and economic injuries. Managing partner Jason

Peltz heads the team from Chicago and is an expert litigator. Brian Prestes is leading the team that is representing Monsanto in thousands of cases pending in courts across the country alleging that Roundup herbicides cause cancer.

## Practice head(s):

Jason Peltz

## Other key lawyers:

Brian Prestes; Sean Grimsley; Sean Gallagher; James Jones

## Testimonials

## Key clients

Bayer Corporation

United Technologies

Hewlett Packard Enterprises

Ernst and Young

Whirlpool Corporation

USG

Gilead

Walgreens

Sabre

Spirit Aerosystems

PricewaterhouseCoopers (PwC)

Trinity

## Dispute resolution > Leading trial lawyers Tier 4

Based in Chicago, Philip Beck specializes in product liability, IP and commercial litigation. His historical cases include *Bush v. Gore* (2000), in which he served as lead counsel to George Bush's trial team in litigation that established the outcome of the 2000 presidential election; and *Newsome v. McCabe* (2001), a wrongful imprisonment case in which Beck

secured record-setting damages for the plaintiff. On the defense side, Beck's notable work includes serving as Merck's lead trial counsel in five federal cases alleging that the client's drug Vioxx caused heart attacks and strokes; he achieved dismissal with prejudice in four of the trials.

## Hall of Fame

## Bartlit Beck LLP > Firm Profile

*Firm Overview:*

Bartlit Beck has achieved an unparalleled record of courtroom success in complex litigation over the past 25 years. The firm is renowned for its trial expertise and specializes in trying and winning complex cases in federal and state courts all over the country. The firm's litigation practice includes products liability, class action and mass tort, antitrust, intellectual property and general commercial disputes.

As a result of the firm's success at trial, Bartlit Beck was identified as one of the top nine firms in the United States for "striking the utmost fear into the hearts of seasoned General Counsel and legal decision makers" in a survey conducted by consulting firm BTI of 350 in-house leaders.

*Unmatched Trial Experience:*

Because the best way to win complex cases is with experienced attorneys, 80% of our firm's attorneys are partners and our attorneys average 16 years of experience. In every year during the last decade, more than two-thirds of our lawyers have argued substantive motions and over half have gone to trial. And one-third of our litigators have first-chair commercial civil trial experience gained at the firm.

Recent trial victories include:

- A defense verdict in favor of the firm's client Ethicon, a subsidiary of Johnson & Johnson, in a pelvic mesh implant case.
- A patent infringement verdict against Eli Lilly in favor of Bartlit Beck's client UroPep.
- A patent infringement verdict in favor of the firm's client DuPont against specialty chemical manufacturer Unifrax LLC.
- A complete defense verdict in favor of the firm's client Hewlett Packard Enterprise in a case involving a patent on Power Over Ethernet technology.

*Unique approach:*

Our experienced lawyers intensely focus on only a few cases at a time. Because each lawyer has a thorough understanding of the entire case, good ideas come from everyone. Every person on the team has responsibility for determining how to deliver the best possible result for our clients—and the experience, skill, and judgment to achieve it.

We are experts in explaining highly complex matters in a simple, straightforward manner to a trier of fact. Because of our experience, we understand that we win cases for our clients by showing the judge or jury the evidence, rather than telling them why they should decide in our favor.

We have extensive experience partnering with other law firms and service providers as part of a "virtual law firm." Our highly collaborative approach means that we view in-house counsel and co-counsel as invaluable members of the team.

Bartlit Beck also aligns the client and its interests through a fixed/success fee structure.

The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel. Please contact any of our lawyers using the contact information found at https://www.bartlitbeck.com

Content may include attorney advertising. Prior results do not guarantee a similar outcome.

## Main Contacts

| Department | Name | Email | Telephone |
|---|---|---|---|
| | Tom Finke | tom.finke@bartlitbeck.com | 312-286-3166 |

## Lawyer Profiles

| Photo | Name | Position | Profile |
|---|---|---|---|
| | Rebecca Weinstein Bacon | | View Profile |
| | Philip Beck | | View Profile |
| | Steven Derringer | | View Profile |

| Photo | Name | Position | Profile |
|---|---|---|---|
| | Sean Gallagher | | View Profile |
| | Jeffrey Hall | | View Profile |
| | Hamilton Hill | | View Profile |
| | Adam Hofflich | | View Profile |
| | Christopher Landgraff | | View Profile |
| | Chris Lind | | View Profile |
| | Jason Peltz | | View Profile |
| | Brian Prestes | | View Profile |
| | Kaspar Stoffelmayr | | View Profile |
| | Glen Summers | | View Profile |

# EXHIBIT G

An **ALM** Publication

# THE
# AMERICAN LAWYER
### THE AM LAW LITIGATION DAILY

---

# 2nd Circuit Wipes Out $15M in Damages Awarded in Airline-Booking Antitrust Case

### The U.S. Court of Appeals for the Second Circuit on Wednesday ordered a new trial in the case, which accused Sabre Holdings Corp. of monopolization and unlawfully restricting trade under the Sherman Act.

By Tom McParland
September 11, 2019

A Manhattan-based federal appeals court has **wiped out** more than $15 million in damages awarded to American Airlines, as the successor-in-interest to US Airways, in an antitrust case against the provider of the country's largest network for booking airline flights.

The U.S. Court of Appeals for the Second Circuit on Wednesday ordered a new trial in the case, which accused Sabre Holdings Corp. of monopolization and unlawfully restricting trade under the Sherman Act.

A federal jury in the Southern District of New York in 2016 awarded American nearly $5.1 million on claims that Sabre had charged the air carrier anticompetitive prices to use its global distribution system to list tickets for flights, which is also the most-used platform for travel agents that book tickets on behalf of primarily corporate clients. The damages were automatically tripled under U.S. antitrust law.

But a three-judge panel of the appeals court ruled Wednesday that new precedent from the U.S. Supreme Court last June had changed the law



American Airlines Boeing 767-323(ER)

Photo: Steve Cordory/Shutterstock.com

involving "two-sided transaction platforms," like the one at issue in American's lawsuit. According to the ruling, the high court held in the case *Ohio v. American Express* that juries in such cases must be instructed to consider to impact of prices on both sides of the platform.

However, the instructions given to the jury by the lower court only involved the harm to American, and did not include payments that travel agents made to travel agents as an incentive to use its service. Instead, the jury was asked to decide for itself whether Sabre's platform was one-sided or two-

sided, misleading jurors as to how it was supposed to decide the case, Senior Judge Robert D. Sack of the U.S. Court of Appeals for the Second Circuit wrote in a 59-page opinion.

The error, Sack said, likely confused the jury and ultimately skewed its conclusion on damages, requiring the case to be retried.

"In a case whose subject is a transaction platform like Sabre, the jury must be instructed to consider both sides of the platform being evaluated; the relevant market for such platforms must, as a matter of law, always include both sides," Sack wrote. "That is not a jury question."

Attorneys for American and Sabre did not immediately return calls Wednesday afternoon seeking comment on the ruling.

The long-running case, which was filed by US Airways in 2011, asserted four counts of antitrust violations dating back to 2008 by Sabre, which is one of only three companies that still offer GDS platforms. Former U.S. District Judge Miriam Goldman Cedarbaum for the Southern District of New York, who died in 2016, trimmed the monopolization and conspiracy claims from the suit and limited damages under the two remaining counts to those arising after 2011.

US Airways ceased to operate independently in 2015 when it was merged into American Airlines.

Wednesday's opinion affirmed Cedarbaum's ruling on damages, but did allow American to pursue the two other claims that had been jettisoned from the suit.

It also came with a note of praise for the lower court's handling of the case amid the shifting legal landscape, acknowledging that in retrospect those efforts those efforts may seem "plainly wasteful."

"Rarely is that more so than in this case in light of the extraordinary efforts of the district court seeking to navigate particularly vexing, shifting legal winds in the face of complex facts and a challenging jurisprudence," Sack wrote.

He was joined in the opinion by Judges Debra Ann Livingston and Denny Chin of the U.S. Court of Appeals for the Second Circuit.

American is represented by Anton Metlitsky, Andrew J. Frackman, David K. Lukmire and Yaira Dubin of O'Melveny & Myers in New York, Charles P. Diamond of the firm's Los Angeles office and Jason Zarrow in Washington, D.C.

Sabre is represented by Evan R. Chesler, Peter T. Barbur, Kevin J. Orsini and Rory A. Leraris of Cravath, Swaine & Moore in New York; Chris Lind of Bartlit Beck in Chicago; and George S. Cary of Cleary Gottlieb Steen & Hamilton in Washington, D.C.

The case is captioned *US Airways v. Sabre Holdings*.

Reprinted with permission from the AMLAW LITIGATION DAILY featured on September 11, 2019 © 2019 ALM Media Properties, LLC. All rights reserved.
Further duplication without permission is prohibited. For information, contact 877-257-3382 or reprints@alm.com. # 09122019-415936

# EXHIBIT H

315 W. 11TH AVE., DENVER, CO 80204    |    720-328-1418    |    www.LAWWEEKCOLORADO.com    VOL.

# LAW WEEK
## COLORAD

# Court Resolve
# Family Business I

*Judge's order gives control to wealthy entrepreneur's f*

**JULIA CARDI**
LAW WEEK COLORADO

After three years, two trips to the Colorado Supreme Court and two trials, the Arapahoe County Court has resolved a family dispute for control over several businesses. Judge Charles Pratt issued a June 20 order in favor of the family of Jack Grynberg, against Grynberg's claims of unjust enrichment from his family members' ownership of the businesses.

Ownership of three fam-

account, which the court took as evidence he didn't believe his family members had the right to revoke his control.

This month's bench trial addressed whether the benefit Grynberg's family members received from owning the businesses occurred under circumstances that would make it unjust for them to keep their ownership and the distributions without compensating Grynberg. The parties didn't dispute the family members received benefit from owning the busi-

indeed anticipated control for life. Evidence also shows, he wrote, that when the businesses were formed in the 1990s, Grynberg was a competent smart businessman who knew the implications of his decisions about the companies' structures and ownership.

"Judge Pratt ruled that Jack Grynberg intentionally and deliberately gave his family ownership in the companies, and that he fully understood the consequences of doing that, and that it would result in the

qu
of
me
rec
dre
im
pri
me
fer

the
iss
an
ma
evi
ere
kir

# EXHIBIT I

NEWS > COURTS

# Denver oil tycoon Jack Grynberg not entitled to $400 million in back pay in family feud, judge rules

## Self-made billionaire "made a mistake" believing family wouldn't turn on him

By **DAVID MIGOYA** | dmigoya@denverpost.com | The Denver Post

June 21, 2019 at 4:18 p.m.

Denver oil tycoon Jack Grynberg won't get a penny for the years he spent building a billion-dollar empire for his family after they fired him following a protracted court battle, a judge has ruled.



Photo provided by Jack Grynberg

**Jack Grynberg lost his court fight against his family over who controls his vast empire.**

That's not to say the octogenarian won't reap some of the benefits for having created several companies that he ran but ultimately signed over to his then-wife and three kids — all of whom wanted Grynberg tossed because of concerns that his business decisions weren't in their best interests.

Arapahoe County District Judge Charles Pratt this week ruled that the three companies he created — Gadeco, Pricaspian and RSM, which manage his vast oil holdings — were put into his family's name and not his own as a way to protect his vast wealth from creditors, estate taxes and even kidnapping and extortion attempts.

That Grynberg took only a minimal salary through the years was his choice. Grynberg's lawyers say he'll keep fighting.

"This three-year-long case has been about Jack Grynberg's family trying to seize all the money that Mr. Grynberg alone accumulated for the Grynberg Family," his attorney, Gregory Tamkin, said in an emailed statement to The Denver Post. "As things currently stand, Mr. Grynberg's children, without having made any contributions to the companies, now have received approximately $1 billion that Mr. Grynberg earned. By contrast, Mr. Grynberg kept less than $5 million for his work over the last 25 years. That is unjust and a basis for an appeal. Mr. Grynberg will continue to fight for what he earned."

Lawyers for Grynberg's ex-wife, Celeste, 83, and the couple's three children, Rachel, 58, Stephen, 56, and Miriam, 54, said the decision "confirms that they were fully within their rights when they acted to assert control over the family's oil and gas companies," according to a statement from attorney Glen Summers.

"They did so to protect the companies and Jack Grynberg's legacy," Summers wrote. "The family is relieved to have this unfortunate and painful litigation behind them."

The bulk of the case hinged on the family's assertion that Grynberg, 87, wasn't the Jack of old, the man who had frequently taken on the likes of BP, Conoco, Shell and a handful of other petroleum conglomerates and foreign governments around the globe with accusations of cheating and wrongdoing. It was through that prolific use of the courts that Grynberg, a brilliant graduate of the Colorado School of Mines and survivor of the Holocaust, pocketed a fortune and built an empire.

Grynberg said he put his family's name on the companies with the proviso and belief he would maintain control of the businesses throughout his lifetime. An Arapahoe County jury disagreed with that in February and said the family owned the companies and could fire Grynberg, which they did.

Grynberg then said he wouldn't have set things up that way if he had known he could be fired, so he asked Pratt to award him what he felt he was owed: about $400 million in back salary.

The family, for their part, never knew they could toss the aging oilman until about 2016.

"Prior to that time, Jack Grynberg had substantially unfettered control over the operations of the family business," Pratt wrote in his ruling. "If one of the family members wanted to become involved or disagreed with one of (his) decisions or wanted something ... he frequently would push back, refuse the request and tell the family member to 'go away and leave me alone.' "

Because the family was "satisfied with the significant wealth being created," they left Grynberg alone. That changed as his decisions became more alarming to them, records show, and putting significant amounts of their wealth at risk.

The scope of Grynberg's wealth is buried in court files that are largely sealed from the public. At one point during earlier testimony, it was revealed that earnings within just one of the companies is as much as $120 million a year, mostly in royalty payments that come from oil fields that stretch through countries as far off as Kazakhstan.

"In 1993 (when the companies were formed) Jack Grynberg was a brilliant businessman, entrepreneur, accomplished oil and gas geologist and engineer, and was very astute and calculating in all his business decisions," Pratt wrote.

In other words: Grynberg knew exactly what he was doing when he gave ownership to his family.

"If he made a mistake, it was in believing and trusting that the family members would not take his control of the family business away before he was ready," Pratt wrote.

The battle has cost him his marriage – the couple divorced last year – and strained even further the already tenuous relationship he had with his children. Paperwork showed he was bitterly disappointed that his family would "scheme" to wrestle from him control of the companies he created with them in mind.

But not all is lost for Grynberg.

His divorce settlement left him with half of Celeste's 25 percent ownership interest in Pricaspian.

Policies
Report an Error
Contact Us
Submit a News Tip

T The Trust Project

TAGS:
**ARAPAHOE COUNTY DISTRICT COURT,
COURTS,    FAMILY,    JACK GRYNBERG,
LAWSUIT,    OIL AND GAS**

**David Migoya** | Investigative Reporter
David writes investigative projects and has been at The Denver Post since 1999. He was a founding member of the investigations team before moving on to write about banking, finance, human services and consumer affairs, then returned to investigations. David has also worked at publications in New York City, St. Louis and Detroit over a career that began at the Post in 1983.

dmigoya@denverpost.com

🐦 Follow David Migoya **@davidmigoya**

SPONSORED CONTENT

## Discounts for safe driving? Mission accomplished ↗

By State Farm

Drive safely and get a discount with the State Farm Drive Safe & Save™ app.

# EXHIBIT J

# Illinois

**As the litigation epicenter of the Midwest, Chicago remains a highly competitive legal market with international firms stacked with premier talent battling high stakes antitrust, commercial, products liability and intellectual property cases on behalf of corporate giants. In a state traditionally prone to corruption scandals, Illinois is also home to many of the nation's preeminent white collar experts who sharpened their skills as state and federal prosecutors. Although still facing economic hurdles, as a key manufacturing, retail and banking region, Illinois law firms are handling a steady flow of toxic torts litigation, securities class actions and labor disputes while simultaneously advising on billion-dollar mergers and acquisitions in a range of consolidating industries.**

## Highly recommended firms

### Bartlit Beck Herman Palenchar & Scott

Founded in 1993 by former Kirkland & Ellis partners, the national litigation firm of Bartlit Beck has built an outstanding reputation as boutique trial firm. From its hiring practices to its client approach, the firm's business model is focused on producing expertly trained trial lawyers for bet-the-company cases across the country. Operating out of Chicago and Denver, the firm's name partners including **Phil Beck** and **Don Scott** are renowned nationally for their exemplary courtroom skills. As one global competitor states, "As good as we are, if we are up against Bartlit Beck, we know we are in for a huge battle. They are a fantastic trial firm and Phil Beck is as good as it gets."

Litigation partner **Chris Lind** has garnered national praise for his high-profile victory on behalf of client United Technologies in an alleged multi-billion patent infringement suit brought by Rolls-Royce. The claims involved UT's Pratt & Whitney division, which Rolls-Royce asserted infringed one of its engine blade patents in the Airbus 380. The battle between the two companies became international in scope with related claims and counterclaims in the UK and other jurisdictions in the US threatening to delay the launch of Boeing's 787 Dreamliner. Following the dismissal in Lind's case in Virginia, all subsequent patent claims have since been settled. As one peer states, "Chris Lind did a brilliant job in a case that could have cost the client billions."

### Jenner & Block

Established in 1914, the national firm of Jenner & Block has 450 attorneys practicing across offices in Chicago, Los Angeles, New York and Washington DC. Although the firm suffered the loss of its legendary chairman emeritus Jerold Solovy this past year, current chairman **Anton Valukas** continues to uphold the firm's longstanding reputation as a national leader in practice areas including commercial litigation, securities, insurance, media, bankruptcy, corporate and government contracts. Valukas was appointed in 2010 as examiner in the Lehman Brothers bankruptcy and received national praise for his extensive findings on the largest bankruptcy filed in the US to date. Jenner & Block also acted as lead outside counsel to the newly structured General Motors in its globally publicized IPO in late 2010. The $23.1 billion total offering is considered one of the largest IPOs in history.

Other top litigation talent at the firm includes co-chair of the white-collar defense and investigations practice, **Charles Sklarsky**. An esteemed trial lawyer and former prosecutor for the state of Illinois, Sklarsky has significant experience handling high-stakes securities fraud, SEC enforcement, public corruption and criminal tax matters. **Jeffrey Colman** is an accomplished trial and appellate attorney with extensive experience handling professional liability and consumer class actions, with a focus on nationwide employment and food contamination cases. As a former Special Assistant Attorney General for Illinois, Colman also handles government investigations and criminal antitrust matters for major companies. In a recent high-profile intellectual property win, the firm won a motion for summary judgment of invalidity in client Viskase's action against World Pac International USA. Viskase, a global supplier of cellulose food casings for meat manufacturers and food processors, had been accused by competitor World Pac of infringing on a food casing patent. Partners Bradford Lyeria and Jeffrey Koppy handled the case.

### Kirkland & Ellis

Headquartered in Chicago, the global firm of Kirkland & Ellis has stacked itself with expert talent and prides itself on a business model that requires trial experience in all of its attorneys, from associates upward. As one multinational client states, "Kirkland & Ellis has a deep roster of superb litigation lawyers who have been developed through strong recruiting, internal training and hands-on litigation experience. K&E has a strong, aggressive culture that differentiates it from most firms."

Standout talent includes **Richard Godfrey**, who specializes in antitrust and products liability and is handling multibillion-dollar litigation on behalf of BP in connection with the Gulf oil spill. In a recent victory for BP, Godfrey along with partner Martin Boles helped convince a New Orleans court to stay cross-claims against BP by partner Anadarko Petroleum, arguing that BP could enforce its arbitration clause with Anadarko, who could not prove grounds for a waiver. The same judge also dismissed multiple RICO claims alleging BP defrauded government regulators by misrepresenting drilling operations safety and spill response capabilities. **Michael Foradas** represents Dow Chemical, handling significant toxic tort, groundwater and insurance cases along with **Kevin Van Wart**, who handles high stakes toxic torts matters, and **Doug Kurtenbach**, who specializes in class actions. As the former Deputy Attorney General of the US, **Mark Filip**, who is part of BP's defense team, is sought after nationally by Fortune 500 companies involved in bet-the-company litigation and for officers facing multi-agency investigations.

### Latham & Watkins

Established in 1934, the international firm of Latham & Watkins is one of the largest in the world, with 2000 attorneys throughout offices in 31 countries. In Chicago, the firm is involved in a broad range of business and litigation matters for companies with economic interests in the Midwest and across the country. The firm is known for its strategic litigation skills in high-stakes matters in the areas of white collar, intellectual property, products liability and insurance.

Latham's talent roster includes esteemed trial lawyer **Sean Berkowitz**, the global chair of Latham's litigation department who specializes in complex commercial cases and is recognized nationally for his securities fraud and white-collar defense work on behalf of corporate giants such as Oracle. Referred to by peers as an "exceptional litigator," Berkowitz is a former assistant US attorney for the DOJ who directed the task force investigating the Enron corporate scandal and was the lead prosecutor against its chief officers. Also on the team is **Zach Fardon**, a former federal prosecutor who co-chairs the firm's Chicago litigation group. Fardon specializes in white collar, securities and professional liability and is tapped for high-profile cases involving public institutions and officials in a range of industries. Partner **Mary Rose Alexander** is considered a go-to trial lawyer for high-stakes litigation involving environmental contamination and toxic tort cases. Alexander's clients include Ford, Motor Company, Occidental Petroleum, Wells Dairy and The Southern Company.

### Mayer Brown

Mayer Brown is a brand name in Chicago and is also one of the largest firms in Illinois. It is considered a go-to firm in the state for commercial for commercial litigation,

# EXHIBIT K



Portfolio Media. Inc. | 111 West 19th Street, 5th Floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

## Trial Pros: Bartlit Beck's Chris Lind

*Law360, New York (April 25, 2016, 11:24 AM ET) --*

Chris Lind at Bartlit Beck Herman Palenchar & Scott LLP serves as lead trial counsel before juries, judges and arbitrators throughout the United States. His representations include matters involving antitrust, accountants liability, patent and trademark, fraud and securities litigation, breach of contract and insurance coverage. Lind also served as special trial counsel to the United States in its antitrust enforcement action against Microsoft.



**Q: What's the most interesting trial you've worked on and why?**

Chris Lind

A: I was lead trial counsel for the defendant in an antitrust case in Texas state court. The case, and the trial, were interesting on many levels. For starters, the stakes were huge — both as a practical matter and financially. The case also involved interesting and complex legal issues and the parties were represented by an all-star cast of lawyers, although I was a carpet bagger in a venue where "home town" counts. I recall walking into court the first time and seeing the opposing lawyer with his cowboy boots casually up on counsel table and a cigar in his mouth, chatting with the judge. The judge granted a TRO against us before I could say a word.

During the final pretrial hearing, the plaintiff announced that it wanted to call one of our witnesses adversely on the first day of trial. This came out of left field, as we thought she was a relatively tangential witness, and if she needed to testify we could call her in our case. There was a bigger problem, however. She was halfway around the world, on a long-planned trekking trip in the Himalayas. The judge nevertheless ordered that we produce her to testify within three days. Fortunately, one of our lawyers knew a Nepali Sherpa (seriously). The Sherpa was able to track down our witness and deliver word that she had to immediately return to the U.S.

What happened next was even more unusual. Just days before opening statements, the judge announced that the plaintiff had been making financial contributions to a boys' home where the judge had lived as a child and was currently a director. Less than 48 hours before opening statements, the region's presiding judge concluded that this relationship could lead an objective person to "harbor a reasonable doubt about the impartiality of the judge" and recused our judge.

With no judge and a pile of pretrial motions yet to be ruled on we took the night off to get some much needed rest. There was no way a new judge could be appointed, get up to speed on the case, rule on pending motions and start a trial in less than 48 hours. So we thought. We awoke the next morning to an order requiring us to be in court at 10 a.m. to meet our new judge. Despite knowing nothing about

the case, he ordered the trial to start the following morning.

We opened the next day, and the presentation of evidence began. We were deprived of a verdict, however, because the case ended up settling in the middle of trial. But we were able to talk to the jurors.

It's always enlightening to get the view from the other side of the rail, and this particular discussion did not disappoint. Every seasoned trial lawyer knows that jurors notice everything — the shine on your shoes, how you treat the courtroom staff, whether you are a straight-shooter, etc. But one juror in this trial took such observations to a new level. She remembered how much the plaintiff's lawyer stressed his client's high-tech, modern image while trying to paint my client as a low-tech dinosaur. She then went into a five-minute analysis of how the plaintiffs lawyer's own image didn't support his argument. Like an episode of Fashion Police, she explained in great detail how his suits were single-vent and a boxy cut, how he tied his tie in a Windsor knot, how his shoes looked, etc. His dress looked dated, not modern and cutting edge. She then described how our lawyers' suits had a more modern cut with double vents, how I tied my tie in a four-in-hand, how our shoes looked, etc. Her conclusion from all this: my client came across as the more modern, high-tech company. All this from how the lawyers' dressed.

**Q: What's the most unexpected or amusing thing you've experienced while working on a trial?**

A: I had a four-month trial in which both sides had hired very fancy economists to give expert testimony regarding antitrust and damages issues. My partner was cross-examining the plaintiff's star expert, who charged $900 an hour — an unheard of rate at the time. When asked about his high rate, the expert complained that by testifying that day he was "actually losing money because he had another case in California for which he was charging $950 per hour." The cross then wrapped up with the following: "Q: Life's tough, isn't it sir. A: It certainly is."

The jurors were paid $5 per week for their service. They had no sympathy for the plaintiff's expert. The next day, they all signed over their $5 checks to the expert and handed them to the judge alongside a Farside cartoon mocking the expert.

We didn't put on a single expert witness in our case. We won.

**Q: What does your trial prep routine consist of?**

A: My routine is simple: hunker down and prepare, prepare, prepare. When I am 30-60 days out from a trial, nothing else matters. I learn every fact, every bit of testimony, and every important document. About a week before trial, I move to the trial site where we take over a floor of a local hotel and recreate our offices.

At this point the rehearsal starts — although that's not really the right word, as it is critical not to sound rehearsed. The week before is spent white-boarding arguments, finalizing examination outlines and pacing the room riffing cross-examination points and opening statement bits and getting the team's feedback. All the while guzzling Water Joe and sugar-free Red Bull (because I hate the taste of coffee).

I also nail down exactly how I will present the key evidence — whether to use a hard copy of each key document or project it on the big screen. How I will call out each paragraph of the key documents and what language will I highlight. How I will carry out each key impeachment — with the deposition

transcript or by video. How exactly I will draw or write on the whiteboard to make a critical point or generate a key timeline. I plan and rehearse these logistics so they look effortless when carried out at trial, where anything can go wrong. Not only are your points more persuasive if you aren't fumbling around, but a clean delivery avoids wasting time. Jurors hate wasted time and appreciate the lawyer that didn't waste their time.

**Q: If you could give just one piece of advice to a lawyer on the eve of their first trial, what would it be?**

A: Credibility is everything. Don't overreach.

**Q: Name a trial attorney, outside your own firm, who has impressed you and tell us why.**

A: I tried a case against Bill Slusser in Houston years ago. He was very effective using just a handful of documents over and over again. We saw it as beating a dead horse, but the repetition worked. That said, they were among the worst documents I've ever seen. This was a patent infringement case where the company had written documents that said things like "remember, our intent was to copy."

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of the firm, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

All Content © 2003-2016, Portfolio Media, Inc.