Nanci E. Nishimura (SBN 152621)
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Mark C. Molumphy (SBN 168009)
Tamarah P. Prevost (SBN 313422)
Noorjahan Rahman (SBN 330572)
**COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
nnishimura@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com
mmolumphy@cpmlegal.com
tprevost@cpmlegal.com
nrahman@cpmlegal.com

Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Tel.: (415) 772-4700
Fax: (415) 772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

Robert N. Kaplan (admitted *pro hac vice*)
Hae Sung Nam (admitted *pro hac vice*)
Frederic S. Fox (*pro hac vice* to be sought)
Donald R. Hall (admitted *pro hac vice*)
Aaron L. Schwartz (*pro hac vice* filed)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Tel.: (212) 687-1980
Fax: (212) 687-7715
rkaplan@kaplanfox.com
hnam@kaplanfox.com
ffox@kaplanfox.com
dhall@kaplanfox.com
aschwartz@kaplanfox.com

*Proposed Interim Co-Lead Class Counsel
for the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE GOOGLE PLAY CONSUMER ANTITRUST LITIGATION**<br><br>This Document Relates to All Actions | Case No. 3:20-cv-05761-JD<br><br>**NOTICE OF MOTION AND MOTION TO APPOINT COTCHETT, PITRE & McCARTHY, LLP AND KAPLAN FOX & KILSHEIMER LLP AS INTERIM CO-LEAD COUNSEL AND FOR APPOINTMENT OF A STEERING COMMITTEE; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT**<br><br>Hearing Date:   December 31, 2020<br>Hearing Time:  10:00 a.m.<br>Judge:          Hon. James Donato |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **December 31, 2020, at 10:00 a.m.**, or as soon thereafter as this matter may be heard, before the Honorable James Donato of the United States District Court, Northern District of California, Courtroom 11 – 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Cotchett, Pitre & McCarthy, LLP ("CPM") and Kaplan Fox & Kilsheimer, LLP ("Kaplan Fox") will move and hereby do move the Court for an order appointing them to serve as Interim Co-Lead Counsel for the Consumer Plaintiffs.

This motion is brought pursuant to Federal Rule of Civil Procedure ("Rule") 23(g). CPM and Kaplan Fox satisfy all the criteria under Rule 23(g) and will zealously and competently represent the interests of the class in this important litigation. This complex antitrust action will benefit from the appointment of experienced and diverse antitrust class action attorneys and trial lawyers who will take personal responsibility for leading and directing this litigation. As the following demonstrates, CPM and Kaplan Fox are well-qualified for appointment as Interim Co-Lead Counsel due to their extensive experience in antitrust class action litigation and their trial experience, including leadership roles in many of the major antitrust class action cases in the Northern District of California and throughout the country.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Adam Zapala and related exhibits, the Declaration of Hae Sung Nam and related exhibits, and any additional argument and evidence the Court may consider at the hearing.

Dated: November 25, 2020

Respectfully submitted,

By: _/s/ Nanci E. Nishimura_

Nanci E. Nishimura (SBN 152621)
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Mark C. Molumphy (SBN 168009)
Tamarah P. Prevost (SBN 313422)
Noorjahan Rahman (SBN 330572)
nnishimura@cpmlegal.com
azapala@cpmlegal.com

ecastillo@cpmlegal.com
mmolumphy@cpmlegal.com
tprevost@cpmlegal.com
nrahman@cpmlegal.com


**KAPLAN FOX & KILSHEIMER LLP**


By: */s/ Hae Sung Nam*
Hae Sung Nam (admitted *pro hac vice*)
Robert N. Kaplan (admitted *pro hac vice*)
Frederic S. Fox (*pro hac vice* to be sought)
Donald R. Hall (admitted *pro hac vice*)
Aaron L. Schwartz (*pro hac vice* filed)
850 Third Avenue
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714
hnam@kaplanfox.com
rkaplan@kaplanfox.com
ffox@kaplanfox.com
dhall@kaplanfox.com
aschwartz@kaplanfox.com

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com


*Proposed Interim Co-Lead Class Counsel for the Putative Class*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION................................................................................1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.............................1

    A.    Google's Alleged Monopolization of the Mobile App Distribution Market...........1

    B.    Consolidation of the Google Play Consumer Actions .............................2

III.  LEGAL STANDARD ..........................................................................3

IV.   ARGUMENT ...................................................................................4

    A.    CPM and Kaplan Fox Have Performed Substantial Work to Develop the Claims Asserted in this Litigation (Fed. R. Civ. P. 23(g)(1)(A)(i)).....................................4

    B.    CPM and Kaplan Fox Have Unparalleled Experience in Prosecuting Complex Cases and Extensive Knowledge of the Applicable Law (Fed. R. Civ. P. 23(g)(1)(A)(ii) and (iii)).....................................................5

    C.    CPM and Kaplan Fox's Litigation Teams Demonstrate Substantial Diversity that Will Benefit the Class ...........................................................9

    D.    CPM and Kaplan Fox Are Willing to Commit Substantial Resources to Represent the Classes (Fed. R. Civ. P. 23(g)(1)(A)(iv)).........................................12

    E.    CPM and Kaplan Fox Will Control Attorneys' Fees and Time Reporting to Ensure Efficiency on Behalf of the Class ...............................................14

    F.    The Court Should Appoint a Steering Committee to Assist Co-Lead Counsel......14

V.    CONCLUSION ...............................................................................15

**Cases**

*In re Air Cargo Antitrust Litigation,*
   MDL 1775 (E.D.N.Y.) ................................................................................................*passim*

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
   No. 06-md-1775-JG (E.D.N.Y. Aug. 31, 2015) ............................................................ 9

*In re Ambac Financial Group, Inc. Securities Litigation,*
   No. 08-411-NRB (S.D.N.Y.) ................................................................................... 7, 10

*In re AOL Time Warner, Inc. Securities Litigation,*
   06-cv-0695 (S.D.N.Y.) ............................................................................................... 8

*In re Apple Device Performance Litigation,*
   No. 5:18-md-02827-EJD (N.D. Cal.) ....................................................................... 12

*In re: Apple Inc. Device Performance Litigation,*
   No. 18-md-02827-EJD (N.D. Cal.) ...................................................................... 7, 11

*In re Automotive Parts Antitrust Litigation,*
   Case No. 2:12-md-02311-SFC (E.D. Mich.) ..................................................... 5, 10, 12

*In re Bank of America Corp., Securities, Derivative, and ERISA Litigation,*
   No. 1:09-md-020508-PKC (S.D.N.Y.) ........................................................ 7, 10, 11, 13

*In re: Bearings Cases,*
   No. 12-md-02311 (E.D. Mich.) ................................................................................ 12

*In re Broiler Chicken Antitrust Litigation,*
   1:16-cv-08637 (N.D. Ill.) ........................................................................................... 9

*In re Broiler Chicken Antitrust Litigation,*
   Case No. 1:16-cv-08637-TMD (N.D. Ill.) .................................................................. 6

*In re Capacitors Antitrust Litigation,*
   Case No. 3:14-cv-03264-JD (N.D. Cal.) .............................................................. 6, 10

*In re Cathode Ray Tube (CRT) Antitrust Litigation,*
   4:07-cv-05944-JST (N.D. Cal.) .................................................................................. 6

*In re Caustic Soda Antitrust Litigation,*
   1:19-cv-00385-EAW-MJR (W.D.N.Y.) ....................................................................... 8

*Coleman v. Gen. Motors Acceptance Corp.,*
   220 F.R.D. 64 (M.D. Tenn. 2004) .............................................................................. 3

*County of Santa Clara et al. v. Atlantic Richfield,*
    50 Cal. 4th 35 (2010) .................................................................................. 13

*County of Santa Clara et al. v. Atlantic Richfield,*
    161 Cal. App. 4th 1140 (2008) .................................................................. 13

*County of Santa Clara et al. v. Atlantic Richfield,*
    137 Cal. App. 4th 292 (2006) .................................................................... 13

*In re Domestic Airline Travel Antitrust Litigation,*
    Case No. 1:15-mc-01404-CKK (D.D.C.) ............................................. 6, 10

*In re Dynamic Random Access Memory (DRAM II) Antitrust Litigation,*
    Case No. 4:18-cv-03805-JSW (N.D. Cal.) ................................................... 6

*Epic Games, Inc. v. Google LLC,*
    3:20-cv-05671-JD (N.D. Cal. 2020) ............................................................. 5

*In re Fannie Mae Securities Litigation,*
    No. 08-cv-7831-PAC (S.D.N.Y.) .......................................................... 7, 10

*In re Flat Glass Antitrust Litig.,*
    385 F.3d 350 (3d Cir. 2004) ......................................................................... 8

*In re Flat Glass Antitrust Litigation,*
    No. 03-cv-2920 (W.D. Pa.) ......................................................... 8, 10, 11, 13

*In re Generic Pharmaceuticals Pricing Antitrust Litigation,*
    2:16-md-02724-CMR (E.D. Pa.) ................................................................. 7

*In re: Generic Pharmaceuticals Pricing Antitrust Litigation,*
    No. 16-cv-02724 (E.D. Pa.) .................................................................... 8, 10

*In re Google Antitrust Litigation,*
    MDL No. 2981 (JPML 2020) ...................................................................... 2

*Herrera v. Google,*
    5:20-cv-07365 (N.D. Cal.) ...................................................................... 1, 4

*In re High Fructose Corn Syrup Antitrust Litig.,*
    295 F.3d 651 (7th Cir. 2002) ....................................................................... 8

*In re High Fructose Corn Syrup Antitrust Litigation,*
    MDL No. 1087 (C.D. Ill.) ............................................................. 8, 9, 11, 13

*In re International Air Transportation Surcharge Antitrust Litigation,*
    Case No. 3:06-md-01793-CRB (N.D. Cal.) ................................................ 6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation,*
    1:14-md-02542 (S.D.N.Y) .................................................................... 8, 11

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*,
   1:14-md-02542 (S.D.N.Y) ............................................................................ 10

*In re Lenovo Adware Litig.*,
   Case No. 15-md-02624, 2015 WL 10890657 (N.D. Cal. July 27, 2015) ................... 3

*Levitte v. Google, Inc.*,
   Nos. C 08-03369. 2009 WL 482252 (N.D. Cal. Feb. 25, 2009) ......................... 3

*In re Lithium Ion Batteries Antitrust Litigation*,
   Case No. 4:13-md-02420-YGR (N.D. Cal.) ................................................ 6

*Massoyan v. HL Leasing, Inc.*,
   Case No. 09-CECG 01839 (Fresno Cty. Sup. Ct.) ....................................... 12

*McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*,
   No. 3:18-cv-01921-SI (D. Or.) ............................................................ 12

*In re Merrill Lynch & Co., Inc. Securities, Derivative, & ERISA Litigation*,
   No. 07-cv-9633 (S.D.N.Y.) ................................................................ 11

*In re Methionine Antitrust Litigation*,
   Case No. 3:00-md-01311-CRB (N.D. Cal.) ............................................... 6

*Millman v. Brinkley*,
   Case No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113 (N.D. Ga. Oct. 1,
   2004) ........................................................................................ 5

*In re Optical Disk Drive (ODD) Antitrust Litigation*,
   3:10-md-02143-RS (N.D. Cal.) ............................................................ 6

*In re Packaged Seafood Prod. Antitrust Litigation*,
   3:15-md-02670 (S.D. Cal.) ................................................................ 9

*Paraggua v. LinkedIn Corp.*,
   No. C 12-3088 EJD, 2012 U.S. Dist. LEXIS 123226 (N.D. Cal. Aug. 29, 2012) ........ 3

*In re Parking Heaters Antitrust Litigation*,
   Case No. 1:15-mc-00940-JG (E.D.N.Y.) ................................................... 7

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
   1:05-md-01720 (E.D.N.Y) .................................................................. 10

*Pepper v. Apple Inc*,
   139 S. Ct. 1514 (2019) ................................................................... 4

*Precision Associates v. Panalpina*,
   Case No. 1:08-cv-00042-BMCJG (E.D.N.Y.) .......................................... 6, 10

*In re Qualcomm Antitrust Litigation*,
   Case No. 5:17-md-02773-LHK (N.D. Cal.) ............................................ 7, 10

*In re Resistors Antitrust Litigation,*
    Case No. 3-15-cv-03820-JD ................................................................................... 6, 10

*Sbriglio et. al. v. Zuckerberg et. al.,*
    C.A. No. 2020-0363-JRS (Del. Ch. Ct.) .................................................................... 8

*In re Static Random Access Memory (SRAM) Antitrust Litigation,*
    Case No. 4:07-md-01819-CW (N.D. Cal.) .................................................................. 6

*In re: Surescripts Antitrust Litigation,*
    1:19-cv-06627 (N.D. Ill.) ........................................................................................... 8

*In re Transpacific Passenger Air Transportation Antitrust Litigation,*
    3:07-cv-05634-CRB (N.D. Cal.) ..................................................................... 6, 10, 12

*U.S. et. al. v. Google LLC,*
    1:20-cv-03010 (D.D.C.) ............................................................................................. 2

*In re Vizio Inc. Consumer Privacy Litigation,*
    Case No. 16-md-02693-JLS (C.D. Cal.) ................................................................... 10

*In re Yahoo Mail Litigation,*
    No. 5:13-cv-04980-LHK (N.D. Cal.) ....................................................................... 12

**Statutes**

28 U.S.C. § 1407 ................................................................................................................. 2

**Other Authorities**

*available at*:
    https://judiciary.house.gov/uploadedfiles/competitionindigitalmarkets.pdf .............. 2

Manuel for Complex Litig. (4th ed. 2004)
    § 21.11 ....................................................................................................................... 3

**Rules**

Federal Rules of Civil Procedure
    Rule 23(g) ..................................................................................................... 3, 4, 5, 15
    Rule 23(g)(1)(A) ........................................................................................................ 3
    Rule 23(g)(1)(A)(i) .................................................................................................... 4
    Rule 23(g)(1)(A)(i)-(iv) ............................................................................................ 3
    Rule 23(g)(1)(A)(ii) and (iii) .................................................................................... 5
    Rule 23(g)(1)(A)(iv) ............................................................................................... 12
    Rule 23(g)(1)(B) ........................................................................................................ 3
    Rule 23(g)(3) .............................................................................................................. 3

**STATEMENT OF ISSUES TO BE DECIDED**

(1) Whether the Court should appoint Cotchett, Pitre & McCarthy, LLP ("CPM") and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Interim Co-Lead Counsel ("Co-Lead Counsel") for the consumer class given their extensive experience in antitrust class actions and ability to work cooperatively with a wide-range of stakeholders, including opposing counsel; and

(2) Whether the Court should appoint a Steering Committee of qualified firms to support Co-Lead Counsel and to increase the effectiveness and efficiency of the prosecution of this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

CPM and Kaplan Fox respectfully submit this motion seeking to serve as Interim Co-Lead Counsel for the consumer class. These law firms have successfully litigated myriad complex cases, including antitrust and consumer protection cases, among many other practice areas. Most critically, CPM and Kaplan Fox each have extensive experience litigating the types of claims asserted in this case, and have the resources necessary to vigorously prosecute this Action and protect the interests of the Class. These firms have demonstrated that they achieve outstanding results on behalf of classes they represent, through the substantial recoveries they have obtained in other cases. Moreover, each firm and litigation team are diverse throughout their ranks and are committed to giving junior lawyers meaningful opportunities to develop, which will serve the class well. Finally, CPM and Kaplan Fox satisfy the Federal Rule of Civil Procedure ("Rule) 23(g) factors and are thus well situated to serve as Interim Co-Lead Counsel for the consumer class.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Google's Alleged Monopolization of the Mobile App Distribution Market

Google owns and operates the largest app store on earth, the Google Play Store. ¶ 2.[1] The Google Play Store is available to all mobile device users running Google's Android operating system ("OS"). The Google Play Store offers users the choice of more than 2.96 million apps, and, in 2019, users worldwide downloaded those apps more than 84.3 billion times. *Id.*

---

[1] "¶ __" refers to allegations in Plaintiff Herrera's Class Action Complaint, dated October 20, 2020. *See Herrera v. Google*, 5:20-cv-07365 (N.D. Cal.) at ECF No. 1

To build this prodigious marketplace, Google represented that the Android OS would be maintained as "open" source software, whereby anyone could create Android-compatible products without undue restrictions. ¶ 3. But, as Google's Android OS became the "must-have" operating software for mobile device original-equipment manufacturers ("OEMs"), Google began to close its ecosystem through a series of restrictive agreements that were designed to (and in fact did) deter and eliminate competition in the market for Android mobile apps and in-app products, ("the Android Mobile App Distribution Market"). *Id.* Google's anticompetitive conduct allowed it to extract supra-competitive profits from consumers—like Plaintiffs and Class Members—who paid Google directly for mobile apps purchased through the Google Play Store. ¶ 4. Indeed, the Google Play Store contains more than 90 percent of Android mobile app downloads worldwide. Google withholds 30% from the price paid by Class Members for mobile app and in-app purchases. This enabled Google to generate more than $21.5 billion in 2018. *Id.*; ¶ 30

## B. Consolidation of the Google Play Consumer Actions

Numerous consumer putative class actions have been filed against Google in the Northern District of California, which have been assigned to this Court. Plaintiffs' cases were filed shortly after the publication of the detailed, 450-page U.S. Majority Staff Report and Recommendations on competition in digital markets. *See* Majority Staff of H. Sub-Comm. on Antitrust, Commercial and Admin. Law, Comm. on the Judiciary, 116th Cong., Investigation of Competition in Digital Markets (Oct. 4, 2020) (hereinafter, "U.S. House Report"), *available at*: https://judiciary.house.gov/uploadedfiles/competition in digital markets.pdf. Similar cases were also filed in the Central District of California and in the District of Columbia, where the U.S. Department of Justice ("DOJ") and numerous state attorneys general filed an antitrust case against Google on October 20, 2020. *See U.S. et. al. v. Google LLC*, 1:20-cv-03010 (D.D.C.) at ECF No. 1.

On November 5, 2020, Plaintiff J. Jackson Paige moved the Judicial Panel on Multidistrict Litigation ("JPML"), pursuant to 28 U.S.C. § 1407, to transfer all related Google Play consumer and developer antitrust actions to the District of Columbia, as well as certain advertiser class

actions. *See In re Google Antitrust Litigation*, MDL No. 2981 (JPML 2020) at ECF No. 1. Responses are due on November 27, 2020 and any reply is due on December 4, 2020. ECF No. 4.

## III.   LEGAL STANDARD

Rule 23(g) authorizes courts to "designate interim counsel to act on behalf of a putative class before determining whether to certify the actions as a class action." Fed. R. Civ. P. 23(g)(3); *see also Levitte v. Google, Inc.*, Nos. C 08-03369 et al., 2009 WL 482252, at *2 (N.D. Cal. Feb. 25, 2009). The designation of interim counsel "clarifies responsibility for protecting the interests of the class during precertification activities . . . ." Manual for Complex Litig. § 21.11 (4th ed. 2004). "Instances in which interim class counsel is appointed are those in which overlapping, duplicative, or competing class suits are pending before a court, so that appointment of interim counsel is necessary to protect the interests of class members." *Paraggua v. LinkedIn Corp.*, No. C 12-3088 EJD, 2012 U.S. Dist. LEXIS 123226, at *5-6 (N.D. Cal. Aug. 29, 2012) (Davila, J.) (quoting *White v. TransUnion, LLC*, 239 F.R.D. 681, 683 (C.D. Cal. 2006)). In considering a motion to appoint interim lead counsel, a court must determine what firm or firms would best represent the interests of the class and who is best able to accomplish the class action goals of efficiency and economy in doing so. *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 100 (M.D. Tenn. 2004). To make this determination, courts look to the factors outlined in Rule 23(g)(1)(A). *In re Lenovo Adware Litig.*, Case No. 15-md-02624, 2015 WL 10890657, at *1 n.1 (N.D. Cal. July 27, 2015).

Rule 23(g)(1)(A) sets forth four considerations for the appointment of interim lead counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed R. Civ. P. 23(g)(1)(A)(i)-(iv). Importantly, no single factor is determinative; all factors must be weighed to determine who can best represent the class. Advisory Committee Notes (2003 Amendments). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

# IV.  ARGUMENT

As provided below, each of the Rule 23(g) factors support the appointment of CPM and Kaplan Fox as Interim Co-Lead Counsel. As noted, both firms have an extensive history of litigating and trying complex cases, including antitrust and consumer cases throughout the United States. The firms' attorneys are widely recognized for their trial and complex litigation experience.

### A.  CPM and Kaplan Fox Have Performed Substantial Work to Develop the Claims Asserted in this Litigation (Fed. R. Civ. P. 23(g)(1)(A)(i))

To date, CPM and Kaplan Fox have devoted substantial resources—both in time and money—to investigate the allegations in the class action complaints and to advance the litigation. These firms will continue to devote all necessary resources going forward to successfully pursue this matter on behalf of the Class.

CPM and Kaplan Fox have been investigating Google's conduct since at least 2018. They have closely followed the multiple European Union antitrust investigations into Google's conduct, including the July 2018 decision to fine Google $5 billion for unlawfully monopolizing the mobile Android market based on its licensing of Android applications, thereby forcing Google to announce that it will give European users of Android phones the option of which browser and search engine they want on their phone at the time of purchase.  *See* Declaration of Hae Sung Nam ("Nam Decl."); Declaration of Adam J. Zapala ("Zapala Decl.").

But it was not until the extensive U.S. House Report that the law firms felt confident there was sufficient evidence of unlawful conduct to file an action. In the days between the publication of the U.S. House Report and the filing of the complaints, counsel undertook an extensive analysis of the relevant facts and law. Among other things, this led counsel to determine that, based on recent Supreme Court precedent, the class may assert direct purchaser Sherman Act claims, thereby obviating the need for myriad repealer state causes of action asserted in other consumer actions. *See Pepper v. Apple Inc*, 139 S. Ct. 1514 (2019) (finding that consumers were direct purchasers of apps because they paid Apple). After the *Herrera* complaint was filed, Google agreed with this analysis, where it argued that under the Supreme Court's decision in *Pepper*, consumer plaintiffs

were direct purchasers under *Illinois Brick. See Epic Games, Inc. v. Google LLC*, 3:20-cv-05671-JD (N.D. Cal. 2020), ECF No. 91-1 at 2-4. *Id.* Nam Decl. ¶ 3.

CPM and Kaplan Fox have also retained and consulted with an economic expert who reviewed and commented on the allegations before the complaints were filed. Productive consultations have continued. The moving law firms have further consulted with an industry expert, who is highly knowledgeable about the Android ecosystem. Nam Decl. ¶ 3; Zapala Decl. ¶¶ 3-8.

CPM and Kaplan Fox have also worked to ensure the efficient coordination of the proceedings, including helping to schedule a conference call for November 25, 2020 among all counsel for consumer plaintiffs to discuss leadership and organization of plaintiffs' counsel, along with the filing of a Consolidated Amended Complaint. In this regard, the moving firms had hoped to reach a consensus on leadership prior to any contested motion practice. But despite the entreaties, another group filed a leadership motion, thereby causing CPM and Kaplan Fox to file this motion.

**B.**     **CPM and Kaplan Fox Have Unparalleled Experience in Prosecuting Complex Cases and Extensive Knowledge of the Applicable Law (Fed. R. Civ. P. 23(g)(1)(A)(ii) and (iii))**

In selecting lead counsel:

> [T]he "guiding principle" is who will best serve the interest of the plaintiffs. The criteria for selecting counsel include factors as experience and prior success record, the number, size, and extent of involvement of represented litigants, the advanced stage of the proceedings in a particular suit, and the nature of the cases of action alleged.

*Millman v. Brinkley,* Case No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113, at *9 (N.D. Ga. Oct. 1, 2004) (citations omitted). The foregoing Rule 23(g) factors weigh heavily in favor of appointing CPM and Kaplan Fox as Co-Lead Counsel in the consumer cases.

**CPM's Vast Experience in Consumer Antitrust Litigation.** CPM has served in a leadership capacity in many of the largest and most complex consumer antitrust class action cases in the country. For example, CPM has served with distinction as lead counsel to classes of consumers who purchased cars that included price-fixed components. *See In re Automotive Parts Antitrust Litigation,* Case No. 2:12-md-02311-SFC (E.D. Mich.) ("*Auto Parts"*). In *Auto Parts*, CPM has successfully recovered over $1 billion on behalf of consumer purchasers, in a case that the Department of Justice has called one of the biggest conspiracies in history. To CPM's

knowledge, this is the largest recovery by consumer indirect purchasers in the history of private antitrust enforcement. Zapala Decl. ¶¶ 9-29.

CPM has also served in many other leadership positions in cases involving consumers, or other purchasers, harmed by anticompetitive conduct. *See, e.g., In re Transpacific Passenger Air Transportation Antitrust Litigation*, 3:07-cv-05634-CRB (N.D. Cal.) ("*Transpacific*") (serving as co-lead counsel and recovering approximately $150 million); *In re Capacitors Antitrust Litigation,* Case No. 3:14-cv-03264-JD (N.D. Cal.) ("*Capacitors*") (serving as lead counsel for the indirect purchasers and recovering over $80 million); *In re Resistors Antitrust Litigation,* Case No. 3-15-cv-03820-JD) (N.D. Cal.) (*"Resistors"*) (serving as lead counsel for the indirect purchasers and recovering over $30 million); *In re Lithium Ion Batteries Antitrust Litigation*, Case No. 4:13-md-02420-YGR (N.D. Cal.) (serving as co-lead counsel for indirect purchasers and recovering over $100 million) ("*Batteries"*); *In re Domestic Airline Travel Antitrust Litigation,* Case No. 1:15-mc-01404-CKK (MDL No. 2656) (D.D.C.) ("*Domestic Air"*) (serving as lead counsel and thus far recovering $60 million in ongoing case); *In re Methionine Antitrust Litigation*, Case No. 3:00-md-01311-CRB (N.D. Cal.) (serving as co-lead counsel); *In re Broiler Chicken Antitrust Litigation,* Case No. 1:16-cv-08637-TMD (N.D. Ill.) (serving as co-lead class counsel for a class of indirect commercial food preparers, such as restaurants); *In re Dynamic Random Access Memory (DRAM II) Antitrust Litigation,* Case No. 4:18-cv-03805-JSW (N.D. Cal.) (serving as co-lead counsel); *In re Static Random Access Memory (SRAM) Antitrust Litigation,* Case No. 4:07-md-01819-CW (N.D. Cal.) (serving as lead counsel); *In re International Air Transportation Surcharge Antitrust Litigation,* Case No. 3:06-md-01793-CRB (N.D. Cal.) (serving as co-lead counsel); *Precision Associates v. Panalpina,* Case No. 1:08-cv-00042-BMCJG (E.D.N.Y.) ("*Freight Forwarders"*) (serving as lead counsel and recovering over $400 million); *In re Cathode Ray Tube (CRT) Antitrust Litigation,* 4:07-cv-05944-JST (N.D. Cal.) (serving on Executive Committee); *In re Optical Disk Drive (ODD) Antitrust Litigation,* 3:10-md-02143-RS (N.D. Cal.) (serving on Executive Committee). Zapala Decl. ¶¶ 9-32.

In addition to the foregoing, CPM has further relevant antitrust experience in this District as CPM was appointed by Judge Lucy H. Koh to be co-lead counsel in the massive monopoly class

action *In re Qualcomm Antitrust Litigation*, Case No. 5:17-md-02773-LHK (N.D. Cal.) ("*Qualcomm*"). Zapala Decl. ¶ 24. The claims in *Qualcomm* are also on behalf of consumer purchasers.

CPM has also served in other leadership positions in complex antitrust class actions, including: *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 2:16-md-02724-CMR (E.D. Pa.) (serving on plaintiffs' steering committee) and *In re Parking Heaters Antitrust Litigation*, Case No. 1:15-mc-00940-JG (E.DN.Y.) (serving as liaison counsel). Zapala Decl. ¶ 17.

This vast array of experience has afforded CPM expertise in antitrust class actions. CPM has amassed insight into the nuances of managing complex cases. It has successfully addressed arguments and issues likely to be raised in motions to dismiss in this case, conducted extensive discovery of defendant entities, successfully moved for class certification utilizing econometric and statistical techniques to measure antitrust impact and injury, and negotiated large recoveries for consumer plaintiffs. Consequently, CPM can efficiently and effectively manage this complex action and are well-situated to serve as Co-Lead Counsel.

**Kaplan Fox's Extensive Experience in Complex Litigation**. Founded in 1954, Kaplan Fox is one of the most established plaintiffs' litigation practices in the country, and the firm's early commitment to high-stakes litigation continues to define the firm to the present day. Nam Decl. ¶¶ 5-10; 17-18. The National Law Journal has named Kaplan Fox on its list of the nation's top 10 "hot" litigation boutiques, a list that included both plaintiff and defense firms. More than half of the firm's partners have been rated "Super Lawyers." Today, Kaplan Fox has 25 lawyers in four litigation practice areas (antitrust, securities, consumer protection and cybersecurity/data privacy) and a private client services group led by the former general counsel of Sotheby's. *Id.*

Kaplan Fox has been repeatedly appointed by courts in this district and by courts around the country to lead highly complex litigation matters. *See, e.g., In re Air Cargo Antitrust Litigation*, MDL 1775 (E.D.N.Y.) ("*Air Cargo*"); *In re: Apple Inc. Device Performance Litigation*, No. 18-md-02827-EJD (N.D. Cal.); *In re Bank of America Corp., Securities, Derivative, and ERISA Litigation*, No. 1:09-md-020508-PKC (S.D.N.Y.); *In re Fannie Mae Securities Litigation*, No. 08-cv-7831-PAC (S.D.N.Y.); *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-411-

NRB (S.D.N.Y.); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, 1:14-md-02542 (S.D.N.Y) ("*Keurig*"); *In re: Surescripts Antitrust Litigation*, 1:19-cv-06627 (N.D. Ill.) ("*Surescripts*"); *In re Caustic Soda Antitrust Litigation*, 1:19-cv-00385-EAW-MJR (W.D.N.Y.) ("*Caustic Soda*"); *In re Flat Glass Antitrust Litigation*, No. 03-cv-2920 (W.D. Pa.) ("*Flat Glass*"); *In re High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087 (C.D. Ill.) ("*High Fructose Corn Syrup*"). Nam Decl. ¶¶ 5-10; 17-18. Kaplan Fox also represented the California Public Employees Retirement System ("CalPERS") in *In re AOL Time Warner, Inc. Securities Litigation*, 06-cv-0695 (S.D.N.Y.) and is currently representing the California State Teachers' Retirement System ("CalSTRS") in derivative litigation against Facebook's board of directors, *Sbriglio et. al. v. Zuckerberg et. al.*, C.A. No. 2020-0363-JRS (Del. Ch. Ct.).

As a lead counsel in *Air Cargo*, MDL 1775, which concerned a conspiracy to fix surcharges on cargo rates, Kaplan Fox recovered more than $1 billion for a class after more than 10 years of hard fought litigation, including dozens of depositions and extensive motion practice. Likewise, Kaplan Fox was appointed lead counsel in *High Fructose Corn Syrup*, MDL No. 1087, where the Seventh Circuit issued a groundbreaking decision reversing summary judgment for defendants in an appeal argued by a Kaplan Fox partner. *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002). The case settled on the eve of trial for $530 million. Nam Decl. ¶¶ 5-10.

In *Flat Glass*, No. 03-cv-2920, Kaplan Fox was appointed lead counsel, and after the Court granted summary judgment for one of the Defendants, a Kaplan Fox partner successfully argued an appeal before the Third Circuit, which led to another groundbreaking decision reversing, in large part, summary judgment. *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 353 (3d Cir. 2004). Later, on the eve of trial, the case settled with the last remaining defendant. The settlement totaled $121 million. Nam Decl. ¶ 8.

Currently, Kaplan Fox is appointed lead counsel in *Keurig*, 1:14-md-02542, and *Caustic Soda*, 1:19-cv-00385; Chair of the Plaintiffs' Executive Committee in *Surescripts*, 1:19-cv-06627; and a member of the six firm Direct Purchaser Steering Committee in the sprawling *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-cv-02724 (E.D. Pa.). Kaplan Fox is also

currently representing substantial businesses, including public companies, in antitrust litigation, including in *In re Packaged Seafood Prod. Antitrust Litigation*, 3:15-md-02670 (S.D. Cal.), and in *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.). Ham Decl. ¶ 10, 16.

In antitrust cases, courts have repeatedly been complimentary of Kaplan Fox's attorneys. For example, in *High Fructose Corn Syrup*, the presiding judge, Michael H. Mihm, stated that "[t]he opinion of competent counsel. I respect their opinion greatly . . . ." and "I've said many times during this litigation that you and the attorneys who represented the defendants here are as good as it gets. Very professional . . . ." *Id.* ¶ 7.[2] Similarly, in *Air Cargo*, the Honorable John Gleeson stated, in denying defendants' motions for summary judgment and granting plaintiffs' motions to strike defendants' affirmative defenses (which was argued by Kaplan Fox attorneys): "Well, first of all, thank you for your advocacy, both in writing and orally. You travel in different circles than the ones I travel in so you probably don't appreciate how unusual it is to have such excellent lawyering, so I am grateful for it." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775-JG (E.D.N.Y. Aug. 31, 2015). Nam ¶ 6.

### C. CPM and Kaplan Fox's Litigation Teams Demonstrate Substantial Diversity that Will Benefit the Class

Courts have correctly voiced their concerns about a lack of diversity in lead counsel appointments in complex cases. The CPM and Kaplan Fox litigation teams demonstrate not only unrivaled experience and demonstrated results in antitrust class actions, but also diversity in their litigation teams that will serve the class and bar well, and a commitment to giving junior lawyers

---

[2] On other occasions Judge Mihm stated: (a) "I want to thank you for the high quality of your presentation today. I told my interns earlier today that, you know, everyone involved in a case like this has really significant obligations and responsibilities. As lawyers, you to your clients. From where I'm sitting, to everybody. So it's very serious business. At the same time, I woke up early this morning because I couldn't wait to get here because I knew this was going to be a really interesting day listening to good lawyers and you didn't disappoint me." Judge Mihm later stated: (b) "Well, I do want to say, I know that there have been some rather contentious arguments here, but I do appreciate the quality of the arguments and the briefs and I do want to say I recognize that this could be a lot worse than it is and it's as good as it is because I think you've all worked quite hard . . . It's a real pleasure to deal with lawyers of your quality and professionalism, so thank for that."

opportunities to argue non-dispositive motions, first-chair depositions, and cross-examine witnesses.

**CPM's Litigation Team.** The undersigned Partner, **Nanci E. Nishimura,** has worked extensively in complex business cases, has been named one of the Top 55 Women Lawyers in California for 2020, and has served as Chair to the California Commission on Judicial Performance.

CPM Partner **Elizabeth Castillo** has worked extensively in the *Auto Parts* litigation and the consumer airline antitrust litigation in which CPM engages. Her work has been repeatedly recognized by the American Antitrust Institute ("AAI").

CPM Partner **Adam Zapala** has had primary responsibility for prosecuting many of the firm's highly complex class action antitrust cases listed in this application, such as *Transpacific*, *Auto Parts*, *Capacitors, Resistors, Qualcomm, Freight Forwarders, Domestic Air, Generic Drugs* and others. Mr. Zapala has also served as lead counsel in a cutting-edge privacy case, *In re Vizio Inc. Consumer Privacy Litigation*, Case No. 16-md-02693-JLS (C.D. Cal.), recovering $17 million, along with groundbreaking injunctive relief and significant business practice changes.

CPM Partner **Mark C. Molumphy** has been named one of the Top 100 Lawyers in California for 2020 with 26 years of complex litigation and trial experience.

CPM attorney **Noorjahan Rahman** and other associates are experienced lawyers who have each worked on complex cases and will be available to work on this case should the Court appoint CPM and Kaplan Fox. Zapala Decl. ¶¶ 33-38.

**Kaplan Fox's Litigation Team.** Kaplan Fox's team in this matter will be led by **Hae Sung Nam**. Nam Decl. ¶ 19. Ms. Nam has been representing consumers, employees, and investors in complex class actions and multi-district litigation throughout the country for over 21-years, including *In re Bank of America Corp., Securities, Derivative, and ERISA Litigation*, No. 1:09-md-020508-PKC (S.D.N.Y.), *In re Fannie Mae Securities Litigation*, No. 08-cv-7831-PAC (S.D.N.Y.), *In re Ambac Financial Group, Inc. Securities Litigation*, No. 08-411-NRB (S.D.N.Y.). She also has substantial experience in antitrust matters, including *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-cv-02724 (E.D. Pa.), *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, 1:14-md-02542 (S.D.N.Y), *In re Payment Card Interchange Fee and Merchant*

*Discount Antitrust Litigation*, 1:05-md-01720 (E.D.N.Y), *In re Flat Glass Antitrust Litigation*, No. 03-cv-2920 (W.D. Pa.), and *In re High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087 (C.D. Ill.). *See* Nam Decl. ¶ 19. Ms. Nam will also be supported by other attorneys at Kaplan Fox.

Kaplan Fox Partner **Robert Kaplan** is widely recognized as a leading plaintiff's litigator and has led the prosecution of numerous antitrust and securities fraud actions, including having served as lead or co-counsel in *Air Cargo*, *In re Cast Iron Soil Pipe and Fittings Antitrust Litigation*, and *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*. Nam Decl. ¶ 20.

Kaplan Fox Partner **Frederic Fox** successfully represented several large convenience store chains in antitrust litigation against Visa and Mastercard. He has also been appointed Lead Counsel in class action litigation arising out of the 2008 financial crisis. For example, he was Lead Counsel in *In re Bank of America Corp., Securities, Derivative, and ERISA Litigation*, No. 1:09-md-020508-PKC (S.D.N.Y.), which settled on the eve of trial for $2.4 billion, and in in *In re Merrill Lynch & Co., Inc. Securities, Derivative, & ERISA Litigation*, No. 07-cv-9633 (S.D.N.Y.), which returned $450 million to the class. Nam Decl. ¶ 21.

Kaplan Fox Partner **Laurence King** is currently appointed by Judge Davila as co-lead counsel to manage the massive MDL concerning claims Apple deceived consumers by throttling processor speeds of Apple devices like iPhones and iPads in *In re: Apple Inc. Device Performance Litigation*, No. 18-md-02827-EJD. In his order appointing Kaplan Fox as co-lead counsel, Judge Davila noted that plaintiffs' leadership "demonstrated an ability to cooperate with a range of different interests that span across law firms, practice groups, geography, and gender and introduce[d] smaller firms into the litigation experience." *Id.*, ECF No. 99 (May 15, 2018). As part of that litigation, Mr. King successfully obtained a settlement of up to $500 million. *Id.*, ECF No. 415. Nam Decl. ¶ 22.

Kaplan Fox Partner **Donald Hall** has played a key role in many of the Kaplan Fox's securities and antitrust class actions resulting in substantial recoveries for the Firm's clients, including *In re Merrill Lynch Research Reports Securities Litigation*; *In re Salomon Analyst Williams Litigation and In re Salomon Focal Litigation*; *In re Flat Glass Antitrust Litigation*; and *In re Compact Disc Antitrust Litigation*. Nam Decl. ¶ 23.

Kaplan Fox attorney **Mario Choi** is an associate in Kaplan Fox's Bay Area office and has played a central role on a number of the firm's consumer, antitrust, and other matters, including *In re Apple Device Performance Litigation*, *In re Yahoo Mail Litigation*, No. 5:13-cv-04980-LHK (N.D. Cal.), and *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-cv-01921-SI (D. Or.). Nam Decl. ¶ 24.

Kaplan Fox attorney **Aaron Schwartz** is an associate with the firm and has played an important role in several of the firm's consumer and antitrust matters, including *In re Apple Device Performance Litigation*, No. 5:18-md-02827-EJD (N.D. Cal.), and *In re: Bearings Cases*, No. 12-md-02311 (E.D. Mich.). Prior to joining Kaplan Fox, Mr. Schwartz was a Deputy Attorney General in the Pennsylvania Office of Attorney General, Antitrust Section. Nam Decl. ¶ 25.

D.     **CPM and Kaplan Fox Are Willing to Commit Substantial Resources to Represent the Classes (Fed. R. Civ. P. 23(g)(1)(A)(iv)**

CPM and Kaplan Fox have the resources and experience to litigate complex cases of this magnitude and, as history demonstrates, are committed to expending the time, energy and financial resources necessary to lead this type of litigation until the end.

As described *supra*, CPM has achieved meaningful and substantial results in large, complex cases. To obtain such outcomes necessarily required CPM to invest considerable time and money– a prospect that has never posed an obstacle to CPM's vigorous representation. For example, in *Auto Parts*, CPM served as co-lead counsel for end-payor plaintiffs in a consolidated litigation that ultimately evolved to include 41 separate cases, 73 defendant groups, and hundreds of automotive parts. The case was immensely complex and resource-intensive, but CPM secured outstanding results on behalf of their clients. In *Transpacific*, initially filed in 2007, the case was only resolved shortly before trial in 2019 after nearly 12 years of litigation and multiple trips to the Ninth Circuit.

CPM will not hesitate to take a complex case to trial, as it has demonstrated throughout its history. For example, in *Massoyan v. HL Leasing, Inc.*, Case No. 09-CECG 01839 (Fresno Cty. Sup. Ct.) unable to obtain an acceptable settlement offer for the class, CPM tried a Ponzi scheme case to a jury verdict of $151.7 million. Additionally, CPM secured a ground-breaking $1.15 billion judgment against the lead paint industry after a two-month trial in Santa Clara Superior Court. *See*

*Lead Paint*, Case No. 1-00-CV-788657 (Santa Clara Cty. Sup. Ct.). The *Lead Paint* verdict was the result of 13-years of hard-fought litigation, including multiple trips to the California Court of Appeal and the Supreme Court of California, and stands as the only successful trial against the lead paint industry for creating a public nuisance threatening the health and well-being of children. *See County of Santa Clara et al. v. Atlantic Richfield, et al.*, 50 Cal. 4th 35 (2010); *County of Santa Clara et al. v. Atlantic Richfield, e al.*, 161 Cal. App. 4th 1140 (2008); *County of Santa Clara et al. v. Atlantic Richfield, e al.*, 137 Cal. App. 4th 292 (2006). Zapala Decl. ¶ 32.

Furthermore, CPM has sufficient attorneys and other professionals to staff this case, and has successfully managed complex, resource-intensive cases in the past. CPM's attorneys and paralegal resources will ensure that the case will be staffed appropriately and efficiently so that senior attorney are not performing junior attorney work, junior attorneys will work at their level and will not spend more time than necessary on tasks, and no attorney will perform paralegal work. In successfully prosecuting class actions, CPM routinely advances the costs of the litigation and has demonstrated an ability and willingness to dedicate its substantial resources to vigorously prosecute the claims of proposed class members. As reflected by the extensive time it has already committed to this case, CPM is prepared to continue to commit the resources necessary to effectively and vigorously prosecute this case to a successful conclusion. CPM does not use litigation funders for any of its cases.

Kaplan Fox will dedicate all the resources necessary to finance a case of this magnitude. Indeed, having been responsible for achieving some of the largest class action recoveries in some of the most complex, high-profile class actions, Kaplan Fox understands what is required to undertake a litigation of this size and will commit whatever resources are necessary to achieve a favorable result for the class. For example, Kaplan Fox litigated the *Air Cargo* case against more than 30 worldwide air carriers for more than 10 years, which required the taking of dozens of depositions throughout the world, extensive expert reports, and a three-day evidentiary hearing. Likewise the *High Fructose Corn Syrup* and *Flat Glass* litigations lasted for many years, involved multiple appeals to circuit courts, and settled on the eve of trial after class certification, summary judgment briefing, and the preparation of motions *in limine* and Pretrial Orders. Similarly, *In re*

*Bank of America Securities Litigation* settled on the eve of trial after all pretrial work. The $2.4 billion settlement achieved by Kaplan Fox on behalf of the class stands as the largest recovery in a case brought under Section 14(a) of the Exchange Act.

### E. CPM and Kaplan Fox Will Control Attorneys' Fees and Time Reporting to Ensure Efficiency on Behalf of the Class

CPM and Kaplan Fox are committed to litigating the case efficiently and economically and their lawyers intend to use their experience and background to achieve these goals. The moving firms are familiar with this Court's guidance and expectations regarding attorneys' fees and costs, given other litigation matters they have before this Court. Indeed, both CPM and Kaplan Fox have reviewed, with care, the Court's November 20, 2020 Order re Consolidation (ECF No. 78) and in particular the provisions in that Order regarding timekeeping and the submission of requests for attorneys' fees and reimbursement of costs. The moving firms will strictly adhere to those guidelines and ensure other attorneys working on this matter do so as well. Moreover, CPM is headquartered in the District and Kaplan Fox has a substantial secondary headquarters in this District. Kaplan Fox also has an attorney in Washington D.C. who will help with necessary coordination between this litigation and the litigation brought by the U.S. Department of Justice and state attorney generals in that District. Collectively, this will result in cost savings and greater efficiency for the Class. Furthermore, because both firms regularly practice in this District, their attorneys are fully familiar with the Local Rules and practices of this Court.

### F. The Court Should Appoint a Steering Committee to Assist Co-Lead Counsel

CPM and Kaplan Fox believe this case requires strong leadership and that, at minimum, a two-firm Co-Lead Counsel structure should be implemented, along with a very active and experienced Steering Committee. Given the historic size of the case and the intense interest in these issues, CPM and Kaplan Fox believe a Steering Committee is more than appropriate. The firms expect that document production, as with most cases of this size and complexity, will be substantial and voluminous and will require a document coding and review protocol to be deployed with assistance from attorneys at their firms. The litigation in this case is likely to be hard fought and labor intensive, necessitating a number of depositions throughout the United States, significant and

complex motion practice, class certification proceedings, and potential settlement negotiations and appeals. Having the support of a Steering Committee with offices throughout the United States will ensure work is performed in a timely manner by capable and experienced professionals to achieve the best results for the putative Class. There are excellent law firms that have filed their own cases in these coordinated actions and a committee of experienced lawyers would be useful for effectively and efficiently prosecuting this case against Google.

## V.     CONCLUSION

For the foregoing reasons, CPM and Kaplan Fox meet the criteria set forth in Rule 23(g) and respectfully request appointment as Interim Co-Lead Counsel for the Consumer Class in this litigation.  CPM and Kaplan Fox also recommend that the Court approve a Steering Committee to work with Co-Lead Counsel in this matter.

Dated: November 25, 2020

Respectfully submitted,

By: */s/ Nanci E. Nishimura*

Nanci E. Nishimura (SBN 152621)
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Mark C. Molumphy (SBN 168009)
Tamarah P. Prevost (SBN 313422)
Noorjahan Rahman (SBN 330572)
nnishimura@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com
mmolumphy@cpmlegal.com
tprevost@cpmlegal.com
nrahman@cpmlegal.com


By: */s/ Hae Sung Nam*

Hae Sung Nam (admitted *pro hac vice*)
Robert N. Kaplan (admitted *pro hac vice*)
Frederic S. Fox (*pro hac vice* to be sought)
Donald R. Hall (admitted *pro hac vice*)
Aaron L. Schwartz (*pro hac vice* filed)
850 Third Avenue
New York, NY 10022
Telephone:  212-687-1980

Facsimile: 212-687-7714
hnam@kaplanfox.com
rkaplan@kaplanfox.com
ffox@kaplanfox.com
dhall@kaplanfox.com
aschwartz@kaplanfox.com

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

*Proposed Interim Co-Lead Class Counsel for the Putative Class*

## <u>ATTESTATION STATEMENT</u>

Pursuant to Civil L.R. 5-1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Date: November 25, 2020                    */s/ Nanci E. Nishimura*
                                                            Nanci E. Nishimura

**COTCHETT, PITRE & McCARTHY, LLP**