# Exhibit B2
# to
# R. Satia Declaration

**KAPLAN FOX & KILSHEIMER LLP**
Katherine A. Herkenhoff (SBN 168562)
1999 Harrison Street, Suite 1560
Oakland, CA  94612
Telephone: (415) 772-4700
Email: *kherkenhoff@kaplanfox.com*

*Counsel for Consumer Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| | <u>Class Action</u> |
| This Document Relates To: | **DECLARATION OF KATHLEEN A. HERKENHOFF IN SUPPORT OF OMNIBUS ADMINISTRATIVE MOTION TO SEAL** |
| *In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | |

I, Kathleen A. Herkenhoff, declare as follows:

1.      I am an attorney at Kaplan Fox & Kilsheimer LLP ("Kaplan Fox").  I submit this Declaration in Support of the Omnibus Administrative Motion to Seal.  I have personal knowledge of the facts stated in this Declaration and, if called a witness, I could and would testify competently to them.

2.      Consumer Plaintiffs' pending Motion for Class Certification attached excerpts of Consumer Plaintiffs' deposition transcripts as exhibits, some of which referenced their home addresses, email addresses, and birthdates. *See* ECF No. 251-1, Declaration of Karma M. Giulianelli in Support of Consumer Plaintiffs' Motion for Class Certification ("Giulianelli Decl.") at Ex. 59, 8:24-25 (noting Mr. Egerter's home address); Ex. 60, 10:23-24 (noting Mr. Palmer's date of birth); Ex. 61, 6:19-20 (noting Mr. Atkinson's home address); Ex. 63, 9:5-6 (noting Ms. Moglia's home address); and Ex. 63, 81:21 (noting Ms. Moglia's personal e-mail address)).

3.      The Ninth Circuit and the Court in this district have routinely held that compelling reasons exist to seal a party's personal identifying information—including, home addresses, email addresses, and birthdates. *See e.g.*, *Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2007 WL 3232267, at *2 (N.D. Cal. Nov. 1, 2007) (ordering the sealing of a home address because disclosure could expose the person or their families to harm or identity theft) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003)); *see also Gunderson v. Alta Devices, Inc*., 2021 WL 4461569, at *4 (N.D. Cal. Sept. 29, 2021) (ordering the sealing of class member home addresses, telephone numbers and birthdates); *Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-07354 WHA, 2020 WL 6020593, at *8 (N.D. Cal. Oct. 12, 2020) (ordering the sealing of class members' "contact information and addresses"); *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 233827, at *3 (N.D. Cal. Jan. 21, 2014) (ordering the sealing of plaintiff's home address, phone number, and email address because there is a "compelling privacy interest in this information"); Fed. R.Civ. P. 5.2(a)(2) (noting that it is permissible for courts to redact birthdates).

4.      Consumer Plaintiffs' request is also narrowly tailored, and no public interest is served by the public disclosure of Consumer Plaintiffs' home address, email address, and

birthdates. *Nursing Home Pension Fund*, 2007 WL 3232267, at \*2 (explaining, the sealing of home addresses and financial account information is warranted because it has "little or no relevance to any material issue in this case" such that the "privacy interests of this personal information outweigh the public's right to access).

5.      Furthermore, no party is known to oppose Consumer Plaintiffs' request.

6.      Consumer Plaintiffs' therefore respectfully request that the Court seal this limited information and file in the public record redacted versions of the documents described herein.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 19th day of August, 2022 at San Diego, California

         */s/ Kathleen A. Herkenhoff*
            Kathleen A. Herkenhoff

# Exhibit B3
# to
# R. Satia Declaration

1  HUESTON HENNIGAN LLP
   John C. Hueston, State Bar No. 164921
2  jhueston@hueston.com
   Douglas J. Dixon, State Bar No. 275389
3  ddixon@hueston.com
   620 Newport Center Drive, Suite 1300
4  Newport Beach, CA 92660
   Telephone:    (949) 229-8640
5
   HUESTON HENNIGAN LLP
6  Joseph A. Reiter, State Bar No. 294976
   jreiter@hueston.com
7  Christine Woodin, State Bar No. 295023
   cwoodin@hueston.com
8  Michael K. Acquah, State Bar No. 313955
   macquah@hueston.com
9  William M. Larsen, State Bar No. 314091
   wlarsen@hueston.com
10 Julia L. Haines, State Bar No. 321607
   jhaines@hueston.com
11 523 West 6th Street, Suite 400
   Los Angeles, CA 90014
12 Telephone:    (213) 788-4340

13 Attorneys for Plaintiffs Match Group, LLC;
   Humor Rainbow, Inc.; PlentyofFish Media ULC;
14 and People Media, Inc.

15                  UNITED STATES DISTRICT COURT

16                NORTHERN DISTRICT OF CALIFORNIA

17

18 MATCH GROUP, LLC, a Delaware          Case No. 3:22-cv-02746-JD
   corporation; HUMOR RAINBOW, INC., a
19 New York corporation; PLENTYOFFISH    **DECLARATION OF ADRIAN ONG IN**
   MEDICA ULC, a Canadian corporation; and **RESPONSE TO OMNIBUS**
20 PEOPLE MEDIA, INC., a Delaware         **ADMINISTRATIVE MOTION TO SEAL**
   corporation,                          **RELATING TO CONSUMER PLAINTIFFS'**
21                                        **MOTION FOR CLASS CERTIFICATION**
                 Plaintiffs,             **[DKT 251]**
22
            v.                           Judge James Donato
23
   GOOGLE LLC; GOOGLE IRELAND
24 LIMITED; GOOGLE COMMERCE
   LIMITED; GOOGLE ASIA PACIFIC PTE,
25 LIMITED; and GOOGLE PAYMENT
   CORP.,,
26
                 Defendants.
27

28

DECLARATION OF ADRIAN ONG IN RESPONSE TO OMNIBUS ADMINISTRATIVE MOTION TO SEAL

**<u>DECLARATION OF ADRIAN ONG</u>**

I, Adrian Ong, declare as follows:

1.     I am Senior Vice President of Operations at Match Group, LLC ("MGL").

2.     Through the course of my employment with MGL, I have become familiar with MGL's treatment of proprietary business information as it pertains to the dating services operated by MGL, including Tinder and Match.  Through my role, I am also familiar with how other companies within the Match Group, Inc. portfolio, including Humor Rainbow, Inc., PlentyofFish Media ULC, and People Media, Inc. (collectively with MGL, the "Match Plaintiffs") handle their respective proprietary business information, including such information as it pertains to their respective brands, OkCupid, PlentyofFish, and OurTime, as well as how other Match Group, Inc. portfolio brands, such as Hinge and BLK, which are not operated by the Match Plaintiffs, handle confidential and proprietary business information.  I make this declaration in response to the parties' Omnibus Administrative Motion to Seal Relating to Consumer Plaintiffs' Motion for Class Certification ("Motion to Seal") pursuant to Civil Local Rule 79-5(e) on behalf of Match Plaintiffs and non-parties Hinge, Inc. and Affinity Apps, LLC, which operate the Hinge and BLK brands, respectively. I know the facts stated herein based on my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

3.     I have been employed by MGL since 2001, and overall within the highly competitive online dating category for over twenty years.  Companies in these industries, including Match Plaintiffs, undertake extensive measures to protect their confidential information from competitors to ensure that they maintain their competitive advantages.  Match Plaintiffs are key innovators and constantly seek to gain—and maintain—an edge in this always evolving industry; Match Plaintiffs compete vigorously with both new and established companies that are eager to imitate ideas or garner strategic insights from industry leaders like Match Plaintiffs.

4.     I have reviewed the portions relevant to Match Plaintiffs of the unredacted materials in support of the Motion for Class Certification.  Specified portions of those materials should remain under seal for the reasons stated in this declaration.

DECLARATION OF ADRIAN ONG IN RESPONSE TO OMNIBUS ADMINISTRATIVE MOTION TO SEAL

6243728

5.      Specifically, disclosing this information to third parties could be used against the Match Plaintiffs in their future business negotiations with third parties.  Information that may seem insignificant on its own can (individually or with other documents) give an expert reader or industry competitor meaningful insight.  For example, the amount of consumer spending that took place on a particular Match portfolio brand's dating app during a particular time period could allow those competitors to selectively compete against the Match Plaintiffs' brands where they are most competitively vulnerable, placing Match Plaintiffs' brands at a competitive disadvantage.

6.      With respect to some of the information identified below (*e.g.*, ¶¶ 31, 33-34), Judge Yvonne Gonzalez Rogers granted MGL's Motion to Seal regarding similar and in some cases substantively identical information submitted in a related case, *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-cv-05640, at Dkt. No. 547, pp. 6–7.

The Match Plaintiffs requests to seal the following materials and for those materials to remain highly confidential at the trial:

| Doc. Name | Page / Line | Text to Be Sealed | Reason(s) for Sealing Request |
|---|---|---|---|
| Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] | 49, ¶125 at Table 3 | For "Tinder" row, entries in "Consumer Spend in 'Treatment Group'" and "Total Consumer Spend in App During 'Treatment Period'" columns | The information in this paragraph includes the amount of spending on the Tinder App for the Android platform.  Match Plaintiffs consider the amount of consumer spend on a particular dating service to be confidential and proprietary business information, which would give Match Plaintiffs' competitors insights into potential vulnerabilities within Match Plaintiffs' services. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform, as reflected by lower consumer spending, then the rival app could then reallocate spending to that platform to gain a competitive advantage. |
| Ex. 03 to Class Certification Motion, Class | 51 | Figure 4 | The information in Figure 4 includes the amount of spending on the Tinder App for the Android platform.  Match Plaintiffs consider |

DECLARATION OF ADRIAN ONG IN RESPONSE TO OMNIBUS ADMINISTRATIVE MOTION TO SEAL

6243778

| | | | |
|---|---|---|---|
| Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] | | | the amount of consumer spend on a particular dating service to be confidential and proprietary business information, which would give Match Plaintiffs' competitors insights into potential vulnerabilities within Match Plaintiffs' services. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform, as reflected by lower consumer spending, then the rival app could then reallocate spending to that platform to gain a competitive advantage. |
| Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] | 52 | Figure 5 | The information in Figure 5 includes the amount of spending on the Tinder App for the Android platform. Match Plaintiffs consider the amount of consumer spend on a particular dating service to be confidential and proprietary business information, which would give Match Plaintiffs' competitors insights into potential vulnerabilities within Match Plaintiffs' services. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform, as reflected by lower consumer spending, then the rival app could then reallocate spending to that platform to gain a competitive advantage. |
| Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] | 63, App'x Table A1 | For "Tinder" row, entries "Consumer Spend in Burtis's Exhibit 50" and "App Total Consumer Spend One Month After Service Fee Rate Drop" columns | The information in Appendix Table A1 includes the amount of spending on the Tinder App for the Android platform. Match Plaintiffs consider the amount of consumer spend on a particular dating service to be confidential and proprietary business information, which would give Match Plaintiffs' competitors insights into potential vulnerabilities within Match Plaintiffs' services. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform, |

DECLARATION OF ADRIAN ONG IN RESPONSE TO OMNIBUS ADMINISTRATIVE MOTION TO SEAL

6243728

| | | | as reflected by lower consumer spending, then the rival app could then reallocate spending to that platform to gain a competitive advantage. |
|---|---|---|---|
| Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] | 63, App'x Table A2 | For "Tinder" row, entries in "Consumer Spend in Burtis's Exhibit 50" and "App Total Consumer Spend Six Months After Service Fee Rate Drop" columns | The information in Appendix Table A2 includes the amount of spending on the Tinder App for the Android platform. Match Plaintiffs consider the amount of consumer spend on a particular dating service to be confidential and proprietary business information, which would give Match Plaintiffs' competitors insights into potential vulnerabilities within Match Plaintiffs' services. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform, as reflected by lower consumer spending, then the rival app could then reallocate spending to that platform to gain a competitive advantage. |
| Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | 161 | Exhibit 14.  For "Match Group" row, entry in "Consumer Spend" column. | The information in Exhibit 14 appears to include the amount of consumer spending across the Match Group, Inc. portfolio of apps, or of a significant proportion.  Match Plaintiffs consider the amount of consumer spend to be confidential and proprietary business information, which would give Match Plaintiffs' competitors insights into potential vulnerabilities within Match Plaintiffs' services. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform, as reflected by lower consumer spending, then the rival app could then reallocate spending to that platform to gain a competitive advantage. |
| Ex. 05 to Class Certification Motion, | 165-167 | Exhibit 18.  For "Match Group" and "BLK Dating" rows, table entries | The information in Exhibit 18 includes the amount of service fees paid by Match Group and BLK dating, a Match Group, Inc. portfolio |

- 5 -

DECLARATION OF ADRIAN ONG IN RESPONSE TO OMNIBUS ADMINISTRATIVE MOTION TO SEAL

6243728

| 1 | Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | | corresponding to "Service Fees" column. | dating service, during the particular time period of the table.  Because Google has charged a (relatively) consistent service fee over time, the service fee can be used to calculate the approximate total amount of consumer spend on those dating services during the same time period.  Match Plaintiffs consider both the total amount of service fees themselves and the amount of consumer spend on a particular dating service to be confidential and proprietary business information, which would give Match Plaintiffs' competitors insights into potential vulnerabilities within Match Plaintiffs' services. When Match Group, Inc. or its portfolio brands have released information in the past relating to service fees, it has only been at a much higher level of generality (i.e., across the entire Match Group, Inc. portfolio of dating services). |
|---|---|---|---|---|
| 16 | Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | 168-170 | Exhibit 19.  For "Tinder," "Hinge, Inc." and "okcupid.com" rows, table entries corresponding to "Consumer Spend" and "Service Fees" columns. | The information in Exhibit 19 includes the amount of consumer spend and service fees paid by Tinder, Hinge, and OkCupid during the time period of the table.  Match Plaintiffs and Hinge consider both the total amount of service fees themselves and the amount of consumer spend on a particular dating service to be confidential and proprietary business information, which would give Match Plaintiffs' and Hinge's competitors insights into potential vulnerabilities within Match Plaintiffs' or Hinge's services.  When Match Group, Inc. or its portfolio brands havereleased information in the past relating to service fees, it has only been at a much higher level of generality (i.e., across the entire Match Group, Inc. portfolio of dating services). |

DECLARATION OF ADRIAN ONG IN RESPONSE TO OMNIBUS ADMINISTRATIVE MOTION TO SEAL

6243728

7.      I understand from counsel that Civil Local Rule 79-5(b) allows sealing any document that is "privileged, protectable as a trade secret or otherwise entitled to protection under the law." For documents introduced in connection with dispositive proceedings, "compelling reasons" must justify sealing court records. *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). I further understand that the Ninth Circuit and Supreme Court have long recognized that trade secrets and other information "that might harm a litigant's competitive standing" satisfy the compelling reasons standard. *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (unpublished) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (("[C]ourts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing")); *see also Ctr. v. Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (same).

8.      The information Match Plaintiffs seek to seal constitutes "detailed financial information" that courts have recognized parties "have an interest in keeping . . . secret." *Apple Inc. v. Samsung Elec. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013). The information contained in the exhibits above would allow Match Plaintiffs' competitors and counterparties to understand granular details and datapoints about how consumers spend money Match Plaintiffs' dating services, and would accordingly harm Match Plaintiffs' competitive standing. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform and geographical location, then the rival app could then reallocate spending to that platform and geographical location to gain a competitive advantage.

9.      I also understand through counsel that Google has sought to seal portions of the above, including Exhibits 14, 18, and 19 to the Expert Report of Dr. Michelle Mr. Burtis, Dkt. 251-6. Match Plaintiffs join in Google's sealing request as to any overlapping information or documents referenced in the above table.

10.      Match Plaintiffs have "narrowly tailored" their request to "only redact the portions of filings and the precise exhibits" that implicate "confidential business information," and this information is "not available to the public." *In re Qualcomm Litig.*, No. 3:17-cv-01018-GPC-MDD,

1   2017 WL 5176922, at *2 (S.D. Cal. 2017).  Match Plaintiffs accordingly ask that these materials be

2   maintained under seal.

3          I declare under penalty of perjury of the laws of the United States of America that the

4   foregoing is true and correct. This declaration was executed this 19th day of August, 2022, in

5   Dallas, Texas.

6

7   DocuSigned by:

    *Adrian Ong*   _____

    EB8453A91E5D48C...

8   Adrian Ong

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ADRIAN ONG IN RESPONSE TO OMNIBUS ADMINISTRATIVE MOTION TO SEAL

6243728

# Exhibit B4
## to
# R. Satia Declaration

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Timothy G. Cameron (*pro hac vice*)
tcameron@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| *In Re Google Play Consumer Antitrust Litigation*, Case No. 3:20-CV-05761-JD | Case Nos. 21-MD-02981-JD; 3:20-cv-05761-JD |
| RELATED ACTIONS: | **DECLARATION OF Y. EVEN IN SUPPORT OF THE PARTIES' JOINT OMNIBUS MOTION TO FILE UNDER SEAL** |
| *In Re Google Play Developer Antitrust Litigation*, Case No. 3:20-cv-05792-JD | |
| *Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | |
| *State of Utah, et. al., v. Google LLC, et. al.*, Case No. 3:21-cv-05227-JD | |
| *Match Group, LLC, et. al. v. Google LLC, et al.*, Case No. 3:22-cv-02746-JD | |

1       I, Yonatan Even, declare as follows:

2       1.     I am a Partner at Cravath, Swaine & Moore LLP, counsel to Epic Games, Inc. ("Epic")

3 in the above-captioned actions.  I am admitted to appear before this Court *pro hac vice*.

4       2.     I submit this declaration pursuant to Civil Local Rule 79-5 in support of Epic's portion

5 of the parties' Joint Omnibus Motion to File Under Seal.[1]  The contents of this declaration are based on

6 my personal knowledge.[2]

7       3.     Local Rule 79-5 provides that documents, or portions thereof, may be filed under seal if

8 "compelling reasons supported by specific factual findings . . . outweigh . . . the public policies

9 favoring disclosure."  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010) (internal

10 quotation and citation omitted).  The party seeking to seal the document or proceedings must

11 "articulate compelling reasons supported by specific factual findings that outweigh the general history

12 of access and the public policies favoring disclosure."  *Kamakana v. City & Cnty. of Honolulu, 447*

13 *F.3d 1178-79* (9th Cir. 2006) (alteration, citation, and quotation marks omitted).  "In general,

14 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court

15 records exist when such 'court files might have become a vehicle for improper purposes,' such as the

16 use of records to gratify private spite, promote public scandal, circulate libelous statements, or release

17 trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598 (1978)).

18 Moreover, the standard for sealing is "more lenient when the information concerns third parties".  *Epic*

19 *Games, Inc., v. Apple Inc.*, No. 4:20-cv-05640-YGR, ("*Epic v. Apple*") 2021 WL 1907755, at *1 (N.D.

20 Cal. May 12, 2021).

21       4.     The parties to *In re Google Play Consumer Antitrust Litigation* (No. 3:20-cv-05761-JD)

22 (N.D. Cal) ("Consumer Action") have filed papers concerning motions for class certification and to

---

[1] This declaration is only in support of sealing the information identified herein and does not take a position on the sealing requests of other parties or non-parties that may also be submitting declarations in connection with the Joint Omnibus Motion to File Under Seal.

[2] Courts in this District routinely grant motions to seal on the basis of declarations of counsel submitted pursuant to Local Rule 79-5. *See, e.g.*, Trial Order No. 7, *Epic v. Apple*, ECF No. 715 (granting motion at ECF No. 665); Order, *Avago Techs. U.S. Inc., et al. v. IPtronics Inc., et al.*, No. 10-02863-EJD, ECF No. 544 (N.D. Cal. Apr. 3, 2015), ECF No. 545 (granting motion at ECF No. 544); Order, *Cisco Sys., Inc., et al. v. Opentv Inc., et al.*, No. 13-00282-EJD, ECF No. 76 (N.D. Cal. Oct. 8, 2018) , ECF No. 82 (granting motion at ECF No. 76).

**DECLARATION OF Y. EVEN IN SUPPORT OF THE PARTIES' JOINT OMNIBUS MOTION TO SEAL**
Case No.: 21-md-02981-JD

exclude certain expert testimony on the docket of that case, and also on the docket of *In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal) ("MDL").  (*See* Consumer Action ECF Nos. 279-283, 297-299, 303-306; and MDL ECF Nos. 250-254, 270-273, 286-289.)  Some of those papers contain portions that are sourced from documents that Epic designated either "HIGHLY CONFIDENTIAL– ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" under the operative Protective Order, MDL ECF No. 249.  The following table shows the portions of the filings that contain information designated as either "HIGHLY CONFIDENTIAL– ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" by Epic, which Epic now respectfully requests that the Court seal.

| Document | Passage Containing Confidential Information | Designating Party |
|---|---|---|
| Class Certification Report of Hal J. Singer, Ph.D., MDL ECF No. 250-4 (and all other instances). | Page 61, footnote 323.  From after "proposing" to "Other international in-app payment processors". | Epic |
| Class Certification Report of Hal J. Singer, Ph.D., MDL ECF No. 250-4 (and all other instances). | Page 100, paragraph 221, second sentence.  From after "Southeast Asia," to the end of the sentence. | Epic |
| Expert Report of Dr. Michelle M. Burtis, MDL ECF No. 250-7 (and all other instances). | Page 9, paragraph 13.  The entirety of the fifth sentence (beginning with "When"). | Epic |
| Expert Report of Dr. Michelle M. Burtis, MDL ECF No. 250-7 (and all other instances). | Page 42, paragraph 120, the entirety of the first and third sentences.  Footnote 133 from after "Got a confirmation about R/S at least." to the end of the footnote. | Epic |
| Expert Report of Dr. Michelle M. Burtis, MDL ECF No. 250-7 (and all other instances). | Page 84, footnote 271 from after "Got a confirmation about R/S at least." to the end of the footnote. | Epic |
| Defendant's Opposition to Plaintiff's Class Certification Motion, MDL ECF No. 273 (and all other instances). | Page 17, line 15, the single word following "fees and incentives, and".  Page 17, line 16, from after "negotiated" to the end of the sentence. | Epic |

        5.      The passages identified above contain sensitive confidential business information shared with Epic by non-party Coda Payments Pte. Ltd. ("Coda") and non-party Samsung Electronics

1  Co. Ltd. ("Samsung").  This third-party information has not been disclosed publicly.  If revealed, it

2  would negatively impact the commercial relationship between these third parties and Epic as well as

3  Epic's (and likely these third parties') competitive standing because the information contains proposed

4  deal terms offered to Epic by both Samsung and Coda and final deal terms between Epic and Samsung.

5       6.    Epic's narrowly-tailored request to seal the sensitive business information of Epic and

6  third parties which, if revealed, could impact Epic's and those third parties' competitive standing is

7  proper.  *See Ctr. for Auto Safety v. Chrysler Grp., LLC,* 809 F.3d 1092, 1097 (9th Cir. 2016).  Epic's

8  narrowly-tailored request to seal passages which disclose the contents of negotiations with third parties

9  (which competitors could use as leverage in future negotiations with Epic and/or with these third

10  parties) is also proper.  *See* MDL ECF No. 89 (sealing various specific deal terms proposed by Google

11  to counterparties.)[3]

12       7.    For the information pertaining to Samsung, Samsung has already successfully sought to

13  keep these same deal terms under seal in another litigation in this District, arguing that the disclosure

14  of these terms would cause it competitive harm.  (*See* Order, *Epic v. Apple* ECF No. 564 (Pretrial

15  Order sealing the specific terms of Samsung's distribution agreement with Epic); Order, *Epic v. Apple*

16  ECF No. 643 (Trial Order sealing the specific terms of Samsung's distribution agreement with Epic);

17  *see also* Decl. of Kyu Sung Lee, *Epic v. Apple* ECF No. 561-1 (Samsung declaration explaining that

18  disclosing these deal terms would cause competitive harm to Samsung and explaining Samsung's

19  practice of keeping such terms secret.).)  Thus, Epic's sealing requests pertain only to information of

20  the type that this Court has already determined to be sealable, much of which has already been

21  specifically sealed by another Court in this District.

22       8.    For the foregoing reasons and the reasons in the accompanying Joint Omnibus Motion

23  to File Under Seal, Epic respectfully requests that the Court seal the identified information.

---

[3] *See also FTC v. Qualcomm Inc.*, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to seal to the extent disclosure may harm the party or third parties' "competitive standing and divulges terms of confidential contracts, contract negotiations, or trade secrets."); *Philips v. Ford Motor Co.*, 2016 WL 7374214, at *6 (N.D. Cal. Dec. 20, 2016) (concluding that "need to avoid competitive disadvantage in contract negotiations and undercutting by competitors is a compelling reason that justifies sealing").

1    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

2    correct and that I executed this declaration on August 19, 2022 in New York, New York.

3

4                                             /s/ Yonatan Even
                                              Yonatan Even

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B5
# to
# R. Satia Declaration

1  Jeffrey L. Kessler (*pro hac vice*)
   JKessler@winston.com
2  Sofia Arguello (*pro hac vice*)
   SArguello@winston.com
3  WINSTON & STRAWN LLP
   200 Park Avenue
4  New York, NY 10166-4193
   Telephone: (212) 294-6700
5  Facsimile: (212) 294-4700

6  Jeanifer E. Parsigian (SBN: 289001)
   JParsigian@winston.com
7  WINSTON & STRAWN LLP
   101 California Street, 34th Floor
8  San Francisco, CA 94111
   Telephone: (415) 591-1000
9  Facsimile: (415) 591-1400

10 *Attorneys for Non-Party*
   ACTIVISION BLIZZARD, INC.

11

12

13                    **UNITED STATES DISTRICT COURT**

14                  **NORTHERN DISTRICT OF CALIFORNIA**

15                       **SAN FRANCISCO DIVISION**

16

17 **IN RE GOOGLE PLAY STORE**          Case No. 3:21-md-02981-JD
   **ANTITRUST LITIGATION**
18                                        **DECLARATION OF OMER SALIK IN**
   THIS DOCUMENT RELATES TO:            **SUPPORT OF THE PARTIES' OMNIBUS**
19                                        **SEALING MOTION**
   *In re Google Play Store Antitrust Litig.*
20 Case No. 3:21-md-02981-JD            The Honorable James Donato

21 *In re Google Play Consumer Antitrust Litig.*
22 Case No. 3:20-cv-05761-JD

23

24

25 I, Omer Salik, declare as follows:

26        1.      I am Vice President of Litigation and Intellectual Property for Activision Blizzard, Inc.

27 ("Activision Blizzard").  I joined Activision Blizzard in 2011.  I make this Declaration on my own

28 personal knowledge and, if called as a witness, I could and would testify competently to the matters

                                            1

DocuSign Envelope ID: 72630F03-3D35-4E2A-A7D1-943B0474067D

1    set forth herein.

2        2.      In my current role at Activision Blizzard, I am responsible, in part, for Activision

3    Blizzard's litigation and intellectual property matters, including matters regarding document

4    collection, IP licensing and strategic decisions related thereto.    Activision Blizzard keeps such

5    information confidential to protect itself and its partners from potential harm.

6        3.      I understand that, in the above-captioned actions and in connection with Consumer

7    Plaintiffs' class-certification briefing, the Court has ordered that the parties and non-parties address

8    all sealing requests in a single omnibus sealing motion.  *See* ECF No. 246.[1]  I further understand from

9    Google counsel in this matter that some of the papers related to the class-certification briefing include

10   Activision Blizzard information that is designated "NON-PARTY HIGHLY CONFIDENTIAL –

11   OUTSIDE COUNSEL EYES ONLY" either by Activision Blizzard or by Google.  I understand that

12   the Court extended the parties' deadline to file the omnibus sealing motion until August 19, 2022.  *See*

13   ECF No. 290.  I write this Declaration in support of the parties' sealing motion insofar as it relates to

14   the Activision Blizzard information incorporated into the class-certification briefing and described in

15   greater detail below. [2]

16       4.      I understand that, where documents are "more than tangentially related to the merits of

17   a case," this Court requires a party to establish "compelling reasons" for sealing.  *See Connor v. Quora,*

18   *Inc.*, No. 18-cv-07597, 2020 WL 7408233, at *1 (N.D. Cal. Oct. 15, 2020) (citations and internal

19   quotation marks omitted).  By contrast, this Court requires a "lesser showing of 'good cause'" for

20   "[f]ilings that are only tangentially related to the merits."  *See id.* (citation omitted).  I also understand

21   that these standards apply where a non-party seeks to preserve the confidentiality of its information

22   by filing a declaration in support of a party's sealing motion.  *See* Civil L.R. 79-5(f)(3) (incorporating

23   requirements of 79-5(c)(1)).  I further understand that it remains an open question under Ninth Circuit

---

[1] The referenced ECF numbers correspond to Case No. 3:21-md-02981-JD.

[2] In submitting this Declaration, Activision Blizzard—a non-party to this case and which therefore is not privy to discovery in the matter—is reliant on counsel for the parties to this litigation to identify references to Activision Blizzard "NON-PARTY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" information that warrants sealing.  In submitting this Declaration, Activision Blizzard relied on correspondence from Google counsel.  Activision Blizzard reserves the right to supplement this Declaration or submit a new declaration if it learns that other Activision Blizzard "NON-PARTY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" information was included in the parties' class-certification briefing but omitted from Google counsel's correspondence.

DECLARATION OF OMER SALIK
CASE NOS. 3:21-md-02981-JD, 3:20-cv-05761-JD

DocuSign Envelope ID: 72630F03-3D35-4E2A-A7D1-943B0474067D

1    law whether a motion for class certification qualifies as a "dispositive" motion.  *See In re Google Inc.*

2    *Gmail Litig.*, No. 13-md-02430, 2014 WL 10537440, at *3 (N.D. Cal. Aug. 6, 2014) ("[T]he Ninth

3    Circuit has not yet addressed whether or not, or under what circumstances, a motion for class

4    certification is a dispositive motion for purposes of deciding what standard applies on sealing

5    motions.") (citation and internal quotation marks omitted).  In any event, even the stricter "compelling

6    reasons" standard is met where the subject of the sealing request is a "source[] of business information"

7    the disclosure of which "might harm a [non-party's] competitive standing."  *See Ctr. for Auto Safety*

8    *v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (internal quotation marks omitted)

9    (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

10          5.      Activision Blizzard is a leading global developer and publisher, whose objective is to

11   develop, publish, and distribute high-quality interactive entertainment content and services and deliver

12   engaging entertainment experiences to users worldwide.  Maintaining the confidentiality of its (i)

13   business plans and strategies, and (ii) financial metrics and strategies was—and continues to be—

14   integral to Activision Blizzard achieving its status as a leader in the entertainment industry.  Thus,

15   Activision Blizzard has a legitimate interest in preserving the confidentiality of its information.

16          6.      The information that is redacted in the Expert Report of Dr. Michelle M. Burtis ("Burtis

17   Report")—and appended as exhibit 5 to Consumer Plaintiffs' Motion for Class Certification (*see* ECF

18   No. 251-6)—includes highly confidential, internal business information of Activision Blizzard, which

19   would result in serious competitive harm if disclosed.  This information, in part, relates to Activision

20   Blizzard's negotiations with Google and contains highly confidential information relating to

21   Activision Blizzard's business strategy.   I understand that Activision Blizzard's underlying

22   arrangement with Google has been made public as part of Epic's First Amended Complaint for

23   Injunctive Relief.  *See* ECF No. 81 ¶ 33 ("Google has reached preferential deals with major mobile

24   app developers, such as Activision Blizzard . . . .").  But as detailed below, the excerpts from the Burtis

25   Report relating to Activision Blizzard go beyond merely acknowledging the *existence* of an Activision

26   Blizzard-Google arrangement, and instead provide insight into, among other things: (i) the alleged

27   terms and incentives underlying the Activision Blizzard-Google partnership; and (ii) the services and

28   benefits Activision Blizzard would have purportedly received in exchange for entering a deal with

1   Google.  In addition, the Burtis Report assesses Activision Blizzard's performance in terms of

2   "consumer spend" and "service fees."   The Google-deal representations and performance assessments

3   in the Burtis Report thus contain highly confidential information relating to Activision Blizzard's

4   business strategy.  *See Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640, 2021 WL 1925460, at *1

5   (N.D. Cal. Apr. 30, 2021) (granting non-party motion to seal "highly confidential information,

6   including . . . business decision-making . . . belonging to [] a third-party non-party to th[e] action");

7   *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910, 2014 WL 7368594, at *3 (N.D. Cal. Dec. 26, 2014)

8   (sealing information "refer[ring] to [] confidential financial and revenue information, disclosure of

9   which is likely to cause harm to [business] if known by competitors").

10         7.   In addition, the information that is redacted in exhibit 12 appended to Consumer

11   Plaintiffs' Opposition to Defendants' Motion to Exclude the Testimony of Dr. Hal J. Singer on Class

12   Certification ("Exhibit 12," ECF No. 271-12) likewise includes highly confidential, internal business

13   information of Activision Blizzard, which would result in serious competitive harm if disclosed.  This

14   information relates to Activision Blizzard's highly sensitive pricing strategies.   This Court has

15   repeatedly granted requests to seal highly confidential pricing information, just as Activision Blizzard

16   seeks to here.  *See, e.g., Epic Games, Inc.*, 2021 WL 1925460, at *1 (finding "compelling reasons" for

17   sealing where "third-party non-party to th[e] action" sought to seal "highly confidential information,

18   including" in part "pricing strategy [and] business decision-making"); *United States v. Bazaarvoice,*

19   *Inc.*, No. 13-cv-00133, 2014 WL 11297188, at *1 (N.D. Cal. Jan. 21, 2014) (granting sealing request

20   for third-party documents where they "contain[ed] pricing and competitive information that could

21   cause damage to the third parties if made public"); *see also In re Elec. Arts, Inc.*, 298 F. App'x 568,

22   569–70 (9th Cir. 2008) (directing district court to grant sealing of, in part, "pricing terms").

23         8.   Consistent with the highly confidential nature of these references in the Burtis Report

24   and Exhibit 12, Activision Blizzard or Google, as applicable, appropriately designated the information

25   as "NON-PARTY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" in accordance

26   with the protective orders in this case.  *See* ECF Nos. 117, 124, 154, 170, 237, 248.

27         9.   The disclosure of Activision Blizzard's highly confidential information contained in

28   the Burtis Report and Exhibit 12 would significantly harm Activision Blizzard's business.  For

example, Activision Blizzard's competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies. *See Lathrop v. Uber Techs., Inc.*, No. 14-cv-05678, 2016 WL 9185002, at *2 (N.D. Cal. June 17, 2016) ("[U]nder Ninth Circuit law, . . . [] reports are appropriately sealable under the 'compelling reasons' standard where that information could be used to the company's competitive disadvantage."). Indeed, the contours of Activision Blizzard's deal with Google could be used as a bargaining chip by Activision Blizzard's competitors in their negotiations with Google or a similarly situated counterparty. Disclosing Activision Blizzard's performance metrics (*i.e.*, the metrics in the Burtis Report relating to "consumer spend" and "service fees") would give competitors unwarranted access to information that they can use to inform their benchmarking processes and business strategies. And disclosing Activision Blizzard's pricing strategies (*see* Exhibit 12) would, without a doubt, give Activision Blizzard competitors insight into highly confidential strategies that they otherwise would not be privy to. To prevent these competitive harms from coming to fruition, Activision Blizzard proactively maintains the confidentiality of its strategic information, only disclosing it to a select group of individuals on an as-needed basis.

10.     Preventing these competitive harms requires the sealing of the redacted information in the class-certification briefing papers. There is no less restrictive alternative. Sealing is the only means of preserving the sanctity of Activision Blizzard's highly confidential, non-public, and competitively sensitive information. Absent sealing, Activision Blizzard competitors will undeservingly have access to this information.

11.     The excerpts from the class-certification briefing that Activision Blizzard hereby seeks to seal, with the reasons for each request, are set forth below:

| Location of Reference in Class-Certification Briefing | Reason for Sealing |
|---|---|
| ECF No. 251-6, p. 155, Exhibit 8 thereto | Though Google counsel has not provided Activision Blizzard with the text or image of the exhibit at issue, from the information Google counsel has provided, this exhibit includes information relating to a highly confidential business deal of Activision Blizzard. |
| ECF No. 251-6, p. 22 ¶ 68 | Contains highly sensitive, non-public, and competitively |

DocuSign Envelope ID: 73630F03-3D35-4E2A-A7D1-943B0474067D

| | sensitive information relating to a confidential business deal. In addition, this reference purports to describe the consideration for, and value derived from, this confidential business deal. |
|---|---|
| ECF No. 251-6, p. 22 n.54 | Contains highly sensitive, non-public, and competitively sensitive information relating to a confidential business deal. In addition, this reference purports to describe the consideration for this confidential business deal. |
| ECF No. 251-6, p. 28 ¶ 78, Figure 2 | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business- and financial information. |
| ECF No. 251-6, p. 160, Exhibit 13 thereto | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business- and financial information. |
| ECF No. 251-6, p. 161, Exhibit 14 thereto | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business- and financial information. |
| ECF No. 251-6, pp. 165–67, Exhibit 18 thereto | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business- and financial information. |
| ECF No. 251-6, pp. 168–70, Exhibit 19 thereto | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business- and financial information. |
| ECF No. 271-12, p. 47 | Contains Activision Blizzard's highly confidential, non-public, and competitively sensitive strategic business information and pricing strategies. |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on August 15, 2022 in Hermosa Beach, California.

By: _Omer Salik_ _____
Omer Salik
Activision Blizzard, Inc.

# Exhibit B6
## to
# R. Satia Declaration

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

18  **IN RE GOOGLE PLAY STORE**
    **ANTITRUST LITIGATION**
19
                                                 Case No. 3:21-md-02981-JD
20  THIS DOCUMENT RELATES TO:
                                                 **DECLARATION OF MATTHEW**
21  *Epic Games, Inc. v. Google LLC, Case No.*   **NORRIS IN SUPPORT OF OMNIBUS**
    *3:20-cv-05671-JD*                           **MOTION TO SEAL**
22
                                                 Judge James Donato
23  *In re Google Play Consumer Antitrust, Case*
    *No. 3:20-cv-05761-JD*
24
    *Utah v. Google LLC, Case No. 3:21- cv-*
25  *05227-JD*

26  *Match Group, LLC. et al. v. Google LLC et al.,*
    Case No. 3:22-cv-02746-JD
27

28

I, MATTHEW NORRIS, declare as follows:

1.      I am Senior Director, Revenue Accounting and Operations at Adobe, Inc. ("Adobe").

2.      I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

3.      I understand that certain documents submitted in conjunction with a class certification motion in the above-captioned matter reference information about Adobe.

4.      Specifically, Exhibit 22 to the Consumer Plaintiffs Class Certification Motion (MDL Dkt. No. 251-9) references traffic referral revenue numbers generated in part by Adobe, and Exhibit 5 to the Motion in the Report of Dr. Burtis at pages 165-57 (Ex. 18) and 168-70 (Ex. 19) references revenue received and service fee amounts paid by Adobe for Google Play sales.

5.      This information is not made public by Adobe in its financial reporting and is kept confidential with limited access at the company.  It is sensitive confidential and/or trade secret business information regarding specific sales on specific platforms that, if publicly known, might harm Adobe's competitive standing because it discloses Adobe's relative sales at a level of detail that, if known by competitors, could be used by competitors to alter their own product development and sales strategies and/or undercut Adobe's marketing and sales strategies.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 19 , 2022 in San Francisco, CA          .

*Matthew Norris*

Electronically signed by: Matthew Norris
Date: Aug 19, 2022 11:25 PDT

1
DECL. OF MATTHEW NORRIS ISO OMNIBUS MOT. TO FILE UNDER SEAL
MDL Case No. 3:21-md-02981-JD

# Exhibit B7
# to
# R. Satia Declaration

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

Epic Games, Inc. v. Google LLC et al., Case
No. 3:20-cv-05671-JD

Case No. 3:20-cv-5671-JD
Case No. 3:21-md-02981-JD

NON-PARTY AMAZON'S DECLARATION
IN SUPPORT OF OMNIBUS MOTION TO
MAINTAIN CERTAIN DOCUMENTS AND
INFORMATION UNDER SEAL

Non-Party Amazon, Inc. ("Amazon") submits this Declaration of Jon Kirk in Support of the Omnibus Administrative Motion to Maintain Documents and Information under seal.

I, Jon Kirk, declare as follows:

1. I am an employee of Amazon.com, Inc.  My title is Director, Business Development.  I support Amazon's Appstore business, including by negotiating contracts and managing our relationships with application developers.

2. Exhibit 02 to Class Certification Motion, Class Certification Report of Hal J. Singer, Ph.D. [MDL Dkt. No. 251-3] includes Amazon data or material that was produced as "Non-Party Highly Confidential – Outside Counsel Eyes Only" under the Stipulated Protective Order.

3. Amazon seeks to seal only a very specific and targeted portion of the data or material it produced.  Specifically, Amazon seeks to seal only certain numbers and one code name that, if disclosed, would cause substantial competitive harm to Amazon.  (See Attachment A hereto, which reflects the redactions Amazon seeks.)  The remainder of the statements in which these numbers are included would remain in the public record.

4. As part of its ongoing Amazon Appstore business, Amazon negotiates individual contracts with a number of application developers.  The terms of these agreements govern how application developers distribute and sell their applications (or in-app products) through the Amazon Appstore. Amazon's contracts with key developers are heavily negotiated and contain detailed financial terms that are kept in strict confidence by Amazon and the developer.  Among other terms, these contracts contain a royalty term whereby the application developer and Amazon agree how to split revenue from paid purchases of that application (or in-app products) through the Amazon Appstore.  The specific royalty is the subject of negotiations, the results of which are highly confidential, not publicly disclosed, and protected by confidentially provisions in these contracts.

5. Exhibit 2 identifies what the report refers to as Amazon's "effective take rate"—that is, the amount of revenues Amazon retains after applying discounts and paying developers a royalty. The calculation of these figures depends upon the confidential royalty terms agreed to between Amazon and developers, and confidential information regarding applicable discounts.  This information is not publicly disclosed.  If application developers had access to this confidential information, it

1   would put Amazon at a significant competitive disadvantage.  For example, the largest application

2   developers could use this information in their negotiations by seeking to improve their royalty

3   terms or arguing that they should receive greater revenues because of their specific unique

4   advantages.  Amazon routinely negotiates and renegotiates such agreements and anticipates

5   continuing to do so during the next year (and beyond).

6       6.    Similarly, if other app store providers, including Amazon's competitors, had access to this

7   information, they could take advantage of the information in their own negotiations with

8   application developers.  This would give them an unfair competitive advantage over Amazon,

9   because Amazon does not have this information about its competitors' effective take rates.

10      7.    On this basis, Amazon respectfully seeks to redact the numerical figures in the following

11  exhibits, as reflected in Attachment A:

12          a.   Ex. 02 to Class Certification Motion, Class Certification Report of Hal J. Singer,

13              Ph.D [MDL Dkt. No. 251-3]  88, para 200;

14          b.   Ex. 02 to Class Certification Motion, Class Certification Report of Hal J. Singer,

15              Ph.D [MDL Dkt. No. 251-3]  88, n.410

16       8.   Amazon also seeks to seal one other specific number and codename.  In Exhibit 03 to Class

17  Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D. [MDL Dkt. No. 251-

18  4], there is a citation to the percentage of unique visitors to Amazon's mobile landing pages that

19  signed in to Amazon's 2020 Appstore.  This figure is highly confidential, not publicly disclosed,

20  and not known by Amazon's competitors or developer partners.  If application developers had

21  access to this figure, they could use it in contract negotiations with Amazon and it would put them

22  at an unfair advantage.  If Amazon's competitors had access to this information, they could use this

23  in their negotiations with application developers, to the detriment of Amazon. Attachment B

24  reflects the redaction that Amazon seeks in this regard. Additionally, the Amazon Appstore's

25  internal codename is nonpublic information. Amazon uses codenames to identify development

26  efforts to prevent the public disclosure of nonpublic information, and revealing the codename for

27  the Android version of the Amazon Appstore would impede Amazon's efforts to ensure its

28

confidential efforts stay confidential, harming Amazon's ability to compete against its app store competitors.

9. Amazon respectfully requests that the Court seal this limited information based upon good cause shown and file in the public record redacted versions of the documents described herein.

DATED this August ___11th___, 2022.



Jon Kirk

# Exhibit B8
# to
# R. Satia Declaration

1

2

3

4

5

6

7

8

9

10

11

12

13

14                 **UNITED STATES DISTRICT COURT**

15               **NORTHERN DISTRICT OF CALIFORNIA**

16                  **SAN FRANCISCO DIVISION**

17

18   **IN RE GOOGLE PLAY STORE**              Case No. 3:21-md-02981-JD
     **ANTITRUST LITIGATION**
19
                                              **DECLARATION OF**
20   THIS DOCUMENT RELATES TO:                **ANCESTRY.COM OPERATIONS**
                                              **INC. IN SUPPORT OF OMNIBUS**
21   *Epic Games, Inc. v. Google LLC, Case No.*   **MOTION TO SEAL**
     *3:20-cv-05671-JD*
22                                            Judge James Donato
23   *In re Google Play Consumer Antitrust,*
     *Case No. 3:20-cv-05761-JD*
24
     *Utah v. Google LLC, Case No. 3:21- cv-*
25   *05227-JD*

26   *Match Group, LLC. et al. v. Google LLC et*
     *al.,* Case No. 3:22-cv-02746-JD
27

28

DocuSign Envelope ID: 01FE684D-9DFA-4282-BEFA-299BCFG7412F

I, Yoshi Matsuzawa, declare as follows:

1.  I am the Sr. Director, DNA/Mobile Product Lead at Ancestry.com Operations Inc. ("Ancestry").  I am over eighteen years of age and am fully competent to make this declaration.  I make this declaration of personal, firsthand knowledge, and my familiarity with Ancestry's business.

2.  I have been employed by Ancestry since 2017.  As part of my job responsibilities, I work on Ancestry's portfolio of mobile applications, including those available for download on the Google Play Store.

3.  Ancestry has developed and operates multiple mobile applications available on the Google Play Store, including "Ancestry: Family History & DNA", "AncestryDNA – Genetic Testing", "Ancestry Academy", and "Find a Grave" (the "Ancestry Mobile Apps").

4.  I am aware that Ancestry pays certain service fees to Google LLC ("Google"), or a Google-related entity, in relation to the Ancestry Mobile Apps.

5.  I have reviewed the partial, redacted version of a document titled "Exhibit 18 (Continued)" attached to a letter dated July 29, 2022 from Google to Ancestry. Based on my review of the document, I believe that some or all of the information related to "Ancestry.com" in that Exhibit 18 is information that should be deemed confidential under Ancestry's agreements with Google, and that public disclosure of such information could be harmful to Ancestry with respect to its competitors.

6.  I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

1

1

2                        **Specific Information to be Sealed**

3          7.          **Exhibit 05 to Class Certification Motion, Expert Report of Dr. Michelle M.**

4

5                      **Burtis [MDL Dkt. No. 251-6, Pages 165-167, Exhibit 18]** contains material,

6                      non-public, commercially sensitive financial information related to Ancestry.

7          I declare under penalty of perjury under the laws of the United States that the

8   foregoing is true and correct and that this declaration was executed on August 16, 2022 in

9    San Francisco                 .

10

11  Respectfully submitted,

12

13  Dated: August 16, 2022                       By:  _____ *Yoshi Matsuzawa* _____
                                                         ─8DD0BE343A9542E...

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B9
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF YUSUKE TOYAMA IN SUPPORT OF OMNIBUS MOTION TO SEAL** |
| *Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD* | Judge James Donato |
| *In re Google Play Consumer Antitrust, Case No. 3:20-cv-05761-JD* | |
| *Utah v. Google LLC, Case No. 3:21- cv-05227-JD* | |
| *Match Group, LLC. et al. v. Google LLC et al., Case No. 3:22-cv-02746-JD* | |

I, Yusuke Toyama, declare as follows:

1.      I work for Aniplex Inc. ("Aniplex") in Tokyo, Japan. I have been employed by Aniplex since July 2014, and I have been the Senior Vice President of the Game Business Group since July 2020. I have personal knowledge of the following facts unless otherwise stated. I read English proficiently and I understand the contents of this declaration.

2.      I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are true and correct to the best of my knowledge, information and belief. This declaration is based on my personal knowledge of Aniplex's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, and/or conversation with other knowledgeable employees of Aniplex. If called upon as a witness, I could and would testify competently thereto.

3.      I understand that Google's Administrative Motion to File Under Seal requests that the Court maintain under seal certain portions of materials that pertain to non-public, highly confidential, competitively sensitive aspects of Google's relationship with Aniplex.  I have not specifically described those materials in this Declaration, which I understand will be publicly filed, because describing them in a public document would necessarily reveal the competitively sensitive information and thus defeat the purpose of the sealing request.  Aniplex supports Google's motion to seal those materials because disclosure of those materials would significantly prejudice Aniplex's competitive position and cause substantial harm to Aniplex's relationship with its business partners.  Accordingly, there is good cause and there are compelling reasons to seal this material.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 16, 2022 in Tokyo Japan.

1

DECL. OF YUSUKE TOYAMA ISO OMNIBUS MOT. TO FILE UNDER SEAL
MDL Case No. 3:21-md-02981-JD

1

2    Respectfully submitted,

3

     Dated: August , 2022                    By:  Yusuke Toyama

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF YUSUKE TOYAMA ISO OMNIBUS MOT. TO FILE UNDER SEAL
MDL Case No. 3:21-md-02981-JD

# Exhibit B10
# to
# R. Satia Declaration

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

8
9
10
11
12

IN RE: GOOGLE PLAY STORE
ANTITRUST LITIGATION

Case No. 3:21-md-02981-JD

**DECLARATION OF PETER STERN IN
SUPPORT OF THE OMNIBUS MOTION TO
FILE UNDER SEAL**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

DECLARATION OF PETER STERN IN SUPPORT OF THE PARTIES' OMNIBUS MOT. TO FILE UNDER SEAL
PORTIONS OF CONSUMER PLAINTIFFS' CLASS CERT. MOT. AND EXS., 21-MD-02981-JD

Pursuant to Civil Local Rule 79-5, I hereby declare as follows:

1.      I am employed as Vice President, Services at Apple Inc. The facts stated herein are true of my own knowledge based on my work at Apple unless otherwise stated, and, if called to testify, I could and would testify to those facts.  I am familiar with Apple's safeguarding of proprietary information, the relevant Apple-Google agreements, the relevant competitive landscape, and related business relationships with counterparties.  I submit this declaration in support of the omnibus motion to seal.

2.      I understand that on August 1, 2022, counsel for Google LLC, notified Apple that two pages contained within Exhibit 22, GOOG-PLAY-003776161.R, submitted in support of Plaintiffs' class certification motion may contain confidential Apple information.  Dkt. 246.

3.      I have reviewed the portions of Exhibit 22, as excerpted and provided by counsel for Google LLC.

4.      Exhibit 22 contains sensitive and specific information that is confidential to Apple. Portions of the Plaintiffs' exhibit state figures for Google's traffic acquisition costs (TAC) and related revenue from search through Apple's Safari browser, GOOG-PLAY-003776161.R at -166, -168; similar TAC figures and revenue by device, *id*. at -168; Apple TAC projections, *id*. at -166; and "key terms" specific to Google's dealings with Apple, *id*. at -168.  These deal terms resulted from highly confidential and commercially sensitive negotiations between Apple and Google.

5.      Apple operates in an intensely competitive marketplace.  It occupies a unique position as a leader with respect to a number of highly dynamic technologies.  Apple has serious and legitimate concerns that competitors and counterparties will exploit any release of Apple's highly sensitive information relating to its dealings with others in order to gain competitive advantage or advantage in negotiations.  Disclosure of details of Apple's dealings with Google, an important counterparty, implicates these concerns.  The information contained in Exhibit 22 would be valuable to Apple's competitors and other counterparties, and its disclosure could significantly harm Apple.  As such, Apple takes extensive measures to protect the confidentiality of this information.

6.      Apple requests redaction for portions of two slides:

DECLARATION OF PETER STERN IN SUPPORT OF THE PARTIES' OMNIBUS MOT. TO FILE UNDER SEAL
PORTIONS OF CONSUMER PLAINTIFFS' CLASS CERT. MOT. AND EXS., 21-MD-02981-JD

a)   Portions at Bates number GOOG-PLAY-003776166.R: the numbers corresponding to the three "Apple" rows and the text following "Apple TAC% will . . . " through "revenue"; and

b)   Portions at Bates number GOOG-PLAY-003776168.R: the number following the words "Google paid Apple" in the slide heading,  the numbers in the embedded table (including the number in the sentence beginning with an asterisk and the expiration date), and in the text below the line break: the content between the words "signed" and "of," the numbers and dates in the first bullet, and the entirety of the second and third bullets.

7.      First, Apple seeks to seal non-public financial information—that is, the amount of Google's revenue attributable to specific Apple services and amounts paid to Apple.  Public disclosure of this information would give Apple's counterparties and competitors confidential information about Apple's business model and strategy.  For example, disclosure of Google revenue and TAC spend would allow third parties to determine Google's rates for specific services and use that information as leverage in their dealings with Apple.  Further, knowing the specific terms of dealings would enable derivation of material, non-public information about Apple's users and usage growth.

8.      Apple's non-public financial information is critical to its business, and Apple uses a number of internal protocols and efforts to protect such information.  This commercially sensitive and confidential information is subject to a non-disclosure agreement with Google and has never been publicly disclosed.  Apple does not disclose this information to the public or to counterparties in negotiations.  Within Apple, this information is closely guarded and provided to only a subset of Apple employees on a need-to-know basis.

9.      Second, Apple seeks to seal competitively sensitive information about its contractual terms with Google.  Apple and Google are key players in many technology spaces, and this information would be highly valuable to Apple's counterparties and competitors.  If disclosed, Google and Apple's bargained-for deal terms would reveal confidential aspects of Apple's business strategy, causing Apple economic harm and impacting its negotiation position with other counterparties.  Public disclosure of Google and Apple's agreed-upon terms of business would provide counterparties with an unfair business advantage, allowing them to benefit from revealing strategy in negotiations with another major counterparty.  Competitors could also use this information to undercut Apple's business model and

Gibson, Dunn &
Crutcher LLP

2
DECLARATION OF PETER STERN IN SUPPORT OF THE PARTIES' OMNIBUS MOT. TO FILE UNDER SEAL
PORTIONS OF CONSUMER PLAINTIFFS' CLASS CERT. MOT. AND EXS., 21-MD-02981-JD

1    negotiation strategies.  Within the technology industry, similar business dealings are regularly kept

2    confidential.  Parties operate without perfect knowledge of their competitors' business terms.  Keeping

3    this sensitive information confidential allows Apple to remain competitive in fast-moving markets.

4         I declare under penalty of perjury under the laws of the United States that the foregoing is true

5    and correct and that this Declaration was executed on August 11, 2022 at Cupertino, California.

6

7                                                                  _____

8                                                                  Peter Stern

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

DECLARATION OF PETER STERN IN SUPPORT OF THE PARTIES' OMNIBUS MOT. TO FILE UNDER SEAL
PORTIONS OF CONSUMER PLAINTIFFS' CLASS CERT. MOT. AND EXS., 21-MD-02981-JD

# Exhibit B11
# to
# R. Satia Declaration

THEODORE J. BOUTROUS JR., SBN 132099
    tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
    rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
    dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
    jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  213.229.7000
Facsimile:  213.229.7520

VERONICA S. MOYÉ (Texas Bar No.
24000092; *pro hac vice*)
    vmoye@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone:  214.698.3100
Facsimile:  214.571.2900

CYNTHIA E. RICHMAN (D.C. Bar No.
492089; *pro hac vice*)
    crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

ETHAN DETTMER, SBN 196046
    edettmer@gibsondunn.com
RACHEL S. BRASS, SBN 219301
    rbrass@gibsondunn.com
CAELI A. HIGNEY, SBN 268644
    chigney@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Non-Party Apple Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: GOOGLE PLAY STORE ANTITRUST LITIGATION | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF CAELI A. HIGNEY IN SUPPORT OF THE OMNIBUS MOTION TO FILE UNDER SEAL** |

1   Pursuant to Civil Local Rule 79-5, I hereby declare as follows:

2   1.  I am an attorney licensed to practice in the State of California, and a member of the Bar

3 of this Court.  I am a partner at the law firm Gibson, Dunn & Crutcher LLP, counsel for non-party

4 Apple Inc. ("Apple").  The facts stated herein are true of my own knowledge based on my work with

5 Apple unless otherwise stated, and, if called to testify, I could and would testify to those facts.[1]

6   2.  I submit this declaration in response to the parties' administrative motions to file under

7 seal in *In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal) at Dkt Nos. 250-

8 254, 270-273, 286-289.  Specifically, Apple joins the Plaintiffs' administrative motion to file under

9 seal the unredacted versions of Consumer Plaintiffs' Notice of Motion, Motion for Class Certification,

10 and Memorandum in Support, and Exhibits in part and the omnibus motion to seal, in part.  Apple

11 proposes narrower sealing than suggested by the parties' requests.

12   3.  On August 1, 2022 counsel for Google LLC ("Google") notified Apple that two pages

13 contained within Exhibit 22, GOOG-PLAY-003776161.R, submitted in support of Plaintiffs' class

14 certification motion may contain confidential Apple information and provided the relevant steps to

15 request sealing under the Court's approved stipulation and order modifying sealing procedures.

16 Dkt. 246.  The parties have not identified for Apple any other information that may be confidential to

17 Apple among the redacted portions of the filed materials.   Apple requested certain portions of

18 Exhibit 22 to be included in the omnibus motion to seal and submits this declaration in support thereof.

19

20

21       _____

22 [1] Apple is concurrently filing a declaration from Peter Stern, Vice President, Services at Apple Inc.,
who is familiar with Apple's safeguarding of proprietary information, the relevant Apple-Google

23 agreements, the relevant competitive landscape, and related business relationships with
counterparties, in further support of the omnibus sealing motion.  I am separately submitting this

24 declaration to notify the Court of the past sealing of information similar to that at issue here, and to
address legal points relating to Apple's request to seal.  Courts in this District routinely grant

25 motions to seal solely on the basis of declarations of counsel submitted pursuant to Local Rule 79-
5.  *See, e.g.*, *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-6714-YGR, Dkt. 631 (N.D. Cal.

26 Mar. 29, 2022); *In re Qualcomm Litig.*, No. 17-00108, Dkt. 398-1 (S.D. Cal. Mar. 3, 2018); *Avago
Techs. U.S. Inc., et al. v. Iptronics Inc., et al.*, No. 10-02863-EJD, Dkt. 544 (N.D. Cal. Apr. 3,

27 2015); *Cisco Sys., Inc., et al. v. Opentv Inc., et al.*, No. 13-00282-EJD, Dkt. 76 (N.D. Cal. Oct. 8,
2018).  However, if the Court deems this declaration (together with the declaration of Apple

28 employee Peter Stern) to be insufficient, Apple respectfully requests that it be permitted to file a
further declaration supporting filing under seal.

DECLARATION OF CAELI A. HIGNEY IN SUPPORT OF THE OMNIBUS MOT. TO FILE UNDER SEAL,
21-MD-02981-JD

4.     In determining whether to permit documents to be filed under seal, courts in the Ninth Circuit apply two separate standards:  (1) the "compelling reason" test for sealing information in connection with motions for a determination on the merits of a claim or defense; and (2) the less-restrictive "good cause" test for sealing information in connection with non-dispositive filings. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006); *Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092 (9th Cir. 2016).  Here, the less-restrictive good cause test applies because the underlying dispute is non-dispositive.  The Court has "broad latitude" "to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial information." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (emphasis in original).

5.     A lesser requirement of good cause also applies here because the portions of the document that Apple requests to be sealed only tangentially relate to the merits of the underlying litigation, if at all.  When assessing the public interest in access to information, this Court requires a "lesser showing of 'good cause'" for "[f]ilings that are only tangentially related to the merits." *See Connor v. Quora, Inc*., No. 18-cv-07597, 2020 WL 7408233, at *1 (N.D. Cal. Oct. 15, 2020) (citations and internal quotation marks omitted).  Here, Plaintiffs cited *other* portions of Exhibit 22 (not containing Apple's confidential information) in their class certification briefing to support allegations regarding Google's practices relating to Android devices.  Dkt. 251 at 6:3-8 (citing "Ex. 22 (GOOG-PLAY-003776161.R) at -177").  Apple's information and requests to seal concern separate and distinct topics:  Google's traffic acquisition cost (TAC) and related revenue from search through Apple's Safari browser, GOOG-Play-003776161.R at -166, -168; similar TAC figures and revenue by device, *id*. at -168; Apple TAC projections, *id*. at -166; and "key terms" specific to Google's dealings with Apple, *id*. at -168.  It appears that neither party cites or relies on the pages containing the information that Apple requests to be sealed.  Accordingly, only a "lesser showing of 'good cause'" is required with respect to Apple's request to seal information that does not pertain to the underlying motion. *Connor*, No. 18-cv-07597, 2020 WL 7408233, at *1.  Good cause for sealing is present here.

6.     In another case, this Court has already considered and granted Google's motion to seal "a financial agreement between non-party Apple Inc. and Google, as well as information regarding

2
DECLARATION OF CAELI A. HIGNEY IN SUPPORT OF THE OMNIBUS MOT. TO FILE UNDER SEAL, 21-MD-02981-JD

1   Android revenues and profits." *Oracle v. Google*, No. 10-cv-03561-WHA-DMR (N.D. Cal., Mar. 21,

2   2016) (Dkt. 1541 at 1) (order granting Google and Apple requests to seal).  Apple submitted a

3   declaration in support of sealing the portions of that information confidential to Apple.  *Oracle v.*

4   *Google*, No. 10-cv-03561-WHA-DMR (N.D. Cal., Jan. 20, 2016) (Dkt. 1439).  There, the Court

5   "f[ound] good cause to seal the information" which related to Google's revenue, payments to Apple,

6   and terms of the business dealings that are also at issue here.  *Oracle,* No. 10-cv-03561-WHA-DMR

7   (N.D. Cal., Mar. 21, 2016) (Dkt. 1541 at 3-5).  Here, good cause is even more evident.  Apple's sealing

8   requests correspond to more granular revenue and spending data with additional detail broken out by

9   device and more specific deal terms than were present in the sealed *Oracle* material.

10          7.      Apple narrowly tailors its request to only redact specific non-public financial

11  information and competitively sensitive information that could put Apple at a competitive

12  disadvantage, if made public.  *See generally* Stern Decl. at ¶¶7-9.  Apple seeks to seal only specific

13  revenue figures, spend figures, and key terms relating to Apple's and Google's business dealings.

14          8.      First, Apple seeks to seal non-public financial information:  the amount of Google's

15  revenue related to specific Apple services and amounts paid to Apple.  The public disclosure of this

16  information would cause Apple economic harm and put it at competitive disadvantage.  Stern Decl. at

17  ¶ 7-8; *see Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016), *cert. denied*

18  *sub nom. FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016) (finding there was a compelling

19  reason for sealing when records contain business information that could be used to harm a litigant's

20  competitive standing).    Public disclosure would give Apple's competition and counterparties

21  confidential information about Apple's business model and strategy.  *Apple Inc. v. Samsung Electronics*

22  *Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (concluding the district court abused its discretion in

23  denying a motion to seal "profit, cost, and margin data").  The combination of Google revenue and

24  TAC spend would allow third parties to determine Google's rates for specific services and use that

25  information as leverage in dealings with Apple.  Stern Decl. at ¶ 7.

26          9.      The financial information Apple seeks to protect is critical to its business, and Apple

27  exerts significant effort and undertakes substantial expense to protect such information.  Stern Decl. at

28  ¶ 8.  This commercially sensitive and confidential information is subject to a non-disclosure agreement

1    with Google and has never been publicly disclosed. *Id*. Moreover, Apple restricts knowledge of this

2    information to only a subset of Apple employees on a need-to-know basis. *Id*. Apple has narrowly

3    tailored its sealing request so as to maximize the public's access to court proceedings without

4    jeopardizing Apple's business interests.

5            10.    Second, Apple seeks to seal competitively sensitive information about its contractual

6    terms with Google. Apple and Google are key players in many technology spaces, and information

7    about Apple and Google's bargained-for deal terms would be highly valuable to competitors and

8    counterparties. If disclosed, those terms would reveal confidential aspects of Apple's business strategy

9    and would provide competitors and counterparties with an unfair business advantage, allowing them to

10   benefit from insight into Apple's efforts in negotiations with a major business counterparty. Stern

11   Decl. at ¶¶ 7-9. Within the technology industry, similar business dealings are regularly kept

12   confidential. *Id*. at ¶ 9. Parties operate without perfect knowledge of their competitor's and

13   counterparty's business terms with others. *Id*. Keeping this sensitive information confidential allows

14   Apple to remain competitive in fast-moving markets. *Id*.; *see Epic Games, Inc. v. Apple Inc*., No. 4:20-

15   cv-05640, 2021 WL 1925460, at *1 (N.D. Cal. Apr. 30, 2021) (granting non-party motion to seal

16   "highly confidential information, including pricing strategy, business decision-making, and financial

17   records, belonging to [] a third-party non-party"); *Medimpact Healthcare Sys., Inc. v. IQVIA Inc*., No.

18   19-cv-1865, 2021 WL 4595005, at *2 (S.D. Cal. Oct. 5, 2021) (granting motion to seal documents

19   implicating confidential deal terms); *Apple v. Samsung Elecs.*, No. 11-1846 (N.D. Cal. Aug. 9, 2012)

20   (Dkt. 1649 at 10-11) (citing *In re Electronic Arts*, 298 Fed. App'x 568, 569 (9th Cir. 2008)) (allowing

21   Apple to seal "pricing terms, royalty rates, and minimum payment terms of the [third party] licensing

22   agreements").

23           11.    Below is a chart detailing the specific items of Apple that are sealable for the reasons

24   explained herein.

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DECLARATION OF CAELI A. HIGNEY IN SUPPORT OF THE OMNIBUS MOT. TO FILE UNDER SEAL,
21-MD-02981-JD

| Document | Description or Pages & Lines | Reason for Redaction |
|---|---|---|
| Ex. 22 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-9) | Portions at bates number GOOG-PLAY-003776166.R.  Specifically, the numbers corresponding to the three "Apple" rows and the text following "Apple TAC% will . . . " through "revenue[.]" | This document should be sealed because it includes Apple's non-public financial information related to Apple's TAC revenue, associated Google revenue yields for Apple's services, and would put Apple at a competitive disadvantage if made public. |
| Ex. 22 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-9) | Portions at bates number GOOG-PLAY-003776168.R.  Specifically, the number referenced in the slide heading, the numbers in the embedded table (including the number in the sentence beginning with an asterisk and the expiration date), in the text below the line break:  the content between the words "signed" and "of" the numbers and dates in the first bullet and the entirety of the second and third bullets. | This document should be sealed because it includes Apple's non-public financial information related to Apple's TAC revenue, associated Google revenue yields for Apple's services (including details by device), confidential and sensitive deal terms, and would put Apple at a competitive disadvantage if made public. |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on August 16, 2022 at San Francisco, California.

/s/ Caeli A. Higney
Caeli A. Higney

105655138.8

Gibson, Dunn & Crutcher LLP

DECLARATION OF CAELI A. HIGNEY IN SUPPORT OF THE OMNIBUS MOT. TO FILE UNDER SEAL,
21-MD-02981-JD

# Exhibit B12
# to
# R. Satia Declaration

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY CONSUMER ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT APPLIES TO: | **DECLARATION OF CORINA CACOVEAN ON BEHALF OF NON-PARTY APPLOVIN CORPORATION AND CERTAIN APPLOVIN SUBSIDIARIES IN SUPPORT OF THE PARTIES' JOINT OMNIBUS SEALING MOTION** |
| *All Related Actions* | |
| | No Hearing Unless Requested by the Court |
| | The Honorable James Donato |

**I, Corina Cacovean, declare as follows**:

1.      I am Global Head of Privacy & Litigation for non-party AppLovin Corporation ("AppLovin") and certain relevant AppLovin subsidiaries as defined below.  I am an active member in good standing of the bar of the State of California.  Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration.

2.      Pursuant to Civil Local Rule 79-5, the Stipulated Second Amended Supplemental Protective Order Governing Production of Protected Non-Party Materials entered by the Court on May 25, 2022 (MDL Dkt. No. 248) (the "Stipulated Protective Order"), the text Order entered by the Court on May 25, 2022 (MDL Dkt. No. 246), and the Standing Order for Civil Cases before Judge James Donato, I submit this Declaration on behalf of non-party AppLovin and certain relevant AppLovin subsidiaries, including Clipwire Games, Inc. ("Clipwire Games"), Lion Studios, LLC ("Lion Studios"), Machine Zone, Inc. ("Machine Zone"), Magic Tavern, Inc.

("Magic Tavern"), PeopleFun, Inc. ("PeopleFun"), Redemption Games, Inc. ("Redemption Games"), and ZenLife Games Pte. Ltd. ("ZenLife Games") (collectively, together with AppLovin, the "Non-Party AppLovin Entities"), in support of the parties' Joint Omnibus Sealing Motion (the "Motion to Seal").

3.       The Motion to Seal sets forth the specific documents sought to be sealed, which include designated portions of the parties' papers filed in support of and in opposition to the motions for class certification and to exclude experts (the "Motion Papers") in *In re Google Play Store Antitrust Litigation*, MDL Dkt. Nos. 250–54, 270–73, 286–89. *See also In re Google Play Consumer Antitrust Litigation*, No. 3:20-cv-05761-JD, Dkt. Nos. 279–83, 297–99, 303–06. As set forth in the chart below, certain narrowly tailored portions of the parties' Motion Papers, particularly (i) certain exhibits attached to the Expert Report of Dr. Michelle M. Burtis ("Dr. Burtis Expert Report") filed as Exhibit 5 to the Consumer Plaintiffs' Notice of Motion, Motion for Class Certification, and Memorandum in Support (MDL Dkt. No. 251–6) (the "Consumer Plaintiffs' Class Certification Motion") and (ii) certain exhibits attached to the document filed as Exhibit 56 to the Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251–14), include non-public, sensitive, and confidential business and financial information of the Non-Party AppLovin Entities, which the parties have already designated as "Non-Party Highly Confidential – Outside Counsel Eyes Only" pursuant to the Stipulated Protective Order.

4.       For the reasons identified below, "good cause" and "compelling reasons" exist to seal those narrowly tailored portions of the parties' Motion Papers that include the Non-Party AppLovin Entities' non-public, sensitive, and confidential business and financial information, including specific revenue, sales, and cost information related to the Non-Party AppLovin Entities' distribution of mobile games on the Google Play Store, the disclosure of which would likely

1  provide competitors in the mobile gaming industry with a strategic and unfair business advantage

2  over the Non-Party AppLovin Entities.  As evident from the parties' Motion Papers and other

3  filings in this action, mobile game developers, like the Non-Party AppLovin Entities, operate in

4  the highly competitive mobile gaming industry, typified by a very large number of market

5  participants and relatively low entry costs.  The Non-Party AppLovin Entities' non-public,

6  sensitive, and confidential business and financial information at issue in the parties' Motion to Seal

7  could be used by competitors to extrapolate the Non-Party AppLovin Entities' specific revenues

8  from the distribution of mobile games on the Google Play Store, to deduce the Non-Party

9  AppLovin Entities' individual or aggregate relative market share in certain mobile game

10  categories, and to calibrate their own pricing, mobile game distribution plans, and other business

11  methods to undercut the Non-Party AppLovin Entities' market position in the mobile gaming

12  industry.  In addition, the public has little, if any, interest in this non-party information and the

13  competitive harm that disclosure would create for the Non-Party AppLovin Entities outweighs any

14  slight public interest that may exist.  As further detailed in the chart below, these considerations

15  strongly support sealing those limited portions of the parties' Motion Papers that include this non-

16  public, sensitive, and confidential business and financial information of the Non-Party AppLovin

17  Entities.

| Document Name / Docket Number | Non-Party AppLovin Entity/Entities | Sealable Portions | Reason(s) for Confidentiality |
|---|---|---|---|
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | AppLovin | Page 28, ¶ 78 | This non-public, sensitive, and confidential information compares (on a percentage basis) AppLovin's revenue from mobile games distributed through the Google Play Store to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could |

3

| Document Name / Docket Number | Non-Party AppLovin Entity/Entities | Sealable Portions | Reason(s) for Confidentiality |
|---|---|---|---|
| | | | place AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to extrapolate AppLovin's specific revenue from mobile games distributed through the Google Play Store, relative market share in the mobile gaming industry, and to make changes to their own business models, including their pricing and distribution plans, to harm AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | AppLovin | Ex. 13, Page 160 | This non-public, sensitive, and confidential information includes AppLovin's specific revenue from mobile games distributed through the Google Play Store and compares that revenue information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to deduce AppLovin's relative market share in the mobile gaming industry and to make changes to their own business models, including their pricing and distribution plans, to harm AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | AppLovin | Ex. 14, Page 161 | This non-public, sensitive, and confidential information includes AppLovin's specific revenue from mobile games distributed through the Google Play Store and compares that revenue information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place AppLovin at a competitive disadvantage by allowing competitors in |

| Document Name / Docket Number | Non-Party AppLovin Entity/Entities | Sealable Portions | Reason(s) for Confidentiality |
|---|---|---|---|
| | | | the mobile gaming industry to deduce AppLovin's relative market share and to make changes to their own business models, including their pricing and distribution plans, to harm AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | AppLovin | Ex. 18, Pages 165–67 | This non-public, sensitive, and confidential information includes AppLovin's specific cost information from mobile games distributed through the Google Play Store and compares that cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to extrapolate AppLovin's specific revenue information from mobile games distributed through the Google Play Store, relative market share in the mobile gaming industry, and to make changes to their own business models, including their pricing and distribution plans, to harm AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | Clipwire Games and AppLovin | Ex. 18, Pages 165–67 | This non-public, sensitive, and confidential information includes Clipwire Games' specific cost information from mobile games distributed through the Google Play Store and compares that cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place Clipwire Games and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming |

| Document Name / Docket Number | Non-Party AppLovin Entity/Entities | Sealable Portions | Reason(s) for Confidentiality |
|---|---|---|---|
| | | | industry to extrapolate Clipwire Games' and AppLovin's specific revenue information from mobile games distributed through the Google Play Store, relative market share in the mobile gaming industry, and to make changes to their own business models, including their pricing and distribution plans, to harm Clipwire Games' and AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | Clipwire Games and AppLovin | Ex. 19, Pages 168–70 | This non-public, sensitive, and confidential information includes Clipwire Games' specific revenue and cost information from mobile games distributed through the Google Play Store and compares that revenue and cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place Clipwire Games and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to deduce Clipwire Games' and AppLovin's relevant market share in the mobile gaming industry and to make changes to their own business models, including their pricing and distribution plans, to harm Clipwire Games' and AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | Lion Studios and AppLovin | Ex. 19, Pages 168–70 | This non-public, sensitive, and confidential information includes Lion Studios' specific revenue and cost information from mobile games distributed through the Google Play Store and compares that revenue and cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, |

| Document Name / Docket Number | Non-Party AppLovin Entity/Entities | Sealable Portions | Reason(s) for Confidentiality |
|---|---|---|---|
| | | | and confidential information could place Lion Studios and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to deduce Lion Studios' and AppLovin's relative market share in the mobile gaming industry and to make changes to their own business models, including their pricing and distribution plans, to harm Lion Studios' and AppLovin's competitive position in the mobile gaming industry. |
| Exhibit 56 to the Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251–14) | Machine Zone and AppLovin | Page 8 | This non-public, sensitive, and confidential information purports to show the "Value Received" by Machine Zone from the distribution of mobile games through the Google Play Store and compares that "Value Received" to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place Machine Zone and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to extrapolate Machine Zone's and AppLovin's specific revenue information from mobile games distributed through the Google Play Store, relative market share in the mobile gaming industry, and to make changes to their own business models, including their pricing and distribution plans, to harm Machine Zone's and AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report | Machine Zone and AppLovin | Ex. 19, Pages 168–70 | This non-public, sensitive, and confidential information includes Machine Zone's specific revenue and cost information from mobile games distributed through the Google Play Store and compares that revenue and |

| Document Name / Docket Number | Non-Party AppLovin Entity/Entities | Sealable Portions | Reason(s) for Confidentiality |
|---|---|---|---|
| (MDL Dkt. No. 251–6) | | | cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place Machine Zone and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to deduce Machine Zone's and AppLovin's relative market share in the mobile gaming industry and to make changes to their own business models, including their pricing and distribution plans, to harm Machine Zone's and AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | Magic Tavern and AppLovin | Ex. 19, Pages 168–70 | This non-public, sensitive, and confidential information includes Magic Tavern's specific revenue and cost information from mobile games distributed through the Google Play Store and compares that revenue and cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place Magic Tavern and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to deduce Magic Tavern's and AppLovin's relative market share in the mobile gaming industry and to make changes to their own business models, including their pricing and distribution plans, to harm Magic Tavern's and AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis | PeopleFun and AppLovin | Ex. 19, Pages 168–70 | This non-public, sensitive, and confidential information includes PeopleFun's specific revenue and cost information from mobile games distributed through the Google Play |

| Document Name / Docket Number | Non-Party AppLovin Entity/Entities | Sealable Portions | Reason(s) for Confidentiality |
|---|---|---|---|
| Expert Report (MDL Dkt. No. 251–6) | | | Store and compares that revenue and cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place PeopleFun and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to deduce PeopleFun's and AppLovin's relative market share in the mobile gaming industry and to make changes to their own business models, including their pricing and distribution plans, to harm PeopleFun's and AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | Redemption Games and AppLovin | Ex. 19, Pages 168–70 | This non-public, sensitive, and confidential information includes Redemption Games' specific revenue and cost information from mobile games distributed through the Google Play Store and compares that revenue and cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place Redemption Games and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to deduce Redemption Games' and AppLovin's relative market share in the mobile gaming industry and to make changes to their own business models, including their pricing and distribution plans, to harm Redemption Games' and AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification | ZenLife Games and AppLovin | Ex. 18, Pages 165–67 | This non-public, sensitive, and confidential information includes ZenLife Games' specific cost information from mobile games |

| Document Name / Docket Number | Non-Party AppLovin Entity/Entities | Sealable Portions | Reason(s) for Confidentiality |
|---|---|---|---|
| Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | | | distributed through the Google Play Store and compares that cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place ZenLife Games and AppLovin at a competitive disadvantage by allowing competitors in the mobile gaming industry to extrapolate ZenLife Games' and AppLovin's specific revenue information from the distribution of mobile games through the Google Play Store, relative market share in the mobile gaming industry, and to make changes to their own business models, including their pricing and distribution plans, to harm ZenLife Games' and AppLovin's competitive position in the mobile gaming industry. |
| Ex. 5 to the Consumer Plaintiffs' Class Certification Motion, Dr. Burtis Expert Report (MDL Dkt. No. 251–6) | ZenLife Games and AppLovin | Ex. 19, Pages 168–70 | This non-public, sensitive, and confidential information includes ZenLife Games' specific revenue and cost information from mobile games distributed through the Google Play Store and compares that revenue and cost information to other mobile app developers that distribute their apps through the Google Play Store.  The disclosure of this non-public, sensitive, and confidential information could place ZenLife Games and AppLovin at a competitive disadvantage in the mobile gaming industry by allowing competitors to deduce ZenLife Games' and AppLovin's relative market share in the mobile gaming industry and to make changes to their own business models, including their pricing and distribution plans, to harm ZenLife Games' and AppLovin's competitive position in the mobile gaming industry. |

5.     As such, "good cause" and "compelling reasons" exist to seal those narrowly tailored portions of the parties' Motion Papers that include non-public, sensitive, and confidential business and financial information of the Non-Party AppLovin Entities.  As established above, the disclosure of this non-public, sensitive, and confidential business and financial information could place the Non-Party AppLovin Entities at a significant competitive disadvantage—in the already highly competitive mobile gaming industry—by allowing competitors in the mobile gaming industry to extrapolate the Non-Party AppLovin Entities' specific revenues from the distribution of mobile games on the Google Play Store, to deduce the Non-Party AppLovin Entities' individual or aggregate relative market share in certain mobile app categories, and to calibrate their own pricing, mobile app distribution plans, and other business methods to undercut the Non-Party AppLovin Entities' market position in the mobile gaming industry.  In addition, the public has little, if any, interest in this non-party information and the competitive harm that disclosure would create for the Non-Party AppLovin Entities outweighs any slight public interest that may exist. These considerations strongly support sealing those limited portions of the parties' Motion Papers that include the Non-Party AppLovin Entities' non-public, sensitive, and confidential business and financial information.

6.     For the reasons set forth above and in the parties' Motion to Seal, I respectfully request that the parties' Motion to Seal be granted to the extent that it concerns the non-public, sensitive, and confidential business and financial information of the Non-Party AppLovin Entities.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that I executed this Declaration in Oakland, California on August 17, 2022.

*/s/ Corina Cacovean*
Corina Cacovean

# Exhibit B13
# to
# R. Satia Declaration

1
2
3
4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

5
6

**IN RE GOOGLE PLAY STORE**
**ANTITRUST LITIGATION**

Case No. 3:21-md-02981-JD

7

THIS DOCUMENT RELATES TO:

Judge: Hon. James Donato

8
9

*EPIC GAMES, INC. V. GOOGLE LLC ET AL.*,
CASE. NO. 3:20-CV-05671-JD

10
11

*IN RE GOOGLE PLAY CONSUMER ANTITRUST*
LITIGATION, CASE NO. 3:20-CV-05761-JD

12
13

*IN RE GOOGLE PLAY DEVELOPER ANTITRUST*
LITIGATION, CASE NO. 3:20-CV-05792-JD

14
15

*STATE OF UTAH, ET AL. V. GOOGLE LLC ET AL.*,
CASE NO 3:21-CV-05227-JD

16
17
18

19

<u>**DECLARATION OF JEFFREY EZELL IN SUPPORT OF**</u>

20

<u>**JOINT OMNIBUS SEALING MOTION**</u>

21
22
23
24
25
26
27
28

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

I, Jeffrey Ezell, declare as follows:

1. I am currently Vice President of Business Development at AT&T Mobility Services LLC ("AT&T"). I have been employed by AT&T, or its predecessor companies, since 1997, and I have served in a business development role for much of that period. My responsibilities in this role include negotiating, on behalf of AT&T, commercial agreements with third parties, including Google LLC and other mobile app developers. Such agreements often entail the marketing or distribution of non-AT&T content or services through AT&T distribution channels, including AT&T-distributed devices.

2. I submit this declaration in support of the Parties' joint omnibus sealing motion in In Re Google Play Store Antitrust Litigation, Case No. 3:21-md-02981-JD.

3. AT&T is a mobile carrier that offers wireless service and distributes and sells mobile devices for use on AT&T's wireless network.

4. For the devices AT&T distributes or sells to its network subscribers, AT&T may preinstall or preload certain mobile apps, which are then immediately available to the consumer upon device set-up without the consumer having to separately download those apps from a digital app store. The preinstallation or preloading of mobile apps onto a device may be governed by a commercial agreement between AT&T and a third-party app developer, content provider, or service provider (collectively, "counterparties").

5. AT&T negotiates and contracts with such app developers and content or service providers, including developers and/or providers that may compete with one another in the mobile app ecosystem.

6. AT&T, like other mobile carriers, has also previously offered its wireless subscribers a payment service known as direct carrier billing. Direct carrier billing allows wireless subscribers to pay for certain non-AT&T mobile purchases through the subscriber's monthly wireless bill. Direct carrier billing arrangements are also governed by commercial agreements between AT&T and its counterparties.

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

1    7.   Competitor wireless carriers may also distribute or sell mobile devices for use on that

2    competitor's network. Competitor mobile carriers may also choose to preinstall or preload

3    mobile apps onto that carrier's devices or offer direct carrier billing services to their subscribers.

4    8.   AT&T seeks out commercial relationships to provide, market, or distribute content and/or

5    services on its devices that may be beneficial to mobile device consumers.

6    9.   The terms of AT&T's commercial agreements with app developers and content or service

7    providers are non-public, highly sensitive business information. AT&T considers the terms of

8    these commercial agreements to be highly confidential.

9    10. The terms of the commercial agreements are individually negotiated with counterparties

10   based on the unique circumstances of the relationship between AT&T and the counterparty.

11   These unique circumstances may include financial and other economic considerations, as well

12   non-financial terms and conditions that reflect or reveal AT&T proprietary information or

13   business strategy.

14   11. Public disclosure of the specific deal terms of AT&T's commercial agreements would

15   significantly harm AT&T's commercial relationships and its ability to conduct business with

16   counterparties and prospective counterparties. Specifically, current and prospective

17   counterparties could use the confidential deal information to their advantage when negotiating

18   with AT&T, thereby harming AT&T's business and competitive interests.

19   12. Public disclosure of the specific deal terms in AT&T's commercial agreements would

20   also disadvantage AT&T relative to other mobile wireless carriers that could use AT&T's

21   confidential information to their advantage when competing with AT&T to market their device

22   and service portfolio to current and prospective wireless subscribers. Public disclosure of the

23   contractual terms would thus do significant damage to AT&T's business and competitive

24   interests.

25   13. The following information contained in the Parties' filings that are the subject of the joint

26   omnibus sealing motion is highly sensitive business information and confidential. The

27   information derives from confidential material that I understand was either produced by AT&T

28

3                    Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

1   in response to non-party subpoenas or civil investigative demands or shared with Google as part

2   of a confidential commercial business relationship between AT&T and Google.

3      14. As described in detail above and below, AT&T has compelling reasons that overcome

4   public policies favoring disclosure and access in court proceedings.

5   **Specific Information To Be Sealed**

6   **(Ex. 02 to Class Certification Motion, Class Certification Report of Hal J. Singer, Ph.D**

7   **[MDL Dkt. No. 251-3])**

8      15. **Page 39, paragraph 85, beginning with "Google implemented" until footnote 174,**

9   **and following footnote 174 through and including the remainder of the sentence ending in**

10  **"examples."** These sentences describe, in both qualitative and quantitative terms, the specific

11  deal terms of AT&T's contracts. These deal terms are not public, and AT&T has a reasonable

12  expectation of confidentiality in its contractual relationships. Public disclosure of specific deal

13  terms, including terms historical in nature, would significantly impair AT&T's ability to

14  negotiate agreements with third parties. Public disclosure of historical deal terms provides

15  AT&T's competitors and current or prospective counterparties with information as to whether

16  and/or how AT&T's deal terms have evolved over time, thereby providing competitors and

17  current or prospective counterparties with valuable insight into AT&T's commercial dealings

18  and strategy. Competitors and current or prospective counterparties could then leverage this

19  information to disadvantage AT&T. For example, current or prospective counterparties could use

20  this information to its advantage in negotiations with AT&T directly or in negotiations with

21  AT&T's competitors. Similarly, AT&T's competitors could use this information in negotiations

22  with their own current or prospective business relationships to undermine AT&T's commercial

23  interests.

24     16. **Page 39, footnote 174, following "GOOG-PLAY4-000284361" until the next**

25  **semicolon in the footnote.** The sealed information reveals the identity of a source of AT&T

26  confidential information.

27

28

4

Case Nos. 3:21-md-02981-JD;<br>3:20-cv-05671-JD; 3:20-cv-05761-JD;<br>3:20-cv-05792-JD; 3:21-cv-05227-JD

17. **Page 40, paragraph 85, beginning "From" through and including the remainder of the sentence.** This information describes the specific deal terms of AT&T contractual agreements. As described above, these terms are confidential, not public, and disclosure would significantly impair AT&T's ability to negotiate with third parties as well as provide AT&T's competitors with information that could be used to undermine AT&T's commercial relationships and interests.

18. **Page 40, footnote 177, the first full sentence before the period.** The sealed information reveals the identity of a source of AT&T confidential information.

19. **Page 43, paragraph 91, beginning "In" and through and including the remainder of the sentence.** This information describes the specific deal terms of AT&T contractual agreements. This information further describes whether and/or how specified AT&T contractual terms evolved, thereby revealing confidential information about AT&T business strategy and priorities. As described above, these terms are confidential, not public, and disclosure would significantly impair AT&T's ability to negotiate with third parties as well as provide AT&T's competitors with information that could be used to undermine AT&T's commercial relationships and interests.

20. **Page 43, footnote 196, first word before the first semicolon.** The sealed information reveals the identity of a source of AT&T confidential information.

21. **Page 43, paragraph 91, beginning with "All" through and including the remainder of the sentence.** This information describes whether and/or how specified AT&T contractual terms evolved over time, thereby revealing confidential information about AT&T business strategy and priorities. As described above, these terms are confidential, not public, and disclosure would significantly impair AT&T's ability to negotiate with third parties as well as provide AT&T's competitors with information that could be used to undermine AT&T's commercial relationships and interests.

22. **Page 43, footnote 197, first word before the first semicolon.** The sealed information reveals the identity of a source of AT&T confidential information.

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

23. **Page 43, paragraph 91, beginning with "After" and until footnote 199, and the full sentence directly following footnote 199.** This information describes the specific deal terms of AT&T contractual agreements. This information further describes whether and/or how specified AT&T contractual terms evolved over time and business communications around the negotiation of those terms, thereby revealing confidential information about AT&T business strategy and priorities. As described above, these terms are confidential, not public, and disclosure would significantly impair AT&T's ability to negotiate with third parties as well as provide AT&T's competitors with information that could be used to undermine AT&T's commercial relationships and interests. Furthermore, AT&T's business negotiations are confidential as among those parties and AT&T has a reasonable expectation such negotiations would not be publicly revealed.

24. **Page 43, footnote 199, beginning after "GOOG-PLAY-003604603." through and including the end of the footnote.** This information describes the specific deal terms of AT&T contractual agreements as well as business communications around the negotiation of those terms, thereby revealing confidential information about AT&T business strategy and priorities. As described above, these terms are confidential, not public, and disclosure would significantly impair AT&T's ability to negotiate with third parties as well as provide AT&T's competitors with information that could be used to undermine AT&T's commercial relationships and interests. AT&T also has a reasonable expectation of confidentiality in its business negotiations, and public disclosure would violate the parties' expectation of confidentiality in private business dealings.

**(Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4])**

23. **Page 17, footnote 76, the information contained in the parentheses following "Ex. B".** This information describes the specific deal terms of AT&T contractual agreements. As described above, these terms are confidential, not public, and disclosure would significantly impair AT&T's ability to negotiate with third parties as well as provide AT&T's competitors

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

1    with information that could be used to undermine AT&T's commercial relationships and

2    interests. Additionally, public disclosure of contractual terms at different points in time of

3    AT&T's business dealings reveal any change in AT&T's contractual terms over time. Disclosure

4    of trends in AT&T's contractual dealings would provide competitors and current or prospective

5    counterparties with valuable insight into AT&T's commercial dealings and strategy, allowing

6    those current or prospective counterparties to leverage that information to disadvantage AT&T's

7    business dealings.

8    **(Ex. 16 to Consumer Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-7])**

9    24. **Exhibit 16 in its entirety.** Exhibit 16 sets forth specific AT&T contractual and deal

10   terms. The information at issue concerns financial and non-financial terms and obligations. As

11   described above, these terms are confidential, not public, and disclosure would significantly

12   impair AT&T's ability to negotiate with third parties as well as provide AT&T's competitors

13   with information that could be used to undermine AT&T's commercial relationships and

14   interests. Additionally, public disclosure of contractual terms at different points in time of

15   AT&T's business dealings reveal any change in AT&T's contractual terms over time. Disclosure

16   of trends in AT&T's contractual dealings would provide competitors and current or prospective

17   counterparties with valuable insight into AT&T's commercial dealings and strategy and allow

18   them to leverage that information to disadvantage AT&T in its own business dealings.

19       I declare under penalty of perjury under the laws of the United States that the foregoing is

20   true and accurate to the best of my knowledge and belief, and that this declaration was executed

21   in Atlanta, Georgia on August 16, 2022.

22   August 16, 2022

23                              Jeffrey Ezell

24

25

26

27

28

Case Nos. 3:21-md-02981-JD;
3:20-cv-05671-JD; 3:20-cv-05761-JD;
3:20-cv-05792-JD; 3:21-cv-05227-JD

# Exhibit B14
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games, Inc. v. Google LLC, Case No.
3:20-cv-05671-JD*

*In re Google Play Consumer Antitrust, Case
No. 3:20-cv-05761-JD*

*Utah v. Google LLC, Case No. 3:21- cv-
05227-JD*

*Match Group, LLC. et al. v. Google LLC et al.,*
Case No. 3:22-cv-02746-JD

Case No. 3:21-md-02981-JD

**DECLARATION OF MATTHEW
DATUM IN SUPPORT OF OMNIBUS
MOTION TO SEAL**

Judge James Donato

I, Matthew Datum, declare as follows:

1.      I am Legal Counsel for Bandai Namco Entertainment, Inc. ("BNEI").   I am over eighteen years of age. I make this declaration based on my personal knowledge and pursuant to Civil Local Rule 79-5 in support of Google's Omnibus Motion to File Under Seal. If called as a witness, I could and would testify competently to all facts stated herein as follows:

2.      I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

3.      The information referenced in the following chart, which is contained in the Consumer Class Certification Motion and supporting documents, contains highly sensitive, and competitively-valuable information, including, *inter alia*, internal business strategies and analysis regarding BNEI's platform usage, confidential financial data, and confidential information relating to BNEI's strategic partnerships, the release of which would harm BNEI, a non-party.

| Document Name | Page/ line | Reasons for filing under seal |
|---|---|---|
| Ex. 44 to Consumer Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-14] | Exhibit 44, p. 15 | Discloses confidential BNEI information about business relationships with Google |
| Ex. 44 to Consumer Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-14] | Exhibit 44, p. 16 | The analysis discloses and is derived from confidential BNEI financial information |
| Ex. 44 to Consumer | Exhibit 44, p. 20 | The analysis discloses and is derived from confidential BNEI financial information |

1

| | | |
|---|---|---|
| Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-14] | Exhibit 44, p. 51 | The analysis discloses confidential BNEI business and financial information |
| Ex. 44 to Consumer Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-14] | | |
| Ex. 44 to Consumer Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-14] | Exhibit 44, p. 59 | The analysis discloses and is derived from confidential BNEI financial information |
| Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] | 25, para. 63 n. 115 | The analysis discloses and is derived from confidential BNEI business information |
| Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | 165-67, Exhibit 18 | The analysis discloses and is derived from confidential BNEI financial information |

4.     The public disclosure of the information referenced in the chart would likely have the effect of causing BNEI substantial competitive harm, and could significantly damage its business relationships.

1   5.  BNEI restricts dissemination of the information referenced in the chart and takes

2 steps to preserve its confidentiality to protect its competitive advantage with regard to key

3 distribution platforms, and to protect disclosure of its confidential business and financial

4 information.

5

6

7   I declare under penalty of perjury under the laws of the United States that the foregoing is

8 true and correct and that this declaration was executed on August 17, 2022 in Tokyo, Japan.

9

10 Respectfully submitted,

11

12 Dated: August 17, 2022     By: */s/ Matthew Datum*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B15
# to
# R. Satia Declaration

1

2  **UNITED STATES DISTRICT COURT**

3  **NORTHERN DISTRICT OF CALIFORNIA**

4  **SAN FRANCISCO DIVISION**

5

6  **IN RE GOOGLE PLAY STORE**            Case No. 3:21-md-02981-JD
   **ANTITRUST LITIGATION**

7                                          **DECLARATION OF JAMES RINEY IN**
   THIS DOCUMENT RELATES TO:              **SUPPORT OF OMNIBUS MOTION TO**
8                                          **SEAL**

9  *Epic Games, Inc. v. Google LLC, Case No.*
   *3:20-cv-05671-JD*                      Judge James Donato

10 *In re Google Play Consumer Antitrust, Case*
   *No. 3:20-cv-05761-JD*
11
   *Utah v. Google LLC, Case No. 3:21- cv-*
12 *05227-JD*

13 *Match Group, LLC. et al. v. Google LLC et al.,*
   Case No. 3:22-cv-02746-JD
14

15

16     I, James Riney, declare as follows:
17

18     1.     I am the Vice President and Controller for the digital business of Aristocrat

19 Leisure Limited ("Aristocrat").  I have held this position since January 2019.  Two of Aristocrat's

20 subsidiaries, Big Fish Games, Inc. ("Big Fish") and Product Madness, Inc. ("Product Madness"),

21 develop gaming apps that are available through, among other places, the Google Play Store.

22 Through my employment, I am familiar with the financial information of Big Fish and Product

23 Madness, including revenue and expenses associated with their gaming apps.

24     2.     I make this declaration in support of the omnibus sealing motion filed in the

25 above-captioned matter, specifically with respect to Big Fish's and Product Madness's

26 information contained in Exhibit 5 to the Class Certification Motion [MDL Dkt. No. 251-6],

27 Exhibit 19 to the Expert Report of Dr. Michelle M. Burtis (hereinafter, "Exhibit 19"), on pages

28 168–170.  Specified portions of Exhibit 19 should remain under seal for the reasons stated in this

1    declaration.  Except where otherwise indicated, I have personal knowledge of the matters stated

2    herein, and if called as a witness in this matter, I could and would testify thereto.

3        3.      Exhibit 19 contains confidential financial information relating to Big Fish's and

4    Product Madness's apps available through the Google Play Store.  Specifically, it contains the

5    amount of money consumers have spent on their respective apps ("consumer spend") and their

6    associated rank in the Google Play Store.  It also contains the amount of Google Play Store

7    service fees associated with the companies' apps, along with the percentage of those fees to

8    Google Play Store's total service fees and the cumulative percentage of those fees.  Big Fish and

9    Product Madness do not disclose any of these specified pieces of commercially sensitive business

10   information and request that the information remain sealed as such disclosure would put them at a

11   disadvantage in the highly competitive mobile gaming industry.

12       4.      Disclosure of Big Fish's and Product Madness's consumer spend information

13   would provide insight into the usage and monetization of their apps, which could give

14   competitors an unfair advantage in seeking to compete with Big Fish and Product Madness in the

15   mobile gaming marketplace.  For example, disclosure of this information would allow

16   competitors to understand the financial performance of Big Fish's and Product Madness's apps,

17   both generally and specifically on the Android platform (versus other platforms, such as iOS), as

18   well as the relative financial performance of each company's apps, thereby identifying potential

19   areas that may be exploited by competitors or used against Big Fish and Product Madness by

20   other third parties.  Disclosing data about Big Fish's and Product Madness's relative presence

21   across different platforms, while similar data about their competitors remains undisclosed, would

22   create an uneven playing field where those competitors can selectively compete against Big Fish

23   and Product Madness on platforms where they are most competitively vulnerable, placing Big

24   Fish and Product Madness at a competitive disadvantage.

25       5.      The other specified information in Exhibit 19, including service fee information

26   and ranking information, is derived from the commercially sensitive and confidential consumer

27   spend information discussed above, and therefore the disclosure of such information would be

28

1    harmful to Big Fish and Product Madness for similar reasons.  The amount of Google Play Store

2    service fees would allow a competitor to understand or approximate the consumer spend on Big

3    Fish and Product Madness, as well as reveal the percentage of revenue that Big Fish and Product

4    pay in fees.  Similarly, the service fee percentages would allow a third party with information

5    about Google's total service fees to calculate or approximate the amount of service fees

6    associated with Big Fish's and Product Madness's apps, which, as stated above, would reveal the

7    consumer spend on those apps. As explained above, revealing such information would provide

8    competitors with an unfair insight into the business and permit comparison of Big Fish and

9    Product Madness to each other (and potentially to other app developers) in terms of the

10   monetization of their apps.

11          6.       Big Fish and Product Madness take steps to maintain its consumer spend and

12   service fee information as confidential.  This type of financial information is not shared outside of

13   the companies, and any disclosure of it within the companies is limited to persons who are subject

14   to confidentiality obligations and who have a need to know the information.

15

16   I declare under penalty of perjury under the laws of the United States that the foregoing is true

17   and correct and that this declaration was executed on August 15th, 2022 in Seattle, WA.

18

19   Respectfully submitted,

20

21   Dated: August 15, 2022

22

23

24   By: _____

25        James Riney

26

27

28

# Exhibit B16
# to
# R. Satia Declaration

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**IN RE GOOGLE PLAY ANTITRUST LITIGATION**

Case No.: 3:21-md-029817-JD

THIS DOCUMENT RELATES TO:

*In Re Google Play Consumer Antitrust Litigation*, Case No. 3:20-CV-05761-JD.

**DECLARATION OF LI JIN**

I, LI JIN, declare as follows:

    1.    I am general counsel at Century Games.  I am an individual over 18 years of age.  I have personal knowledge of the facts and if called and sworn as a witness to testify, I would competently testify thereto.

    2.    I submit this declaration in support of Century Games' request to keep certain information under seal.

    3.    The following page numbers, line numbers, and/or entirety of certain exhibits include Century Games' confidential and business strategy information that is highly confidential and would give competitors an unfair competitive advantage if disclosed.  Thus, Disclosure of these information could result in significant injury to Century Games.  *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000) ("Even a seemingly insignificant risk of disclosure cannot be ignored due to the threat of significant potential injury.")

- Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] – Page 141, para. 5
- Ex. 44 to Consumer Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-14]
- Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] – Page 28, para. 78
- Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] – Page 160, Exhibit 13

1

1       •    Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL

2            Dkt. No. 251-6] – Page 161, Exhibit 14

3       •    Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL

4            Dkt. No. 251-6] – Pages 165-67, Exhibit 18

5       •    Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL

6            Dkt. No. 251-6] – Pages 168-170, Exhibit 19

7

8       I declare under penalty of perjury under the laws of the United States of America that the

9  foregoing is true and correct.

10      Executed on August 8, 2022.

11

12                                    /s/
                                   LI Jin

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B17
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games, Inc. v. Google LLC, Case No.
3:20-cv-05671-JD*

*In re Google Play Consumer Antitrust, Case
No. 3:20-cv-05761-JD*

*Utah v. Google LLC, Case No. 3:21- cv-
05227-JD*

*Match Group, LLC. et al. v. Google LLC et al.,*
Case No. 3:22-cv-02746-JD

Case No. 3:21-md-02981-JD

**DECLARATION OF BYRON HILL IN
SUPPORT OF OMNIBUS MOTION TO
SEAL**

Judge James Donato

I, Byron Hill, declare as follows:

1.      I am the Director of Revenue Accounting at Dropbox, Inc. ("Dropbox").  I have

held this position since May 2019.  Through my employment, I am familiar with the financial

information of Dropbox, including revenue and expenses associated with the applications it

develops.  Except where otherwise indicated, I have personal knowledge of the matters stated

herein, and if called as a witness in this matter, I could and would testify thereto.

2.      I make this declaration in support of the omnibus sealing motion filed in the

above-captioned matter, specifically with respect to Dropbox's information contained in the

following exhibits:

     a.   Exhibit 3 to the Class Certification Motion [MDL Dkt. No. 251-4], Table 3 to the

        Reply Report of Hal J. Singer, Ph.D., on ECF page 50 (hereinafter, "Table 3");

b.   Exhibit 5 to the Class Certification Motion [MDL Dkt. No. 251-6], Exhibit 18 to the Expert Report of Dr. Michelle M. Burtis, on ECF pages 166–168 (hereinafter, "Exhibit 18");

c.   Exhibit 5 to the Class Certification Motion [MDL Dkt. No. 251-6], Exhibit 19 to the Expert Report of Dr. Michelle M. Burtis, on ECF pages 169–171 (hereinafter, "Exhibit 19").

3.   My understanding is that the Stipulated Second Amended Supplemental Protective Order Governing Production of Protected Non-Party Materials [MDL Dkt. No. 248] provides non-parties in this litigation an "opportunity to file a declaration establishing that all of the designated material is sealable pursuant to Civil Local Rule 79-5(e)." I further understand that Civil Local Rule 79-5(c) requires a specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of "(i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient[.]" Dropbox has set forth that explanation below and I believe its request is "narrowly tailored toward sealing highly confidential information." *Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-05640-YGR, 2021 WL 1925460, at *1 (N.D. Cal. Apr. 30, 2021) (sealing non-party confidential information "including pricing strategy, business decision-making, and financial records, belonging to [a non-party]" and finding "that there are compelling reasons for such sealing"). The excerpts that Dropbox seeks to seal, with the reasons for each request, are set forth below:

4.   Dropbox operates in a highly competitive market for cloud storage and related services. One way Dropbox distributes those services is through the Google Play Store. Through the Google Play Store, customers can sign up for Dropbox's subscription services. Customers can also purchase Dropbox's services through other platforms like the Apple App Store.

5.   Each reference to Dropbox in Table 3 and Exhibits 18 and 19 contains sensitive and confidential Dropbox financial data. Dropbox takes steps to maintain the foregoing

information as confidential.  Dropbox does not share this type of financial information, and disclosure of it within Dropbox is limited to persons who have a need to know the information.

6.      To the best of my knowledge, disclosing the information contained in Table 3, Exhibit 18, and Exhibit 19 would insert new data into the developer market and could put Dropbox at a competitive disadvantage.  For example, it would create an information asymmetry as similar data on Dropbox's competitors would remain undisclosed.[1]  I believe competitors could utilize such data to selectively compete with Dropbox where it is perceived to be competitively vulnerable and to anticipate Dropbox's future decision-making or future product development.

7.      Table 3 and Exhibit 19 purport to reflect the amount of money consumers spent on Dropbox's services via the Google Play Store ("consumer spend").[2]  While Dropbox discloses its total annual revenue publicly, the breakdown of that revenue across different platforms and different products is proprietary information not revealed to the public or to competitors. Disclosure of this consumer spend data would provide insight into Dropbox's financial performance via the Google Play Store distribution channel, which could give competitors an unfair advantage in seeking to compete with Dropbox.

8.      For example, disclosure of the "consumer spend" information in Table 3 and Exhibit 19 would allow competitors to understand the financial performance of Dropbox, both generally and specifically as distributed through the Google Play Store.  As noted previously, Dropbox distributes its services through multiple channels.  Some of the operators of these distribution channels also offer their own cloud storage services and other products that compete with Dropbox.  Those competitors could use the consumer spend information in Table 3 and Exhibit 19 to compare consumers' spending for Dropbox services on the Google Play Store versus other channels to draw conclusions about their relative importance to Dropbox.  These insights could be used by competitors to develop their own products. Competitors, even those

---

[1] I have been informed that the data cited in these materials likely came from Google, and not Dropbox.  I assume for the purposes of this declaration that the data are accurate, but I have not verified the accuracy of the data.

[2] This data is found in Table 3 in the columns "Consumer Spend in Treatment Group," and "Total Consumer Spend in App During Treatment Period;" and in Exhibit 19 in the column "Consumer Spend."

who do not also operate distribution channels, could use the Google Play Store consumer spending data to glean insight into the volume of business Dropbox does via the Google Play Store, which competitors could use to shape their strategy (*e.g.*, to exploit perceived vulnerabilities) and to anticipate Dropbox's potential future product decision-making.  For example, insights into Dropbox's consumer spend performance on a specific platform may allow competitors across a range of services to draw inferences about when Dropbox may launch related applications, features, and products in a specific distribution channel.  Finally, information about consumer spend for specific distribution channels would be competitively valuable information for, and could be used in negotiations by, third-party vendors partnering with Dropbox.

9.      Exhibit 18 and Exhibit 19 purport to reflect the amount of Google Play Store service fees Dropbox has paid over a roughly five-year period from 2016 through 2021 and in 2021 alone, respectively, and rank Dropbox's service fees as a percentage of the total fees paid in the Google Play Store.[3]  Service fees are calculated as a percentage of consumer spending, therefore a competitor can work backwards from the service fees in Exhibit 18 to determine the approximate consumer spending.  As noted above, consumer spending data is commercially sensitive and its disclosure would result in competitive harm to Dropbox.  Dropbox's service fees reflect information about the volume of business Dropbox does via the Google Play Store, which competitors could use to shape their strategy (*e.g.*, to exploit perceived vulnerabilities) and anticipate Dropbox's platform-specific product development.

10.     Similarly, the consumer spend and service fee dollar amounts in Exhibit 19 would allow a competitor to calculate the service fee rate Dropbox pays to the Google Play Store.[4]  According to the consumer plaintiffs' expert, the Google Play Store does not charge the same fee for all types of transactions; for example, before 2022, Google charged a lower fee for

---

[3] This data is found in the "Service Fees" and "Rank" columns in Exhibits 18 and 19, and in the "Percent of Service Fees," and "Percentage of Service Fees" columns in Exhibits 18 and 19.
[4] This data is found in the "Consumer Spend" and "Service Fees" columns in Exhibit 19.

automatically renewing subscriptions after the first year of each subscription.[5]  By calculating Dropbox's overall service fee rate, a competitor could gain insight into the proportion of Dropbox subscribers who are in the first year of their subscription compared to subscribers in their second and subsequent years.  Such commercially-sensitive data would allow competitors to infer information about Dropbox's customer retention and therefore make conclusions about Dropbox's strategic decision-making and product and feature development.

11.     A competitor can also gain meaningful insight into Dropbox's proprietary information by reading the data on Table 3, Exhibit 18, and Exhibit 19 together.  For example, Exhibit 19 appears to provide Dropbox's rank among the top putative developer class members between 2016 and 2021 (accounting for 90% of the Google Play Store's service fees) and the percentage, as well as cumulative percentage, of service fees collected from Dropbox.  When read in conjunction with Exhibit 18, which provides the same data for the year 2021, a competitor could not only see how Dropbox's ranking has changed over time, it could also gain confidential information about Dropbox's growth over time and its relative share of the revenue generated by the Google Play Store during different time periods.  A competitor could deduce information about (i) how Dropbox's earnings on the Google Play Store have changed over time, and (ii) how Dropbox's earnings on the Google Play Store relative to other developers have changed over time.  This information could be used to put Dropbox at a competitive disadvantage by revealing to competitors and third parties the relative importance of the Google Play Store to Dropbox.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 17, 2022 in San Mateo, California.

Respectfully submitted,                          By: _____

Dated: August 17, 2022                          Byron Hill

---

[5] *See* Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] 43 n.218 (describing how Google charged a 30 percent fee for renewing subscriptions for the first year and 15 percent thereafter).

# Exhibit B18
# to
# R. Satia Declaration

DocuSign Envelope ID: BE54DD19-530D-41AB-99AA-26517D0CEE4E

1  ETERMAX S.A.
2  Dr. Luis Bonavita 1294 Of. 1831
   Montevideo
3  Uruguay

4  Rodrigo Larrimbe
   CFO & Country Director
5  T: +598 2626 2412
   E: rodrigo@etermax.com.uy
6

7
8                  **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

10                    **SAN FRANCISCO DIVISION**

11

12 **IN RE GOOGLE PLAY STORE**          Case No. 3:21-md-02981-JD
   **ANTITRUST LITIGATION**
13                                       **DECLARATION OF RODRIGO**
   THIS DOCUMENT RELATES TO:            **LARRIMBE IN SUPPORT OF OMNIBUS**
14                                       **MOTION TO SEAL**
   *Epic Games, Inc. v. Google LLC, Case No.*
15 *3:20-cv-05671-JD*
                                         Judge James Donato
16 *In re Google Play Consumer Antitrust, Case*
   *No. 3:20-cv-05761-JD*
17
   *Utah v. Google LLC, Case No. 3:21- cv-*
18 *05227-JD*

19 *Match Group, LLC. et al. v. Google LLC et al.,*
   Case No. 3:22-cv-02746-JD
20

21

22      I, Rodrigo Larrimbe, declare as follows:

23      1.      I am currently the CFO and Country Manager of ETERMAX S.A., a company

24 based on Montevideo, Uruguay ("ETERMAX"). Over the course of my employment at

25 ETERMAX, I have acquired personal knowledge of ETERMAX's practices and procedures

26

27

28

DocuSign Envelope ID: B554DD1B-530D-41AB-99AA-26617D0CEE4E

concerning the maintenance of the confidentiality of its strategic, business, financial and marketing information.

2.  I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

3.  Etermax from Buenos Aires, Argentina, located at Capdevila 3448 C1431FKP ("Etergames S.A."), an affiliate from ETERMAX, received a Fedex from Morgan, Lewis & Bockius LLP on July 29, 2022, stating that some confidential information was presented on this Case, that could affect Etergames S.A. and informed them that an omnibus motion to seal in order to keep such confidential information sealed could be presented.

4.  When received, Etergames S.A. realized that actually such information belonged to ETERMAX and therefore forwarded such Fedex for us to respond.

5.  Such specific confidential information was <u>Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6]], page 168-170, Exhibit 19, where Etermax is ranked 154 and its Consumer Spend is revealed</u> ("Confidential Information").

6.  Therefore ETERMAX, and I as its representative, submit this declaration in support of the omnibus motion to seal the Confidential Information, since ETERMAX follows a strict practice that requires confidential treatment of all internal non-public financial information and internal business analyses of consumer spending and revenue.

7.  The disclosure of these Confidential Information could reveal highly sensitive non-public financial information, significantly harm ETERMAX's relationships and ability to conduct business with counterparties and prospective counterparties, and/or place ETERMAX at a disadvantage with competitors who could use ETERMAX's Confidential Information to their advantage in competition with ETERMAX. The Confidential Information therefore has economic

1   value from not being generally known to ETERMAX's competitors, counterparties, or the general

2   public.

3        8.      ETERMAX does not publicly break out its spends, payment of fees or profits as it

4   is revealed in this Confidential Information, as such disclosures would reveal important and

5   confidential information to competitors and counterparties. This information has never been

6

7   disclosed publicly.

8        9.      ETERMAX has both good cause and compelling reasons to seal this Confidential

9   Information to, among other things, avoid competitive harm to ETERMAX, avoid potentially

10  misleading investors, and prevent competitors and potential business partners from using the

11  information against ETERMAX in future negotiations.

12

13       I declare under penalty of perjury under the laws of the United States that the foregoing is

14  true and correct and that this declaration was executed on August  15, 2022 in Montevideo,

15  Uruguay.

16

17  Respectfully submitted,

18

19  Dated: August 15 , 2022          By: ____ ⌐ _____
                                          └─ 42DE03DB45CA40C...

DocuSigned by:

20                                       *Rodrigo Larrimbe*

21

22

23

24

25

26

27

28

# Exhibit B19
# to
# R. Satia Declaration

**Declaration in support of sealing request**

Vadikh Giniatulin

Geo Track Technologies Inc.

19901, 8 The Green, STE A, Dover, DE, 19901

August 03, 2022

To whom it may concern

      We would like to inform you that our company, Geo Track Technologies Inc., deemed the data that mentioned at the page/line 165-67 Exhibit 18 and page/line 68-170, Exhibit 19 in the document named Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6], have to be sealed since this data includes the precise amount of our trade relationship (such as, consumer sped, service fees, etc.) with the Google LLC and his subsidiaries, therefore, this data has a commercial value until this data is secret.

Sincerely,
Vadikh Giniatulin
Director of Geo Track Technologies Inc

# Exhibit B20
# to
# R. Satia Declaration

DocuSign Envelope ID: 75D78D62-F810-4426-B513-CBF300F059AF

## <u>DECLARATION OF JASON STEPHEN</u>

I, Jason Stephen, declare:

1.      I am Deputy General Counsel and Assistant Corporate Secretary at GoPro, Inc. ("GoPro").  I have served in this position since November 2020.

2.      GoPro requests that certain information related to GoPro, which appears in Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] at Page /Line 165-67, Exhibit 18, remain filed under seal.

3.      Specifically, GoPro requests that the dollar amount attributed to GoPro under the Services Fees column be sealed.

4.      Pursuant to the Standing Order For Civil Cases Before Judge James Donato, and Civil Local Rule 79-(d)(1), GoPro believes this as confidential information that should be sealed as "…otherwise entitled to protection under the law."

5.      GoPro treats the information as confidential because it has not previously been publicly reported as part of GoPro's financial disclosures.  Specifically, GoPro has never publicly disclosed how much it pays in developer fees to platforms such as Google's. As such, GoPro requests that the information remain sealed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 15th day of August 2022:

*Jason Stephen*
_____
Jason Stephen
Deputy General Counsel and Assistant Secretary

DocuSign Envelope ID: 75D78D62-F910-442E-BF13-CBF300F059AF

# Exhibit B21
# to
# R. Satia Declaration

1                     **DECLARATION OF James Hong**

2       I, James Hong, hereby declare as follows:

3       1.     I am a vice president of Gravity Interactive, Inc. ("Gravity").

4       2.     It is necessary to seal portions of Exhibits 18 and 19 because they

5  contain confidential business information of Gravity.

6       Executed this 2nd day of August, 2022 at Buena Park, California.

7

8

9                               By: _____

10                                     James Hong, Declarant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B22
# to
# R. Satia Declaration

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD

*Epic Games Inc. v. Google LLC et a*l., Case No. 3:20-cv-05671-JD

*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD

*In re Google Play Developer Antitrust Litigation*, Case No. 3:20-cv-05792-JD

*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD

CASE NO. 3:21-md-02981-JD

### CLASS ACTION

**DECLARATION OF GRINDR CFO GARY HSUEH IN SUPPORT OF MOTION TO FILE DOCUMENTS UNDER SEAL**

Judge: Hon. James Donato

DocuSign Envelope ID: 6A142925-D153-4623-83E3-5AB22C052B1A

I, Gary Hsueh, declare as follows: I am Chief Financial Officer for Grindr LLC ("Grindr"). Pursuant to Civil Local Rule 79-5(f) and the Protective Order entered by the Court on May 25, 2022 (the "Protective Order") (MDL Dkt No. 248), I submit this Declaration in support of Motion to File Documents Under Seal ("Motion to Seal"). I have personal knowledge of the facts set forth in this Declaration and, if called and sworn as a witness, could and would testify competently to them.

1.      The Motion to Seal sets forth the documents sought to be sealed, including the following:

      (1)      Designated portion of Exhibit 3 to the Class Certification Motion, the Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No.2514], and

      (2)      Designated portions of Exhibit 5 to the Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6].

2.      For the Court's convenience, I discuss the documents by category below as they relate to Grindr.

**Exhibit 3 to the Class Certification Motion, the Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No.2514]**

3.      Good cause exists to seal Grindr-related portions of Exhibit 3 to the Class Certification Motion, the Class Certification Reply Report of Hal J. Singer, Ph.D., for the reasons identified below:

| Sealable Portions | Reason for Confidentiality |
|---|---|
| Page 63, Appendix 2, Tables A-1 | This portion contains non-public financial data regarding spend data for consumer subscription rates, individual business lines, and confidential business strategy, which, if revealed to competitors or others, would cause competitive harm to Grindr. *See Bauer Bros. LLC v. Nike, Inc.,* No. 09cv500-WQH-BGS, 2012 WL 1899838, at *3-4 |

| and A-2 | (S.D. Cal. May 24, 2012) (sealing documents containing cost analysis relating to sales, advertising and marketing, product development, and profits noting: "the financial data sought to be sealed by Nike could be used for improper purposes of Nike's business competitors, as it includes . . . business sales and accounting data . . . and costs analysis").<br><br>Further, as set forth more fully in filings before the Securities & Exchange Commission (see https://sec.report/Document/0001140361-22-027926/), Grindr has entered into a business combination agreement with a special purpose acquisition company (SPAC) firm that, once consummated, will result in Grindr being a public company.  As part of the run up to our anticipated public company, the publication of confidential business metrics could have unintended consequences in the public markets, creating unnecessary risks and exposure to the relevant parties. |

**Designated portions of Exhibit 5 to the Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6]**

4.    Good cause exists to seal Exhibit 5 to the Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6], for the reasons identified below:

| Sealable Portions | Reason for Confidentiality |
|---|---|
| 165-67, Exhibit 18<br><br>and<br><br>168-170, Exhibit 19 | This contains highly sensitive, confidential, non-public information related to how Grindr operates its service fees, including its internal policies, and processing associated with these fees. Disclosure of this information would cause competitive harm to Grindr.  Among other concerns, competitors could utilize the information give them confidential insights into how Grindr operates to the financial and competitive detriment of Grindr.<br><br>*See Bauer Bros. LLC v. Nike, Inc.,* No. 09cv500-WQH-BGS, 2012 WL 1899838, at *3-4 (S.D. Cal. May 24, 2012); *See also Software Rts. Archive, LLC v. Facebook, Inc.*, 485 F. Supp. 3d 1096, 1113 (N.D. Cal. 2020) (holding that the parties had good cause to seal portions of various documents as they contained confidential business and proprietary information and the risk of disclosure outweighed the benefit to the public, particularly on a non-dispositive motion.) |

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that I executed this Declaration in San Francisco, California on August 16, 2022.

Dated:  August 16, 2022          By _____

                                     Gary Hsueh

# Exhibit B23
# to
# R. Satia Declaration

1

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

3

4

**IN RE GOOGLE PLAY CONSUMER
ANTITRUST LITIGATION**

Case No. 3:20-cv-05671-JD

5

6

RELATED ACTIONS:

7

*Epic Games Inc. v. Google LLC et al.*, Case No.
3:20-cv-05671-JD

8

9

*In re Google Play Developer Antitrust
Litigation*, Case No. 3:20-cv-05792-JD

DECLARATION OF OLEKSANDR PASYKOV IN
SUPPORT OF SEALING NON-PARTY HILLY CORP.'S
CONFIDENTIAL INFORMATION

10

11

*State of Utah, et al., v. Google LLC, et al.*, Case
No. 3:21-cv-05227-JD

JUDGE JAMES DONATO

12

*Match Group, LLC, et al. v. Google LLC, et al.*,
Case No. 3:22-cv-02746-JD

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -

1  1.  My name is Oleksandr Pasykov, I am the founder and president of Hily Corp. I am

2 over 18 years of age, of sound mind, capable of making this declaration, and personally acquainted

3 with the facts stated herein.  I have personal knowledge of the facts in this declaration, and they are

4 true and correct.

5  2.  Hily Corp. distributes an online dating app thought the Google Play Market. The Hily

6 app is a platform that makes meeting new people and starting conversations easier, less stressful, and

7 more enjoyable.

8  3.  The dating app market is highly competitive, and Hily Corp. is a small company

9 competing against much larger corporations.

10  4.  This declaration if filed on behalf of Hily Corp. in accordance with Local Rule 79-5, in

11 order to maintain the confidentiality of its trade secrets which are referenced in Ex. 03 to Class

12 Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D. [MDL Dkt. No. 251-4]

13 and in Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No.

14 251-6] (ECF Pages 169-171), Exhibit 19.

15  5.  Specifically, the redacted portions on page 63 of ECF Document 251-4 (ECF Page 64),

16 contain the total amount Hily Corp. spent in one month. This information is not publicly available,

17 and Hily is not a publicly traded entity. If that information were disclosed in court files, Hily's

18 competitors would have knowledge of total consumer spending in Google Play Market, which is large

19 portion Hily's consumer spendings. This knowledge will give Hily's competitors significant market

20 advantage, as they will be able to derive Hily's revenues with a degree of accuracy they would not

21 otherwise have. Also, if those consumer spending figures become publicly available, they may attract

22 patent trolls, and other nuisance parties who will be encouraged to target legal actions against Hily in

23 hope of obtaining a generous settlement.

24  6.  Exhibit 5 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis

25 [MDL Dkt. No. 251-6], Exhibit 19 (ECF Pages 169-171) contains information submitted by Google in

26 the Expert Report of Dr. Michelle Burtis, in opposition to Consumer Plaintiffs' Class Certification

27 Expert Reports. Hily's data reflects Google's information regarding consumer spending and service

28

- 2 -

Case No. 3:20-cv-05671-JD             DECLARATION OF OLEKSANDR PASYKOV

fees applicable to worldwide transactions during the August 2016 to December 2021 class period. This is also highly sensitive information, which is not currently available to the public. In addition to the arguments above, which are equally applicable to this data, Hily would like to keep this information sealed for another reason. Hily is currently searching for investors and the information on total spending of consumers in Google Play Market from the time of Hily's inception up until recently may mislead potential investors. Such information is normally shared with potential investors under strict confidence an provided in conjunction with other data, such as P&L, audited reports, etc. Potential investors find this information out of context, they may become less interested in further engaging Hily, and therefore will not have a chance to review this date in context with the full financial statements of the company. There are circumstances where this information, when viewed out of context could look negative if compared to assumptions, when the same data—presented in context—would otherwise look positive.

       7.     Hily Corp. is not a party to this litigation, has a legitimate private interest in maintaining the confidentiality of its private information and trade secrets, and will likely be damages if this information is made public.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on August 16, 2022


/s/ Oleksandr Pasykov (Aug 16, 2022 17:54 GMT+3)

Oleksandr Pasykov, President

                            

# Declaration of Oleksandr Pasykov

Final Audit Report                                                        2022-08-16

| | |
|---|---|
| Created: | 2022-08-16 |
| By: | Hily App Team (sign-noreply@hily.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAOWdxpbTXM1GzeS5H_cVKUMISJv28VGUq |

## "Declaration of Oleksandr Pasykov" History

Document created by Hily App Team (sign-noreply@hily.com)
2022-08-16 - 2:51:49 PM GMT- IP address: 176.37.0.121

Document emailed to Signature Hily (signature@hily.com) for signature
2022-08-16 - 2:52:57 PM GMT

Email viewed by Signature Hily (signature@hily.com)
2022-08-16 - 2:54:02 PM GMT- IP address: 66.102.9.194

Signer Signature Hily (signature@hily.com) entered name at signing as Oleksandr Pasykov
2022-08-16 - 2:54:27 PM GMT- IP address: 176.37.0.121

Document e-signed by Oleksandr Pasykov (signature@hily.com)
Signature Date: 2022-08-16 - 2:54:29 PM GMT - Time Source: server- IP address: 176.37.0.121

Agreement completed.
2022-08-16 - 2:54:29 PM GMT

# Exhibit B24
# to
# R. Satia Declaration

# DECLARATION OF FRANK LIU

I, Frank Liu, declare as follows:

1.      I am over the age of majority, am competent to testify, and have personal knowledge of the facts stated herein.

2.      I am the director of Shantanu PTE. LTD. ("Shantanu"), which owns the InShot software applications and related data which have been brought to issue by other parties in the Lawsuits (defined below).

3.      The InShot Video Editor at issue in this case has over five hundred million (500,000,000+) downloads and approximately fifteen million four hundred thousand (15,400,000) reviews, with a composite ranking of 4.8 stars on a 5.0 scale. The InShot Video Player All Format at issue in this case has over fifty million (50,000,000+) downloads and approximately one million three hundred ten thousand (1,310,000) reviews, with a composite ranking of 4.8 stars on a 5.0 scale. These are just two of the InShot applications in Google Play.

4.      Shantanu's competitors include virtually all companies who develop and release media editors and players on Google Play and the Apple App Store, which are too many to list.

5.      Shantanu undertakes deliberate, substantial efforts to maintain confidentiality of its revenue data and user data.

6.      I understand based on communications from Google's attorney that Google is involved in the following legal actions (collectively, the "Lawsuits"): *Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD; *Epic Games Inc. v. Google LLC et al.* , Case No. 3:20-cv-05671-JD; *In re Google Play Consumer Antitrust Litigation* (No. 3:20-cv-05761-JD); *In re Google Play Developer Antitrust Litigation*, Case No. 3:20-cv-5792-JD; *State of Utah et al. v.*

*Google LLC et al.*, Case No. 3:21-cv-05227-JD; *In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal) ("MDL").

7.      I understand that Google's counsel informed our counsel that as part of at least one of the Lawsuits, Google is compelled to produce certain of Shantanu's data (identified as InShot data in the proposed production) in response to discovery, and Google and other parties wish to use Shantanu's data in motion practice.

8.      Shantanu does not consent to Google's use or any other party's use of Shantanu's data in any way, shape or form. I understand that our counsel explained the same to Google's counsel and demanded that Shantanu's data not be disclosed in the Lawsuits. I also understand that Google's counsel informed our counsel that certain of Shantanu's data is at issue in at least one of the Lawsuits, the Court has determined that Shantanu's data is a necessary part of at least one of the Lawsuits and may not be anonymized and, therefore, Shantanu's data must be disclosed to the Court and the parties. In short, Shantanu's data will be disclosed to the parties over Shantanu's objections.

9.      I understand that Shantanu's data will be subject to at least one protective order issued by the Court (Rec. Doc. 248, Case 3:21-md-02981-JD).

10.     While I appreciate the Court's effort to protect Shantanu's data via protective order, I respectfully request the Court seal all motions and other Court filings that would otherwise make Shantanu's data available for public access.

11.     Shantanu has a legitimate interest in keeping its data private. I understand from Google's counsel that Shantanu's data which is the subject of the applicable discovery and motion practice includes the amounts consumers have spent on certain of Shantanu's software applications, Shantanu's advertising revenues, and service fees Shantanu or InShot paid Google.

[2]

These data also include the percent observed service fee rate and percent effective service fee rate Shantanu or InShot paid Google. These data show InShot's rank within developer parent groups, percent of service fees and the cumulative percent of service fees Shantanu or InShot paid Google.

12.    Shantanu has a legitimate interest in protecting its revenue data and fee payments from public disclosure. These are private, confidential data which Shantanu does not disclose to the public to maintain a competitive advantage over its competitors.

13.    It is Shantanu's policy to maintain confidentiality of these data because disclosure of the same would put Shantanu at a competitive disadvantage. Shantanu's competitors may be able to extrapolate Shantanu's revenue margins if these data are disclosed. Shantanu's competitors may create and implement strategies to undermine or beat Shantanu's business and financial strategies to slightly undercut Shantanu's revenues and steal market share. Moreover, disclosure of Shantanu's revenues would likely affect consumer perception of Shantanu's company and software applications, which may harm consumer perception, diminish Shantanu's revenues and business, and cause Shantanu or its affiliates to lose potential investors.

14.    Each component of proprietary data included in the proposed disclosures is pertinent to a particular competitive advantage and is potentially as valuable as Shantanu's total competitive advantage. If any of Shantanu's competitors acquire access to these data, any one component may be the key to the entire pricing structure for competitive applications, thereby depriving Shantanu of its competitive advantage.

15.    Shantanu's business advantages in its pricing structure and revenues are key to its market success. This is why Shantanu takes all necessary measures to preserve its confidentiality. Simply put, there are legitimate reasons Shantanu does not disclose these types of data as a matter of course. Shantanu should not be compelled to suffer the risks and potential harms disclosure may

[3]

impose simply because Google and other third parties want to involve Shantanu's sensitive data in their dispute.

16.     While I appreciate that the parties may have a legitimate dispute and court filings are typically available for public access, Shantanu did not put its data at issue. Therefore, Shantanu should not be forced to reveal its proprietary data to the public and risk the competitive disadvantage that would likely result.

17.     I am not aware of any less restrictive alternative to sealing which would protect Shantanu's proprietary data from public disclosure. Shantanu's counsel requested that Shantanu's name and software application title be redacted from the data at issue, but I understand Google's counsel said that is not a realistic alternative because Shantanu's (or InShot's) identity is material to the issues before the Court.

18.     I am not aware of any way in which the general public would be harmed if Shantanu's confidential data is sealed. In my opinion, the undue risk which would be imposed on Shantanu would far outweigh any harm imposed on the general public if the Court seals Shantanu's data from disclosure.

19.     Shantanu respectfully requests the Court honor Shantanu's private rights to maintain confidentiality of its proprietary data. If the Court needs Shantanu's data to resolve an important issue, Shantanu respectfully requests the Court kindly seal Shantanu's data to prevent it from public disclosure. Indeed, the Court sees fit to issue a protective order to ensure confidentiality is maintained between the parties. Likewise, I hope the Court will do what it can to protect confidence. Sealing the records which contain Shantanu's data appears to be the only means to do that.

I declare under penalty of perjury that the foregoing is true and correct.

[4]

Executed on this 18th day of August, 2022

By:_____
Frank Liu
Shantanu PTE. LTD.

# Exhibit B25
# to
# R. Satia Declaration

1    CATHERINE KEVANE (CSB No. 215501)
     ckevane@fenwick.com
2    JOSHUA R. PARR (CSB No. 318549)
     jparr@fenwick.com
3    FENWICK & WEST LLP
     555 California Street, 12th Floor
4    San Francisco, CA  94104
     Telephone:    415.875.2300
5    Facsimile:    415.281.1350

6    *Attorneys for Non-Party Jam City, Inc.*

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   **IN RE GOOGLE PLAY CONSUMER**          Case No.: No. 21-md-02981-JD
     **ANTITRUST LITIGATION**
12                                            **DECLARATION OF JOSHUA**
                                              **YGUADO FOR JAM CITY, INC. IN**
13   THIS DOCUMENT RELATES TO:                **SUPPORT OF OMNIBUS SEALING**
                                              **MOTION FOR CLASS**
14   *In Re Google Play Consumer Antitrust*   **CERTIFICATION BRIEFING AND**
     *Litigation, Case No. 3:20-CV-05761-JD*  **RELATED DOCUMENTS**
15
16                                            Date: August 19, 2022
                                              Judge: Hon. James Donato
17                                            Courtroom 11, 19th Floor, 450 Golden
                                              Gate Ave, San Francisco, California 94102
18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JOSHUA YGUADO IN
SUPPORT OF OMNIBUS SEALING MOT.
FOR CLASS CERT. BRIEFING                      Case No.: No. 21-md-02981-JD
FW/16207820.2

I, Joshua Yguado, declare as follows:

1.     I am the President and Chief Operating Officer of Jam City, Inc. ("Jam City").  I make this declaration on my own personal knowledge in support of Omnibus Sealing Motion for Class Certification Briefing and Related Documents pursuant to the Court's Second Amended Supplemental Protective Order Governing Production of Protected Non-Party Materials (Dkt. No. 248), the Court's Standing Order for Civil Cases, and Civil Local Rule 79-5.  If called as a witness, I could and would competently testify to matters stated herein.

2.     From my role as President and Chief Operating Officer of Jam City, I am personally familiar with Jam City's business and financial records and it's recordkeeping, including the sensitive and confidential nature of certain Jam City information.  From my employment with Jam City since 2010, I am also familiar with Jam City's business operations and strategies.  Jam City keeps financial and business information confidential to protect itself from competitive harm.

3.     I understand that Plaintiffs have submitted an Expert Report of Dr. Michelle M. Burtis, attached as Exhibit 5 to their Class Certification Motion (Dkt. No. 251-6).  I also understand that parties and nonparties are submitting an Omnibus Sealing Motion for Class Certification Briefing and Related Documents.

4.     Exhibit 19 to Dr. Burtis's report (Dkt. No. 251-6 at pp. 168-170) contains highly confidential and competitively sensitive information regarding the service fees paid by Jam City and its earnings attributable to the Google Play Store.  Jam City does not release the terms of its commercial agreements or its earnings attributable to the Google Play Store.  Disclosure of the information contained in the aforementioned document would cause significant injury to Jam City and put it at a disadvantage against competitors, who would be armed with non-public knowledge of the earnings attributable to and service fees associated with the Google Play Store.  Jam City therefore supports the Omnibus Sealing Motion for Class Certification Briefing and Related Documents to protect Jam City from these harms.

FENWICK & WEST LLP
ATTORNEYS AT LAW

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 16th, 2022 at ___Culver City_____, California.

By: _____
Joshua Yguado
President and Chief Operating Officer
Jam City, Inc.

FENWICK & WEST LLP
ATTORNEYS AT LAW

# Exhibit B26
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph J. Bial
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
jbial@paulweiss.com

*Counsel for LINE Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>Case No. 3:21-md-02981-JD | **DECLARATION OF JOSEPH J. BIAL IN SUPPORT OF JOINT MOTION TO SEAL**<br><br>Master Docket No.: 3:17-md-2801-JD |

I, Joseph J. Bial, declare and state as follows:

1.  I am a Partner at the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP and I represent Non-Party LINE Corporation ("LINE") in this matter.  I can competently testify that to the best of my knowledge and belief the matters set forth herein are true.

2.  This declaration is made in support of the request of LINE to file under seal select portions of Exhibit 14 to Consumer Plaintiffs' Opposition to Motion to Exclude Testimony of Dr. Singer on Class Certification ("Exhibit 14") (MDL Dkt. No. 271-14).  The relevant portions of the exhibit are on pages 4 and 18 and the requested redactions are minimal (only four words or numbers in total).

3.  The appropriate standard for sealing materials under *Kamakana* v. *City of and County of Honolulu*, 446 F.3d 1172, 1180 (9th Cir. 2006) is the "compelling reasons" standard.  For the

1   reasons set forth below, information in Exhibit 14 is entitled to protection under the law

2   under the "compelling reasons" standard.

3   4.   The information sought to be redacted from pages 4 and 18 of Exhibit 14 is sensitive

4   commercial information regarding LINE's buyers and performance on Google Play that is

5   not publicly available and certainly not available to competitors.  Such non-public

6   confidential business information could be used by competitors to the disadvantage of LINE.

7   Non-Party LINE has confined its redactions to Exhibit 14 to the minimum necessary to

8   protect confidential, competitively sensitive information.

9   5.   Non-Party LINE seeks court approval, in accordance with the parties' and non-parties' joint

10   omnibus sealing motion, for the redacted portions of pages 4 and 18 of Exhibit 14 to be kept

11   under seal.

12       I declare under penalty of perjury that the foregoing is true and correct to the best of my

13   knowledge.

16   Executed August 18, 2022                    */s/  Joseph J. Bial*

17                                                      By: Joseph J. Bial

# Exhibit B27
# to
# R. Satia Declaration

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD*<br><br>*In re Google Play Consumer Antitrust, Case No. 3:20-cv-05761-JD*<br><br>*Utah v. Google LLC, Case No. 3:21- cv-05227-JD*<br><br>*Match Group, LLC. et al. v. Google LLC et al., Case No. 3:22-cv-02746-JD* | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF TIMOTHY S. MONTGOMERY IN SUPPORT OF OMNIBUS MOTION TO SEAL**<br><br>Judge James Donato |

1.  I, Timothy S. Montgomery, declare as follows:

2.  I am currently Senior Vice President, Digital Partnerships at non-party Mastercard International Inc. ("Mastercard").  I have been employed by Mastercard since September 7, 2010 and have held my current position since May 2021.  Over the course of my employment at Mastercard, I have acquired personal knowledge of Mastercard's practices and procedures regarding the maintenance of the confidentiality of its strategy and business information, which includes fee and pricing information.

3.  I submit this declaration pursuant to Civil Local Rule 79-5 in support of Google's Omnibus Motion to File Under Seal on August 16, 2022 in *In re Google Play Store Antitrust Litigation* and related cases.  The sealed material reveals confidential information about Mastercard and Mastercard's business practices.

4.  The contents of this declaration are true and correct to the best of my knowledge, information and belief, and are based on my personal knowledge of Mastercard's policies and practices relating to the confidential treatment of Mastercard's business, and if called as a witness in this matter, I could and would testify thereto.

5.  Mastercard follows strict practices with regard to the sharing of confidential business information and communications, and requires confidential treatment of all internal and non-public information including, but not limited to, negotiated fee and pricing agreements with our customers and other third parties.  Our customers and other third parties trust Mastercard with this information and expect that such confidential business information will remain confidential.  Based on my review of the sections of the Class Certification Reply Report of Hal J. Singer filed in this litigation relating to Mastercard, this is precisely the type of information that is included.

6.  The disclosure of these materials could reveal highly sensitive non-public financial information, significantly harm Mastercard's relationships and ability to conduct business with

counterparties and prospective counterparties, and/or place Mastercard at a disadvantage with competitors who could use Mastercard's information to their advantage in competition with Mastercard.  These materials therefore have economic value from not being generally known to Mastercard's competitors, counterparties, or the general public.

7.   I understand that Google's Omnibus Motion to File Under Seal requests the Court to maintain certain information under Seal.  For the reasons stated above, it is my belief that the following two pieces of pricing and fee information contained in the Reply Report of Hal J. Singer, PhD, are the type of highly sensitive and confidential business information the disclosure of which could cause Mastercard substantial harm and which are not publicly known.  As such, it would cause substantial harm to Mastercard if this information was unsealed.  Both pieces of information are located in Exhibit 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] as follows:

- **page 7-8, paragraph 14 (between "Record evidence indicates" and "serve $0.99 developers");** and

- **page 8, paragraph 14, note 32 (the parenthetical between "at 409" and the end of the same parenthetical before "; See also").**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Dated: San Francisco, CA            By: _Timothy S. Montgomery_
       August 16, 2022                   _____
                                          Timothy S. Montgomery

# Exhibit B28
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11
12

IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION

13

Case No. 3:21-md-02981-JD

**DECLARATION OF ERIC MEIRING
IN SUPPORT OF AUGUST 19, 2022
JOINT OMNIBUS SEALING MOTION**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I, Eric Meiring, declare and state as follows:

1.      I am Associate General Counsel, Litigation, at Meta Platforms, Inc. ("Meta"), a non-party in this action.  Through my work, I am familiar with Meta's business practices and procedures relating to certain types of information, discussed below, that Meta keeps confidential and considers competitively sensitive, as well as its reasons for doing so.

2.      I provide this declaration in support of the parties' August 19, 2022 joint omnibus sealing motion pursuant to the Court's order dated May 25, 2022 (Dkt. 246).

3.      Certain portions of page 12 in Exhibit 30 to the consumer plaintiffs' motion for class certification (Dkt. 251-9) appear to reference confidential details from negotiations between Meta and Google.  Those details are not publicly available, and Meta has a legitimate business interest in keeping them confidential because they are commercially sensitive, including insofar as they reveal Meta's bargaining positions, priorities, and strategies.  If publicly disclosed, those details could be used to Meta's disadvantage by competitors and other parties with whom Meta does business, including in future negotiations with Meta.  A less restrictive alternative to sealing would not be sufficient because any public disclosure of the details in question would be enough to threaten the aforementioned competitive harm to Meta.  Since the details in question constitute "sources of business information that might harm [Meta's] competitive standing" if disclosed, they should remain sealed under the "compelling reasons" standard.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

4.      In addition, certain portions of the following documents contain Meta's confidential financial data:

- Exhibit 56 to the consumer plaintiffs' motion for class certification (Dkt. 251-14);

- Page 63, Appendix 2, in Exhibit 3 to the consumer plaintiffs' motion for class certification (Dkt. 251-4);

- Page 28, paragraph 78, in Exhibit 5 to the consumer plaintiffs' motion for class certification (Dkt. 251-6);

- Page 161, Exhibit 14, in Exhibit 5 to the consumer plaintiffs' motion for class certification (Dkt. 251-6);

- Pages 165-67, Exhibit 18, in Exhibit 5 to the consumer plaintiffs' motion for class certification (Dkt. 251-6); and

- Pages 168-70, Exhibit 19, in Exhibit 5 to the consumer plaintiffs' motion for class certification (Dkt. 251-6).

5.     This data is not publicly available, and Meta has a legitimate business interest in keeping it confidential because it is commercially sensitive, including insofar as it reveals details—including specific dollar amounts and relative positions—of Meta's app install revenue, consumer spending on Meta apps, and service fees paid in connection with Meta apps.  Meta uses this data to analyze and to make decisions about its business that are not visible to the public, competitors, or others with whom Meta does business.  If publicly disclosed, this data could be used to Meta's disadvantage by competitors and other parties that could gain unfair insight into confidential and proprietary aspects of Meta's business and finances, including by enabling those other parties to anticipate Meta's business decisions or to react in ways they otherwise would not have.  A less restrictive alternative to sealing would not be sufficient because any public disclosure of the data in question would be enough to threaten the aforementioned competitive harm to Meta.  Since the data in question constitutes a "source[] of business information that might harm [Meta's] competitive standing" if disclosed, it should remain sealed under the "compelling reasons" standard.  *See Ctr. for Auto Safety*, 809 F.3d at 1097.

6.     In summary, these are the portions of the judicial records in this action that Meta seeks to keep under seal, along with the reasons for sealing each portion:

| Document | Portion | Reason for Sealing |
|---|---|---|
| Exhibit 30 to the consumer plaintiffs' motion for class certification (Dkt. 251-9) | The text entries in the orange chart corresponding to the following dates/times: 05/11/2020 18:20:37; 05/11/2020 18:37:17; 05/11/2020 22:25:21; 05/11/2020 23:04:17; 05/11/2020 23:40:24; 05/11/2020 23:40:24 | confidential details from negotiations constituting sensitive business information that could harm Meta's competitive standing if publicly disclosed |
| Exhibit 56 to the consumer plaintiffs' motion for class certification (Dkt. 251-14) | Portion of chart relating to Facebook and portion of | confidential financial data constituting sensitive business information that |

| | "Impact*" section relating to Facebook | could harm Meta's competitive standing if publicly disclosed |
|---|---|---|
| Exhibit 3 to the consumer plaintiffs' motion for class certification (Dkt. 251-4) | Page 63, Appendix 2, row of Appendix Table A1 relating to Facebook | confidential financial data constituting sensitive business information that could harm Meta's competitive standing if publicly disclosed |
| Exhibit 5 to the consumer plaintiffs' motion for class certification (Dkt. 251-6) | Page 28, paragraph 78, row of Figure 2 relating to Meta Platforms, Inc. | confidential financial data constituting sensitive business information that could harm Meta's competitive standing if publicly disclosed |
| Exhibit 5 to the consumer plaintiffs' motion for class certification (Dkt. 251-6) | Page 161, Exhibit 14, row relating to Meta Platforms, Inc. | confidential financial data constituting sensitive business information that could harm Meta's competitive standing if publicly disclosed |
| Exhibit 5 to the consumer plaintiffs' motion for class certification (Dkt. 251-6) | Pages 165-67, Exhibit 18, row relating to Meta Platforms, Inc. | confidential financial data constituting sensitive business information that could harm Meta's competitive standing if publicly disclosed |
| Exhibit 5 to the consumer plaintiffs' motion for class certification (Dkt. 251-6) | Pages 168-70, Exhibit 19, row relating to Meta Platforms, Inc. | confidential financial data constituting sensitive business information that could harm Meta's competitive standing if publicly disclosed |

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed on August 16, 2022.

_Eric Meiring_

_____

Eric Meiring

# Exhibit B29
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD*

*In re Google Play Consumer Antitrust, Case No. 3:20-cv-05761-JD*

*Utah v. Google LLC, Case No. 3:21- cv-05227-JD*

*Match Group, LLC. et al. v. Google LLC et al.,* Case No. 3:22-cv-02746-JD

Case No. 3:21-md-02981-JD

**DECLARATION OF DAN BOMZE IN SUPPORT OF OMNIBUS MOTION TO SEAL**

1    I, Dan Bomze, declare as follows:

2        1.      I am the Chief Executive Officer of MileIQ Inc. ("MileIQ"). I have

3    personal knowledge of MileIQ's practices and procedures concerning the

4    maintenance and confidentiality of its strategic, business, and marketing

5    information.

6        2.      I submit this declaration pursuant to Civil Local Rule 79-5. The

7    contents of this declaration are based on my personal knowledge, and if called as a

8    witness in this matter, I could and would testify competently thereto.

9        3.      The Expert Report of Dr. Michelle M. Burtis ("Expert Report") (filed

10   in *In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal)

11   ("MDL")) contains a row of confidential, proprietary information pertaining to

12   Mobile Data Labs, a wholly owned subsidiary of MileIQ.

13       4.      MileIQ's policies require confidential treatment of all internal, non-

14   public business and financial information, including without limitation internal

15   analyses of consumer spending and revenue, market conditions and opportunities,

16   as well as strategic business plans.

17       5.      MileIQ's practices to preserve the confidentiality of such confidential

18   information include restricting access to internal networks and devices and

19   requiring confidentiality agreements with employees and contractors, as well as

20   compliance with domestic and international privacy regulations.

21                          **Specific Information to Be Sealed**

22       6.      Exhibit 19 (p. 168-170) of the Expert Report [MDL Dkt. No. 251-

23   6] contains the following categories of data relating to MileIQ: (a) Consumer

24   Spend; (b) Service Fees; (c) Percentage of Service Fees; and (d) Cumulative

25   Percentage of Service Fees (the "MileIQ Confidential Data"). I understand that this

26   information was produced by Google LLC in discovery in this case subject to a

27   protective order.

28

DECLARATION OF DAN BOMZE IN SUPPORT OF OMNIBUS MOTION TO FILE UNDER SEAL
MDL Case No. 3:21-md-02981-JD

7.     The information for Mobile Data Labs reflected in Exhibit 19 of the Expert Report, i.e. data in the Consumer Spend, Service Fee and related percentages, falls within the scope of economic data, including app-specific revenue and expense data, which MileIQ protects from public disclosure.

8.     MileIQ makes a substantial investment in product advertising. It runs thousands of advertising campaigns and expends considerable resources to analyze how this advertising translates into app installs, signups and product purchases. Public disclosure of the MileIQ Confidential Data could significantly harm MileIQ's business because its competitors, without making any investments of their own, would gain valuable insight into MileIQ's sales and marketing strategies. MileIQ's Confidential Data therefore have economic value from not being generally known to MileIQ's competitors, counterparties, or the general public.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 16, 2022 in San Francisco, California.


_____ */s/ Dan Bomze* _____
Dan Bomze

# Exhibit B30
# to
# R. Satia Declaration

1   Albert T. Liou (SBN 180258)
    aliou@prosperalaw.com
2   Shane W. Tseng (SBN 200597)
    stseng@prosperalaw.com
3   PROSPERA LAW, LLP
    1901 Avenue of the Stars, Suite 480
4   Los Angeles, CA 90067
    Telephone: (424) 239-1890
5   Facsimile: (424) 239-1882
6
    Attorneys for Third Party
7   MYFITNESSPAL, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13   IN RE GOOGLE PLAY CONSUMER          Case No.: 3:21-md-02981-JD
     ANTITRUST LITIGATION
14                                        DECLARATION OF JOE SETTINERI
     RELATED ACTIONS:                     IN SUPPORT OF OMNIBUS SEALING
15                                        MOTION RELATED TO THIRD
     *Epic Games Inc. v. Google LLC et al.,*   PARTY MYFITNESSPAL, INC.'S
16   Case No. 3:20-cv-05671-JD           CONFIDENTIAL AND
                                          PROPRIETARY INFORMATION
17   *In re Google Play Developer Antitrust*
     *Litigation*, Case No. 3:20-cv-05792-JD
18
19   *State of Utah, et al. v. Google LLC, et*
     *al.*, Case No. 3:21-cv-05227-JD
20
     *Match Group, LLC, et al. v. Google LLC,*
21   *et al.*, Case No. 3:22-cv-02746-JD
22
23
24
25
26
27
28
                                          1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>DECLARATION OF JOE SETTINERI</u>

I, Joe Settineri, declare:

1.      I am the Chief Financial Officer at MyFitnessPal, Inc. ("MyFitnessPal").  I have personal knowledge of the facts stated herein and, if sworn as a witness, I can competently testify thereon.

2.      MyFitnessPal is a private company, whose products include a leading, mobile nutrition and fitness tracking application.  One of ways in which consumers may obtain MyFitnessPal's smartphone app is through Google Play.

3.      As its Chief Financial Officer, I am familiar with what financial and customer information MyFitnessPal considers proprietary and confidential and its practices and procedures for keeping such information secret.  MyFitnessPal considers financial and consumer data and metrics, including but not limited to downloads, revenue, consumer spend, including as kept by Google, Inc. related to MyFitnessPal's app available through Google Play as highly confidential and commercially sensitive.  Furthermore, MyFitnessPal believes that any such information, if disclosed to the public and made available to its competitors, would cause it irreparable harm.

4.      It has come to MyFitnessPal's attention, through counsel for defendants, that certain confidential information related to its app available on Google Play has been filed under seal in the above-caption action in the following manner:

| Document Name | Page / line |
|---|---|
|  |  |

2

| | |
|---|---|
| Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] | 49, para 125 (Table 3) |
| Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] | 63, Appendix 2 |
| Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | 165-67 |
| Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | 168-170, Ex. 19 |

5.      I have reviewed the information related to MyFitnessPal in these documents as made available to me and can confirm that MyFitnessPal believes that such information is highly confidential and should be kept secret. MyFitnessPal's information in these documents seems to relate to revenue, fees, and consumer spend, which MyFitnessPal keeps internal and does not disclose to outside parties without appropriate confidentiality obligations. If such information were made public, its competitors would gain an unfair advantage they would not otherwise have, because they would have an insight into MyFitnessPal's secret and internal metrics related to, among other things, strategy, planning, and performance.

6.      MyFitnessPal respectfully requests that the information identified in the chart above remain sealed and protected by the operative protective order in the above-captioned action. Otherwise, MyFitnessPal believes that it will be irreparably harmed.

3

1    I declare under penalty of perjury under the laws of the United States that the

2    foregoing is true and correct.  Executed on August 16, 2022, in Los Angeles,

3    California.

4

5                                                     _____
                                                              Joe Settineri
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF JOE SETTINERI IN SUPP. OF OMNIBUS SEALING MOT. RE TO THIRD PARTY
MYFITNESSPAL, INC.'S CONFIDENTIAL AND PROPRIETARY INFORMATION

# Exhibit B31
# to
# R. Satia Declaration

Neal A. Potischman (SBN 254862)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
neal.potischman@davispolk.com

*Attorney for Niantic, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY CONSUMER ANTITRUST LITIGATION<br><br>RELATED ACTIONS:<br><br>*In re Google Play Developer Antitrust Litigation*, Case No. 3:20-cv-05792-JD | Lead Case No. 3:21-md-02981-JD<br><br>Member Case No.3:20-cv-05761-JD<br><br>**DECLARATION OF JEFF SHOUGER IN SUPPORT OF ADMINISTRATIVE MOTIONS TO SEAL** |

Jeff Shouger of full age, hereby declares as follows:

1.      I am an employee at Niantic, Inc. ("Niantic").  My title is Chief Financial Officer. In this regard, I deal with a number of issues, including relating to Niantic's financial performance.  I regularly review and have access to confidential Niantic financial information. I am familiar with Niantic's policies relating to handling confidential and sensitive business information.

2.      I make this declaration in support of the parties' motions to seal (the "Motions to Seal") based upon my personal knowledge and review of the relevant documents.

3.      Niantic is a private augmented reality company with an initial focus on augmented reality games.  Niantic operates in a highly competitive environment.  Because Niantic is a private company, it does not regularly release information publicly about its finances or about commercial contracts.  In addition to competing with a number of other companies that

DocuSign Envelope ID: 6C8A2F33-B786-41AD-B2B1-D9739D446AAF

1    have developed games, Niantic from time to time has to negotiate multi-million dollar contracts

2    with larger companies who are competing for Niantic's business.

3          4.     The parties recently provided Niantic with excerpts of certain documents

4    reflecting information about Niantic.  Niantic undertook a review of those documents.  Niantic is

5    not proposing to seal all information pertaining to Niantic.  Rather, we are only proposing to seal

6    narrow portions reflecting information that we believe is both confidential and sensitive, such

7    that the release of the information would cause injury to Niantic.

8          5.     We are requesting sealing of four portions of Exhibit 44 to the Consumer

9    Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-14].  These portions address Niantic's

10   spending on cloud-related services provided by Google.  To the best of my knowledge,

11   information about Niantic's spending in this regard is not public, and Niantic considers the

12   information to be sensitive, such that its release could injure Niantic.  The amount that Niantic

13   spends on cloud services is very significant to Niantic.  Among other issues, release of that

14   information would allow Google competitors who provide similar services to learn the terms of

15   Niantic's agreements with Google, thus impacting the terms that they might be willing to offer

16   Niantic.  This could potentially cost Niantic millions of dollars in future negotiations.

17         6.     We have also requested sealing of five portions of Exhibit 5 to the Expert Report

18   of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6].  The portions address the amounts that

19   consumers spend relating to Niantic applications, as well as service fees paid by Niantic.  To the

20   best of my knowledge, neither information about what consumers spend relating to Niantic

21   applications nor the amounts Niantic pays in terms of service fees are public, and Niantic

22   considers the information to be sensitive, such that its release could injure Niantic.  Among other

23   issues, release of this information could reveal detailed information about Niantic's financial

24   health to competitors, to potential contractual counterparties, and to potential investors.  In each

25   respect, release of the information could weaken Niantic's negotiating position and cause the

26   company to lose money.

27         7.     For the foregoing reasons, I believe that Niantic has a significant interest in

28   keeping these documents under seal.  I believe that the confidentiality of the information

DocuSign Envelope ID: 6C8A2F33-B786-41A0-B281-DD739D416AAF

described above is important to Niantic's competitive position, profitably, and dealings with contractual counterparties, and that the proposed redactions are narrowly tailored.

8.     In the normal course of business, Niantic takes measures to maintain the confidentiality of information like the information discussed above.

9.     Given the sensitivity of the information included in these documents, I am not aware of another method to protect Niantic's confidentiality interest other than by sealing the foregoing information.

10.     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.


Dated: August 16, 2022

Kona           Hawaii
_____          
City      /      State                               Jeff Shouger

DECLARATION OF J. SHOUGER ISO ADMINISTRATIVE MOTIONS TO SEAL – LEAD CASE NO. 3:21-MD-02981-JD

# Exhibit B32
# to
# R. Satia Declaration

Lisa J. Hammer
Sr. Legal Counsel
onXmaps, Inc.
1925 Brooks St.
Missoula, MT 59801
lisa.hammer@onxmaps.com

Counsel for non-party, onXmaps, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: GOOGLE PLAY STORE ANTITRUST LITIGATION | No. 21-md-02981-JD<br><br>**DECLARATION IN SUPPORT OF JOINT MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED** |

onXmaps, Inc., ("onXmaps") (including onX Hunt: GPS Hunting Maps) a Delaware corporation with its principal offices located in Missoula, Montana, by its undersigned counsel, Lisa J. Hammer, respectfully submits this Declaration in Support of Joint Motion to Consider Whether Another Party's Material Should be Sealed under Civil Local Rule No. 79-5.

This Declaration by onXmaps, refers to all references, business and sales information for onXmaps, Inc. ("onXmaps Confidential Business Information") within the below described information:

| Non-Party Name | Document Name | Page / line |
|---|---|---|
| onXmaps & onX Hunt: GPS Hunting Maps | Ex. 03 to Class Certification Motion, Class Certification Reply Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-4] | 49, para 125 (Table 3) |

| onXmaps | Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | 166, Exhibit 18 |
|---------|---------------------------------------------------------------------------------------------------|-----------------|
| onXmaps | Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | 168-170, Exhibit 19 |

onXmaps, Inc. respectfully requests that the above-described information remain sealed as it contains non-party confidential sales, business analytics and ranking information for multi-year periods and includes data less than a year old. The application development industry is a highly competitive environment in which disclosure of sales and analytics information can be highly detrimental, especially to smaller software development companies.

For these reasons, onXmaps, Inc. is in support of sealing the above-described information within the field documents and asks the Court to consider doing so.

Dated this 16th day of August, 2022.

Livingston, Montana

/s/ Lisa J Hammer_____
Lisa J. Hammer
Sr. Legal Counsel
onXmaps, Inc.

# Exhibit B33
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF DAVID RING IN SUPPORT OF OMNIBUS MOTION TO SEAL** |
| *Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD* | Judge James Donato |
| *In re Google Play Consumer Antitrust, Case No. 3:20-cv-05761-JD* | |
| *Utah v. Google LLC, Case No. 3:21- cv-05227-JD* | |
| *Match Group, LLC. et al. v. Google LLC et al., Case No. 3:22-cv-02746-JD* | |

749366330.1

I, David Ring, declare as follows:

1.      I am Assistant General Counsel, Chief Music Counsel, at Pandora Media, LLC ("Pandora"). I have been employed in that position by Pandora since August 2019. Over the course of my employment at Pandora, I have acquired personal knowledge of Pandora's licensing and other commercial deals, as well as Pandora's practices and processes concerning the maintenance of the confidentiality of its strategic, business, and financial information.

2.      I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, documents provided to me, and conversations with other knowledgeable Pandora employees. If called as a witness in this matter, I could and would testify thereto. I understand that certain of Pandora's commercially sensitive and confidential information has been disclosed pursuant to a protective order in the above-captioned case, and that certain of that information will be included in various court filings in the matter. I respectfully submit this declaration in support of an omnibus motion to preserve the confidentiality of that information.

3.      Pandora adheres to strict policies of maintaining confidentiality of various non-public, financial, commercial, and competitively-sensitive information, including without limitation: non-public financial information; confidential license and other business agreements with third parties (many of which contain express confidentiality obligations); internal analyses of revenue, competitive markets in which Pandora operates; and business strategies. Pandora operates in a highly-competitive market and enters into business agreements with many third-parties that require and expect Pandora to maintain strict controls over the contractual provisions, third-party commercial information, and financial data related to those agreements.

4.      Failure to maintain strict confidentiality of these various types of information would harm Pandora in various ways, including the loss of trust of business partners—which would make it impossible to enter into new deals or renewals of old deals—as well as harm that would flow from Pandora's competitors receiving confidential information that would give them an unfair competitive advantage in the marketplace. Similarly, the many business partners with

1  which Pandora regularly negotiates new deals and renewals of existing deals could use this

2  information to gain an unfair advantage in those negotiations. This information therefore have

3  significant economic value by virtue of not being generally known to Pandora's competitors,

4  third-parties with which Pandora does business, or the general public. For all these reasons,

5  Pandora does not voluntarily disclose internal documents, non-public financial information,

6  confidential agreements, or other commercially sensitive information outside of the company.

7       5.     To the best of my knowledge, the following information in the papers related to

8  motions for class certification filed in the above-captioned matters is highly commercially

9  sensitive and confidential, and was derived from various materials produced in discovery

10  pursuant to a protective order. As further set forth below, Pandora has good cause and compelling

11  reasons to seal this confidential information and keep it out of the public record in order to

12  prevent competitive harm to Pandora and third parties with which it does business, and prevent

13  existing and potential future business partners from using the information to gain an unfair

14  advantage against Pandora in future negotiations.

15       6.     **Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis**

16  **[MDL Dkt. No. 251-6], Page 22, para. 65, disclosure of percentage service fee rate and date**

17  **of beginning of term of agreement (between "Pandora, another streaming music app**

18  **developer, has had a service fee rate of" and "since as early as" and the rest of that**

19  **sentence).** This information discloses the specific service fee rate paid by Pandora pursuant to a

20  confidential agreement, and the beginning date of the term of that agreement. The service fee rate

21  is a competitively-sensitive and confidential business deal term, which has not to my knowledge

22  ever been disclosed publicly. Similarly, the beginning date of the deal term is confidential and

23  could be used by competitors to estimate when the deal may be up for renewal, which information

24  could be used to gain an unfair competitive advantage over Pandora. Both types of information

25  could be used against Pandora in future negotiations. Moreover, public disclosure of this

26  information would severely harm Pandora's ability to negotiate confidential business deals in the

27  future.

28   

7.      **Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M Burtis [MDL Dkt. No. 251-6], Page 104, Table 8, (Row disclosing information regarding Pandora, disclosing "implied" and "predicted" pass through rates).** The disclosed pass-through rates relate to rates paid by Pandora pursuant to a confidential agreement. The rates related to competitively-sensitive and confidential business deal terms, which have not to my knowledge ever been disclosed publicly. This information could be used against Pandora in future negotiations with business partners and could be used by competitors to Pandora's disadvantage. Moreover, public disclosure of this information would severely harm Pandora's ability to negotiate confidential business deals in the future.

8.      **Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6], Pages 168-170, Top Putative Developer Class Members Chart (Row disclosing information regarding Pandora).** The information on this chart related to Pandora includes Pandora's relative rank in service fee payment, Pandora's consumer spend amount, service fee payment amount, percentage of service fees, and cumulative percentage of service fees. All of this is confidential and commercially sensitive financial data regarding Pandora's business that is not publicly available and could be used to Pandora's detriment by competitors and business partners, in their strategic planning, marketing, and deal negotiations.

9.      **Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6], Page 204, Ex. 53, Comparison of Dr. Singer's Implied Pass-Through Rates Chart (Row designated as "Pandora – Music & Podcasts", disclosure of "implied" and "predicted pass-through rates").** The disclosed pass-through rates relate to rates paid by Pandora pursuant to a confidential agreement. The rates related to competitively-sensitive and confidential business deal terms, which have not to my knowledge ever been disclosed publicly. This information could be used against Pandora in future negotiations with business partners and could be used by competitors to Pandora's disadvantage. Moreover, public disclosure of this information would severely harm Pandora's ability to negotiate confidential business deals in the future.

1         I declare under penalty of perjury under the laws of the United States that the foregoing is

2    true and correct and that this declaration was executed on August 19, 2022 in Santa Monica,

3    California.

4

5    Respectfully submitted,

6

     Dated: August 19, 2022                    By: _____

7                                                  David Ring

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B34
# to
# R. Satia Declaration

ARENTFOX SCHIFF LLP
Matthew B. Mock (SBN 316380)
matthew.mock@afslaw.com
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
T: 213.629.7400
F: 213.629.7401

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF INTERSECTIONS, LLC (d/b/a "PANGO") IN SUPPORT OF OMNIBUS MOTION TO SEAL** |
| *Epic Games, Inc. v. Google LLC, Case No. 3:20-cv-05671-JD* | Judge James Donato |
| *In re Google Play Consumer Antitrust, Case No. 3:20-cv-05761-JD* | |
| *Utah v. Google LLC, Case No. 3:21- cv-05227-JD* | |
| *Match Group, LLC. et al. v. Google LLC et al.,* Case No. 3:22-cv-02746-JD | |

I, Neill Feather, declare as follows:

1.     I am President and Chief Operating Officer for Intersections, LLC, d/b/a Pango ("Pango").  I joined Pango in 2021 and have served in those roles at Pango since that time.

2.     I submit this declaration pursuant to Civil Local Rule 79-5 in support of the Omnibus Motion to Seal that is being filed in the above captioned matters. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

3.      Pango is a privately-held company that provides consumers with identity protection and security services through a portfolio of industry leading products, including a variety of apps sold through the Google Play Store.

4.      In my current role at Pango, I am responsible for all commercial aspects of Pango's business, including strategy, sales, and distribution.  Based on my work and experience, I am familiar with the data kept by Google regarding the Pango products sold through the Google Play Store, including the sales data and service fees charged to Pango by Google for those sales.

4.      The terms of Pango's agreement with Google are confidential, as are the figures reflecting sales of Pango's products through the Google Play Store and the amount of service fees charged on such sales.  Pango keeps such information confidential to protect itself and its affiliates from harm.

5.      Based on information provided to me by my outside counsel at ArentFox Schiff LLP, I understand that information reflecting sales of Pango's products through the Google Play Store and the amount of service fees charged on such sales for the time period August 2016 to December 2021 has been included in the Expert Report of Dr. Michelle M. Burtis (the "Report"), which has been filed in support of a class certification motion in this case.  I have not reviewed the entire Report, but have reviewed the consumer spend and service fee figures pertaining to Pango as reflected in Exhibit 19 to that Report (the "Pango Information").

6.      Disclosure of the Pango Information reflected in that Report would harm Pango's competitive position.  Competitors could leverage this information to receive an unearned competitive advantage.  They could exploit this information, which they otherwise would not have access to, to inform their own business strategies.  For example, Pango's competitors could gain insights into Pango's confidential commercial terms, which would undermine Pango's position in the market and may allow Pango's competitors to secure more favorable terms than they otherwise would receive.  Pango's competitors would also gain an advantage by having additional insight into Pango's customer base, revenue figures, and service fee formula, through disclosure of the spend and fee information.

7.     Disclosure of the Pango information would also harm Pango by providing other distributors insight into Pango's commercial terms with Google, which would adversely affect Pango's business relationships and potential revenue.

8.     As any public disclosure would harm Pango in the ways noted above, there is no less restrictive alternative to sealing that would protect Pango's interests as noted above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 18, 2022, in Ponte Vedra, Florida.

Respectfully submitted,

Dated: August 18, 2022

By: *Mill Feather*
DocuSigned by:
8521581B517D47D...

# Exhibit B35
# to
# R. Satia Declaration

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD | Case No. 3:20-cv-05671-JD<br>Case No. 3:21-md-02981-JD<br><br>**PICSART, INC.'S DECLARATION OF ASTINEH ARAKELIAN IN SUPPORT OF SEALING THE PICSART, INC. CONFIDENTIAL AND PROPRIETARY INFORMATION** |

## DECLARATION OF ASTINEH ARAKELIAN

1. I, Astineh Arakelian, declare as follows:

2. I am an attorney at law, duly authorized to practice law before all of the courts of the State of California. I was, at all times relevant, Corporate Counsel at PicsArt, Inc. ("Picsart"). I am familiar with the files, pleadings, and facts in this case and could and would competently testify to the following on the basis of my own personal knowledge.

3. Pursuant to Judge James Donato's Standing Order, specifically paragraphs 29 and 31, I am filing this declaration on behalf of Picsart relating to Picsart's position and request that the excerpt relating to Picsart in Exhibit 19 of the related class certification motion in the above mentioned case, specifically entitled "Top Putative Developer Class Members Accounting for 90% of Service Fee" be kept confidential and sealed as they are highly confidential, and propriety information regarding Picsart.

4. The public disclosure of the information relating to Picsart in Exhibit 19 will result in harm to Picsart. The information relating to Picsart in Exhibit 19 is internal financial information that is proprietary and competitive information. Publicly disclosing the said information in Exhibit 19 gives other companies insight into information about Picsart that they would not otherwise have access to and gives the other companies a competitive advantage.

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on this 10th day of August, 2022, at Los Angeles, California.



Astineh Arakelian, Esq.

# Exhibit B36
# to
# R. Satia Declaration

1  JOHN L. MCDONNELL III, CA State Bar No. 169945
   jmcdonnell@mcdlg.com
2  30 Barbara Lane
   Menlo Park, CA  94025
3  Telephone:  (650) 906-7794

4  *Attorney for*
   PINGER, INC.

5

6

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>. | Case No. 3:20-cv-05671-JD<br>Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF JOHN L. MCDONNELL III IN SUPPORT OF MOTION TO SEAL PURSUANT TO L.R. 79-5 FOR INFORMATION SET FORTH IN EX. 05 TO CLASS CERTIFICATION MOTION, EXPERT REPORT OF DR. MICHELLE M. BURTIS [MDL DKT. NO. 251-6]** |

18            <u>**DECLARATION OF JOHN L. MCDONNELL III**</u>

19        I, John L. McDonnell III, declare and state as follows:

20  1.      I am over the age of 18.  I have served as legal counsel for PINGER, INC. for 16 years

21  and have personal knowledge of the facts stated herein including through review of PINGER,

22  INC.'s business records as kept in the ordinary course of its business. I have been authorized by

23  PINGER, INC. to submit this Declaration and, if called as a witness, I could and would testify

24  fully and accurately thereto.

25  2.      PINGER, INC. ("Pinger"), founded in 2005, is a Delaware corporation with its

26  headquarters in San Jose, California. Pinger designs, markets, and manages mobile applications

27  ("apps") that provide innovative technological solutions to enable subscribers to initiate and

28

                                   -1-

receive telephone calls and text messages through the apps. Apps are made available through the Google Play store and other app stores and the nonpublic information pertaining to financial performance and rankings of Pinger and its apps constitutes highly sensitive information for Pinger.

3.       As a private company, Pinger does not disclose financial information or information regarding is reliance on any distribution avenue for the apps. Disclosure of such information compromises Pinger's business interests by allowing others to derive sensitive competitive information about Pinger, enabling competitors to use otherwise unavailable information to can gain unfair competitive advantage by, *inter alia*, deriving strategies for promotional campaigns detrimental to Pinger such as keyword squatting, inferring revenues per download and app profitability which encourages competition for the apps with copycat applications, compromising Pinger's financing efforts, all leading to unfair, diminished competitive advantage for Pinger that would otherwise not have occurred but for disclosure of such sensitive information. Moreover, disclosure of Pinger's sensitive information may make it more likely that its employees may be targeted for recruitment, impeding Pinger's ability to maintain current apps and creating new apps.

4.       There is no less restrictive alternative to protecting Pinger's sensitive information.

5.       Accordingly, Pinger requests all information regarding Pinger be sealed, including but not limited to information included in pages 168-170 and Exhibit 19 to Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6].


        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


        Executed on August 9, 2022 at Menlo Park, California.


                                                            /s/ John L. McDonnell III
                                                            John L. McDonnell III

-2-

**DECLARATION OF JOHN. L. MCDONNELL III**          Case No. 3:20-cv-05671-JD & 3:21-md-02981-JD

# Exhibit B37
# to
# R. Satia Declaration

1

2                    **UNITED STATES DISTRICT COURT**

3                    **NORTHERN DISTRICT OF CALIFORNIA**

4                    **SAN FRANCISCO DIVISION**

5

6    **IN RE GOOGLE PLAY STORE**           Case No. 3:21-md-02981-JD
     **ANTITRUST LITIGATION**

7                                           **DECLARATION OF BORIS KATZ IN**
     THIS DOCUMENT RELATES TO:             **SUPPORT OF OMNIBUS MOTION TO**
8                                           **SEAL**

9    *Epic Games, Inc. v. Google LLC*, Case No.
     3:20-cv-05671-JD                       Judge James Donato

10
     *In re Google Play Consumer Antitrust*, Case
11   No. 3:20-cv-05761-JD

12   *Utah v. Google LLC*, Case No. 3:21- cv-
     05227-JD
13
     *Match Group, LLC. et al. v. Google LLC et al.*,
14   Case No. 3:22-cv-02746-JD

15

16        I, Boris Katz, declare as follows:

17

18        1.      I am the Vice President of Finance for Plarium Global Ltd. ("Plarium"), a

19   subsidiary of Aristocrat Leisure Limited ("Aristocrat"). I have held this position since October 1,

20   2020. Plarium develops gaming apps that are available through, among other places, the Google

21   Play Store. Through my employment, I am familiar with the financial information of Plarium,

22   including revenue and expenses associated with its gaming apps.

23        2.      I make this declaration in support of the omnibus sealing motion filed in the

24   above-captioned matter, specifically with respect to Plarium's information contained in Exhibit 5

25   to the Class Certification Motion [MDL Dkt. No. 251-6], Exhibit 19 to the Expert Report of Dr.

26   Michelle M. Burtis (hereinafter, "Exhibit 19"), on pages 168–170. Specified portions of Exhibit

27   19 should remain under seal for the reasons stated in this declaration. Except where otherwise

28

1    indicated, I have personal knowledge of the matters stated herein, and if called as a witness in this

2    matter, I could and would testify thereto.

3        3.      Exhibit 19 contains confidential financial information relating to apps published

4    by a Plarium subsidiary, Plarium LLC, that are available through the Google Play Store.

5    Specifically, it contains the amount of money consumers have spent on Plarium's respective apps

6    ("consumer spend") and its associated rank in the Google Play Store.  It also contains the amount

7    of Google Play Store service fees associated with the company's apps, along with the percentage

8    of those fees to Google Play Store's total service fees and the cumulative percentage of those

9    fees.  Plarium does not disclose any of these specified pieces of commercially sensitive business

10   information and requests that the information remain sealed as such disclosure would put it at a

11   disadvantage in the highly competitive mobile gaming industry.

12       4.      Disclosure of Plarium's consumer spend information would provide insight into

13   the usage and monetization of its apps, which could give competitors an unfair advantage in

14   seeking to compete with Plarium in the mobile gaming marketplace.  For example, disclosure of

15   this information would allow competitors to understand the financial performance of Plarium's

16   apps, both generally and specifically on the Android platform (versus other platforms, such as

17   iOS), as well as its relative financial performance compared to other developers' apps, thereby

18   identifying potential areas that may be exploited by competitors or used against Plarium by other

19   third parties.  Disclosing data about Plarium's relative presence across different platforms, while

20   similar data about its competitors remains undisclosed, would create an uneven playing field

21   where those competitors can selectively compete against Plarium on platforms where it is most

22   competitively vulnerable, placing Plarium at a competitive disadvantage.

23       5.      The other specified information in Exhibit 19, including service fee information

24   and ranking information, is derived from the commercially sensitive and confidential consumer

25   spend information discussed above, and therefore the disclosure of such information would be

26   harmful to Plarium for similar reasons.  The amount of Google Play Store service fees would

27   allow a competitor to understand or approximate the consumer spend on Plarium, as well as

28   reveal the percentage of revenue that Plarium pays in fees.  Similarly, the service fee percentages

2

1   would allow a third party with information about Google's total service fees to calculate or
2   approximate the amount of service fees associated with Plarium's apps, which, as stated above,
3   would reveal the consumer spend on those apps. As explained above, revealing such information
4   would provide competitors with an unfair insight into the business and permit comparison of
5   Plarium to other Aristocrat subsidiaries (and potentially to other app developers) in terms of the
6   monetization of their apps.

7       6.      Plarium takes steps to maintain its consumer spend and service fee information as
8   confidential. This type of financial information is not shared outside of the company, and any
9   disclosure of it within the company is limited to persons who are subject to confidentiality
10  obligations and who have a need to know the information.

12  I declare under penalty of perjury under the laws of the United States that the foregoing is true
13  and correct and that this declaration was executed on August 15, 2022 in Herzelia, Israel.

15  Respectfully submitted,

16  Dated: August 15, 2022

17                                  By:
                                    Boris Katz

# Exhibit B38
# to
# R. Satia Declaration

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Victoria F. Maroulis (Bar No. 202603)
2   victoriamaroulis@quinnemanuel.com
    Kyle Batter (Bar No. 301803)
3   kylebatter@quinnemanuel.com
    555 Twin Dolphin Drive, 5th Floor
4   Redwood Shores, California 94065
    Telephone: (650) 801-5000
5   Facsimile: (650) 801-5100
6
7   *Attorneys for Non-Party*
    *Samsung Electronics Co., Ltd.*
8
9                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA
11
12  IN RE GOOGLE PLAY STORE          Case No. 3:21-md-02981-JD
13  ANTITRUST LITIGATION             Case No. 3:20-cv-05761-JD
14  IN RE GOOGLE PLAY CONSUMER       **DECLARATION OF KYU SUNG LEE**
    ANTITRUST LITIGATION             **PURSUANT TO LOCAL RULE 79-5 IN**
15                                   **SUPPORT OF MOTION TO SEAL**
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**<u>DECLARATION OF KYU SUNG LEE</u>**

2

I, Kyu Sung Lee, declare as follows:

3    1.    I am an Executive Vice President at Samsung Electronics Co., Ltd. ("SEC") with

4    responsibility for the Global Legal Affairs Team.  I have been employed at SEC since 2001, and in

5    the course of my employment have become familiar with SEC's treatment of its trade secrets and

6    other proprietary business information, such as those discussed in this declaration.

7    2.    I understand that the parties in the above captioned actions filed briefs in support of

8    and in opposition to motions for class certification and to exclude expert witnesses in *In re Google*

9    *Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal) ("MDL") at Dkt Nos.  250-254,

10   270-273, 286-289, and *In re Google Play Consumer Antitrust Litigation* (No. 3:20-cv-05761-JD)

11   (N.D. Cal) at Dkt. Nos. 279-283, 297-299, 303-306 (identical versions).  Some of those briefs

12   contain SEC information designated "Non-Party Highly Confidential - Outside Counsel Eyes Only"

13   pursuant to the protective order entered in this action (MDL Dkt No. 248).  I make this declaration

14   pursuant to Northern District of California Civil Local Rule 79-5 and request that the materials

15   referenced in this declaration remain under seal.  I know the facts stated herein based on my own

16   personal knowledge and, if called as a witness, I could and would testify competently thereto.

17   3.    The following materials contain highly sensitive, confidential information of SEC

18   that was filed under seal and should remain under seal.  Specifically, the following materials disclose

19   SEC's confidential business dealings with its partners, the confidential terms of contracts between

20   SEC and its business partners, SEC's revenue sharing with its partners, SEC's strategy in offering

21   reduced commission rates to select app developers, SEC's strategy for the development of the

22   Galaxy App Store, SEC's business expenditures, SEC's sources of revenue, engagement metrics for

23   the Galaxy Store, and SEC's strategy for smartphone development and release:

24   - Consumer Plaintiffs' Reply ISO Class Certification Motion  (MDL Dkt. No. 289 at 3:13-14)

25
     - Ex. 5 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis (MDL Dkt. No.
26     251-6 at 9 ¶ 13, 42 ¶ 120)

27   - Ex. 2 to Class Certification Motion, Class Certification Report of Hal J. Singer, Ph.D (MDL
       Dkt. No. 251-3 at 44 fn. 206 (reference to Samsung), 45 fn. 210, 46 fn. 217 (reference to
28     Samsung), 49 ¶ 106, 49-50 ¶ 107, 51 fn. 260, 51 ¶ 112, 54 fn. 282)

- Ex. 22 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-9, GOOGPLAY-003776178.R and GOOGPLAY-003776179.R)

- Ex. 24 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-9)

- Ex. 26 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-9, GOOGPLAY-000832471 and GOOGPLAY-000832472)

- Ex. 29 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-9, GOOGPLAY-007239946)

- Ex. 36 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14, GOOGPLAY-003332825.R, GOOGPLAY-003332819.R, GOOGPLAY-003332859.R, and GOOGPLAY-003332860.R)

- Ex. 37 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14, GOOGPLAY-004509271)

- Ex. 39 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14, GOOGPLAY-000000809)

- Ex. 47 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14, GOOGPLAY-001449339, GOOGPLAY-001449341, and GOOGPLAY-001449343)

- Ex. 48 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14)

- Ex. 49 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14)

- Ex. 50 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14, GOOGPLAY-000869818, GOOGPLAY-000869819, GOOGPLAY-000869820, and GOOGPLAY-000869823)

- Ex. 51 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14, GOOGPLAY-007384816, GOOGPLAY-007384817, GOOGPLAY-007384818, and GOOGPLAY-007384819)

- Ex. 52 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14)

- Ex. 56 to Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251-14, GOOGPLAY-000565541.R)

- Consumer Plaintiffs' Class Certification Motion (MDL Dkt. No. 251 at 9:18-24)

- Expert Report of Dr. Michelle M. Burtis (MDL Dkt. 250-7 at 9 ¶ 13, 42 ¶ 120, 42 fn. 133, 84 fn. 271)

1

- Defendant's Opposition to Plaintiff's Class Certification Motion (MDL Dkt. 273 at 17:15-16)

2

3     4.     It is SEC's practice to maintain as highly confidential its business dealings with its

4  partners, the confidential terms of contracts between SEC and its partners, SEC's revenue sharing

5  with its partners, SEC's strategy in offering reduced commission rates to select app developers,

6  SEC's strategy for the Galaxy App Store, SEC's business expenditures, SEC's source of revenue,

7  engagement metrics for the Galaxy Store, and SEC's strategy for smartphone development and

8  release.  This request is narrowly tailored to single lines, paragraphs, footnotes, or exhibits.

9

10     I declare under penalty of perjury of the laws of the United States of America that the

11  foregoing is true and correct. This declaration was executed this 19th day of August 2022, in

12  Suwon, Korea.

13

14                                   Kyu Sung Lee

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B39
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION

No. 21-md-02981-JD

**DECLARATION OF ROBERT
GUSTAFSON IN SUPPORT OF NON-
PARTY SCIPLAY CORPORATION'S
REQUEST TO MAINTAIN ITS HIGHLY
CONFIDENTIAL INFORMATION
UNDER SEAL AND IN SUPPORT OF
OMNIBUS SEALING MOTION**

I, Robert Gustafson, declare as follows:

1.      I am the General Counsel of non-party SciPlay Corporation ("SciPlay"). I am

over the age of 18 and competent to testify to the matters in this Declaration. I make this

Declaration on the basis of my personal knowledge.

2.      SpiceRack Media LLC ("SpiceRack") was a wholly-owned subsidiary of SciPlay

until it was merged into SciPlay Games, LLC on December 31, 2020.  SciPlay Games, LLC is a

wholly-owned subsidiary of SciPlay.  SciPlay and its subsidiaries, including SpiceRack, are

leading developers of social casino and bingo games and casual games, which are made available

to consumers through a variety of third-party platforms, including Google, pursuant to which

SciPlay pays and SpiceRack paid certain service fees to Google.

3.      Counsel for Google in the above-captioned MDL proceeding has informed

SciPlay that Exhibit 5 to the plaintiffs' class certification motion, which is the expert report of

DECLARATION ISO OMNIBUS SEALING
MOTION
(No. 21-md-02981-JD – 1)

1    Dr. Michelle M. Burtis (MDL Dkt. No. 251-6), contains information belonging to SciPlay and

2    SpiceRack, respectively, that has been designated "Non-Party Highly Confidential – Outside

3    Counsel Eyes Only", in accordance with the operative protective order (Dkt. No. 248).  Counsel

4    for Google has informed me that the SciPlay and SpiceRack information designated as "Non-

5    Party Highly Confidential – Outside Counsel Eyes Only" appears in Exhibit 19 to Dr. Burtis'

6    report, at lines 168 – 170.  That information relates to how SciPlay's and SpiceRack's games

7    rank against their competitors based on consumer spend; the amount of money that consumers

8    spend on SciPlay's and SpiceRack's games; and the service fees paid to Google relating to those

9    games.

10        4.       This information regarding the commercial success of SciPlay's and SpiceRack's

11   social casino and bingo games, and the service fees those companies pay to Google, is highly

12   confidential and proprietary information that should maintained under seal. This information is

13   not generally available to employees of SciPlay and SpiceRack, and those companies take steps

14   to limit the disclosure of the information to those employees whose job responsibilities require it.

15   In addition, this highly confidential and proprietary information, if publicly disclosed, could be

16   utilized by SciPlay's and SpiceRack's competitors to price their games to their benefit and to

17   SciPlay's and SpiceRack's commercial detriment.

18

19        I CERTIFY UNDER PENALTY OF PERJURY that the foregoing is true and

20   correct.

21        EXECUTED at Newburgh, Indiana this 16th day of August, 2022.

22

23

24        _Robert Gustafson_
          Robert Gustafson

25

26

DECLARATION ISO OMNIBUS SEALING
MOTION
(No. 21-md-02981-JD – 2)

# Exhibit B40
# to
# R. Satia Declaration

Declaration

Sharp Corporation, a Japanese corporation, having its principal place of business at 1, Takumi-cho, Sakai-ku, Sakai City, Osaka 590-8522, Japan, would like to include following confidential information in the joint omnibus sealing motion.

| Document Name | Page/ line |
|---|---|
| Ex. 30 to Consumer Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-9) | Ex. 30 |
| Ex. 30 to Consumer Plaintiffs' Class Certification Motion [MDL Dkt. No. 251-9] | Ex. 30 |
| Ex. 02 to Class Certification Motion, Class Certification Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-3] | 44, fn 206 |
| Ex. 02 to Class Certification Motion, Class Certification Report of Hal J. Singer, Ph.D [MDL Dkt. No. 251-3] | 52, fn 268 |

By: _____

Name: Naoto Satokata

Title: Engineering Director,

SOFTWARE DEVELOPMENT DIV.Ⅲ,

PERSONAL COMMUNICATION SYSTEM BUSINESS UNIT

MOBILE COMMUNICATION BU

Date: Aug. 16, 2022

# Exhibit B41
# to
# R. Satia Declaration

1   ALBERT J. BORO, JR. (CA Bar #126657)
    *ajboro@boro-law.com*
2   BORO LAW FIRM
    345 Franklin Street
3   San Francisco, CA 94102
    Telephone: (415) 621-2400
4   Facsimile: (415) 276-5870

5
    Attorneys for Non-Party
6   SMULE, INC.

7

8

9

10

11

12

13

14                          **UNITED STATES DISTRICT COURT**

15                        **NORTHERN DISTRICT OF CALIFORNIA**

16                            **SAN FRANCISCO DIVISION**

17

18   **IN RE GOOGLE PLAY STORE**            Case No. 3:21-md-02981-JD
     **ANTITRUST LITIGATION**
19
                                            **DECLARATION OF BILL BRADFORD**
20   THIS DOCUMENT RELATES TO:              **OF NON-PARTY SMULE, INC. IN**
                                            **SUPPORT OF OMNIBUS MOTION TO**
21   *Epic Games, Inc. v. Google LLC, Case No.*   **SEAL**
     *3:20-cv-05671-JD*
22                                          Judge James Donato
23   *In re Google Play Consumer Antitrust, Case*
     *No. 3:20-cv-05761-JD*

24   *Utah v. Google LLC, Case No. 3:21- cv-*
25   *05227-JD*

26   *Match Group, LLC. et al. v. Google LLC et al.,*
     *Case No. 3:22-cv-02746-JD*
27

28
                                                                                        1

I, Bill Bradford, declare as follows:

1.      I am the President of non-party Smule, Inc., a Delaware corporation ("Smule").  In my role as President, I am familiar with and oversea Smule's business operations, revenue, marketing, and business development.  I have personal knowledge of the matters stated in this declaration, unless I have stated them on information and belief, in which case I believe them to be true.  I could and would provide competent testimony to the matters stated in this declaration.

2.      Smule is a privately held U.S. company that has developed a leading music application (the "Smule App") for the Apple IOS and Google Android platforms.  The Smule App is a music app that allows users to sing songs karaoke-style with other users in the Smule App.  Smule was incorporated in 2008 and released the Smule App on the IOS platform in 2012 and on the Android platform in 2013.  Smule has a team of programmers working on updates, improvements, and security enhancements for the Smule App.  Over the years, Smule has released new product features to the Smule App, including introducing in 2018 "Live Jam," which allows a user to sing with another user anywhere in the world in real time, and in 2020, "Styles," a creative tool with audio and video filters that enable a user to modify the expression of their musical renditions.

3.      I understand that the expert report of Dr. Michelle M. Burtis, a defense expert witness (the "Burtis Report"), has been used as an exhibit to the pending consumer plaintiffs' class certification motion.  *See* Consumer Plaintiffs' Class Certification Motion & Memorandum at ECF pp. 29-32 & Ex. 5, filed May 26, 2022, MDL No. 21-md-02981-JD (N.D. Cal.) (Dkt. #251 & 251-6) (the "Class Certification Motion").  I understand that the Burtis Report includes in two of its exhibits confidential financial information of Smule and other app developers on the amount of services fees they paid to Google during two different time periods within the alleged class period of August 16, 2016 to the present.  *See* Burtis Report, Exs. 18 & 19 (Dkt. #251-6).

The Class Certification Motion alleges that defendant Google takes "with limited exceptions, a 30% slice of every app sale through the Google Play Store," Class Certification Motion at ECF p. 9, so a rough estimate of Smule's revenue from sales of the Smule App in the Google Play Store can be derived from the confidential information in the Burtis Report on the service fees it paid to Google.

4.      Smule keeps its financial information, including revenue earned and service fees and other expenses paid, confidential and limits its dissemination to persons who have a need to know that information as part of their relationship with Smule.  Smule has a non-disclosure agreement with Google, and it treats the non-public financial information concerning its business relationship with the Google Play Store as Smule confidential business information.  Smule does not make this financial information public and takes reasonable efforts to keep it confidential in order to protect Smule's competitive position in the selling of music apps.

5.      Disclosing Smule's confidential information on service fees paid to Google and by inference revenue earned by Smule from the sales of its apps in the Google Play Store would cause significant competitive harm to Smule.  *See Apple Inc. v. Samsung Elecs. Co*., 727 F.3d 1214, 1221 (Fed. Cir. 2013) ("One factor that weighs in favor of sealing documents is when the release of the documents will cause competitive harm to a business.") (applying Ninth Circuit law).  Disclosing Smule's confidential information on services fees paid and hence revenue earned on the Smule App in the Google Play Store "could give [Smule's] suppliers an advantage in contract negotiations, which they could use to extract price increases" from Smule and would put Smule "at a competitive disadvantage compared to [its] current position."  *Id*. at 1225.  Additionally, compelling reasons support sealing Smule's confidential financial information of service fees paid for (and hence revenue earned from) the Google Play Store because it "could be used to [Smule's] competitive disadvantage" by Smule's competitors; thus, it is appropriately

sealable.  *See Lathrop v. Uber Techs., Inc.*, No. 14-cv-05678-JST, 2016 U.S. Dist. LEXIS 191695, at *5, 2016 WL 9185002 (N.D. Cal. June 17, 2016).  Disclosing this information would allow Smule's competitors to compare Smule's confidential revenue information with its public product releases and determine which app features resulted in the most significant revenue increases in order to target their development efforts without incurring the trial-and-error costs from marketing and product development that Smule had to incur.  Finally, disclosure of the information on the ranking of Smule's service fees paid (and hence revenue earned) amongst other app developers in the Google Play Store would entail similar competitive harms to Smule because its suppliers could use the information to gain an unearned competitive advantage in contract negotiations with Smule.  *See Apple*, 727 F.3d at 1225.

6.      The sealing of Smule's confidential business information is required to prevent these competitive harms to non-party Smule.  There is no less restrictive alternative that would be sufficient to prevent competitive harm to Smule from disclosure of Smule's confidential information.  Moreover, the sealing request is narrowly tailored to the confidential business information of Smule.

7.      This request to seal Smule's confidential business information is consistent with Northern District of California Civil Local Rule No. 79.5 governing the filing of documents under seal in civil cases.  As explained in this declaration, (i) Smule has a legitimate private interest in keeping the information confidential that warrants sealing; (ii) Smule will suffer competitive injury and be put at a competitive disadvantage with its competitors and suppliers if sealing is denied, and (iii) a less restrictive alternative to sealing is not sufficient and the sealing request is narrowly tailored to the confidential business information of Smule.  *See* N.D. Cal. Civil L.R. 79-5(c).

//

//

8.     The excerpts of expert report that Smule hereby seeks to seal, with the reasons for each request, are set forth below:

| Item No. | Document Name | Page / line | Excerpt | Reason for Sealing |
|---|---|---|---|---|
| 1. | Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | ECF pages 166-168, Ex. 18 | The line (row) in Ex. 18 that begins in the first column with "Smule" | Contains Smule's confidential, non-public business information that could be used by Smule's competitors and suppliers to its competitive disadvantage. |
| 2. | Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | ECF pages 169-171, Ex. 19 | The line (row) in Ex. 19 that begins in the first column with "Smule" | Contains Smule's confidential, non-public business information that could be used by Smule's competitors and suppliers to its competitive disadvantage. |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I have executed this declaration on August 16, 2022, at San Francisco, California.

*Bill Bradford*
Bill Bradford (Aug 16, 2022 14:12 PDT)

Bill Bradford

# Declaration B Bradford-Smule - Google Play Store Antitrust Litig 8-16-2022

Final Audit Report                                                    2022-08-16

| | |
|---|---|
| Created: | 2022-08-16 |
| By: | Albert Boro (ajboro@aol.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAhKF7gWzO1F3ECpXuDdes7NwDvku5LxGp |

## "Declaration B Bradford-Smule - Google Play Store Antitrust Litig 8-16-2022" History

📄 Document created by Albert Boro (ajboro@aol.com)
2022-08-16 - 9:10:06 PM GMT- IP address: 73.202.151.62

📧 Document emailed to bill@smule.com for signature
2022-08-16 - 9:11:41 PM GMT

📄 Email viewed by bill@smule.com
2022-08-16 - 9:12:17 PM GMT- IP address: 66.249.84.71

✒ Signer bill@smule.com entered name at signing as Bill Bradford
2022-08-16 - 9:12:47 PM GMT- IP address: 174.194.206.237

✒ Document e-signed by Bill Bradford (bill@smule.com)
Signature Date: 2022-08-16 - 9:12:49 PM GMT - Time Source: server- IP address: 174.194.206.237

✔ Agreement completed.
2022-08-16 - 9:12:49 PM GMT

**Adobe Acrobat Sign**

# Exhibit B42
# to
# R. Satia Declaration

JOHN F. COVE, JR. (SBN 212213)
    john.cove@shearman.com
PATRICK COLSHER (SBN 336958)
    patrick.colsher@shearman.com
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105-2997
Telephone:  415.616.1100
Facsimile:   415.616.1199

*Attorneys for Sony Corporation of America*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY CONSUMER<br><br>ANTITRUST LITIGATION | Case No. 3:20-CV-05761-JD<br><br>**DECLARATION OF DAVID JACOBS PURSUANT TO LOCAL RULE 79-5(e)(1) IN SUPPORT OF SEALING CERTAIN CONFIDENTIAL INFORMATION** |

1   I, David Jacobs, hereby declare as follows:

2       1.      I am currently Vice President, Global Alliances & Strategy at Sony Corporation of

3   America.  Sony Corporation of America is one of the Sony family of companies that are

4   subsidiaries of Sony Group Corporation.  I will refer to Sony Group Corporation along with its

5   subsidiaries collectively as "Sony" in this declaration.  One of my responsibilities is to serve as a

6   liaison for certain Sony entities with regard to various contracts and relationships with Google.

7   Based on my experience, I am familiar with the trade secrets, contracts and other confidential and

8   proprietary information that I discuss below, and I am making this declaration in support of

9   sealing this material as described below.  I make this declaration based on personal knowledge

10  and, if called as a witness, I could and would testify competently to these matters.

11      2.      I understand that counsel for Google in this litigation has provided certain excerpts

12  from sealed filings in the above-named litigation.  Some of this material relates to agreements that

13  Sony subsidiary Sony Mobile Communications, Inc. ("Sony Mobile") negotiated with Google

14  relating to pre-loading and uses of Google technologies on Sony-branded mobile phones.  The

15  terms and conditions of these agreements are individually negotiated, contain Sony Mobile's

16  sensitive, confidential, competitively valuable information, and are held in strict confidence

17  because disclosure of these terms and conditions to third parties, such as Sony Mobile's

18  competitors in the highly competitive mobile phone business or actual or potential business

19  partners, such as software developers or phone distributors, could cause competitive harm to Sony

20  Mobile.

21      3.      I have been provided with a brief excerpt from the Class Certification Report of Hal

22  J. Singer that describes the precise contractual terms negotiated between Sony Mobile and Google

23  for a particular program.  This term is described in a parenthetical on page 53, footnote 271 of the

24  Report.  This parenthetical reveals a specific term relating to Sony Mobile's contract with Google

25  and is sensitive, confidential, competitively valuable information.  It is held in strict confidence

26  because disclosure to third parties, such as Sony Mobile's competitors in the mobile phone

27  business or actual or potential business partners, such as software developers or phone distributors,

28  could cause competitive harm to Sony Mobile. The specific percentage devoted to the Google

1   program referenced in the parenthetical is particularly competitive sensitive for the same reasons.

2   Therefore, I respectfully request that at a minimum the specific numerical percentage in the

3   parenthetical relating to Sony on page 53, footnote 271 be redacted from any documents that are

4   disclosed to the public.

5         4.    I understand that Google is submitting a request to seal certain other portions of

6   these materials that pertain to certain confidential, competitively sensitive aspects of the

7   agreements with Sony Mobile.  I have not specifically described those materials in this

8   Declaration, which I understand will be publicly filed, because describing them in a public

9   document would necessarily reveal competitively sensitive information relating to Sony and thus

10   defeat the purpose of the sealing request.  Nonetheless, Sony supports Google's motion to seal

11   those materials because disclosure of those materials would cause harm to Sony Mobile's

12   competitive position.

13         I declare under the penalty of perjury that the foregoing is true and correct to the best of

14   my knowledge.

15

16   Executed on this 16th day of August 2022.

17

18                                         DAVID JACOBS

19

20

21

22

23

24

25

26

27

28

---

DECLARATION OF DAVID JACOBS          3          CASE NO. 3:20-CV-05761-JD

# Exhibit B43
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION

No. 21-md-02981-JD

**DECLARATION OF ROBERT
GUSTAFSON IN SUPPORT OF NON-
PARTY SCIPLAY CORPORATION'S
REQUEST TO MAINTAIN ITS HIGHLY
CONFIDENTIAL INFORMATION
UNDER SEAL AND IN SUPPORT OF
OMNIBUS SEALING MOTION**

I, Robert Gustafson, declare as follows:

1.      I am the General Counsel of non-party SciPlay Corporation ("SciPlay"). I am

over the age of 18 and competent to testify to the matters in this Declaration. I make this

Declaration on the basis of my personal knowledge.

2.      SpiceRack Media LLC ("SpiceRack") was a wholly-owned subsidiary of SciPlay

until it was merged into SciPlay Games, LLC on December 31, 2020.  SciPlay Games, LLC is a

wholly-owned subsidiary of SciPlay.  SciPlay and its subsidiaries, including SpiceRack, are

leading developers of social casino and bingo games and casual games, which are made available

to consumers through a variety of third-party platforms, including Google, pursuant to which

SciPlay pays and SpiceRack paid certain service fees to Google.

3.      Counsel for Google in the above-captioned MDL proceeding has informed

SciPlay that Exhibit 5 to the plaintiffs' class certification motion, which is the expert report of

DECLARATION ISO OMNIBUS SEALING
MOTION
(No. 21-md-02981-JD – 1)

Dr. Michelle M. Burtis (MDL Dkt. No. 251-6), contains information belonging to SciPlay and SpiceRack, respectively, that has been designated "Non-Party Highly Confidential – Outside Counsel Eyes Only", in accordance with the operative protective order (Dkt. No. 248).  Counsel for Google has informed me that the SciPlay and SpiceRack information designated as "Non-Party Highly Confidential – Outside Counsel Eyes Only" appears in Exhibit 19 to Dr. Burtis' report, at lines 168 – 170.  That information relates to how SciPlay's and SpiceRack's games rank against their competitors based on consumer spend; the amount of money that consumers spend on SciPlay's and SpiceRack's games; and the service fees paid to Google relating to those games.

4.     This information regarding the commercial success of SciPlay's and SpiceRack's social casino and bingo games, and the service fees those companies pay to Google, is highly confidential and proprietary information that should maintained under seal. This information is not generally available to employees of SciPlay and SpiceRack, and those companies take steps to limit the disclosure of the information to those employees whose job responsibilities require it. In addition, this highly confidential and proprietary information, if publicly disclosed, could be utilized by SciPlay's and SpiceRack's competitors to price their games to their benefit and to SciPlay's and SpiceRack's commercial detriment.


I CERTIFY UNDER PENALTY OF PERJURY that the foregoing is true and correct.

EXECUTED at Newburgh, Indiana this 16th day of August, 2022.


Robert Gustafson
Robert Gustafson

DECLARATION ISO OMNIBUS SEALING
MOTION
(No. 21-md-02981-JD – 2)

# Exhibit B44
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13

14

15

16

17

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

18

19

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

20

THIS DOCUMENT RELATES TO:

21

22

*Epic Games, Inc. v. Google LLC, Case No.
3:20-cv-05671-JD*

23

*In re Google Play Consumer Antitrust, Case
No. 3:20-cv-05761-JD*

24

25

*Utah v. Google LLC, Case No. 3:21- cv-
05227-JD*

26

27

*Match Group, LLC. et al. v. Google LLC et al.,*
Case No. 3:22-cv-02746-JD

28

Case No. 3:21-md-02981-JD

**DECLARATION OF AL-AMYN SUMAR
IN SUPPORT OF OMNIBUS MOTION
TO SEAL**

Judge James Donato

1    I, Al-Amyn Sumar, declare as follows:

2       1.       I am Counsel in the legal department of The New York Times Company ("The

3    Times"). In this role I assist with newsroom matters and general litigation for the company.

4       2.       I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this

5    declaration are based on my personal knowledge, and if called as a witness in this matter, I could

6    and would testify thereto.

7       3.       I understand that the consumer plaintiffs in the above-captioned action have filed a

8    motion for class certification. *See In re Google Play Store Antitrust Litigation*, 21-md-02981-JD

9    (N.D. Cal) ("MDL") at Dkt. No. 251; *see also In re Google Play Consumer Antitrust Litigation*,

10   3:20-cv-05761-JD (N.D. Cal) at Dkt. No. 280. I understand, too, that an expert report submitted

11   in support of that motion (*see* MDL at Dkt. No. 251-6) contains information relating to The

12   Times that was designated "Non-Party Highly Confidential – Outside Counsel Eyes Only" by

13   Google pursuant to the operative protective order. Specifically, a document appended to the

14   expert report as exhibit 19 lists the top putative developer class members accounting for 90% of

15   Google Play's service fees for the period between August 2016 and December 2021. That list has

16   an entry for The Times, which shows The Times's rank on the list; the consumer spend on The

17   Times's products at the Google Play store; the service fees paid by The Times to Google; these

18   fees as a percentage of all service fees paid to Google; and the cumulative percentage of service

19   fees paid to Google by the listed developers.

20      4.       The Times is aware that the public has a presumptive right of access to judicial

21   records, and that sealing is generally permitted only where "compelling reasons" exist. *Ctr. for

22   Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). One such compelling

23   reason is to avoid disclosure of "proprietary and confidential business information that would

24   harm a party's competitive standing." *Lichter v. Tzuo*, 2022 U.S. Dist. LEXIS 76146, at *2-3

25   (N.D. Cal. Apr. 26, 2022) (quoting *Snapkeys, Ltd. v. Google LLC*, 2021 U.S. Dist. LEXIS 92477,

26   at *2 (N.D. Cal. May 14, 2021)).

27

28

5.      While in this public declaration I cannot detail the specific harms to The Times from disclosure without effectively revealing the information to be protected, I can say that unsealing the above information could harm The Times's competitive standing. The Times does not publicly share data about its revenues through app stores or the portion of those revenues it pays in service fees. If The Times's competitors had access to this information, they would have a better understanding of The Times's specific sources of revenue and its financial arrangements with an important third party. This, in turn, would have serious implications for The Times's business strategy.

6.      For these reasons, The Times asks that the Court keep under seal all information relating to The Times in exhibit 19 to the expert report.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August  17, 2022 in Washington, DC.

Respectfully submitted,

Dated: August 17, 2022                          By:   */s/ Al-Amyn Sumar*

# Exhibit B45
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                  NORTHERN DISTRICT OF CALIFORNIA
                     SAN FRANCISCO DIVISION
10
    **IN RE GOOGLE PLAY STORE**              Case No. 3:20-cv-5671-JD
11  **ANTITRUST LITIGATION**                 Case No. 3:21-md-02981-JD

12  THIS DOCUMENT RELATES TO:            NON-PARTY T-MOBILE US, INC.'S
                                         DECLARATION IN SUPPORT OF OMNIBUS
13  Epic Games, Inc. v. Google LLC et al., Case   MOTION TO MAINTAIN CERTAIN
    No. 3:20-cv-05671-JD                 DOCUMENTS AND INFORMATION UNDER
14                                       SEAL

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Non-Party T-Mobile US, Inc. ("T-Mobile") submits this Declaration of Jeff Giard in Support of the Omnibus Motion to Maintain Documents and Information under seal.

* * *

I, Jeff Giard, declare as follows:

1.      I am Vice President of Strategic Partnerships and Business Development at T-Mobile. I have reviewed the documents described in this Declaration and I make this Declaration based on my personal knowledge of those documents and their importance to the ongoing business of T-Mobile, and if called as a witness, I could and would testify competently to the matters set forth below.

2.      T-Mobile's "Google Play Carrier Billing Agreement with Google" (which I understand has been marked as Exhibit 14 to the Declaration of Karma M. Giulianelli (Docket No. 251-1) ("Giulianelli Decl.") in this litigation) is a T-Mobile document that was produced to the Parties in this litigation designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Stipulated Protective Order.

3.      Sprint's "Android Search and Google Play Revenue Share Agreement for Mobile Operators" with Google" (which I understand has been marked as Exhibit 15 to the Giulianelli Decl. in this litigation) is a Sprint document that was produced by T-Mobile to the Parties in this litigation designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Stipulated Protective Order. (The production in this case occurred after the T-Mobile/Sprint merger was completed.)

4.      I understand that the documents described in Paragraphs 2 and 3, above, have been filed with the Court under seal and that Defendant Google is moving to maintain portions of those documents under seal.  T-Mobile is filing this Declaration in support of that Omnibus Motion.

5.      T-Mobile asks the Court to seal specific portions of the agreements described herein which, if publicly disclosed, would cause significant competitive harm to T-Mobile.  The remainder of those agreements could then be filed in the public record.

6.      The agreements at issue were the subject of extensive negotiations between T-Mobile and Google (and Sprint and Google), particularly with respect to key financial terms in the

NON-PARTY T-MOBILE US, INC.'S DECLARATION IN SUPPORT OF OMNIBUS MOTION TO MAINTAIN CERTAIN DOCUMENTS AND INFORMATION UNDER SEAL

DocuSign Envelope ID: B202C5CA-1B10-4EF4-9142-4141490C54093C

agreements, such as fees payable to Google for transactions involving different types of content; amounts of payments by Google; revenue share for search; direct carrier billing terms; and percentage of ad revenue deduction.  These key financial terms are highly confidential and competitively-sensitive for T-Mobile's ongoing business (including its current negotiations with potential business partners) and have been kept in strict confidence.

7.      T-Mobile has entered into new agreements with Google regarding the Google Play Store but there are similarities between the terms in the current agreements and the agreements described herein.  In fact, in negotiating the current agreements we used prior agreements with Google as the starting point for the new agreements.  As such, disclosure of key financial terms in the prior agreements would reveal non-public information about key financial terms in our current Google Play agreements.

8.      If the key financial terms in the agreements described in Paragraphs 2 and/or 3 were publicly disclosed, T-Mobile would be placed at a significant competitive disadvantage.  For example, T-Mobile competes with other large mobile service providers such as AT&T and Verizon for sales of wireless services, mobile phones and tablets; I believe these competing carriers likewise have agreements covering Google Play.  If those competitors were to gain knowledge of the financial terms of our agreements they could use that information to gain an unfair advantage over T-Mobile in future negotiations with Google.  But of even greater concern is the effect on our current and future negotiations with other entities who may be interested in pursuing a direct carrier billing arrangement with T-Mobile. If those entities learned what financial terms were acceptable in these agreements with Google, T-Mobile will be at a significant disadvantage in the negotiation process.

9.      For all these reasons, T-Mobile respectfully asks the Court to remove the key financial terms from the agreements described in Paragraphs 2 and 3, above.

DocuSign Envelope ID: B202C5CA-1B10-4EF4-9142-41449C54093C

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3         EXECUTED this ___17___ day of August, 2022 at ____Bellevue____, Washington.

4

5

6    Jeff Giard

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NON-PARTY T-MOBILE US, INC.'S DECLARATION IN SUPPORT OF OMNIBUS MOTION TO MAINTAIN CERTAIN
DOCUMENTS AND INFORMATION UNDER SEAL

# Exhibit B46
# to
# R. Satia Declaration

1   Allonn Levy, Bar No. 187251
    alevy@hopkinscarley.com
2   Robert K. Jain, Bar No. 309728
    rjain@hopkinscarley.com
3   HOPKINS & CARLEY
    A Law Corporation
4   The Letitia Building
    70 South First Street
5   San Jose, Avago  95113-2406

6   *mailing address:*
    P.O. Box 1469
7   San Jose, California 95109-1469
    Telephone:    (408) 286-9800
8   Facsimile:    (408) 998-4790

9   Attorneys for Non-Parties
    TOGETHER LABS, INC. and
10  IMVU, LLC

11              **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
12                **SAN FRANCISCO DIVISION**

13  **IN RE GOOGLE PLAY STORE**           CASE NO.  3:21-md-02981-JD
    **ANTITRUST LITIGATION**
14                                        **DECLARATION OF JED RITCHEY IN SUPPORT**
    IN CONNECTION WITH:                   **OF PARTIES' AND NON-PARTIES' JOINT**
15                                        **OMNIBUS SEALING MOTION**
    *In re Google Play Consumer Antitrust*
16  *Litigation*, Case No. 3:20-cv-05761-JD   Dept:  Courtroom 11, 19th Floor
                                          Judge:  Honorable James Donato
17  *In re Google Play Developer Antitrust*
    *Litigation*, Case No. 3:20-cv-05792,

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

DECLARATION OF JED RITCHEY IN SUPPORT OF PARTIES' AND NON-PARTIES' JOINT OMNIBUS SEALING MOTION

1    I, Jed Ritchey, declare as follows:

2    1.    I am General Counsel for Non-Parties Together Labs, Inc. (f/k/a IMVU, Inc.) and

3    IMVU, LLC (collectively, "IMVU"). Unless otherwise stated, the facts in this declaration are

4    true of my own personal knowledge, and, if called on as a witness, I could and would testify to

5    them competently under oath. As to those matters alleged on information and belief, I believe

6    them to be true.

7    2.    I submit this declaration in support of the Parties' and Nonparties' Joint Omnibus

8    Sealing Motion ("Motion"). The motion seeks to seal certain documents submitted in connection

9    with the Parties' papers in support of and in opposition to motions for class certification and to

10   exclude experts in *In re Google Play Store Antitrust Litigation* (No. 21-md-02981-JD) (N.D. Cal)

11   ("MDL") at Dkt Nos. 250-254, 270-273, 286-289; *see also In re Google Play Consumer Antitrust*

12   *Litigation* (No. 3:20-cv-05761-JD) (N.D. Cal) at Dkt. Nos. 279-283, 297-299, 303-306 (identical

13   versions).

14   3.    On July 29, 2022, counsel for Defendants Google, LLC, Google Ireland Ltd.,

15   Google Commerce, Ltd., Google Asia Pacific PTE. Ltd., Google Payment Corp., Alphabet Inc.

16   (collectively, "Google"), informed IMVU of an anticipated filing of the Omnibus Sealing Motion

17   with the Court. Counsel for Google further indicated that they intended to file Exhibit 5 to the

18   expert report of Dr. Michelle M. Burtis (MDL Dkt. No. 251-6) under seal, allowing IMVU the

19   opportunity to propose redactions and file this supporting Declaration.

20   4.    IMVU is the Designating Party of the information sought to be sealed.

21   5.    Specifically, Exhibit 5 to the expert report of Dr. Michelle M. Burtis ("Burtis

22   Report") identifies IMVU's confidential financial information, including nonpublic revenue,

23   consumer spend and service fee information, associated with the sale of IMVU's software

24   application products on the Google Play® store (hereafter "IMVU's Confidential Data"). This

25   information is not shared with IMVU's competitors and is entitled to confidential protection.

26   6.    On information and belief, Google has access to IMVU's Confidential Data

27   through its ownership, use, and/or operation of the Google Play® store and is obligated to keep

28   the same confidential.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE • PALO ALTO

DECLARATION OF JED RITCHEY IN SUPPORT OF PARTIES' AND NON-PARTIES' JOINT OMNIBUS SEALING MOTION

7.      IMVU takes reasonable security measures to maintain the confidentiality of its financial information including IMVU's Confidential Data set forth in Exhibit 5 of the Burtis Report.  A non-exclusive listing of measures IMVU employs to safeguard financial information of the type contained in IMVU's Confidential Data  includes: the use of password protection, multi-factor authentication, secure file sharing and encrypted communication platforms, restricted access controls, non-disclosure agreements, physical limitations to access, key card or similar physical security of facilities housing said information, and the implementation of industry-standard information security policies and protocols.

8.      Disclosure of IMVU's Confidential Data would allow competitors to obtain access to IMVU's confidential financial position, relative financial strength within the marketplace, estimated per-consumer revenue figures, and would likely provide competitors with an unfair advantage in competing against IMVU in the marketplace.  This information is highly sought after by IMVU's competitors.  Thus, the risk of competitive harm to IMVU greatly outweighs the minimal presumption of public access in this situation.  Accordingly, IMVU requests that the aforementioned documents be sealed.

9.      Specifically, IMVU respectfully requests that the following portions of Exhibit 5 to the expert report of Dr. Michelle M. Burtis filed at MDL Dkt. No. 251-6 be sealed:

| Document | Portions of Document to be Sealed | Parties Claiming Confidentiality |
|---|---|---|
| Exh. 5 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | Pages 165-67, Exhibit 18 | Together Labs, Inc. and IMVU, Inc. (confidential financial information) |
| Exh. 5 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | Pages 168-170, Exhibit 19 | Together Labs, Inc. and IMVU, Inc. (confidential financial information) |

1       I declare under penalty of perjury under the laws of the United States of America that the

2 foregoing is true and correct, and that this declaration was executed on August 17, 2022 in

3 Redwood City, California.

4

5                                     Jed Ritchey

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B47
# to
# R. Satia Declaration

1

2

3

4

5

6

7

8

9

10

11

12

13

14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16                   **SAN FRANCISCO DIVISION**

17

18  **IN RE GOOGLE PLAY STORE**              Case No. 3:21-md-02981-JD
    **ANTITRUST LITIGATION**
19
                                            **DECLARATION OF VIKI, INC. IN**
20  THIS DOCUMENT RELATES TO:               **SUPPORT OF OMNIBUS MOTION TO**
                                            **SEAL**
21  *Epic Games, Inc. v. Google LLC, Case No.*
    *3:20-cv-05671-JD*                       Judge James Donato
22
23  *In re Google Play Consumer Antitrust, Case*
    *No. 3:20-cv-05761-JD*
24
    *Utah v. Google LLC, Case No. 3:21- cv-*
25  *05227-JD*

26  *Match Group, LLC. et al. v. Google LLC et al.,*
    Case No. 3:22-cv-02746-JD
27

28

I, Wei-Shen Mak, declare as follows:

1.     I am Head of Legal and Business Affairs at Viki, Inc. dba Rakuten Viki ("Viki"). I joined Viki in 2019.  I make this Declaration on my own personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

2.     In my current role at Viki I am responsible, in part, for Viki litigation and intellectual property matters, including matters regarding document collection, IP licensing and strategic decisions related thereto.

3.     I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

4.     I understand that, in the above-captioned action, Plaintiffs have filed briefs/papers citing information designated "Non-Party Highly Confidential – Outside Counsel Eyes Only" by Google pursuant to the operative protective order (MDL Dkt. No. 248).  I am familiar with the Viki information cited below, and Viki keeps such information confidential to protect itself and its partners from potential harm.

5.     The excerpts from the Brief that Viki hereby seeks to seal, with the reasons for each request, are set forth below:

| Document Name | Page / line | Reason |
|---|---|---|
| Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | pp. 165-167, Ex. 18 | Details Service Fees and percent thereof which constitutes highly confidential, non-public, and competitively sensitive information. |
| Ex. 05 to Class Certification Motion, Expert Report of Dr. | pp. 168-170, Ex. 19 | Details Consumer Spend, Service Fees, and percent thereof |

| Michelle M. Burtis [MDL Dkt. No. 251-6] | | which constitutes highly confidential, non-public, and competitively sensitive information. |
|---|---|---|
| Ex. 05 to Class Certification Motion, Expert Report of Dr. Michelle M. Burtis [MDL Dkt. No. 251-6] | p. 155, Ex. 8 | Details list of developers who have entered into various deals with Google Play which constitutes highly confidential, non-public, and competitively sensitive information. |

6.      Viki is a leading global video streaming service, which allows users to subtitle content in 200 languages as well as access licensed programming.  Maintaining the confidentiality of its business plans and strategies is essential to Viki achieving its status as a leader in the video streaming industry.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August  16, 2022 in Singapore.

Respectfully submitted,

Dated: August 16, 2022                    By:   ____/s/ Wei-Shen Mak_____
                                                          Wei-Shen Mak

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF WEI-SHEN MAK ISO OMNIBUS MOT. TO FILE UNDER SEAL
MDL Case No. 3:21-md-02981-JD

# Exhibit B48
## to
# R. Satia Declaration

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

18

19

20

21

22

23

24

25

26

27

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games, Inc. v. Google LLC, Case No.
3:20-cv-05671-JD*

*In re Google Play Consumer Antitrust, Case
No. 3:20-cv-05761-JD*

*Utah v. Google LLC, Case No. 3:21- cv-
05227-JD*

*Match Group, LLC. et al. v. Google LLC et al.,*
Case No. 3:22-cv-02746-JD

Case No. 3:21-md-02981-JD

**DECLARATION OF JEAN-BRIAC
PERRETTE IN SUPPORT OF OMNIBUS
MOTION TO FILE UNDER SEAL**

Judge James Donato

28

I, Jean-Briac (JB) Perrette, declare as follows:

1.      I am Chief Executive Officer and President of Global Streaming and Games for Warner Bros. Discovery, Inc. ("WBD"). I joined WBD's predecessor, Discovery, Inc., in 2011 as Chief Digital Officer.

2.      I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

3.      In my current role at WBD, I am responsible for the HBO Max and discovery+ streaming platforms, as well as all other direct-to-consumer and gaming operations globally. Based on my work experience, I am familiar with the manner in which confidential financial information is handled by WBD pertaining to its consumer-facing offerings. WBD keeps such information confidential to protect itself from potential competitive and commercial harm.

4.      I understand that the Consumer Plaintiffs have filed a Motion for Class Certification ("Class Certification Motion") that cites an Expert Report written by Dr. Michelle M. Burtis and dated March 31, 2022 ("Burtis Report"), which contains information that purportedly derives from Google's internal transactional data regarding WBD's sensitive and highly confidential financial information concerning applications ("apps") made available to consumers via the Google Play store. I also understand that the Consumer Plaintiffs and Google will file a joint omnibus motion to seal addressing the confidentiality of information included in the Class Certification Motion, the Burtis Report, and other recent filings.

5.      WBD's financial information referred to in the Class Certification Motion and Burtis Report is sensitive and highly confidential information that could cause competitive and commercial harm to WBD if publicly released.

6.     As an initial matter, in filing this Declaration, WBD does not confirm the accuracy and/or completeness of WBD's financial information referred to in the Class Certification Motion and Burtis Report. As it has been explained to me, although this sensitive and highly confidential financial information concerns WBD, it purportedly is derived from Google's internal transactional data. WBD did not provide the financial information as part of the above-captioned matter, and WBD lacks sufficient background information and context to verify it.

7.     WBD is a leading global media and entertainment company that creates and distributes its portfolio of content and brands across television, film, streaming, and gaming. Maintaining the confidentiality of its financial information is as important to WBD as it is to any comparable business. As a publicly traded company, WBD is extremely mindful of the financial and business information it publicly discloses, and WBD makes such disclosures in accordance with the rules and regulations of the United States Securities and Exchange Commission. Thus, WBD has an interest in preserving the confidentiality of its information that it has not elected to publicly disclose.

8.     The information that is redacted in the Burtis Report includes sensitive and highly confidential financial information of WBD, which could result in competitive harm to WBD if publicly disclosed. It is my understanding that this information relates to: (i) the amount of money spent by consumers on WBD apps that are available in the Google Play store; (ii) WBD's position relative to other companies and developers with respect to the amount of money spent by consumers on WBD apps that are available in the Google Play store; (iii) the amount of service fees WBD paid to Google stemming from WBD apps that are available in the Google Play store; and (iv) WBD's position relative to other companies and developers with respect to the amount of service fees WBD paid to Google stemming from WBD apps that are available in the Google Play store. These references contain highly confidential information relating to WBD's business

dealings and financial position within the market. Furthermore, WBD does not otherwise publicly disclose this information.

9.      The disclosure of this highly confidential financial information could harm WBD's business. For example, the public disclosure of the amount of service fees that WBD pays Google would undermine WBD's ability to negotiate service fees with other app distribution platforms. In addition, the disclosure of WBD's position relative to other companies and developers would put WBD at a competitive disadvantage both with consumers and with other distribution partners, as the performance of WBD's apps in the Google Play store is not publicly known. Finally, the public disclosure of the amount of money spent by consumers on WBD apps that are available in the Google Play store would allow for insight into what percentage of WBD's streaming business Google represents as compared to other app distribution platforms and thus would create difficulties in negotiations with those platforms.

10.      Preventing these competitive and commercial harms requires the sealing of the redacted information in the Class Certification Motion and Burtis Report. There is no less restrictive alternative. Sealing is the only means of preserving WBD's highly confidential, non-public, and competitively sensitive information.

11.      For all of the reasons set forth above, the excerpts from the Class Certification Motion that WBD hereby seeks to seal are as follows:

      a.   Burtis Report, Class Certification Motion Exhibit 5, Page 28, para. 78, Figure 2.

      b.   Burtis Report, Class Certification Motion Exhibit 5, Page 160, Exhibit 13.

      c.   Burtis Report, Class Certification Motion Exhibit 5, Page 161, Exhibit 14.

      d.   Burtis Report, Class Certification Motion Exhibit 5, Pages 165-67, Exhibit 18.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 16, 2022 in Los Angeles, California.

Respectfully submitted,

Dated: August 16, 2022          By: _____
                                     JB Perrette (Aug 16, 2022 13:54 PDT)
                                     JB Perrette

# In re Google Play Store Antitrust Litig. - Perrette Declaration

Final Audit Report                                                          2022-08-16

| | |
|---|---|
| Created: | 2022-08-16 |
| By: | Fallon Brink (fallon.brink@warnermedia.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAbart-tMBXX_V0wgRagGySbIYcMSr3mz3 |

## "In re Google Play Store Antitrust Litig. - Perrette Declaration" History

📄 Document created by Fallon Brink (fallon.brink@warnermedia.com)
2022-08-16 - 8:24:03 PM GMT- IP address: 157.166.255.254

📧 Document emailed to jb_perrette@discovery.com for signature
2022-08-16 - 8:25:19 PM GMT

📄 Email viewed by jb_perrette@discovery.com
2022-08-16 - 8:40:00 PM GMT- IP address: 146.75.146.0

✍ Signer jb_perrette@discovery.com entered name at signing as JB Perrette
2022-08-16 - 8:54:46 PM GMT- IP address: 76.95.252.13

✍ Document e-signed by JB Perrette (jb_perrette@discovery.com)
Signature Date: 2022-08-16 - 8:54:48 PM GMT - Time Source: server- IP address: 76.95.252.13

✅ Agreement completed.
2022-08-16 - 8:54:48 PM GMT



Powered by
Adobe
Acrobat Sign

# Exhibit B49
# to
# R. Satia Declaration

1
2
3
4
5
6
7
8
9
10
11
12
13

14

**UNITED STATES DISTRICT COURT**

15

**NORTHERN DISTRICT OF CALIFORNIA**

16

**SAN FRANCISCO DIVISION**

17

18
19

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

20

THIS DOCUMENT RELATES TO:

21
22

*Epic Games, Inc. v. Google LLC, Case No.
3:20-cv-05671-JD*

23

*In re Google Play Consumer Antitrust, Case
No. 3:20-cv-05761-JD*

24
25

*Utah v. Google LLC, Case No. 3:21- cv-
05227-JD*

26
27

*Match Group, LLC. et al. v. Google LLC et al.,*
Case No. 3:22-cv-02746-JD

28

Case No. 3:21-md-02981-JD

**DECLARATION OF TINGFANG ZHANG
IN SUPPORT OF OMNIBUS MOTION
TO SEAL**

Judge James Donato

I, Tingfang Zhang, declare as follows:

1.      I am currently Director of Partnership and Internet Business Development at Beijing Xiaomi Mobile Software Co., Ltd. ("Xiaomi"). I am called Irene Zhang in business communications.  I have been employed by Xiaomi since 2017.  Over the course of my employment at Xiaomi, I have acquired personal knowledge of Xiaomi's practices and procedures concerning the maintenance of confidentiality of its strategic, business and financial information.

2.      I submit this declaration pursuant to Civil Local Rule 79-5. The contents of this declaration are based on my personal knowledge, and if called as a witness in this matter, I could and would testify thereto.

3.      Xiaomi follows a strict practice that requires confidential treatment of all internal non-public financial information; confidential commercial proposals to third parties and confidential agreements with third parties; internal business analyses of consumer spending and revenue, market conditions, and opportunities; and internal, future strategic business plans. In my experience and to the best of my knowledge, Xiaomi does not disclose such internal information to third parties except under the strictest confidentiality protection and for strategic business collaborations.

4.      Among other things, the disclosure of these materials could reveal highly sensitive non-public financial information, significantly harm Xiaomi's relationships and ability to conduct business with counterparties and prospective counterparties, and/or place Xiaomi at a disadvantage with competitors who could use Xiaomi's confidential information to their advantage in competition with Xiaomi. These materials therefore have economic value from not being generally known to Xiaomi's competitors, counterparties, or the general public.

5.      To the best of my knowledge, the following information are highly sensitive and confidential, and derives from confidential materials generated during important business collaborations between Xiaomi and Google.  As described in detail below, Xiaomi has both good cause and compelling reasons to seal this confidential information to, among other things, avoid competitive harm to both Xiaomi and third parties, avoid potentially misleading investors, and prevent competitors and potential business partners from using the information against Xiaomi in future negotiations. Text covered in <u>blue</u> is information Xiaomi requests to be sealed.

<strong><u>Specific Information to Be Sealed</u></strong>

6.      Exhibit A contains excerpts and pages from various documents produced by Google in this litigation.  They are from Exhibits 29 and 30 to Consumer Plaintiff's Class Certification Motion [MDL Dkt. No.251-9]. Text covered in <u>blue</u> is information Xiaomi requests to be sealed.

7.      The first page of Exhibit A comes from Exhibit 29 to Consumer Plaintiff's Class Certification Motion [MDL Dkt. No.251-9].  It contains excerpts from various documents produced by Google containing sensitive financial or strategic Xiaomi information that may harm Xiaomi's business interests if revealed to the public.  Text covered in <u>blue</u> is information Xiaomi requests to be sealed.  All the information is financial in nature.  Picture 1, line 3, has the number for revenues comes from IP services; Picture 3, lines 1 and 3, both have the percentage of Xiaomi's revenue share; Picture 4, line 1 has Xiaomi's revenue number in India; Picture 5, line 4, also has Xiaomi's revenue in India; Picture 6, lines 6 and 15, both have revenue share amount. Xiaomi does not publicly break out its revenues or profits for specific countries or into specific revenue streams, as it is revealed in this document, as such disclosures would reveal important and confidential information to competitors and counterparties regarding Xiaomi. This information has never been disclosed publicly, and disclosure would severely and adversely

2

impact Xiaomi's ability to negotiate agreements in the future. If revealed to competitors and potential business counterparties, they could use this non-public and confidential information to disadvantage Xiaomi in marketing and in negotiations.

8.      The second, third, and fourth pages of Exhibit A are part of Exhibit 30 to Consumer Plaintiffs' Class Certification Motion [MDL Dkt. No.251-9], specifically, they come from GOOG-PLAY-00558465.R and GOOG-PLAY-00558475.R.  Texts covered in blue is information Xiaomi requests to be sealed.

9.      On the second page of Exhibit A (GOOG-PLAY-00558465.R), the relevant information is financial and strategic in nature. The information to be sealed contains how much Xiaomi spends and the percentage it shares with other companies in revenue share for particular type of electronic devices.  Xiaomi does not publicly break out its revenues or profits for specific countries or into specific revenue streams, nor does it reveal revenue sharing strategies with business partners as it is revealed in this document, as such disclosures would reveal important and confidential information to competitors and counterparties regarding Xiaomi. This information has never been disclosed publicly, and disclosure would severely and adversely impact Xiaomi's ability to negotiate agreements in the future. If revealed to competitors and potential business counterparties, they could use this non-public and confidential information to disadvantage Xiaomi in marketing and in negotiations.

9.      The third page of Exhibit A is the top half of GOOG-PLAY-000558475.R.  The relevant information is about the amount of money Xiaomi invests into each device it sells under a deal with Google. Xiaomi does not publicly break out its revenues or profits for specific countries or into specific revenue streams, nor does it reveal details of collaborations with business partners, as it is revealed in this document, as such disclosures would reveal important and confidential information to competitors and counterparties regarding Xiaomi. This

information has never been disclosed publicly, and disclosure would severely and adversely impact Xiaomi's ability to negotiate agreements in the future. If revealed to competitors and potential business counterparties, they could use this non-public and confidential information to disadvantage Xiaomi in marketing and in negotiations.

10.     The fourth page of Exhibit A is the bottom half of  GOOG-PLAY-000558475.R. Lines 2 and 8 contain information about Xiaomi's revenue in India and the pricing strategy. Xiaomi does not publicly break out its revenues or profits for specific countries or into specific revenue streams, nor does it reveal its pricing strategy, as it is revealed in this document, as such disclosures would reveal important and confidential information to competitors and counterparties regarding Xiaomi. This information has never been disclosed publicly, and disclosure would severely and adversely impact Xiaomi's ability to negotiate agreements in the future. If revealed to competitors and potential business counterparties, they could use this non-public and confidential information to disadvantage Xiaomi in marketing and in negotiations.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 16, 2022 in Beijing.


Respectfully submitted,

Dated: August 16, 2022          By:

                                _Irene Zhang_
                                Irene Zhang

4
DECL. OF T. ZHANG ISO OMNIBUS MOT. TO FILE UNDER SEAL
MDL Case No. 3:21-md-02981-JD

# Exhibit B50
# to
# R. Satia Declaration

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE GOOGLE PLAY CONSUMER
ANTITRUST LITIGATION

Case No. 3:20-cv-05761-JD

DECLARATION OF AJAY SINGH IN
SUPPORT OF GOOGLE'S
ADMINISTRATIVE MOTION TO SEAL
PORTIONS OF EXHIBITS 5, 36, 44, AND 56
RELATING TO CONSUMER PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

I, Ajay Singh, declare as follows:

　　　　1.　　　I am currently Senior Vice President, Business Affairs & General Counsel at

Nintendo of America Inc. ("NOA").  NOA is one of many subsidiaries of Nintendo Co., Ltd.

("NCL"), a corporation based in Japan.  Although NCL and each of its subsidiaries (including

NOA) are separate companies, for purposes of this declaration I will refer to NCL and its

subsidiaries together as "Nintendo."  The facts stated in this declaration are based on my own

personal knowledge and, if called as a witness, I could and would testify to those facts.

　　　　2.　　　I have worked at Nintendo since 2011.  In my current role at NOA, I lead the

Legal, User Trust and Online Safety, and Product & Cyber Security teams.  I am responsible for

legal matters as well as various business areas.  My job duties expose me to many facets of

Nintendo's business.  As a result, I am familiar with Nintendo's business strategies, including

with regard to financial, contractual, and partner relationship information.  Nintendo treats that

information as sensitive and highly confidential to protect the company from potential

competitive harm.

　　　　3.　　　I understand that consumer plaintiffs in the above-captioned legal case have

submitted to the Court documents designated as Exhibits 5, 36, 44, and 56 to their Motion for

Class Certification (Dkt. 280; Dkt. 280-5; Dkt. 280-14).  I also understand Google is filing a

motion to seal portions of those exhibits.  I make this declaration in support of Google's motion

DECLARATION OF AJAY SINGH                    -1-

1   to seal.  I have reviewed certain portions of Exhibits 5, 36, 44, and 56, including portions of

2   Exhibit 8 attached to Exhibit 5; portions of the page labeled GOOG-PLAY-003332850.R of

3   Exhibit 36; portions of the pages labeled GOOG-PLAY-004146699.R,  GOOG-PLAY-

4   001416730.R,  GOOG-PLAY-001416731.R, GOOG-PLAY-001416732.R, GOOG-PLAY-

5   001416740.R, GOOG-PLAY-001416698.R, GOOG-PLAY-001416701.R, and GOOG-PLAY-

6   001416739.R of Exhibit 44; and portions of the page labeled GOOG-PLAY-000565547.R of

7   Exhibit 56.  Several portions of the documents I reviewed refer to non-public information relating

8   to Nintendo that is sensitive and highly confidential.  The information would potentially cause

9   competitive harm to Nintendo if disclosed to the public.

10         4.      Several portions of the documents I reviewed relate to competitively sensitive

11   information about Nintendo's contracts with Google.  The pages labeled GOOG-PLAY-

12   004146699.R, GOOG-PLAY-001416730.R, and GOOG-PLAY-001416731.R in Exhibit 44 (Dkt.

13   280-14) include a description after the word "Nintendo" of financial and term information

14   relating to a deal between Nintendo and Google.  The page labeled GOOG-PLAY-001416732.R

15   in Exhibit 44 (Dkt. 280-14) contains a chart with a row that refers to "Nintendo" and describes

16   information about a contractual arrangement between Nintendo and Google.  The pages labeled

17   GOOG-PLAY-001416698.R, GOOG-PLAY-001416701.R, GOOG-PLAY-001416739.R in

18   Exhibit 44 (Dkt. 280-14) include table headings and Nintendo logos that reflect whether Nintendo

19   has executed contracts with Google that include certain substantive provisions.

20         5.      Nintendo treats its contracts with Google, and the specific provisions within them,

21   as highly confidential.  Nintendo's agreements with Google reflect sensitive information about

22   Nintendo's business strategies, including strategies for developing content and partnering with

23   content platform operators such as Google.  The provisions in the agreements are not available to

24   the public.  Disclosure of that information could lead to substantial competitive harm to Nintendo

25   because competitors could use the provisions in Nintendo's contracts with Google to Nintendo's

26   detriment.  Competitors seeking to make inroads with Google could copy the contractual

27   provisions that Nintendo negotiated with Google.  For example, competitors could attempt to

28   structure their deals to match the financial and term provisions of Nintendo's contract with

1   Google.  That would obviate any competitive advantage Nintendo obtained through its

2   negotiations with Google.  More broadly, competitors could adopt Nintendo's general approach

3   to working with content platform operators and, by doing so, gain ground on Nintendo in

4   competing to develop and distribute content.

5           6.      Many of the documents I reviewed include highly confidential financial

6   information.  The page labeled GOOG-PLAY-003332850.R in Exhibit 36 (Dkt. 280-14) includes

7   a table with a row labeled "Nintendo" that provides detailed information relating to revenue,

8   value, and cost.  The page labeled GOOG-PLAY-001416732.R in Exhibit 44 (Dkt. 280-14)

9   includes a chart with a row corresponding to "Nintendo" that describes ranking information,

10  financial information on bookings, and estimates for total addressable market (known as TAM)

11  and share information relating to Nintendo's business.  The page labeled GOOG-PLAY-

12  000565547.R of Exhibit 56 (Dkt. 280-14) shows a graph describing value information relating to

13  Nintendo.

14          7.      The revenue, value, cost, ranking, bookings, market, and share information

15  described in these documents is highly confidential and competitively sensitive information.  This

16  type of financial and marketing information is non-public.  Nintendo keeps this information secret

17  and confidential.  Publicly disclosing revenue, value, cost, bookings, market, and share

18  information relating to Nintendo and its business dealings with Google would result in

19  competitive harm to Nintendo.  Competitors could leverage that information to gain a more

20  thorough understanding of Nintendo's business and marketing strategies and priorities relating to

21  content development for Google and in general.  Competitors could use that information against

22  Nintendo by taking steps to counteract Nintendo's business strategies and priorities, such as

23  Nintendo's approach to content development.  The highly confidential financial and marketing

24  information would provide competitors with an advantage they would not have if the information

25  remained non-public.

26          8.      Some of the material I reviewed relates to Nintendo's relationship with Google.

27  Portions of Exhibit 8 attached to Exhibit 5 (Dkt. 280-6) identify specific contractual relationships

28  between Nintendo and Google.  The pages labeled GOOG-PLAY-001416698.R, GOOG-PLAY-

DECLARATION OF AJAY SINGH                    -3-

1   001416701.R, and GOOG-PLAY-001416739.R in Exhibit 44 (Dkt. 280-14) include chart

2   headings and Nintendo company logos that indicate certain types of contractual relationships

3   between Nintendo and Google.  The page labeled GOOG-PLAY-001416732.R in Exhibit 44

4   (Dkt. 280-14) contains a chart with a row that includes the word "Nintendo" and describes a

5   contractual relationship between Nintendo and Google.  The page labeled GOOG-PLAY-

6   001416740.R in Exhibit 44 (Dkt. 280-14) contains a statement describing the relationship

7   between Google and Nintendo, including regarding revenue sharing.

8        9.      This non-public and highly confidential information relating to the relationship

9   between Nintendo and Google is competitively sensitive.  Nintendo has developed a relationship

10  with Google over many years.  If non-public and confidential information about the Nintendo-

11  Google relationship were disclosed publicly, a competitor could use that information to

12  Nintendo's detriment by copying Nintendo's strategy for dealing with Google, including

13  Nintendo's approach to interacting and negotiating with Google and the unique combination of

14  contractual arrangements entered into by the two companies.  That could lead to Nintendo

15  receiving less attention from Google while other competing content developers receive more,

16  which would result in competitive harm to Nintendo.  Thus, revealing details about the Nintendo-

17  Google relationship could potentially undermine Nintendo's competitiveness.

18       I declare under the penalty of perjury of the laws of the United States of America that the

19  foregoing is true and correct.

20       Executed this 16th day of August 2022 in Redmond, Washington.

21

22

23  _____
                              Ajay Singh

24

25

26

27

28