1   Brian C. Rocca, S.B #221576
    brian.rocca@morganlewis.com
2   Sujal J. Shah, S.B #215230
    sujal.shah@morganlewis.com
3   Michelle Park Chiu, S.B #248421
    michelle.chiu@morganlewis.com
4   Minna Lo Naranjo, S.B #259005
    minna.naranjo@morganlewis.com
5   Rishi P. Satia, S.B #301958
    rishi.satia@morganlewis.com
6   **MORGAN, LEWIS & BOCKIUS LLP**
    One Market, Spear Street Tower
7   San Francisco, CA 94105
    Telephone: (415) 442-1000
8   Facsimile: (415) 422-1001

9
    Richard S. Taffet, pro hac vice
10  richard.taffet@morganlewis.com
    **MORGAN, LEWIS & BOCKIUS LLP**
11  101 Park Avenue
    New York, NY 10178
12  Telephone: (212) 309-6000
    Facsimile: (212) 309-6001
13  Attorneys for Defendants Google LLC, et al.

14
    Daniel M. Petrocelli, S.B. #97802
15  dpetrocelli@omm.com
    Stephen J. McIntyre, S.B. #274481
16  smcintyre@omm.com
    **O'MELVENY & MYERS LLP**
17  1999 Avenue of the Stars
    Los Angeles, California 90067
18  Telephone: (310) 553-6700
    Facsimile: (310) 246-6779
19
20  Ian Simmons, pro hac vice
    isimmons@omm.com
21  Benjamin G. Bradshaw, S.B. #189925
    bbradshaw@omm.com
22  **O'MELVENY & MYERS LLP**
    1625 Eye Street, NW
23  Washington, DC 20006
    Telephone: (202) 383-5300
24  Facsimile: (202) 383-5414

25

26

27

28

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, Bar No. 282090
kyle.mach@mto.com
Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Emily C. Curran-Huberty, Bar No. 293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, pro hac vice
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

*Counsel for Defendants*

---

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE
ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*In re Google Play Consumer Antitrust
Litigation*, Case No. 3:20-cv-05761-JD

Case No. 3:21-md-02981-JD

**DECLARATION OF CHRISTIAN
CRAMER IN SUPPORT OF JOINT
OMNIBUS ADMINISTRATIVE
MOTION TO SEAL**

Judge:  Hon. James Donato

DocuSign Envelope ID: 209352E8-1B92-48EA-8E77-DC0521022BE4

I, Christian Cramer, declare as follows

A.     I am currently a Finance Director for Non-Party Google LLC (along with Google-affiliated entities, "Google").  I have been employed by Google since September 2007 and have held my current position since March 2017.  Over the course of my employment at Google, I have acquired personal knowledge of Google's practices and procedures concerning the maintenance of the confidentiality of its strategic, business, and marketing information.

B.     I submit this declaration in support of the Joint Omnibus Administrative Motion to File Under Seal filed on August 19, 2022 in *In re Google Play Store Antitrust Litigation,* Case No. 3:21-md-02981-JD and *In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD.

C.     The facts set forth in this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Google's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, and/or conversations with other knowledgeable employees of Google.  If called upon as a witness in this action, I could and would testify from my personal knowledge and knowledge acquired from sources with factual foundation.

D.     As a matter of routine practice and internal policy, Google and its employees strictly treat as confidential, *inter alia*, (i) internal, non-public financial information; (ii) non-public commercial proposals to third parties; (iii) non-public agreements with third parties; (iv) internal surveys and analyses of customer preferences, spending, revenue, market conditions, business strategy, competitive dynamics, and commercial opportunities; (v) non-public financial forecasts and business plans; (vi) trade secrets; and (vii) other sensitive material that, if publicly disclosed, could potentially enable Google's competitors to undermine Google's competitive position in the marketplace, allow current or prospective business partners or counterparties to take unfair advantage of Google in negotiations or other business affairs, violate Google's confidentiality obligations to third parties, or otherwise prejudice Google's business interests.  In my experience and to the best of my knowledge, Google does not disclose internal documents,

1

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

data, or information of this nature outside of the company, except to authorized third parties when so required or permitted by law or contract.  To that end and in order to prevent inadvertent revelation of this information to the public, Google has several policies in place like prohibiting employees from accessing information beyond what is reasonably necessary to perform their duties, limiting access to certain internal systems, permitting access to document databases on a need-to-know basis, and requiring the use of an encrypted email system.  I am also aware that, generally, Google employees are required to sign a confidentiality agreement requiring each employee to keep information confidential, and shared only within the company.

E.      Third parties—including Google's customers, suppliers, business partners, and others who interact or transact with Google in an array of contexts—entrust highly sensitive, non-public, and confidential information to Google every day.  These third parties have an expectation that Google can and will protect the confidentiality of that information.  In many cases, Google is contractually bound to keep that information confidential.  In my experience and to the best of my knowledge, Google does not disclose internal documents, data, or information reflecting third parties' confidential information outside of the company, unless and only to the extent it has been authorized (or is lawfully permitted or required) to do so.  Rather, as noted above, Google policies and protocols are designed to ensure the confidentiality of third-party material is strictly maintained.

F.      I understand that the Joint Omnibus Administrative Motion to File Under Seal requests that the Court maintain the specific information identified below under seal.  For the reasons stated below, this information is confidential and highly sensitive, and if publicly disclosed, could significantly prejudice Google's competitive position by harming Google's relationship with business partners, putting Google at unfair disadvantage in future business negotiations, and permitting Google's competitors to gain unfair advantage in competition with Google.

G.      Given the volume of underlying documents subject to the Joint Omnibus Administrative Motion to File Under Seal, the below table identifies the relevant paragraphs

2

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

from my declaration that support Google's specific sealing requests for each underlying document:

| Document | Declaration Paragraphs |
|---|---|
| Consumer Plaintiffs' Motion for Class Certification and all relevant exhibits [Dkt. No. 279] | ¶¶ 1 – 537 |
| Google's Opposition to Plaintiffs' Motion for Class Certification and all relevant exhibits [Dkt. No. 300] | ¶¶ 538 - 552 |
| Plaintiffs; Reply In Support Of Motion for Class Certification and all relevant exhibits [Dkt. No. 306] | ¶¶ 553 – 565 |
| Google's *Daubert* Motion and all relevant exhibits [Dkt. No. 282] | ¶¶ 566 – 586 |
| Consumer Plaintiffs' Opposition to Google's *Daubert* Motion and all relevant exhibits [Dkt. No. 298] | ¶¶ 587 – 643 |
| Google's Reply In Support Of *Daubert* Motion [Dkt. No. 303] | ¶¶ 644 - 646 |

### **Specific Information to Be Sealed**

### **Consumer Plaintiffs' Motion for Class Certification [Dkt. No. 279]**
### **(Exhibit A1)**

1.    **Page 006 (between "manufacturer" and "revenue for").** This text reflects Google's non-public, competitively sensitive, and current internal information about commercial details contractual agreements between Google and manufacturers. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

2.    **Page 006 (between "with at least" and "covering an estimated"; and between "estimated" and "shipped devices").** This text reflects Google's non-public, competitively sensitive, and current internal information about the number and type of counterparties with which Google has formed particular contractual agreements, as well as Google's confidential calculations and projections based on those agreements. Disclosure of that information could harm Google competitively by allowing competitors to use this information to alter their business strategies.

3.    **Page 006-7 (between "spend" and "to secure"; and from "goal to" to the end of the sentence).** This text reflects Google's non-public, competitively sensitive, and current

3

internal information about the number and type of counterparties with which Google has formed

particular contractual agreements, as well as Google's confidential calculations and projections

based on those agreements. Disclosure of that information could harm Google competitively by

allowing competitors to use this information to alter their business strategies. Further, by

revealing specific partners, terms, and business strategy, which could be used by counter-parties

in negotiations seeking similar or better terms and may cause significant harm to Google's

competitive standing.

4.      **Page 008, between "largest developers" and "Ex. 43"; "at -697.R" and end
of sentence.** This text reveals specific details about the terms of Google's agreements with

developers as part of particular Google commercial programs. Public disclosure could cause

harm to Google's competitive standing by giving competitors and others insights into Google's

business strategies.

5.      **Page 008, between "required developers to" and end of sentence.** This text

reveals specific details about the terms of Google's agreements with developers as part of

particular Google commercial programs. Public disclosure could cause harm to Google's

competitive standing by giving competitors and others insights into Google's business strategies

and allowing them to alter their business tactics accordingly.

6.      **Page 008, between "take was" and "the Project"; "the form of" and end of
the sentence.** This text reveals specific details about the terms of Google's agreements with

developers as part of particular Google commercial programs. Public disclosure could cause

harm to Google's competitive standing by giving competitors and others insights into Google's

business strategies and allowing them to alter their business tactics accordingly.

7.      **Page 008, between "threat could cost Google" and "margin impact"; "three
years" and "Ex.39."** This text reflects Google's non-public, competitively sensitive, and current

internal information, including specific figures that, if disclosed, would harm Google's

competitive standing. For example, developers could use this information against Google when

negotiating financial terms.

4

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352E8-1B92-48EA-8E77-DC0621022BE4

8.       **Page 008, footnote 10, between "noting that" and "Ex 41."** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and allowing them to alter their business tactics accordingly.

9.       **Page 008, footnote 11, from beginning of footnote to "See Ex. 39."** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and allowing them to alter their business tactics accordingly.

10.       **Page 010 (between "and that" through end of sentence. This text contains non-public and confidential information regarding Google Play's internal assessment of its business model).** This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

11.       **Page 010 (from "competitors such as" to the end of the sentence; between "noting that" and "Ex. 55;" and from "Ex. 55 (Bankhead Tr.) at 410:21-416:25 (discussing" to the end of the sentence).** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and allowing them to alter their business tactics accordingly.

12.       **Page 011 (between "Google's average" and "take rate").** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial

DocuSign Envelope ID: 209352E8-1B92-48EA-8E77-DC05210225E4

1  information. Further, this information reflects sensitive, highly confidential characterizations by

2  Google's internal business teams that, if revealed, could be referenced by potential counterparties

3  in negotiations with Google to gain an unfair advantage against Google.

4          13.        **Page 011 (between "would fall from" and "which is slightly").** This

5  information reflects and is calculated from internal, non-public Google financial data. Google

6  spends significant resources compiling and maintaining this valuable data, which is non-public,

7  and if revealed to competitors and potential business counterparties, could be used to

8  disadvantage and cause Google competitive harm by giving competitors insight into confidential

9  Google financial information. Further, this information reflects sensitive, highly confidential

10 characterizations by Google's internal business teams that, if revealed, could be referenced by

11 potential counterparties in negotiations with Google to gain an unfair advantage against Google.

12         14.        **Page 012 (between "take rate" and "for").** This information reflects and is

13 calculated from internal, non-public Google financial data. Google spends significant resources

14 compiling and maintaining this valuable data, which is non-public, and if revealed to competitors

15 and potential business counterparties, could be used to disadvantage and cause Google

16 competitive harm by giving competitors insight into confidential Google financial information.

17 Further, this information reflects sensitive, highly confidential characterizations by Google's

18 internal business teams that, if revealed, could be referenced by potential counterparties in

19 negotiations with Google to gain an unfair advantage against Google.

20         15.        **Page 012 (between "than the" and "that Google").** This information reflects

21 and is calculated from internal, non-public Google financial data. Google spends significant

22 resources compiling and maintaining this valuable data, which is non-public, and if revealed to

23 competitors and potential business counterparties, could be used to disadvantage and cause

24 Google competitive harm by giving competitors insight into confidential Google financial

25 information. Further, this information reflects sensitive, highly confidential characterizations by

26 Google's internal business teams that, if revealed, could be referenced by potential counterparties

27 in negotiations with Google to gain an unfair advantage against Google.

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352E8-1B92-48EA-8F77-DC0621022BE4

16.     **Page 023 (between "such as" and "would differentially;" between "take steps" and "in the face;" between "some cases" and "Ex. 3, Singer Reply").** This text reflects Google's non-public, competitively sensitive and current internal information, including information as to its commercial dealings, negotiations, and strategy with respect to counterparties. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies.

### Class Certification Report of Hal J. Singer, PH.D. [MDL Dkt. No. 279-3] (Exhibit A2)

17.     **Page 012, footnote 24 (between "the developers" and "and"; and between "and" and "decided not to distribute").** This text contains confidential, non-public information regarding non-party developers, and implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms. Further, disclosure of this non-public information is likely to result in competitive harm to Google as, for example, Google's competitors could use this non-party information to unfairly target Google's developer partners and offer deal terms specifically designed to undercut those offered by Google.

18.     **Page 021-22, paragraph 44 (between "found that" and "percent of Android").** This text reflects internal Google data on user behavior and marketing analytics. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's marketing analytics and knowledge of user behavior at no cost, improperly tailoring their own business strategy at Google's expense.

19.     **Page 026, footnote 84 (between "% sideloaded app" at"" and "to"; "to" and "percent in 2019 and 2020"; "avoid the Play Store. The" and "to"; between "to" and "percent statistic is driven by"; between "less than" and "percent of apps"; and between**

---

7

**"percent of Apps are" and "Id.").** This text reflects internal Google data on user behavior and app downloads. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's data on app downloads and knowledge of user behavior at no cost, unfairly tailoring their own business strategy at Google's expense.

20.    **Page 027, footnote 88 (between "During his time at" and "the company did not").** This text reflects confidential, non-public information regarding non-party developers, which reveals how Google identifies and classifies app developer partners and Google's strategies in dealing or negotiating with its business partners. Disclosure of this information could harm Google's relationship with its app developer partners and any ongoing negotiations or dealings with them. The information also implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

21.    **Page 027, footnote 89 (between "at the developer" and "the company decided"; and from "same consideration for the developer" to the end of the sentence).** This text reflects confidential, non-public information regarding non-party developers, which reveals how Google identifies and classifies app developer partners and Google's strategies in dealing or negotiating with its business partners. Disclosure of this information could harm Google's relationship with its app developer partners and any ongoing negotiations or dealings with them. The information also implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

22.    **Page 032, footnote 123 (between "Play advertising revenue of" and "in 2020, with cost"; between "of sales of just" and "direct operating"; between "expenses of" and "and cost"; between "allocations of" and "These data"; between "on Play Store**

8

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

**advertising revenue of over" and "percent (equal to"; "equal to" and "Similarly"; between "inclusive of direct costs is" and "percent (equal to"; between "equal to" and "and"; between "and cost allocations is" and "percent (equal to"; and between "equal to" and the end of the parenthetical).** This text reflects advertising revenue, operating expense, and profit margin figures calculated or derived from Google's financial data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial data to compete more effectively with Google Play.

23.      **Page 032, footnote 124 (between "(excluding ads) of" and "and "gross profit of"; between "gross profit of" and "for gross profit margin of"; between "for gross profit margin of" and "percent. The Play Store's"; between "operating profit was" and "for an operating"; and between "profit margin of" and "percent).").** This text reflects revenue, operating profit, and gross profit margin figures calculated or derived from Google's financial data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial data to compete more effectively with Google Play.

24.      **Page 032, footnote 125 (between "GOOG-PLAY-010801680 (showing Play Store advertising revenue of" and "in 2021, with a"; between "gross profit of" and "for a"; between "gross profit margin of" and "percent. Total operating expenses"; between "recorded at" and "yielding an"; between "operating profit of" and "for an"; and between "operating margin of" and end of sentence).** This text reflects advertising revenue, operating profit, and profit margin figures derived from Google's financial data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

information they could use it to inform their own strategies, unfairly leveraging Google's financial data to compete more effectively with Google Play.

25.     **Page 032, paragraph 69 (between "operating profit of" and "in 2019, a"; between "a" and "percent increase over the Play store's profit of"; between "over the Play Store's profit of" and "in 2018. Google's operating profit"; between "jumped to" and "in 2020, an"; between "an increase of" and "percent"; between "percent" and ". The Play Store's gross profit margin"; between "The Play Store's gross profit margin in 2020 was" and "percent, and its operating profit"; between "operating profit margin was" and "percent. A separate spreadsheet"; between "Google earned an additional" and "on ads"; between "gross profit margin was" and "percent, its operating profit"; between "operating profit margin was" and "percent, and its operating profit"; between "operating profit was" and "In"; and between "Google earned an additional" and "on adds that appear").** This information reveals Google's internal non-public profit, revenue, and financial calculations These data sets are not otherwise publicly reported by the company and their disclosure is likely to cause Google competitive harm and give its competitors an unfair advantage. Google's competitors could improperly utilize this internal, non-public data to modify or augment their business operations in an effort to compete unfairly against Google. Moreover, visibility into the trends in the data (i.e., figures across multiple years) gives Google's competitors improper insight into the financial health and future outlook of the Play business, which also arguably gives Google's competitors an unfair advantage.

26.     **Page 034, footnote 139 (between "revenue comes from" and "as opposed to"; between "as opposed to" and "See, e.g.,"; between "showing" and " percent of 2021"; and between "coming from" and ").").** This text contains non-public, internal financial information that reveals competitively sensitive data about specific products and verticals that are not otherwise reported publicly. Providing Google's competitors access to this granular level of financial data will give them an unfair advantage in competing against Google and is likely to

10

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 2D0352E8-1B03-485A-9E77-DC063102DBE4

result in competitive harm to Google as competitors will have unfair insight into specific products and/or verticals to target and invest in.

27.      **Page 037, paragraph 81 (between "2021, the" and "was on"; between "fewer than" and "percent of active devices"; between "and the" and "was on fewer than"; and between "fewer than" and "percent of active devices").** This text reflects confidential business information drawn from internal documents about third-party app stores. Disclosure could allow Google's OS and app store competitors to improperly tailor their own business strategies based on this information and target Google's customers giving Google's competition an unfair advantage and likely resulting in competitive harm to Google.

28.      **Page 038, Table 1 (Names following "Year" in the header row).** This text reflects confidential business information drawn from internal documents about third-party app stores. Disclosure could allow Google's OS and app store competitors to improperly tailor their own business strategies based on this information and target Google's customers giving Google's competition an unfair advantage and likely resulting in competitive harm to Google.

29.      **Page 041-42, paragraph 88 (between "of approximately" and "percent of revenues"; and between "an operating profit of" and "by 2018. By the time").** This text contains non-public, internal financial information that reveals competitively sensitive data about the Play Store cost structure which is not otherwise reported publicly. Providing Google's competitors access to this granular level of financial data will give them an unfair advantage in competing against Google and is likely to result in competitive harm to Google as competitors will have unfair insight into the product's cost structure and financial models, which can be used to tailor or augment their business models to compete unfairly against the Play Store.

30.      **Page 041, footnote 183 (between "marginal cost at" and "percent of consumer expenditures"; and between "account for approximately" and "percent of consumer expenditures.").** This text contains non-public, internal financial information that reveals competitively sensitive data about the Play Store cost structure which is not otherwise reported publicly. Providing Google's competitors access to this granular level of financial data

1    will give them an unfair advantage in competing against Google and is likely to result in

2    competitive harm to Google as competitors will have unfair insight into the product's cost

3    structure and financial models, which can be used to tailor or augment their business models to

4    compete unfairly against the Play Store.

5          31.      **Page 041, paragraph 87 (between "are approximately" and "to"; between**

6    **"to" and "percent of revenue'; and between "exceeds its" and "percent revenue share").**

7    This text contains non-public, internal financial information that reveals competitively sensitive

8    data about specific products and verticals that are not otherwise reported publicly. Providing

9    Google's competitors access to this granular level of financial data will give them an unfair

10    advantage competing against Google and is likely to result in competitive harm to Google as

11    competitors will have unfair insight into specific products and/or verticals to target and invest in.

12          32.      **Page 043, paragraph 92 (between "expressed concern that" and "could lead**

13    **to mobile"; between "sold with" and "and that"; and between "that, if" and "Google**

14    **feared").** This text reflects non-public, current, competitively sensitive information about an

15    aspect of the Play Store monetization strategy as well as other strategic considerations related to

16    the structure and use of its contractual agreements with carriers, OEMs, and developers. If

17    disclosed, this information could give Google and Play Store competitors an unfair advantage

18    and likely result in competitive harm to Google and/or Play Store.

19          33.      **Page 044, footnote 206 (between "signed by" and "GOOG-PLAY-**

20    **000808433; between "GOOG-PLAY-000808433" and "GOOG-PLAY-000808062";**

21    **between ""GOOG-PLAY-000808062" and "GOOG-PLAY-000808451"; between "GOOG-**

22    **PLAY-000808451" and "GOOG-PLAY- 003604523"; between "GOOG-PLAY-**

23    **003604523" and "GOOG-PLAY-000416448"; and from "GOOG-PLAY-000416448" to the**

24    **end of the sentence).** This text reflects confidential, non-public information regarding non-party

25    OEMs. This information reveals specific parties who signed the AFA agreements and could be

26    used by counterparties and others in negotiations seeking similar agreements. Moreover, the

27    names of these parties and the dates of the agreements, if disclosed, may cause competitive harm

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

to Google by giving competitors key insights into Google's business relationships. The information also implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

34.     **Page 044, footnote 207 (from "signed by" to the end of the sentence).** This text reflects confidential, non-public information regarding a non-party OEM. This information reveals a specific party who signed the AFA agreement and could be used by counterparties and others in negotiations seeking similar agreements. Moreover, the name of this party and the date of the agreement, if disclosed, may cause competitive harm to Google by giving competitors key insights into Google's business relationships. The information also implicates a non-party's confidentiality interests, by revealing the identity of Google's business partner, who is not party to this litigation, and who has a reasonable expectation that Google will maintain the confidentiality of contractual terms.

35.     **Page 045, footnote 210 (between "July, 1, 2020" and "Google Mobile Revenue").** This text reflects confidential, non-public information regarding non-party OEMs. This information reveals specific parties who signed the AFA agreements and could be used by counterparties and others in negotiations seeking similar agreements. Moreover, the names of these parties and the dates of the agreements, if disclosed, may cause competitive harm to Google by giving competitors key insights into Google's business relationships. The information also implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

36.     **Page 046-47, paragraph 100 (between "Samsung" and "And in questioning"; and from "employee wrote," to end of the sentence).** This information reveals confidential information about a third-party's commercial views and positions in negotiations, which could be used against it or Google competitively. It also reveals Google's internal insights

DocuSign Envelope ID: 200352E8-1B03-48FA-9E77-DC063102BFE4

into user behavior. Google's competitors could use this information to inform their own mobile app strategy to Google's competitive disadvantage.

37.      **Page 046, footnote 216 (between "require the" and "to appear").** This information contains confidential, non-public, and specific details regarding the provisions of the MADA, which could be used by counter-parties in negotiations seeking similar or better terms and would give Google's competitors an unfair advantage and is likely to cause Google competitive harm.

38.      **Page 046, footnote 217 (between "Google Play Client")" and "MADA)"; and between "§ 4.4: "[" and "). Google's MADA").** This information reflects confidential and specific details regarding provisions of and the parties to the MADA. Disclosure of this information could be used by counter-parties in negotiations seeking similar or better terms and would give Google's competitors an unfair advantage and is likely to cause Google competitive harm.

39.      **Page 046, footnote 219 (between "(§ 3.4) (" and "(; GOOG-PLAY-001404176").** This information reflects confidential and specific details regarding provisions of the MADA. Disclosure of this information could be used by counter-parties in negotiations seeking similar or better terms and would give Google's competitors an unfair advantage and is likely to cause Google competitive harm.

40.      **Page 046, paragraph 99 (between "certain agreements, " and "In sum").** This information reflects confidential and specific details regarding provisions of the MADA. Disclosure of this information could be used by counter-parties in negotiations seeking similar or better terms and would give Google's competitors an unfair advantage and is likely to cause Google competitive harm.

41.      **Page 050, paragraph 110 (between "internally as the" and "requirement"; between "required developers" and "thereby foreclosing; and between "lucrative" and "with other app stores").** This information would reveal specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public

disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies, which they could use to their advantage and is likely to cause Google competitive harm.

42.   **Page 051-52, footnote 262 (between "such as" and "Google's Christian Cramer; between "HPWU and PG are" and "of Play DAU/MAU"; between "Galaxy apks" and "of game time"; between "was about" and "to"; between "to" and "percent of those in the Play Store"; between "grosses" and "today"; and between "(between" and "of Play A&G").** This information would reveal non-public, competitively sensitive and current internal information. The disclosure of this information could cause competitive harm to Google by giving competitors and other parties information they could use to alter their business strategies.

43.   **Page 051-52, paragraph 114 (between "game release" and "confirmed"; between "grossed only" and "to"; between "to" and "(across all apps)"; between "or between" and "and"; and between "and" and "percent").** This information would reveal non-public, competitively sensitive, and current internal information. The disclosure of this information could cause competitive harm to Google by giving competitors and other parties information they could use to alter their business strategies.

44.   **Page 051, footnote 260 (between "at just" and "to"; between "to" and "percent of the Play Store"; between "at just" and "to"; and between "to" and "percent of the Play Store").** This information would reveal non-public, competitively sensitive and current internal information. The disclosure of this information could cause competitive harm to Google by giving competitors and other parties information they could use to alter their business strategies.

45.   **Page 051, paragraph 11 (between "developers from" and "including Samsung's"; between "Project Hug's" and "was aimed"; between "strike deals to" and "through Samsung's"; and between "however, from" and "Samsung Galaxy").** This information would reveal specific details about the terms of Google's agreements with

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies.

46.    **Page 052-53, paragraph 117 (between "at least" and "OEMs to date"; between "projections for" and "OEMs who had then"; between "anticipated" and "Premier Tier"; between "ship in" and "and"; between "and" and "According to"; between "January 2021" and "out of"; between "out of" and " devices sold"; and between "increase in" and "For some OEMs").** This information reflects Google's non-public, competitively sensitive, and current internal information about the number and type of counterparties with which Google has formed particular contractual agreements, as well as Google's confidential calculations and projections based on those agreements. Disclosure of that information could harm Google competitively by allowing competitors to use this information to alter their business strategies.

47.    **Page 052, footnote 268 (between "GOOG-PLAY-000620210" and "GOOG-PLAY-000620638"; between "GOOG-PLAY-000620638" and "GOOG-PLAY-005706338"; between "GOOG-PLAY-005706338" and "GOOG-PLAY-008111867"; between "GOOG-PLAY-008111867 and GOOG-PLAY-001745614"; between "GOOG-PLAY-001745614 and GOOG-PLAY-000416708"; between "GOOG-PLAY-000416708" and "GOOG-PLAY-000620282;" between "GOOG-PLAY-000620282" and "GOOG-PLAY-000620442"; between "GOOG-PLAY-000620442" and "GOOGPLAY-000620131"; between "GOOGPLAY- 000620131" and "GOOG-PLAY-005706436"; between "GOOG-PLAY-005706436" and "GOOG-PLAY- 005706676"; between "GOOG-PLAY- 005706676" and "GOOG-PLAY-007038477"; between "GOOG-PLAY-007038477 and GOOG-PLAY-007038511"; between "GOOG-PLAY-007038511 and GOOG-PLAY-000620478"; between "GOOG-PLAY-000620478" and "GOOG-PLAY-005706728"; and between "GOOG-PLAY-005706728" and "GOOG-PLAY-000416651").** This text reflects confidential, non-public information regarding non-party OEMs and parties that Google either

1    has or is negotiating commercial relationships with. This information reveals the identities of

2    certain non-party commercial partners and could be used by counterparties and others in

3    negotiations with the same non-party partners. Moreover, the names of these parties, if disclosed,

4    may cause competitive harm to Google by giving competitors key insights into Google's business

5    relationships. The information also implicates non-parties' confidentiality interests, by revealing

6    the identities of these commercial partners, who are not parties to this litigation, and who have a

7    reasonable expectation that Google will maintain the confidentiality of these relationships.

8    Google also seeks the following information to be sealed on behalf of third parties, as certain

9    non-parties have represented that they treat such material as non-public and commercially

10   sensitive but that they will not submit a declaration on behalf of their own interests because

11   doing so would itself reveal confidential information (e.g., their identity as a participant in a

12   particular Google program or as a counterparty to an agreement is not publicly known).

13          48.     **Page 052, paragraph 115 (between "Stylized as" and "on the absence of").**

14   This text reveals confidential, non-public and competitively sensitive information about specific

15   commercial deal programs offered by Google and strategic thinking related to the development

16   of such programs. Public disclosure of these commercial deals is likely to give Google's

17   competitors insight into non-public deals offered by the company, which competitors may use to

18   improperly take business away from Google. Moreover, public disclosure of these deals will give

19   Google's customers an unfair advantage that they will be able to use in negotiations with Google

20   as such programs are non-public and may only be offered in limited contexts to certain

21   customers. Thus, disclosure of this non-public information is likely to result in competitive harm

22   to Google.

23          49.     **Page 052, paragraph 116 (between "compensated OEMs on" and "if the**

24   **OEM"; between "be nearly" to "in 2020 and"; between "up to" and "in 2023."; and from**

25   **"goal was to move all" to the end of the sentence).** This text reveals confidential, nonpublic

26   and competitively sensitive details about a specific commercial deal program between Google

27   and certain counterparties. Disclosure of the specific program and its financial terms would harm

28

17

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

Google competitively by allowing competitors to alter their business dealings in light of this information, for example by offering similar programs. Disclosure of the financial terms received by counterparties could also harm them if competitors leveraged that information in negotiations.

50.     **Page 053, footnote 271 (between "noting" and "percent premier tier"; between "tier for Sony" and "percent for"; between "percent for" and "and"; between "and" and "percent for"; and from "for" to the end of the sentence).** This text reflects confidential, nonpublic and competitively sensitive information about non-parties as well as specific terms offered to said non-parties. If disclosed, this information could be used unfairly by competitors and nonparties in negotiations or commercial dealings which is likely to result in competitive harm to Google. Moreover, this information implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

51.     **Page 054-55, footnote 283 (from "along with" to the end of the sentence).** This information reflects specific non-public details and deal terms offered by Google to certain of its partners. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations, which is likely to result in competitive harm to Google.

52.     **Page 054-55, paragraph 122 (between "the form of" and "The monetary payments"; between "to around" and "to"; between "to" and "percent of"; and from "invest in the Play Store" to the end of the sentence).** This information reflects specific non-public details and deal terms offered by Google to certain of its partners. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations, which is likely to result in competitive harm to Google.

53.     **Page 054, footnote 279 (from "Co-marketing fund agreement)" to the end of the sentence).** This information would reveal specific details about the terms of Google's

18

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

agreements with developers as part of particular Google commercial programs. This information could be used by counterparties and others seeking similar agreements in negotiations with Google. Moreover, public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business.

54.  **Page 054, footnote 282 (between "offer Samsung" and "Id. at GOOG-PLAY-000000809"; between "In return" and "only app stores"; between "home screen" and "Id. at").** This information reflects specific non-public details and deal terms offered by Google to certain of its partners. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations, which is likely to result in competitive harm to Google.

55.  **Page 055, footnote 284 (between "Play reinvests" and "See also GOOG-PLAY-004119228.R"; between "Play takes" and "of the revenue share"; and between "dollars towards" and the end of the sentence).** This information reflects specific non-public details and deal terms offered by Google to certain of its partners. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations. Moreover, the text reveals Google's internal strategic financial considerations underlying these non-public deals and deal terms. Public disclosure of this information is likely to result in competitive harm to Google.

56.  **Page 055, footnote 289 (between "'As" and "has influence"; between "up to" and "of Play revenue"; between "Play Revenue" and "would have a realistic"; between "margin risk of" and "for Play"; between "'the risk' of" and "defection"; between "percentage of" and "and"; between "and" and "and to"; between "and to" and "a percentage of subscription"; and from "spend into" to end of parenthetical).** This information reflects specific, confidential details and terms about specific programs offered by Google as well as the specific deal terms offered to a particular partner. This information is confidential and could give other developers an advantage over Google in negotiations. Disclosure of this information could harm Google's relationship with its partner and any ongoing

19

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 2D0352E8-1B03-48FA-0E77-DC063102ZBE4

negotiations or dealings with them. The information also implicates non-party confidentiality interests, by revealing the identity of Google's business partner, who is not a party to this litigation, and who has a reasonable expectation that Google will maintain the confidentiality of contractual terms. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations. Moreover, the text reveals Google's internal strategic financial considerations underlying these non-public deals and deal terms. Public disclosure of this information is likely to result in competitive harm to Google.

57.      **Page 055, paragraph 123 (between "and the" and "requirement in particular"; between "one year" and "of the top"; between "top" and "game developers"; between "the holdouts" and "a popular gaming developer"; between "to Google, if" and "were to migrate"; between "impact would be" and "to"; between "to" and "in spend"; between "the risk' of" and "defection"; between "an offer to" and "that involved"; between "had offered" and "a"; between "a" and "Shortly thereafter"; between "Shortly thereafter" and "signed a Project Hug").** This information reflects specific, confidential details and terms about specific programs offered by Google as well as the specific deal terms offered to a particular partner. This information is confidential and could give other developers an advantage over Google in negotiations. Disclosure of this information could harm Google's relationship with its partner and any ongoing negotiations or dealings with them. The information also implicates non-party confidentiality interests, by revealing the identities of Google's business partner, who is not party to this litigation, and who has a reasonable expectation that Google will maintain the confidentiality of contractual terms. Public disclosure of these specific programs and deal terms could give Google's competitors and developer partners an unfair advantage over Google in negotiations. Moreover, the text reveals Google's internal strategic financial considerations underlying these non-public deals and deal terms. Public disclosure of this information is likely to result in competitive harm to Google.

58.     **Page 055, paragraph 124 (between "resulted in" and "Play margin loss"; between "an additional" and "in cross-platform revenue; between "In" and "Google decided"; and between "next" and "largest game developers").** This information reflects specific, non-public confidential details about non-public commercially sensitive deals as well as sensitive information about partners that have received these deal terms. Other partners could use this information to gain advantages in negotiating deals with Google. Moreover, this text reveals the Play Store's internal financial modeling of these specific deals, which if disclosed publicly, would give Google's competitors an unfair advantage and is likely to result in competitive harm to Google.

59.     **Page 056, footnote 299 (between "with" and "excluded").** This text reflects non-public information regarding non-party partners, which reveals how Google identifies certain partners as well as Google's strategies in dealing or negotiating with certain partners. Public disclosure of this non-public information could harm Google's relationship with the non-party partner as well as any ongoing negotiations or dealings with them. The information also implicates non-party confidentiality interests by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

60.     **Page 056, paragraph 125 (between "estimate that the" and "that were part"; between "of Project Hug in" and "accounted for"; between "accounted for" and "percent of all game-related"; between "App revenue and" and "percent of all App revenue"; between "on the Play Store in" and "I also estimate"; between "that the" and "game developers"; between "Games Velocity Program 2.0 in" and "accounted for"; between "accounted for" and "of all game-related"; between "App revenue and" and "percent of all App revenue"; between "on the Play Store in" and "Put differently, Google's equivalent"; between "selling over" and "of the most popular applications"; and from "most popular applications" to the end of the sentence.).** This information contains confidential and non-public details about developers that participate in certain non-public

21

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 2D0352E8-1B03-48FA-AF77-DC0631022BE4

commercial programs designed by Google for certain partners). The text also reveals non-public data about the proportion of revenue these developers comprise in various years. Revealing this information could influence the negotiating strategies and tactics employed by other app developers and other current and prospective counterparties with which Google does or may transact business and such disclosure is likely to cause Google competitive harm.

61.     **Page 056, paragraph 126 (between "Google's Mr. Koh, the" and "requirement eliminated" and between "Samsung's Galaxy Store" and "For this reason").** This information contains confidential and non-public information about the terms of a specific, non-public commercial program offered by Google to certain developer partners. Revealing these terms could unfairly influence the negotiating strategies employed by app developers and other current and prospective counterparties with which Google does or may transact business, which is likely to cause Google competitive harm.

62.     **Page 059, footnote 313 (between "GOOG-PLAY-000259276" and "is definitely not"; between "Google knows Epic, and" and "want to use their own billing"; between "suspects" and "will as well)"; between "Google Play has repeatedly attempted to bring" and "on to our Billing Platform"; between "Many developers, including" and "interpret a loophole"; and between "GOOG-PLAY-004721177" and "partners who are negotiating").** This text reveals the identities of multiple non-party developers with whom Google has had commercially sensitive and confidential communications. Were the identities of these parties to be publicly known, it could cause Google competitive harm, including in negotiations with other current and prospective counterparties with which Google does or may transact business. Moreover, disclosure of this information could harm Google's relationship with its app developer partners and any ongoing negotiations or dealings with them. The information also implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

63.     **Page 060, footnote 317 (between "declining the use Google Play Billing" and "and others"; between "July 2018 email:" and "does not believe"; and between "email thread summarizing" and "test").** This text reveals the identities of multiple non-party developers with whom Google has had commercially sensitive and confidential communications. Were the identities of these parties to be publicly known, it could cause Google competitive harm, including in negotiations with other current and prospective counterparties with which Google does or may transact business. In addition, this text contains non-public, competitively sensitive, and current internal information regarding Google products and services. Were this information to be publicly revealed, it could cause Google competitive harm in its business negotiations.

64.     **Page 060, paragraph 140 (between "that it considered" and "One 2019 presentation"; between "that Google could" and "Likewise, a 2021 Google analysis"; and from "alternatives demonstrate" to the end of the sentence).** This text contains non-public, competitively sensitive, and current internal strategy considerations regarding Google's non-public product offering. Public disclosure of this information would give Google's competitors an unfair advantage in competing against Google and is likely to result in competitive harm to Google.

65.     **Page 061, footnote 322 (the entire parenthetical).** This text reveals information and details about certain of Google's non-public commercial deals and details about the development of and changes to certain product offerings. This information is non-public, competitively sensitive, and current. Its public revelation is likely to cause Google competitive harm in revealing internal deliberations and strategic decision-making related to the development of and changes to certain product offerings.

66.     **Page 062, footnote 325 (between "showing that" and "of acquisitions"; between "are from" and "while only"; between "while only" and "of acquisitions"; between "acquisitions are" and "Id." at GOOG-PLAY-007317578"; between "before vising the Play Store" and "percent responded affirmatively"; and between "GOOG-PLAY-**

23

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 200352E8-1B03-485A-9E77-0C063102?BE4

**007317584. Only" and "percent of users").** This text reflects Google's market research and internal insights into user behavior. Were it to be publicly revealed, it could cause Google competitive harm as Google's competitors could use this non-public and proprietary information to inform their own strategies.

67. **Page 062, footnote 328 (between "Id." and "after year 1"; and from "will cost" to the end of the sentence).** This text reflects non-public, confidential, and internal Google financial information that, if publicly disclosed, could cause Google competitive harm by giving Google competitors insight into Google's business and monetization strategies.

68. **Page 062, paragraph 147 (between "revenues by roughly" and "implying that imposing"; and from "for one year by" to the end of the sentence).** This text reflects non-public, confidential, and internal Google financial information that, if publicly disclosed, could cause Google competitive harm by giving Google competitors insight into Google's business and monetization strategies.

69. **Page 063, footnote 333 (between "ongoing regarding" and "enabling Google Play Billing"; and from "be close to LRAP's" to the end of the sentence).** This text reflects specific commercially sensitive, non-public deal terms offered to a specific non-party partner, as well as the identity of that specific non-party partner. If publicly revealed, this information could cause Google competitive harm as well as reveal information identifying Google's business partners as Google's competitors and/or other partners could use this information to gain an unfair advantage in negotiations with Google and/or in competing against Google for that partner's business. The information also implicates a non-party's confidentiality interests, by revealing the identify of a Google business partner, who is not a party to this litigation, and who has a reasonable expectation that Google will maintain the confidentiality of contractual terms.

70. **Page 063, paragraph 148 (between "In a document titled" and "Google recognized that"; between "According to one document" and "is only one of a select"; and between "that have been offered" and "rev share.").** This text reflects a specific, non-public internal Google project including specific commercially sensitive deal terms and the identity of a

24

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

specific non-party developer. Were this information to be publicly revealed, it could cause Google competitive harm by revealing the identity of Google's business partners and confidential terms.

71.     **Page 066, footnote 347 (between "set of game developers" and "devs)"; and between "would constitute" and "of overall Play Store").** This text reflects Google's non-public, competitively sensitive, and current internal information. If revealed, this information could cause Google competitive harm by revealing Google's business models and confidential financial information.

72.     **Page 066, paragraph 156 (between "to the" and "game developers"; between "these developers because" and "Indeed, Google estimated"; between "could cost Google" and "margin impact"; between "years (" and "revenue"; between "revenue/" and "margin risk"; and between "only" and "through").** This text contains specific, non-public details about Google programs, possible developer partners, and internal business strategies. It also reveals non-public Google financial information. If publicly revealed, this information could cause Google competitive harm by giving other developers a competitive advantage over Google in ongoing or future business negotiations.

73.     **Page 067, footnote 352 (between "who represented" and "(or more)").** This text reveals non-public Google financial information about an internal Google program. If publicly revealed, this information could cause Google competitive harm by giving other developers a competitive advantage over Google in ongoing or future business negotiations.

74.     **Page 069, Figure 4 (entire figure).** This figure reflects Google's non-public, competitively sensitive, and current internal information, including consumer purchase information for a specific program and the identity of a non-party Google partner. If publicly revealed, this information could cause Google competitive harm by giving other developers a competitive advantage over Google in ongoing or future business negotiations.

75.     **Page 069, Figure 5 (entire figure).** This figure reflects Google's non-public, competitively sensitive, and current internal information, including consumer purchase

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 200352E8-1B03-48FA-8F77-DC063102BBE4

information for a specific program and the identity of a non-party Google partner. If publicly revealed, this information could cause Google competitive harm by giving other developers a competitive advantage over Google in ongoing or future business negotiations.

76.    **Page 070, Figure 6 (entire figure).** This figure reflects Google's non-public, competitively sensitive, and current internal information, including consumer purchase information for a specific program and the identity of a non-party Google partner. If publicly revealed, this information could cause Google competitive harm by giving other developers a competitive advantage over Google in ongoing or future business negotiations.

77.    **Page 073, footnote 365 (between "Google documents indicate that" and "percent of consumer spend"; between "occurs within" and "of the consumer's first purchase"; between "in the lead-up to the announcement found only a" and "revenue loss from the change"; between "because only" and "percent of active subscriptions"; between "subscriptions and" and "percent of revenue from subscriptions"; and between "2018 policy change at" and "percent. See GOOG-PLAY-001291233").** This text reflects Google's non-public, competitively sensitive, and current internal information concerning consumer spending behaviors and confidential Google financial information. If publicly revealed, this information could cause Google competitive harm by giving competitors insight into consumer spending patterns and Google monetization strategies.

78.    **Page 075, footnote 375 (between "collected service fees in excess of" and "percent of consumer expenditures").** This text reveals non-public, recent, and competitively sensitive Google financial information, including around consumer spending and Google revenues. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into consumer spending patterns and Google monetization.

79.    **Page 081, footnote 388 (between "(excluding irrelevant content costs for movies, television, and books) to be" and "percent of consumer expenditures on the Play Store").** This text reveals non-public, recent, and competitively sensitive Google financial information, including around consumer spending and Google costs and operating expenses.

1   Were this information to be publicly revealed, it could cause Google competitive harm by giving

2   competitors insight into consumer spending and confidential Google costs figures.

3         80.    **Page 083, paragraph 193 (between "its observed value of" and "percent in**

4   **the actual world"; between "in the Android App Distribution Market is" and "down**

5   **from"; between "the observed price of" and "net of Google's"; and from "per paid App**

6   **download" to the end of the sentence).** This information reflects and is calculated from

7   internal, non-public Google financial data. Were this information to be publicly revealed, it could

8   cause Google competitive harm by giving competitors insight into confidential Google financial

9   information.

10        81.    **Page 084, footnote 393 (between "equal to" and "multiplied by actual";**

11  **between "consumer expenditure of" and "after Google's promotional expenditures"; and**

12  **between "yielding aggregate damages of" and "= $18.76 million").** This information reflects

13  and is calculated from internal, non-public Google financial data. Were this information to be

14  publicly revealed, it could cause Google competitive harm by giving competitors insight into

15  confidential Google financial information.

16        82.    **Page 085, Table 3 (all numbers in the "Value" column, except for the figures**

17  **in the "Pass-through Rate" and "Aggregate Damages" rows).** This information reflects and

18  is calculated from internal, non-public Google financial data. Were this information to be

19  publicly revealed, it could cause Google competitive harm by giving competitors insight into

20  confidential Google financial information.

21        83.    **Page 091, footnote 429 (between "Google offered a" and "percent take**

22  **rate"; between "such as" and "and others to adopt"; between "Google has offered take**

23  **rates of" and "see GOOG-PLAY-000442329"; and between "and" and "see GOOG-**

24  **PLAY-000338849").** This text reflects the identity of multiple specific, non-party Google

25  partners as well as commercially sensitive, non-public financial information and deal terms.

26  Were this information to be publicly revealed, it could cause Google competitive harm by

27  revealing the identity of Google's business partners and by revealing confidential business terms.

28

DocuSign Envelope ID: 200352E8-1B03-48FA-0E77-DC063102BE4

84.     **Page 091, paragraph 205 (between "take rates of 15 percent" and "offered by Google pursuant to"; and between "viable non-Google billing options (such as" and "and others)").** This text reflects the identity of multiple specific, non-party Google partners. In addition, this text reflects and is calculated from internal, non-public Google financial data. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential Google financial information and business partners.

85.     **Page 093-94, paragraph 210 (between "Google's average cost of payment processing at just" and "percent of customer spend for"; and between "reports that transaction costs came to" and "percent of consumer").** This text reflects and is calculated from internal, non-public Google financial data. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential Google financial information.

86.     **Page 093, paragraph 208 (from "has modeled in" to the end of the sentence).** This text reflects Google's non-public, competitively sensitive, and current internal information regarding an internal Google program. If disclosed, this information would reveal a confidential Google project that has not been publicly discussed.

87.     **Page 094-95, paragraph 212 (between "all of these costs came to" and "percent of consumer expenditures"; between "conservatively estimated at" and "percent of consumer expenditures"; and between "its marginal costs (" and "percent of revenues)").** This text reflects and is calculated from internal, non-public Google financial data. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential Google financial information, including recent consumer expenditures and Google costs.

88.     **Page 094, footnote 439 (between "showing Google's average" and "percent of consumer spend"; between "processing costs are below" and "for 2,300"; and between "and below" and "for the vast majority of").** This text reflects and is calculated from internal, non-public Google financial data. Were this information to be publicly revealed, it could cause

Google competitive harm by giving competitors insight into confidential Google financial information, including recent consumer expenditures and Google costs.

89.     **Page 094, footnote 440 (between "blended rate of" and "percent for the United States").** This text reflects and is calculated from internal, non-public Google financial data. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential Google financial information, including recent consumer expenditures and Google costs.

90.     **Page 094, footnote 444 (between "came to" and "percent in 2020").** This text reflects and is calculated from internal, non-public Google financial data. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential Google financial information, including recent consumer expenditures and Google costs.

91.     **Page 094, paragraph 211 (between "totaling" and "In that same year"; between "came to" and "Although the Play Store's financials"; between "can be estimated at" and "Total transaction fees"; and between "is therefore" and "percent").** This text reflects Google's recent global revenue figures as well as consumer expenditures for certain products. This information is non-public and competitively sensitive. Were it to be disclosed, it could cause Google competitive harm by giving competitors core Google financial information that could be used to influence ongoing and prospective business negotiations.

92.     **Page 097, footnote 471 (between "In-App Aftermarket at" and "My results"; between "own-price elasticity of" and "calculated here"; between "increase by approximately" and "percent if I were"; between "to use" and "instead of"; between "instead of" and "as the own-firm demand elasticity"; and between "employ the" and "estimate").** This text reflects and is calculated from internal, non-public Google financial data, including pricing data. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential Google financial information.

29

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

93.     **Page 098, Table 5 (all numbers in the "Value" column, except for the numbers in the "Pass Through Rate" and "Aggregate Damages" rows).** This information reflects and is calculated from internal, non-public Google financial data, including consumer expenditures, pricing, and costs information. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential and critical Google financial information.

94.     **Page 102, footnote 486 (between "aftermarket at" and "percent)"; and between "close to" and "percent").** This text reflects Google's aggregate service fee rates drawn from figures which are non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if app developers became aware of this information they could use it to inform their negotiation strategies and as leverage in negotiation with Google (e.g., by demanding new rates).

95.     **Page 106-07, paragraph 232 (between "third row displays" and "in the 'Option' column"; between "base rate of" and "for Google's payment processing."; and between "decreases from" and "the greater are developers' steering incentives").** This text reflects and is based on internal Google financial data on service fees and consumer spending behavior. Google spends significant resources compiling this data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's data by reverse engineering these figures and calculations, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

96.     **Page 106, Figure 7 (entire figure).** This figure is derived from an internal Google presentation on business strategy related to Google Play's service fees, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's business strategy, while Google lacked similar insight into its competitors' strategy, putting Google at a disadvantage.

97.     **Page 108, footnote 508 (between "more than" and "percent of users"; and between "[t]oday," and "of Play users").**  This text reflects non-public, competitively sensitive data related to consumer spending metrics on Play.  If publicly revealed, this information is likely to give competitors unfair insight into Google's operations and user base, and would improperly influence the competitive decision-making and business strategies employed by Google's competitors.  Competitors, for example, may use this non-public information to augment how those app stores market themselves to consumers and developers which is likely to result in competitive harm to Google.

98.     **Page 116, paragraph 249 (between "what to do with" and "a holdout"; between "on Project Hug." and "wanted a reduced take rate"; between "One was to" and "Another"; between "was to" and "A third option"; between "was to" and "Under this third approach"; between "should let" and "know that"; between "as proposed by" and "Google cared"; and between "that Google was willing to" and "products to consumers").** This text reflects confidential, non-public information regarding non-party developers, which reveals how Google identifies and classifies app developer partners and Google's strategies in dealing or negotiating with its business partners. Disclosure of this information could harm Google's relationship with its app developer partners and any ongoing negotiations or dealings with them. The information also implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

99.     **Page 118, paragraph 250 (between "carriers" and "percentage points"; and between "or" and "percent").** This text reflects Google's aggregate service fee rates drawn from figures which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if app developers became aware of these specific deal terms they could use that non-public information to inform their negotiation strategies and as leverage in negotiation with Google (e.g., by demanding new

31

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1    rates). Similarly, competitors could augment the service fees and deal terms offered to app

2    developers based on this information and gain an unfair competitive advantage against Google.

3         100.    **Page 120-21, paragraph 253 (between "equal to" and "percent of"; between**

4    **"value of" and "(in the monopoly setting"; between "Equation (V.11)) to" and "in the**

5    **competitive setting"; between "I arrive at" and "using the").** This information reflects

6    figures derived or calculated from non-public and confidential data related to Google's pricing

7    strategies and consumer spending metrics for the Play Points program. This information is non-

8    public, and the Google Play product team treats it as strictly confidential. If publicly revealed,

9    this information could give competitors insight into Google's operations that Google lacks

10    regarding its competitors, and would influence the competitive decision-making and business

11    strategies employed by Google's competitors, for example by influencing how those app stores

12    market themselves to U.S. developers and how they distinguish themselves from Google Play in

13    the eyes of U.S. developers.

14         101.    **Page 121, footnote 565 (between "platform price of" and "divided by"; and**

15    **between "product price of" and end of sentence).** This information reflects figures derived or

16    calculated from non-public and confidential data related to Google's pricing strategies and

17    consumer spending metrics. This information is non-public, and the Google Play product team

18    treats it as strictly confidential. If publicly revealed, this information could give competitors

19    insight into Google's operations that Google lacks regarding its competitors, and would influence

20    the competitive decision-making and business strategies employed by Google's competitors, for

21    example by influencing how those app stores market themselves to U.S. developers and how

22    they distinguish themselves from Google Play in the eyes of U.S. developers.

23         102.    **Page 122-23, paragraph 254 (between "equal to the" and "percent take**

24    **rate"; between "effectively" and "percent)"; between "equal to" and "percent, net of Play**

25    **Points").** This information reflects figures derived or calculated from non-public and

26    confidential data related to Google's pricing strategies and consumer spending metrics for the

27    Play Points program. This information is non-public, and the Google Play product team treats it

28

as strictly confidential. If publicly revealed, this information could give competitors insight into Google's operations that Google lacks regarding its competitors, and would influence the competitive decision-making and business strategies employed by Google's competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers.

103.    **Page 122, Table 10 (figures in "Value" column, excluding the single Aggregate Damages figure).** This text reflects and is drawn/calculated from internal Google financial data on consumer spending, profits, expenditures, and others. Google spends significant resources compiling and maintaining this data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's data by reverse engineering these figures and calculations, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

104.    **Page 123-24, paragraph 258 (between "collected commissions in excess of" and "percent of consumer"; between "a take rate above" and "percent in the In-App Aftermarket").** This text reflects Google's aggregate service fee rates drawn from figures which are non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if app developers became aware of this information they could use it to inform their negotiation strategies and as leverage in negotiation with Google (e.g., by demanding new rates).

105.    **Page 123, footnote 566 (from the formula ending in "= $" to the end of the parenthetical).** This text reflects Google's service fee rates and figures related to consumer spending drawn from data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if app developers became aware of this information they could use it to inform their negotiation strategies and as leverage in negotiation with Google (e.g., by demanding new rates).

DocuSign Envelope ID: 200352E8-1B03-48FA-AF77-DC063102BBE4

106.  **Page 123, paragraph 255 (between "Aftermarket is" and ", down from"; between "observed price of" and "(net of Google's"; between "to consumers of" and ", and aggregate"; between "(equal"; "to" and "times"; and between "times" and "transactions) as a result of Google's restrictions").** This text reflects Google's service fee rates and figures related to consumer spending drawn from data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial and user data to compete more effectively with Google Play.

107.  **Page 125, paragraph 263 (between "Market was" and "percent and"; between "Content was" and "percent. According to my").** This text reflects Google's service fee rates calculated or derived from data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if app developers became aware of this information they could use it to inform their negotiation strategies and as leverage in negotiation with Google (e.g., by demanding new rates).

108.  **Page 128, paragraph 269 (between "earned gross profit of" and "in the competitive"; between "would have earned" and "in operating profit"; between "but-for profit is" and "Performing analogous"; between "estimated gross profit of" and "and operating"; between "profit of" and "in the competitive but-for world (again excluding advertising)"; and from "is estimated at" to the end of the sentence).** This text reflects profit figures calculated or derived from Google's financial data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial and user data to compete more effectively with Google Play.

109.  **Page 129, paragraph 271 (between "Google earned" and "in the sale of).** This text reflects revenue figures calculated or derived from Google's financial data which is

non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial and user data to compete more effectively with Google Play.

110.    **Page 130, Table 11 (all figures in "Android App Distribution Market (Table 3)," "In-App Aftermarket (Table 5)," and "Total" columns, except for figures in the "Aggregate Damages" row).** This text reflects and is drawn/calculated from internal Google financial data on consumer spending and transactions. Google spends significant resources compiling and maintaining this data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's data by reverse engineering these figures and calculations, unfairly tailoring their own business strategy at Google's expense.

111.    **Page 130, Table 12 (all figures in "Play Points Competition (Table 10)" and "Take Competition (Table A4)" columns, except for figures in the "Aggregate Damages" row).** This text reflects and is drawn/calculated from internal Google financial data on consumer spending and transactions. Google spends significant resources compiling and maintaining this data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's data by reverse engineering these figures and calculations, unfairly tailoring their own business strategy at Google's expense.

112.    **Page 132, paragraph 281 (between "'Art and Design' category is" and "percent, and the but-for take rate").** This text reflects Google's service fee rates and figures related to consumer spending drawn from data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if app developers became aware of this information they could use it to inform their negotiation strategies and as leverage in negotiation with Google (e.g., by demanding new rates).

35

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 200352E8-1B03-48FA-9F77-DC063102FBE4

113.   **Page 174, paragraph 295 (between "are approximately" and "percent of consumer").** This text reflects sensitive internal cost data  calculated or derived from Google's financial data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial and cost data.

114.   **Page 176, paragraph 297 (between "In-App purchases is" and "down from the observed"; between "price of" and "(net of Google's promotional"; between "average overcharge to consumers of" and "and aggregate damages of $2.35 billion"; between "(equal to" and "times"; and between "times" and "paid App and In-App purchase").** This text reflects pricing and consumer spending figures calculated or derived from Google's financial data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, unfairly leveraging Google's financial and user data.

115.   **Page 177, Table A4 (all numbers in "Value" column, except for the numbers in the "Pass-through Rate" and "Aggregate Damages" rows).** This text reflects and is drawn/calculated from internal Google financial data on consumer spending, profits, expenditures, and others. Google spends significant resources compiling and maintaining this data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's data by reverse engineering these figures and calculations, unfairly tailoring their own business strategy at Google's expense.

116.   **Page 180, paragraph 306 (between "Google's competitive margin(" and "percent) is"; between "substantially below" and "percent. As a consequence"; between "the critical loss is" and "percent, which substantially exceeds"; between "the actual loss of" and "percent. Moreover, the"; between "Moreover, the" and "percent estimate of the**

**competitive margin"; between "critical loss would be" and "percent, which again substantially"; and between "exceeds the actual loss of" and "percent.").** This text reflects profit and loss figures calculated or derived from Google's financial data which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if competitor platforms became aware of this information they could use it to inform their own strategies, improperly leveraging Google's financial and user data in an effort to compete unfairly against Google Play.

117.     **Page 181-82, Table A6:1 (all numbers in "% of Consumer Expenditure" column).** This text reflects and is drawn/calculated from internal Google financial data on consumer spending. Google spends significant resources compiling and maintaining this data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's data by reverse engineering these figures and calculations, improperly tailoring their own business strategy at Google's expense in an effort to compete unfairly with Google Play.

118.     **Page 183-84, Table A6:2 (all items in the "% of Consumer Expenditure" column).** This text reflects and is drawn/calculated from internal Google financial data on consumer spending. Google spends significant resources compiling and maintaining this data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's data by reverse engineering these figures and calculations, improperly tailoring their own business strategy at Google's expense in an effort to compete unfairly with Google Play.

119.     **Page 185, Table A6:3 (all items in the "% of Consumer Expenditure").** This text reflects and is drawn/calculated from internal Google financial data on consumer spending. Google spends significant resources compiling and maintaining this data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used

DocuSign Envelope ID: 290352E8-1B03-48FA-AF77-DC0631022BE4

to disadvantage Google. For example, Google's competitors could gain insight into Google's data by reverse engineering these figures and calculations, improperly tailoring their own business strategy at Google's expense in an effort to compete unfairly with Google Play.

120. **Paragraph 138, pages 59-60 (between "in discussions with" and "Google had considered"; and from "Google had considered a scenario in which" to the end of the sentence).** This information contains confidential and non-public information about the terms of a specific, non-public commercial program offered by Google to certain developer partners. Revealing these terms could unfairly influence the negotiating strategies employed by app developers and other current and prospective counterparties with which Google does or may transact business, which is likely to cause Google competitive harm. The information also implicates a non-party's confidentiality interests by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

121. **Paragraph 218, pages 97-98 (between "came to" and "between mid-August 2016"; between "Google collected" and "in U.S. commissions"; between "actual world of" and "percent"; between "transaction volume was" and "implying an average consumer price"; between "per transaction of" and "Google received"; between "Google received" and "percent of this price"; between "or" and "per transaction"; between "conservatively estimated at" and "percent of the average consumer price"; between "or" and "per transaction, which yields"; between "a markup of price over cost of" and "percent"; between "In-App Aftermarket is" and "I obtain a comparable result"; between "of" and "if I estimate Google's own-firm elasticity"; and from "the market demand elasticity in the In-App Aftermarket is" through the end of the sentence).** This text reflects Google's confidential, recent financial information, including revenues and volume of transactions. This information is non-public and competitively sensitive. This text also reflects and is calculated from internal, non-public Google financial data. Were it to be disclosed, this information could

cause Google competitive harm by giving competitors critical Google financial information that could be used to influence ongoing and prospective business negotiations.

122.    **Paragraph 220, pages 99-100 (between "be calculated at" and "which implies"; between "but-for price-cost margin of" and "percent"; between "between" and "and"; between "and" and "percent"; between "and" and "Alcoa's postentry"; between "would fall to" and "per transaction in such a competitive but-for world"; between "resulting in total savings of" and "per transaction relative to the actual world"; between "would fall to" and "percent in this competitive but-for world"; and between "Google's price-cost margin would be" and "percent, as shown in Row 15").** This information reflects and is calculated from internal, non-public Google financial data, including pricing and cost information. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential and critical Google financial information.

**Class Certification Reply Report of Hal J. Singer, PH.D. [MDL Dkt. No. 279-4] (Exhibit A3)**

123.    **Page 004-5, paragraph 10 (between "take rates between" and "and 30 percent"; and between "focuses on take rates above" and "percent, and shows that the vast"; and from "vast majority of these are above" to the end of the sentence).** This text contains non-public and confidential information relating to Google Play's specific internal business strategies and business model considerations, including analysis based on Google's internal data and information. If publicly revealed, this specific information could influence the competitive decision-making and business strategies employed by Google's app store competitors, or undermine Google's position in future business dealings by publicizing insight into Google's strictly confidential strategic thinking. For example, knowledge of Google's inner workings and strategic considerations could influence competitor app stores' decisions related to how they market, monetize or structure their business models, or affect Google customer perception regarding perceived value, or lead to conjecture about Google's future pricing models.

39

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

124.     **Page 004, footnote 16 (between "There are" [second instance] and "putative developer class members that participate"; and between "Accordingly, approximately" and "percent of proposed developer class members").** This information contains confidential and non-public information about the number of developers who participate in Google's various service fee programs. Revealing the number of developers participating in those programs could influence the negotiating strategies and tactics employed by other app developers and other current and prospective counterparties with which Google does or may transact business. For example, app developers might make inferences about the types of developers in Google Play's service fee programs and demand similar or better terms from Google.

125.     **Page 004, footnote 17 (between "Singer Report Table 3, row [6] (showing" and "percent take rate in the Android App Distribution Market"; between "Table 5, row [3] (showing a" and "percent take rate in the In-App Aftermarket"; and between "As noted above, only" and "percent of the developer class qualified").** This text reflects and is calculated from internal, non-public Google financial data. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential Google financial information, including recent consumer expenditures and Google costs. Additionally, this information contains confidential and non-public information about the number of developers who participate in Google's various service fee programs. Revealing the number of developers participating in those programs could influence the negotiating strategies and tactics employed by other app developers and other current and prospective counterparties with which Google does or may transact business. For example, app developers might make inferences about the types of developers in Google Play's service fee programs and demand similar or better terms from Google.

126.     **Page 004, footnote 19 (between "that was among the" and "percent of developers that qualified for special programs").** This text reflects and is calculated from internal, non-public Google financial data. Were this information to be publicly revealed, it could cause Google competitive harm by giving competitors insight into confidential Google financial

40

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 280352E8-1B03-48FA-8E77-0C0631022BE4

1  information, including recent consumer expenditures and Google costs. Additionally, this

2  information contains confidential and non-public information about the number of developers

3  who participate in Google's various service fee programs. Revealing the number of developers

4  participating in those programs could influence the negotiating strategies and tactics employed

5  by other app developers and other current and prospective counterparties with which Google

6  does or may transact business. For example, app developers might make inferences about the

7  types of developers in Google Play's service fee programs and demand similar or better terms

8  from Google.

9     127.    **Page 005, Figure 1 (between "as well as" and "which has largely**

10 **circumvented").** This text references a customer of Google who is not a party to this litigation,

11 and identifies the nonparty's specific deal terms. This nonparty's identity should be sealed

12 because disclosing its specific deal terms could cause significant harm to the nonparty's

13 competitive standing in future business dealings. For example, a potential business partner could

14 use this information in future negotiations with the nonparty to undermine the nonparty's

15 negotiating position.

16    128.    **Page 008, footnote 32 (between "pricing with" and "(no fixed fee"; between**

17 **"low as" and "sustainably"; between "all" and "transactions"; between "transactions"**

18 **and "processed"; and from "3%" to the end of the sentence).** This text reflects Google's non-

19 public, competitively sensitive and current internal information, including information as to its

20 commercial dealings and strategy with respect to a counterparty, and the specific name of the

21 party. If disclosed, that information could be used by competitors or third parties against Google

22 in negotiations to harm its competitive standing. Further, this nonparty's identity should be sealed

23 because disclosing its specific deal terms could cause significant harm to the nonparty's

24 competitive standing in future business dealings. For example, a potential business partner could

25 use this information in future negotiations with the nonparty to undermine the nonparty's

26 negotiating position.

27

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

129.    **Page 016, footnote 75 (between "about" and "percent of transactions").** This text reflects internal Google data on consumer spending behavior. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's knowledge of consumer spending at no cost, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

130.    **Page 017, footnote 76 (between "at Ex. 10" and "contract setting Direct"; between "Billing rate at" and "of Google's take" [first instance]; between "at Ex. B" and "contract setting Direct"; between "Billing rate at" and "of Google's take" [second instance]; and between "with floor of" and "of monthly total").** This text references customers of Google who are not parties to this litigation, and identifies the nonparties' specific deal terms. These nonparties' identities should be sealed because disclosing their specific deal terms could cause significant harm to the nonparties' competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

131.    **Page 018, footnote 82 (from "developers such as" to the end of the sentence; between "from negotiations with" and "over"; between "over" and "indicate that Google was"; from "open to" to the end of the sentence; between "was willing to" to "to keep it on").** This text references a customer of Google who is not a party to this litigation, and identifies the nonparty's specific deal terms. This nonparty's identity should be sealed because disclosing its specific deal terms could cause significant harm to the nonparty's competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

132.    **Page 018, paragraph 42 (from "Play Store" to the end of the sentence; between "business model" and "launched"; between "were to" and "we would"; and**

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1    **between "generated" and "in high-margin").** This text contains non-public and confidential

2    information regarding Google Play's internal assessment of its business model. This information

3    reflects sensitive, highly confidential characterizations by Google's internal business teams that,

4    if revealed, could be referenced by potential counterparties in negotiations with Google to gain

5    an unfair advantage against Google.

6    133.    **Page 021-22, paragraph 53 (between "example of" and "which"; between**

7    **"over" and "downloads"; from "spend of just" to the end of the sentence; between "comes**

8    **to" and "(equal"; from "percent of" to the end of the sentence; between "were to" and**

9    **"then"; between "then" and "would incur"; between "approximately" and "that"; from**

10   **"amount" to the end of the sentence; between "If" and "were to"; and from "revenue**

11   **from" to the end of the sentence).** This text references a customer of Google who is not a party

12   to this litigation, and identifies the nonparty's specific deal terms. This nonparty's identity should

13   be sealed because disclosing its specific deal terms could cause significant harm to the nonparty's

14   competitive standing in future business dealings. For example, a potential business partner could

15   use this information in future negotiations with the nonparty to undermine the nonparty's

16   negotiating position.

17   134.    **Page 022-23, paragraph 55 (between "implemented a" and "in the";**

18   **between "consumer" and "but having"; between "having a" and "rate"; from"rate**

19   **apply" to the end of the sentence; between "transactions" and "would have paid"; between**

20   **"that about" and "percent"; and between "Apps" and "and therefore").** This text contains

21   non-public and confidential information relating to Google Play's specific internal business

22   strategies and business model considerations, including analysis based on Google's internal data

23   and information. If publicly revealed, this specific information could influence the competitive

24   decision-making and business strategies employed by Google's app store competitors, or

25   undermine Google's position in future business dealings by publicizing insight into Google's

26   strictly confidential strategic thinking. For example, knowledge of Google's inner workings and

27   strategic considerations could influence competitor app stores' decisions related to how they

28

1   market, monetize or structure their business models, or affect Google customer perception

2   regarding perceived value, or lead to conjecture about Google's future pricing models.

3       135.   **Page 022, footnote 101 (between "charged these developers a" and "instead**

4   **of the 30% service fee rate"; and between "more than" and "of these developers' fees").**

5   This text contains non-public and confidential information relating to Google Play's specific

6   internal business strategies and business model considerations, including analysis based on

7   Google's internal data and information. If publicly revealed, this specific information could

8   influence the competitive decision-making and business strategies employed by Google's app

9   store competitors, or undermine Google's position in future business dealings by publicizing

10  insight into Google's strictly confidential strategic thinking. For example, knowledge of Google's

11  inner workings and strategic considerations could influence competitor app stores' decisions

12  related to how they market, monetize or structure their business models, or affect Google

13  customer perception regarding perceived value, or lead to conjecture about Google's future

14  pricing models.

15      136.   **Page 022, footnote 99 (between "proposal to" and "recognized the need";**

16  **and between "by proposing" and "to developers after").** This text contains non-public and

17  confidential information relating to Google Play's specific internal business strategies and

18  business model considerations. If publicly revealed, this specific information could influence the

19  competitive decision-making and business strategies employed by Google's app store

20  competitors, or undermine Google's position in future business dealings by publicizing insight

21  into Google's strictly confidential strategic thinking. For example, knowledge of Google's inner

22  workings and strategic considerations could influence competitor app stores' decisions related to

23  how they market, monetize or structure their business models, or affect Google customer

24  perception regarding perceived value, or lead to conjecture about Google's future pricing models.

25      137.   **Page 022, paragraph 54 (between "attempt to" and "and that"; between "if"**

26  **and "were profitable"; between "would have" and "already"; between "calculations" and**

27  **"would impose"; between "costs on" and "of developers"; and between "costs from" and**

28

DocuSign Envelope ID: 200352E8-1B03-48FA-9E77-0C063102BBE4

**"are not")** This text contains non-public and confidential information relating to Google Play's specific internal business strategies and business model considerations, including analysis based on Google's internal data and information. If publicly revealed, this specific information could influence the competitive decision-making and business strategies employed by Google's app store competitors, or undermine Google's position in future business dealings by publicizing insight into Google's strictly confidential strategic thinking. For example, knowledge of Google's inner workings and strategic considerations could influence competitor app stores' decisions related to how they market, monetize or structure their business models, or affect Google customer perception regarding perceived value, or lead to conjecture about Google's future pricing models.

138.    **Page 023-24, paragraph 58 (between "eliminated by" and "In a more").** This text contains non-public and confidential information related to the financial modeling and anticipated costs associated with a non-public alternative monetization strategy contemplated by Google. Public disclosure of this analysis of the potential effects of this strategic change to Google's product offering is likely to give Google's competitors improper insight into Google's strategic thinking, which they can use to their advantage in developing competing product offerings. Thus, public disclosure of this information is likely to result in competitive harm to Google.

139.    **Page 023, paragraph 56 (between "ignores that the" and "was never"; between "Challenged Conduct. The" and "that Dr. Burtis contemplates"; between "Dr. Burtis's speculative" and "incorrectly presupposes"; and between "30 percent for" and "percent of developers").** This text contains non-public and confidential information relating to Google Play's specific internal business strategies and business model considerations, including analysis based on Google's internal data and information. If publicly revealed, this specific information could influence the competitive decision-making and business strategies employed by Google's app store competitors, or undermine Google's position in future business dealings by publicizing insight into Google's strictly confidential strategic thinking. For example,

DocuSign Envelope ID: 200352E8-1B03-485A-9F77-0C063102 2BE4

1  knowledge of Google's inner workings and strategic considerations could influence competitor

2  app stores' decisions related to how they market, monetize or structure their business models, or

3  affect Google customer perception regarding perceived value, or lead to conjecture about

4  Google's future pricing models.

5      140.    **Page 023, paragraph 57 (between "rates but" and the end of the sentence;**

6  **between "could have" and the end of the sentence; and from "rely on" to the end of the**

7  **sentence).** This text contains non-public and confidential information relating to Google Play's

8  specific internal business strategies and business model considerations, including analysis based

9  on Google's internal data and information. If publicly revealed, this specific information could

10  influence the competitive decision-making and business strategies employed by Google's app

11  store competitors, or undermine Google's position in future business dealings by publicizing

12  insight into Google's strictly confidential strategic thinking. For example, knowledge of Google's

13  inner workings and strategic considerations could influence competitor app stores' decisions

14  related to how they market, monetize or structure their business models, or affect Google

15  customer perception regarding perceived value, or lead to conjecture about Google's future

16  pricing models.

17      141.    **Page 023, paragraph 57, footnote 111 (between "sell more" and "this could**

18  **crowd out").**  This text contains non-public and confidential information relating to Google

19  Play's specific internal business strategies and business model considerations. If publicly

20  revealed, this specific information could influence the competitive decision-making and business

21  strategies employed by Google's app store competitors, or undermine Google's position in future

22  business dealings by publicizing insight into Google's strictly confidential strategic thinking. For

23  example, knowledge of Google's inner workings and strategic considerations could influence

24  competitor app stores' decisions related to how they market, monetize or structure their business

25  models, or affect Google customer perception regarding perceived value, or lead to conjecture

26  about Google's future pricing models.

27

28

142. **Page 024, footnote 113 (from "554" to the end of the sentence).** This information reflects and is calculated from internal, non-public Google financial data, and reveals specific details about Google's strategy for negotiations with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies.

143. **Page 024, paragraph 59 (between "been willing to" and "under this alternative").** This text contains non-public and confidential information related to the anticipated effects and outcomes associated with a non-public alternative monetization strategy contemplated by Google. Public disclosure of analysis of this strategic change to Google's product offering is likely to give Google's competitors unfair insight into Google's strategic thinking, which they can use to their advantage in developing competing product offerings. Thus, public disclosure of this information is likely to result in competitive harm to Google.

144. **Page 025, footnote 115 (between "like" and first close parenthesis).** This text references customers of Google who are not parties to this litigation, and identifies the nonparties' specific concerns about certain expenditures and burdens on their businesses. These nonparties' identities should be sealed because disclosing their specific business concerns could cause significant harm to the nonparties' competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

145. **Page 025, paragraph 65 (between "initiative in which" and "Google asked"; between "Google asked" and "In that document"; and from "it would need" to the end of the sentence).** This text contains non-public and confidential information relating to Google Play's specific internal business strategies and business model considerations. If publicly revealed, this specific information could influence the competitive decision-making and business strategies employed by Google's app store competitors, or undermine Google's position in future business dealings by publicizing insight into Google's strictly confidential strategic thinking. For example, knowledge of Google's inner workings and strategic considerations could influence

47

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

competitor app stores' decisions related to how they market, monetize or structure their business models, or affect Google customer perception regarding perceived value and expectations.

146.     **Page 027, footnote 128 (between "less than" and "percent of").** This text reflects internal Google data on consumer spending behavior. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's knowledge of consumer spending at no cost, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

147.     **Page 036, footnote 175 (between "up from" and "per transaction"; and between "down from" and "percent in the").** This text contains confidential and non-public information regarding the value of subsidy provided by Google Play in its Play Points reward program. This information is non-public. If revealed publicly, an app store competitor could make decisions about its own reward programs and the value of subsidies to offer consumers in order to better compete against Google Play and target those same consumers.

148.     **Page 039-40, paragraph 98 (between "'less than" and "of U.S. consumers" [first instance]; between "only up to" and "of U.S. consumers" [second instance]; between "That 'only'" and "of U.S. consumers" [third instance]; and between "that 'only' about" and "percent of those who participated").** This text reflects internal Google data on consumer spending behavior. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's knowledge of consumer spending at no cost, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

149.     **Page 039, footnote 197 (between "the take rate falls by" and "percentage points in the In-App Aftermarket"; between "lowers the takerate by just" and "percentage points, to"; and from "percentage points, to" to the end of the sentence).** This text contains

48

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 200352F8-1B03-48FA-AF77-DC0631022BF4

non-public and confidential information relating to Google Play's specific internal business strategies and business model considerations, including analysis based on Google's internal data and information. If publicly revealed, this specific information could influence the competitive decision-making and business strategies employed by Google's app store competitors, or undermine Google's position in future business dealings by publicizing insight into Google's strictly confidential strategic thinking. For example, knowledge of Google's inner workings and strategic considerations could influence competitor app stores' decisions related to how they market, monetize or structure their business models, or affect Google customer perception regarding perceived value, or lead to conjecture about Google's future pricing models.

150.    **Page 039, paragraph 95 (between "developers' IAPs would fall" and "[percentage] points (to," between "points (to" and "Dr. Burtis obtains" [excluding footnote 195]; and between "to fall by just" and "percentage points").** This text contains non-public and confidential information relating to Google Play's specific internal business strategies and business model considerations, including analysis based on Google's internal data and information. If publicly revealed, this specific information could influence the competitive decision-making and business strategies employed by Google's app store competitors, or undermine Google's position in future business dealings by publicizing insight into Google's strictly confidential strategic thinking. For example, knowledge of Google's inner workings and strategic considerations could influence competitor app stores' decisions related to how they market, monetize or structure their business models, or affect Google customer perception regarding perceived value, or lead to conjecture about Google's future pricing models.

151.    **Page 040, footnote 202 (between "'Equal to [" and "percent]/["; and between "percent]/[" and "percent].").** This text reflects internal Google data on consumer spending behavior. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into

Google's knowledge of consumer spending at no cost, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

152.     **Page 041-42, paragraph 104 (between "three cherry-picked examples" and "dropped from 30 percent").** This text references customers of Google who are not parties to this litigation, and identifies the nonparties' specific deal terms. These nonparties' identities should be sealed because disclosing their specific deal terms could cause significant harm to the nonparties' competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

153.     **Page 041, footnote 211 (between "take rates for" and close parenthesis).** This text references customers of Google who are not parties to this litigation, and identifies the nonparties' specific financial terms. These nonparties' identities should be sealed because disclosing their specific financial terms could cause significant harm to the nonparties' competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

154.     **Page 041, paragraph 103 (between "developers such as" and "that Google was attempting").** This text references a customer of Google who is not a party to this litigation, and identifies the nonparty's specific deal terms. This nonparty's identity should be sealed because disclosing its specific deal terms could cause significant harm to the nonparty's competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

155.     **Page 042, footnote 213 (between "throughout the period" and "sold subscriptions"; and between "sold subscriptions in its" and "app, consumer subscriptions apparently").** This text references customers of Google who are not parties to this litigation, and identifies the nonparties' specific deal terms. These nonparties' identities should be sealed

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 200352E8-1B03-485A-8E77-DC063102 2BE4

because disclosing their specific deal terms could cause significant harm to the nonparties' competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

156.     **Page 042, footnote 217 (between "the cherry-picked" and "subscription product").** This text references a customer of Google who is not a party to this litigation, and identifies the nonparty's specific transaction data. This nonparty's identity should be sealed because disclosing its specific transaction data could cause significant harm to the nonparty's competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

157.     **Page 049, Table 3 (first column of table from below "App" to above "All Others").** This text references customers of Google who are not parties to this litigation, and identifies the nonparties' specific financial terms and data. These nonparties' identities should be sealed because disclosing their specific financial terms and data could cause significant harm to the nonparties' competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

158.     **Page 050, paragraph 127 (between "number of monthly" and "transactions used in"; between "the total number of" and "transactions in Dr. Williams's"; between "The number of" and "'products' classified into"; between "never exceeding" and "transactions in a month"; and between "falling to just" and "monthly transactions by the end").** This text references a customer of Google who is not a party to this litigation, and describes the nonparty's specific transactional data. This nonparty's identity should be sealed because disclosing its specific transactional data could cause significant harm to the nonparty's competitive standing in future business dealings. For example, a potential business partner could

1    use this information in future negotiations with the nonparty to undermine the nonparty's

2    negotiating position.

3        159.    **Page 051, Figure 4 (between "MONTHLY TRANSACTIONS FOR" and**

4    **"'PRODUCTS' IN DR. WILLIAMS'S REGRESSION").** This text references a customer of

5    Google who is not a party to this litigation, and depicts the nonparty's specific transactional data.

6    This nonparty's identity should be sealed because disclosing its specific transactional data could

7    cause significant harm to the nonparty's competitive standing in future business dealings. For

8    example, a potential business partner could use this information in future negotiations with the

9    nonparty to undermine the nonparty's negotiating position.

10       160.    **Page 051, paragraph 128 (between "monthly transactions for the" and**

11   **"'products' used in Dr. Burtis's"; between "amount to at most" and "percent of"; between**

12   **"percent of" and "revenue in the Play Store"; and from "developer such as" to the end of**

13   **the sentence).** This text references a customer of Google who is not a party to this litigation, and

14   describes the nonparty's specific transactional data. This nonparty's identity should be sealed

15   because disclosing its specific transactional data could cause significant harm to the nonparty's

16   competitive standing in future business dealings. For example, a potential business partner could

17   use this information in future negotiations with the nonparty to undermine the nonparty's

18   negotiating position.

19       161.    **Page 052, Figure 5 (between "MONTHLY TRANSACTIONS FOR" and**

20   **"'PRODUCTS IN DR. BURTIS'S TABLE 5").** This text references a customer of Google who

21   is not a party to this litigation, and depicts the nonparty's specific transactional data. This

22   nonparty's identity should be sealed because disclosing its specific transactional data could cause

23   significant harm to the nonparty's competitive standing in future business dealings. For example,

24   a potential business partner could use this information in future negotiations with the nonparty to

25   undermine the nonparty's negotiating position.

26       162.    **Page 063, Appendix 2, Appendix Tables A1 and A2 (first columns from**

27   **below "App" to above "All Others").** This text references customers of Google who are not

28

52

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

parties to this litigation, and identifies the nonparties' specific transactional data. These non-parties' identities should be sealed because disclosing their specific transactional data could cause significant harm to the nonparties' competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

163.    **Page 064, Appendix Figure A1 title (between "Appendix Figure A1" and "Subscription Transactions").** This text references a customer of Google who is not a party to this litigation, and depicts the nonparty's specific transactional data. This nonparty's identity should be sealed because disclosing its specific transactional data could cause significant harm to the nonparty's competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

164.    **Page 065, Appendix Figure A2 title (between "Appendix Figure A2" and "Subscription Transactions").** This text references a customer of Google who is not a party to this litigation, and depicts the nonparty's specific transactional data. This nonparty's identity should be sealed because disclosing its specific transactional data could cause significant harm to the nonparty's competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

165.    **Page 066, Appendix Figure A3 Title (between "Appendix Figure A3" and "Subscription Transactions").** This text references a customer of Google who is not a party to this litigation, and depicts the nonparty's specific transactional data. This nonparty's identity should be sealed because disclosing its specific transactional data could cause significant harm to the nonparty's competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the nonparty to undermine the nonparty's negotiating position.

53

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

**Expert Report of Douglas Craig Schmidt, PH.D. [Dkt. No. 279-5]
(Exhibit A4)**

166.    **Page 011-12 (between "track" and "a valuable"; and from "SDKs cannot" to the end of the sentence).** This information reflects and is calculated from internal, non-public Google technical data and capabilities. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and technological capabilities.

167.    **Page 012 (from "their device" to the end of the sentence).** This information reflects and is calculated from internal, non-public Google technical data and capabilities. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and technological capabilities. For example, Google's competitors could gain insight into Google's technologies and capabilities regarding the referenced metrics and insights, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

168.    **Page 033-34 (from "*Id.* at 457:14-458:4" to the end of the sentence).** This information reflects and is calculated from internal, non-public Google technical data and capabilities. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and technological capabilities. For example, Google's competitors could gain insight into Google's technologies and capabilities regarding the referenced metrics and insights, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

169.    **Page 035 (between "about a" and "percent").** This information reflects and is calculated from internal, non-public Google data. Google spends significant resources compiling and maintaining this valuable data, which is non-public information, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. For example, Google's competitors could gain insight into Google's knowledge,

54

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

170.    **Page 037-38 (from "February 4, 2022, at 457:14-458:4 " to the end of the sentence; and from "Unknown Sources Flow. Id. at 409:4-412:23" to the end of the sentence).** This information reflects and is calculated from internal, non-public Google technical data and capabilities. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and technological capabilities. For example, Google's competitors could gain insight into Google's technological capabilities regarding the referenced metrics and insights, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

171.    **Page 042 (from "GOOG-PLAY-001088593" to the end of the sentence).** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors, for example, other app stores, insights into Google's business strategies.

**Expert Report of Dr. Michelle M. Burtis [Dkt. No. 279-6]**
**(Exhibit A5)**

172.    **Page 013, paragraph 35 (after "For example" to the end of the sentence; between "For some developers, this" and "would mean"; between " had charged" and "Peekya would"; between "would have paid" and "in fees"; between "paid less than" and "in service fees"; and between "its monetization to" and "in the but-for world").** This information contains non-public and competitively sensitive information that would reveal Google's business models and potential alternative business models. This information is non-public. If disclosed, this information could inform Google's app store competitors about developers' monetization strategies and enable them to better compete against Google Play.

173.    **Page 014, paragraph 36 (between "only about" and "of U.S. consumers").** This information contains non-public and confidential data regarding the number of U.S.

consumers that participated in the Play Points program. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of U.S. consumers that participate in and have redeemed Play Points could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

174.    **Page 018, paragraph 54 (between "about" and "of").** This information contains non-public and confidential data regarding the share of apps on Google Play that are free to download and do not monetize through IAPs or subscriptions. This information is non-public. If disclosed, this data could inform Google's app store competitors about developers' monetization strategies and enable them to better compete against Google Play, for example, by influencing what product investments to make or how to target developers.

175.    **Page 018, paragraph 57 (between "Google Play," and "offer subscriptions;" between "apps account for" and "of all U.S. consumers;" and between "IAPs account for" and "of consumer spend").** This information contains Google's non-public and competitively sensitive information about app monetization and consumer spend on Google Play. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors. In addition, in revealing information about consumer spend on Google Play, the information could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

176.    **Page 021, footnote 45 (between "such as" and "The service" and between "program is" to the end of the sentence).** This exhibit contains confidential, non-public information of developer partners of Google. If that information were revealed to competitors

56

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1   and potential business counterparties, they could use that information to disadvantage Google.

2   For example, if other developers became aware of this information, they could use it as leverage

3   in their negotiations with Google, at the detriment of both Google and the app developer partner.

4   Furthermore, Google's developer business partners, who are not parties to this litigation, have a

5   reasonable expectation that Google will maintain the confidentiality of contractual terms.

6      177.    **Page 021, paragraph 64 (between "such as" and "and" and between "and"**

7   **and footnote 45).** This exhibit contains confidential, non-public information of app developer

8   partners of Google. If that information were revealed to competitors and potential business

9   counterparties, they could use that information to disadvantage Google. For example, if other app

10  developers became aware of this information, they could use it as leverage in their negotiations

11  with Google, at the detriment of both Google and the app developer partner. Furthermore,

12  Google's app developer business partners, who are not parties to this litigation, have a reasonable

13  expectation that Google will maintain the confidentiality of contractual terms.

14     178.    **Page 022, footnote 52 (between "for" and "of").** This text contains non-public

15  and confidential information regarding the percentage of consumer spend accounted for by

16  certain Play deal developers. This information is non-public. Even within Google, this

17  confidential information is guarded, and not shared widely within the company outside those

18  working on business development with developer partners and those in finance working on deal

19  financials. Disclosure of this information would severely and adversely impact Google's current

20  competitive position, as well as its ability to negotiate agreements in the future. For example, if

21  this information is publicly disclosed, a potential counterparty could make quantitative

22  inferences about the types of developers targeted by these programs, and demand an offer into

23  these programs based on that developer's own characteristics.

24     179.    **Page 022, footnote 54 (between "to" and "user", between "to" and "and",**

25  **and between "to" and the end of the sentence).** The text contains the identity of certain non-

26  party developers who have entered into Google Play's Project Hug program, the disclosure of

27  which could cause competitive harm to both those non-parties and to Google. The unsealed text

57

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

28

1  describes the types of services these specific developers primarily received from Google Play,

2  which would prove highly valuable for competitors of Google Play attempting to target these

3  developers. For example, Google's competitors could use this information to obtain a

4  competitive advantage against Google with respect to deal terms offered to developers or

5  services offered. With respect to the non-parties themselves, disclosure of their non-public,

6  confidential participation in the Google Play program could negatively affect their relationship

7  with Google and future negotiations.

8      180.    **Page 022, footnote 64 (between "example" and "is an;" between "since**

9  **September 2017" and "another").** This text reflects the specific non-party entity with whom

10  Google reached an agreement, and specific, confidential deal terms, including financial terms

11  and the specific names of counterparties. If disclosed, that information could be used by

12  competitors or third parties against Google in negotiations to harm its competitive standing. This

13  text also references nonparties to this litigation, and identifies the nonparty's specific deal terms.

14  This nonparty's identity should be sealed because disclosing its specific deal terms could cause

15  significant harm to the nonparty's competitive standing in future business dealings. For example,

16  a potential business partner could use this information in future negotiations with the nonparty to

17  undermine the nonparty's negotiating position.

18      181.    **Page 022, paragraph 66 (between "fee rate for" and "app fell to").** This text

19  includes confidential and non-public information of a non-party developer. The developer

20  identified in this Paragraph has a reasonable expectation that Google will maintain the

21  confidentiality of information relating to its apps on Google Play. Revealing that information

22  would harm Google's relationship with this developer (and potentially others), jeopardizing

23  Google's future business opportunities with it.

24      182.    **Page 022, paragraph 67 (between "as much as" and ". For example,";**

25  **between "consumer spend of" and "on Google Play."; between "cloud credits worth" and**

26  **". That would"; between "developer's apps from" and "(based on a"; between "rate) to"**

27  **and "-- effectively reducing"; and from "30% to" to the end of the paragraph).** This

28

58

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 200352E8-1B03-48FA-AF77-DC0631022BE4

1    information indicates benefits and effective service fee rate for non-party developers engaged in

2    the AVP program, the disclosure of which could cause competitive harm to both participating

3    non-parties and to Google. For example, Google's competitors could use this confidential

4    information to obtain a competitive advantage against Google with respect to financial deal

5    terms offered to developers. Competitors could use this information to target the types of

6    developers involved in the AVP program and deprive Google of business opportunities with

7    them.

8        183.    **Page 022, paragraph 68 (between "included" and "particular"; between**

9    **"about" and "of Google Play;" between "worldwide." and "and;" and between "and" and**

10   **"are among").** This text describes the number of app developers belonging to Google Play's

11   Project Hug program and what share of consumer spend those developers comprise. This text

12   also contains the confidential identities of non-party developers belonging to Project Hug. This

13   information is non-public. If revealed, it could influence the business strategies of Google Play's

14   app store competitors and significantly harm Google Play. For example, competitors could use

15   this information to target those same specific counterparties, or the same types of counterparties,

16   and deprive Google of business opportunities with them. The information also implicates non-

17   party confidentiality interests. Google's business partners, who are not parties to this litigation,

18   have a reasonable expectation that Google will maintain the confidentiality of contractual terms,

19   including the existence of a given contract between that non-party and Google.

20       184.    **Page 023, paragraph 70 (between "growth services to" and "to;" between**

21   **"to" and "Core developers;" and between "with more than" and "in monthly consumer**

22   **spend").** This information contains non-public and confidential data regarding the number of

23   U.S. developers that Google offered certain services to, and describing the criteria for selecting

24   those developers. This information is non-public and the Google Play product team treats it as

25   strictly confidential. If publicly revealed, this information could influence the competitive

26   decision-making and business strategies employed by Google's app store competitors, for

27   example by influencing how those app stores market themselves to U.S. developers and how

28

they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of and type of U.S. developers that Google offered certain services could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

185.     **Page 027, paragraph 78 (between "class period," and "of putative"; between "members generated" and "or less in"; between "spend, and" and "generated"; between "generated" and "or less"; between "developers like" and "some of which;" between "and the top" and "developer parents;" and between "accounted for" and "of consumer spend.").** This text includes confidential and non-public information of non-party developers. The developers identified in this Paragraph have a reasonable expectation that Google will maintain the confidentiality of information relating to their apps on Google Play. Revealing that information would harm Google's relationship with these developers (and potentially others), jeopardizing Google's future business opportunities with them. This text also includes non-public and competitively sensitive information regarding consumer spend on Google Play. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers.  This text also describes non-public and confidential data regarding the amount of money U.S. consumers spent on Google Play between August 2016 and July 2, 2021. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. consumers and developers and how they distinguish themselves from Google Play in the eyes of U.S. consumers and developers. In addition, revealing the amount of money U.S. consumers spent on Google Play could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.  Google also seeks the

60

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1  following information to be sealed on behalf of third parties, as certain non-parties have

2  represented that they treat such material as non-public and commercially sensitive but that they

3  will not submit a declaration on behalf of their own interests because doing so would itself reveal

4  confidential information (e.g. their identity as a participant in a particular Google program or as a

5  counterparty to an agreement is not publicly known).

6      186.    **Page 028, Figure 2 (between "Top" and "Putative Developer"; between**

7  **"Accounting for" and "of Consumer Spend"; and bar graph data).** This text includes

8  confidential and non-public information of numerous non-party developers. The developers

9  identified in this Figure have a reasonable expectation that Google will maintain the

10  confidentiality of information relating to their apps on Google Play. Revealing that information

11  would harm Google's relationship with these developers (and potentially others), jeopardizing

12  Google's future business opportunities with them. This text also includes non-public and

13  competitively sensitive information regarding consumer spend on Google Play. If publicly

14  revealed, this information could influence the competitive decision making and business

15  strategies employed by Google's app store competitors, for example by influencing how those

16  app stores market themselves to app developers and/or consumers and how they distinguish

17  themselves from Google Play in the eyes of app developers and/or consumers.

18      187.    **Page 029, paragraph 81 (between "December 2021," and ", an app";**

19  **between, "app from" and ", had"; between ", had" and "in consumer spend and";**

20  **between "in consumer spend and" and "in Ad Mob earnings"; between "The app" and ",**

21  **by"; between, ", by" and ", generated just"; between ", generated just" and "in consumer**

22  **spend during"; between "but had" and "in Admob earnings."; between "Peekya,**

23  **generated" and "in consumer spend from paid"; and between "through 2021 and" and**

24  **"during the period of time when").** This information contains confidential and non-public

25  information derived from non-party and named plaintiff developers' confidential data related to

26  their apps on Google Play. This information is non-public. Disclosure of this information would

27  severely and adversely impact Google's current competitive position, as well as its ability to

28

61

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 200352E8-1B03-48FA-AF77-0C0631022BE4

1   negotiate with the named developers or similar developers in the future. For example, if this

2   information is publicly disclosed, an app store competitor of Google Play could use this

3   information to inform its business strategies relating to these developers, including what

4   financial terms to offer to meet or beat Google's terms.

5        188.    **Page 031, footnote 96 (between "service fee rate of" and ". *See*").** This

6   information specifies the service fee rate for non-party developers engaged in the LRAP-HF

7   program, the disclosure of which could cause competitive harm to both the non-parties and to

8   Google. For example, Google's competitors could use this confidential information to obtain a

9   competitive advantage against Google with respect to financial deal terms offered to developers.

10   Competitors could use this information to target these developers, or similar types of developers,

11   and deprive Google of business opportunities with them. With respect to developers engaged in

12   the LRAP-HF program, disclosure of their non-public, confidential participation could

13   negatively impact what terms they are offered by other platform operators.

14        189.    **Page 031, paragraph 84 (between "are 15%" and ". In 2021;" between

15   **"there were" and "members of the putative developer class;" between "accounting for**

16   **about" and "of putative developer class;" and between "reduction in" and "service fee**

17   **rate").** This information indicates the service fee rate for non-party developers engaged in the

18   LRAP, LRAP++, ADAP, and SwG programs, along with the number of participating developers

19   and the percentage of consumer spend attributed to those developers, the disclosure of which

20   could cause competitive harm to both the non-parties and to Google. For example, Google's

21   competitors could use this confidential information to obtain a competitive advantage against

22   Google with respect to financial deal terms offered to developers. Competitors could use this

23   information to target these developers, or similar types of developers, and deprive Google of

24   business opportunities with them. With respect to developers engaged in these programs,

25   including the developer named here, disclosure of their non-public, confidential participation

26   could negatively impact what terms they are offered by other platform operators. The developer

27   identified here has a reasonable expectation that Google will maintain the confidentiality of

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 200352E8-1B03-485A-9E77-DC063102 2BE4

information relating to its agreements with Google Play. Revealing that information would harm Google's relationship with that developer (and potentially others), jeopardizing Google's future business opportunities with it.

190.     **Page 031, paragraph 86 (between "quantified for" and "was" and between "while for" and "the uplift").**  This information contains the confidential and non-public identity of non-party developers, which, if disclosed, would reveal confidential information about the nature and quantification of value Google estimates those developers derive from Google Play. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors or competitor apps to the named apps in this paragraph. In addition, revealing the identity of these apps and developers that distribute apps on Google Play could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

191.     **Page 034-35, paragraph 96 (between "shows that" and "of putative", between "and about" and "spent less", between "less than" and "during the class", between "Only" and "of the putative", between "members spent" and "or more.", between "Approximately" and "U.S. consumers spent", between "more than" and "on Google Play", and Table 3).** This information describes non-public and confidential data regarding the amount of money U.S. consumers spent on Google Play between August 2016 and July 2, 2021. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. consumers and developers and how they distinguish themselves from Google Play in the eyes of U.S. consumers and developers. In addition, revealing the amount of money U.S. consumers spent on Google Play could influence the negotiating strategies and tactics employed by app

developers and other current and prospective counterparties with which Google does or may transact business.

192.     **Page 040, footnote 121 (between "about" and "of Samsung;" and between "store and" and "used it").** This information reflects and is calculated from internal, non-public Google data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google information. For example, Google's competitors could gain insight into Google's knowledge of consumer behavior at no cost, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

193.     **Page 041, paragraph 117 (between "there are" and "that participate;" between "accounted for" and ". The global;" and between "accounted for" and the end of the last sentence in the paragraph).** This information contains confidential and non-public information about the number of developers who participate in Google's various service fee programs, including what portion of consumer spend those developers make up on Google Play. This information is non-public and the Google Play product team treats it as strictly confidential. Revealing the number of developers participating in those programs and the portion of consumer spend these developers generate could influence the negotiating strategies and tactics employed by other app developers and other current and prospective counterparties with which Google does or may transact business. For example, app developers might make inferences about the types of developers in Google Play's service fee programs and demand similar or better terms from Google.

194.     **Page 043, paragraph 123 (between "such as" and ", from").** The text contains the identity of certain non-party developers who have entered into Google Play's LRAP program, the disclosure of which could cause competitive harm to both those non-parties and to Google. For example, Google's competitors could use this information to obtain a competitive advantage against Google with respect to deal terms offered to developers. With respect to the non-parties

64

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

themselves, disclosure of their non-public, confidential participation in the Google Play program could negatively impact what terms those non-parties are offered.

195.    **Page 043, paragraph 125 (between "for the" and "app", between "about" and "after", and between "to" and "due").** The text contains the identity and effective service fee rates of a non-party developer that has entered into Google Play's SwG program, the disclosure of which could cause competitive harm to both the non-party and to Google. For example, Google's competitors could use this information to obtain a competitive advantage against Google with respect to financial deal terms offered to developers. Competitors could use this information to target this developer, or similar types of developers, and deprive Google of business opportunities with them. With respect to the specific developer, disclosure of its non-public, confidential participation in the Google Play program could negatively impact what terms it is offered by other platform operators.

196.    **Page 044, Figure 3.** The figure contains non-public, confidential information including the identity of a non-party Google Play developer, the developer's app's monthly consumer spend in Google Play, its effective service fee rate, and service fees paid to Google Play. The disclosure of this developer's highly confidential information would significantly harm its business. For example, its competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies.

197.    **Page 044, footnote 38 (between "for" and "of"):** This text contains non-public information regarding the amount of consumer spend comprised by developers who have entered into confidential programs that Google may offer to developers. This information is non-public. Even within Google, this confidential information is guarded, and not shared widely within the company outside those working on business development with developer partners and those in finance working on deal financials. Disclosure of this information would severely and adversely impact Google's current competitive position, as well as its ability to negotiate agreements in the future. For example, if this information is publicly disclosed, a potential counterparty could make

65

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

quantitative inferences about the types of developers targeted by these programs, and demand an offer into these programs based on that developer's own characteristics.

198. **Page 044, paragraph 126 (between "signed" and "targeted" and between "about" and "of").** This text contains non-public information regarding the number and size of developers who have entered into confidential programs that Google may offer to developers. This information is non-public. Even within Google, this confidential information is guarded, and not shared widely within the company outside those working on business development with developer partners and those in finance working on deal financials. Disclosure of this information would severely and adversely impact Google's current competitive position, as well as its ability to negotiate agreements in the future. For example, if this information is publicly disclosed, a potential counterparty could make quantitative inferences about the types of developers targeted by these programs, and demand an offer into these programs based on that developer's own characteristics.

199. **Page 045, Figure 4.** The figure contains non-public, confidential information regarding the number and share of developer class members by service fee rate. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those competitors' structure and set service fee rates.

200. **Page 059, paragraph 167 (between "Overall," and "putative," between "than" and "of", between "of the" and "consumers", between "making up" and "of", and between "than" and "over").** This information contains non-public and confidential data regarding the purchasing habits of U.S. consumer class members on Google Play. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those

app stores market themselves to U.S. consumers and U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers and U.S. consumers.

201.    **Page 062, footnote 202 (between "of" and "to", between "to" and "was", and between "of" and "allowed").** This text contains non-public and confidential information relating to Google Play's internal business strategies. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market, monetize or structure their business models.

202.    **Page 065-66, paragraph 183 (between "Approximately" and "of", between "is" and "- as much", between "as" and "The", between "is" and "- as much" and between "as" and "In").** This text contains non-public and confidential information relating to the Google Play's direct carrier billing ("DCB") form of payment option for users transacting in Google Play, including the share of users who use DCB, the cost to Google of providing DCB, and the cost to developers for the same. This information is non-public. The disclosure of this information would cause significant competitive harm to Google Play. For example, if revealed, app store competitors to Google Play could use this information to inform their own strategies relating to the form of payment options offered to users, potentially impacting user perception of Google Play's competitive offerings. This information could also be used by developers whose users do not transact, or minimally transact, with DCB, when entering into potential negotiations with Google Play.

203.    **Page 066, paragraph 185 (between "approximately" and "of").** This text contains non-public and confidential information relating to the share of U.S. consumers who use DCB in Google Play transactions. The disclosure of this information would cause significant competitive harm to Google Play for the same reasons identified with respect to that Paragraph. For example, if revealed, app store competitors to Google Play could use this information to inform their own strategies relating to the form of payment options offered to users, potentially

impacting user perception of Google Play's competitive offerings. This information could also be used by developers whose users do not transact, or minimally transact, with DCB, when entering into potential negotiations with Google Play.

204.     **Page 068-69, paragraph 194 (between "malware -" and "and", between "and" and "has more", between "than" and "consumer", between "and" and "has more", between "than" and "installations", between "for" and "and", between "for" and 'These', between "shows," and "putative", and between "and" and "of").** This text contains non-public and confidential information regarding the performance of certain security apps on Google Play and, by implication, the identities of the app developers of those specific security apps. The text also contains non-public and confidential information regarding the share of U.S. consumers who have paid less than $5 and $50, respectively. The specific developers identified in this Paragraph have a reasonable expectation that Google will maintain the confidentiality of their apps' data on Google Play. Revealing those apps would harm Google's relationships with those developers (and potentially others), jeopardizing Google's future business opportunities with them. With respect to the consumer spend information, disclosure of this information could be used by Google's competitors to target consumers of security apps, or otherwise inform their business strategies in a way that causes competitive harm to Google.

205.     **Page 069, paragraph 195 (between "shows" and "of"; between "overcharge of" and "that overcharge"; between "that overcharge (" and ") would have been"; and between "security apps that are" and "per month"; and between "per month" and "per year"; and between "more than" and "over the class").** This text contains non-public and confidential information regarding the share of U.S. consumers who have spent specific amounts on Google Play, and how those expenditures relate to the pricing of security apps. Disclosure of this information could be used by Google's competitors to target consumers of security apps, or otherwise inform their business strategies in a way that causes competitive harm to Google. For example, understanding consumer app purchasing habits could influence how competitors target those consumers or price their products.

DocuSign Envelope ID: 200352E8-1B03-48FA-9F77-DC063022BE4

206.    **Page 069, paragraph 196 (between "for the" and "of").** This text contains non-public and confidential information on the share of U.S. consumers who spent less than $10 in Google Play during the class period. This information is non-public. Disclosure of this information would severely and adversely impact Google's current competitive position because it would equip competitors with insight into the consumer spend habits they would otherwise not have access to. For example, public disclosure of this data could influence how app store competitors structure their business models or monetization strategies to better compete with Google.

207.    **Page 069, footnote 216 (between "About" and "of U.S.").** This text contains non-public and confidential information on the portion of U.S. consumers who spent less than $100 over the class period. This information is non-public. Disclosure of this information would severely and adversely impact Google's current competitive position because it would equip competitors with insight into the consumer spend habits they would otherwise not have access to. For example, public disclosure of this data could influence how app store competitors structure their business models or monetization strategies to better compete with Google.

208.    **Page 070-71, paragraph 199 (between "over" and "downloads", and between "about" and "over").** This information contains confidential and non-public data about a non-party developer's app downloads and revenue on Google Play. This information is non-public. The disclosure of this non-party's highly confidential information would significantly harm its business. For example, the non-party's competitors could leverage this information to reap an unearned competitive advantage. They could exploit this information—that they otherwise would not have access to—to inform their own business strategies.

209.    **Page 070-71, paragraph 199 (between "the" and ", other"; between "over" and "downloads"; between "about" and "over"; between "approximately" and "However"; and between "about" and "Depending").** This text contains non-public and confidential information relating to Google Play's internal business strategies and business model considerations, as well as confidential information relating to a non-party developer's app on

Google Play. With respect to the information relating to Google Play's business model considerations, this information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market, monetize or structure their business models. With respect to this non-party developer's confidential information, this non-party developer has a reasonable expectation that Google will maintain the confidentiality of its apps' data on Google Play. Revealing this information would harm Google's relationship with this non-party developer (and potentially others), jeopardizing Google's future business opportunities with them.

210. **Page 070, footnote 221 (between "of" and "to", between "to" and "with", and between "of" and "allowed").** This text contains non-public and confidential information relating to Google Play's internal business strategies and business model considerations. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market, monetize or structure their business models.

211. **Page 070, paragraph 198 (between "charging a" and "Such", between "about" and "of", between "offer" and ") would," between "to" and "The", between "distribute" and "would", and between "have" and "that").** This text contains non-public and confidential information relating to Google Play's internal business strategies and business model considerations. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market, monetize or structure their business models.

212.    **Page 071, footnote 225 (between "For" and "that"; and from "imply" and the end of the sentence).** This text reflects Google's non-public, competitively sensitive and current internal information, including information as to its commercial dealings and strategy with respect to a counterparty, and the specific name of the party. If disclosed, that information could be used by competitors or third parties against Google in negotiations to harm its competitive standing.

213.    **Page 071, footnote 225 (from "to charge a" to the end of the sentence).** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model, and reveals specific details about the terms of Google's strategy for negotiations with developers as part of particular Google commercial programs. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies.

214.    **Page 071, paragraph 199 (between "with" and "but others").** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model and reveals specific details about the terms of Google's strategy for negotiations with developers as part of particular Google commercial programs. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

215.    **Page 071, paragraph 199 (from "about" to the end of the sentence).** This information contains confidential and non-public information derived from a non-party developer's confidential data related to its app on Google Play. This information is non-public. Disclosure of this information would severely and adversely impact Google's current competitive position, as well as its ability to negotiate with this non-party developer or similar

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 200352E8-1B03-48FA-AF77-DC0631022BE4

developers in the future. For example, if this information is publicly disclosed, an app store competitor of Google Play could use this information to inform its business strategies relating to this non-party developer, including what financial terms to offer to meet or beat Google's terms.

216. **Page 071, paragraph 199 (from "approximately" to the end of the sentence).** This information contains confidential and non-public information derived from a non-party developer's confidential data related to its app on Google Play. This information is non-public. Disclosure of this information would severely and adversely impact Google's current competitive position, as well as its ability to negotiate with this non-party developer or similar developers in the future. For example, if this information is publicly disclosed, an app store competitor of Google Play could use this information to inform its business strategies relating to this non-party developer, including what financial terms to offer to meet or beat Google's terms.

217. **Page 071, paragraph 199 (from "assessed at" to the end of the sentence).** This information reflects and is calculated from internal, non-public Google financial data, and reveals specific details about the terms of Google's strategy for negotiations with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies.

218. **Page 071, paragraph 200 (between "strategy to" and "a putative").** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model and reveals specific details about the terms of Google's strategy for negotiations with developers as part of particular Google commercial programs. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

219. **Page 071, paragraph 201 (text from "fees for" to the end of the sentence).** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model. This information reflects sensitive, highly confidential

characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

220.     **Page 071, subheading 2 (text after "App or Developer").** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

221.     **Page 072, paragraph 201 (text from "considered adding" to the end of the sentence; from "several" to the end of the sentence; and "the" to the end of the sentence).** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model, and non-public and confidential Google financial information. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Public disclosure could cause harm to Google's competitive standing by giving competitors, for example, other app stores, insights into Google's business strategies.

222.     **Page 072, paragraph 202 (between "developers" to "instead;" and between "more than" and "of these").** This information reflects and is calculated from internal, non-public Google data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information.

223.     **Page 072, paragraph 202 (between "than" and "of" and between "than" and the end of the sentence).** The text contains non-public and confidential information regarding the share of developer class members who paid at or below a set amount of service fees. This information is non-public. If disclosed, this information could be used by Google

73

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

Play's app store competitors to make decisions about monetization strategy or what developers to target, potentially undermining Google Play.

224.    **Page 072, paragraph 202 (between "were" and "during").** This text contains non-public and confidential information regarding the service fees earned by Google on Developer Plaintiff Peekya App Services' app.

225.    **Page 072, paragraph 202 (from "charged" to the end of the sentence).** This information reflects and is calculated from internal, non-public Google data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information.

226.    **Page 072, paragraph 229 (from "considered were" to the end of the sentence).** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model, and non-public and confidential Google financial information. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google. Public disclosure could cause harm to Google's competitive standing by giving competitors, for example, other app stores, insights into Google's business strategies.

227.    **Page 073-74, footnote 232 (between "based on" and "for the"; and between "year and" and "thereafter").** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing business models contemplating an alternative

74

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

service fee structure could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

228.    **Page 073, footnote 231 (between "554" and GOOG-PLAY-003335786.R).** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. For example, Google's competitors could gain insight into Google's knowledge of consumer spending at no cost, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

229.    **Page 073, footnote 231 (from "808.R" to the end of the sentence).** This information reflects and is calculated from internal, non-public Google financial data. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage and cause Google competitive harm by giving competitors insight into confidential Google financial information. For example, Google's competitors could gain insight into Google's knowledge of consumer spending at no cost, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

230.    **Page 073, footnote 232 (from "ranging from" to the end of the sentence).** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing business models contemplating an alternative service fee structure could influence the

75

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

231.     **Page 073, paragraph 203 (between "introducing" and "whereby"; from "rates would" to the end of the sentence; and between "implemented" and "in the but-for world").** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model and information calculated from internal, non-public Google financial data. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

232.     **Page 073, paragraph 204 (from "a consumer" to the end of the sentence; between "individual consumer" and "but having"; between "having a" and "rate"; from "apply" and the end of the sentence; between "skewed toward" and "the developer's"; from "toward" to the end of the sentence; between "distribution of a" and "the developer's overall"; and from "toward" to the end of the sentence).** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing business models contemplating an alternative service fee structure could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

233.     **Page 073, subheading 3 (text before "Imply Not All Service").** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model. This information reflects sensitive, highly confidential characterizations by

76

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 280352E8-1B03-485A-9F77-DC063102?BE4

Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

234. **Page 074-75, paragraph 206 (from "apps that" to the end of the sentence; from "depending on" and the end of the sentence; between "rate of" and "would apply"; between "transactions generated from" and "and a service fee"; between "rate of" and "would apply"; from "to transactions" to the end of the sentence; and from "how each developer" to the end of the sentence).** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing business models contemplating an alternative service fee structure could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

235. **Page 074, paragraph 205 (between "2020," and "existed less;"; between "for those" to "of apps"; from "world with" to the end of the sentence; and Table 7).** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model as well as contemplated changes to its business model. The text also includes data calculated using internal, non-public financial information, the disclosure of which would give Google's competitors an unfair advantage. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google as well as by competitors who may use this information and gain an unfair advantage.

DocuSign Envelope ID: 200352E8-1B03-48FA-9F77-DC063102?BE4

236.     **Page 074, paragraph 205 (from "transactions for" to the end of the sentence; from "adopted this" to "all the users"; and between "the app for" to "and all transactions").** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model and information calculated from internal, non-public Google financial data. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

237.     **Page 075-76, paragraph 210 (between "relied more on" and "would have been"; between "developers that" and "but pay relatively small"; and between "likely that" and "would exceed").** This text contains non-public and confidential information regarding a business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google.

238.     **Page 075, footnote 235 (between "all transactions" and "These alternatives").** This text contains non-public and confidential information regarding a business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google.

239.     **Page 075, footnote 238 (between "[include]" and "; Linked to value").** This text contains non-public and confidential information regarding a business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential

1   information relating to alternative business models that Google is considering or has considered

2   could influence how app store competitors structure their business models or what monetization

3   strategies those competitors pursue to compete with Google.

4       240.    **Page 075, paragraph 206 (between "this" and "monetization").** This text

5   contains non-public and confidential information regarding Google Play's internal assessment of

6   its business model and its strategy. This information reflects sensitive, highly confidential

7   characterizations by Google's internal business teams that, if revealed, could be referenced by

8   potential counterparties in negotiations with Google to gain an unfair advantage against Google.

9       241.    **Page 075, paragraph 207 (between "increase the" and "in Google Play").**

10  This text contains non-public and confidential information regarding a business model that

11  Google has considered. This information is non-public. If disclosed, this information could be

12  used by Google's app store competitors to obtain a competitive advantage. For example,

13  confidential information relating to alternative business models that Google is considering or has

14  considered could influence how app store competitors structure their business models or what

15  monetization strategies those competitors pursue to compete with Google.

16      242.    **Page 075, paragraph 207 (between "rates but" and ". For example").** This

17  text contains non-public and confidential information regarding a business model that Google

18  has considered. This information is non-public. If disclosed, this information could be used by

19  Google's app store competitors to obtain a competitive advantage. For example, confidential

20  information relating to alternative business models that Google is considering or has considered

21  could influence how app store competitors structure their business models or what monetization

22  strategies those competitors pursue to compete with Google.

23      243.    **Page 075, paragraph 208 (between "ability to" and "would have been.")**

24  This text contains non-public and confidential information regarding a business model that

25  Google has considered. This information is non-public. If disclosed, this information could be

26  used by Google's app store competitors to obtain a competitive advantage. For example,

27  confidential information relating to alternative business models that Google is considering or has

28

79

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google.

244.     **Page 075, paragraph 209 (between "increasing the" and ", even with", between "rely on" and ", as many small", and between "developers do." and "or other mechanisms").** This text contains non-public and confidential information regarding a business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google.

245.     **Page 075, section 4 (from after "Lower Service Fee Rates Accompanied by").** This text contains non-public and confidential information regarding a business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google.

246.     **Page 076, footnote 239 (between "increase the" and ". Others listed"; and from "rate to" to the end of the sentence).** This text contains non-public and confidential information regarding two specific variations of a business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google.

247.     **Page 076, footnote 240 (between "554 (" and "work because devs").** This text contains non-public and confidential information regarding a business model that Google has

80

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google.

248.    **Page 076, paragraph 211 (between "large developers," and " and "could have exceeded"; and second sentence in the paragraph).** This text contains non-public and confidential information regarding a business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google.

249.    **Page 080, paragraph 227 (between "approximately" and "of the U.S.").** This text contains confidential, non-public information relating to Google's costs of processing transactions, specifically the numbers of U.S. consumers using DCB. This information is non-public. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies (e.g. change their own DCB offerings) in an effort to attract developers away from Google. This information could also be used by developers whose users do not transact, or minimally transact, with DCB, when entering into potential negotiations with Google Play.

250.    **Page 080, paragraph 227 (between "DCB is" and "on average," between "developers is" and "- as much," and between "as much as" and "If some developers").** This text contains confidential, non-public information relating to Google's costs of processing transactions, specifically the cost to Google of providing Direct Carrier Billing ("DCB"). This information is non-public. The disclosure of this information would cause significant competitive harm to Google Play. For example, if revealed, app store competitors to Google Play could use

81

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

this information to inform their own strategies relating to the form of payment options offered to users, potentially impacting user perception of Google Play's competitive offerings. This information could also be used by developers whose users do not transact, or minimally transact, with DCB, when entering into potential negotiations with Google Play.

251.    **Page 080, paragraph 228 (between "About" and "of the putative" and between "(at most)" and "in lower").** This text contains non-public and confidential information on the portion of U.S. consumers who spent less than $100 over the class period. This information is non-public. Disclosure of this information would severely and adversely impact Google's current competitive position because it would equip competitors with insight into the consumer spend habits they would otherwise not have access to. For example, public disclosure of this data could influence how app store competitors structure their business models or monetization strategies to better compete with Google.

252.    **Page 082, footnote 263 (between "identified" AND "major" and between "approximately" and "of").** This text contains non-public information regarding the amount of consumer spend comprised by developers who have entered into confidential programs that Google may offer to developers. This information is non-public. Even within Google, this confidential information is guarded, and not shared widely within the company outside those working on business development with developer partners and those in finance working on deal financials. Disclosure of this information would severely and adversely impact Google's current competitive position, as well as its ability to negotiate agreements in the future. For example, if this information is publicly disclosed, a potential counterparty could make quantitative inferences about the types of developers targeted by these programs, and demand an offer into these programs based on that developer's own characteristics.

253.    **Page 082, footnote 266 (between "there were" and "developers").** This information reflects internal, confidential data to Google regarding developers receiving a certain service fee from Google. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of U.S. developers receiving this service fee rate could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

254.    **Page 085, footnote 277 (between "DCB of" and "to" and between "in" and "in 2016").** This text contains confidential, non-public information relating to Google's costs of processing transactions, specifically the cost to Google of providing Direct Carrier Billing ("DCB"). This information is non-public. The disclosure of this information would cause significant competitive harm to Google Play. For example, if revealed, app store competitors to Google Play could use this information to inform their own strategies relating to the form of payment options offered to users, potentially impacting user perception of Google Play's competitive offerings. This information could also be used by developers whose users do not transact, or minimally transact, with DCB, when entering into potential negotiations with Google Play.

255.    **Page 085, footnote 277 (between "Google of" and "and cost," between "replicate of" and "and showing," between "Google of" and "and cost," and after "replicate of").** This text contains confidential, non-public information relating to Google's costs of processing transactions, specifically the cost to Google of providing Direct Carrier Billing ("DCB") and gift cards and the cost for developers to replicate (and provide DCB and gift cards). This information is non-public. The disclosure of this information would cause significant competitive harm to Google Play. For example, if revealed, app store competitors to Google Play could use this information to inform their own strategies relating to the form of payment options offered to users, potentially impacting user perception of Google Play's competitive offerings. This information could also be used by developers whose users do not transact, or minimally transact, with DCB, (or use gift cards) when entering into potential negotiations with Google Play.

83

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 290352E8-1B03-48FA-AF77-0C063102EBE4

256.     **Page 085, paragraph 244 (between "for" and "97%;" between "for" and ", and;" and between "of" and "sales").** This information contains the identity of non-party developers who distribute apps on Google Play, that, if disclosed, would reveal highly confidential details about the form of payment preferences of those developers' users on Google Play. This information is non-public. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them.

257.     **Page 086, footnote 280 (between "showing" and "of").** This information contains non-public and confidential data regarding the number of developers offering only non-game apps on Google Play during the respective period. This information is non-public. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, competitors of Google could use this information to inform their business strategies relating to developers and how to target those developers.

258.     **Page 088, paragraph 251 (between "rate" and "does").** This text contains non-public and confidential information regarding Google Play's internal assessment of its business model. This information reflects sensitive, highly confidential characterizations by Google's internal business teams that, if revealed, could be referenced by potential counterparties in negotiations with Google to gain an unfair advantage against Google.

259.     **Page 088, paragraph 252 (text from "considered a strategy of" to the end of the sentence).** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing business models contemplating an alternative service fee structure could

influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

260.     **Page 088, paragraph 252 (text from "could be different for" to the end of the sentence).** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing business models contemplating an alternative service fee structure could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

261.     **Page 088, paragraph 252 (text from "service fee rate reductions" to the end of the sentence).** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing business models contemplating an alternative service fee structure could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

262.     **Page 088, paragraph 252 (text from "service fee rate reductions" to the end of the sentence).**  This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing business models contemplating an alternative service fee structure could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

263.    **Page 089, paragraph 256 (between "2017," and "developers", and between "were" and "developers").** This text contains non-public and highly confidential information on the number of Google Play app developers who obtained service fee rates below 30% at two different points during the class period. This information is non-public. Even within Google, this confidential information is guarded, and not shared widely within the company outside those working on business development with developer partners and those in finance working on deal financials. Disclosure of this information would severely and adversely impact Google's current competitive position as well as its ability to negotiate agreements in the future. For example, if revealed, this information could be used by potential counterparties to challenge the scope or availability of Google Play's service fee programs, and undermine Google's ability to develop or modify such programs in the future.

264.    **Page 093, footnote 315. (between "for" and "97%;" between "for" and "and;" and between "all of" and the end of the sentence).** This information contains the identity of non-party developers who distribute apps on Google Play, that, if disclosed, would reveal highly confidential details about the form of payment preferences of those developers' users on Google Play. This information is non-public. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them.

265.    **Page 094, footnote 321 (between "describing that" and "would discourage spam").** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example,

86

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing a business model contemplating a specific service fee alternative could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

266.    **Page 094, footnote 322 (between "considered were" and ". Google", and from "also considered" to the end of the sentence).** This text contains non-public and confidential information regarding specific business models that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing business models contemplating specific service fee alternatives could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

267.    **Page 094, paragraph 269 (between "accounted for" and "of total").** This text describes the percentage of revenue generated from service fees, which is derived from Google's non-public, confidential financial data. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google.

268.    **Page 094, paragraph 270 (between "generated" and "in consumer;" between "were" and ". Peekya;" and between "were" and the end of the sentence).** This information contains non-public and confidential data regarding developer class representative Peekya's app on Google Play. This information is non-public. The developer identified in this

Paragraph has a reasonable expectation that Google will maintain the confidentiality of information relating to its apps while on Google Play. Revealing that information would harm Google's relationship with that developer (and potentially others), jeopardizing Google's future business opportunities with them.

269.    **Page 094, paragraph 270 (between "had charged" and ", Peekya", and between "would have paid" and "over the 25 months.").** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing a business model contemplating a specific service fee alternative could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

270.    **Page 094, paragraph 270 (from "could charge" to the end of the sentence).** This text contains non-public and confidential information regarding a specific business model that Google has considered. This information is non-public. If disclosed, this information could be used by Google's app store competitors to obtain a competitive advantage. For example, confidential information relating to alternative business models that Google is considering or has considered could influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing a business model contemplating a specific service fee alternative could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

271.    **Page 095, paragraph 270 (between "Google charged" and "compared to the fees").** This text contains non-public and confidential information regarding a specific business

1    model that Google has considered. This information is non-public. If disclosed, this information

2    could be used by Google's app store competitors to obtain a competitive advantage. For example,

3    confidential information relating to alternative business models that Google is considering or has

4    considered could influence how app store competitors structure their business models or what

5    monetization strategies those competitors pursue to compete with Google. In addition, revealing

6    a business model contemplating a specific service fee alternative could influence the negotiating

7    strategies and tactics employed by app developers and other current and prospective

8    counterparties with which Google does or may transact business.

9        272.   **Page 095, paragraph 271 (between "app with over" and "downloads and";**

10    **between "and about" and "in consumer spend"; between "Play charged" and ", LowTech**

11    **Studios'"; between "from about" and "(the actual"; between "to over" and ". The**

12    **calculation"; and from "assumes that the" to the end of the sentence).** This text contains

13    non-public and confidential information regarding a specific business model that Google has

14    considered. This information is non-public. If disclosed, this information could be used by

15    Google's app store competitors to obtain a competitive advantage. For example, confidential

16    information relating to alternative business models that Google is considering or has considered

17    could influence how app store competitors structure their business models or what monetization

18    strategies those competitors pursue to compete with Google. In addition, revealing a business

19    model contemplating a specific service fee alternative could influence the negotiating strategies

20    and tactics employed by app developers and other current and prospective counterparties with

21    which Google does or may transact business.

22        273.   **Page 096, paragraph 274 (from "fall to" and "and"; and from "to" to the**

23    **end of the sentence).** This text contains non-public and confidential information relating to the

24    service fee rates Google would charge in a but-for world according to Plaintiffs' class

25    certification expert, which are derived from Google's highly confidential transactional data. If

26    disclosed, these data points could be used by potential counterparties negotiating with Google as

27    a benchmark, weakening Google's competitive position.

28
89

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

274. **Page 096, paragraph 274 (from "would be" to the end of the sentence).** This text contains non-public and confidential information relating to the service fee rate Google would charge in a but-for world according to Plaintiffs' class certification expert, which is derived from Google's highly confidential transactional data. If disclosed, this data point could be used by potential counterparties negotiating with Google as a benchmark, weakening Google's competitive position.

275. **Page 097, paragraph 280 (between "developer" and "for"; between "of" and "unit sales"; between "is" and "share"; between "rate for" and "subscription"; and between "found" and "had").** This information contains the identity of a non-party developer who distributes its app on Google Play. The developer identified in this Paragraph has a reasonable expectation that Google will maintain the confidentiality of data relating to its apps' performance on Google Play. Revealing that data would harm Google's relationship with that developer (and potentially others), jeopardizing Google's future business opportunities with them.

276. **Page 098, paragraph 282 (before "service fee rate in Google"; between "January 2018" and "service"; between "that" and "did not"; and between "100%." and "did not").** This information contains the identity of a non-party developer who distributes its app on Google Play. The developer identified in this Paragraph has a reasonable expectation that Google will maintain the confidentiality of data relating to its app on Google Play. While the information here relates to public information about this developer's app price on Google Play, this discussion follows a Paragraph relating to the same developer that contains that developers' confidential information. Revealing the identity of the developer here would thus reveal its confidential information in preceding paragraphs. Revealing that data would harm Google's relationship with that developer (and potentially others), jeopardizing Google's future business opportunities with them.

277. **Page 099, footnote 344 (between "app" and "(app package"; between "name" and ") and"; between "IAPs in" and "(app"; between "name" and ") That is,";**

**between "That is", and "and"; and between "and" and "demonstrate").** This information contains the identities of non-party developers who distribute their apps on Google Play and the names of those developers' app packages distributed on Google Play. The developers identified in this Paragraph have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps' performance on Google Play. Revealing that data would harm Google's relationship with that developer (and potentially others), jeopardizing Google's future business opportunities with them.

278.    **Page 099, footnote 344 (between "SKU" and "The").** This information contains the identity of a non-party developer who distributes its app on Google Play. The developer identified in this Paragraph has a reasonable expectation that Google will maintain the confidentiality of data relating to its app on Google Play. While the information here relates to public information about this developer's app's prices and service fees on Google Play, this information precedes a discussion relating to the same developer that contains this developer's confidential information relating to its share of app category on Google Play. Revealing the identity of the developer here would thus reveal their confidential information in later discussions. Revealing that data would harm Google's relationship with this developer (and potentially others), jeopardizing Google's future business opportunities with them.

279.    **Page 099, footnote 344 (between "the" and "subscription").** This information contains the identity of a non-party developer who distributes its app on Google Play. The developer identified in this Paragraph has a reasonable expectation that Google will maintain the confidentiality of data relating to its app on Google Play. The information here contains the developer's confidential information relating to its share of app category on Google Play. Revealing the identity of the developer here would thus reveal their confidential information in later discussions. Revealing that data would harm Google's relationship with this developer (and potentially others), jeopardizing Google's future business opportunities with them.

280.    **Page 099, paragraph 287 (between "Similar to" and ", two;" between "class members," and "and;" between "and" and ", had;" between "both" and "and;" and**

DocuSign Envelope ID: 290352E8-1B03-485A-8E77-DC063102284

**between "and" and ", for").** This information contains the identities of non-party developers who distribute their app on Google Play. The developers identified in this Paragraph have a reasonable expectation that Google will maintain the confidentiality of data relating to its app on Google Play. While the information here relates to public information about these developer's apps' prices on Google Play, this Paragraph follows a discussion relating to the same developers that contains those developers' confidential information. Revealing the identities of the developers here would thus reveal their confidential information in preceding paragraphs. Revealing that data would harm Google's relationship with these developers (and potentially others), jeopardizing Google's future business opportunities with them.

281.    **Page 101, Figure 12 (between "Figure 12." and "Monthly Subscription" in the heading).** This information contains non-public and confidential data regarding developer-specific information derived from Google's transactional data. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by this developer's competitors, for example by influencing how they price their own apps. In addition, revealing this information could influence the negotiating strategies and tactics employed by this developer and other current and prospective counterparties.

282.    **Page 104, Table 8 (Last column of table below "Dr. Singer's Predicted Pass-Through Rate").** This information contains non-public and confidential data regarding developer-specific information derived from Google's transactional data. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by this developer's competitors, for example by influencing how they price their own apps.  In addition, revealing this information could influence the negotiating strategies and tactics employed by this developer and other current and prospective counterparties.

283.    **Page 109, paragraph 310 (between "For example" and "belongs"; between "98% for" and "(across all"; between "because" and "share of the Game"; between "2%." and "share of the Adventure"; between "pass-through rate for" and "is 57%"; and**

1   **between "43%." and "belongs to the Casual Game").** This information contains non-public

2   and confidential data regarding the share of the Game category that certain apps hold. This

3   information is non-public and the Google Play product team treats it as strictly confidential. If

4   publicly revealed, this information could influence the competitive decision-making and business

5   strategies employed by Google's app store competitors or competitor apps to the named apps in

6   this paragraph. In addition, revealing the identity of these apps and developers that distribute

7   apps on Google Play could influence the negotiating strategies and tactics employed by app

8   developers and other current and prospective counterparties with which Google does or may

9   transact business.

10          284.     **Page 111-12, paragraph 316 (between "rates for" and "a developer";**

11   **between "December 2020." and "another developer"; and between "period, and" and "an**

12   **app with paid downloads").** This figure identifies non-party developers and apps in showing

13   the pass-through rates over time for three developers. This information implicates non-parties'

14   confidentiality interests, by revealing the identities of Google's business partners, who are not

15   parties to this litigation, and who have a reasonable expectation that Google will maintain the

16   confidentiality of contractual terms.

17          285.     **Page 111, paragraph 314 (between "the developer" and "subscription**

18   **price"; between "predicts that if" and "service fee rate"; between "from 30% to" and "in**

19   **June 2017"; between "pass-through rate of" and "(as he claims)"; between "(as he**

20   **claims)," and "would change"; and between "its price to" and "and change").** This

21   information contains non-public and confidential data regarding the number of U.S. developers

22   that distribute apps on Google Play. This information is non-public and the Google Play product

23   team treats it as strictly confidential. If publicly revealed, this information could influence the

24   competitive decision-making and business strategies employed by Google's app store

25   competitors, for example by influencing how those app stores market themselves to U.S.

26   developers and how they distinguish themselves from Google Play in the eyes of U.S.

27   developers. In addition, revealing the number of U.S. developers that distribute apps on Google

28

1    Play could influence the negotiating strategies and tactics employed by app developers and other

2    current and prospective counterparties with which Google does or may transact business.

3        286.    **Page 112, Figure 14 (key at the bottom of the graphic).** This figure identifies

4    non-party developers and apps in showing the pass-through rates over time for three developers.

5    This information implicates non-parties' confidentiality interests, by revealing the identities of

6    Google's business partners, who are not parties to this litigation, and who have a reasonable

7    expectation that Google will maintain the confidentiality of contractual terms.

8        287.    **Page 112, footnote 384 (between "offered by" and "Inc." between "from"**

9    **and "all"; between "of" and "has"; between "of" and "both"; and between "by" and**

10   **"have list").** This information contains Google's service fee rates with three non-party app

11   developers. These service fee rates are non-public, and if revealed to competitors and potential

12   business counterparties, could be used to disadvantage Google. For example, if other app

13   developers (i.e. competitors to these three non-party app developers) became aware of this

14   information they could use it to inform their negotiation strategies and as leverage in negotiation

15   with Google (e.g. by demanding the same rates). The information also implicates non-parties'

16   confidentiality interests, by revealing the identities of Google's business partners, who are not

17   parties to this litigation, and who have a reasonable expectation that Google will maintain the

18   confidentiality of contractual terms.

19       288.    **Page 112, footnote 384 (between "offered by" and "Inc." between "from"**

20   **and "all"; between "of" and "has"; between "of" and "both"; and between "by" and**

21   **"have list").** This information contains Google's service fee rates with three non-party app

22   developers. These service fee rates are non-public, and if revealed to competitors and potential

23   business counterparties, could be used to disadvantage Google. For example, if other app

24   developers (i.e. competitors to these three non-party app developers) became aware of this

25   information they could use it to inform their negotiation strategies and as leverage in negotiation

26   with Google (e.g. by demanding the same rates). The information also implicates non-parties'

27   confidentiality interests, by revealing the identities of Google's business partners, who are not

28

parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

289.    **Page 117, footnote 398 (between "but" and "See Lim".).** The text describes the non-public confidential business purpose of Google Play's Play Points. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers. In addition, revealing the business reasons behind Play Points could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

290.    **Page 117, footnote 398 (between "rate is" and "rather" and between "of" and "The underlying").** This text describes the but-for service fee rates, which were calculated using Google's confidential data. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example influencing what app stores charge as service fees and how they distinguish themselves from Google Play in the eyes of developers.

291.    **Page 118, paragraph 341 (between "consumers, only" and "participate in the program" and between "no more than" and "redeem points").** This information contains non-public and confidential data regarding the number of U.S. consumers that participated in the Play Points program. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of U.S. consumers that participate in and have

1   redeemed Play Points could influence the negotiating strategies and tactics employed by app

2   developers and other current and prospective counterparties with which Google does or may

3   transact business.

4          292.   **Page 120, paragraph 348 (between "would fall" and "points to;" between**

5   **"to" and "and the rate;" between "would fall" and "to;" and between "to" and "Dr.**

6   **Singer's").** This text describes rates for developers' IAPs and paid apps that are derived from

7   Google's non-public, confidential financial data. If publicly revealed, this information could

8   influence the competitive decision-making and business strategies employed by Google's app

9   store competitors, for example by enabling Google's competitors to mimic its confidential

10  strategies in an effort to attract developers away from Google.

11         293.   **Page 121-22, paragraph 353 (between "tends to benefit" and "— those";**

12  **between "consumers that" and footnote 418; and starting after "by Google to" to the end**

13  **of the sentence).** This information contains non-public and competitively sensitive information

14  about Google Play Points. If publicly revealed, this information could influence the competitive

15  decision making and business strategies employed by Google's app store competitors, for

16  example by influencing how those app stores market themselves to app developers and/or

17  consumers and how they distinguish themselves from Google Play in the eyes of app developers

18  and/or consumers. In addition, revealing the business reasons behind Play Points could influence

19  the negotiating strategies and tactics employed by app developers and other current and

20  prospective counterparties with which Google does or may transact business.

21         294.   **Page 122, footnote 418 (text in parenthetical after "p. 22"; in parenthetical**

22  **after "p. 17"; and between "(GOOG-PLAY-000365029)." and "See Feng Dep.").** This

23  information contains Google's non-public and competitively sensitive information about

24  consumer spend on Google Play. If publicly revealed, this information could influence the

25  competitive decision making and business strategies employed by Google's app store

26  competitors. In addition, in revealing information about consumer spend on Google Play, the

27  information could influence the negotiating strategies and tactics employed by app developers

28

96

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1    and other current and prospective counterparties with which Google does or may transact

2    business.

3        295.    **Page 122, footnote 423 (between "The" and "Play Points redemption" and**

4    **between "Only" and "of U.S. consumers redeemed").** This information contains non-public

5    and competitively sensitive information about Google Play Points. If publicly revealed, this

6    information could influence the competitive decision making and business strategies employed

7    by Google's app store competitors, for example by influencing how those app stores market

8    themselves to app developers and/or consumers and how they distinguish themselves from

9    Google Play in the eyes of app developers and/or consumers. In addition, revealing the business

10   reasons behind Play Points could influence the negotiating strategies and tactics employed by

11   app developers and other current and prospective counterparties with which Google does or may

12   transact business.

13       296.    **Page 122, paragraph 354 (between "roughly" and "U.S. consumers";**

14   **between "only about" and "participated in Google Play Points"; and between "That is"**

15   **and "of U.S. consumers").** This information contains non-public and competitively sensitive

16   information about Google Play Points. If publicly revealed, this information could influence the

17   competitive decision making and business strategies employed by Google's app store

18   competitors, for example by influencing how those app stores market themselves to app

19   developers and/or consumers and how they distinguish themselves from Google Play in the eyes

20   of app developers and/or consumers. In addition, revealing the business reasons behind Play

21   Points could influence the negotiating strategies and tactics employed by app developers and

22   other current and prospective counterparties with which Google does or may transact business.

23       297.    **Page 122, paragraph 355 (between "at most" and "U.S. consumers" and**

24   **between "— about" and "U.S. consumers").** This information contains non-public and

25   competitively sensitive information about Google Play Points. If publicly revealed, this

26   information could influence the competitive decision making and business strategies employed

27   by Google's app store competitors, for example by influencing how those app stores market

28

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1   themselves to app developers and/or consumers and how they distinguish themselves from

2   Google Play in the eyes of app developers and/or consumers. In addition, revealing the business

3   reasons behind Play Points could influence the negotiating strategies and tactics employed by

4   app developers and other current and prospective counterparties with which Google does or may

5   transact business.

6   298.   **Page 123, paragraph 358 (between "was available, less than" and "of U.S.**

7   **consumers participated" and between "only up to" and "of U.S. consumers earned").** This

8   information contains non-public and competitively sensitive information about Google Play

9   Points. If publicly revealed, this information could influence the competitive decision making

10   and business strategies employed by Google's app store competitors, for example by influencing

11   how those app stores market themselves to app developers and/or consumers and how they

12   distinguish themselves from Google Play in the eyes of app developers and/or consumers. In

13   addition, revealing the business reasons behind Play Points could influence the negotiating

14   strategies and tactics employed by app developers and other current and prospective

15   counterparties with which Google does or may transact business.

16   299.   **Page 123, paragraph 359 (between "in the actual world, redeemed Play**

17   **Points accounted for about" and "of consumer spend"; between "would have been" and**

18   **footnote 428; between "Play Points redeemed accounted for about" and "of consumer**

19   **spend"; between "been nearly" and footnote 429; and between "nearly" and "times").** This

20   information contains non-public and competitively sensitive information about Google Play

21   Points. If publicly revealed, this information could influence the competitive decision making

22   and business strategies employed by Google's app store competitors, for example by influencing

23   how those app stores market themselves to app developers and/or consumers and how they

24   distinguish themselves from Google Play in the eyes of app developers and/or consumers. In

25   addition, revealing the business reasons behind Play Points could influence the negotiating

26   strategies and tactics employed by app developers and other current and prospective

27   counterparties with which Google does or may transact business.

28

300.    **Page 141, paragraph 5 (between "example" and "is;" between "But and "was formerly;" between "as" and "It originated;" between "San Francisco" and "has;" and between "almost" and "during").** This text identifies a non-party and describes their consumer spend during the class period. The identity of the non-party developer reveals Google's non-public data, and is confidential information. The consumer spend of a non-party is also confidential and has not been released publicly. If publicly revealed, this information could influence the competitive decision making and business strategies employed not only by Google's app store competitors, but also the non-party's app developer competitors.

301.    **Page 142, footnote 437 (between "developer" and "who"; between "as" and "who"; between "Both" and "and"; between "and" and "are identified in").** This text contains confidential , non-public information regarding non-party developers, which reveals how Google identifies and classifies app developer partners. The information also implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

302.    **Page 145, paragraph 6 (between "transaction is" and "but the"; between "cards is" and "and the average,";and between "DCB is" and "Since different").** This text contains confidential, non-public information relating to the range of Google's costs of processing transactions. This information is non-public. Disclosure of this information would adversely impact Google's current competitive position by enabling app developers to inform their negotiation strategies and as leverage in negotiations with Google based on their interest in providing particular transaction methods.

303.    **Page 146, paragraph 6 (between "hand" and "is"; between "of" and "Yet"; and between "Yet" and "has been").** This text includes confidential and non-public information of a third-party developer and reveals how Google geographically identifies app developer partners. The information also implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation, and

99

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1   who have a reasonable expectation that Google will maintain the confidentiality of contractual

2   terms.

3        304.    **Page 147, paragraph 10 (from "Project Hug offers" to the end of the**

4   **sentence; between "to spend over" and "on"; between "on" and "developers and**

5   **estimated"; and from "worth over" to the end of the sentence).** This information contains

6   specific commercially sensitive deal terms, including with specific developers, that could cause

7   Google competitive harm as well as reveal information identifying Google's business partners

8   and prime developer targets. Revealing this information would reveal specific deal terms and

9   business strategy, which could be used by counter-parties in negotiations seeking similar or

10   better terms and may cause significant harm to Google's competitive standing.

11        305.    **Page 148, Exhibit 1.** This exhibit contains information that reflects internal user,

12   transaction, or app performance data that could cause Google competitive harm if revealed. This

13   information is non-public and the Google Play product team treats it as strictly confidential. If

14   publicly revealed, this information could influence the competitive decision-making and business

15   strategies employed by Google's app store competitors. In addition, revealing the number of

16   apps, how many apps are free, and how many non-game apps there are on Play could influence

17   the negotiating strategies and tactics employed by app developers and other current and

18   prospective counterparties with which Google does or may transact business.

19        306.    **Page 155, Exhibit 8.** This exhibit identifies Google's confidential and non-public

20   deals with certain app developer partners in 2021. If publicly revealed, this information could

21   influence the competitive decision-making and business strategies employed by Google's app

22   store competitors, for example by influencing how those app stores market themselves to U.S.

23   developers and how they distinguish themselves from Google Play in the eyes of U.S.

24   developers. In addition, revealing the number of U.S. developers that Google Play offers certain

25   deals could influence the negotiating strategies and tactics employed by app developers and other

26   current and prospective counterparties with which Google does or may transact business. The

27   information also implicates non-parties' confidentiality interests, by revealing the identities of

28

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

Google's business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of contractual terms.  Google also seeks the following information to be sealed on behalf of third parties, as certain non-parties have represented that they treat such material as non-public and commercially sensitive but that they will not submit a declaration on behalf of their own interests because doing so would itself reveal confidential information (e.g. their identity as a participant in a particular Google program or as a counterparty to an agreement is not publicly known).

307.    **Page 157, Exhibit 10.** This exhibit describes Google's current, confidential, and non-public information revealing total numbers of developers in the putative class, developers' final consumer spend, and final Google revenue in 2021. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of U.S. developers that distribute apps on Google Play could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

308.    **Page 160, Exhibit 13 (left column under "Developers" and above "Top 30 Developers").** This exhibit identifies Google's app developer partners and describes their consumer spend, percentage of consumer spend, and cumulative percentage of consumer spend. If the identity of these developer partners was revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the developers identified alike. The information also implicates the non-party developer partners' confidentiality interests. Google's business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1   Google also seeks the following information to be sealed on behalf of third parties, as certain

2   non-parties have represented that they treat such material as non-public and commercially

3   sensitive but that they will not submit a declaration on behalf of their own interests because

4   doing so would itself reveal confidential information (e.g. their identity as a participant in a

5   particular Google program or as a counterparty to an agreement is not publicly known).

6       309.    **Page 161, Exhibit 14.** This exhibit identifies Google's app developer partners

7   and describes their consumer spend, percentage of consumer spend, and cumulative percentage

8   of consumer spend. If the identity of these developer partners was revealed to competitors and

9   potential business counterparties, they could use that information to disadvantage Google. For

10  example, if other app developers became aware of this information, they could use it to inform

11  their negotiation strategies and as leverage in negotiations with Google, to the detriment of

12  Google and the developers identified alike. The information also implicates the non-party

13  developer partners' confidentiality interests. Google's business partners, who are not parties to

14  this litigation, have a reasonable expectation that Google will maintain the confidentiality of

15  contractual terms.  Google also seeks the following information to be sealed on behalf of third

16  parties, as certain non-parties have represented that they treat such material as non-public and

17  commercially sensitive but that they will not submit a declaration on behalf of their own interests

18  because doing so would itself reveal confidential information (e.g. their identity as a participant

19  in a particular Google program or as a counterparty to an agreement is not publicly known).

20      310.    **Page 163, Exhibit 16.** This exhibit identifies Google's app developer partners

21  and describes their consumer spend, AdMob earnings, Observed Service Fee Rates, and

22  Effective Service Fee Rates. If the identity of these developer partners was revealed to

23  competitors and potential business counterparties, they could use that information to

24  disadvantage Google. For example, if other app developers became aware of this information,

25  they could use it to inform their negotiation strategies and as leverage in negotiations with

26  Google, to the detriment of Google and the developers identified alike. The information also

27  implicates the non-party developer partners' confidentiality interests. Google's business partners,

28

who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

311.     **Page 164, Exhibit 17 (Notes 1-2 between "[1]" and "are in both", and between "[2]" and "have non-US").**  The notes to this exhibit describe certain of Google's app developer programs and identify specific app developer partners. If the participants and details of these programs were to be revealed to Google's competitor app stores and potential business counterparties, they could use the information to the detriment of Google. For example, disclosure of this information would adversely affect Google's current competitive position by enabling other app developers on Google Play to leverage the information in negotiations with Google - to the detriment of Google and the identified developers alike. The information also implicates the non-party developer partners' confidentiality interests. Google's business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

312.     **Page 164, Exhibit 17 (Table).** This Exhibit reflects Google's non-public, confidential , and commercially sensitive data. This information is based on information that is internal to Google, and that would result in competitive harm to Google if disclosed.

313.     **Page 165-67, Exhibit 18 (all data, figures, and developer names in chart).** The text contains the identities and effective service fee rates, percent of service fees, and cumulative percent of service fees of non-party developers that account for 90% of Google Play's service fees, the disclosure of which could cause competitive harm to both the non-parties and to Google. For example, Google's competitors could use this confidential information to obtain a competitive advantage against Google with respect to financial deal terms offered to developers. Competitors could use this information to target these developers, or similar types of developers, and deprive Google of business opportunities with them. With respect to each developer, disclosure of its non-public, confidential participation in the Google Play program could negatively impact what terms it is offered by other platform operators.  Google also seeks the following information to be sealed on behalf of third parties, as certain non-parties have

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1    represented that they treat such material as non-public and commercially sensitive but that they

2    will not submit a declaration on behalf of their own interests because doing so would itself reveal

3    confidential information (e.g. their identity as a participant in a particular Google program or as a

4    counterparty to an agreement is not publicly known).

5        314.    **Page 168-170, Exhibit 19 (all data, figures, and developer names in chart).**

6    This confidential information contains the identities and consumer spend, service fees,

7    percentage of service fees, and cumulative percentage of service fees or non-party developers

8    that account for 90% of Google Play's service fees, the disclosure of which could cause

9    competitive harm to both non-party developers identified and to Google. For example, Google's

10   competitors could use this information to obtain a competitive advantage against Google with

11   respect to financial deal terms offered to developers. Competitors could use this information to

12   target these developers, or similar types of developers, and deprive Google of business

13   opportunities with them. With respect to each developer, disclosure of its non-public,

14   confidential participation in the Google Play program could negatively impact what terms it is

15   offered by other platform operators.  Google also seeks the following information to be sealed on

16   behalf of third parties, as certain non-parties have represented that they treat such material as

17   non-public and commercially sensitive but that they will not submit a declaration on behalf of

18   their own interests because doing so would itself reveal confidential information (e.g. their

19   identity as a participant in a particular Google program or as a counterparty to an agreement is

20   not publicly known).

21       315.    **Page 173, Exhibit 22 (Figures in Table and text in footnote 2 between**

22   **"October 2021 for" and "based on purchase").** This information contains non-public and

23   confidential data regarding consumer class representative's installation and purchase data on

24   Google Play. This information is non-public. The consumers identified in this Exhibit have a

25   reasonable expectation that Google will maintain the confidentiality of information relating to

26   their data generated while on Google Play. Revealing that information would harm Google's

27

28
104

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

relationship with those consumers (and potentially others), jeopardizing Google's future business opportunities with them.

316.    **Page 174, Exhibit 23 (Table).** This information contains non-public and confidential data regarding the amount of money U.S. consumers spent on Google Play between August 2016 and July 2, 2021. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. consumers and developers and how they distinguish themselves from Google Play in the eyes of U.S. consumers and developers. In addition, revealing the amount of money U.S. consumers spent on Google Play could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

317.    **Page 176, Exhibit 25 (Chart).** This information contains non-public and confidential data regarding monthly consumer spend for a third-party developer's app on Google Play. This information is non-public. The developer identified in this Paragraph has a reasonable expectation that Google will maintain the confidentiality of information relating to its apps on Google Play. Revealing that information would harm Google's relationship with that developer (and potentially others), jeopardizing Google's future business opportunities with them.

318.    **Page 177, Exhibit 26 (Table).** This Exhibit contains the ranges of service fee rates of Google's U.S. app developer partners from 2017 to 2021. This information is non-public and confidential, and if disclosed would put Google at a competitive disadvantage. For example, Google's competitors could use this information to replicate Google's business model, change how they market themselves to U.S. developers, and influence how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of U.S. developers that distribute apps on Google Play could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

319.     **Page 178, Exhibit 27 (Table).** This Exhibit contains the ranges of service fee rates of Google's U.S. app developer partners from 2017 to 2021. This information is non-public and confidential, and if disclosed would put Google at a competitive disadvantage. For example, Google's competitors could use this information to replicate Google's business model, change how they market themselves to U.S. developers, and influence how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of U.S. developers that distribute apps on Google Play could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

320.     **Page 190, Exhibit 39 (Table; footnote 2 between "for" and "is based"; footnote 4; and footnote 5 text after "plaintiff").** This information contains non-public and confidential data regarding consumer class representative's data related to spending on security applications on Google Play. This information is non-public. The consumers identified in this Exhibit have a reasonable expectation that Google will maintain the confidentiality of information relating to their data generated while on Google Play. Revealing that information would harm Google's relationship with those consumers (and potentially others), jeopardizing Google's future business opportunities with them.

321.     **Page 195, Exhibit 44 (text within "App Developer Name" and "App Package Name" columns and between "[2]} and "sold two subscriptions").** This Table identifies three of Google's non-party app developer partners and contains confidential information revealing Google's categorization of these apps and numbers of subscriptions sold, that if disclosed would put Google at a competitive disadvantage. For example, this information could influence how Google's app store competitors structure their business models and/or market themselves to U.S. app developers. The information also implicates non-parties' confidentiality interests. Google's business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

322.   **Page 196, Exhibit 45 (text within the table header identifying developers below "Pass-Through-Rate for Subscriptions").** This text identifies three of Google's non-party app developer partners and reveals confidential information based on data derived from their subscriptions. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The information also implicates non-parties' confidentiality interests. Google's business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

323.   **Page 197, Exhibit 46 (between "Rate of" and "Monthly Subscription"; between "SKU" and "[2] In the class"; and between "period" and "only").** This text identifies a non-party app developer partner of Google's, that when paired with a broader discussion of that developer implicates third-party confidential information, including the pass-through rates and percentage share of app categories internal to Google. If it were made public, this information could be used by Google's app store competitors to Google's detriment. For example, competitors could use this information to mimic Google's confidential strategies in an effort to attract developers away from Google. The information also implicates a non-party's confidentiality interests. Google's business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

324.   **Page 199, Exhibit 48 (between "Notes [1]" and "offers;" between "for SKU" and "had identical;" and between "period" and "only sold").** This text identifies a non-party app developer partner of Google's, that when paired with a broader discussion of that developer implicates third-party confidential information, including the pass-through rates and percentage share of app categories internal to Google. If it were made public, this information could be used by Google's app store competitors to Google's detriment. For example, competitors could use this information to mimic Google's confidential strategies in an effort to attract developers away from

107

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1  Google. The information also implicates a non-party's confidentiality interests. Google's business

2  partners, who are not parties to this litigation, have a reasonable expectation that Google will

3  maintain the confidentiality of contractual terms.

4      325.  **Page 199, Exhibit 48 (between "Rate of" and "Monthly").** This text identifies

5  a non-party app developer partner of Google's, that when paired with a broader discussion of that

6  developer implicates third-party confidential information, including the pass-through rates and

7  percentage share of app categories internal to Google. If it were made public, this information

8  could be used by Google's app store competitors to Google's detriment. For example, competitors

9  could use this information to mimic Google's confidential strategies in an effort to attract

10  developers away from Google. The information also implicates a non-party's confidentiality

11  interests. Google's business partners, who are not parties to this litigation, have a reasonable

12  expectation that Google will maintain the confidentiality of contractual terms.

13      326.  **Page 200, Exhibit 49 (between "Rate of" and "Monthly;" between "SKU**

14  **and "[2] In the class;" and between "period" and "only sold").** This text identifies a non-

15  party app developer partner of Google's, that when paired with a broader discussion of that

16  developer implicates non-party confidential information, including the pass-through rates and

17  percentage share of app categories internal to Google. If it were made public, this information

18  could be used by Google's app store competitors to Google's detriment. For example, competitors

19  could use this information to mimic Google's confidential strategies in an effort to attract

20  developers away from Google. The information also implicates a non-party's confidentiality

21  interests. Google's business partners, who are not parties to this litigation, have a reasonable

22  expectation that Google will maintain the confidentiality of contractual terms.

23      327.  **Page 204, Exhibit 53 (text in the "App" and "Product" columns and between**

24  **"Price for" and "on the developer's" and between "website" and "accessed" in Sources**

25  **[1]-[7]).** This text identifies seven non-party app developer partners of Google's, which when

26  paired with the pass-through rates discussed in the same exhibit, implicate non-party confidential

27

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

information internal to Google. Google's business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

328.    **Page 205, Exhibit 54 (Table).** This table identifies two non-party app developers and pass-through rates based on confidential, non-public Google data. Disclosure of this information would adversely impact Google's current competitive position by enabling Google's competitors to mimic its confidential strategies in an effort to attract developers away from Google. The information also implicates non-parties' confidentiality interests. Google's business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

329.    **Page 208, Exhibit 57 (between "class period" and "only sold").** This information implicates non-party app developer's confidentiality interests. Google's app developer business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms. This information would reveal details about the app developer's business on Play, which other app developers could use in their negotiations with Google, to Google and the app developer's disadvantage alike.

330.    **Page 208, Exhibit 57 (text within the "App Developer GAIA ID," "App Developer Name," "App Package Name," "Total Subscription Units Sold in App Category," "Developer Subscription Units Sold," "Developer's Share of Total Subscription Units Sold," "Pass-Through Rate for Subscriptions," and "But-for Price According to Singer's Pass-through & But-for Rate" columns).** This table contains confidential, non-public information of an app developer partner of Google, including the developer's identity and confidential, internal information related to the developer's subscriptions sold on Google Play. If that information were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it as leverage in their negotiations with Google, at the detriment of both Google and the app developer partner. Furthermore, Google's app developer

109

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

331.    **Page 209, Exhibit 58 (before "Paid App Download," between "Paid App Download" and "In-App Purchases," between "In-App Purchases" and "Subscriptions," between "downloads from" and "non-subscription," between "IAPs from" and "and subscription," and between "subscription IAPs from" and "for August").** This exhibit contains confidential, non-public information regarding app developer partners of Google, including the developers' identity and confidential, internal data related to subscriptions, In-App Purchases, and paid app downloads. If that information were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it as leverage in their negotiations with Google, at the detriment of both Google and the app developer partner. Furthermore, Google's app developer business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

332.    **Page 211, Exhibit 60 (all figures in table).** This table contains non-public and confidential data regarding the number of U.S. consumers that participated in the Play Points program and their spending. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of U.S. consumers that participate in and have redeemed Play Points could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

333.    **Page 212, Exhibit 61 (all figures in table).** This table contains non-public and confidential data regarding the number of U.S. consumers that participated in the Play Points

program and their spending. This information is non-public and the Google Play product team treats it as strictly confidential. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. In addition, revealing the number of U.S. consumers that participate in and have redeemed Play Points could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

334. **Page 214, Exhibit 63 (between "Rate of" and "Subscription" and between "rates for SKU" and "[2] Both Burtis").** This exhibit contains confidential, non-public information related to the subscription price and service fee rates of a non-party app developer partner of Google's. If disclosed in connection with the app developer's identity, both the app developer and Google would be impacted negatively. For example, the app developer's competitors could use the information as leverage in negotiations with Google, to the detriment of Google and the app developer alike. Further, this app developer is a business partner of Google, who is not a party to this litigation, and has a reasonable expectation that Google will maintain the confidentiality of contractual terms.

335. **Page 215, Exhibit 64 (between "Digital" and "Subscription" and between "rates for SKU" and "[2] Both Burtis").** This exhibit contains confidential, non-public information related to the subscription price and service fee rates of a non-party app developer partner of Google's. If disclosed in connection with the app developer's identity, both the app developer and Google would be impacted negatively. For example, the app developer's competitors could use the information as leverage in negotiations with Google, to the detriment of Google and the app developer alike. Further, this app developer is a business partner of Google, who is not a party to this litigation, and has a reasonable expectation that Google will maintain the confidentiality of contractual terms.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 13 [Dkt. No. 279-15]**
**(Exhibit A6)**

336.    **Exhibit 13, page -244 (non-party names in rows 2 and 4 of table).** This text contains the identities of non-party entities with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. If publicly revealed, this information could cause both Google and the non-party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 14 [Dkt. No. 279-16]**
**(Exhibit A7)**

337.    **Exhibit 14, page -831 (the names appearing after "Android Partnerships" and "Google Legal" at the top of the document; all addresses, phone numbers, and fax numbers in chart labeled "COMPANY CONTACT DETAILS"; text between "and" and " a company incorporated under"; between "the laws of" and "whose registered"; and between "office is at" and "("Company")"); page -835 (between "To the extent it is available and" and "sharing of it."); page -844 (between "Legal Department is" and "Except as otherwise"; and between "on that subject" and "Any amendment must be in writing."); page -845 (all names, signatures, and dates); page -847 (all numerical figures and percentages in both charts).** This text contains the identity of a non-party entity with whom Google had confidential conversations regarding a business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation. This text also contains confidential information regarding possible business terms, including financial terms, that Google discussed with that party. If publicly revealed, this information could cause both Google and the non-party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

112

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

338.     **Exhibit 14, page -845 (signatures in signature blocks).** The identified text identifies the signature of a current or former Google employee, as well as the signature of a non-party's employee, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 15 [Dkt. No. 279-17] (Exhibit A8)**

339.     **Exhibit 15, page -071 (names in the top right corner next to "Google SFD Rep", "Google Sales Engineer"; and "Google Legal Contact"; in the box, the name next to "COMPANY" as well as names, titles, and contact information listed in the rows entitled Attention, Title, Address..., and Email; the party name that starts the sentence until "a company incorporated"; between "under the laws of" and "whose registered"; and between "office is at" and "Company").** This text contains the identity, including contact information and address, of a non-party entity with whom Google executed a signed agreement. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation. This text also includes the names and contact information for both Google and the partner entity's employees and should be sealed to protect their individual privacy.

340.     **Exhibit 15, page -072, (section 1.12, between "agree that products or services of" and "and MVNOs"; between "fully controlled by" and "and provided that").** This text contains the identity of a non-party entity with whom Google executed a signed agreement. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation.

341.     **Exhibit 15, page -072, (section 1.13, between "means the sum of" and "of Ad Revenues").** This text contains confidential information regarding business terms, including financial terms, that Google agreed to with a non-party business partner in an executed contract. If publicly revealed, this information could cause both Google and the non-party competitive

113

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

342.     **Exhibit 15, page -080 (section 8.3, between "by Google (e.g., Company" and "MVNOs, provided the"; section 9.3, between "notice to" and "prior to making the change").** This text contains the identity of a non-party entity with whom Google executed a signed agreement. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation.

343.     **Exhibit 15, page -081 (between "one-time payment to" and "equal to"; from "equal to" through the end of that sentence).** This text contains the name of a non-party entity with whom Google executed a signed agreement. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation. This text also contains confidential financial terms that Google agreed to with the non-party in an executed contract. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

344.     **Exhibit 15, page -085 (between "being sent to" and "is"; from "is" through the end of that sentence).** This text contains the name of a non-party entity with whom Google executed a signed agreement, as well as the name and contact information for the entity's employee. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation. It should be sealed to protect both the entity and the privacy of its employees.

345.     **Exhibit 15, page -086 (section 16.6, between "Exhibit C and" and "which are wholly owned"; between "provided that (i) only" and "shall be provisioned"; between "MVNOs and for" and "under this Agreement"; between "in equity against" and "The parties may"; between "and additional" and "to this Agreement").** This text contains the identities of wholly-owned subsidiaries of a non-party entity with whom Google executed a signed agreement. As such, it identifies the entity itself. This information implicates non-parties'

114

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation.

346.   **Exhibit 15, page -087 (signatures in signature blocks).** The identified text identifies the signature of a current or former Google employee, as well as the signature of a non-party's employee, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

347.   **Exhibit 15, page -087, (signatures, names, titles, and dates).** This text contains the signatures, names and titles for both Google and the partner entity's employees and should be sealed to protect their individual privacy.

348.   **Exhibit 15, page -091 (section 1, between "shall pay Company" and "of Net Ad Revenue"; and the figures in the right-hand column of the chart entitled Revenue Share for Android and Non-Android Devices).** This text contains confidential financial terms that Google agreed to with a non-party entity in an executed contract. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

349.   **Exhibit 15, page -092 (section 9, all names listed under "MVNOs").** This text contains the identities of wholly-owned subsidiaries of a non-party entity with whom Google executed a signed agreement. As such, it identifies the entity itself. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's business partners, who are not parties to this litigation.

350.   **Exhibit 15, page -094 (the figures in both columns in the row called Direct Carrier Billing in table 1; the figures in both columns in the row called Direct Carrier Billing in table 2).** This text contains confidential financial terms that Google agreed to with a non-party entity in an executed contract. If publicly revealed, this information could cause

Google competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

351.    **Exhibit 15, page -095 (section 3.1, between "will withhold" and "of the DCB").** This text contains confidential financial terms that Google agreed to with a non-party entity in an executed contract. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 16 [Dkt. No. 279-18] (Exhibit A9)**

352.    **Exhibit 16, page -601 (signatures in signature blocks).** The identified text identifies the signature of a current or former Google employee, as well as the signature of a non-party's employee, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

353.    **Exhibit 16, page -601, paragraph 1 (between "between" and "and Google" (first instance); and between "between" and "and Google" (second instance)).**  This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

354.    **Exhibit 16, page -603 (in the sentence below the first table: between "paid the" and "Net GTV"; and between "Net GTV and the" and "DCB Transaction fee).** This text reflects specific, confidential deal terms, including financial terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

355. **Exhibit 16, page -603 (in the sentence below the second table: between "paid the" and "Net GTV"; and between "Net GTV and the" and "DCB Transaction fee).** This text reflects specific, confidential deal terms, including financial terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

356. **Exhibit 16, page -603 (the entire table after paragraph 1).** This table reflects specific, confidential deal terms, including financial terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

357. **Exhibit 16, page -603 (the entire table after paragraph 2).** This table reflects specific, confidential deal terms, including financial terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

358. **Exhibit 16, page -603 (the entire table after paragraph 3).** This table reflects specific, confidential deal terms, including financial terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 17 [Dkt. No. 279-19] (Exhibit A10)**

359. **Exhibit 17, page -896 (signatures in signature blocks).** The identified text identifies the signature of a current or former Google employee, as well as the signature of a non-party's employee, and no public interest is served by the public disclosure of this sensitive,

117

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

360.     **Exhibit 17, page -900 (from "two (2) week's written notice to" through the end of that sentence; between "If" and "believes that Google"; between "then" and "may escalate.").** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

361.     **Exhibit 17, page -901 (paragraph (e), between "during the Term" and "of the Ad"; between "not to exceed" and "per active user"; and between "to a cap of" and "of aggregate.").** This text reflects specific, confidential deal terms of an agreement between Google and a non-party entity. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

362.     **Exhibit 17, page -901 (paragraph (g), between "query and it is" and "responsibility"; between "ensure the" and "is installed on.").** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

363.     **Exhibit 17, page -902 (paragraph (j), from "OEM and/or" to the end of that sentence; and paragraph (k), from "upon notice to" to the end of that sentence).** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing

118

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

364.     **Exhibit 17, page -903 (paragraph 2(b), between "during the Term" and "shall receive"; between "shall receive" and "of the Net Ad Revenues"; between "for October 2014" and "shall receive"; between "shall receive" and "of the Net Ad Revenues "; between "for November 2014" and "shall receive"; between "shall receive" and "of the Net Ad Revenues"; between "for December 2014" and "shall receive"; between "shall receive" and "of the Net Ad Revenues"; between "for January 2015" and "shall receive"; between "shall receive" and "of the Net Ad Revenues"; between "for February 2015" and "shall receive"; between "shall receive" and "of the Net Ad Revenues"; between "for March 2015" and "shall receive"; between "shall receive" and "of the Net Ad Revenues"; between "for April 2015" and "shall receive"; and between "shall receive" and "of the Net Ad Revenues.").** This text reflects the specific non-party entity with whom Google reached an agreement. It also reflects specific, confidential deal terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

365.     **Exhibit 17, page -903 (paragraph 2(e), between "will not apply to" and "bookmarking").** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

366.     **Exhibit 17, page -904 (paragraph 2(g), between "notified to Google by" and "for that purpose"; paragraph 2(h), between "or require" and "to pay to Google" and between "may have overpaid to" and "in prior periods"; paragraph 2(i), between "excess of" and "of", between "advance written notice to" and "together with reasonable**

119

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48EA-8F77-DC062102?BE4

support"; between "existing" and "costs", between "avoidance of doubt" and "shall not be liable", from "are payable to" through the end of the sentence; paragraph 2(j), between "payments due to" and "for the applicable percentage"; between "foreign currency will be" and "responsibility", and between "Google will provide" and "with a report"). This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

367.    **Exhibit 17, page -905, "General Web Search Access Points for Directed Traffic" Table (last row of table from "under this Agreement with" through the end of the sentence).** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

368.    **Exhibit 17, page -907 (paragraph (c), between "end users through" and "billing system").** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

369.    **Exhibit 17, page -907 (paragraph (e), between "including applications downloaded by" and "Customers from a Web-based").** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

370. **Exhibit 17, page -910 (section 1, between "DCB:" [first instance] and "of GTV" [first instance]; between "Debit Card" [first instance] and "of GTV" [second instance]; between "DCB:" [second instance] and "of GTV" [third instance]; between "Debit Card" [second instance] and "of GTV" [fourth instance]; between "DCB:" [third instance] and "of GTV" [fifth instance]; and between "Debit Card" [third instance] and "of GTV" [sixth instance]).** This text reflects specific, confidential deal terms of an agreement between Google and a non-party entity. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

371. **Exhibit 17, page -910 (section 2, between "DCB:" [first instance] and "of GTV" [first instance]; between "Debit Card" [first instance] and "of GTV" [second instance]; between "DCB:" [second instance] and "of GTV" [third instance]; between "Debit Card" [second instance] and "of GTV" [fourth instance]; between "prior written notice to" and "upon providing to"; between "upon providing to" and "reasonable support for such reduction"; between "DCB:" [third instance] and "of GTV" [fifth instance]; and between "Debit Card" [third instance] and "of GTV" [sixth instance]).** This text reflects the specific non-party entity with whom Google reached an agreement. It also reflects specific, confidential deal terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

372. **Exhibit 17, page –897-98, paragraph 8 (from "deleted and replaced with the following:" through the end of that sentence).** This text reflects the specific non-party entity with whom Google reached an agreement. It also reflects specific, confidential deal terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in

121

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

373.     **Exhibit 17, page –897, paragraph 2 (between "each as notified to" and "and available at"; between "available for purchase by" and "or its authorized agents"; between "but if" and "believes that Google is"; between "then" and "may escalate the issue"; between "will require" and "to give Google control.").** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

374.     **Exhibit 17, page –897, paragraph 6 (between "the reference to" and "is hereby" and from "replaced with" through the end of that sentence).** This text reflects specific, confidential deal terms, including financial terms. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

375.     **Exhibit 17, page –898, paragraph 11 (the very first word in the sentence; between "notice sent to" and "in accordance with"; and the names, addresses, email addresses, and phone numbers of both individuals in that paragraph).** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing. Further, this information also includes the names and contact information of the partner entity's employees and should be sealed to protect their individual privacy.

376.     **Exhibit 17, page –898, paragraph 12 (the very first word in the sentence; and the titles, names, email addresses, and phone numbers of the three individuals in that**

**paragraph).** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing. Further, this information also includes the names and contact information of the partner entity's employees and should be sealed to protect their individual privacy.

377. **Exhibit 17, page –898, paragraph 13 (the titles, names, email addresses, and phone numbers of the three individuals in that paragraph).** This text reflects the names and contact information of Google employees and should be sealed to protect their individual privacy.

378. **Exhibit 17, page 1 (between "Amendment Five to the" and "Google Co"; between "further amends that" and "Google Co; between "Google Inc. ("Google") and" and "dated October 1"; and the names, titles, and signatures at the bottom of the page).** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing. Further, this information also includes the names and signatures of Google's and the partner entity's employees and should be sealed to protect their individual privacy.

379. **Exhibit 17, pages -896-910, bottom left corner of each page (between "Google and" and "Proprietary and Confidential").** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

380. **Exhibit 17, pages -898 and -899 (email usernames; phone numbers in signature blocks).** The identified text identifies the email usernames and phone numbers of

123

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

current or former Google employees and employees of non-parties, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

381.    **Exhibit 17, pages -905-06 (paragraph 3(a), between "with regard to Devices" and "will be entitled"; paragraph 3(b), between "Net Ad Revenues for a Device if" and "ensures that the Authorized OEM" and between "of the Google Application, and (ii)" and "will require OEMs"; and paragraph 3(c), between "to pay Net Ad Revenues if" and "ensures that all Devices").** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

382.    **Exhibit 17, pages -907-08 (paragraph (g). Between "including applications downloaded by" and "Customers from a Web-based").** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

383.    **Exhibit 17, pages -908-09 (section 1.2, between "Net GTV," and "shall ensure"; section 1.3, between "agrees to place a" and "folder of applications"; section 1.4, between "shall provide to" and "two reports," and between "Google will pay" and "the Net GTV by the end"; section 1.5, between "Google shall pay" and "Net GTV," between "currencies notified to" and "by Google," and from "the responsibility of" through end of sentence; section 1.6, between "from Google to" and "may be made by"; section 1.7, between "requirements in order to pay" and "Net GTV," and between "will be notified to" and "in advance"; section 1.8, between "tax purposes" and "and each of its Affiliates,"**

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

**between "Beneficiary name, and" and "Tax ID Number," between "delays of any payments due" and "will not receive Net GTV," and between "the above information" and "must ensure that its bank"; and section 1.9, between "payment transaction, either" and "shall refund the Net GTV," and from" payable by Google to" through end of sentence).** This text reflects the specific non-party entity with whom Google reached an agreement. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 18 [Dkt. No. 279-20] (Exhibit A11)**

384.    **Exhibit 18, page -103 (signatures in signature blocks).** The identified text identifies the signature of a current or former Google employee, as well as the signature of a non-party's employee, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

385.    **Exhibit 18, page -106 (section 1, between "DCB:" [first instance] and "of GTV" [first instance]; between "Debit Card" [first instance] and "of GTV" [second instance]; between "DCB:" [second instance] and "of GTV" [third instance]; between "Debit Card" [second instance] and "of GTV" [fourth instance]; between "DCB:" [third instance] and "of GTV" [fifth instance]; and between "Debit Card" [third instance] and "of GTV" [sixth instance]).** This text reflects specific, confidential deal terms of an agreement between Google and a non-party entity. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners, terms, and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

386.    **Exhibit 18, page -106 (section 2, between "DCB:" [first instance] and "of GTV" [first instance]; between "Debit Card" [first instance] and "of GTV" [second**

125

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1   instance]; between "DCB:" [second instance] and "of GTV" [third instance]; between

2   "Debit Card" [second instance] and "of GTV" [fourth instance]; between "prior written

3   notice to" and "upon providing to"; between "upon providing to" and "reasonable

4   support for such reduction"; between "DCB:" [third instance] and "of GTV" [fifth

5   instance]; and between "Debit Card" [third instance] and "of GTV" [sixth instance]).** This

6   text reflects the specific non-party entity with whom Google reached an agreement. It also

7   reflects specific, confidential deal terms. Were this information to be publicly revealed, it could

8   cause Google competitive harm by revealing specific partners, terms, and business strategy,

9   which could be used by counter-parties in negotiations seeking similar or better terms and may

10  cause significant harm to Google's competitive standing.

11       387.   **Exhibit 18, pages 103-105 (between "Amendment Six to the" and "Google

12  Co"; between "further amends that" and "Google Co"; between "Google Inc. ("Google")

13  and" and "dated October 1, 2009"; and the names, titles, and signatures at the bottom of

14  the page).** This text reflects the specific non-party entity with whom Google reached an

15  agreement. Were this information to be publicly revealed, it could cause Google competitive

16  harm by revealing specific partners and business strategy, which could be used by counter-

17  parties in negotiations seeking similar or better terms and may cause significant harm to Google's

18  competitive standing.

19       **Consumer Plaintiffs' Motion for Class Certification – Exhibit 19 [Dkt. No. 279-21]
20                                  (Exhibit A12)**

21       388.   **Exhibit 19, page -046 (between "earlier." and "Does this help clarify?";

22  entire table at the bottom of page).** This text contains confidential information regarding

23  possible business terms, including financial terms, that Google discussed with a non-party. If

24  publicly revealed, this information could cause both Google and the non-party competitive harm

25  by giving other parties insight into Google's business and negotiation strategy and a competitive

26  advantage over Google in ongoing or future business negotiations.

27

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

389.     **Exhibit 19, page -046, -047, -048, -049 (email usernames).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

390.     **Exhibit 19, page -047 (between "referring to." and "Let me know"; "run the change by" and "here are my thoughts"; "to ensure" and "Thanks again Joan." Page -048 between "couple of questions." and "Joan"; "questions on the" and "as well"; "approved the" and "yesterday;" "Makes sense" and "Thanks Ted"; "What happens to" and end of sentence. Page -049 between "redline from" and "after bird-dogging"; "the broad strokes)" and "we are aiming.").** This text contains the identity of a non-party entity with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. This text also contains confidential information regarding possible business terms, including financial terms, that Google discussed with that party. If publicly revealed, this information could cause both Google and the non-party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 20 [Dkt. No. 279-22] (Exhibit A13)**

391.     **Exhibit 20, page -444 (all values in chart);  page -445 (entire graphic on slide);  page  -446 (two charts at bottom of page;  pages -447 and -448 (entire chart on slide and all dollar values; highlighted text in speaker notes section); page -449 (entire bar chart); page -450 (between "Ramping" and TVCs; "to ramp" and "TVCs" and "app reviews" and "in '18 investment");  page -452 (chart underneath "potential impact"; highlighted text underneath chart;  percentage and absolute values in "speaker notes"**

127

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

**section; between "does" and "cover?" and "link; text after "ex. JP");  page -453 (chart under "Play Revenue Loss" and numerical and dollar values in text below slide);  page -454 (all dollar figures and percentages);  page -456 (charts and logos on slide; deal terms and percentages in text under slide);  page -461 (entire chart);  pages -462 to -465 (all financial figures and charts);  pages -466 to -467 (all financial figures and charts on slide and text underneath; text next to "research economy," "corp eng," and "Privacy and Security" bullets); page -468 (all financial figures besides "2.0B," "210M," 11%," "56%," and "88%").**  This text contains confidential information including data on high value users, user churn rates, expenses, profits, financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed.  Disclosure of this information would severely and adversely impact Google's current competitive position.  For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions.  This text also contains the identity of a non-party entities with whom Google had confidential conversations regarding a proposed business deal.  This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.  If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.  Google also seeks the following information to be sealed on behalf of third parties, as certain non-parties have represented that they treat such material as non-public and commercially sensitive but that they will not submit a declaration on behalf of their own interests because doing so would itself reveal confidential information (e.g. their identity as a participant in a particular Google program or as a counterparty to an agreement is not publicly known).

128

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1802-48FA-8F77-DC0621022BE4

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 22 [Dkt. No. 279-24] (Exhibit A14)**

392.    **Exhibit 22, page -178 (highlighted text).**  Google seeks the following information to be sealed on behalf of third parties, as certain non-parties have represented that they treat such material as non-public and commercially sensitive but that they will not submit a declaration on behalf of their own interests because doing so would itself reveal confidential information (e.g. their identity as a participant in a particular Google program or as a counterparty to an agreement is not publicly known).

393.    **Exhibit 22, pages -162, -164 to -167, -170 to -172, -175, and -180 (highlighted dollar figures and percentage values).**  This text contains highly-sensitive, confidential, non-public deal terms and financial data relating to the specific terms of Google's agreements with certain business partners in the advertising context.  Disclosure of this information would severely and adversely impact Google's current competitive position with respect to Google's competitors and its existing and potential business partners.  For example, if this information is disclosed publicly, a competing app store or OS could use this information to model or structure its own costs and product offering in an effort to unfairly match or beat Google's advertising products and services.  Disclosure could also influence the competitive decision-making and business strategies employed by Google's competition by influencing how those app stores tailor their strategies to unfairly compete with Google.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 23 [Dkt. No. 279-25] (Exhibit A15)**

394.    **Exhibit 23, page -375 (below table, bottom of page, material following "Company:", "By:", "Name", and "Title:").**  This text reflects the specific non-party entity with whom Google reached an agreement, and that entity's identifying and employee information. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

competitive standing. Further, this information also includes the names and contact information of the partner entity's employees and should be sealed to protect their individual privacy.

395.   **Exhibit 23, page -375 (part 1, right column, all information following colons; part 3, right column, information following "Company:").** This text reflects the specific non-party entity with whom Google reached an agreement, and that entity's identifying information. Were this information to be publicly revealed, it could cause Google competitive harm by revealing specific partners and business strategy, which could be used by counter-parties in negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing. Further, this information also includes the names and contact information of the partner entity's employees and should be sealed to protect their individual privacy.

396.   **Exhibit 23, page -375 (signature in signature block; text between "Attn: and "Fax:"; between "Fax:" and "Email:"; and text immediately after "Email:").** The identified text identifies the signature, email username, fax number, and phone number of an employee of a non-party, and no public interest is served by the public disclosure of this sensitive, personal information. This employee has a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

397.   **Exhibit 23, page -376 (signature in signature block).** The identified text identifies the signature of a current or former Google employee, and no public interest is served by the public disclosure of this sensitive, personal information. This employee has a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 24 [Dkt. No. 279-26] (Exhibit A16)**

398.   **Exhibit 24, page -342 (between "by and between" and "a"; "a" and "corporation").** This text reflects specific commercially sensitive deal terms (including with specific developers) that could cause Google competitive harm as well as reveal information identifying Google's business partners and prime developer targets. This information, if disclosed, would reveal specific deal terms and business strategy, which could be used by

1   counter-parties in negotiations seeking similar or better terms and may cause significant harm to

2   Google's competitive standing.

3         399.   **Exhibit 24, page -342 (Chart, after "Company" in title line; redact all text in**

4   **the column below "Company Contact Information"; in the column below "Company**

5   **Technical Contact"; and in the Column below "Company Legal Notices to").** This text

6   reflects specific commercially sensitive deal terms (including with specific developers) that

7   could cause Google competitive harm as well as reveal information identifying Google's

8   business partners and prime developer targets. This information, if disclosed, would reveal

9   specific deal terms and business strategy, which could be used by counter-parties in negotiations

10  seeking similar or better terms and may cause significant harm to Google's competitive standing.

11        400.   **Exhibit 24, page -342 (email usernames).** The identified text identifies the

12  email usernames of current or former non-party employees, and no public interest is served by

13  the public disclosure of this sensitive, personal information. These employees have a reasonable

14  expectation of privacy that would be infringed upon if this information were to be made public.

15        401.   **Exhibit 24, page -343 (between "means a" and "specified"); page -347**

16  **(between "process" and "may"); and page -349 (section 3.10(d), between "If" and "wishes**

17  **to"; and between "to have" and "own apps"); and page -359 (between "Effective Date."**

18  **and "Google Inc.").** This text would reveal information identifying Google's business partners

19  and prime developer targets. This information, if disclosed, would reveal specific deal terms and

20  business strategy, which could be used by counter-parties in negotiations seeking similar or

21  better terms and may cause significant harm to Google's or the non-party's competitive standing.

22        402.   **Exhibit 24, page -359 (name at top of left signature block (after "Effective**

23  **Date").** This text reflects specific commercially sensitive deal terms (including with specific

24  developers) that could cause Google competitive harm as well as reveal information identifying

25  Google's business partners and prime developer targets. This information, if disclosed, would

26  reveal specific deal terms and business strategy, which could be used by counter-parties in

27

28

131

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

negotiations seeking similar or better terms and may cause significant harm to Google's competitive standing.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 25 [Dkt. No. 279-27] (Exhibit A17)**

403.    **Exhibit 25, page -214 (graph on left figures before "of Play in Dec" and "of Play after Dec"; third bullet on right between "ARR=" and "or" and "of Play").** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions.

404.    **Exhibit 25, page -216 (between "top developers e.g.," and "to ensure"; and between "3rd party stores e.g.," and "Multiple cashback").** This text contains the identity of a non-party entity with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

405.    **Exhibit 25, page -224 (between "from IN" and "of IN Play"; "top 100 games" and "of Play KR revenue"; "in JP" and "of Play JP rev"; full box underneath box starting with "Excludes lots of other alternatives").** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions.

406.     **Exhibit 25, page -225 (between "with high user" and "of revenue from".** **Slide at page -227, between "siphoning" and "revenue"; full graphic/chart underneath "Existing JP Amazon Revenue").** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions.

407.     **Exhibit 25, page -228 (email username).** The identified text identifies the email username of a current or former Google employee, and no public interest is served by the public disclosure of this sensitive, personal information. This employee has a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 26 [Dkt. No. 279-28] (Exhibit A18)**

408.     **Exhibit 26, page -471 (between "From past negotiations" and "views home/home placement").** This text contains the identity of a non-party entity with whom Google was in business negotiations. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

409.     **Exhibit 26, page -471 (between "specifically non-China devices..." and "and we don't pay a Play revenue"; between "I'm wondering what we could ask of" and "(or any other OEM)"; and between "Don't we already require it for" and "devices?").** This text contains the identity of a non-party entity with whom Google was in business negotiations. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. This text also contains confidential information regarding business terms that Google agreed to with a non-party business partner. If publicly revealed, this information could cause both Google and the non-

133

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

410.     **Exhibit 26, pages -471, -472 (email usernames).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 28 [Dkt. No. 279-30] (Exhibit A19)**

411.     **Exhibit 28, page -771 (all figures and values in chart).** This text reflects confidential Google financial information, including specific metrics for Google Play's performance and size in various markets. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves and which regions or markets to focus their efforts on.

412.     **Exhibit 28, page -775 (blue text under "Magical Bridge" and black text underneath "Assessing: Thinking through models").** This text reveals specific details about Google's ongoing projects and strategy in connection with specific Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and allowing them to alter their business tactics accordingly.

413.     **Exhibit 28, page -789 (the two large green figures on the left and middle of slide); page -790 (between "only" and "Play users" and "last month" and "of Play users").** The text reveals metrics for the rate active users download games from Play, the daily minutes they spend playing games, and the rate they spend money on games. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market

themselves to specific users to maximize consumer spending and compete more effectively with Play.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 29 [Dkt. No. 279-31] (Exhibit A20)**

414.     **Exhibit 29, page -946 (between "Spend" and "in total in 2020" and "over current trajectory) growing to" and "in 2023 across Search and Play for carriers and" and "OEMs to secure"; "RSA to secure" and "& gesture at scale"; "We propose offering up to 16% Play Apps & Games and Ads rev share to OEMs" and "to key CN OEMs" and "to smaller OEMs), spending est." and "in 2020 and up to" and "in 2023 (steady state) in addition to the bonus tier of current RSA to secure Play exclusivity" until end of sentence; "offering additional" and "to most"; "total of" and "for" and "and" and "to incentivize"; "EEA" and "and" and "actively pursuing deals for" and "on devices not covered by RSA (e.g." until end of sentence).** This text reflects confidential, non-public proposed terms with a potential non-party partner as well as Google's business strategy considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business negotiations. This text also contains the identity of non-parties with whom Google was in business negotiations. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

415.     **Exhibit 29, page -947 (between "China & India, e.g." and "iOS users"; "move all current" and "RSA partners"; "urgency to switch" and "to stock UI"; "earning an estimated" and "in revenue"; "revenue share of" and "(TAC)"; "revenue share of" and "to be paid"; "revenue share of" and "(TAC)"; "(2020-2021 below)" and "incremental payment"; "Increased device enrollment" and "Mix shift" and "Increase in revenue share rate" and "Carriers" and "Introduction of Play payment" and "to be paid out"; "steady state in 2023" and "incremental payment"; "Increased device enrollment"**

135

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

and "Mix shift" and "Increase in revenue share rate" and "Carriers" and "Introduction of Play payment" and "to be paid out"; all text in bottom two rows of chart). This text reflects confidential, non-public proposed terms with a potential non-party partner as well as Google's business strategy considerations and internal financial and revenue figures. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business negotiations. This text also contains the identity of non-parties with whom Google was in business negotiations. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

416. **Exhibit 29, page -948 (all text in boxes underneath "Description" and "Mitigation"; all values and figures underneath "Financial overview").** This text reflects confidential, non-public Google's business strategy considerations and internal financial and revenue figures. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business negotiations.

417. **Exhibit 29, page -950 (between "services growth (e.g." and "Introduces a meaningful services").** This text reflects confidential, non-public proposed terms with a potential non-party partner as well as Google's business strategy considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business negotiations. This text also contains the identity of non-parties with whom Google was in business negotiations. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

418. **Exhibit 29, pages -946, -948, -949, -950, -951 (email usernames).** The identified text identifies the email usernames of current or former Google employees, and no

136

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 30 [Dkt. No. 279-32] (Exhibit A21)**

419. **Exhibit 30, page -462 (between "experience on Android" and "launched first devices").** This text contains the identity of non-parties with whom Google was in business negotiations. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. This text also contains confidential information regarding business terms that Google agreed to with a non-party business partner. If publicly revealed, this information could cause both Google and the non-party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

420. **Exhibit 30, page -463 (between "Optimized Tier" and "of Search," and "Premier Tier" and "Search on"; all text within rows of the chart; all text to the right of the chart).** This text reflects confidential, non-public proposed terms with a potential non-party partner as well as Google's business strategy considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business negotiations.

421. **Exhibit 30, page -465 (between "preloaded on" and "of GMS devices"; "makes up" and "of incremental"; "For" and "Assistant HW"; all values in the chart on the right).** This text reflects confidential, non-public proposed terms with a potential non-party partner as well as Google's business strategy considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1   negotiations. This text also contains the identity of non-parties with whom Google was in

2   business negotiations. This information implicates non-parties' confidentiality interests, by

3   revealing the identities of Google's potential business partners, who are not parties to this

4   litigation. Google also seeks the following information to be sealed on behalf of third parties, as

5   certain non-parties have represented that they treat such material as non-public and commercially

6   sensitive but that they will not submit a declaration on behalf of their own interests because

7   doing so would itself reveal confidential information (e.g. their identity as a participant in a

8   particular Google program or as a counterparty to an agreement is not publicly known).

9       422.    **Exhibit 30, page -467 (all text in the last two rows in the chart next to**

10  **"05/11/2020 23:40:24").** This text reflects confidential, non-public proposed terms with a

11  potential non-party partner as well as Google's business strategy considerations. If publicly

12  revealed, this information could cause Google competitive harm by giving other parties insight

13  into Google's business strategy and a competitive advantage over Google in ongoing or future

14  business negotiations.

15      423.    **Exhibit 30, page -474 (between "spend" and "to cover" and "in key**

16  **financial"; "exposing" and "of annual Google"; "contributing to" and "of Google**

17  **revenue"; "browsers exposing" and "of Google revenue"; "that account for" and "of**

18  **Androids"; "happens on" and "Amazon Prime"; "growing" and "Y/Y"; "putting" and**

19  **"of Play revenue"; all figures under "Hedged ('23F)").**  This text contains confidential

20  information including financial details and revenue figures that Google has not disclosed.

21  Disclosure of this information would severely and adversely impact Google's current

22  competitive position. For example, if this information is publicly disclosed, an app store

23  competitor could use this information to model or structure its own costs in an effort to match or

24  beat Google's revenue.

25      424.    **Exhibit 30, page -475 (between "investing" and "per device to get" and**

26  **"devices"; "on Android" and "in total"; entire figure underneath title of slide. Text**

27  **underneath slide between "GFD is" and "more expensive"; "Gcal protections" and**

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

**"savings per device"; "GFD is" and "more expensive"; "CN OEMs" and "savings per device"; "deal model)" and "in marketing"; "to manage" and "revenue uplift"; "devices are" and "more likely").** This text contains confidential information including financial details and revenue figures that Google has not disclosed as well as Google's business strategy considerations. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 36 [Dkt. No. 279-38] (Exhibit A22)**

425.    **Exhibit 36, page -819 (entire boxes labeled "Impact" and "Ask").** This text reflects confidential Google financial information as well as non-public proposed terms with a potential non-party partner. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business performance and a competitive advantage over Google in ongoing or future business negotiations.

426.    **Exhibit 36, page -820 (entire boxes labeled "Cross-Google Service Packs + Partner Pods," "Samsung + Google Gaming Collaboration," and "Accrue value back to Google").** This text reflects confidential, non-public proposed terms with a potential non-party partner as well as Google's business strategy considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business negotiations.

427.    **Exhibit 36, page -822 (between "HVUS:" and "of buyers"; between "spend" and "of app"; between "concentration of" and "reflect 2018"; entire top box).** This text reflects confidential Google financial information, including consumer spending on Google products and services. If publicly revealed, this information could cause Google competitive

harm by giving other parties insight into Google's business performance and a competitive advantage over Google in ongoing or future business negotiations.

428. **Exhibit 36, page -824 (icons in column 1 and figures in column 2 in rows 2-6; text in row 2 from the start of the sentence until "whether to launch"; text in footnote between "Projected" to "spend projection").** This text reflects the identity and confidential financial information for multiple non-party developers as well as non-public Google financial information. If publicly revealed, this information could cause these non-parties and Google competitive harm by giving other parties insight into both these developers' and Google's business performance and a competitive advantage over Google in ongoing or future business negotiations.

429. **Exhibit 36, page -825 (between "margin loss (" and "revenue"; between "revenue /" and "margin at risk"; text in first row from "Play Revenue/Margin Risk" to the end of the sentence; the entire right-hand box in row 1).** This text reflects confidential Google financial information. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business performance and a competitive advantage over Google in ongoing or future business negotiations.

430. **Exhibit 36, page -827 (entire box under the slide title and icons).** This text reflects confidential and recent business strategy considerations by Google. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

431. **Exhibit 36, page -828 (entire box under "1) Prioritize Play"; entire box under the icons under "2) Boost x-PA Product Adoption").** This text reflects confidential and recent business strategy considerations by Google. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

432. **Exhibit 36, page -829 (entirety of the four rows in the chart).** This text reflects confidential and recent business strategy considerations by Google, including considered deal terms. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

433. **Exhibit 36, page -830 (the three boxes on the left side under "Target Developers").** This text reflects confidential and recent business strategy considerations by Google, including the identities of possible third-party partners. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

434. **Exhibit 36, page -831 (the entire box under slide title and three headings; between "packs with" and "-->").** This text reflects confidential and recent business strategy considerations by Google, including the identity of a specific non-party developer and possible Google partner. If publicly revealed, this information could cause both Google and the non-party developer competitive harm by giving other parties insight into strategic considerations and financial information of both Google and the developer.

435. **Exhibit 36, page -832 (entire box under slide title and three headings).** This text reflects confidential and recent business strategy considerations by Google, including non-public Google financial information. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

436. **Exhibit 36, page -833 (entire box under slide title; between "2021 as" and "increases").** This text reflects confidential and recent business strategy considerations by Google, including non-public Google financial information. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1   considerations and thus a competitive advantage over Google in ongoing or future business

2   negotiations.

3       437.    **Exhibit 36, page -835 (box in the bottom right corner at the end of the arrow**

4   **beneath "Niantic").** This text reflects non-public Google financial information. If publicly

5   revealed, this information could cause Google competitive harm by giving other parties insight

6   into Google's strategic considerations and thus a competitive advantage over Google in ongoing

7   or future business negotiations.

8       438.    **Exhibit 36, page -836 (entire first row until the slide title; text from "are**

9   **win-win" through the end of that sentence; entire 3 bullet points under "Marketing**

10  **opportunities"; entire 2 bullet points under "Playpoints").** This text reflects confidential and

11  recent business strategy considerations by Google, including proposed deal terms with a possible

12  non-party partner. If publicly revealed, this information could cause Google competitive harm by

13  giving other parties insight into Google's strategic considerations and thus a competitive

14  advantage over Google in ongoing or future business negotiations.

15      439.    **Exhibit 36, page -838 (between "including" and "and 4 year"; entire chart**

16  **under the slide title).** This text reflects confidential and recent business strategy considerations

17  by Google, including proposed deal terms with a possible non-party partner as well as

18  confidential Google financial information. If publicly revealed, this information could cause

19  Google competitive harm by giving other parties insight into Google's strategic considerations

20  and thus a competitive advantage over Google in ongoing or future business negotiations.

21      440.    **Exhibit 36, page -839 (entire right-hand column under "Mitigation"; entire**

22  **3 bullet points beneath the chart).** This text reflects confidential and recent business strategy

23  considerations by Google, including proposed deal terms with a possible non-party partner. If

24  publicly revealed, this information could cause Google competitive harm by giving other parties

25  insight into Google's strategic considerations and thus a competitive advantage over Google in

26  ongoing or future business negotiations.

27

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

441. **Exhibit 36, page -842 (entirety of the box; between "includes" and "and also accounts").** This text reflects confidential and recent business strategy considerations by Google, including confidential Google financial information related to the impact of a considered business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

442. **Exhibit 36, page -843 (entirety of the box under the slide title).** This text reflects confidential and recent business strategy considerations by Google, including confidential Google financial information related to the impact of a considered business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

443. **Exhibit 36, page -844 (entirety of the box under the slide title; between "of top developers" and "A couple of partial").** This text reflects confidential and recent business strategy considerations by Google, including confidential Google financial information related to a considered business proposal. It also reflects the identities of two non-party developers. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

444. **Exhibit 36, page -845 (entirety of box under "Margin Impact (2019 - 2022)").** This text reflects non-public Google financial information related to a considered business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

445. **Exhibit 36, page -846 (entirety of box under "Margin Impact (2019 - 2022)").** This text reflects non-public Google financial information related to a considered business proposal. If publicly revealed, this information could cause Google competitive harm by

giving other parties insight into Google's strategic considerations and thus a competitive

advantage over Google in ongoing or future business negotiations.

446.     **Exhibit 36, page -847 (entirety of box under "Margin Impact (2019 - 2022)").** This text reflects non-public Google financial information related to a considered business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

447.     **Exhibit 36, page -848 (text in title between "against" and "of margin"; entirety of box under slide title; text below box between "includes" and "and also").**  This text reflects non-public Google financial information related to a considered business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

448.     **Exhibit 36, page -850 (entire box under slide title "Developer Value View").** This text reflects confidential financial information for multiple non-party developers, as well as the projected impact of a considered Google business arrangement. If publicly revealed, this information could cause both these non-party developers and Google competitive harm by giving other parties insight into Google's strategic considerations and the developers' financial data.

449.     **Exhibit 36, page -851 (entire box under slide title "Developer list").** This text reflects the identities of multiple non-party developers who were under consideration for a possible Google business initiative. If publicly revealed, this information could cause both these non-party developers and Google competitive harm by giving other parties insight into Google's strategic considerations.

450.     **Exhibit 36, page -852 (entire box next to "Developer Eligibility"; entire box next to "Developer Obligations").** This text reflects confidential and recent business strategy considerations by Google, including considered terms of a possible business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight

into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

451.     **Exhibit 36, page -853 (title text between "Hug Devs:" and "and"; between "and" and "FTE"; and entire box below the title).** This text reflects confidential and recent business strategy considerations by Google, including project descriptions, budgets, and Google staffing arrangements for a possible business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

452.     **Exhibit 36, page -854 (title text from the beginning of the title until "for Hug devs"; from "for Hug devs" until the end of the title; and entire box below the title).** This text reflects confidential and recent business strategy considerations by Google, including financial terms, timing, and possible partners for a possible business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

453.     **Exhibit 36, page -857 (subtitle text from "Project Play Spend =" until the end of that sentence; entirety of box under the subtitle).** This text reflects non-public Google financial information related to a considered business proposal. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

454.     **Exhibit 36, page -859 (all rows and footnotes beneath the first row entitled "Payment & duration"; entire speaker notes at the bottom of the slide).** This text reflects proposed terms for a possible business arrangement with a non-party entity, including financial terms and other strategic considerations for both parties. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic

considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

455.     **Exhibit 36, page -860 (entire first row under the slide title; first bullet point under "Must haves" in the second row; the very last bullet point under "Additional asks..." in the second row).** This text reflects proposed terms for a possible business arrangement with a non-party entity, including financial terms and other strategic considerations for both parties. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

456.     **Exhibit 36, page -861 (both bullet points in the first row to the right of the row title "Product"; both bullet points in the second row to the right of the row title "Financial").** This text reflects proposed terms for a possible business arrangement with a non-party entity, including financial terms and other strategic considerations for both parties. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

457.     **Exhibit 36, page -862 (all 3 bullet points in the second row under "Mitigation"; the text under "Play band dilution" and to the right of "Mitigation"; and both bullet points under "Mitigation").** This text reflects proposed terms for a possible business arrangement with a non-party entity, including financial terms and other strategic considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

458.     **Exhibit 36, page -863 (under "Assumptions" the first bullet and its header; the third bullet and its header; and the fourth bullet and its header).** This text reflects non-public financial information for a non-party entity. If publicly revealed, this information could

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

cause that company competitive harm by giving other parties insight into its revenues and other indicia of financial performance.

459. **Exhibit 36, page -864 (text in the subtitle between "Integrate Samsung with" and "to help drive"; the entire chart including footnotes under "Proposal / Details / Considerations").** This text reflects proposed terms for a possible business arrangement with Samsung, a non-party, including financial terms, geographic scope, duration, and other strategic considerations. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 37 [Dkt. No. 279-39] (Exhibit A23)**

460. **Exhibit 37, page -271 (text before "prep doc"; between "one of" and "most important"; "partners" and "wanted to show"; under "Android Activations", text before "but sliding due to China brands" and all figures underneath; all dollar figures and percentages under "Mobile (Search) rev share (USD)"; all percentages under "Assistant"; dollar figure under "LCS / GCAS"; under "Android product" the text between "Foldables" and "The teams are"; under "Google Assistant & Bixby Status" all text between "integration for" and "announced at" and "did open up"; "Google 1P services on" and "announced" and "that four Google services (Maps, YT, Play, Gmail) would be available via" and "We worked with" and "and the respective Google app teams"; "process of implementing" and "on for" and "and" and "and this should go live in" and "This builds on the mobile backfill implementation which went live in" until end of sentence; "opportunities with" and "and had").** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies, which can be used in negotiations against Google and is likely to result in competitive harm to Google.

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

461.    **Exhibit 37, page -272 (between "about it at" and "Still much to"; "Need to sign ASAP" and "We do not have"; "Expiring at the" and "Will pursue"; "to cover" and "under current deal"; "Expires at the" and "Will start renewal"; "Hope to secure" and "with EMADA signature"; "App distribution" and "This started"; "hear that" and "is actively"; "distribution through" and "first or instead"; "also moved the" and "to sit on the"; "Product excellence" and "Product excellence will be"; "and privacy" and "will launch in" and "and looks"; "gallery on all" and "devices"; "starting with" and "We had"; "million users from" and "to Google Photos"; "Browser." and "is putting Chrome"; "carrier devices and" and "We believe"; "from Carrier RSAs" and "is considering whether"; "Co-Marketing Partnership" and "has agreed"; "the existing" and "buyers (launching with the" and "and" and "Contract to be finalized"; position GCP with" and "as the most trusted"; "and also help" and "Specifically"; "Help" and "Cloud Platform"; "GCP for" until end of bullet; "Help" and "Al team to build"; "to meet" until end of bullet).** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies, which can be used in negotiations against Google and is likely to result in competitive harm to Google.

462.    **Exhibit 37, page -273 (between "to work with" and "to integrate"; "starting with" and "This is complementary to" and "On the AR front"; "is strong" and "in the news" and "has big earnings miss due to slowness in component demand, pressure on smartphone business" and "partners with Apple to bring iTunes, AirPlay support to" until end of sentence).** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies, which can be used in negotiations against Google and is likely to result in competitive harm to Google.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 38 [Dkt. No. 279-40]**
**(Exhibit A24)**

463.      **Exhibit 38, Page -174  (between "update" and "BC". Slide at -176, all**
**percentage figures; between "slowdown in" and "spend in Q2" and "spend launch to date"**
**until end of sentence. Slide at -177, text before "BC Review". Slide at -178, text before**
**"Hug developers have signed or are in active redlines"; text after "Improve dev**
**sentiment"; text before "is a critical Holdout"; text before "is strategic to Google"; between**
**"portfolio drives" and "of play revenue" and "is assessing"; "payments platform" and**
**"margin risk"; all text after "Revised Hug deal for". Slide at -179, text before "requires a**
**bespoke"; between "off Play" and "margin risk"; text before "holds significant"; between**
**"which includes" and "top grossing game devs" and "by MAU; "In game" and "drive";**
**"platform for" and "Play has no"; text before "Play margin at risk through 2023, assuming**
**contagion"; between "partner with Play" and "when linked with GVP incentives". Slide at**
**-180, between "deal to incentivize" and "to grow" and "on Play; expected investment" until**
**end of sentence; each bullet under "Google Gets"; text after "Now for"; between "Build"**
**and "business on Play Payments Invest in strategic features" until end of sentence; text**
**after "GCP credits were approved as"; text after "Capped at max"; all text in columns on**
**the right side of the slide. Slide at -181, text after "For" in the top blue box; text after**
**"Start negotiations with". Slide at -187, text in blue boxes after "e.g."; text after**
**"Examples:"; between "Play Status:" and "in beta w/ consumption-only" and "uses Play**
**billing today (but no rev share)"; between "Example:" and "Bus. model:" and "collects".**
**Slide at -189, all images on slide; text before "subscription". Slide at -190, all images on**
**slide; text before "demo app is consumption-only today"; text before "demo library";**
**between "though" and "has indicated". Slide at -191, all images and text besides "Subs**
**from the app," "A full storefront, contractual relationships with devs," and "Purchases for**
**titles and IAP". Slide at -192, all images and text besides "distributed from multiple**
**stores". Slide at -193, all images and text besides "streaming from a PC Platform". Slide at**
**-195, text before "violates policy"; text after "Need to remediate"; text before "not**

149

**available on iOS"; text before "transactions only"; text before "with full compliance". Slide at -196, text before "is in violation").** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions. This text also contains the identity of a non-party entity with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

### Consumer Plaintiffs' Motion for Class Certification – Exhibit 39 [Dkt. No. 279-41] (Exhibit A25)

464.     **Exhibit 39, page -807 (from "gaming developers and promoting Play on" through the end of that sentence; and from "and OEMs leveraging distribution (e.g.)" through the end of that sentence).** This text contains the identity of a non-party entity with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of private negotiations.

465.     **Exhibit 39, page -808 (third bullet, from "Play revenue is" through the end of the bullet; between "This context results in" and "for Play Business"; between "risk facing Play to ramp to ~" and "revenue /"; between "revenue /" and "margin impact"; between "impact annually in" and "years"; between "years (" and revenue /"; between "revenue /" and "margin risk"; between "and with" and "who has renewed"; from "and**

150

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

**investment in" through the end of that sentence; bullet E, the very first word; between "Drive" and "commercial agreement"; between "with" and "to support their goals"; between "to create" and "while promoting Play"; between "Play on" and "and improving the Android").** This text contains the identity of a non-party entity with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. This text also contains confidential information regarding possible business terms that Google discussed with that party. If publicly revealed, this information could cause both Google and the non-party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

466.    **Exhibit 39, page -809 (between "B." and "Partnership"; first bullet, from the start of the sentence until "lump sum annual" and between "annual payment for" and "years"; second bullet, between "Up to" and "annual Play Points"; between "discounts for" and "to"; between "to" and "buyers"; fourth bullet, the entire bullet; and from "Ask to BC:" through the remainder of the page).** This text contains the identity of a non-party entity with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. This text also contains confidential information regarding possible business terms, including financial terms and duration, that Google discussed with that party. If publicly revealed, this information could cause both Google and the non-party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

467.    **Exhibit 39, page -810 (between "offerings over the" and "per assumption"; between "Although the above" and "estimate is an"; between "self-medicate" and "through"; between "through" and "and 2)"; between "we now forsee" and "of**

151

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1    incremental margin"; between "could yield" and "in margin to offset"; between
2    "Developers commit to" and "of titles").  This text contains confidential information
3    regarding possible business terms, including financial terms, that Google discussed with a non-
4    party entity. If publicly revealed, this information could cause both Google and the non-party
5    competitive harm by giving other parties insight into Google's business and negotiation strategy
6    and a competitive advantage over Google in ongoing or future business negotiations.

7        468.    **Exhibit 39, page -811 (first bullet, very first word; between "updates) to"**
8    **and "games/apps"; between "Play and" and "improve Android gaming"; between**
9    **"through" and "adopting Android Gaming Standard"; second bullet, between "Revenue**
10   **risk mitigation:" and "of revenue"; between "of revenue" and "of margin"; between**
11   **"2019-2022 (" and "of revenue /" between "of revenue /" and "margin risk in 2022"; in the**
12   **table, under Risk column, between "timing and whether" and "deal would sign"; in the**
13   **table, under Mitigation column, from the start of the last sentence until "max in a given**
14   **quarter").**  This text contains the identity of a non-party entity with whom Google had
15   confidential conversations regarding a proposed business deal. This information implicates non-
16   parties' confidentiality interests, by revealing the identities of Google's potential business
17   partners, who are not parties to this litigation. This text also contains confidential information
18   regarding possible business terms, including financial terms, that Google discussed with that
19   party. If publicly revealed, this information could cause both Google and the non-party
20   competitive harm by giving other parties insight into Google's business and negotiation strategy
21   and a competitive advantage over Google in ongoing or future business negotiations.

22       469.    **Exhibit 39, page -812 (under Ads Finance section, between "UAC Credits**
23   **of" and "are a one time"; between "grants do not exceed" and "of UAC Game Launch";**
24   **between "Max of" and "of Ads Credits used"; under Pros section, between "Potentially**
25   **mitigate" and "in cumulative revenue"; and between "revenue and" and "in margin**
26   **risk").**  This text contains confidential information regarding possible business terms, including
27   financial terms, that Google discussed with a non-party entity. If publicly revealed, this

28

152

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

information could cause both Google and the non-party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

470.   **Exhibit 39, page -813 (between "Revenue transfer from Play to Cloud (for" and "of credits value"); between "Mobile gaming is growing fast on YouTube" and "similar past deals with game pubs").**  This text contains confidential information regarding possible business terms, including financial terms, that Google discussed with a non-party entity. It also contains internal Google data regarding the performance of YouTube, a Google product. If publicly revealed, this information could cause both Google and the non-party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

471.   **Exhibit 39, page -814 (between "Ads Credits of" and "will not impact"; between "No more than" and "of credits are"; between "If" and "lands, how does that impact"; between "as the" and "opportunity looks"; between "Finance Recommendation: if" and "lands then Top Developer").**  This text contains the identity of a non-party entity with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. This text also contains confidential information regarding possible business terms, including financial terms, that Google discussed with that party. If publicly revealed, this information could cause both Google and the non-party competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

472.   **Exhibit 39, pages -807 (email usernames at 7:47 pm); -815 (email username).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These

153

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1   employees have a reasonable expectation of privacy that would be infringed upon if this

2   information were to be made public.

3   **Consumer Plaintiffs' Motion for Class Certification – Exhibit 40 [Dkt. No. 279-42]**
    **(Exhibit A26)**

4   473.    **Exhibit 40, page -725 (between "met with" and "Director;" between "BD**

5   **for" and "and while;" between "Play and" and the end of the sentence; between**

6   **"competitor to" and "and that;" between "having" and "and some;" and between**

7   **"ensure" and "is on").** This text reveals specific details about the terms of Google's agreements

8   with non-party as part of particular Google commercial programs, including identification of a

9   specific non-party. Public disclosure could cause harm to Google's competitive standing by

10  giving competitors and others insights into Google's business strategies. This text also reflects

11  non-party confidential information. These non-parties' identities and confidential information

12  should be sealed because disclosing any agreements and specific business interests could cause

13  significant harm to the non-parties' competitive standing in future business dealings.  For

14  example, a potential business partner could use this information in future negotiations with a

15  non-party to undermine the non-party's negotiating position.

16  474.    **Exhibit 40, page -725 (between "realize" and "ended;" between "ended up**

17  **at" and "(I worked;" between "how the" and "app;" and between "purchased on" and**

18  **"or integrate").** This text reveals specific details about the terms of Google's agreements with

19  non-party as part of particular Google commercial programs, including identification of a

20  specific non-party. Public disclosure could cause harm to Google's competitive standing by

21  giving competitors and others insights into Google's business strategies. This text also reflects

22  non-party confidential information.   This non-party's identity and confidential information

23  should be sealed because disclosing its agreements and specific business interests could cause

24  significant harm to the non-party's competitive standing in future business dealings.  For

25  example, a potential business partner could use this information in future negotiations with the

26  non-party to undermine the non-party's negotiating position.

27

28

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

475.     **Exhibit 40, pages -725 (email usernames at 7:16am, 10:46pm, 1:44pm, 1:28pm, and in email signatures); -726 (email usernames at 8:53pm and in email signatures); -727 (phone number).** The identified text identifies the email usernames or phone numbers of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

476.     **Exhibit 40, pages -726 to -727 (between "8:53 PM" and "wrote;" between "on our" and "app;" between "Preview app in" and "on the Play;" full line under "Kind regards;" and the text after the word "cell").** This text reveals specific details about Google's agreements with a specific non-party as part of certain Google commercial programs, including identification of a specific non-party. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies. This text also reflects non-party confidential information. This non-party's identity and confidential information should be sealed because disclosing its agreements and specific business interests could cause significant harm to the non-party's competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with the non-party to undermine the non-party's negotiating position.  Further, this information also includes the name and contact information of the partner entity's employees and should be sealed to protect their individual's privacy.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 41 [Dkt. No. 279-43] (Exhibit A27)**

477.     **Exhibit 41, page -379 (figures under "Summary of Play Performance"; between "to grow at" and "Y/Y"; "now" and "Y/Y"; "combined" and "Y/Y"; "Apps & Games" and "Y/Y growth"; "in place" and "Y/Y growth"; "noted as" and "it is mostly"; "level are" and "QTD"; entire chart in middle of page).** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and

155

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621023BE4

adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions.

478. **Exhibit 41, page -380 (all percentage figures; entire charts at top and bottom of page).** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions.

479. **Exhibit 41, page -381 (between "of users" and "Y/Y"; "such as" and "(2) Retention"; "as the" and "are performing"; "increase significantly" and "from pre-COVID"; "cover over" and "titles"; "already" and "YOY"; "note here is" and "who has"; "markets being" and "in aggregate"; "over" and "partners"; "over" and "an" and "increase"; "segment" and "usage"; "install" and "uninstall").** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions. This text also contains the identity of a non-party entities with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

480. **Exhibit 41, page -382 (between "more than" and "apps on Play"; "cleaned up" and "apps on Play"; "rate from" and "Our investment"; "with" and "more malware"; "almost a" and "improvement"; "more than" and "in Ad Fraud"; "game developers" and "in cross-Google").** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions. This text also contains the identity of non-party entities with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

481. **Exhibit 41, page -383 (between "reinvests" and "of partners'"; "have signed" and "covering"; "make up" and "of annual Play"; "e.g.," and "and these developers"; "efficiency" and "case study"; "very successful" and "User engagement"; "is strong" and "We plan"; "all HVUs*" and "of Play spend"; "achieve" and "enrolled"; "of 2021" and "Moving gaming"; "opportunity" and "global market"; "Examples include" and "Of particular"; "developers like" and "have been"; "in the US" and "points"; "in EEA" and "and" and "points in JP" and "in Q1 2020"; "resulted in" and "missing new activations").** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in

157

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

these specific regions. This text also contains the identity of non-party entities with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

482. **Exhibit 41, page -384 (between "deal example" and "was preparing;" "to bring" and "to mobile"; everything after "partnering with Play and Google").** This text contains confidential information including financial details, app install metrics, and revenue figures for specific regions that Google has not disclosed. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's revenue in these specific regions. This text also contains the identity of a non-party entity with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 42 [Dkt. No. 279-44] (Exhibit A28)**

483. **Exhibit 42, page -696, bottom bullet, between "Decide on" and "approach"; "for" and "as part of."** This text reflects Google's non-public, competitively sensitive and current internal information, including information as to its commercial dealings and strategy with respect to a counterparty, and the specific name of the party. If disclosed, that information

158

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1  could be used by competitors or third parties against Google in negotiations to harm its

2  competitive standing.

3     484.   **Exhibit 42, page -696, first bullet, between "three FYIs" and "back in the

4  mix"; "2.0" and end of sentence.** This text reveals specific details about the terms of Google's

5  agreements with developers as part of particular Google commercial programs. Public disclosure

6  could cause harm to Google's competitive standing by giving competitors and others insights into

7  Google's business strategies.  This text also reflects non-party confidential information.   This

8  non-party's identity and confidential information should be sealed because disclosing its

9  agreements and specific business interests could cause significant harm to the non-party's

10  competitive standing in future business dealings.  For example, a potential business partner could

11  use this information in future negotiations with the non-party to undermine the non-party's

12  negotiating position.

13     485.   **Exhibit 42, page -696, third bullet, between "let us use" and "as an

14  upfront"; "over" and "years"; "complicate things" and "GVP"; "has a" and

15  "HOWEVER"; "per year, say" and "/ year"; "total of" and "over"; "over" and "years";

16  "If" and " does not hit"; "warrants only" and "in esports"; "the original" and "CAC";

17  "If" and "overperforms"; "featuring" and "or to product."** This text reflects Google's non-

18  public, competitively sensitive and current internal information, including information as to its

19  commercial dealings and strategy with respect to a counterparty. If disclosed, that information

20  could be used by competitors or third parties against Google to harm its competitive standing.

21  Third parties could, for example, leverage it against Google to negotiate better or similar terms.

22     486.   **Exhibit 42, page -696, third bullet, between "Mana and" and "approved

23  by"; "both" and "and"; "and" and "to get."** This text reflects Google's non-public,

24  competitively sensitive and current internal information, including information as to its

25  commercial dealings and strategy with respect to a counterparty, and the specific name of the

26  party. If disclosed, that information could be used by competitors or third parties against Google

27  in negotiations to harm its competitive standing.

28

487.   **Exhibit 42, pages -696 (email usernames at 1:38am, 7:56pm, 11:54, 3:51pm), -697 (email signature).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

488.   **Exhibit 42, page -697, top bullet, between "Decide on" and "approach"; "prioritization and" and "Hug status."** This text reflects Google's non-public, competitively sensitive and current internal information, including information as to its commercial dealings and strategy with respect to a counterparty, and the specific name of the party. If disclosed, that information could be used by competitors or third parties against Google in negotiations to harm its competitive standing.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 43 [Dkt. No. 279-45] (Exhibit A29)**

489.   **Exhibit 43, page 362, line 16 (from start of sentence until "but I want to talk").** This text contains confidential information regarding possible business terms that Google discussed with potential non-party developer partners. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

490.   **Exhibit 43, page 362, line 6 (between "Did" and "and Google").**  This text contains the identity of a non-party entity with whom Google had confidential conversations regarding a proposed business deal. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of private negotiations.

491.   **Exhibit 43, page 363, lines 4-6 (from "developers were" through the end of the sentence"); lines 10-11 (between "terms" and "right?"); lines 12-13 (from "asks that"**

**through the end of the sentence); lines 14-15 (between "Project Hug" and "right?"); lines 20-21 (between "agreements" and "right?"); and line 25 (from "define as" to the end of the page).** This text contains confidential information regarding possible business terms that Google discussed with potential non-party developer partners. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

492. **Exhibit 43, page 364, lines 1-7 (in their entirety); line 10 (between "secure this" and "for top titles").** This text contains confidential information regarding possible business terms that Google discussed with potential non-party developer partners. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

493. **Exhibit 43, page 365, lines 6-7 (from "with Google" through the end of that sentence); lines 10-14 (the entirety of the answer); line 16 (between "one of the" and "that you've"); lines 19-22 (from "For the most part" through the end of the answer); and lines 24-25 (between "Again" and "developers can choose").** This text contains confidential information regarding possible business terms that Google discussed with potential non-party developer partners. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

494. **Exhibit 43, page 366, lines 3-10 (from "ask us by" through the end of the answer).** This text contains confidential information regarding recent strategic decisions Google made with non-party partners. This text also contains the identity and business dealings of another non-party entity. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business negotiations.

161

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

495. **Exhibit 43, page 367, lines 1-2 (between "get games that" and "right"); lines 6-9 (from "developers" through the end of that sentence).** This text contains confidential information regarding possible business terms that Google discussed with potential non-party developer partners. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

496. **Exhibit 43, page 368, lines 17-18 (from "was" to the end of that sentence); line 19 (between "was to" and "and"); lines 20-21 (from "then also" to the end of that sentence).** This text contains confidential information regarding possible business terms that Google discussed with potential non-party developer partners. If publicly revealed, this information could cause both Google and the non-parties competitive harm by giving other parties insight into Google's business and negotiation strategy and a competitive advantage over Google in ongoing or future business negotiations.

497. **Exhibit 43, page 369, line 20 (between "after" and "and Google"); line 21 (between "reached a deal" and "wanted to"); line 22, (between "I do recall" and "wanting to talk"); lines 23-24 (between "way the" and "Google partnership").** This text contains the identities of multiple non-party developers with whom Google had reached confidential agreements. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation, and who have a reasonable expectation that Google will maintain the confidentiality of private negotiations.

498. **Exhibit 43, page 369, lines 8-9 (between "today that" and "was to have").** This text contains confidential information regarding Google's internal, strategic deliberations as they relate to potential partners. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's internal strategic processes, and a competitive advantage over Google in ongoing or future business negotiations.

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

499. **Exhibit 43, pages 364-365, lines 364:24-365:1 (from "developers to" through the end of the sentence).** This text contains confidential information regarding Google's internal, strategic deliberations as they relate to a potential partner. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's internal strategic processes, and a competitive advantage over Google in ongoing or future business negotiations.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 44 [Dkt. No. 279-46] (Exhibit A30)**

500. **Exhibit 44, page -690 (three bullets under "GVP 1.0 Impact Assessment"); page -694 (images and logos on the left; between "GVP targeted" and "major game"; between "(e.g.," and "of total Play"); page -695 (between "eg" and "xPA"); page -697 (text before "target devs signed"); all dollar and percentage figures; between "100% of titles" and "on Play"; between "on Play" and titles)"; fourth bullet under "1) Prioritize Play"' first bullet under "3) Improve Sentiment" between "to date (" and "devs asked pre"); page -698 (percentage figure in title; text before "target) devs" in title; images of logos on the right; text before "is signing up"; graphic below title "2019 Play A&G Spend"); pages -699 and -700 (all percentage and dollar figures on slide and text; all text in bullets under "Cloud Deals:"; all text before "new customer," "and new title," and "Expected to 40x spending"); page -701 (all images of logos); page -702 (between "Outside of" and "who is singularly"; all entries in first column on the left); page -703 (text after "Strategic partnership with"; all entries in first column on the left); page -705 (all dollar figure and percentage figures on slide); page -706 (entire bar graph); page -707 (all dollar figure and percentage figures on slide; entire chart); page -710 (title between "An" and "for game developers"; entire graphic beneath "New to Play PC/Console Devs" and "On Play "enterprise" Developers"; all text underneath slide except "Both" and "meet the criteria"); page -711 (all text underneath column titled "Comments"); page - 712 (bullet points underneath "Google Gives" and "Google Gets (contractual)"); page -713 (all dollar figure**

163

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

and percentage figures on slide; entire chart; text before "GVP 2.0 developers offer" in fourth bullet point; partner names identified in Footnote 1; between "already getting" and "of Play" in Footnote 2); page -715 (two graphics on the right and left in the center of the slide; figure between "offered at" and "& met the following"; figure between "Google footprint;" and "incremental Google"; figure after "against investment of"); page -717 (text beneath "Google Gives" and "Google Gets"); page -718 (text in boxes below "Runway", "GVP", and "GVP (in conjunction w/ Runway"); page -719 (all text in boxes under "Option 1", "Option 2", and "Option 3 (R)"); page -722 (all dollar figure and percentage figures on slide; figures in the row titled "# of developers") text in "Google Gets" row; text in "Term" row; ); page -725 (all dollar figure and percentage figures on slide); page -726 (first three values in the boxes on the right); page -728 (title between "with" and "offers"; all dollar figures; logos and images under "Top Games Bundle Offer"); page -728 (images and logos; text under slide between "world of" and "interact with"); page -730 (all dollar figures, percentages, and numerical values in graphic on slide; all text underneath slide); page -731 (all text underneath title); page -732 (all dollar figure and percentage figures on slide; entire chart; first bullet point: text before "developers expected" and between "sign a deal with" and "developers"); page -733 (all dollar figure and percentage figures under "Actual"); page -734 (all dollar figure and percentage figures on slide; first bullet point underneath Key Highlights, text before "receiving UAC credits" and between "part of Hug with" and "in credits received"); page -735 (all dollar figure and percentage figures on slide; entire chart; non-party identities underneath slide); page -736 (all dollar figure and percentage figures on slide; entire chart); page -737 (all dollar figure and percentage figures on slide; entire chart; non-party identities underneath slide); page -738 (entire chart); page -739 (all images of logos); page -740 and -741 (all non-party names and identities); page -741 (all text in the four boxes); page -743 (all text in the "Google Gets" and "Google Gives" rows); page -744 (text underneath "DevRel Consultations," "YT Influencers," "UAC credits," "YT channel growth"); page -745 (text in rows for "eligibility

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1    **criteria" and "Play % reinvested"; all text in the "Google Gives" and "Google Gets" rows);**

2    **page -746 (all dollar figure and percentage figures on slide; entire chart; non-party**

3    **identities); page -749 (between "we have signed up" and "target devs;"); page -753 (text**

4    **below "Deal structure option 1", "Deal structure option 2", "Deal structure option 3 (R)");**

5    **page -754 (text below "Deal structure option 1", "Deal structure option 2", "Deal structure**

6    **option 3 (R)"); page -757 (all dollar figure and percentage figures on slide).** This text

7    contains confidential information including financial details, app install metrics, and revenue

8    figures for specific regions that Google has not disclosed. Disclosure of this information would

9    severely and adversely impact Google's current competitive position. For example, if this

10   information is publicly disclosed, an app store competitor could use this information to model or

11   structure its own costs in an effort to match or beat Google's revenue in these specific regions.

12   This text also contains the identity of a non-party entity with whom Google had confidential

13   conversations regarding a proposed business deal. This information implicates non-parties'

14   confidentiality interests, by revealing the identities of Google's potential business partners, who

15   are not parties to this litigation. If publicly revealed, this information could cause both Google

16   and the non-parties competitive harm by giving other parties insight into Google's business and

17   negotiation strategy and a competitive advantage over Google in ongoing or future business

18   negotiations.  Google also seeks the following information to be sealed on behalf of third parties,

19   as certain non-parties have represented that they treat such material as non-public and

20   commercially sensitive but that they will not submit a declaration on behalf of their own interests

21   because doing so would itself reveal confidential information (e.g. their identity as a participant

22   in a particular Google program or as a counterparty to an agreement is not publicly known).

23       501.    **Exhibit 44, pages -757.R (email username in the fourth row of the table,**

24   **between "@" and "@google.com").** The identified text identifies the email username of a

25   current or former Google employee, and no public interest is served by the public disclosure of

26   this sensitive, personal information. This employee has a reasonable expectation of privacy that

27   would be infringed upon if this information were to be made public.

28

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 46 [Dkt. No. 279-48] (Exhibit A31)**

502.     **Exhibit 46, page -885 (between "options for" and "Google; "going forward" and "Google"); page -891 (between "Profit Pools" and "Strategy Group"); page -902 (text underneath "Q2 '12 Samsung share" below each chart and the corresponding percentage value); page -906 (between "Annual reports;" and "Strategy OEM"); page -908 (between "experience vs." and "and other Android" in the title; text for the column title in between the columns "Samsung" and "Apple"; text to the right of "Touch-Wiz" and "S Health"; text in the second bullet at the bottom of the slide before "controls very little HW or SW"); page -909 (between "should enable" and "to reduce DVX MCPU from" and end of sentence); page -913 (between "Profit Pools" and "Strategy Group"); page -915 (text on the second bullet before "Google strategic choices/options"); page -916 (text before "Google Have 5 Strategic Choices to Win Big"; text in the bullet before "status quo". Slide at -941, text after "North America: Samsung building share; HTC," and "Samsung, LC gaining"); page -944 (between "Each Alternative Requires" and "to Place Key Bets"); pages -884 to -960 (the text on bottom left between "2013" and "Confidential Restricted")** This text contains the identity of non-party customers and partners and details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 48 [Dkt. No. 279-50] (Exhibit A33)**

503.     **Exhibit 48, page -924 (between "developers talk about" and "initiatives (being"); between "as well as for" and "initiatives"; and between "projects), and" and "I don't think").**  This text contains the identity of non-parties in relation to details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

504.     **Exhibit 48, page -924 (between "February about" and "an initiative"; between "between" and "and"; between "and" and "of consumer"; between "spend for"**

166

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

**and "I don't think"; from "very impactful." through the end of the paragraph).** The first two sentences contain non-party confidential information which could be harmful competitively to the nonparty if disclosed. Plaintiffs will need to notice the non-party and seek that party's decision as to whether to seal. The final sentence reflects Google's nonpublic, competitively sensitive and current internal information. Disclosure of this information could harm Google competitively by allowing competitors to alter their business model in light of the information in the text.

505.    **Exhibit 48, page -924 (between "for distribution more often in the future" and "a few other comments").**  This text reflects Google's non-public, competitively sensitive, and current internal information. Disclosure would cause competitive harm by giving competitors key insights into Google's business strategy with respect to a counterparty, and could adjust their own business strategies as a consequence.

506.    **Exhibit 48, page -924 and -925 (between "Three things come to mind" and "for a period"; between "usually months" and "can comment"; between "on effectiveness" and "IMHO, preloads (whether auctioned or otherwise").**  This text reflects Google's non-public, competitively sensitive, and current internal information. Disclosure would cause competitive harm by giving competitors key insights into Google's business strategy with respect to a counterparty, and competitors could adjust their own business strategies as a consequence.

507.    **Exhibit 48, page -925 (between "having with Samsung this week" and "Speed is better than completeness on this").**  This text reflects Google's non-public, competitively sensitive, and current internal information. Disclosure would cause competitive harm by giving competitors key insights into Google's business strategy with respect to a counterparty, and could allow them to adjust their own business strategies as a consequence.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 49 [Dkt. No. 279-51] (Exhibit A34)**

508.    **Exhibit 49, pages -430, -431, and -432 (title on page -430 before "Store Agreement Term Sheet"; between "agreement between" and "and Google Inc."; the text**

in the third column on the right before "position"; all text in every row underneath third column). This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies and the status of ongoing negotiations. This text also contains the identity of non-party customers and partners and details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 50 [Dkt. No. 279-52] (Exhibit A35)**

509.     **Exhibit 50, page -818 (title of document; the first row under "Name Title & Position Scope & relevance to Google"; all text under "Planned Agenda").** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies. This text also contains the identity of non-party customers and partners and details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

510.     **Exhibit 50, page -819 (all text in every row underneath columns for "Additional context on meeting agenda items" and "Suggested talking points/ things to keep in mind").** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies. This text also contains the identity of non-party customers and partners and details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

511.    **Exhibit 50, pages -820, -821, -822, 823, and -824 (all text and images besides "ADDITION/\L CONTEXT ONLY FOR FYI - DO NOT EXPECT THIS TO COME UP IN THE MEETING" on -821 and "MEETING MINUTES" on -823).** This text reveals specific details about the terms of Google's agreements with developers as part of particular Google commercial programs. Public disclosure could cause harm to Google's competitive standing by giving competitors and others insights into Google's business strategies. This text also contains the identity of non-party customers and partners and details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 51 [Dkt. No. 279-53] (Exhibit A36)**

512.    **Exhibit 51, page -817 (between "come back with" and "I think we should"; "with things" and "Because at that"; "at one point we had" to end of sentence).** This text reflects Google's non-public, competitively sensitive, and current internal information, including strategic analysis about dealings with a counterparty and information about negotiation strategy. If disclosed, this information could cause competitive harm by giving competitors key insights into Google's business and negotiation strategy with respect to a counterparty, and competitors could adjust their own business and negotiation tactics as a result.

513.    **Exhibit 51, page -817 (between "revenue share rate is" and "after" and "deduction)"; between "revenue share on" and "to"; to" and "I'd increase the revenue share"; "the revenue share on" and "to"; "to" and "I'd reduce the revenue share"; "revenue share on" and "to"; "to" and "This saves around";"This saves around" and "in"; "in" and "over"; "over" and "years; "The" and "is what can be allocated"; "allocated toward i)" and "ii)"; "ii)" and "and iii"; "and iii)" and "for Ruth/Sundar"; "for sensitivity" and "With respect to Cloud"; "withhold the first" and "of payment from"; "of payment from" and "revenue share"; "escrow" and "In year 2"; "the first" and "In year 3"; "the first" to end of the sentence.** This text reflects Google's non-public,

169

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

competitively sensitive, and current internal information, including strategic and financial analysis about dealings with a counterparty. Disclosure would cause competitive harm by giving competitors key insights into Google's business strategy and financial analysis with respect to a counterparty, and competitors could adjust their own business strategies or adopt similar actions as a consequence.

514.     **Exhibit 51, page -817 (between "they ask for" and "but at some point").** This text reflects Google's non-public, competitively sensitive, and current internal information, including strategic analysis about dealings with a counterparty. If disclosed, this information could cause competitive harm by giving competitors key insights into Google's business strategy with respect to a counterparty, and competitors could adjust their own business strategies or adopt similar actions as a consequence.

515.     **Exhibit 51, page -817 (between "We proposed" and "over four years in flat"; between "and have BC approval to go to" and "over four years. If they come back"; "asking for" and "it wouldn't likely").** This text reflects Google's non-public, competitively sensitive, and current internal information, including strategic analysis about dealings with a counterparty and specific financial information about negotiation strategy. If disclosed, this information could cause competitive harm by giving competitors and other parties key insights into Google's business and negotiation strategy with respect to a counterparty, and those entities could adjust their own business and negotiation tactics as a result.

516.     **Exhibit 51, page -818 (between "I'm talking to" and "tomorrow"; "afternoon about" and "If helpful").**  This text contains the identity of non-parties in relation to details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

517.     **Exhibit 51, page -818 (between "my conversation with" and "today"; "brought up" and "and referenced"; "conversation with" and end of that email).** This text reflects Google's non-public, competitively sensitive, and current internal information, including

detailed analysis about negotiations and negotiation strategy with a counterparty. If disclosed, this information could cause competitive harm by giving competitors and other parties detailed knowledge about Google's business and negotiation strategy with respect to a counterparty. Competitors and other parties could adjust their own business and negotiation tactics as a result, including in negotiations against Google.

518.     **Exhibit 51, page -818 (between "Thanks, in some ways" to end of sentence).** This text reflects Google's non-public, competitively sensitive, and current internal information, including strategic analysis about dealings with a counterparty and information about negotiation strategy. If disclosed, this information could cause competitive harm by giving competitors and other parties insights into Google's business and negotiation strategy with respect to a counterparty, and those entities could adjust their own business and negotiation tactics as a result.

519.     **Exhibit 51, page -819 (between "Called" and "Fingers crossed").**  This text reflects Google's non-public, competitively sensitive, and current internal information, including detailed analysis about negotiations with a counterparty. If disclosed, this information could cause competitive harm by giving competitors and other parties detailed knowledge about Google's business and negotiation strategy with respect to a counterparty. Competitors and other parties could adjust their own business and negotiation tactics as a result, including in negotiations against Google.

520.     **Exhibit 51, pages -816 (email usernames at 4:39pm), -817 (email usernames at 8:57am, 7:17am, 6:06pm, 5:53pm emails), -818 (email usernames at 5:44pm, 5:12pm, 8:06pm, 7:57pm emails), -819 (email usernames at 7:36pm emails).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

171

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

521.    **Exhibit 51, pages -816 and -817 (between "land everything" and "is a good idea"; between "Jamie's question" and "Longer version"; between "In 2018" and "devices were"; between "responsible for" and "revenue through Android"; between "is around" and "Approximately" and "revenue on" and "devices flows through" and "through Chrome.  The rest through the widget" and "spends around" and "per year on cloud"; between "-Approximately" and "of" and " revenue flows through Europe"; between "payload contains" and "The things"; between "in the RSA are" and "this could be structured").**   This text reflects Google's non-public, competitively sensitive, and current internal information. Disclosure would cause competitive harm by giving competitors key insights into Google's business strategy and financial analysis with respect to a counterparty, and competitors could adjust their own business strategies as a consequence.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 52 [Dkt. No. 279-54] (Exhibit A37)**

522.    **Exhibit 52, page 117, lines 5-8 (between "for" and "to essentially" and "right?"; lines 12-22 between "you told" and "as I," and "that" and "right"; "it" and "correct").**   This text reflects Google's non-public, competitively sensitive, and current internal information. Disclosure would cause competitive harm by giving competitors key insights into Google's business strategy and financial analysis with respect to a counterparty, and competitors could adjust their own business strategies as a consequence.

523.    **Exhibit 52, page 118, lines 5-15 and 25 (between "response" and "as you"; "report" and "of" and "told you" and "that was what" and "interpreted"; "your words were that" until end of sentence; "from" and "to").**   This text reflects Google's non-public, competitively sensitive, and current internal information, as well as recent business strategy considerations by Google. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations, and give competitors key

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

insights into Google's business strategy, allowing them to their own business strategies as a consequence.

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 54 [Dkt. No. 279-56] (Exhibit A38)**

524. **Exhibit 54, page -485 (between "communicated to" and "Thanks"; "Google and" and "will work"; "Google and" and "will jointly"; "maintain" and "as the primary"; "mobile gaming" and "must take over"; "maintenance of" and "with Google"; "involvement from" and "needs to be included in"; "included in" and "either as part of"; "first launch of" and "or a subsequent"; "upon time)" and "and Google"; "games to" and "for portability"; "Android and" and "should not introduce"; "4th platform" and "to confuse"; "confuse developers" and "and/or Google may"; "mobile platforms" and "needs to work"; "honor the" and "revenue share for the first"; "revenue share applies." and "revenue share to developers"; "exclusive to" and "for the first 90 days"; "90 days" and "needs to commit"; and "tier-1" and "native"; "native" and "quality titles"; "quality titles and" and "titles"; "anchor" and "native"; "native and" and "launch titles"; "first device" and "launch"; "launch of" and "1st and 2nd party"; "devices or platforms" and "needs to commit"; "promote games in" and "on Android Market").** This text contains the identity of non-parties and details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

525. **Exhibit 54, page -485 (email usernames); page -486 (email usernames at the 1:37 pm and 11:05 am email times).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

526. **Exhibit 54, page -486 (between "Cancel" and "for good"; "back to" and "and ask them"; "Given the" and "is canceled"; "in order to get" and "gaming into**

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

**Android"; "solution includes" and "can't be the supplier; "you want for" and "and we'll agree").** This text reflects Google's non-public, competitively sensitive, and current internal information, as well as recent business strategy considerations by Google. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations, and give competitors key insights into Google's business strategy, allowing them to their own business strategies as a consequence. This text reflects non-party confidential information. These non-parties' identities and confidential information should be sealed because disclosing any agreements and specific business interests could cause significant harm to the non-parties' competitive standing in future business dealings. For example, a potential business partner could use this information in future negotiations with a non-party to undermine the non-party's negotiating position.

527. **Exhibit 54, page -486 (between "listed below" and "not being able"; "Assuming" and "management"; "cancel the" and "device project"; "working with" and "still has value"; "year due to" and "Let them know"; and "interesting beyond" and "If they can meet"; "communicate this to" and "and"; "and" and "I presume"; "leverage" and "inability to deliver").** This text contains the identity of non-parties and details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

528. **Exhibit 54, page -487 (between "met with" and "Thursday and Friday"; "progress on" and "It is becoming clear"; "is that while" and "Current model will"; "valuable games" and "In addition"; "due to" and "For example"; "the list of" and "titles"; "it involves" and "Below are the details."; "our positions to" and "senior management"; "from an Android/" and "partnership").** This text contains the identity of non-parties in relation to details regarding their business strategy and finances. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

529.    **Exhibit 54, page -487 and -488 (between "Thanks Eric" and "Strategy Ownership"; "Ownership & Evolution" and "Having a core part"; "Google and" and "or structured"; "development of Z..." and "It is clear"; "details level" and "We either need"; "to include" and "into" and "or we need" and "to commit"; "written natively to" and "or" and "to the other system").**  This text contains the identity of non-parties and details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

530.    **Exhibit 54, page -488 (between "to the other system" and "Business Direction; "Wall Garden" and "To make this work"; "2 paths" and "expiration"; "exclusivity and" and "revenue share"; "enable" and "to harvest"; "to not include" and "is a carrier").**  This text reflects Google's non-public, competitively sensitive, and current internal information, as well as recent business strategy considerations by Google. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's strategic considerations and thus a competitive advantage over Google in ongoing or future business negotiations, and give competitors key insights into Google's business strategy, allowing them to their own business strategies as a consequence.  This text reflects non-party confidential information.  This non-party's identity and confidential information should be sealed because disclosing its agreements and specific business interests could cause significant harm to the non-party's competitive standing in future business dealings.  For example, a potential business partner could use this information in future negotiations with the non-party to undermine the non-party's negotiating position.

531.    **Exhibit 54, page -488 and -489 (between "Since" and "It seems"; "seems that" and "is serious"; "message to" and "senior management").**  This text also contains the identity of several non-parties and details regarding their business. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1

**Consumer Plaintiffs' Motion for Class Certification – Exhibit 55 [Dkt. No. 279-57]**
**(Exhibit A39)**

2       532.      **Exhibit 55, page 415, line 24, to page 416, line 3 (from "What I meant is**

3    **that" through end of sentence).** This text references a customer of Google who is not a party to

4    this litigation, and describes the nonparty's specific deal terms. This nonparty's identity should be

5    sealed because describing its specific deal terms could cause significant harm to the nonparty's

6    competitive standing in future business dealings. For example, a potential business partner could

7    use this information in future negotiations with the nonparty to undermine the nonparty's

8    negotiating position.

9       533.      **Exhibit 55, page 415, lines 10-19 (between "you write, 'AlleyOop is**

10   **essentially" and "First of all," between "you wrote here 'AlleyOop is essentially" and "did**

11   **you mean like," and between "did you mean like" and "or did you mean something else").**

12   This text references a customer of Google who is not a party to this litigation, and describes the

13   nonparty's specific deal terms. This nonparty's identity should be sealed because describing its

14   specific deal terms could cause significant harm to the nonparty's competitive standing in future

15   business dealings. For example, a potential business partner could use this information in future

16   negotiations with the nonparty to undermine the nonparty's negotiating position.

17      **Consumer Plaintiffs' Motion for Class Certification – Exhibit 56 [Dkt. No. 279-58]**
        **(Exhibit A40)**

18

19      534.      **Exhibit 56, page -542 (text in parentheses after "physical goods"; between**

20   **"in-app ads". and "monetize at all").** This text contains the identity of non-party customers

21   and the potential financial impacts to them based on potential changes to Google Play's app

22   distribution and monetization model. If publicly revealed, this information could cause Google

23   competitive harm by giving other parties insight into Google's business strategy and a

24   competitive advantage over Google in ongoing or future business negotiations.

25      535.      **Exhibit 56, page -547 (entire figure).**  This text reflects confidential, non-public

26   Google analysis of value offered to non-party partners. If publicly revealed, this information

27   could cause Google competitive harm by giving other parties insight into Google's business

28

strategy and a competitive advantage over Google in ongoing or future business negotiations. This text also contains the identity of non-parties with whom Google was in business negotiations. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

536.     **Exhibit 56, page -552 (between "Observe" and "not using GPB").**  This text contains the identity of non-party customers and whether those parties utilize certain Google Play features. This information implicates non-parties' confidentiality interests, by revealing the identities of Google's potential business partners, who are not parties to this litigation.

537.     **Exhibit 56, page -553 (the second bullet under "Impact"); pages -557 and -558 (between "Fortnites" and "Only applicable").**  This text contains the identity of non-party customers and the potential financial impacts to them based on potential changes to Google Play's app distribution and monetization model. If publicly revealed, this information could cause Google competitive harm by giving other parties insight into Google's business strategy and a competitive advantage over Google in ongoing or future business negotiations.

### Google's Opposition to Plaintiffs' Motion for Class Certification [Dkt. No. 300] (Exhibit A45)

538.     **Page 004 (between "service fees at 15%" and "or"; between "or" and " Id. ¶ 84."; and between "deals accounts for" and "of U.S. consumers' spend").** This text describes confidential and non-public details about different fee structures between Google and app developers. If that information were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike (e.g., by demanding that Google provide the same terms to them).

539.     **Page 006 (between "2019 through 2021" and "of U.S. consumers"; and between "approximately" and "of U.S. consumers").** This text describes confidential and

177

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

non-public details about Play Points and its usage. If those details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google.

540. **Page 017 (between "accounted for" and "of total U.S. consumer spend").** This text describes confidential and non-public details about apps and consumer spend. If that information were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike (e.g., by demanding that Google provide the same terms to them).

541. **Page 018 (between "*Olean*, 31 F.3d at 669 n.13." and "of U.S. consumers"; and between "Play Points and" and "redeemed Play Points").** This text describes confidential and non-public details about Play Points and its usage. If those details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google.

542. **Page 019 (between "less than" and "—would have been").** This text describes confidential and non-public details about Play Points and its usage. If those details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google.

543. **Page 020 (between "fee structures, such as" and "Burtis ¶¶ 187–89, 201"; and from "alternative business models such as" to the end of the sentence).** This text describes confidential and non-public details about different fee structures between Google and app developers. If those negotiation details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike (e.g., by demanding that Google provide the same terms to them).

178

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

544.     **Page 020-21 (between "documents show that" and "could increase the quality").** This text describes confidential and non-public details about different fee structures between Google and app developers. If those negotiation details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike (e.g., by demanding that Google provide the same terms to them).

545.     **Page 021, footnote 15 (between "billing service and pay" and "if, as Plaintiffs claim").** This text describes confidential and non-public details about different fee structures between Google and app developers. If those negotiation details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike (e.g., by demanding that Google provide the same terms to them).

**Google's Opposition to Consumer Plaintiffs'**
**Motion for Class Certification – Exhibit C [Dkt. No. 300-4]**
**(Exhibit A46)**

546.     **Exhibit C, Revised Exhibit 23 of Burtis Report.** This chart contains confidential and non-public details regarding consumer spend on Google Play. If this information were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers or app store competitors became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer or app store competitor alike.

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621023BE4

**Google's Opposition to Consumer Plaintiffs'**
**Motion for Class Certification – Exhibit G [Dkt. No. 300-8]**
**(Exhibit A47])**

547.     **Exhibit G, page 288 (between "case is that at" and "percent or whatever"; between "when it's set at" and " percent").** This text describes confidential and non-public details of Play Billing financial information. If that information were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike ( e.g., by demanding that Google provide the same terms to them).

548.     **Exhibit G, page 289 (between "subsidy was at" and "percent or whatever"; between "imagine instead of a" and "it was 0.0 or 0.0001").** This text describes confidential and non-public details of Play Billing financial information. If that information were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike ( e.g., by demanding that Google provide the same terms to them).

549.     **Exhibit G, page 295 (between "conceive that" and "is so paltry").** This text describes confidential and non-public details of Play Billing financial information. If that information were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike ( e.g., by demanding that Google provide the same terms to them).

550.     **Exhibit G, page 298 (between "when you get" and "back on a hundred"; between "hassle for the" and "subsidy.")**. This text describes confidential and non-public

1   details of Play Billing financial information. If that information were revealed to competitors and

2   potential business counterparties, they could use that information to disadvantage Google. For

3   example, if other app developers became aware of this information, they could use it to inform

4   their negotiation strategies and as leverage in negotiations with Google, to the detriment of

5   Google and the app developer business partner alike ( e.g., by demanding that Google provide

6   the same terms to them).

7        551.   **Exhibit G, page 310 (between "service fee rate of" and "percent on in-app").**

8   This text describes confidential and non-public different service fee information between Google

9   and app developers. If those negotiation details were revealed to competitors and potential

10  business counterparties, they could use that information to disadvantage Google. For example, if

11  other app developers became aware of this information, they could use it to inform their

12  negotiation strategies and as leverage in negotiations with Google, to the detriment of Google

13  and the app developer business partner alike (e.g., by demanding that Google provide the same

14  terms to them).

15  
16                 **Google's Opposition to Consumer Plaintiffs'**
    **Motion for Class Certification – Exhibit J [Dkt. No. 300-11]**
    **(Exhibit A48)**

17       552.   **Exhibit J, page 355 (between "let's say we" and "or let's say we"; between**

18  **"or let's say we" and "you might see much").** This text describes confidential and non-public

19  details about different fee structures between Google and app developers. If those negotiation

20  details were revealed to competitors and potential business counterparties, they could use that

21  information to disadvantage Google. For example, if other app developers became aware of this

22  information, they could use it to inform their negotiation strategies and as leverage in

23  negotiations with Google, to the detriment of Google and the app developer business partner

24  alike (e.g., by demanding that Google provide the same terms to them).

25  
26  
27  
28

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

**Consumer Plaintiffs' Reply In Support**
**of Class Certification Motion [Dkt. No. 306](Exhibit A49)**

553. **Page 001, lines 23-24 (between "by forcing it to" and "or to reduce security"; between "Speculation that" and "for the first time in its history").** This text describes confidential and non-public details about potential changes to Google Play's monetization model and revenue sharing terms between Google and app developers. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers.

554. **Page 002, line 26 (between "headline rate representing" and "of U.S. developers").** This text describes confidential and non-public details about the composition of Google Play's developer customers and negotiations between them. If publicly revealed, this information could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

555. **Page 003, line 13 (between "highlights as" and "chose not").** This text describes confidential and non-public details regarding an app developer's business strategies on Google Play. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The developers identified in this text also have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps on Google Play.

556. **Page 003, lines 22-24 (between "that if" and "the result would"; between "the result would" and "and Google would"; and from "and Google would" to the end of the sentence).** This text describes Google's internal, confidential, and non-public thinking regarding Google Play's business strategy and priorities regarding its business strategy and

182

business model. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores respond to or plan for variations in Google's business model.

557.    **Page 010, line 10 (between "average" and "per transaction")**. The text describes the non-public confidential subsidy rates of Google Play's Play Points. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers. In addition, revealing Play Points' subsidy rates could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

558.    **Page 010, line 24 (between "resulting in" and "in profit"; and between "in 2020 and" and "in 2021").** This text describes non-public, hypothetical financial figures from 2020 and 2021 relating to Google's market share, which is based on non-public competitively sensitive financial data. If publicly revealed, this information could affect Google's negotiating position with future partners, affect Google customer perception regarding perceived value, or lead to conjecture about Google's future financials based on Dr. Singer's hypothetical model that is not based in fact.

559.    **Page 010, line 27 (between "to" and "in 2020"; and between "2020 and" and "in 2021").** This text describes non-public financial figures from 2020 and 2021 relating to Google's advertising revenue. If publicly revealed, this information could affect Google's negotiating position with future partners, affect Google customer perception regarding perceived value, or lead to conjecture about Google's future pricing models.

560.    **Page 010, lines 18-19 (between "competition by" and "or degrading").** This text describes confidential and non-public details about prospective fee structures between Google and app developers. If publicly revealed, this information could influence the

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers.

561.    **Page 011, lines 4-5 (between "Mot. at 23-24" and "would run counter").** This text describes confidential and non-public details about potential changes to Google Play's monetization model and revenue sharing terms between Google and app developers. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers.

**Consumer Plaintiffs' Reply In Support**
**of Class Certification Motion – Exhibit 70 [Dkt. No. 306-4]**
**(Exhibit A50)**

562.    **Exhibit 70, page 123, line 10 (between "playing" and "and").** The text contains the identity of an OEM that operates an app store which competes with Google Play, and is in the context of developers negotiating with both Google Play and the identified OEM for revenue share terms. If disclosed, it would severely harm Google's competitive position by revealing to developers a competitor of Google Play's that competes directly for developers on non-public price terms, potentially providing developers with bargaining power against Google in future negotiations.

**Consumer Plaintiffs' Reply In Support**
**of Class Certification Motion – Exhibit 71 [Dkt. No. 306-4]**
**(Exhibit A51)**

563.    **Exhibit 71, pages -520.R, -522.R, -526.R to -531.R (highlighted text).** The text highlighted contains confidential and non-public information relating to alternative business models considered by Google Play with respect to its service fee and internal assessments of Google Play's own offerings.  If revealed, it would severely undermine Google Play's competitive position by providing counterparties with key information about Google's offerings

184

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

to developers (including costs of offerings), competitive thinking, pricing strategy, and monetization priorities.  It would also provide potential app store competitors with valuable insight on what strategies Google Play favors or disfavors, potentially enabling those competitors to adopt certain models proposed by Google in an effort to better compete and attract developers and consumers.  It would also provide potential app store competitors and potential developer customers with valuable and specific insight into Google's costs (including itemized costs), and how developers value Google Play's offerings, putting Google at a disadvantage relative to its competitors and/or negotiating partners.

**Consumer Plaintiffs' Reply In Support**
**of Class Certification Motion – Exhibit 72 [Dkt. No. 306-4]**
**(Exhibit A52)**

564.    **Exhibit 72, page 139, line 15 (between "between" and "percent").** This text contains non-public and confidential information regarding the actual or effective service fee charged by Google Play to developers for transactions on Google Play.  If disclosed, it would reveal implicit information about the portion of developers or transactions paying Google Play's 30% service fee as compared to other service fee rates offered through Google Play's various service fee programs. Revealing this information would undermine Google Play's competitive position by providing developers with a datapoint to challenge Google Play's service fee or demand better terms in negotiations.

565.    **Exhibit 72, page 294, line 5 (between "around" and "percent"); line 7 (between "know" and "percent"; and between "real." and "percent"); Page 297, line 1 (between "at" and "percent").** This text contains non-public and confidential data relating to Google Play Points, the value of Play Points redemption by consumers, and the purported subsidy Google would offer consumers in Plaintiffs' but-for world based on Google's confidential financial data. The disclosure of this information would cause serious harm to Google's competitive position. For example, if disclosed, it would inform app store competitors of both the actual value of Google Play's rewards program and the purported value of subsidy that would be offered by a competitive app store. If revealed publicly, an app store competitor

1  could make decisions about its own reward programs and the value of subsidies to offer

2  consumers in order to better compete against Google Play and target those same consumers.

### Google's *Daubert* Motion [Dkt. No. 282]
### (Exhibit A53)

566.  **Page 005, lines 10-11 (between "than" and "of"; and between "only" and "of").** This text contains non-public and confidential information relating to the portion of U.S. consumers who participate in Google Play's Play Points program, as well as the percentage of U.S. consumers who have redeemed Play Points. This information is non-public. Disclosure of this information would severely and adversely impact Google's current competitive position, as well as its ability to design and market new loyalty programs to consumers.

567.  **Page 010, lines 1-3 (between "data set only reduced prices for about" and "of products"; and between "developers only reduced prices for about" and "of products").** This information includes confidential and non-public data regarding the behavior of non-party developers in response to Google's service fee reductions. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers.

568.  **Page 011, lines 9-12 (between "this strategy:" and "of U.S. consumers'", and between "and over" and "developers used prices").** This information includes confidential and non-public data regarding the behavior of non-party consumers and developers regarding pricing. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers.

569.  **Page 013, lines 22-23 (between "than" and "of"; and between "only" and "of").** This text contains non-public and confidential information relating to the portion of U.S.

186

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

consumers who participate in Google Play's Play Points program, as well as the percentage of U.S. consumers who have redeemed Play Points. This information is non-public. Disclosure of this information would severely and adversely impact Google's current competitive position, as well as its ability to design and market new loyalty programs to consumers.

570.   **Page 013-14, lines 24-1 (between "are" and "of").** This text contains non-public and confidential information relating to Dr. Singer's calculations regarding Google's marginal costs, which are derived from internal, confidential financial data. Disclosure of this information would severely and adversely impact Google's current competitive position. For example, if this information is publicly disclosed, an app store competitor could use this information to model or structure its own costs in an effort to match or beat Google's margins. Further, because this information relates only to marginal costs, developers may misinterpret this figure as reflective of Google's entire cost burden and use this information in a negotiation setting to demand better terms.

571.   **Page 014-15, lines 27-2 (between "approximately" and "of").** This text contains non-public and highly confidential information relating to the value of Play Points subsidies that would be available to consumers in a but-for world. Although it is a calculated figure, it is derived from confidential, internal Google financial data. If publicly disclosed, it would provide competitor app stores with potentially valuable information about the subsidy Google Play Points provides to consumers, as the figure here implicitly represents a ceiling on the actual subsidy offered to consumers. Paired with other information in this report, including the two preceding excerpts, an app store competitor could make decisions about its own reward programs and the value of subsidies to offer consumers in order to better compete against Google Play and target those same consumers.

572.   **Page 015, lines 14-18 (between "over" and "class"; between "members" and "who"; between "than" and "during"; between "over" and "million"; and between "members" and "who").** This text contains non-public and confidential data relating to Google Play Points, the purported subsidy Google would offer consumers in Plaintiffs' but-for world

187

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

based on Google's confidential financial data, and confidential statistics on the number and portion of U.S. consumers in the proposed class at specific spend thresholds. The disclosure of this information would cause serious harm to Google's competitive position. For example, if disclosed, it would inform app store competitors of the purchasing behavior of app consumers and potentially enable those competitors to make pricing and rewards decisions to target those consumers, undermining Google Play's strategy in the market.

**Google's *Daubert* Motion – Exhibit 1 [Dkt. No. 282-2]**
**(Exhibit A54)**

573. **Exhibit 1, page 125, lines 5, 8, 13, 18, 19-20 (from "that figure is" to the end of the line; from "will drop to" to the end of the line; from "purchases is" to the end of the line; between "be" and " correct"; between "you're doing the" and "minus"; and all of line 20).** This information contains non-public and confidential data regarding Google's service fee. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and consumers and how they distinguish themselves from Google Play in the eyes of U.S. developers and consumers.

574. **Exhibit 1, page 192, line 10 (between "here is at" and "? Are we").** This information contains non-public and confidential data regarding marginal costs for developers on Google Play. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers.

575. **Exhibit 1, page 192, line 25 (between "not" and "that you have").** This information contains non-public and confidential data regarding Google's service fee. This information is non-public. If publicly revealed, this information could influence the competitive

188

decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and consumers and how they distinguish themselves from Google Play in the eyes of U.S. developers and consumers.

576. **Exhibit 1, page 195, lines 10-11 (between "instead of the" and "?").** This information contains non-public and confidential data regarding Google's service fee. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and consumers and how they distinguish themselves from Google Play in the eyes of U.S. developers and consumers.

577. **Exhibit 1, page 196, line 1 (between "less than the" and "that you have").** This information contains non-public and confidential data regarding Google's service fee. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and consumers and how they distinguish themselves from Google Play in the eyes of U.S. developers and consumers.

578. **Exhibit 1, page 198, lines 12-13 (between "You know," and "percent", and between "of the top" and "don't end in").** This information contains non-public and confidential data regarding the percent of top developers that engage in focal point pricing on Google Play. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers.

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

579.  **Exhibit 1, page 202, lines 13-14 and 18 (between "it's about" and "percent of", and between "So the other" and "percent of").** This information contains non-public and confidential data regarding the percent of developers that engage in focal point pricing on Google Play. This information is non-public. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers.

580.  **Exhibit 1, page 288, line 3 (between "at" and "percent").** This text contains non-public and confidential data regarding the percentage of subsidy offered to consumers through the Play Points program. This information is non-public. If revealed publicly, an app store competitor could make decisions about its own reward programs and the value of subsidies to offer consumers in order to better compete against Google Play and target those same consumers.

581.  **Exhibit 1, page 288, line 9 (between "at" and "percent").** This text contains non-public and confidential data regarding the percentage of subsidy offered to consumers through the Play Points program. This information is non-public. If revealed publicly, an app store competitor could make decisions about its own reward programs and the value of subsidies to offer consumers in order to better compete against Google Play and target those same consumers. For example, a competitor to Google Play would be able to use this information to meet or beat the subsidy offered by Google Play through its loyalty program, and use that information to draw customers away from Google Play.

582.  **Exhibit 1, page 289, line 15 (between "taking" and "off").** This text contains non-public and confidential data regarding the percentage of subsidy offered to consumers through the Play Points program. This information is non-public. If revealed publicly, an app store competitor could make decisions about its own reward programs and the value of subsidies to offer consumers in order to better compete against Google Play and target those same

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1    consumers. For example, a competitor to Google Play would be able to use this information to

2    meet or beat the subsidy offered by Google Play through its loyalty program, and use that

3    information to draw customers away from Google Play.

4    583.    **Exhibit 1, page 289, line 3 (between "at" and "or").** This text contains non-

5    public and confidential data regarding the percentage of subsidy offered to consumers through

6    the Play Points program. This information is non-public. If revealed publicly, an app store

7    competitor could make decisions about its own reward programs and the value of subsidies to

8    offer consumers in order to better compete against Google Play and target those same

9    consumers. For example, a competitor to Google Play would be able to use this information to

10    meet or beat the subsidy offered by Google Play through its loyalty program, and use that

11    information to draw customers away from Google Play.

12    584.    **Exhibit 1, page 289, lines 10-11 (between "of" and "it"; and between "was"**

13    **and "right").** As with the above excerpt, this text contains non-public and confidential data

14    regarding the percentage of subsidy offered to consumers through the Play Points program. This

15    information is non-public. If revealed publicly, an app store competitor could make decisions

16    about its own reward programs and the value of subsidies to offer consumers in order to better

17    compete against Google Play and target those same consumers. For example, a competitor to

18    Google Play would be able to use this information to meet or beat the subsidy offered by Google

19    Play through its loyalty program, and use that information to draw customers away from Google

20    Play.

21    585.    **Exhibit 1, page 295, lines 2-3 (between "that" and "that").** This text contains

22    non-public and confidential data regarding the percentage of subsidy offered to consumers

23    through the Play Points program. This information is non-public. If revealed publicly, an app

24    store competitor could make decisions about its own reward programs and the value of subsidies

25    to offer consumers in order to better compete against Google Play and target those same

26    consumers. For example, a competitor to Google Play would be able to use this information to

27

28

meet or beat the subsidy offered by Google Play through its loyalty program, and use that information to draw customers away from Google Play.

586. **Exhibit 1, page 298, line 21 (between "the" and "subsidy").** This text contains non-public and confidential data regarding the amount of subsidy offered to consumers through the Play Points program. This information is non-public. If revealed publicly, an app store competitor could make decisions about its own reward programs and the value of subsidies to offer consumers in order to better compete against Google Play and target those same consumers. For example, a competitor to Google Play would be able to use this information to meet or beat the subsidy offered by Google Play through its loyalty program, and use that information to draw customers away from Google Play.

**Consumer Plaintiffs' Opposition to Google's *Daubert* Motion [Dkt. No. 298] (Exhibit A55)**

587. **Page 003, line 21 (between "that the" and "participation rates").** The text contains confidential, non-public data related to the participation rates for the op-in model Google uses for Play Points. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers. In addition, revealing the participation rates in Play Points could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

588. **Page 003, line 8 (between "subsidies from" and "per transaction").** The text describes the non-public confidential subsidy rates of Google Play's Play Points. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers. In addition,

1   revealing Play Points' subsidy rates could influence the negotiating strategies and tactics

2   employed by app developers and other current and prospective counterparties with which Google

3   does or may transact business.

4       589.    **Page 003, lines 23-24 (between "is effectively" and "and it"; and between**

5   **"average of" and "back").** The text describes the non-public confidential subsidy rate of

6   Google Play's Play Points. If publicly revealed, this information could influence the competitive

7   decision making and business strategies employed by Google's app store competitors, for

8   example by influencing how those app stores market themselves to app developers and/or

9   consumers and how they distinguish themselves from Google Play in the eyes of app developers

10  and/or consumers. In addition, revealing Play Points' subsidy rate could influence the negotiating

11  strategies and tactics employed by app developers and other current and prospective

12  counterparties with which Google does or may transact business.

13      590.    **Page 004, lines 3-4 (between "percent discount" and "times the").** The text

14  reveals the non-public confidential subsidy rate of Google Play's Play Points. If publicly

15  revealed, this information could influence the competitive decision making and business

16  strategies employed by Google's app store competitors, for example by influencing how those

17  app stores market themselves to app developers and/or consumers and how they distinguish

18  themselves from Google Play in the eyes of app developers and/or consumers. In addition,

19  revealing Play Points' subsidy rate could influence the negotiating strategies and tactics

20  employed by app developers and other current and prospective counterparties with which Google

21  does or may transact business.

22      591.    **Page 014, lines 18-19 (between "costs at" and "but estimated"; and between**

23  **"from" and "to"; and from "to" to the end of the sentence).** This text contains non-public

24  and confidential information regarding an estimate of Google's marginal cost, relying on

25  Google's non-public and confidential data. This information is non-public. If disclosed, this

26  information could be used by Google's app store competitors to obtain a competitive advantage.

27  For example, confidential information relating to a calculation of Google's marginal costs could

28      DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
    JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
    Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

influence how app store competitors structure their business models or what monetization strategies those competitors pursue to compete with Google. In addition, revealing a calculation of Google's marginal costs could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

592.     **Page 015, line 2, footnote 7 (between "offer to" and "of"; and between "of" and "effective take").** This information contains the identity of a non-party developer partner of Google, who distributes its app on Google Play, as well as details of Google's confidential, non-public offer to that developer partner. The developer identified in this email has a reasonable expectation that Google will maintain the confidentiality of data relating to its app on Google Play. Revealing the offer to that developer would harm Google's relationship with this developer (and potentially others), jeopardizing Google's future business opportunities with them. This information, if revealed, would unfairly influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business, harming Google.

593.     **Page 015, line 2, footnote 7 (between "rate of" and "Ex. 16").** This exhibit contains confidential, non-public information of a Google Play program for its app developer business partners. If that information were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it as leverage in their negotiations with Google, at the detriment of both Google and the app developer partner.

**Consumer Plaintiffs' Opposition to Google's *Daubert* Motion – Exhibit 3 [Dkt. No. 298-4] (Exhibit A56)**

594.     **Exhibit 3, page 139, line 15 (between "rates between" and "percent").** This information contains Google's range of service fee rates with non-party app developers. These service fee rates are non-public, and if revealed to competitors and potential business counterparties, could be used to disadvantage Google. For example, if other app developers (i.e.

194

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

competitors to these non-party app developers) became aware of this information they could use it to inform their negotiation strategies and as leverage in negotiation with Google (e.g. by demanding the same rates).

595.   **Exhibit 3, page 294, lines 5, 7 (between "around" and "percent"; between "know" and "percent"; and between "real" and "percent").** The text describes the non-public confidential subsidy rate of Google Play's Play Points. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers. In addition, revealing Play Points' subsidy rate could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

596.   **Exhibit 3, page 298, lines 18, 21 (between "get" and "back"; and between "for the" and "subsidy").** The text describes the non-public confidential subsidy rate of Google Play's Play Points. If publicly revealed, this information could influence the competitive decision making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to app developers and/or consumers and how they distinguish themselves from Google Play in the eyes of app developers and/or consumers. In addition, revealing Play Points' subsidy rate could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business.

**Consumer Plaintiffs' Opposition to Google's *Daubert* Motion – Exhibit 12 [Dkt. No. 298-12] (Exhibit A57)**

597.   **Exhibit 12, page -581.R (between "abuse in the" and "we were running").** This text identifies a particular app developer partner on Google Play. Revealing the identity of the developer here would reveal their confidential information in the same document.  If publicly

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

disclosed, competitors of Google Play could use this information to target this developer, or the same types of developers, and deprive Google of business opportunities with them.

598.    **Exhibit 12, page -588.R (between "experiments with" and "So far"; between "overall spend" and "is encouraged"; between "developer" and "I'll add"; and between "look like" and "asked if").** This text identifies a particular app developer partner on Google Play. Revealing the identity of the developer here would reveal their confidential information in the same document. If publicly disclosed, competitors of Google Play could use this information to target this developer, or the same types of developers, and deprive Google of business opportunities with them.

599.    **Exhibit 12, page -589.R (between "working with" and "on the EAP"; between "that information" and "for instance").** This text identifies a particular app developer partner on Google Play. Revealing the identity of the developer here would reveal their confidential information in the same document.  If publicly disclosed, competitors of Google Play could use this information to target this developer, or the same types of developers, and deprive Google of business opportunities with them.

600.    **Exhibit 12, page -590.R (between "invaluable" and "was willing"; between "for" and "we got stat"; and between "from" and "too that they").** This text identifies particular app developer partners on Google Play. Revealing the identities of the developers here would reveal their confidential information in the same document. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them.

601.    **Exhibit 12, page -591.R (between "expand the" and "EAP"; between "engage with" and "starting with").** This text identifies particular app developer partners on Google Play. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them.

196

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

602.     **Exhibit 12, page -597.R (text within the presentation slide, middle column: below "Drive incremental buyers").** This text identifies particular app partners as well as confidential feedback on sub dollar pricing from those developers. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them.

603.     **Exhibit 12, page -601.R (text within the presentation slide: full text of cells at rows 2–9, columns 2-3 of table; between "avg" and "sub $0.50"; between "less than" and "sub $0.50"; between "average" and "higher observed".  Text outside the presentation slide: between "represented" and "of total").**  This text reveals confidential, non-public, information about the sub-dollar impact across different regions and countries.   If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to developers regionally and by country and how they distinguish themselves from Google Play in the eyes of app developers.

604.     **Exhibit 12, page -602.R (text between "highest of the two: (1) ~" and "(2) The price"; after "transaction cost < ~"; after that "not higher than"; after "mature markets, e.g., ~" through end of phrase); page -603.R (from "not exceed" to the end of the sentence; between "equivalent of" and "except in"; and between "up to" and "avg transaction").** This text reveals confidential, non-public information about the transaction cost for low value transactions. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to developers regionally and how they distinguish themselves from Google Play in the eyes of app developers.

605.     **Exhibit 12, page -604.R (entire table except for first column and first row; between "(1)" and "(2) the price"; between "cost" and "OR"; and between "higher than" and "Buckets").**  This text reveals confidential, non-public information about countries and the minimum value transactions for apps in those countries. If publicly revealed, this information

197

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to developers regionally and how they distinguish themselves from Google Play in the eyes of app developers.

606.    **Exhibit 12, page -605.R (between "markets with" and "(US)").** This text identifies particular app developer partners on Google Play. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them.

607.    **Exhibit 12, page -607.R (presentation slide heading; from "2020 at" to the end of the presentation slide subheading; and both entire tables except for each table's first column and first two rows).** This text identifies a particular app developer partner on Google Play and also discloses confidential, non-public data about that non-party developer's orders and spends. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them. Revealing that data would harm Google's relationship with this developer (and potentially others), jeopardizing Google's future business opportunities with them.

608.    **Exhibit 12, page -608.R (presentation slide heading; from "2020 at" to the end of the presentation slide subheading; and both entire tables except for each table's first column and first two rows).** This text identifies a particular app developer partner on Google Play and also discloses confidential, non-public data about that non-party developer's orders and spends. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them. Revealing that data would harm Google's relationship with this developer (and potentially others), jeopardizing Google's future business opportunities with them.

609.    **Exhibit 12, page -609.R (between "We example" and "wants to learn").** This text identifies particular app developer partners on Google Play. If publicly disclosed,

competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them.

610.    **Exhibit 12, page -613.R (all text in column two below "Implications for wave 2").**  This text reveals confidential and non-public details of Google's business strategy for Google Play. If those details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google.

611.    **Exhibit 12, page -614, -628 (email usernames).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

612.    **Exhibit 12, page -615.R (between "price points" and "was an early adopter"; between "sub-dollar pricing" and "or started"; and from "testing sub-dollar" to the end of the sentence).** This text identifies particular app developer partners on Google Play. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them.

613.    **Exhibit 12, page -619.R (all text under heading in the right column of the presentation slide).** This text identifies particular app partners as well as confidential feedback on higher buyer penetration from those developers. If publicly disclosed, competitors of Google Play could use this information to target those developers, or the same types of developers, and deprive Google of business opportunities with them.

614.    **Exhibit 12, page -621.R (text within the presentation slide: between "Fast-Growth Play Markets" and "devs monetize"; between "markets" and "packages"; between "covers" and "in spend"; between "markets" and "devs"; between "markets" and "packages";  between "covers" and "spend"; between "Est." and "potential upside"**

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

**(first instance); between "5 genres" and "devs"; between "devs" and "packages"; between "packages" and "spend"; between "Est." and "potential upside" (second instance); first two lines below concentric circles.  Text below presentation slide: between "over" and "developers"; between "almost" and "in annual"; and between "could reach" and "of hero").**  This text reveals confidential and non-public details of app developers on Google Play's monetization strategies and Google Play's revenue.  If publicly disclosed, competitors of Google Play could use this information to copy Google's business strategy, to Google's detriment.

615.    **Exhibit 12, page -625.R (between "pricing insights" and "in order to prioritize"; and between "to evaluate" and "Once the above").**  This text reveals confidential and non-public details of Play Console's business and pricing strategy.  Revealing non-public details about Google Console's, could result in competitors of Google Console using this information to copy Google's business strategy, to Google's detriment.

616.    **Exhibit 12, page -626.R (between "Expand to" and "(mostly emerging)"; between "competitors prices" and "Activate"; and between "Activate" and "Go global").**  This text reveals confidential, non-public, information about the sub-dollar impact across different countries.   If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to developers by country and how they distinguish themselves from Google Play in the eyes of app developers.

617.    **Exhibit 12, page -627.R (presentation slide heading; entire table, excluding first row; between "free for" and "transactions"; and full text of two sub-bullets below "transaction economics").**  This text reveals confidential, non-public, information about the sub-dollar impact across different countries.   If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to developers by country and how they distinguish themselves from Google Play in the eyes of app developers.

200

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

618.   **Exhibit 12, page -629.R (between "lower than" and "even though"; between "sub-dollar pricing" and "Wave 1"; and between "less than" and "of fixed fees").** This text reveals confidential, non-public, information about the sub-dollar impact across different countries.   If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to developers by country and how they distinguish themselves from Google Play in the eyes of app developers.

**Consumer Plaintiffs' Opposition to Google's *Daubert* Motion – Exhibit 14 [Dkt. No. 298-14] (Exhibit A58)**

619.   **Exhibit 14, page -868, -875 (email usernames).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

620.   **Exhibit 14, page -870.R (between "by" and "when"; between "Apps" and "vs."; between "vs." and "for Games"; between "Games" and "Content"; between "Tools" and "Policy"; between "social" and "performance"; between "Play (~" and "from apps"; between "like" and "etc."; between "iOS by" and "annually . ."; between "annually . ." and "contributes"; between "contributes" and "out of that"; between "out of that" and "next one is"; between "next one is" and "at"; and from "at" to the end of the line).** This text identifies Google's app developer partners and reveals their confidential and non-public spending on Google Play, as well as revealing confidential, non-public data regarding the spend game between apps and games on Play. The developers identified in this text have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps on Google Play.   Revealing that data would harm Google's relationship with these developers (and potentially others), jeopardizing Google's future business opportunities with them. This information, if revealed, could influence the negotiating strategies and tactics employed by app

201

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

developers and other current and prospective counterparties with which Google does or may transact business, harming Google.

621. **Exhibit 14, page -871.R (Within presentation slide: chart; between "Gap ="
and "Annual"; between "Gap =" and "games".  Under slide: from beginning of first line to
"is"; between "is" and "of APAC"; between "excluding" and "play's"; between "from"
and "% to"; between "% to" and "%"; and between "Others =" and "LATAM").** This
confidential, non-public information both reveals consumer spend on Play by region and also
identifies Google's app developer partners, revealing their confidential and non-public spending
on Google Play. The developers identified in this text have a reasonable expectation that Google
will maintain the confidentiality of data relating to their apps on Google Play.   Revealing that
data would harm Google's relationship with these developers (and potentially others),
jeopardizing Google's future business opportunities with them. This information, if revealed,
could influence the negotiating strategies and tactics employed by app developers and other
current and prospective counterparties with which Google does or may transact business,
harming Google.

622. **Exhibit 14, page -872.R (Chart).** This confidential, non-public information
reveals consumer spend on Play by region.  If publicly revealed, this information could influence
the competitive decision-making and business strategies employed by Google's app store
competitors, for example by influencing how those app stores market themselves to U.S.
developers and how they distinguish themselves from Google Play in the eyes of U.S.
developers.

623. **Exhibit 14, page -873.R (Within presentation slide: between "largest -" and
"$"; between "($" and "from top"; between "Content =" and "Policy"; between "Policy ="
and "Performance"; from "Performance =" to the end of the line; figures after "•   Direct
=" [all three instances]; figures after "Scale =" [all three instances]"; all three charts.
Below presentation slide: between "340 missing developers deliver ~" and "16.5k missing";
from "16.5k missing developers deliver ~" to the end of the line; between "107 developers**

202

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

1   deliver ~" and "2.3k developers"; between "2.3k developers deliver" to "→ Head" [first

2   instance]; between "36 developers deliver ~" to "the next 450"; between "450 deliver" to

3   "→ Head" [second instance]).  This confidential, non-public information describes content,

4   policy, and performance gaps with iOS across different regions.  If publicly revealed, this

5   information could influence the competitive decision-making and business strategies employed

6   by Google's app store competitors, for example by influencing how those app stores market

7   themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes

8   of U.S. developers.

9       624.    **Exhibit 14, page -874.R (Within presentation slide: between "Gap:" and**

10  **"highly"; between "EMEA at" and "sizeable"; from "deliver ~" to the end of the sub-bullet**

11  **line; from "deliver +" to the end of the sub-bullet line; both charts and table.  Below**

12  **presentation slide: from beginning of line to "-- Pilot flight"; from beginning of line to "-**

13  **office suite, coming to Android"; from beginning of line to "- navigation, paid"; from**

14  **beginning of line to "- history &"; from beginning of line to "- social network boosting";**

15  **from beginning of line to "- GPS"; from beginning of line to "- office suite, paid app"; from**

16  **beginning of line to "- services marketplace"; from beginning of line to "- chat app"; from**

17  **beginning of line to "- recently banned?").**  This confidential, non-public information

18  describes consumer spend across regions and by type of app, as well as describing the spending

19  gap certain developers make on iOS versus Android OS. The developers identified in this text

20  have a reasonable expectation that Google will maintain the confidentiality of data relating to

21  their apps on Google Play.   Revealing that data would harm Google's relationship with these

22  developers (and potentially others), jeopardizing Google's future business opportunities with

23  them. This information, if revealed, could influence the negotiating strategies and tactics

24  employed by app developers and other current and prospective counterparties with which Google

25  does or may transact business, harming Google.

26      625.    **Exhibit 14, page -876.R (between "Policy Gap -" and "with over"; between**

27  **"EMEA at" and "and Social"; from "Music at" to the end of the bullet line; between "on**

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

**iOS and" and "is"; between "is" and "of total gap"; both charts and table).** This slide shows the gap between app developers who use Apple Store's billing, but do not use Google Play's billing, the spending gap across regions and app categories, and identifies app social and music app developers with this gap. The developers identified in this text have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps on Google Play. Revealing that data would harm Google's relationship with these developers (and potentially others), jeopardizing Google's future business opportunities with them. This information, if revealed, could influence the negotiating strategies and tactics employed by app developers and other current and prospective counterparties with which Google does or may transact business, harming Google.

626.     **Exhibit 14, page -877.R (between "Performance Gap -" and "from top"; between "EMEA at" and "and US"; between "at" and "Lifestyle" [next line]; between "Lifestyle represents" and "of developers making"; between "developers making" and "and" [left textbox, second bullet]; between "and" and "making" [left textbox, second bullet]; from "making" to the end of the line [left textbox, second bullet]; and both charts and table).** This information describes the performance gap between app developers on Apple's App Store and Google Play, the spending gap across regions, and also identifies app developers in certain product verticals  with this gap. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The developers identified in this text also have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps on Google Play.  This text also reflects internal Google data on developer earnings. Google spends significant resources compiling and maintaining this valuable data, which is non-public, and if revealed to customers, competitors, or potential business counterparties, could be used to disadvantage Google. For example, Google's competitors could gain insight into Google's knowledge of developer earnings

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

at no cost, unfairly tailoring their own business strategy at Google's expense to compete more effectively with Google Play.

627.     **Exhibit 14, page -878.R (between "Content =" and "Policy"; between "Policy =" and "Performance"; from "Performance =" to the end of the line; figures after "• Direct =" [all three instances]; figures after "•   Scale =" [all three instances]"; and figures after "Year 1 Spend Estimate:" [all three instances]").** This confidential, non-public information describes content, policy, and performance gaps with iOS across different regions. If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers.

628.     **Exhibit 14, page -879.R (between "that we believe" and "is addressable in the first year"; between "saying that of the" and "gap, we believe only"; between "we believe only" and "is addressable?"; and from the beginning of the line to "is an obvious product initiative").** This text both describes non-public confidential information about Play's financial performance and identifies an app developer partner on Google Play in the context of discussing performance gaps between Google Play and the Apple App Store.  If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The developers identified in this text also have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps on Google Play.

629.     **Exhibit 14, page -882.R (between "underperforming by" and "when compared"; between "Project" and "is addressable").** This text describes non-public confidential information about Play's financial performance. If publicly revealed, this information could influence the competitive decision-making and business strategies employed

205

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers.

630. **Exhibit 14, page -884.R (between "Dominated by" and &"; between "&" and "Less than 20%"; two charts; figures in Venn diagram; from "Total= to the end of the line").** This slide identifies app developer business partners on Play in the context of the spend gap with Apple, as well as revealing confidential, non-public information comparing apps and games buyers.  If publicly revealed, this information could influence the competitive decision-making and business strategies employed by Google's app store competitors, for example by influencing how those app stores market themselves to U.S. developers and how they distinguish themselves from Google Play in the eyes of U.S. developers. The developers identified in this text also have a reasonable expectation that Google will maintain the confidentiality of data relating to their apps on Google Play.

**Consumer Plaintiffs' Opposition to**
**Google's *Daubert* Motion – Exhibit 15 [Dkt. No. 298-14]**
**(Exhibit A59)**

631. **Exhibit 15, page -922, -931, -937, -941, -942, -955 (email usernames).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

632. **Exhibit 15, page -939.R (between "Youtube" and "TBD").** This text identifies a particular app developer partner on Google Play. Revealing the identity of the developer here would reveal their confidential information in the same document.  If publicly disclosed, competitors of Google Play could use this information to target this developer, or the same types of developers, and deprive Google of business opportunities with them.

633. **Exhibit 15, page -940.R (between "Festival" and "DCB"; between "program" and "pilot").** This text identifies particular app developer partners on Google Play.

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1  Revealing the identities of the developers here would reveal their confidential information in the

2  same document.  If publicly disclosed, competitors of Google Play could use this information to

3  target these developers, or the same types of developers, and deprive Google of business

4  opportunities with them.

5
6
**Consumer Plaintiffs' Opposition to
Google's *Daubert* Motion – Exhibit 16 [Dkt. No. 298-14]
(Exhibit A60)**

7      634.  **Exhibit 16, page -506 (between "Steps on" and "/Google Play" in email**

8  **subject line).** This information contains the identity of a non-party developer who distributes its

9  app on Google Play. The developer identified in this email has a reasonable expectation that

10  Google will maintain the confidentiality of data relating to its app on Google Play. This

11  information precedes a discussion relating to the same developer that contains this developer's

12  confidential information relating to its revenue share and business partnership with Google Play.

13  Revealing the identity of the developer here would thus reveal their confidential information in

14  the same email. Revealing that data would harm Google's relationship with this developer (and

15  potentially others), jeopardizing Google's future business opportunities with them.

16      635.  **Exhibit 16, page -506 (first paragraph in email body: between "steps for**

17  **the" and "/Play Billing").** This information contains the identity of a non-party developer

18  partner of Google, who distributes its app on Google Play. The developer identified in this email

19  has a reasonable expectation that Google will maintain the confidentiality of data relating to its

20  app on Google Play. Revealing that data would harm Google's relationship with this developer

21  (and potentially others), jeopardizing Google's future business opportunities with them. This text

22  also reveals the app developer's confidential and non-public information relating to a business

23  negotiation with Google (i.e. revealing the effect on effective revenue share for Google). This

24  information, if revealed, could influence the negotiating strategies and tactics employed by app

25  developers and other current and prospective counterparties with which Google does or may

26  transact business, harming Google.

27
28
DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48EA-8F77-DC0621022BE4

636.     **Exhibit 16, page -506 (first row, fourth column of table: from beginning of sentence to "reduced the"; between "results in:" and "processed"; between "transactions at" and "per subscriber"; between "per subscriber" and "processed"; between "transactions at" and "per subscriber"; between "an additional" and "marketing bounty"; between "marketing bounty" and "also asked"; and from "asked to" to the end of the cell).** This text describes confidential and non-public details of Play Billing negotiations between Google and an app developer partner. If those negotiation details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike ( e.g., by demanding that Google provide the same terms to them).

637.     **Exhibit 16, page -506 (first row, second column of table: between "bounty of" and "for a subscriber's" and between "month" and "paid for").** This text describes confidential and non-public details of Play Billing negotiations between Google and an app developer partner. If those negotiation details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike ( e.g., by demanding that Google provide the same terms to them).

638.     **Exhibit 16, page -506 (first row, third column of table: between "While" and "was modelling" [sic]; and from "on the following" to the end of cell).** This text describes confidential and non-public details of Play Billing negotiations between Google and an app developer partner, as well as identifying a non-party developer who distributes its app on Google Play. If those negotiation details were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike ( e.g., by demanding that Google provide the same terms to them). The information also implicates the non-party developer partners' confidentiality interests. Google's business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

639.    **Exhibit 16, page -506 (second row, first column of table: from "Google's breakeven is" through the end of the cell; second row, second, third, and fourth columns table: entire cells).** This text contains confidential, non-public information reflecting the forecasted costs of a potential business deal with a non-party app developer partner on Google Play. If those forecasted costs were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike ( e.g., by demanding that Google provide the same terms to them).

640.    **Exhibit 16, page -506 (table column headers: between "Google proposal" and "initial counter proposal"; and between ""initial counter proposal" and "full counter").** This information contains the identity of a non-party developer who distributes its app on Google Play. The developer identified in this email has a reasonable expectation that Google will maintain the confidentiality of data relating to its app on Google Play. This information precedes a discussion relating to the same developer that contains this developer's confidential information relating to its confidential business negotiations with Google Play. Revealing the identity of the developer here would thus reveal their confidential information in the same email. Revealing that data would harm Google's relationship with this developer (and potentially others), jeopardizing Google's future business opportunities with them.

641.    **Exhibit 16, page -506 (third bullet point after table: between "connect with" and "next week").** This information contains the identity of a non-party developer (via the

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

developer's employee) who distributes its app on Google Play. The developer identified in this email has a reasonable expectation that Google will maintain the confidentiality of data relating to its app on Google Play. This information precedes a discussion relating to the same developer that contains this developer's confidential information relating to its revenue share and business partnership proposal with Google Play. Revealing the identity of the developer here would thus reveal their confidential information in the same email. Revealing that data would harm Google's relationship with this developer (and potentially others), jeopardizing Google's future business opportunities with them.

642.    **Exhibit 16, page -506 (third row, fourth column of table: from beginning of sentence to "internal investigation"; and between "data to" and "would be").** This information identifies an app developer business partner of Google Play and describes considerations in the app developers' counter proposal for a deal between that app developer and Google. If the details of that counterproposal were revealed to competitors and potential business counterparties, they could use that information to disadvantage Google. For example, if other app developers became aware of this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Google, to the detriment of Google and the app developer business partner alike (e.g., by making a similar counterproposal demand to them). Similarly, if Google's competitors learned of the purported proposals exchanged under Google's confidential agreement with this app developer, they could use this information to disadvantage Google in negotiations with prospective business partners. The information also implicates a non-party's confidentiality interests. Google's business partners, who are not parties to this litigation, have a reasonable expectation that Google will maintain the confidentiality of contractual terms.

643.    **Exhibit 16, page -506, -507 (email usernames).** The identified text identifies the email usernames of current or former Google employees, and no public interest is served by the public disclosure of this sensitive, personal information. These employees have a reasonable expectation of privacy that would be infringed upon if this information were to be made public.

**Google's Reply In Support Of *Daubert* Motion [Dkt. No. 303]**
**(Exhibit A61)**

644.      **Page 009, footnote 2 (between "from" and "to"; and between "to" and ",**
**Opp.").** This information contains non-public and confidential data regarding the range of
Google's costs in relation to apps in the Entertainment and Music and Audio categories. The
Google Play product team treats this non-public information as strictly confidential. If publicly
revealed, this information could influence the negotiating strategies and tactics employed by app
developers and other current and prospective counterparties with which Google does or may
transact business. In addition, revealing Google's costs to distribute apps on Google Play could
influence the competitive decision-making and business strategies employed by Google's app
store competitors, for example by influencing these app stores' service fees or how they
otherwise market themselves to U.S. developers and distinguish themselves from Google Play in
the eyes of U.S. developers.

645.      **Page 010, line 3 (between "and only" and "of U.S. consumers").** This text
contains non-public and confidential information relating to the portion of U.S. consumers who
participate in Google Play's Play Points program, as well as the percentage of U.S. consumers
who have redeemed Play Points. Disclosure of this information would severely and adversely
impact Google's current competitive position, as well as its ability to design and market new
loyalty programs to consumers.

646.      **Page 010, line 14 (between "offered an" and "discount, which").** This text
contains non-public and confidential data relating to Google Play Points and the purported
subsidy Google would offer consumers in Plaintiffs' but-for world based on Google's
confidential financial data. The disclosure of this information would potentially cause serious
harm to Google's competitive position by indicating Google's actual subsidy rate via Play Points.
For example, this information could influence Google's app store competitors in terms of how
they market themselves to U.S. developers and how they distinguish themselves from Google
Play in the eyes of U.S. developers.

DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF
JOINT OMNIBUS ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 209352F8-1B02-48FA-8F77-DC0621022BE4

1    I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

2 19th day of August 2022 in Mountain View, California.

3

4

5    _____

Christian Cramer

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

212