| | |
|---|---|
| Karma M. Giulianelli (SBN 184175)<br>karma.giulianelli@bartlitbeck.com<br>**BARTLIT BECK LLP**<br>1801 Wewatta St., Suite 1200<br>Denver, CO 80202<br>Telephone: (303) 592-3100 | Brendan P. Glackin (SBN 199643)<br>bglackin@agutah.gov<br>**OFFICE OF THE UTAH ATTORNEY GENERAL**<br>160 E 300 S, 5th Floor<br>PO Box 140872<br>Salt Lake City, UT 84114-0872<br>Telephone: (801) 366-0260 |
| Hae Sung Nam (*pro hac vice*)<br>hnam@kaplanfox.com<br>**KAPLAN FOX & KILSHEIMER LLP**<br>850 Third Avenue<br>New York, NY 10022<br>Telephone: (212) 687-1980 | *Counsel for the Plaintiff States*<br><br>Douglas J. Dixon (SBN 275389)<br>ddixon@hueston.com<br>**HUESTON HENNIGAN LLP**<br>620 Newport Center Drive, Suite 1300<br>Newport Beach, CA 92660<br>Telephone: (949) 229-8640 |
| *Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation* | *Counsel for Plaintiffs Match Group, LLC, et al.* |
| Paul J. Riehle (SBN 115199)<br>paul.riehle@faegredrinker.com<br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>Four Embarcadero Center, 27th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 591-7500 | Glenn D. Pomerantz (SBN 112503)<br>glenn.pomerantz@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>350 South Grand Avenue, Fiftieth Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 683-9100 |
| Christine A. Varney (*pro hac vice*)<br>cvarney@cravath.com<br>**CRAVATH, SWAINE & MOORE LLP**<br>825 Eighth Avenue<br>New York, NY 10019<br>Telephone: (212) 474-1000 | Brian C. Rocca (SBN 221576)<br>brian.rocca@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1596<br>Telephone: (415) 442-1000 |
| *Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC et al.* | *Counsel for Defendants Google LLC et al.* |

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT SUBMISSION RE: FEBRUARY 1, 2023 MINUTE ENTRY ON EXPERT TESTIMONY**<br><br>Judge: Hon. James Donato |

The parties respectfully submit this joint statement in response to the Court's February 1, 2023 Minute Order (MDL Dkt. No. 440).

I. **Google's Position**

The Court's February 1, 2023 Minute Order instructed the "four plaintiffs' groups" to "confer on coordinating their experts so that the plaintiffs as a group will present an expert for each common issue," and ordered Plaintiffs to "provide Google with their revised list of experts so Google may consider which, if any, of the experts Google will attempt to exclude from trial." Plaintiffs have refused to comply with the Court's order until after the close of expert discovery, less than two weeks before the *Daubert* deadline.

Google has proposed a compromise in which Plaintiffs would provide their coordinated expert list by March 2, before the depositions of Plaintiffs' four main economic experts and both of their security experts are scheduled. All of Plaintiffs' main economic experts address market definition and anticompetitive effects and three address damages. In fact, consumers' and the States' economic experts both provide opinions on alleged damages to consumers using different damages models. Those experts both calculate overcharge damages, casting doubt on their confident assertion that at least three economists can testify as to damages consistent with the Court's order. Plaintiffs' two security experts also have overlapping opinions on many issues. The March 2 disclosure date would give Plaintiffs one month from the Court's order to comply, while giving Google sufficient notice to narrow its *Daubert* motions to timely schedule any hot tub on the Court's calendar and avoid unnecessary depositions.

Plaintiffs have rejected Google's proposal. Instead, Plaintiffs propose to comply with the Court's order on April 12 after the close of expert discovery, more than two months after the Court's order, and eight days before the deadline for Google to file the *Daubert* motions that the order is designed to streamline.

Worse, Plaintiffs have proposed serving a list with a series of complex conditions that render the Court's order effectively irrelevant. According to Plaintiffs, an expert on their coordinated list will be able to rely on opinions on the same issue by an expert who is not on the list and who will not

testify at trial, yet Plaintiffs would not disclose which expert would adopt the other's opinion until after the close of expert discovery. Further, Plaintiffs claim the right to change their list of experts if the Court grants a *Daubert* motion to exclude an expert on the list, a "do over" that merely adds to the work of the Court and leaves Defendants in the dark about which experts Plaintiffs have selected. None of this is consistent with the Court's order.

Plaintiffs' accusation that Google is engaged in opportunism is wrong. The Court has ordered Plaintiffs to serve a coordinated expert list and Plaintiffs do not and cannot question that obligation. The only issue is whether Plaintiffs should provide that list at a time that is consistent with the Court's admonition for an efficient process and enables Google to avoid wasting time taking depositions of experts who will not testify and drafting *Daubert* motions that it will not need to file. The answer is yes. If Plaintiffs wish they had more time to coordinate, they have only themselves to blame. Plaintiffs stipulated and the Court ordered that "Plaintiffs shall coordinate discovery efforts to the fullest extent reasonably possible to minimize expense and facilitate the orderly and efficient progress of the Related Actions." 3:20-cv-05671-JD, ECF 89 ¶ 2. Plaintiffs' submission admits that they simply chose not to do so with respect to experts, stating that Plaintiffs did not "vet, choose or work with" each other's experts. Plaintiffs cannot use their failure to follow that order as a justification to not follow the order at issue now.

Nor can Plaintiffs shift the blame to Google by arguing that Google had not moved for a Court order requiring a coordinated list. That is irrelevant. Plaintiffs have *twice* been ordered to coordinate and it is not Google's obligation to compel them to comply. Plaintiffs acknowledge, as they must, that they cannot present overlapping experts and nothing Google has done could justify their refusal to do so in a manner that makes sense. Plaintiffs should comply with the Court's order no later than March 2, before depositions of Plaintiffs' overlapping economic and security experts begin and sufficiently in advance of the close of expert discovery that Google can narrow its list of potential *Daubert* motions and schedule the hot tub.

A.  **Plaintiffs Should Serve Their Coordinated Expert List On or Before March 2**

Plaintiffs' refusal to comply until after the close of expert discovery is inefficient and unfair. First, providing a coordinated expert list eight days before the *Daubert* deadline does not accelerate Google's ability to "consider which, if any, of the experts Google will attempt to exclude from trial." Google would have to begin preparing *Daubert* motions without knowing whether the experts who are the subject of that motion will actually be testifying at trial. Second, by delaying Google's ability to determine which *Daubert* motions are necessary, Plaintiffs' proposal would delay, until sometime in April, the scheduling on the Court's calendar of the hot tub proceeding. Third, Plaintiffs' proposal would waste resources by requiring Google to take depositions of experts who will not testify and to depose experts on opinions they will not be offering at trial.

The Court's Coordination Order required Plaintiffs to "coordinate discovery efforts to the fullest extent reasonably possible to minimize expense and facilitate the orderly and efficient progress of the Related Actions." However, Google's economic experts have already been forced to respond to five Plaintiff experts, several of whom will not testify regarding some economic issues common to Plaintiffs' claims. Google also has had to respond to opinions from multiple security experts. This unnecessary and duplicative discovery should not continue given the Court's recent order.[1]

Plaintiffs have advanced several purported justifications for their refusal to comply with the Court's order. None has merit. First, Plaintiffs have argued that they should not have to disclose a coordinated expert list until after the close of expert discovery because they need to observe how the various Plaintiff experts perform at their depositions. That is the opposite of coordination and improper. Nothing in the Court's order delays Plaintiffs' obligation to comply until they have conducted a tryout for their economists and security experts, which would unfairly require Google to waste resources deposing experts.

Second, Plaintiffs have argued that they should be able to delay compliance with the Court's

---

[1] Plaintiffs' suggestion that they find themselves in the same position is misplaced. Google has not disclosed multiple experts on market definition and anticompetitive effects. As Plaintiffs themselves note, it is natural for experts on those separate issues to touch upon some common facts. Thus, it is hardly surprising that both Dr. Gentzkow and Dr. Tucker both address alternative distribution channels as well as increased output and quality. Plaintiffs also grossly mischaracterize the number of pages in reports of Google's economic experts as nearly 1,000 pages are *exhibits* to Google's damages expert's report showing that developers did not lower prices in response to a service fee reduction.

order until just before the *Daubert* deadline because some of their economists have analyzed overlapping issues in ways that other experts did not. But the fact that Plaintiffs' experts chose somewhat different methods of addressing the same topics en route to the same conclusions does not justify their approach. The Court's order provides that "the plaintiffs as a group will present an expert for each common issue," not that they will choose their favorite evidence from each expert on market definition, for example, and thus present multiple experts on the same topic. Even if the order permitted Plaintiffs to do so, it would not facilitate the narrowing of *Daubert* motions, scheduling of the hot tub or avoiding unnecessary deposition questioning to permit Plaintiffs to hide the ball on which experts will be offering which opinions or analyses until after their four main economists have been deposed. Indeed, Plaintiffs' submission contains numerous ways in which their experts presented different analyses of the same issue as a result of Plaintiffs' failure to coordinate. Plaintiffs thus can hardly claim to be unprepared to identify which experts will testify on which issues roughly one month after being ordered to do so.

> **B.    Plaintiffs Have Proposed to Serve a Coordinated Expert List on Unfair Terms that Do Not Comply with the Court's Order**

In addition to proposing an improper delay, Plaintiffs are also proposing to provide a list that does not comply with that order. First, Plaintiffs have asserted that the coordinated list they serve will be subject to change if the Court grants a *Daubert* motion to exclude one of the experts. That is not what the Court's order says. In fact, Plaintiffs' position that they get a do-over if the expert they list is excluded would completely undermine the order, which states that the coordinated expert list is supposed to help Google "consider which, if any, of the experts Google will attempt to exclude from trial." If Plaintiffs could substitute one expert for another who has been excluded and who has not been subject to a *Daubert* motion, the parties would be forced to engage in multiple rounds of *Daubert* motions, which would be even more inefficient than the status quo the Court's order has attempted to streamline. Plaintiffs attempt to caveat this request by saying that they would only take this step with "good cause," but notably refuse to acknowledge that the granting of a *Daubert* as to their chosen expert is not "good cause."

Second, Plaintiffs' position that their proposed April 12 disclosure of a coordinated list also would be subject to change if the party that originally retained an expert on that list exits the case—for example, in the case of a settlement—also lacks any support in the text of the Court's order. Plaintiffs do not claim that any Plaintiff expert would not be available to testify on behalf of plaintiffs that did not originally retain them, and the Court's order requires that the Plaintiffs as a group choose a reasonable number of experts. Plaintiffs should be held to the coordinated list that they serve absent a showing of good cause and lack of prejudice to Google. A settlement by a party that originally retained an expert is not good cause because Plaintiffs are being ordered now to select a limited set of combined experts they will rely on through trial. Allowing them to mix and match further between now and trial would deprive Google of a fair opportunity to prepare for, and challenge, the replacement expert's testimony and would not satisfy Plaintiffs' expert disclosure obligations under the Federal Rules.[2] In any case, the hypothetical possibility that one plaintiff or group of plaintiffs will not be a party at trial and that experts originally retained by that party will not be willing or able to testify on behalf of other plaintiffs cannot justify the clear prejudice and inefficiency from providing notice to Google after they have engaged in unnecessary depositions and just two weeks before the *Daubert* deadline.

Third, Plaintiffs indicated during meet-and-confer that they could comply with the Court's order by having an expert on their coordinated list rely on opinions on the same issue by an expert who is not on the list and who will not testify at trial. The Court's order says no such thing. The Federal Rules limit Plaintiffs' experts to the opinions disclosed in their reports. Plaintiffs cannot belatedly expand those reports by incorporating hundreds of pages of opinions from other experts, which would require Google to depose every expert about every other expert's opinions. At any rate, it would be unfair for Plaintiffs to inform Google after it has deposed Plaintiffs' experts whether they will be testifying based on the opinions of other experts. Plaintiffs suggest that Google mischaracterizes Plaintiffs' position and the meet-and-confer process on this point, but they do not deny that they are trying to reserve the right to replace an expert whose testimony is excluded.

---

[2] Plaintiffs' suggestion that they would not object to Google filing a *Daubert* motion to an expert that was later added to the trial witness list would defeat the purpose of the Court's order.

\*          \*          \*          \*

Plaintiffs should "provide Google with their revised list of experts" as required by the Court's February 1, 2023 order no later than March 2, 2023, which is a reasonable timeline. That list should not be subject to modification absent a showing to the Court of good cause and lack of prejudice to Google. Plaintiffs should not be permitted to have an expert rely on opinions of other experts unless the expert did so in the reports disclosed to Google in compliance with the Court's Scheduling Order.

## II. Plaintiff's Position

Since August 2020, Google and several groups of Plaintiffs have litigated coordinated—but separate—cases before this Court. The four Plaintiff groups comprise four distinct groups of clients, prosecuting four separate actions under four separate complaints, each with its own unique claims. Each group of Plaintiffs has separate interests and has developed its case accordingly, including by thoroughly vetting, retaining, and working with separate teams of experts for months, at great expense to each individual party.

Prior to the last two weeks, *not once* has Google raised any concerns regarding the number of experts retained by Plaintiffs, any overlap between them, or any need to eliminate such overlap prior to depositions, prior to *Daubert* motions, or at all. Google knew all along that Plaintiffs have separate complaints, that they are represented by separate counsel, that they have separate claims, and that they seek separate remedies. And since October 3, 2022, Google has known the number and identity of *all* the experts disclosed by *all* Plaintiffs, as well as the opinions provided by each. In the intervening months, Google has served rebuttal expert reports addressing each of Plaintiffs' experts and proceeded to negotiate the scheduling of expert depositions on the full scope of each expert's reports. Google itself has retained *seven* experts compared to the eleven Plaintiffs retained—with several opining on overlapping issues (including three economists and two technical experts).

On February 1, 2023, this Court for the first time ordered Plaintiffs to further consolidate their trial presentation of experts and identify which expert will testify as to "each common issue" before Google proceeds to file any *Daubert* motions on April 20. Plaintiffs intend to do just that—and indeed always intended to streamline their expert presentation for trial—by providing their revised expert list

three business days after the conclusion of expert discovery. Yet Google moves the Court to *expedite* that disclosure and force Plaintiffs to make it hastily, before expert depositions, claiming "prejudice." Google also attempts to dictate the level of generality of the non-overlapping "topics" to which each Plaintiffs' expert will testify. Google's position is simply an opportunistic effort to dictate Plaintiffs' trial presentation and exclude non-duplicative evidence from trial. Google's attempt is divorced from the animating goal of the Court's order—to further the efficient presentation of evidence at trial and to streamline potential *Daubert* motions coming from Google.[3]

As set forth below, Google's position is a blatant act of opportunism, is untethered from the Court's order, and would be extremely prejudicial to Plaintiffs. The Court should reject Google's request for a March 2 disclosure of Plaintiffs' revised expert list.

### A.    Plaintiffs' Proposed April 12 Disclosure Is Reasonable

Plaintiffs fully intend to comply with the Court's order and began conferring and coordinating among themselves the day after it was entered. Plaintiffs fully recognize that the order was intended to make any concurrent expert hearing more efficient. Plaintiffs are therefore working diligently to streamline the field of experts and eliminate duplication before *Daubert* motions are due. But Google attempts to read into the order directives it does not contain. The order says *nothing* about Plaintiffs rushing to disclose a revised expert list before certain depositions take place. The Court did not set a date for Plaintiffs to provide their revised list of experts. And for good reason: The decision by any Plaintiff to discard certain expert testimony developed over many months, in favor of expert testimony developed by another Plaintiff group, cannot be made lightly. Each Plaintiff group needs time to acquaint itself with the testimony of experts it did not vet, choose, or work with in preparing their reports and testimony. It would be severely prejudicial for any Plaintiff to be forced to abandon its experts hastily, nine months before trial, many weeks before the *Daubert* deadline, and before depositions.

---

[3] *See* Jan. 31, 2023 Hr'g Tr. at 303 ("If there's non-overlap, of course, it's fine.").

As the Court knows, this is a complicated case. It is made even more complex by the fact that four groups of differently situated Plaintiffs need to present their cases together. The States are comprised of 39 separate sovereigns, representing nearly 100 million consumers across the country. The Class also includes tens of millions of individuals who have been injured by Google's conduct. Epic and Match are two of the largest app developers in the world.[4] Each Plaintiff group involved in this litigation brought different claims. Epic seeks only injunctive relief; the States, Class, and Match seek both damages and injunctive relief, and the States seek disgorgement and penalties. Match, as a developer, seeks different damages than the States and the Class, and it filed its case only a few months before expert disclosures—long after Epic, the States, and the Class had retained their experts. As a result, each Plaintiff group retained its own experts that offer unique opinions in support of its case. For example, while the economists for each of the Plaintiffs address some of the same common elements, they each offer important non-overlapping analyses. Dr. Rysman (the States' expert), for instance, performed an econometric SSNIP analysis but did not analyze an operating system market; some economists did not perform an econometric SSNIP analysis but *did* analyze a relevant market for operating systems. Dr. Singer analyzes the alleged agreement between Google and Facebook that foreclosed entry by Facebook into the Android app distribution market; other experts did not focus on that impact of Google's specific conduct with respect to Facebook. Similarly, each economist had different points of emphasis on anticompetitive effects, which partly derived from the different relief (prospective versus retrospective damages) sought by the party that retained them. Match's and Epic's economists of course focus more on effects on those parties and developers in general. Drs. Singer (Class's expert) and Rysman focus more on consumers, while other experts do not. Epic's economist, Dr. Bernheim, provides a rigorous analysis of *Fortnite* data to study the effects of Google's exclusionary conduct and over-broad security warnings on Epic's blockbuster game.

To comply with the Court's order, Plaintiffs will need to decide which expert covers the common ground and whether any supplemental, non-overlapping presentation is necessary from another expert. In light of the significant differences between Plaintiffs' economists' analyses and the

---

[4] The Match plaintiffs comprise Plaintiffs Match Group, LLC; Humor Rainbow, Inc.; People Media, Inc.; and PlentyofFish Media ULC.

fact that at least 3 of the 5 economists will be testifying on the unique damages they calculated, each of the 5 have significant, non-overlapping issues about which they could potentially testify.[5] Even then, this process will take time, since no Plaintiff group is currently familiar with all experts. Plaintiffs intend to, and can, work through these issues by April 12. There is simply no good reason to expedite this process beyond what the Court's order states, and any such expedition would greatly prejudice Plaintiffs.

Google nonetheless suggests Plaintiffs' proposal is "improper" because it allows Plaintiffs to see how certain experts perform at depositions. But if Google truly believed that, Google could have raised the issue months ago—before expert reports were served, before Google's experts proceeded to offer rebuttal reports as to each of Plaintiffs' experts, and before depositions were scheduled (and then rescheduled). Google instead planned for, and scheduled, depositions intended specifically to question each expert on the full scope of their opinions. This agreed-to process did not become "improper" simply because the Court issued an order that says nothing about depositions or their scope.

Finally, Google argues that Plaintiffs should be barred from designating more than a single expert on broad topics such as "market definition," even if the two experts offer completely non-overlapping, non-duplicative testimony and evidence. Plaintiffs disagree. This case is extremely complex: It involves multiple theories of harm, multiple relevant markets, multiple related conducts, multiple types of harms, causing multiple types of damages. It may be the case, therefore, that two experts may touch on issues that broadly relate to "market definition," anticompetitive effects, or various aspects of Google's conduct. Indeed, Google's own experts in this case offer multiple analyses that overlap, and for good reason. An economist cannot credibly testify about injury and damages without so much as mentioning liability issues: The existence of market power bears on anticompetitive effects; anticompetitive effects must be shown to establish antitrust injury; and showing market power and effects requires at least considering the relevant markets.

---

[5] Google's claim that the States' and Class's damages experts have overlapping testimony is wrong. Dr. Singer calculates an overcharge based on the methodology he demonstrated at class certification. Although Dr. Rysman considers the question of an overcharge, his ultimate damages opinion rests on a calculation of the harm caused by a form of restricted output. The damages experts opine about different categories of damages and are therefore complementary, not duplicative.

In any event, Google's argument in this regard is clearly premature. Plaintiffs will provide Google with an expert list by April 12, and Google will then be able to object to designations it believes are improper, if any.

**B.      Google Will Not Be Prejudiced By Plaintiffs' Proposed April 12 List**

Following receipt of the Court's order, Google claimed, *for the first time*, that it needs Plaintiffs' revised list before it can proceed with depositions of Plaintiffs' security and economist experts. That claim is disingenuous and pretextual. Over four months ago, Plaintiffs disclosed these experts and served their reports. Google's experts have responded to all of them already. Google previously planned to complete all expert depositions by mid-January. And Google did not object or even raise the issue of deposing Plaintiffs' experts on the entire scope of their reports until the Court's order offered it the opportunity. There is nothing unfair about Google moving forward with depositions *as planned* while Plaintiffs make a reasoned determination as to what they expect their trial presentation to look like—a determination that until two weeks ago, Google did not expect to receive until *October*. It is par for the course in litigation—especially in complex, multiparty cases—for experts to offer testimony on fewer topics at trial than in their reports.

In fact, that is precisely the situation Plaintiffs will be in with Google's experts: Google disclosed seven experts, including three economists, each of whom have substantial, overlapping analysis spanning over 2,000 pages. As some examples only: Both Drs. Gentzkow's and Tucker's reports provide overlapping analyses on alleged alternative distribution channels to Google Play, such as web apps, streaming, alternative Android app stores, and peer-to-peer transfer. Each of Google's experts opines that Google's conduct has increased output and enhanced Android's quality; and each expert opines about Google's take rate and provides duplicative analyses in support of their position that the rate is not supracompetitive.

Citing the coordination order, Google claims Plaintiffs should have known all along that they must consolidate their expert presentation before depositions. That is false. That order speaks to the coordination of "discovery efforts." It says nothing about consolidation of expert testimony, and no party to this litigation ever believed it directed such consolidation. Google's position in this

submission—that Plaintiffs must consolidate their expert presentation *immediately*—is *exactly two weeks old*. It was newly minted not because it makes sense, but because it would force Plaintiffs to scramble and thus give Google an undue tactical advantage. That is the very definition of opportunism.

    Google further claims it needs Plaintiffs' list to prepare *Daubert* motions. But again, Google's plan has always been to determine which *Daubert* motions to file (if any) irrespective of any narrowing of the expert landscape. Google complains about having to write *Daubert* motions that may be unnecessary, but that was Google's plan all along—and Google has the information and resources to start drafting *Daubert* motions now if it really believes it has a basis for such motions (despite the Court's guidance that the "touchstone" for *Daubert* motions is to exclude only "exotic theor[ies]" that no expert "of any credibility would ever use.").[6]

    Google also claims that "Plaintiffs' proposal would delay, until sometime in April, the scheduling on the Court's calendar of the hot tub." Not so. Google has taken the position that it will not identify any possible *Daubert* motions before the close of expert depositions (with or without a revised expert plan from Plaintiffs). Scheduling of the hot tub *will therefore be delayed until April anyway*.

    Google takes issue with Plaintiffs' position that they should be permitted to modify their expert plan should one or more of the Plaintiffs settle and exit the case. But Google agrees that Plaintiffs could change their list subject to a showing of good cause. A withdrawal of one of the Plaintiffs from the case surely qualifies as such. Simply put, the current process will force certain Plaintiffs to forego the opportunity to present the expert of their choice on topics central to their case and to rely instead on testimony developed and sponsored by an expert for another Plaintiff. If the sponsoring Plaintiff withdraws from the case, it is only fair that the remaining Plaintiffs would have the opportunity to revert to an expert they sponsored and preferred all along. Google would not be prejudiced because Google already served rebuttal expert reports addressing *all* the opinions of *all* Plaintiffs' experts, and, under Plaintiffs' proposal, Google will have deposed Plaintiffs' experts on all topics they covered in

---

[6] Jan. 31, 2023 Hr'g Tr. at 305.

their reports.[7]  In any event, Plaintiffs' position on this issue should not affect the *timing* of Plaintiffs' disclosure of the modified trial expert list.

Last, Google claims that Plaintiffs insist on reserving the right to change the list of experts in the unlikely event of a successful *Daubert* motion and intend to have their experts "adopt" each other's testimony.  This mischaracterizes Plaintiffs' position and the meet-and-confer process.  Plaintiffs offered up these ideas as topics to be discussed as part of a give-and-take that could lead to a global solution that would streamline expert testimony and relieve the need for Court intervention.  Google refused to engage, preferring instead to file this submission.  In any event, Plaintiffs do not believe that any expert will be excluded, but if an expert were to be excluded, Plaintiffs would not expect they would be able to replace that expert absent a showing of good cause—a standard with which Google appears to agree.  And Google's insistence that Plaintiffs are reserving the right to replace an excluded expert or "adopt" another's testimony is wrong.  Plaintiffs are requesting no such thing.  Plaintiffs will not pursue these ideas in the context of motion practice, and Google's suggestion to the contrary simply mischaracterizes Plaintiffs' position.

*          *          *

For the foregoing reasons, Plaintiffs respectfully request that the Court permit Plaintiffs to propose a revised list and to identify the areas of testimony that each expert will address on April 12, and allow for reasonable modifications to that list upon a showing of good cause.

---

[7] Plaintiffs have informed Google that in the unlikely event that Google wishes to file a *Daubert* motion against an expert that is re-added to the trial plan, Plaintiffs would not object to Google's ability to do so.

| | |
|---|---|
| Dated: February 13, 2023 | OFFICE OF THE UTAH ATTORNEY GENERAL<br>   Brendan P. Glackin<br>   Lauren M. Weinstein<br><br>Respectfully submitted,<br><br>By: /s/ Brendan P. Glackin<br>   Brendan P. Glackin<br><br>*Counsel for the Plaintiff States* |
| Dated: February 13, 2023 | CRAVATH, SWAINE & MOORE LLP<br>   Christine Varney *(pro hac vice)*<br>   Gary A. Bornstein *(pro hac vice)*<br>   Timothy G. Cameron *(pro hac vice)*<br>   Yonatan Even *(pro hac vice)*<br>   Lauren A. Moskowitz *(pro hac vice)*<br>   Justin C. Clarke *(pro hac vice)*<br>   Michael J. Zaken *(pro hac vice)*<br>   M. Brent Byars *(pro hac vice)*<br><br>FAEGRE DRINKER BIDDLE & REATH LLP<br>   Paul J. Riehle (SBN 115199)<br><br>Respectfully submitted,<br><br>By: /s/ Lauren A. Moskowitz<br>   Lauren A. Moskowitz<br><br>*Counsel for Plaintiff Epic Games, Inc.* |
| Dated: February 13, 2023 | BARTLIT BECK LLP<br>   Karma M. Giulianelli<br><br>KAPLAN FOX & KILSHEIMER LLP<br>   Hae Sung Nam |

Respectfully submitted,

By: /s/ Karma M. Giulianelli
Karma M. Giulianelli

*Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

Dated: February 13, 2023     PRITZKER LEVINE LLP
Elizabeth C. Pritzker

Respectfully submitted,

By: /s/ Elizabeth C. Pritzker
Elizabeth C. Pritzker

*Liaison Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

Dated: February 13, 2023     HUESTON HENNIGAN LLP
Douglas J. Dixon
Christine Woodin
Joseph A. Reiter

Respectfully submitted,

By: /s/ Douglas J. Dixon
Douglas J. Dixon

*Counsel for Plaintiffs Match Group, LLC et al.*

Dated: February 13, 2023     MORGAN, LEWIS & BOCKIUS LLP
Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Minna L. Naranjo
Rishi P. Satia

Respectfully submitted,

By: /s/ Brian C. Rocca
Brian C. Rocca

*Counsel for Defendants Google LLC et al.*

Dated: February 13, 2023

MUNGER, TOLLES & OLSON LLP
Glenn D. Pomerantz
Kyle W. Mach
Kuruvilla Olasa
Justin P. Raphael
Emily C. Curran-Huberty
Jonathan I. Kravis

Respectfully submitted,

By: /s/ Glenn D. Pomerantz
Glenn D. Pomerantz

*Counsel for Defendants Google LLC et al.*

**E-FILING ATTESTATION**

I, Sujal J. Shah, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Sujal J. Shah*
Sujal J. Shah