Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants Google LLC et al.*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD. | 3:21-md-02981-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DEFER OR STAY TRIAL**<br><br>Judge:      Hon. James Donato<br>Date:        April 20, 2023<br>Time:        10:00 a.m.<br>Courtroom: 11 |

# TABLE OF CONTENTS

<u>Page</u>

I. Plaintiffs' Competing Proposals Are Unworkable and Raise Significant Risks of Legal Error ........................................................................................................................ 2

   A. Consumers' Bifurcation Proposal Is Impracticable and Legally Unsound ............... 2

   B. Trial of the Other Plaintiffs' Claims Should Also Be Stayed ................................... 4

II. A Stay of Trial is Appropriate Under Any Standard ............................................................ 6

   A. Google Has Shown a Likelihood of Success .......................................................... 7

   B. Google Faces Irreparable Harm ............................................................................... 7

   C. Plaintiffs Will Not Be Harmed ................................................................................. 8

   D. The Public Interest Favors a Stay ............................................................................ 9

III. Conclusion ........................................................................................................................... 10

-i-

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DEFER OR STAY TRIAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*American Trucking Ass'n v. City of L.A.*,
   559 F.3d 1046 (9th Cir. 2009)...........................................................................................7

*Aoki v. Gilbert*,
   2015 WL 5734626 (E.D. Cal. Sept. 29, 2015)................................................................2, 4

*Apple v. Pepper*,
   139 S. Ct. 1514 (2019)......................................................................................................6

*April in Paris v. Becerra*,
   494 F. Supp. 3d 756 (E.D. Cal. 2020)..............................................................................7

*Arizona v. Maricopa County Medical Society*,
   457 U.S. 332 (1982).........................................................................................................3

*Cascade Cabinet Co. v. W. Cabinet & Millwork, Inc.*,
   710 F.2d 1366 (9th Cir. 1983)..........................................................................................4

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005)............................................................................................7

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)...........................................................................................................3

*Cooper v. Brown*,
   510 F.3d 870 (9th Cir. 2007)............................................................................................5

*Evans v. Wal-Mart Stores, Inc.*,
   2019 WL 7169794 (C.D. Cal. Oct. 23, 2019)..................................................................6

*In re Facebook Biometric Info. Privacy Litig.*,
   2018 WL 2412176 (N.D. Cal. May 29, 2018) .................................................................8

*In re Facebook Biometric Info. Privacy Litig.*,
   No. 3:15-cv-03747-JD, ECF No. 406 (N.D. Cal. June 4, 2018).....................................8

*FTC v. Qualcomm*,
   969 F.3d 974 (9th Cir. 2020).......................................................................................2, 3

*Gray v. Golden Gate National Recreational Area*,
   2011 WL 6934433 (N.D. Cal. Dec. 29, 2011).................................................................7

**TABLE OF AUTHORITIES**
**(cont'd)**

Page

*Johnson v. City of Mesa*,
  2022 WL 137619 (D. Ariz. Jan. 14, 2022) ................................................................................6

*Kuang v. U.S. Dep't of Justice*,
  2019 WL 1597495 (N.D. Cal. Apr. 15, 2019) .......................................................................6, 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................................3

*NCAA v. Alston*,
  141 S. Ct. 2141 (2021) ............................................................................................................2

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008) .......................................................................................................2

*Ohio v. American Express Co.*,
  138 S. Ct. 2274 (2018) ............................................................................................................2

*Owino v. CoreCivic, Inc.*,
  2021 WL 3186500 (S.D. Cal. July 28, 2021) .........................................................................7

*In re Packaged Seafood Antitrust Litig.*
  2020 WL 2745231 (S.D. Cal. May 27, 2020) ........................................................................8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  286 F.R.D. 88 (D.D.C. 2012) ...............................................................................................10

*Romero v. Securus Technologies, Inc.*,
  383 F. Supp. 3d 1069 (S.D. Cal. 2019) ...............................................................................7, 8

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ..................................................................................................................3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  MDL No. 1827, 2012 WL 1424314 (N.D. Cal. Apr. 20, 2012) .............................................3

*Todd v. Tempur-Sealy International, Inc.*,
  2016 WL 6082413 (N.D. Cal. Oct. 18, 2016) ......................................................................10

*TransUnion v. Ramirez*,
  141 S. Ct. 2190 (2021) ............................................................................................................3

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  No. 2:18-md-02836-RBS-DEM, Dkt. No. 1995 (E.D. Va. Mar. 14, 2023) ............................4

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page**

**FEDERAL STATUTES**

28 U.S.C. § 1407(a)..................................................................................................................5

**FEDERAL RULES**

Fed R. Civ. P. 23(f) .......................................................................................................... *passim*

**OTHER AUTHORITIES**

https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2022.pdf...........................8

The Court should reject Plaintiffs' multiple-trial proposals to address the impact of the Ninth Circuit's Rule 23(f) review. No Plaintiff suggests that the entirety of this action should still be tried in November. Instead, Consumers and States propose a complex bifurcated—or even trifurcated—proceeding that requires a first jury to decide some elements of antitrust liability but defers antitrust injury—an essential element of liability—to a second jury and second trial. Not only is this proposal highly inefficient, it risks Seventh Amendment error by submitting interwoven issues of anticompetitive effects and antitrust injury to different juries. Plaintiffs do not cite a single rule of reason case in which antitrust injury and the remaining elements of antitrust liability were bifurcated at trial. In addition, this proposal flouts Article III because it permits Consumers to proceed to a trial at which they will not be required to establish injury. Nor can the State AGs meaningfully distinguish themselves from Consumers on these issues. The State AGs are pursuing claims on behalf of the consumers in their states and they have offered the same primary injury and damages model as Consumers—the very model that is the subject of the Ninth Circuit's review.

Epic and Match propose proceeding to trial in November "regardless of whether a stay is warranted in the other plaintiffs' cases." ECF[1] No. 473 ("Epic-Match Opp'n") at 15. The State AGs make a similar pitch. ECF No. 471 ("States Opp'n") at 7. Again, this proposal is needlessly complicated, resulting in a multiplicity of trials on "substantially identical" claims, ECF No. 472 ("Consumer Opp'n") at 1, where one would suffice. Worse, this proposal would effectively create separate trials for each side of an admittedly two-sided market, putting Google at risk of fundamentally contradictory damages awards. Plaintiffs' assertions that they would be prejudiced by awaiting a single trial should be rejected. Match previously proposed a trial in 2024. The State AGs, who claim they were investigating these issues as early as 2019, waited until 2021—a year after Epic filed suit—to join this litigation. And the federal courts have not deprived Epic of its day in court. In the *Epic v. Apple* litigation, *Epic* sought an expedited merits decision on very similar issues, which it obtained and has now appealed to the Ninth Circuit.

---

[1] ECF citations are to the MDL docket, No. 3:21-md-02981-JD, unless otherwise specified.

The most efficient and legally sound path forward is for the Court to adopt Google's proposal. Specifically, the parties would continue to move towards trial, and this Court would defer or stay only class notice, the final pretrial conference, and the trial while the Ninth Circuit decides the critical issues in the class certification appeal.

## I. PLAINTIFFS' COMPETING PROPOSALS ARE UNWORKABLE AND RAISE SIGNIFICANT RISKS OF LEGAL ERROR

### A. Consumers' Bifurcation Proposal Is Impracticable and Legally Unsound

Consumers do not cite a single case in which the trial went forward during the pendency of a Rule 23(f) appeal. Consumers recognize that it makes no sense to have a complete trial while their injury and damages model is the subject of an interlocutory appeal. To attempt to solve this problem, they propose punting on those issues for now through bifurcation. But Consumers' bifurcation proposal is unworkable and legally flawed, and they fail to meet their "burden of proving that bifurcation is justified given the particular circumstances." *Aoki v. Gilbert*, 2015 WL 5734626, at *4 (E.D. Cal. Sept. 29, 2015).

Consumers argue that injury can be disentangled from liability because they need only show injury to competition, rather than injury to Consumers. That is incorrect as a matter of law. In the context of Consumers' claims, "[e]stablishing liability . . . requires showing that class members were injured at the consumer level." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 27-28 (1st Cir. 2008); *FTC v. Qualcomm*, 969 F.3d 974, 990 (9th Cir. 2020) ("To establish liability under § 2, a plaintiff must show . . . causal antitrust injury." (internal quotation marks and citation omitted)). The rule of reason, which governs Consumers' claims, requires proof that "the challenged restraint has a substantial anticompetitive effect *that harms consumers in the relevant market*." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) (emphasis added). The very purpose of the rule of reason test is to distinguish between "restraints with anticompetitive effect *that are harmful to the consumer* and restraints stimulating competition that are in the consumer's best interest." *NCAA v. Alston*, 141 S. Ct. 2141, 2160 (2021) (emphasis added).

Further, Consumers' argument, that they need not show injury at the first trial, raises serious questions about Article III standing. *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Although courts sometimes bifurcate the *amount* of damages from the fact of injury, *Qualcomm*, 969 F.3d at 990, that is not what Consumers seek here. Consumers seek to hold a trial on the abstract question of "whether Google's conduct was anticompetitive," Consumer Opp'n at 2, without requiring a showing of *any injury* to them until a second trial before a separate jury. Consumers never attempt to explain how a finding of liability on "core antitrust issues" would satisfy the Supreme Court's requirement to address standing as to each plaintiff before proceeding to the merits. *Steel Co.*, 523 U.S. at 94-95. They suggest (Consumer Opp'n at 13-14) that merely *pleading* standing for each class member might be sufficient, but that ignores hornbook law that standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At trial, Plaintiffs cannot satisfy Article III based on their pleadings.

Consumers suggest that they would try to avoid these problems by presenting evidence at the first trial of harm to competition "such as reduced consumer choice and output," while presenting a *different* theory of harm (the pass-through damages model) to the second jury. Consumer Opp'n at 14. But the consumer class was not certified on that basis. In any event, Consumers may not present "evidence of damages" that are not "attributable" to their theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). "[A]t the class certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." *Id.* (quotation marks and citation omitted). Consumers' proposal of mixing and matching different theories of harm at different stages is squarely foreclosed by *Comcast*. *Id.*[2]

---

[2] Given the many legal issues raised by Consumers' proposal, it is no surprise that Consumers cite cases that bear no resemblance to the complex MDL at hand. For example, they cite cases that bifurcated trials involving price-fixing conspiracies. *E.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 WL 1424314, at *1 (N.D. Cal. Apr. 20, 2012). Such claims are subject to the *per se* rule of illegality, *see, e.g.*, *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S.

As a court in the Eastern District of Virginia recently explained in declining to bifurcate an MDL, "dividing factual questions related to liability" in a complex rule of reason case would breed unnecessary confusion and would "require wading into the potentially ambiguous delineation between antitrust impact (during the liability phase) and damages." Memorandum Order at *4, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-02836-RBS-DEM, Dkt. No. 1995 (E.D. Va. Mar. 14, 2023). And trying together "common" issues, as Consumers and States propose here, would "clearly invite disagreement over what qualifies as common or uncommon issues." *Id.* As a result, the court ordered that the trial "proceed in one phase, before one jury." *Id.* at 2.

### B. Trial of the Other Plaintiffs' Claims Should Also Be Stayed

For the reasons set forth above, trial of Consumers' claims should be stayed pending the Ninth Circuit's resolution of Google's interlocutory appeal on class certification. Trial on the other Plaintiffs' claims should likewise be stayed in order to preserve a single trial on the identical claims raised in these cases. Their arguments to the contrary are without merit.

States' proposal is not feasible: States propose not one, not two, but *three* trials—one for "liability," one for Match's damages claims and Google's counterclaims, and one for the existence of injury and the amount of damages on States' and Consumers' claims. States' trifurcation plan is infected with the same errors as Consumers' proposal.[3] The burden is on States to show that trifurcation is appropriate under the circumstances of this case. *Aoki*, 2015 WL 5734626, at *4. And yet, like Consumers, States cite only generalized authority, such as pattern jury instructions

---

332, 348 (1982), unlike the cases in this MDL, which involve multiple claims subject to the rule of reason. Given the many issues in rule of reason cases—whether there was harm to competition, whether the challenged restraints benefit the parties and society, and whether some alternative behavior would be preferable, *Cascade Cabinet Co. v. W. Cabinet & Millwork, Inc.*, 710 F.2d 1366, 1373 (9th Cir. 1983)—bifurcation would be much more complex here.

[3] It is also procedurally improper: if States seek to sever Google's counterclaims, they must do so by noticed motion where Google can have a proper opportunity to address the many issues with such a proposal. Indeed, the parties have already agreed that if the States seek severance, they will do so by noticed motion. ECF No. 434 at 5.

-4-

(which involve bifurcation of damages, not bifurcating *injury* from the rest of liability),[4] without addressing the particular problems raised by trifurcation here.

As with Consumers, it is not clear what States mean by trying liability first. Regardless, because States also rely heavily on Dr. Singer's model—that is, the model that is central to the Rule 23(f) appeal—this proposal is infected with the same problems discussed above. *Supra* Part I.A. States argue that they can rely on Dr. Singer's model even if the class is decertified. That is a highly speculative suggestion, given that the Ninth Circuit may very well weigh in on the model's admissibility in finding it inadequate for showing class-wide injury.[5]

States' contention that the December 2022 amendments to the MDL Act mandate that trial of their case move forward is without merit. The MDL Act amendment has *nothing* to do with this case. The amendment concerns MDL centralization of a suit after a State chooses to file an action in a particular venue. 28 U.S.C. § 1407(a). States *chose* to file suit in this District, to enter into a Joint Prosecution Agreement yoking their claims to Consumers, and to rely on the same expert whose analysis is the subject of the pending appeal. Having elected at each stage to align themselves with Consumers, States cannot now argue that federal venue law demands that their claims be given priority over standard efficiency considerations.

States, Epic, and Match contend that Google will suffer no harm from separate trials because "the non-class plaintiffs…all intend to try their cases eventually." States Opp'n at 1. But it does not make sense to try these "substantially identical," Consumers Opp'n at 1, cases more than once, as this Court has recognized, *e.g.*, Hr'g Tr. 48:17-19 (Aug. 4, 2022), No. 21-md-02981; Hr'g Tr. 21:9-19 (Dec. 16, 2021), No. 21-md-02981-JD (N.D. Cal.). This case requires consideration of

---

[4] American Bar Association, *Model Jury Instructions in Civil Antitrust Cases* (2016), p. 306 "Instruction 2: Antitrust Damages, Bifurcated Trial."

[5] States incorrectly suggest that Google did not raise arguments under *Daubert* in its appeal. Google's petition explicitly raises *Daubert*, arguing to the Ninth Circuit that "The District Court concluded that Dr. Singer's model survived *Daubert*, even though *Daubert's* purpose is to screen out models, like this one, that have no proven track record for a given purpose." Case No. 22-80140, Dkt. 1-2, (9th Cir. 2022) (citing *Cooper v. Brown*, 510 F.3d 870, 880 (9th Cir. 2007)).

the effects of the challenged conduct on both sides of the platform, which makes it practical and efficient to have a single trial of cases brought by plaintiffs on both sides of the platform.

Epic and Match's assertion that their theories of injury "do not conflict with those of any other plaintiff," Epic-Match Opp'n at 13, is baseless. Match's damages claims are based on allegations that, as a developer, it was overcharged and that it would have pocketed savings from a lower service fee. Consumers' and States' claim is that consumers were overcharged based on the allegation that developers like Match would *not* have pocketed the savings and instead would have passed those savings on to users. In other words, plaintiffs on both sides of the platform are making claims against a common fund—the alleged overcharge on Google's service fee. Consumers' and States' contentions are fundamentally inconsistent with developers', raising the specter of "duplicative damages awards totaling more than the full amount [the alleged antitrust violated] collected. …" *Apple v. Pepper*, 139 S. Ct. 1514, 1529 (2019) (Gorsuch, J., dissenting). As Justice Gorsuch explained, when faced with such duplicative damages claims, "it may turn out that the developers are necessary parties who will have to be joined in the plaintiffs' lawsuit." *Id.*

## II.  A STAY OF TRIAL IS APPROPRIATE UNDER ANY STANDARD

*Landis* supplies the appropriate framework for evaluating Google's motion. Plaintiffs distinguish the cases Google cites as not involving a Rule 23(f) appeal. That distinction is not meaningful; the question is whether the stay would apply to ongoing proceedings or an already effective judgment. "[T]he majority approach" in this circuit is to apply *Landis* where the request is to stay the district court's "*proceedings*," while *Nken* "is applicable when there is a request to stay a district court's *judgment or order* pending an appeal of the same case." *Johnson v. City of Mesa*, 2022 WL 137619, at *2 n.1 (D. Ariz. Jan. 14, 2022) (emphasis added) (quotation marks and citation omitted). And contrary to Plaintiffs' suggestion, where the question has been appropriately raised, courts "have overwhelmingly concluded that the *Landis* test" governs, *Kuang v. U.S. Dep't of Justice*, 2019 WL 1597495, at *3 (N.D. Cal. Apr. 15, 2019), including in the context of Rule 23(f) appeals, *Evans v. Wal-Mart Stores, Inc.*, 2019 WL 7169794, at *3 (C.D. Cal.

Oct. 23, 2019).[6] Indeed, by not relying on *Nken*, States tacitly recognize that *Landis* applies. In any event, the Court should stay the trial under either standard.

### A. Google Has Shown a Likelihood of Success

The Ninth Circuit has explained that "Rule 23(f) review should be a rare occurrence," and accordingly grants petitions only sparingly. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955, 959 (9th Cir. 2005). "The Ninth Circuit's acceptance of [Google's] Rule 23(f) petition for appeal demonstrates that serious legal questions are at issue." *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1074 (S.D. Cal. 2019). According to Consumers, statistics show a reversal rate of 37 to 44 percent for Rule 23(f) appeals. Consumer Opp'n at 5-6. A 44 percent chance of reversal suffices to show that serious legal questions are at issue.

### B. Google Faces Irreparable Harm

Both Consumers' and States' bifurcated trial proposal and the other Plaintiffs' alternative proposals would subject Google to irreparable harm. Consumers' and States' proposal violates Google's Seventh Amendment jury trial right by allowing separate juries to decide allegations of anticompetitive conduct and injury. *See Am. Trucking Ass'n v. City of L.A.*, 559 F.3d 1046, 1058 (9th Cir. 2009) (constitutional violation is irreparable). Plaintiffs' other proposals distort the relevant legal inquiry for a two-sided platform by trying the claims of each side separately and place Google at risk of duplicative damages because each proposal would involve Consumers' case being tried on its own. That harm would also be irreparable. *April in Paris v. Becerra*, 494 F. Supp. 3d 756, 770 (E.D. Cal. 2020) ("[W]here the parties cannot recover monetary damages from their injury, economic harm can be considered irreparable.").

Moreover, no plaintiff has an answer for the fact that proceeding to trial before the Ninth Circuit resolves Google's appeal would disregard that the Ninth Circuit had already determined this case involves the rare circumstance "in which *interlocutory* review is preferable to end-of-case review." *Chamberlan*, 402 F.3d at 959 (emphasis added); *Gray v. Golden Gate Nat'l*

---

[6] The lone decision Plaintiffs cite to argue that courts confronting the issue apply *Nken* is *Owino v. CoreCivic, Inc.*, 2021 WL 3186500, at *2 (S.D. Cal. July 28, 2021). However, the moving party in that case did not debate the merits of applying *Landis* versus *Nken* until its reply brief.

*Recreational Area*, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011) (litigating case before resolution of Rule 23(f) appeal would make no sense). Indeed, Plaintiffs note that this Court denied a stay pending a Rule 23(f) petition in *In re Facebook Biometric Info. Privacy Litig.*, 2018 WL 2412176 (N.D. Cal. May 29, 2018) (Donato, J.), but omit that the Ninth Circuit then stayed that very action pending its review, *see* No. 3:15-cv-03747-JD, ECF No. 406 (N.D. Cal. June 4, 2018). As Courts have held, rendering an interlocutory appeal meaningless can be irreparable harm. *Gray*. 2011 WL 6934433, at *3.

### C.     **Plaintiffs Will Not Be Harmed**

Google's proposal would minimize any prejudice to Plaintiffs from delaying trial by making this case trial-ready for when the Ninth Circuit decides Google's 23(f) appeal.

Parties commonly ask for a stay of *all* proceedings after a Rule 23(f) petition is granted. *E.g.*, *Romero*, 383 F. Supp. 3d at 1072. And courts often grant this sweeping relief. Indeed, when the Ninth Circuit stayed the proceedings against Facebook pending in this Court, it stayed all proceedings. *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-03747-JD, ECF No. 406 (N.D. Cal. June 4, 2018). Plaintiffs largely ignore that Google's request is far narrower—only to defer class notice, the final pre-trial conference, and trial, ensuring that the parties can go to trial as soon as the class certification issues are resolved. That makes Google's request fundamentally different from other, sweeping requests, like the one in *In re Packaged Seafood Antitrust Litigation*, where the defendant requested a stay of all proceedings, including *twenty* dispositive and *Daubert* motions that were already fully briefed. 2020 WL 2745231, at *2 (S.D. Cal. May 27, 2020).

The common harm Plaintiffs claim they will suffer is the added time waiting for trial and a resolution of their claims. That alleged harm does not outweigh the irreparable harm that Google faces, nor does it justify the many inefficiencies that will be borne by the parties and the court and legal problems posed by Plaintiffs' various proposals.[7] States' position—that their trial is too

---

[7] Moreover, Consumers rely on outdated data in arguing that it takes, on average, 22.5 months for the Ninth Circuit to resolve an appeal. The same data from 2022 shows that it takes 12.6 months on average for the Ninth Circuit to resolve civil appeals and, of course, Google will move to

urgent to accommodate a modest stay—is belied by their own litigation tactics. They waited almost a year to file suit after Epic did and after beginning their investigation in 2019. States Opp'n at 2; *compare* ECF No. 1, No. 3:20-cv-5671-JD (N.D. Cal. Aug. 13, 2020) (Epic Complaint), *with* ECF No. 1, No. 3:21-cv-5227-JD (N.D. Cal. July 7, 2021) (States' Complaint). Match waited nearly two years to file suit. ECF No. 1, No. 3:22-cv-02746-HD (N.D. Cal. May 9, 2022). Match also suggests that its business will be harmed until its case is adjudicated. But Google and Match have already reached an accord that preserves the status quo for Match on the Play store. ECF No. 21, No. 3:22-cv-02746-JD (N.D. Cal. May 19, 2022). In any event, Match previously asked for a trial in *2024*. ECF No. 309 (N.D. Cal. Aug. 3, 2022). It cannot now claim to be harmed if trial does not occur in 2023. As to Epic, despite pursuing a preliminary injunction against Apple in a case filed the same day as this one, it never sought a preliminary injunction in this case, except as to its Bandcamp app, which Epic acquired in 2022. For that app, Epic sought an order preventing Google from removing Bandcamp from the Google Play store. ECF No. 213-1 (N.D. Cal. Apr. 28, 2022). Google and Epic resolved that issue for the pendency of this litigation, so any alleged harm is not ongoing. ECF No. 233 (N.D. Cal. May 20, 2022).

Moreover, Google will move the Ninth Circuit to expedite the appeal if this Court defers the trial until the appeal is resolved. Plaintiffs chide Google for not filing such a motion without a stay, but Google first seeks this Court's order precisely because the Ninth Circuit would likely want to know how this Court chose to proceed in evaluating whether and how to expedite the appeal.

### D. The Public Interest Favors a Stay

A stay serves "the orderly course of justice" by "simplifying … issues, proof, and questions of law." *Kuang*, 2019 WL 1597495, at *2 (quotation marks and citation omitted). Without a stay, the court's time and the time of multiple juries will needlessly be wasted. The trial, which is scheduled to last at least three weeks, would be much longer under Plaintiffs' various proposals, as bifurcation or trifurcation would require substantial repetition. And, because the

---

expedite the appeal. *See* https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2022.pdf.

Ninth Circuit appeal will clarify important issues, including the reliability of Dr. Singer's report under *Daubert*, a "stay would avoid the parties and the Court wasting resources on litigation that might be changed on appeal." *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 6082413, at *2 (N.D. Cal. Oct. 18, 2016).

The class notification process will also be needlessly complicated without a stay. Consumers do not respond to any of the cases Google cites on this point. And their offer—adding a few sentences to a lengthy class notice, *see* Consumers Opp'n Ex. A—would not solve those problems. Without a stay, there is still the potential for a second round of notice if the Ninth Circuit's decision affects the certified class in any way. Further, their proposal confirms that States and Consumers are tethered in a way that affects class notice. They first want to issue a notice telling members of the public in the purported class that they are represented either by the Attorneys General or by class counsel. Then, in the event that the Ninth Circuit's ruling affects the class, they would issue a second notice stating that some class members are no longer represented, whereas others are. Such a complicated procedure is certain to engender confusion, unlikely to provide clear notice, and therefore not in the public interest. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C. 2012).

## III.   CONCLUSION

Google is the only party that proposes a sensible, legally sound path to keep this case moving while avoiding the inefficiency and unfairness that this Court has cited in emphasizing that there should be a single trial in these cases. Every other proposal on the table raises significant issues—including legal ones—and none of Plaintiffs' proposals should be accepted. This Court should grant Google's tailored motion to stay.

DATED: April 6, 2023                    Respectfully submitted,

                                        By:  /s/ *Glenn D. Pomerantz*
                                             Glenn D. Pomerantz, S.B. #112503
                                             glenn.pomerantz@mto.com
                                             Kuruvilla Olasa, S.B. #281509
                                             kuruvilla.olasa@mto.com
                                             Nicholas R. Sidney, S.B. #308080
                                             nick.sidney@mto.com
                                             MUNGER, TOLLES & OLSON LLP
                                             350 South Grand Avenue, Fiftieth Floor
                                             Los Angeles, California 90071
                                             Telephone: (213) 683-9100

                                             Kyle W. Mach, S.B. #282090
                                             kyle.mach@mto.com
                                             Justin P. Raphael, S.B. #292380
                                             justin.raphael@mto.com
                                             Emily C. Curran-Huberty, S.B. #293065
                                             emily.curran-huberty@mto.com
                                             Dane P. Shikman, S.B. #313656
                                             dane.shikman@mto.com
                                             MUNGER TOLLES & OLSON LLP
                                             560 Mission St., Suite 2700
                                             San Francisco, CA 94105
                                             Telephone: (415) 512-4000
                                             Facsimile: (415) 512-4077

                                             Jonathan I. Kravis, *pro hac vice*
                                             jonathan.kravis@mto.com
                                             MUNGER, TOLLES & OLSON LLP
                                             601 Massachusetts Avenue NW, Suite 500E
                                             Washington, D.C. 20001
                                             Telephone: (202) 220-1100

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel for Defendants Google LLC et al.*