# EXHIBIT 10

## Google Play Games Velocity Program
### Addendum to the Google Play Developer Distribution Agreement

This Addendum to the Google Play Developer Distribution Agreement ("**Addendum**") is an addendum to the terms of the Google Play Developer Distribution Agreement, currently available at https://play.google.com/about/developer-distribution-agreement.html (the "**DDA**"), and is entered into between Activision Blizzard, Inc. and its affiliates ("**You**" or "**Developer**"), and Google Commerce Limited, whose principal place of business is at Gordon House, Barrow Street, Dublin 4, Ireland ("**Google Commerce**"); Google Asia Pacific Pte Limited whose principal place of business is at 70 Pasir Panjang Road, #03-71, Mapletree Business City, Singapore 117371 ("**Google Asia Pacific**"); Google LLC, whose principal place of business is at 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA ("**Google LLC**"); and Google Ireland Limited whose principal place of business is at Gordon House, Barrow Street, Dublin 4, Ireland ("**Google Ireland**"). In this Addendum, "**Google**" will mean Google Asia Pacific, Google Commerce, Google LLC and/or Google Ireland as the context requires.

### BACKGROUND

King.com Limited (an affiliate of Developer) and Google entered into a Google Play Games Velocity Program Addendum to the Google Play Developer Distribution Agreement with an Effective Date of July 1, 2019 (the "**King GVP Addendum**"). Upon execution of this Addendum, the parties agree that the King GVP Addendum will terminate and be superseded by this Addendum.

Developer has agreed to the terms of the DDA to distribute Products to users via Google Play.

Now the parties wish to enter into this Addendum to set forth certain commercial terms relating to Developer's participation in the Google Play Games Velocity Program.

This Addendum is effective as of as of the last date signed by the parties (the "**Effective Date**").

1. **Definitions.** Capitalized terms used but not defined herein have the meanings set forth in the DDA.

    A. "**Ad Addendum**" has the meaning set forth in Section 2 A (Google Obligations).

    B. "**Cloud Credit Exhibit**" has the meaning set forth in Section 2 B (Google Obligations).

    C. "**Marketing Funds**" has the meaning set forth in Section 2 D (Google Obligations).

    D. "**New Title(s)**" means any new mobile video game applications launched by Developer during the Term. For clarity, New Titles do not include any video game applications that Developer releases during the Term as a development or test version that is used to evaluate performance and commercial feasibility only.

1

Google Confidential

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY                     GOOG-PLAY-007273439

E. "**Other Games Velocity Program Addenda**" means the Ad Addendum, Cloud Credit Exhibit, YT Term Sheets, and any other addenda entered into by the parties as part of the Google Play Games Velocity Program.

F. "**Participating Titles**" means the New Titles and the following titles: Candy Crush Friends Saga, Candy Crush Jelly Saga, Candy Crush Soda Saga, Candy Crush Saga, Call of Duty, and Hearthstone. For clarity, Participating Titles do not include any video game applications that Developer releases during the Term as a development or test version that is used to evaluate performance and commercial feasibility only.

G. "**Term**" has the meaning set forth in Section 4 (Term; Termination).

H. "**User Spend**" means the aggregate transaction value of valid payment transactions generated from user spend on Developer's titles in Google Play per year, exclusive of VAT or sales taxes and subject solely to adjustments for refunds and reversals.

I. "**YT Term Sheets**" has the meaning set forth in Section 2 C (Google Obligations).

J. Unless otherwise specified, all section references in this Addendum are references to sections in this Addendum.

2. **Google Obligations.**

   A. Google has offered Developer the opportunity to enter into an addendum to the applicable advertising agreement ("**Ad Addendum**") where, subject to the parties reaching mutual agreement on the terms of such Ad Addendum, Google will provide Developer with advertising credits in an amount and subject to the terms set forth in the Ad Addendum ("**Ad Credits**"). For the avoidance of doubt, (i) Google's only obligation under this Section 2 was to offer Developer the opportunity to enter into the Ad Addendum; and (ii) any obligations Google may have to provide Developer with Ad Credits will be under the Ad Addendum and not under this Addendum.

   B. Developer and Google will enter into a Google Cloud Platform Addendum to amend the agreement between Google Inc. and King.com Limited with a commitment for Developer to spend $230M in Google Cloud over a 4 year term. The parties will agree to an exhibit to the Google Cloud Platform Addendum ("**Cloud Credit Exhibit**") where, subject to the parties reaching mutual agreement on the terms of such Cloud Credit Exhibit, Google will provide Developer with Google Cloud credits in an amount and subject to the terms set forth in the Cloud Credit Exhibit.

   C. Developer and Google will enter into separate, binding term sheets ("**YT Term Sheets**") with a 3 year term and a commitment during the term for Google to pay Developer for certain exclusive rights to Developer's esports content.

   D. Google agrees to contribute a total of $50M to Developer's marketing budget

("**Marketing Funds**") over a 3 year term ($20M in 2020, $15M in 2021, and $15M in 2022) if the User Spend equals or exceeds the following thresholds: ($900M in 2020, $1B in 2021, and $1.2B in 2022) (each a "**Play User Spend Threshold**"). In order to receive the $50M described in the preceding sentence, Developer is not required to participate in the co-marketing investment with any predetermined amounts. Each Play User Spend Threshold is subject to a buffer equal to 5% of the Play User Spend Threshold ("**Buffer Range**"). The Buffer Range for the year 2020 is between $855M and $900M, the Buffer Range for the year 2021 is between $950M and $1B, and the Buffer Range for year 2022 is between $1.14B and $1.2B.

- As a sign of goodwill, each year Google will provide Developer with the co-marketing funds payments upfront; provided that:
  - If User Spend does not reach the Play User Spend Threshold for the year but is within the Buffer Range for the year, then Developer can retain the co-marketing funds payment but Google will deduct $5M from Developer earnings on Google Play in the beginning of the following year.
  - If User Spend is less than the Buffer Range for the year, then Google will deduct the applicable co-marketing funds payment from Developer earnings on Google Play in the beginning of the following year.
  - if User Spend equals or exceeds the Play User Spend Threshold for the year, then Developer may retain all of the applicable co-marketing funds payment.

- If Developer does not have earnings on Google Play sufficient to satisfy the obligations under this Section, then Developer agrees to pay Google separately for the deficiency.

- If User Spend exceeds the Play User Spend Thresholds by $500M or more for the year, then Google will pay Developer $5M in additional co-marketing funds in the following year.

- Developer agrees (i) to use the Marketing Funds to promote Developer's titles on Google Play, (ii) that Google Play will be the default and exclusive app store or marketplace promoted with the Marketing Funds, (iii) that all campaigns must be co-branded with Google Play, (iv) not to spend the Marketing Funds on Google's O&O properties, (v) that Developer will consult with Google on all creatives and campaigns proposed for distribution using Marketing Funds and take into consideration in good faith any comments or concerns raised by Google about such creatives and campaigns, and (v) to provide Google with quarterly reporting as requested by Google on the use of the Marketing Funds using a reporting template provided by Google.

3. **Developer Obligations.**

   A. Developer shall use commercially reasonable efforts to ensure that New Titles, including (i) pre-registrations and (ii) soft launches, will be made available on Google

3

Google Confidential

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY                            GOOG-PLAY-007273441

Play before or on the same day and date that they are on other mobile app stores. Pre-registrations and soft launches are not required in markets where they are not supported by Google Play or the Android operating system.

B. For each Participating Title, Developer shall ensure that Google Play users are not materially disadvantaged as compared to users of the same or equivalent titles of Developer on other mobile app stores in terms of core game content and quality. This Section 3(B) does not apply to: (i) core game content or quality that is not technically supported by the Android operating system or by Google Play; (ii) time limited in-game live ops which are not part of core game play; (iii) game content, features or titles which are released on any mobile distribution channel for testing or test versions; (iv) in-game sponsorships or promotional content or activities made available for a limited period of time, provided that Developer makes good faith efforts to provide the same or similar sponsorships and promotional content for the Participating Titles on Google Play so that the Participating Titles on Google Play are not significantly or persistently disadvantaged (for clarity, the parties will discuss the Google Play Participating Titles sponsorships or promotional opportunities in good faith, and such sponsorships and promotional activities will be subject to terms and conditions as mutually agreed upon by the parties in writing, if any); (v) differences in the core game content and quality of Participating Titles resulting from differences in pricing or business models for Participating Titles, and (vi) differences in the core game content and quality of Participating Titles resulting from regional variances in Participating Titles.

C. Developer shall use commercially reasonable efforts to achieve or maintain a minimum user rating of 4.0 aggregated over the trailing 3 months during the Term for each of the Participating Titles on Google Play.

D. Developer will have the ability to opt-out of the game content and quality requirements set forth in Section 3(B) in the European Economic Area, South Korea, Turkey, Taiwan, and Russia, but will not receive any title specific assistance from Google in those regions (including advertising credits under the Ad Addendum) in those instances.

E. Developer will not remove any of the Participating Titles from distribution on Google Play during the Term unless (i) required by Google or by applicable law or (ii) Developer decides to cease distributing any Participating Titles on all mobile app stores.

F. Developer is responsible for ensuring that each of its affiliates, reporting segments, or other business units (regardless of corporate structure) including without limitation King.com Limited, comply with the obligations set forth in this Section 3 (Developer Obligations).

G. Developer shall not be in breach of any of its obligations under this Section 3 to the extent that any failure to comply with such obligations is caused by any of the following: (i) any delay by Google in approving any new title or update to any existing Participating Title that the Developer submits for distribution via Google Play, (ii) any temporary unavailability of any content as a result of any bug or temporary service unavailability affect the Google Play version of a Participating Title, provided that the Developer shall use its reasonable endeavours to remedy any such bug or temporary service interruption as soon as reasonably practicable, and (iii) distribution of Participating Titles by third parties on Developer's behalf in the People's Republic of China.

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY    GOOG-PLAY-007273442

H. Developer's obligations in Section 3 (Developer Obligations) will exclude the People's Republic of China for so long as Google Play is not launched in the People's Republic of China.

4. **Term; Termination.**

    A. This Addendum will become effective as of the Effective Date and continue in effect for thirty-six months, unless earlier terminated in accordance with Sections 4(B), 4(C) 4(D) or 4(E) (the "**Term**").

    B. Either party may terminate this Addendum (i) effective upon written notice to the other party if any (but not all) of the Participating Titles are removed from Google Play unless Developer ceases to distribute such Participating Title(s) on all mobile app stores, (ii) effective upon written notice if the other party is in material breach of this Addendum and the breach is incapable of remedy, and (iii) if the other party is in material breach of this Addendum where the breach is capable of remedy and fails to remedy that breach within thirty (30) days after receiving written notice of such breach.

    C. Google may terminate this Addendum upon written notice to Developer if Developer is in uncured material breach of the DDA or any of the Other Games Velocity Program Addenda. Further, if Developer is in uncured material breach of Section 3 of this Addendum, Google may terminate the YT Term Sheets.

    D. If Google is in material uncured breach of the DDA, this Addendum or any of the Other Games Velocity Program Addenda, Developer may terminate this Addendum.

    E. If this Google terminates this Addendum due to an uncured material breach by Developer, then the Ad Addendum and the Cloud Credit Exhibit will automatically terminate.

5. **General Provisions.**

    A. The terms of this Addendum are Confidential Information and may not be disclosed, except to employees, affiliates, agents, or professional advisors who need to know it and who have a legal obligation to keep it confidential. Neither party may make any public statement regarding this Addendum without the other's written approval.

    B. All legal notices must be in English, in writing (which may be by email), and addressed to the other party's primary contact, which for Google is legal-notices@google.com and for Developer is legalaffairs@activision.com. This Addendum and the DDA states all terms agreed between the parties and supersedes all other agreements between the parties relating to its subject matter. The DDA remains in full force and effect.

    C. ALL CLAIMS ARISING OUT OF OR RELATING TO THIS ADDENDUM WILL BE GOVERNED BY CALIFORNIA LAW, EXCLUDING CALIFORNIA'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN SANTA CLARA COUNTY, CALIFORNIA.

IN WITNESS WHEREOF, the parties have caused this Addendum to be executed by their duly authorized representatives.

DEVELOPER:
ACTIVISION BLIZZARD, INC.

By: *[signature]*

Name: ARMIN ZERZA

Title: ACTIVISION BLIZZARD CHIEF COMMERCIAL OFFICER

Date: JANUARY 24, 2020

GOOGLE LLC

By: *[signature]*

Name: Christopher Wilson, Sales Compliance Manager, Authorized Signatory, Google LLC

Title: 

Date: 2020.01.24 11:47:23 -08'00'

GOOGLE IRELAND LIMITED

By: 

Name: 

Title: *[signature]* Hanna Varabiova For, Fionnuala Meehan (Board Director)

Date: 2020.01.24 21:06:27 Z

GOOGLE COMMERCE LIMITED

By: 

Name: 

Title: *[signature]* Hanna Varabiova For, Fionnuala Meehan (Board Director)

Date: 2020.01.24 21:06:42 Z

GOOGLE ASIA PACIFIC PTE LIMITED

By: *[signature]*

Name: Lavanya Swetharanyan, Director, Google Asia Pacific Pte. Ltd

Title: 

Date: 2020.01.25 09:56:45 +08'00'

6

Google Confidential