# EXHIBIT 15

Page 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION
_____

IN RE: GOOGLE PLAY STORE ANTITRUST LITIGATION
Case No. 3:21-md-02981-JD

THIS DOCUMENT RELATES TO:
Epic Games Inc. v. Google LLC, et al.
Case No. 3:20-cv-05671-JD

In Re: Google Play Consumer Antitrust Litigation
Case No. 3:20-cv-05761-JD

State of Utah, et al. v. Google LLC, et al.
Case No. 3:21-cv-05227-JD

Match Group LLC, et al., v. Google LLC, et al.
Case No. 3:22-cv-02746-JD
_____

** CONFIDENTIAL **

DEPOSITION OF MARC S. RYSMAN, PhD, called as a witness by and on behalf of Google LLC, pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before P. Jodi Ohnemus, RPR, RMR, CRR, CA-CSR #13192, NH-LSR #91, MA-CSR #123193, and Notary Public, within and for the Commonwealth of Massachusetts, at 100 Cambridge Street, Boston, Massachusetts, on Friday, March 10, 2023, commencing at 9:07 a.m.

```
 1   APPEARANCES:
 2                    MOLO LAMKEN LLP
 3                    BY:  Lauren Weinstein, Esq.
 4                    600 New Hampshire Avenue, NW
 5                    Washington, DC  20037
 6                    202 556-2018
 7                    Lweinstein@mololamken.com
 8                            -and-
 9                    LIEF CABRASER HEIMANN & BERNSTEIN
10                    BY:  Brendan P. Glackin, Esq.
11                    275 Battery Street
12                    San Francisco, CA  94111
13                    415 956-1000
14                    Bglackin@lchb.com
15                            -and-
16                    BENEDICT LAW GROUP PLLC
17                    BY:  Brendan Benedict, Esq.
18                    (Via Telephone)
19                    Michael Altelorando, Esq.
20                    42 W. 38th Street, Suite 1002
21                    New York, NY  10018
22                    212 287-9501
23                    Brendan@benedictlawgroup.com
24                    Maltebrando@benedictlawgroup.com
25                    For the States
```

CONFIDENTIAL

Page 3

```
 1   APPEARANCES:   (CONT'D)
 2
 3                  BARTLIT BECK LLP
 4                  BY:  Karma M. Giulianelli, Esq.
 5                  1801 Wewetta Street, Suite 1200
 6                  Denver, CO  80202
 7                  303 592-3100
 8                  Karma.giulianelli@bartlitbeck.com
 9                          -and-
10                  (Via Telephone)
11                  KAPLAN FOX & KILSHEIMER LLP
12                  BY:  Hae Sung Nam, Esq.
13                  850 Third Avenue, 14th Floor
14                  New York, NY  10022
15                  Hnam@kaplanfox.com
16                  For the consumers
17
18                  HUESTON HENNIGAN LLP
19                  BY:  Tate Harshbarger
20                  523 West 6th Street, Suite 400
21                  Los Angeles, CA  90014
22                  213 788-4752
23                  Tharshbarger@hueston.com
24                  For Match Group
25
```

```
 1   APPEARANCES:   (CONT'D)
 2
 3                  CRAVATH SWAINE & MOORE LLP
 4                  BY:  Eric Zepp, Esq.
 5                  Worldwide Plaza
 6                  825 Eighth Avenue
 7                  New York, NY  10019
 8                  212 474-1829
 9                  Ezepp@cravath.com
10                  For Epic Games
11
12
13                  (Via Telephone)
14                  STATE OF TENNESSEE
15                  OFFICE OF THE ATTORNEY GENERAL
16                  BY:  Ethan Bowers, Esq.
17                  301 6th Avenue N
18                  Nashville, TN  37243
19                  615 741-3491
20                  Ethan.bowers@ag.tn.gov
21                  For the State of Tennessee
22
23
24
25
```

```
 1   APPEARANCES:   (CONT'D)
 2
 3                  (Via Telephone)
 4                  NEW YORK STATE OFFICE OF THE
 5                  ATTORNEY GENERAL
 6                  BY:  Bryan L. Bloom, Esq.
 7                       Timothy O'Neill, Esq.
 8                  The Capitol
 9                  Albany, NY  12224-0341
10                  Bryan.bloom@ag.ny.gov
11                  Timothyoneill@ag.ny.gov
12                  For New York State
13
14
15                  (Via Telephone)
16                  STATE OF UTAH
17                  OFFICE OF THE ATTORNEY GENERAL
18                  BY:  Bahader S. Khan, Esq.
19                  350 N. State Street, Suite 230
20                  Salt Lake City, UT  84114
21                  801 366-0260
22                  Bahader.khan@ag.ut.gov
23                  For the State of Utah
24
25
```

1  APPEARANCES:   (CONT'D)
2
3              MUNGER TOLLES & OLSON LLP
4              BY:  Justin P. Raphael, Esq.
5              350 S. Grand Avenue, 50th Floor
6              Los Angeles, CA  90071
7              415 512-4085
8              Justin.raphael@mto.com
9              For Google LLC
10
11
12  ALSO PRESENT:
13
14             (Via Telephone)
15             Jeanette Teckman, Esq.
16             in-house counsel, Match Group
17
18             Shawn Budd, Video Operator
19
20
21
22
23
24
25

Page 7

1           I N D E X
2
3  TESTIMONY OF:                                    PAGE
4
5  MARC S. RYSMAN, PhD
6  (By Mr. Raphael)                                    9
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| | EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|---|
| 4-5 | Exhibit 1057 | Expert Report of Marc Rysman, October 3, 2022 | 9 |
| 6-8 | Exhibit 1058 | Expert Rebuttal Report of Dr. Marc Rysman, December 23, 2022 | 9 |
| 9-10 | Exhibit 1059 | Merits Report of Hal J. Singer, PhD | 70 |
| 11-12 | Exhibit 1060 | Game Change: The Future of Video Games | 189 |
| 13 | Exhibit 1061 | spreadsheet, AMZ-GP_00002471 | 358 |

1              (Exhibit 1057, Expert Report of Marc
2              Rysman, October 3, 2022.)
3              (Exhibit 1058, Expert Rebuttal Report of
4              Dr. Marc Rysman, December 23, 2022.)
5              VIDEO OPERATOR:  We are on the record.
6    This is the videographer speaking, Shawn Budd, with
7    Veritext Legal Solutions.  Today's date is March
8    10th, 2023.  The time is 9:07 a.m.  We are here in
9    Boston, Massachusetts, to take the video deposition
10   of Dr. Marc Rysman in the matter of Google Play
11   Store Antitrust Litigation.
12             Would counsel please introduce themselves
13   for the record.
14             MS. WEINSTEIN:  Lauren Weinstein on behalf
15   of the states.  With me are my colleagues, Brendan
16   Glackin and Brendan Benedict.
17             MS. GIULIANELLI:  Karma Giulianelli on
18   behalf of consumers.
19             MR. HARSHBARGER:  Tate Harshbarger on
20   behalf of Match plaintiffs.
21             MR. RAPHAEL:  Justin Raphael, Munger
22   Tolles & Olson, for Google.
23             Is there anyone on the phone?
24             MS. WEINSTEIN:  We did telephonic
25   appearances on the record.

Page 10

1           VIDEO OPERATOR:  Okay.  And would the
2    court reporter please swear in the witness.
3           MARC RYSMAN, PhD, having
4           satisfactorily been identified by
5           the production of a driver's license,
6           and being first duly sworn by the Notary
7           Public, was examined and testified as
8           follows to interrogatories
9    BY MR. RAPHAEL:
10       Q.   Good morning.
11       A.   Good morning.
12       Q.   Would you please state your name for the
13   record.
14       A.   Marc Rysman.
15       Q.   Good morning, Doctor Rysman.  You've been
16   deposed a number of times?
17       A.   Yes.
18       Q.   How many times?
19       A.   Five or six times.
20       Q.   Okay.  Any of those in antitrust cases?
21       A.   I don't think I've been deposed in an
22   antitrust case.
23       Q.   Have you ever offered testimony in court
24   or arbitration in an antitrust case?
25       A.   I don't think that the -- the court

Page 137

1      A.    Yes.
2      Q.    How, as an economist, do you determine
3  which products are relevant to the conduct?
4      A.    Well, in general I think about which
5  products are affected by the conduct at issue.  The
6  merger guidelines provide guidance on how to -- the
7  DOJ and FTC merger guidelines provide guidelines on
8  how to establish market definition and following
9  from their lead on this.
10     Q.    So you would agree, then, that the
11 appropriate starting place for market definition is
12 the products affected by the conduct at issue?
13     A.    Yes.
14           MS. WEINSTEIN:  Objection to form.
15           I'm sorry, Doctor Rysman.
16     Q.    And what products are affected by the
17 conduct at issue in this case?
18     A.    In this case I -- considering products in
19 the two markets that I define, which are the
20 Android app distribution market and the Android
21 in-app billing market.
22     Q.    Does the conduct in this case affect the
23 Android operating system product?
24           MS. WEINSTEIN:  Objection to form.
25     A.    In some ways.

Page 141

1    A.   The buyers are consumers.  There are
2  sellers in the sense of the app developers are
3  producing apps into this market, and then there's
4  the distributors, let's say, or the stores that
5  connect consumers to the app developers.
6    Q.   So Google is selling a platform service
7  from the Google Play Store to both consumers and
8  developers?
9         MS. WEINSTEIN:  Objection to form.
10   A.   Yes.
11   Q.   And what do users buy from Google in the
12  app distribution market?
13        MS. WEINSTEIN:  Objection to form.
14   A.   Users get the App Store or the Play
15  Store -- excuse me -- the Play Store as part of
16  their choice over their operating system and then
17  they can use the Play Store to find and obtain
18  apps.
19   Q.   From developers?
20        MS. WEINSTEIN:  Objection to form.
21   A.   The apps come from developers, yes.
22   Q.   Are IAPs or in-app purchases or
23  subscriptions part of the app distribution market?
24        MS. WEINSTEIN:  Objection to form.
25   A.   No.

1    Q.   When an Android app developer sells an
2  in-app purchase or subscription and pays a service
3  fee to Google, what is that service fee for?
4         MS. WEINSTEIN:  Objection to form.
5    A.   Ask the question again?
6    Q.   When an Android app developer sells an IAP
7  or a subscription and pays a service fee to Google,
8  what is that service fee for?
9         MS. WEINSTEIN:  Same objection.
10   A.   They're paying to -- for -- I mean,
11 they've signed a contract to pay this fee when they
12 offer their app on the Play Store.  Are you asking
13 what exactly are they getting in return?
14   Q.   Well, is the service fee that a developer
15 pays when it sells an in-app purchase or a
16 subscription for app distribution or for billing
17 services?
18   A.   At some level it's joint.  They --
19 they've offered the app on the Play Store and
20 they're obtaining the services associated with that
21 and just --
22   Q.   Do you -- do you agree that Google only
23 earns money when developers earn money?
24        MS. WEINSTEIN:  Objection to form.
25   Q.   With respect to the Play Store.

Page 308

1           MS. WEINSTEIN:  Objection to form.
2      A.   That's right.
3      Q.   Have you seen any evidence that Google
4  promised that it would never reduce its revenue
5  share?
6           MS. WEINSTEIN:  Objection.  Form.
7      A.   No, I don't see evidence that they made
8  that promise.
9      Q.   Let me ask a more specific question:  Have
10 you seen any evidence that Google promised that it
11 would never reduce carriers' revenue share?
12          MS. WEINSTEIN:  Objection.  Form.
13     A.   Relative to the revenue share at the, sort
14 of, beginning of the Android period?
15     Q.   Yes.
16     A.   I never saw a promise like that.
17 Similarly, I didn't see any announcements that they
18 planned to phase that out that they made public.
19     Q.   Have you seen any evidence that Google
20 promised that it would never earn a profit from its
21 app store?
22          MS. WEINSTEIN:  Objection.  Form.
23     A.   No, I don't see -- I don't have any
24 evidence of such a promise; but, similarly, I don't
25 have evidence that they -- that -- clear that they