# EXHIBIT 20

Page 1

1              UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3                 SAN FRANCISCO DIVISION
4
                                         )
5    IN RE GOOGLE PLAY STORE              )
     ANTITRUST LITIGATION                 )
6                                         )
     THIS DOCUMENT RELATES TO:            )   CASE NO.
7                                         )   3:21-MD-02981-JD
     STATE OF UTAH, ET AL. V.             )
8    GOOGLE, LLC, ET AL.,                 )
     CASE NO. 3:21-CV-05227-JD            )
9                                         )
     MATCH GROUP, LLC ET AL. V.           )
10   GOOGLE, LLC ET AL.,                  )
     CASE NO. 3:22-CV-02746-JD            )
11                                        )
     EPIC GAMES, INC. V. GOOGLE,          )
12   LLC ET AL.,                          )
     CASE NO. 3:20-CV-05671-JD            )
13                                        )
     IN RE GOOGLE PLAY CONSUMER           )
14   ANTITRUST LITIGATION,                )
     CASE NO. 3:20-CV-05761-JD            )
15   _____)
16
17       ** PROVISIONALLY HIGHLY CONFIDENTIAL **
18
19                   PROCEEDINGS OF
20   VIDEOTAPED DEPOSITION OF STEVEN SCHWARTZ, PH.D.
21              TUESDAY, MARCH 28, 2023
22
23
24   REPORTED BY:  REAGAN EVANS, RPR, RMR, CRR, CCRR,
25                 CLR, CRC, CA CSR NO. 8176

Page 2

1  VIDEOTAPED DEPOSITION OF STEVEN SCHWARTZ, PH.D.,
2  TAKEN ON BEHALF OF DEFENDANTS AT 9:07 A.M., TUESDAY,
3  MARCH 28, 2023, AT NEWPORT BEACH, CALIFORNIA, BEFORE
4  REAGAN EVANS, CA CSR NO. 8176, RPR, RMR, CRR, CCRR,
5  CLR, CRC.
6
7  APPEARANCES OF COUNSEL
8
9  FOR GOOGLE LLC ET AL.
10      MUNGER, TOLLES & OLSON LLP
11      BY:  JUSTIN P. RAPHAEL, ESQ.
12      560 MISSION STREET
13      TWENTY-SEVENTH FLOOR
14      SAN FRANCISCO, CALIFORNIA 94105
15      (415) 512-4000
16      JUSTIN.RAPHAEL@MTO.COM
17
18
19
20
21
22
23
24
25

```
 1   APPEARANCES OF COUNSEL (CONTINUED)
 2
 3   FOR MATCH GROUP LLC; HUMOR RAINBOW, INC.; PLENTY OF
 4   FISH MEDIA ULC; AND PEOPLE MEDIA, INC:
 5       HUESTON HENNIGAN LLP
 6       BY:  MICHAEL M. PURPURA, ESQ.
 7       620 NEWPORT CENTER DRIVE
 8       SUITE 1300
 9       NEWPORT BEACH, CALIFORNIA 92660
10       (949) 229-8640
11       MPURPURA@HUESTON.COM
12             - AND -
13       BY:  TATE HARSHBARGER, ESQ.
14       523 WEST 6TH STREET
15       SUITE 400
16       LOS ANGELES, CALIFORNIA 90014
17       (213) 788-4340
18       THARSHBARGER@HUESTON.COM
19
20
21
22
23
24
25
```

```
 1  APPEARANCES OF COUNSEL (CONTINUED)
 2
 3  FOR PLAINTIFF STATES:
 4      OFFICE OF THE ATTORNEY GENERAL
 5      STATE OF UTAH
 6      BY:  BRENDAN BENEDICT, ESQ.
 7      160 EAST 300 SOUTH
 8      5TH FLOOR
 9      P.O. BOX 140872
10      SALT LAKE CITY, UT 84114-0872
11      BBENEDICT@AGUTAH.GOV
12
13      KRESSIN LAW GROUP
14      BY:  BRANDON KRESSIN, ESQ.
15      BY:  PATRICK GRECO, ESQ.
16           (APPEARING REMOTELY)
17      5609 GOLDEN BEAR DRIVE
18      OVERLAND PARK, KANSAS 66223
19      (913) 374-0750
20      BRANDON@KRESSINLG.COM
21      PATRICK@KRESSINLG.COM
22
23
24
25
```

Page 5

```
 1   APPEARANCES OF COUNSEL (CONTINUED)
 2
 3   FOR INTERIM STEERING COMMITTEE MEMBERS FOR
 4   PLAINTIFFS AND THE PROPOSED CLASS IN IN RE
 5   GOOGLE PLAY CONSUMER ANTITRUST LITIGATION:
 6        KOREIN TILLERY, LLC
 7        BY:  DAVID WALCHAK, ESQ.
 8             (APPEARING REMOTELY)
 9        205 NORTH MICHIGAN AVENUE
10        SUITE 1950
11        CHICAGO, ILLINOIS 60601
12        (312) 641-9750
13        DWALCHAK@KOREINTILLERY.COM
14
15
16   ALSO PRESENT:
17        JEANETTE TECKMAN, MATCH GROUP (REMOTELY)
18        STEPHEN MYERS, MATCH GROUP (REMOTELY)
19        DAVID WALCK, VIDEOGRAPHER
20
21
22
23
24
25
```

HIGHLY CONFIDENTIAL

Page 6

1                    I N D E X
2
3  WITNESS              EXAMINATION                      PAGE
4  STEVEN SCHWARTZ,     BY MR. RAPHAEL                   11
5  PH.D.
6
7
8                   E X H I B I T S
9
10  PREVIOUSLY MARKED AND ATTACHED:
11  NO.            PAGE      DESCRIPTION
12  EXHIBIT 360    149   PLAY VALUE MODEL, PLAY BD
13                       STRATOPS, AUGUST 8, 2019, BATES
14                       STAMPED GOOG-PLAY-000337564.R
15                       THROUGH GOOG-PLAY-000337631.R
16
17
18
19  MARKED AND ATTACHED:
20  NO.            PAGE      DESCRIPTION
21  EXHIBIT 1106   25    EXPERT REPORT OF STEVEN
22                       SCHWARTZ, PH.D., DATED
23                       OCTOBER 3, 2022, 1105 PAGES
24
25

HIGHLY CONFIDENTIAL

Page 7

**I N D E X**

**(CONTINUED)**

**E X H I B I T S**

MARKED AND ATTACHED:

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| EXHIBIT 1107 | 25 | REBUTTAL EXPERT REPORT OF STEVEN SCHWARTZ, PH.D., DATED NOVEMBER 18, 2022, 339 PAGES |
| EXHIBIT 1108 | 25 | REPLY EXPERT REPORT OF STEVEN SCHWARTZ, PH.D., DATED DECEMBER 23, 2022, 357 PAGES |
| EXHIBIT 1109 | 38 | COURT DECISION IN EPIC GAMES, INC., V. APPLE INC., 559 F.SUPP.3D 898, 154 PAGES (2021) |
| EXHIBIT 1110 | 111 | TINDER PLAY VALUE ESTIMATE, BATES STAMPED GOOG-PLAY-011274244 THROUGH GOOG-PLAY-011274253 |

Page 8

```
                        I N D E X
                       (CONTINUED)
                     E X H I B I T S


   MARKED AND ATTACHED:
   NO.              PAGE     DESCRIPTION
   EXHIBIT 1111     123      EXCEL SPREADSHEET, BATES
                             STAMPED GOOG-PLAY-004625919
```

Page 9

1                NEWPORT BEACH, CALIFORNIA
2           TUESDAY, MARCH 28, 2023; 9:07 A.M.
3
4           THE VIDEOGRAPHER:  Good morning.
5           We are going on the record at 9:07 a.m., on
6    March 28th, 2023.
7           Please note that the microphones are
8    sensitive and may pick up whispering and private
9    conversations.
10          Please mute your phones at this time.
11          Audio and video recording will continue to
12   take place unless all parties agree to go off the
13   record.
14          This is Media Unit 1 of the video-recorded
15   deposition of Steven Schwartz, Ph.D., taken by
16   counsel for the defendants in the matter of In re
17   Google Play Store Antitrust Litigation, filed in the
18   United States District Court, Northern District of
19   California, San Francisco Division.
20          Case No. 3:21-md-02981-JD.
21          The location of this deposition is
22   620 Newport Center Drive, Suite 1300, in Newport
23   Beach, California.
24          My name is David Walck, and I am the
25   videographer.

Page 10

1       The court reporter is Reagan Evans.  And we
2  are from the firm Veritext Legal Solutions.
3       I am not related to any party in this
4  action; nor am I financially interested in the
5  outcome.
6       Counsel, and everyone present, will now
7  state their appearances and their affiliations for
8  the record.
9       If there are any objections to proceeding,
10 please state them at the time of your appearance,
11 beginning with the noticing attorney.
12      MR. RAPHAEL:  Good morning.
13      Justin Raphael, Munger Tolles & Olson, for
14 Google.
15      MR. PURPURA:  Good morning.
16      Michael Purpura, Hueston Hennigan LLP, on
17 behalf of Match Group LLC, Humor Rainbow,
18 Incorporated, Plenty of Fish Media ULC, and People
19 Media, Inc., which we refer to as the Match
20 Plaintiffs.
21      MR. HARSHBARGER:  Tate Harshbarger from
22 Hueston Hennigan LLP, also on behalf of the Match
23 Plaintiffs.
24      MR. BENEDICT:  Brendan Benedict from the
25 Utah Office of the Attorney General on behalf of the

Page 11

1   plaintiff governments.
2           THE VIDEOGRAPHER: Would any of our remote
3   participants care to state their appearances on the
4   record today?
5           Hearing nothing, would the court reporter
6   please swear in the witness, and then Counsel may
7   proceed?
8                   STEVEN SCHWARTZ, Ph.D.,
9      having been first duly sworn by the reporter,
10              was examined and testified as follows:
11
12          THE WITNESS: I do.
13          THE REPORTER: Thank you.
14
15                      EXAMINATION
16  BY MR. RAPHAEL:
17      Q   Good morning, Dr. Schwartz.
18      A   Good morning.
19      Q   Could you state your name for the record.
20      A   Steven Schwartz.
21      Q   And have you been deposed a number of
22  times, Dr. Schwartz?
23      A   I have.
24      Q   About how many times?
25      A   Certainly north of 30. Whether it's north

Page 44

1   some billing, and some other services?
2           MR. PURPURA:  Objection.  Form.
3           THE WITNESS:  Well, there's something in
4   your question that I -- I -- I don't agree with.  I
5   don't agree that the payment processing services are
6   the same as the Play Store services.  Obviously, as
7   I've said in my report, I think there is a separate
8   demand.  They are distinct services.  It is one fee
9   for the bundle of services between Google Play
10  billing and the Google Play Store that I view as
11  separate and distinct.
12  BY MR. RAPHAEL:
13      Q   Okay.
14          So the service fees that the Match
15  Plaintiffs pay are for a bundle of services from the
16  Google Play Store, as well as billing services?
17          MR. PURPURA:  Objection.  Form.
18          THE WITNESS:  I would not disagree with
19  that.
20  BY MR. RAPHAEL:
21      Q   Okay.
22          Now, I think you mentioned that Google,
23  where it has enabled developers to pay -- strike
24  that.
25          Where Google has enabled developers to use

Page 49

1  services are provided by the Google Play Store and
2  those associated with Google Play billing.
3          The price is facially supracompetitive.
4          There is also injury to Match Plaintiffs as
5  a result of the reduction in choices and options it
6  has for the distribution of apps to the universe of
7  Android device owners who might be interested in
8  securing their apps.
9          Principally, I would say the injury flows
10 from the bundle supracompetitive price and the
11 reduction of choice and options available to it for
12 distribution.
13 BY MR. RAPHAEL:
14     Q   Okay.
15         So let me try to break that down.
16     A   Okay.
17     Q   So I think the first thing you were saying
18 is that the Match Plaintiffs are harmed by a
19 reduction in competition for app distribution
20 because the service fees they pay are a
21 supracompetitive price, in part, for app
22 distribution?
23     A   Correct.
24     Q   Okay.
25         Now, I think you also then said that the

1          Are you offering any opinion that any OEM
2     actually would have done that in the but-for world?
3          A    I am not offering that opinion with respect
4     to any specific OEM.
5          Q    Is it anticompetitive for Google not to
6     make all of its APIs open source?
7               MR. PURPURA:  Objection.
8               THE WITNESS:  That's not a question I've
9     analyzed.
10    BY MR. RAPHAEL:
11         Q    So you have no opinion on that issue that
12    you've disclosed in your reports?
13         A    I don't believe I do.
14         Q    Have you done any analysis in your reports
15    of whether Google operated Play below cost as a
16    result of making certain payments of revenue share
17    to carriers?
18         A    Say that again, please.
19         Q    Have you done any analysis in your report
20    of whether Google operated Play below cost as a
21    result of sharing revenue with cellular carriers?
22         A    I have not.
23         Q    Have you seen any evidence that Google
24    promised that it would never reduce carriers'
25    revenue share?

Page 286

1  A   I don't recall seeing evidence on that one
2  way or the other.
3  Q   Have you ever seen any evidence that Google
4  promised that it would never earn a profit from its
5  app store?
6  A   I have not seen any evidence that speaks to
7  that.
8  Q   Why did carrier app stores fail?
9      MR. PURPURA:  Objection.
10 BY MR. RAPHAEL:
11 Q   Well, let me back up and lay some
12 foundation there.
13     Are you aware that some cellular carriers
14 actually did launch their own app stores?
15 A   I'm vaguely aware of it, but it's not a
16 subject that I've studied.
17 Q   So you haven't studied why those app stores
18 that cellular carriers launched weren't more
19 successful than they were in the actual world?
20 A   I have not.
21 Q   Do any of Google's revenue sharing
22 agreements with carriers prohibit the carriers from
23 either launching their own app store or
24 preinstalling an app store other than Google Play?
25 A   I would have to look back at the agreement