1   Karma M. Giulianelli (SBN 184175)
    karma.giulianelli@bartlitbeck.com
2   **BARTLIT BECK LLP**
    1801 Wewetta St., Suite 1200
3   Denver, Colorado 80202
    Telephone: (303) 592-3100
4
5   Hae Sung Nam (*pro hac vice*)
    hnam@kaplanfox.com
6   **KAPLAN FOX & KILSHEIMER LLP**
    850 Third Avenue
7   New York, NY 10022
    Telephone.: (212) 687-1980
8
    *Co-Lead Counsel for the Proposed Class in In*
9   *re Google Play Consumer Antitrust Litigation*
10  Paul J. Riehle (SBN 115199)
    paul.riehle@faegredrinker.com
11  **FAEGRE DRINKER BIDDLE & REATH
    LLP**
12  Four Embarcadero Center, 27th Floor
    San Francisco, CA 94111
13  Telephone: (415) 591-7500

14  Christine A. Varney (*pro hac vice*)
    cvarney@cravath.com
15  **CRAVATH, SWAINE & MOORE LLP**
    825 Eighth Avenue
16  New York, New York 10019
    Telephone: (212) 474-1000
17  *Counsel for Plaintiff Epic Games, Inc. in Epic*
    *Games, Inc. v. Google LLC et al.*
18
19  Brendan P. Glackin (SBN 199643)
    bglackin@agutah.gov
20  **OFFICE OF THE UTAH ATTORNEY
    GENERAL**
21  160 E 300 S, 5th Floor
    PO Box 140872
22  Salt Lake City, UT 84114-0872
    Telephone: (801) 366-0260

23  *Counsel for Utah*

24

25  [Additional counsel appear on signature page]

26

27

28

    Douglas J. Dixon (SBN 275389)
    ddixon@hueston.com
    **HUESTON HENNIGAN LLP**
    620 Newport Center Drive, Suite 1300
    Newport Beach, CA 92660
    Telephone: (949) 229-8640

    *Counsel for Plaintiffs Match Group, LLC, et*
    *al.*

    Glenn D. Pomerantz (SBN 112503)
    glenn.pomerantz@mto.com
    **MUNGER, TOLLES & OLSON LLP**
    350 South Grand Avenue, Fiftieth Floor
    Los Angeles, California 90071
    Telephone: (213) 683-9100

    Brian C. Rocca (SBN 221576)
    brian.rocca@morganlewis.com
    **MORGAN, LEWIS & BOCKIUS LLP**
    One Market, Spear Street Tower
    San Francisco, CA 94105-1596
    Telephone: (415) 442-1000

    *Counsel for Defendants Google LLC et al.*

1

JOINT STATEMENT REGARDING SEPTEMBER 7, 2023 PRE-TRIAL CONFERENCE
CASE NOS. 3:21-MD-02981-JD; 3:20-CV-05671-JD; 3:20-CV-05761-JD; 3:20-CV-05792-JD; 3:21-CV-05227-JD; 3:22-CV-02746-JD

1
2

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

3
4
5
6
7
8
9
10
11

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT STATEMENT REGARDING SEPTEMBER 7, 2023 PRETRIAL CONFERENCE** |

12
13
14
15
16
17

Pursuant to the Court's Minute Entry for the August 3, 2023 Motion Hearing and Trial Planning Conference (Dkt. No. 571, 3:21-md-02981-JD ("MDL")) dated August 4, 2023, the parties in the above-captioned MDL (the "Parties") by and through their undersigned counsel, submit this Joint Statement regarding trial planning in advance of the September 7, 2023 pretrial conference.

18

### I.     Further Proceedings Regarding the Consumer Class

19
20
21
22
23
24

On August 28, 2023, the Court granted Google's motion to exclude the injury and damages opinions of Dr. Hal Singer (*see* MDL ECF 588) and issued an order indicating that its "order granting certification should be vacated," noting that it lacked jurisdiction to do so while Google's appeal of the certification order was pending in the Court of Appeals, and directing the parties "to meet and confer, and be prepared to discuss proposed next steps with the Court at the September 7, 2023 status conference." (MDL ECF 589 at 1).

25
26
27

On August 31, 2023, the Ninth Circuit issued an order granting a limited remand stating: "Given the district court's indication that it would reconsider class certification, the Court grants the motion to vacate the scheduled oral argument in the appeal and to remand the case to the

28

district for further proceedings," while retaining jurisdiction over the appeal and directing the parties to notify the Court "when the district court has issued an order pertaining to the class certification."  Below the parties set forth their positions regarding the implications of these developments.

**Consumer Plaintiffs' Position:**  Consumers are considering "next steps" as instructed by the Court, including seeking leave to file a renewed class certification motion supported by amended expert disclosures.  Consumers would like to be heard on these next steps, including discussion of a briefing schedule for a potential motion addressing these issues.

Protection of the interests of the 21 million class members warrants further proceedings on class certification.  "[D]ecertification at a late stage is disfavored if it 'adversely and unfairly prejudices class members, who may be unable to protect their own interests." *Newberg and Rubenstein on Class Actions* § 7.37 (6th ed.) (cleaned up).  As the court noted in its order, Google introduced merits expert testimony from a new expert after abandoning its class certification expert who "did not challenge the fundamental soundness of Dr. Singer's approach in light of the economic literature."  MDL Dkt. 588 at 6.  Even Dr. Leonard did not challenge Dr. Singer's methodology for conducting his regression analysis in his merits report, but introduced new economic and quantitative analysis doing so on August 14, 2023.  *See* MDL Dkt. 578.1 ¶ 16.  Protection of the interests of the class warrants further proceedings before the drastic remedy of decertification on the eve of trial.

Further proceedings on class certification should not impact the November 6 trial. Because of the pending Ninth Circuit appeal, the parties had already contemplated that the trial would continue without including the Class claims.  That should not change now.

**Google's Position:**  Consistent with the Ninth Circuit's August 31, 2023 order granting limited remand and the Court's August 28, 2023 Order, "the order granting certification should be vacated."  ECF No. 589.

Consumer Plaintiffs state that they are considering "next steps" regarding class certification once the Court vacates its class certification order, but they have not yet identified those steps.

In any event, there should be no further proceedings regarding class certification at this late stage.  Consumer Plaintiffs' expert, Dr. Singer, disclosed three different injury and damage models.  And Consumer Plaintiffs had a full and fair opportunity to defend these three models through reports, depositions, *Daubert* briefing, the expert hot tub, and the supplemental declarations requested by the Court.  Consumer Plaintiffs should not be permitted to try and recertify a class by disclosing a new, fourth injury and damages model at this stage of the proceedings, after the expert disclosure deadlines and after the Court has already entertained the parties' *Daubert* and dispositive motions.

Despite Consumer Plaintiffs position that decertification is a "disfavored" step, it is well recognized that a district court remains free to rescind a class certification order "in the light of subsequent developments in the litigation."  *Brown v. Wal-Mart Store, Inc*., No. 09-CV-03339-EJD, 2018 WL 1993434, at *2 (N.D. Cal. Apr. 27, 2018) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  Indeed, the district court has an ongoing "duty of monitoring class decisions in light of the evidentiary development of the case."  Newberg and Rubenstein on Class Actions § 7.37 (6th ed.) (cleaned up).

Nor have Consumer Plaintiffs explained why vacatur of the certification order would, in this case, "prejudice[] class members, who may be unable to protect their own interests."  The Court denied Consumer Plaintiffs' motion for class notice; accordingly putative class members were not told that they are part of a class.  And decertification in this case protects the interests of the putative class.  Otherwise, these putative class members would be bound to the Court's decision excluding Dr. Singer's testimony, and Google would be entitled to summary judgment (or directed verdict) against these class members on the issues of injury and damages—issues on which the Consumer Plaintiffs no longer have admissible evidence.

Consumer Plaintiffs' suggestion that there should be further proceedings regarding class certification will also jeopardize the Court's ability to hold a single trial of all claims on November 6.  If further proceedings related to class certification are entertained over Google's objection, Google would object to a trial of any claims in this MDL proceeding until any remaining proposals by Consumer have been addressed such that all claims can be tried in a single trial.

## II.      Status of Individual Plaintiffs

Four individual consumer plaintiffs whom the Court ruled are not class members—Mary Carr, Daniel Egerter, Zack Palmer, and Serina Moglia—still have claims pending.  Additionally, the two individuals whom the Court appointed as class representatives (Matthew Atkinson and Alex Iwamoto) also have claims pending.  The parties' positions with respect to further proceedings involving the six individual consumer plaintiffs are set out below:

**Consumer Plaintiffs' Position:**  Consumer Plaintiffs intend to present the claims of all remaining individual plaintiffs who are not class members—Mary Carr, Daniel Egerter, Zack Palmer, and Serina Moglia—at the trial on November 6.  Whether Consumer Plaintiffs present the claims of the appointed named class representatives, Matthew Atkinson and Alex Iwamoto, depends upon the Court's resolution of the class certification issues identified above.  In particular, if the Court decertifies the class and denies any requests to recertify a class, then the current class representatives, Matthew Atkinson and Alex Iwamoto, will seek to participate in the trial as well.  Otherwise, they will remain as class representatives in further class proceedings.

If any of the individual plaintiffs choose not to opt out of the *parens patriae* action when notice is issued, Consumer Plaintiffs are prepared to file dismissal motions under Rule 41 and further address any issues Google would like to raise at that time.

**Google's Position:**  With the exclusion of Dr. Singer, there is no evidentiary basis for any of the individual plaintiffs to present a damages claim at trial.  But in any case, with just two

months before trial, Consumer Plaintiffs still cannot say who will be proceeding to trial and what claims for relief they will be pursuing.  According to Consumer Plaintiffs, now, six individuals will proceed to trial, unless four of them decide not to;[1] the four Consumer Plaintiffs whom the Court held were not part of the class still have not said whether they will be seeking to recover through the *parens patriae* claims of the Plaintiff States or whether they will proceed with their own claims.

There are only two months before trial.  Google deserves fair notice now of which Consumer Plaintiffs will be pursuing which claims at trial so that it can prepare for trial without further unfair prejudice.  It is time for Plaintiffs to make a once-and-for-all decision about which claims are proceeding on November 6.  But the right result is for the Court to require that they proceed with all or none of the individual claims.  Plaintiffs should not be able to pursue multiple lawsuits for years and then drop their weakest claims for relief on the eve of trial without consequence.  That would encourage the filing of duplicative lawsuits at a useless cost to the judicial system and defendants.  But that result is precisely what Plaintiffs are attempting to leave possible.  Counsel for the consumers seek the right to selectively prosecute some, but not all, of the individual claims they have pursued for years in this Court, and ask that those individuals whose claims will be abandoned–likely due to an unfavorable discovery record–still be permitted to fully recover should their State Attorney General recover in *parens patriae*.  The Court should not permit this result.

To the extent that individual plaintiffs intend to seek injunctive relief at trial for their individual claims while also reserving the right to recover through relief obtained by the Plaintiff States, Google further objects that this would be improper claim-splitting.  Plaintiffs cannot seek one form of relief through a lawsuit of their own while pursuing another form of relief based on

---

[1] Indeed, Consumer Plaintiffs have already revised their position regarding which individual plaintiffs will be pursuing their claims at trial multiple times during meet and confer communications.  First, they took the position that only individual plaintiff Mary Carr, who the Court held was not part of the class, would proceed to trial.  Then they asserted that Ms. Carr and the two class representatives would proceed to trial.  And now they are asserting that all six individual consumer plaintiffs will proceed to trial–maybe.

the same causes of action regarding the same conduct in another lawsuit.  If individual Plaintiffs want to bring their own injunctive relief claim to trial, they must face the consequences of their damages claim failing on its merits and cannot recover damages through the Plaintiff States.

**III.**          **Cameras in the Courtroom Pilot Project**

**Plaintiffs' Position**:  All Plaintiffs consent to participate in the Cameras in the Courtroom Pilot Project for the trial.  Alternatively, given Google's refusal to participate, Plaintiffs request that the Court provide the public with an audio feed of the trial.  Google objects to both a video and audio feed on the grounds that offering an audio feed "would risk disclosure" of "sensitive competitive evidence that has been designated as highly confidential by non-parties and the parties to the litigation" and "introduce unnecessary disruption."

Google's position that an audio feed "would risk disclosure" of sensitive information is irreconcilable with its recognition that "[t]he trial in this litigation will occur in an open courtroom and be accessible to the general public."  If Google believes, as it suggests it does, that the courtroom will be open to the public with few exceptions, offering the public a second access point to the trial (*e.g.*, an audio feed) should be of no concern.  Further, there is no risk that an audio feed would increase the likelihood that sensitive information will be disclosed to the public.  Plaintiffs understand that the Court is not permitted to broadcast the proceedings in real time over Google's objection (*see* Aug. 3, 2023 Hr'g Tr. 73:2-7) and therefore request a delayed audio feed of the public portions of the trial. In the unlikely event that confidential information is revealed in public session, there will still be an opportunity for the parties to resolve any legitimate remaining confidentiality concerns prior to the release of the audio.

Google provides no support for its second rationale for not wanting an audio feed of the trial: that it would "introduce unnecessary disruption."  As the Court explained at the August 3, 2023 hearing, having cameras in the courtroom is unobstructive.  (Aug. 3, 2023 Hr'g Tr. 74:2-5.)  "[Y]ou don't even see them . . . You just forget about it."  (*Id.*)  Using microphones, which are already in the courtroom, would be even less of an instrusion.  This was true in *Epic*

7

Joint Statement Regarding September 7, 2023 Pre-Trial Conference
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1    *Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR, where almost the entire trial was available via

2    a *live* audio stream.[2]

3         As this Court stated in another recent antitrust trial, "[t]his is a public courtroom." *In re*

4    *Capacitors Antitrust Litigation*, No. 14-3264-JD, Dkt. 2562, Feb. 13, 2020 Hr'g Tr. at 51:10-12.

5    Indeed, the Court has acknowledged that this case is of "great interest to a lot of people."

6    (Aug. 3, 2023 Hr'g Tr. 73:21-22.)  Making these proceedings available to the public through an

7    audio feed would increase public access beyond the limited number of people able to attend in

8    person.  Given this public interest, and because Google has not identified legitimate

9    confidentiality or disruption concerns, Google's position should be rejected.

10        **Google's Position**:  Google declines to participate in the Cameras in the Courtroom Pilot

11    Project.  This trial will contain sensitive competitive evidence that has been designated as highly

12    confidential by non-parties and the parties to the litigation.  The Cameras in the Courtroom Pilot

13    Program would risk disclosure of highly confidential competitive information and introduce

14    unnecessary disruption to the pleadings.

15        Google also declines to participate in a program that would enable an audio feed of the

16    trial, whether live-streamed or delayed, as Plaintiffs suggest.[3]  The trial in this litigation will

17    occur in an open courtroom and be accessible to the general public.  The audio feed of the trial in

18    *Epic Games, Inc. v. Apple Inc*., No. 20-cv-05640-YGR, a bench trial, was ordered because the

19    courtroom was otherwise closed to the public due to the COVID-19 pandemic.  Plaintiffs have

20    not identified any such extraordinary circumstances that would warrant the addition of an audio-

21    feed here, when this trial will be already open to the general public.  Contrary to Plaintiffs'

22

23    [2] Google is also wrong to suggest there needs to be "extraordinary circumstances" such as the COVID pandemic for

24    this Court to order an audio stream.  The fact is that COVID expanded public access to judicial proceedings in a
variety of ways, such as the holding of routine conferences through publicly available Zoom webinars.  In any event,
the significant public interest in this matter is a special circumstance warranting expanded public access.

25    [3] Google notes that the Northern District of California was selected for an Audio Streaming Pilot Program, but that

26    program (1) ended in March 31, 2023, (2) still required consent of both parties, and (3) specifically excluded any
civil proceeding involving live witness testimony; sealed, confidential, or classified materials; or jurors or potential

27    jurors, including voir dire and trial.  *See* https://www.uscourts.gov/about-federal-courts/judicial-
administration/audio-streaming-pilot.  As these restrictions reveal, an audio feed of the trial here would be

28    inappropriate.

suggestion, Google does not expect the courtroom to be closed to the public (except when the Court determines confidential information will be discussed).

## IV.   Jury Questionnaires

The parties agree that including case-specific questions would be useful.  The parties further agree that the COVID-vaccination questions (*i.e.*, "Are you fully vaccinated for COVID-19 (one dose of Johnson & Johnson or two doses of Moderna or Pfizer) and have you received a booster?") should remain in the jury questionnaire.

**Google's Position**:  Google's position is that only those prospective jurors who are fully vaccinated against COVID-19 should be seated as members of the jury.

**Plaintiffs' Position**: Plaintiffs' position is that only jurors who have answered "Yes, fully vaccinated.  No booster" or "Yes, fully vaccinated with booster" should be seated as members of the jury.

## V.   Daily Trial Schedule

The parties request that trial be held from 9 a.m. to 2 p.m. (with no lunch break) each trial day, and to hold trial every other Friday, as the Court is available.  With the Court's permission, the parties would like to jointly provide the jury with snacks, the costs for which the parties will split evenly.

## VI.   Expert Disclosures

Google requests that the Court compel Plaintiffs to comply with the Court's February 1, 2023 and April 10, 2023 orders and provide to Google on a coordinated basis their revised list of experts and each expert's area of testimony by September 21, 2023.

Plaintiffs request that the Court deny Google's request, as Plaintiffs have already fully complied with the Court's orders pertaining to expert disclosures.

**Google's Position**:  Seven months ago, the Court ordered Plaintiffs to provide Google with a streamlined list of experts to avoid duplication.  MDL Dkt. 440 at 2. Plaintiffs still have not complied with the Court's order.

At a January 31, 2023 hearing, the Court explained that "there's a core of opinions about the market, about exclusionary conduct, about barriers to entry, about all those things that there should be one person speaking on" and instructed Plaintiffs to "trim down" their list of experts. Jan. 31, 2023 Hr'g. Tr. at 302:25-303:2.  On February 1, 2023, the Court ordered Plaintiffs to "confer on coordinating their experts so that the ***plaintiffs as a group will present one expert for each common issue***.  Individual issues may be addressed by separate experts."  Dkt. No. 440 at 2 (emphasis added).  The Court ordered Plaintiffs to "provide Google with their revised list of experts."  In a subsequent order, the Court ordered Plaintiffs to "provide to Google on a coordinated basis their revised list of experts and each expert's area of testimony by April 7, 2023."  Dkt. No. 456.

With Google's agreement to an extension, Plaintiffs served an expert disclosure on April 10, 2023.  That disclosure did not comply with the Court's orders.  It includes five different economists and two different "technology and security" experts, and it designates multiple experts to testify about the same matter.  For example, at the January 31, hearing, Plaintiffs assured the Court that they "are not going to have four different experts reciting their opinions which are all the same or different about market definition."  Jan. 31, 2023 Hr'g. Tr. at 303:8-10. However, Plaintiffs' current expert disclosure designates four different economists to testify about Google's alleged market power in a proposed market for Android app distribution. Plaintiffs pointedly do not deny that their disclosures indicate that multiple experts would testify regarding the same issues, contrary to the Court's order back in February "that the plaintiffs as a group will present one expert for each common issue."  Dkt. No. 440 at 2.  Google would be pleased to submit Plaintiffs' disclosure to the Court.

Plaintiffs' suggestion that Google has never asked Plaintiffs for more specificity is simply false.  In a May 5, 2023 letter, Google objected that Plaintiffs' disclosure did not comply with the Court's orders and provided Plaintiffs with a series of questions seeking to clarify why multiple experts' testimony regarding the same issue would not overlap.  Plaintiffs never answered these

questions.  Instead, Plaintiffs responded with a May 12, 2023 letter assuring Google of "their willingness to provide a revised Expert Disclosure once the Court resolves Google's request to exclude the States and individual consumers from the November trial."  Plaintiffs now seem to have reneged on that offer, refusing to provide any revised disclosure.  This reveals that Plaintiffs' complaints about uncertainty over the trial structure were just stonewalling.  The Court should not reward that gamesmanship.  It is not fair for Plaintiffs to say that it is too late to comply with the Court's order when they assured Google in writing that they would comply with the order at a later time.

Plaintiffs are incorrect that Google has disclosed duplicative experts.  Plaintiffs have disclosed multiple experts on (1) market definition, (2) market power, (3) exclusionary conduct and anticompetitive effects and (4) computer security.  Google disclosed only one expert on each of those issues last November.  The fact that some of these experts may opine on some of the same underlying facts does not mean that they are duplicative.

With just two months before trial, Plaintiffs must comply with the Court's orders and serve a disclosure that identifies which expert will testify regarding which topic, without duplication.  Google needs that information to have a fair opportunity to prepare for trial.  Google therefore respectfully requests that the Court order Plaintiffs to provide a disclosure by September 21, 2023 that identifies which expert will testify regarding each of the following topics:  (1) market definition, (2) market and/or monopoly power, (3) competitive effects, and (4) security and technical issues.  To the extent that Plaintiffs are permitted to disclose more than one expert on each of these issues, their disclosure should explain why the experts' testimony on that issue will not overlap.

**Plaintiffs' Position**:  Plaintiffs have fully complied with the Court's orders pertaining to expert disclosures.  The Court's January 31, 2023 minute order instructed Plaintiffs to "provide Google with their revised list of experts so Google may consider which, if any, of the experts Google will attempt to exclude from trial."  MDL Dkt. 440 at 2.  The Court's February 17, 2023

minute order instructed Plaintiffs "to provide to Google on a coordinated basis their revised list of experts and each expert's area of testimony."  MDL Dkt. 456.  On April 10, 2023, Plaintiffs provided Google with the information required by the Court's orders.

Specifically, Plaintiffs served a disclosure that eliminated some areas of complete duplication and specified other areas where experts might give non-duplicative testimony on the same topic.  While Google only focuses on the broadest subject headings of Plaintiffs' disclosure, it wholly ignores the full scope of the disclosure, which, in some cases, specifies down to the level of subsections of the experts' reports the subjects on which those experts will and will not testify.  The disclosure also reveals that certain experts, *e.g.*, Saul Solomon, will not testify in the jury trial at all.

This case is complex: It involves four plaintiff groups, multiple relevant markets, multiple related conducts and multiple types of harms, causing multiple types of injuries and damages.  Plaintiffs' disclosure nevertheless proposed to eliminate whole swaths of expert opinions, totaling hundreds of pages of analysis and reflecting months of work and investment.

After serving the disclosure, Plaintiffs offered in writing and on three separate calls to give Google any additional information it needed to determine "which, if any, of the experts Google will attempt to exclude from trial."  Google never requested, and to this day has not requested, any such information.  Google then filed its *Daubert* motions, which were limited to damages issues.  MDL Dkts. 484, 487.  Google's own actions show that Plaintiffs complied with the Court's order.  As Google was obviously able to determine "which, if any, of the experts Google will attempt to exclude from trial," MDL Dkt. 440 at 2, Plaintiffs' disclosure plainly complied with, and satisfied the purpose of, the Court's minute orders.

Google's position now appears to be that Plaintiffs can have only *one* expert for each of the four broadest possible topics of its own creation, namely, "(1) market definition, (2) market and/or monopoly power, (3) competitive effects, and (4) security and technical issues."  Google's proposal is unworkable and substantively prejudicial: For each of the four topics, Google

requests that all but one Plaintiff group forfeit their experts' entire analysis with respect to that topic, without regard to unique sub-analyses or reliance on different facts or data.  If Google's position were accepted, Plaintiffs would lose the benefit of significant, non-duplicative analysis.[4]  Plaintiffs have developed their trial plan to date with their expert disclosure's limitations.  To disrupt Plaintiffs' collective trial preparation and further limit their experts' proposed testimony would be unfair and prejudicial—particularly where Google has had Plaintiffs' experts' initial reports since October 2022, examined those experts at deposition, addressed those experts' analysis in Google's own experts' reports and otherwise has everything it needs to examine the experts at trial.

Furthermore, while seeking to limit Plaintiffs, Google reserves the right to do as it pleases with respect to its own experts.  Google has disclosed *seven* experts, including three economists, each of whom have substantial, overlapping analysis that spans over 2,000 pages of reports, and two technology experts, whose reports span several hundred pages.  For example, Google effectively concedes that both Drs. Gentzkow's and Tucker's reports provide overlapping analyses on alleged alternative distribution channels to Google Play, such as web apps, streaming, other Android app stores and peer-to-peer transfer.  Further, Google does not dispute that each of Google's experts opines that Google's conduct has increased output and enhanced Android's quality; and each expert opines about Google's take rate and provides duplicative analyses in support of their position that the rate is not supracompetitive. Google's experts could not possibly testify to these thousands of pages of opinions at trial without duplication of the broad topics of market definition, market power and competitive effects.  Yet Google has refused to provide any clarification or guidance as to which of its opinions Plaintiffs should prepare to

---

[4] Further, while all Plaintiff groups expect to be at trial with the experts they disclosed to Google, there are circumstances that, at least theoretically, could change these plans (*e.g.*, a settlement, a pending *Daubert* motion, etc.).  Google's position fails to address these possibilities, which could substantially adversely affect the remaining Plaintiffs' cases.  For example, if Plaintiffs decide to rely entirely on one expert per each broad topic that Google identifies, it is not clear what would happen if the party that retained a chosen expert is no longer in the case come trial.  Aside from the expert's availability, it would raise a host of issues around the permissible scope of the expert's examination.

meet, and which they should not.  Ultimately, both sides have a limited time to present their cases, and both sides have every incentive to present the most streamlined, efficient and persuasive case they can.  Plaintiffs (like Google) have no reason to present unnecessary duplication to the jury and do not intend to do so.

Finally, Google accuses Plaintiffs of gamesmanship.  To the contrary, Google let this issue lie for months because *Google was requesting two* trials—one with states and consumers, and one with Epic and Match.  Google's draft of this filing is the first Google has said of wanting a single trial.  Far from "stonewalling" Google, Plaintiffs have already given Google a substantial narrowing of expert testimony that served the purpose of enabling Google to file motions to exclude.  Google now simply seeks an opportunistic and unfair litigation advantage by mischaracterizing the terms and ignoring the intent of this Court's orders.

The Court should therefore deny Google's request for a further narrowed disclosure, which would place needless restrictions on Plaintiffs' expert testimony and deny them the ability to fully litigate their claims.

## VII.      Deposition of Third-Party Riot Games

Google requests that the Court order that Riot's deposition take place no later than September 29, 2023, as described in detail below.

**Google's Position**:  Contrary to Epic's assertion, at no point has Google improperly tried to prevent Epic from obtaining document discovery from third-party Riot Games, Inc. ("Riot") before Riot's deposition goes forward.  In fact, any delay in Epic's ability to obtain documents from Riot is a problem of Epic's own creation.  As described below, Google has been more than accommodating in allowing Epic sufficient time to negotiate with Riot regarding the documents Epic seeks.  It is Epic that is impeding Google's ability to take a deposition, for which notice was served nearly five months ago, to test Epic's own allegations, in what appears to be an attempt to "run out the clock" before trial.

Nearly two years after the original complaints were filed in this litigation, Epic and Match amended their complaints to add allegations that Google and third-party Riot Games, Inc. ("Riot") entered into some agreement not to compete.  Google contests these claims, and plainly has the right to obtain discovery from Riot about Epic's allegation that it entered into a conspiracy with Google.  Prior to raising these amended allegations, Epic and Match did not seek any discovery from Riot.  Instead, Epic and Match's amended complaints with these new allegations were filed as of November 17, 2022 (*see* MDL ECF Nos. 378 and 380), and the Court extended the prior deposition cut-off to March 31, 2023, to allow the parties to seek testimony regarding these new allegations.  *See* MDL ECF No. 447.

Pursuant to the Court's order extending deposition discovery, Google timely served its deposition subpoena on Riot on March 22, 2023 and noticed the deposition for March 29, 2023.  Google seeks to depose Riot regarding this alleged conspiracy, or rather, the absence of any such conspiracy.  At no point between November 17, 2022 (when the amended complaints were filed) and March 31, 2023 (the extended deposition cut-off) did Epic or Match seek to take any discovery from Riot.  Instead, it was only after Google issued its deposition subpoena to Riot— and after the deadline for third-party discovery passed—did Epic attempt to seek any discovery from Riot.  Now, Epic continues to obstruct Google's efforts to depose a Riot witness about these late-added allegations, using their untimely filed document subpoena as an excuse for doing so.  First, in response to Google's deposition notice served on March 22, 2023, Epic responded that plaintiffs' counsel were "unavailable" on the originally noticed date of March 29, and requested that the deposition be rescheduled.  Epic did not mention that it planned to serve any discovery of its own on Riot.  The parties agreed that the deposition of Riot would take place after the March 31 discovery cut-off due to Epic's scheduling conflicts, as the Court's order permitted.[5]  Google promptly proposed rescheduling the Riot deposition on April 26 or April 28.  Rather than accept those dates, on April 12, Plaintiffs served a document subpoena on Riot.  This

---

[5] *See* MDL No. 447 (setting March 31, 2023 as the deadline to "complete third-party depositions re: Epic's and Match's amended complaints," "except as parties may agree otherwise for particular depositions.").

was two weeks after the March 31 deadline set by the Court for deposition discovery regarding Epic and Match's new allegations regarding Riot, and furthermore that deadline did not contemplate extending any document discovery deadlines.  After serving the belated document subpoena on Riot, Epic suggested that the parties agree to identify a date in May for the deposition to allow Riot time to respond to Plaintiffs' document subpoena.  In good faith, Google agreed to do so and proposed scheduling the deposition on May 4 or May 10.  In an abrupt about-face, instead of agreeing to proceed with Riot's deposition in May, as Epic itself had suggested, Epic then insisted that the parties should resume coordinating scheduling the deposition later while Epic and Riot met and conferred regarding Riot's response to their document subpoena.  Again, Google agreed to do so in good faith.

Riot produced documents in response to Plaintiffs' document subpoena on July 13.  Since then, Google has proposed eight dates to schedule Riot's deposition.  Epic, however, has not agreed to any of these dates, each time claiming that Riot's document production is deficient and that they are continuing to meet and confer with Riot to address those purported issues.  Google, however, has been prepared to proceed with the deposition since March.  In fact, Google most recently noticed Riot deposition for September 1, 2023.  On August 28, mere days before the deposition was to proceed, Epic informed Google that the deposition could not move forward because they had reached an "impasse" with Riot, and planned to "move promptly to compel Riot's compliance" with its subpoena.  To date, no such motion has been filed, nor has Epic provided a date certain by when they intend to file their motion to compel or move forward with a deposition.

Epic has had more than sufficient time to meet and confer with Riot regarding its document production and to file a motion to compel against Riot, if necessary.  Instead, Epic continues to frustrate Google's ability to schedule this deposition to test the very claims that Epic belatedly added to their complaints.  The parties are on the eve of trial, yet Epic refuses to allow Riot's deposition to go forward under the guise of the ongoing document negotiations with Riot,

documents that Epic never sought to obtain until after Google issued its deposition subpoena. This continued delay is prejudicial to Google; accordingly, Google respectfully requests that the Court order the following:

- An order that the deposition of Riot's witness must take place no later than September 29, 2023, and that Plaintiffs cannot object to the use of such deposition testimony by Google at trial on the basis of FRCP 32(a)(1)(A).

- To the extent that Plaintiffs file a motion to compel against Riot, but have not received a ruling regarding that motion or Riot has not completed any production in response to such a ruling by the date the deposition is to take place, the parties are ordered to proceed with the deposition no later than September 29, 2023.  If Plaintiffs subsequently receive additional documents from Riot in response to any successful motion to compel, the parties will be permitted to take a further deposition of Riot's witness that is limited in scope to the documents that were produced as a result of such motion.

- Plaintiffs may not object to Google calling a Riot witness to testify live at trial or the designation of Riot's deposition testimony at trial on the basis of timeliness.

Finally, Epic repeatedly notes that Munger, Tolles & Olson LLP ("MTO") also represents Riot.  But there is nothing improper about this, and Epic cannot show otherwise.  In fact, as Epic knows from communications dating back to 2020 with the specific MTO lawyers representing Riot, MTO's representation of Riot long predates MTO's appearance in this case—with a different team of non-overlapping lawyers.  Moreover, Google's other counsel in this litigation, Morgan, Lewis & Bockius LLP, to this day continues to handle discovery with respect to Riot.

**Epic's Position**:  For months, Google has tried to gain an improper tactical advantage by forcing Epic to take the deposition of Riot without first obtaining basic document discovery from Riot—a party to whom Google has paid millions of dollars (pursuant to an agreement Plaintiffs allege was *per se* illegal) and that is represented by Munger, Tolles & Olson LLP ("Munger"), Google's own lead counsel in this case.  Epic has worked diligently to obtain Riot's compliance

1  with a narrowly tailored document subpoena.  Despite months of negotiations, Epic still has not

2  received a meaningful production of documents responsive to its subpoena.  Nearing an impasse,

3  Epic is prepared to diligently move to compel Riot's compliance with its disclosure obligations

4  so that Epic can adequately prepare for the deposition.  But Epic cannot agree to arbitrary

5  deadlines when the timing of any production would depend on an order from another court[6] and

6  on Riot's compliance therewith.  The Court should reject Google's unreasonable demands to

7  force Epic to depose Riot before Epic receives the discovery to which it is entitled.

8          When Epic moved to amend its complaint in November 2022 to add *per se* claims related

9  to Google's Project Hug agreements, Google argued to the Court that permitting Epic to amend

10 would "wreck [the] schedule and jeopardize court deadlines" because Google would need to

11 obtain "documents and depositions from third parties to show why [Epic's per se] claims are

12 baseless."  MDL Dkt. 355 at 11.  But after the Court granted Epic leave to amend and extended

13 the discovery cut-off to address Google's concern about being prejudiced, Google failed to take

14 any third-party discovery for months.  On March 22, 2023, just nine days before the close of fact

15 discovery, Google served a deposition notice on Riot's Chief Financial Officer, Mr. Mark

16 Sottosanti, which set the deposition for just one week later, on March 29, 2023  Before that

17 point, Google had made no indication to Plaintiffs that it intended to depose any Riot witness;

18 Google had not, for example, served a document subpoena on Riot or informed Plaintiffs that it

19 was in communication with Riot regarding Mr. Sottosanti's availability for a deposition.  Instead,

20 at the eleventh-hour, Google attempted to give Plaintiffs less than a week to prepare for

21 Mr. Sottosanti's deposition.  With little time to prepare and no Riot documents about which to

22 question Mr. Sottosanti, Epic requested to reschedule Mr. Sottosanti's deposition for a later date,

23 after the March 31, 2023 fact discovery deadline, to allow Epic to subpoena and obtain document

24 discovery from Riot.  Google agreed.[7]

25

26 [6] Riot, a Los Angeles-based company, is within the Central District of California's jurisdiction.

27 [7] Until now, Google has not objected to Epic's subpoena.  In fact, on April 21, 2023, shortly after Epic served its subpoena, Google proposed a meet and confer "to discuss the appropriate allocation of deposition time ***once Riot***

28

Epic served a document subpoena on Riot on April 12, 2023.  With respect to that subpoena, Riot has been represented exclusively by Munger.  Since April, Epic has faced aggressive opposition from Riot that has, to this day, deprived Epic of relevant documents needed to meaningfully depose Riot.  Indeed, Riot did not even agree to produce *any* documents until two months after the subpoena was served, on June 14, 2023.

Nearly a month after that, after having agreed to conduct a reasonable search for documents concerning a multi-million dollar deal it had struck with Google, Riot produced just *five* unique documents, only *one* of which was an internal Riot document relating to the deal (from the day Riot signed its Project Hug agreement with Google).  To assess the adequacy of Riot's search, Epic requested the search terms that Riot had used, which turned out to be plainly insufficient.  Epic proposed a modest, narrow set of more sensible search terms, which returned a universe of 80,000 potentially relevant documents.  Riot (via Munger) has refused to review or produce these documents unless and until Epic agrees to cover Riot's costs, which Riot estimates will be between $100,000 and $125,000.  Riot also took the position that Epic should *first* take the deposition of Mr. Sottosani and only then seek additional documents from Riot.  Epic rejected both demands, but in a last attempt at resolution has agreed to substantially narrow the search terms it proposed; Epic's most recent proposal hit on only 16,500 documents.

Contrary to Google's assertion that Epic has refused to agree to any of the deposition dates Google has proposed, Epic agreed to take Mr. Sottosanti's deposition on September 1, 2023, contingent on Riot curing its production deficiencies before then.  When it became clear that Riot would not produce documents ahead of the then-scheduled September 1 deposition, Epic informed Google that the deposition could not go forward, which is the same position Epic has repeatedly taken.  Google suggests that Epic should proceed to depose Riot on September 29,

---

*has completed its document production*."  Apr. 21, 2023 Email from R. Satia to Plaintiffs (emphasis added).  Despite its failure to object then and its prior representations to the Court that it needed more time to obtain "documents" in response to Epic's amended complaint, Google now contends that the March 31, 2023 deadline for third-party depositions "did not extend document discovery deadlines".  This belated argument is untenable and should be rejected.

2023 even if Riot has not produced documents by then because Epic could then *try* to re-open the deposition if it "subsequently receive[s] additional documents from Riot." This would be inefficient and burdensome on both Riot and the parties. Further, Google does not represent that Riot would agree to reopen the deposition and given Riot's reluctance to cooperate with Epic thus far, Epic has no basis to expect Riot would agree to a second deposition.

Epic hopes to reach an agreement with Riot in the coming days. If not, Epic will have no choice but to move to compel Riot's compliance, which Epic intends to do promptly. Epic respectfully requests that the Court reject Google's unreasonable demands to force an arbitrary deposition deadline that may deny Epic the information to which it is entitled—information Epic has sought for months, that Riot (through Munger) has resisted producing for months, and that is necessary to adequately depose Riot.

**VIII.**     <u>**Chats Remedy**</u>

**Plaintiffs' Position:** Following the Chats hearing in January 2023, the Court found that "sanctions are warranted" (MDL Dkt. 469 at 1) and that "[t]he remaining question is about the remedy" (*id.* at 18-19). During the August 3, 2023 hearing, the Court instructed the Parties to propose a process to help the Court determine the appropriate remedy related to Google's destruction of Google Chats. (Aug. 3, 2023 Hr'g Tr. 70:13-71:2.)

Google asks the Court to defer deciding a remedy until all evidence is presented at trial, at which point the Court would determine the "effect any lost chats may have on Plaintiffs' ability to prove their case." In other words, Google envisions a world in which it can destroy evidence with impunity, the jury is kept in the dark about Google's fully-adjudicated intentional destruction of documents at least for the duration of trial, and Plaintiffs are given a Hobbesian choice: either they put on a strong case, in which case they lose the right to an instruction—or they *prove* to the jury that their case is weak (or at least severely weakened), by pointing to evidence they know nothing about and could know nothing about because Google intentionally destroyed it. That is not the law, nor should it be. The proportionality of a sanction should not

be based on how well Plaintiffs overcome Google's misconduct; it should be based on the egregious conduct in which Google engaged.  The Court has previously noted "plaintiffs' dilemma of trying to prove the contents of what Google has deleted."  (MDL Dkt. 429 at 19.)  This led the Court to defer its decision on the appropriate remedy until the end of fact discovery.  There is no reason to now defer it further, let alone to hide from the jury the Court's findings concerning Google's misconduct.

Further, if accepted, Google's position would prejudice Plaintiffs.  The Court has already "obtained a thorough and highly detailed record with respect to Google's Chat preservation conduct," which is supported by "substantial briefing by both sides," "including the filing of declarations and other written evidence," and "an evidentiary hearing that featured witness testimony and other evidence."  (MDL Dkt. 469 at 1, 2, 3.)  This evidence makes clear that "Google intended to subvert the discovery process, and that Chat evidence was 'lost with the intent to prevent its use in litigation' and 'with the intent to deprive another party of the information's use in the litigation.'"  (*Id.* at 18 (quoting Comm. Notes, Subdivision (e)(2)).  Indeed, the Court concluded that "intentionality manifested at every level within Google to hide the ball with respect to Chat."  (*Id.* at 17.)  Nevertheless, Google seeks to make Plaintiffs use their valuable, limited trial time—and the time of the Court and the jury—to *re-prove* facts the Court already found.[8]  This would be severely prejudicial to Plaintiffs, who have been preparing for trial under the assumption that their time will primarily be used to prove the anticompetitive harm at issue in this case (and that they will not be required to re-litigate an adjudicated issue).  Further, waiting until the end of trial to decide the appropriate remedy would deprive Plaintiffs of part of the remedy they seek: a preliminary jury instruction at the outset of trial that explains that certain internal Google Chats were deleted and therefore cannot be presented at trial.

---

[8] Google claims Plaintiffs would not have to re-prove facts and would instead have to "highlight any gaps in the record that they believe are prejudicial."  As the Court "fully appreciates" (MDL Dkt. 469 at 19), this places an undue burden on Plaintiffs, who would need to figure out precisely what Google destroyed—an impossible task.

1
2
3
4
5
6
7
8

Moreover, Google has not identified any prejudice it would suffer if the remedy were decided before trial.  Rather than "defer any briefing on the issue," as Google requests, Plaintiffs propose the following pretrial briefing schedule to advise the Court on the appropriate remedy, which will allow the Court to hear argument at the October 19, 2023 conference, if needed, and craft the appropriate remedy before trial.  This proposal is consistent with the Court's suggestion that once *fact discovery* is complete—not once *trial* is complete—"plaintiffs will be better positioned to tell the Court what might have been lost in the Chat communications."  (*Id.* at 19.)

9
10
11
12
13

| Event | Date | Page Limit |
|---|---|---|
| Plaintiffs' Opening Brief | September 21 | 25 pages |
| Google's Opposition Brief | October 5 | 25 pages |
| Plaintiffs' Reply Brief | October 12 | 15 pages |

14
15
16
17
18
19
20
21
22
23
24
25
26
27

**Google's Position:**  The Court should decide the appropriate remedy related to chats after hearing the evidence presented by the parties at trial, as is customary for jury instructions concerning the jury's consideration of particular categories of evidence.  As the Court noted in its Order, "[p]roportionality is the governing concept here," Dkt. 469, at 18, and the parties will be better positioned to assess proportionality at the close of the evidence.  The Court recognized that the Advisory Committee Notes to Rule 37 "advise courts to 'exercise caution,'" and that "'severe measures,'" such as jury instructions, "'should not be used when the information lost was relatively unimportant or lesser measures…would be sufficient to redress the loss.'"  *Id*. at 18-19 (quoting Comm. Notes, Subdivision (e)(2)).  The parties will be best positioned to brief the Court on how these principles should apply in this case once the evidence has been presented at trial.  The Court should defer any briefing on the issue until that time.

28

Contrary to Plaintiffs' contention, Google is not proposing that Plaintiffs be required to *"re-prove* facts the Court already found" (emphasis in original).  The issue here is not Plaintiffs' quantum of proof.  The issue is ensuring that the Court's factual findings are assessed in the context of the entire case so that any remedy is proportional to whatever effect any lost chats may have on Plaintiffs' ability to prove their case using the voluminous information otherwise available to them.  The parties and the Court will be better prepared to evaluate that issue after Plaintiffs have put on their proof.  Plaintiffs will have ample opportunity to put on their best case based on the enormous record they do have, and highlight any gaps in the record that they believe are prejudicial.  Plaintiffs' suggestion that the Court should instruct the jury on this issue "at the outset of trial" before the jury has heard or been instructed on any other evidence in the case is wholly disproportionate and risks an outcome this Court already determined is improper–having this antitrust case "decided on the basis of lost Chat communications."  Order at 19.  The Court will be better placed to guard against that risk by considering the proper remedy at the close of the evidence.

Dated: September 5, 2023

**BARTLIT BECK LLP**
 Karma M. Giulianelli

**KAPLAN FOX & KILSHEIMER LLP**
 Hae Sung Nam

 Respectfully submitted,

By:   /s/ *Karma M. Giulianelli*
 Karma M. Giulianelli

*Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

Dated: September 5, 2023

**PRITZKER LEVINE LLP**
 Elizabeth C. Pritzker

Respectfully submitted,

By:    /s/ Elizabeth C. Pritzker
       Elizabeth C. Pritzker

*Liaison Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

Dated: September 5, 2023

**CRAVATH, SWAINE & MOORE LLP**
  Christine Varney (pro hac vice)
  Gary A. Bornstein (pro hac vice)
  Timothy G. Cameron (pro hac vice)
  Yonatan Even (pro hac vice)
  Lauren A. Moskowitz (pro hac vice)
  Justin C. Clarke (pro hac vice)
  M. Brent Byars (pro hac vice)

**FAEGRE DRINKER BIDDLE & REATH LLP**
  Paul J. Riehle (SBN 115199)

Respectfully submitted,

By:    /s/ Yonatan Even
       Yonatan Even

*Counsel for Plaintiff Epic Games, Inc.*

Dated: September 5, 2023

**OFFICE OF THE UTAH ATTORNEY GENERAL**
  Brendan P. Glackin
  Lauren M. Weinstein

Respectfully submitted,

By:    /s/ Brendan P. Glackin
       Brendan P. Glackin

*Counsel for Utah*

Dated: September 5, 2023 **HUESTON HENNIGAN LLP**
Douglas J. Dixon
Christine Woodin
Joseph A. Reiter

Respectfully submitted,

By: */s/ Douglas J. Dixon*
Douglas J. Dixon

*Counsel for Plaintiffs Match Group, LLC et al.*

Dated: September 5, 2023 **MORGAN, LEWIS & BOCKIUS LLP**
Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Minna L. Naranjo
Rishi P. Satia

Respectfully submitted,

By:     */s/ Michelle Park Chiu*
Michelle Park Chiu

*Counsel for Defendants Google LLC et al.*

Dated: September 5, 2023 **MUNGER, TOLLES & OLSON LLP**
Glenn D. Pomerantz
Kuruvilla Olasa
Emily C. Curran-Huberty
Jonathan I. Kravis
Justin P. Raphael
Kyle W. Mach

Respectfully submitted,

By:     */s/ Glenn D. Pomerantz*
Glenn D. Pomerantz

*Counsel for Defendants Google LLC et al.*

## **E-FILING ATTESTATION**

I, Michelle Park Chiu, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*s/ Michelle Park Chiu*
Michelle Park Chiu

DB2/ 46605844.1