1  Karma M. Giulianelli (SBN 184175)
2  karma.giulianelli@bartlitbeck.com
   **BARTLIT BECK LLP**
3  1801 Wewatta St., Suite 1200
   Denver, Colorado 80202
4  Telephone: (303) 592-3100

5  Hae Sung Nam (*pro hac vice*)
6  hnam@kaplanfox.com
   **KAPLAN FOX & KILSHEIMER LLP**
7  850 Third Avenue
   New York, NY 10022
8  Telephone: (212) 687-1980

9  *Co-Lead Counsel for Consumer Plaintiffs*

10

11                    **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13                      **SAN FRANCISCO DIVISION**

14  **IN RE GOOGLE PLAY STORE**          Case No. 3:21-md-02981-JD
    **ANTITRUST LITIGATION**
15                                        **DECLARATION OF LEAD COUNSEL**
    THIS DOCUMENT RELATES TO:            **KARMA M. GIULIANELLI AND HAE**
16                                        **SUNG NAM IN SUPPORT OF**
    *In re Google Play Consumer Antitrust* **CONSUMER PLAINTIFFS' MOTION**
17  *Litigation*, Case No. 3:20-cv-05761-JD **FOR ATTORNEYS' FEES,**
                                          **REIMBURSEMENT OF LITIGATION**
18  *State of Utah et al. v. Google LLC et al.*, **EXPENSES, AND INCENTIVE**
    Case No. 3:21-cv-05227-JD            **AWARDS FOR INDIVIDUAL**
19                                        **PLAINTIFFS**

20                                        Date:  October 30, 2025
21                                        Time: 10:00 a.m.
                                          Courtroom: 11, 19th Floor
22                                        Judge: Hon. James Donato

23

24

25

26

27

28

1    We, Karma M. Giulianelli and Hae Sung Nam, declare as follows:

2    1.    I, Karma M. Giulianelli, am an attorney duly admitted to practice in the State of

3    California and before this Court. I am a partner at Bartlit Beck LLP. I submit this declaration in

4    Support of Consumer Plaintiffs' Motion for attorneys' fees, reimbursement of litigation

5    expenses, and incentive awards for individual plaintiffs. The contents of this declaration are

6    based on my personal knowledge, including my personal knowledge of the documents and work

7    cited herein. The facts set forth herein are within my personal knowledge and if called as a

8    witness, I could and would competently testify to them.

9    2.    I, Hae Sung Nam, am an attorney duly admitted to practice in the State of New

10   York and my *pro hac vice* application was approved by this Court. I am a partner at Kaplan Fox.

11   I submit this declaration in Support of Consumer Plaintiffs' Motion for attorneys' fees,

12   reimbursement of litigation expenses, and incentive awards for individual plaintiffs. The contents

13   of this declaration are based on my personal knowledge, including my personal knowledge of the

14   documents and work cited herein. The facts set forth herein are within my personal knowledge

15   and if called as a witness, I could and would competently testify to them.

16   3.    In this declaration, the term "Consumer Counsel" refers collectively to: (1) Co-

17   Lead Counsel Karma Giulianelli and her firm Bartlit Beck LLP; (2) Co-Lead Counsel Hae Sung

18   Nam and her firm Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"); (3) Liaison Counsel Elizabeth

19   Pritzker and her firm Pritzker Levine LLP; (4) Steering Committee member Nanci Nishimura

20   and her firm Cotchett, Pitre & McCarthy LLP ("Cotchett"); (5) Steering Committee member

21   Peggy Wedgworth and her firm Milberg Coleman Bryson Phillips Grossman, LLC; (6) Steering

22   Committee member George Zelcs and his firm Korein Tillery; and (7) Gregory Hansel and his

23   firm Preti, Flaherty, Beliveau & Pachios, Chartered, LLP counsel for class representative Alex

24   Iwamoto. *See In re Google Play Consumer Antitrust Litig.*, No. 20-cv-05761-JD (N.D. Cal.),

25   "Consumer" Dkt. 128 (Order re Interim Class Counsel).

26   4.    Each of the lawyers in the paragraph above have submitted separate declarations

27   attaching relevant billing and expense records for their firms. This declaration, for the

28

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

2

convenience of the court, summarizes the collective contributions of Consumer Counsel, including an overview of the procedural history of the case, the significant work performed by Consumer Counsel to prosecute the case, the steps Consumer Counsel took to ensure effective management of this complex litigation, and the work performed by the class representatives in support of the case.

5.      Consumer Counsel worked diligently for four years in a non-duplicative, cooperative fashion and have incurred $63,444,800.30 of fees (at the rates applicable at the time the fees were incurred, with no adjustment for subsequent rate increases or the time-value of money) representing over 98,200 hours of work, and $8,612,447.41 of costs. The work included taking the lead among all plaintiffs' counsel on ten depositions, leading the 30(b)(6) portion of the questioning on an additional three depositions, and asking substantive, non-duplicative, consumer-focused questioning on an additional sixteen depositions.[1] The work also included defending five consumer depositions, and leading three out of six Google expert depositions related to Plaintiffs' antitrust claims, while asking substantive, non-duplicative, consumer-focused questions on the remaining three.

6.      Furthermore, the documentary production in this case was mammoth, numbering millions of pages of documents. Consumer Plaintiffs logged 59,000 hours reviewing and coding more than 1 million documents, which accounted for most of the relevant documents produced in the case, after applying advanced review technologies that deduplicated, threaded, and excluded non-substantive documents that had been produced by Google. Consumer Counsel also filed three substantive motions and prepared for and attended numerous court hearings.

7.      Throughout the litigation, Consumer Plaintiffs coordinated extensively with the other plaintiff groups, including Epic, Match Group, Developer Plaintiffs, and the State Plaintiffs. The States and Consumer Plaintiffs subsequently entered a joint settlement with Google in October 2023, less than two months before the scheduled trial, which secured a $700 million

---

[1] Consumer Plaintiffs jointly noticed the depositions of 41 Google fact witnesses.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

recovery for consumers affected by Google's unlawful actions plus accrued interest and other injunctive relief.

## I.    PROCEDURAL HISTORY

8.    On August 16, 2020, Bartlit Beck and Korein Tillery filed the first complaint on behalf of a national class of consumers alleging violations of federal and state antitrust laws. *See Mary Carr v. Google*, No. 20-cv-05761-JD (N.D. Cal. Aug. 16, 2020), Consumer Dkt. 1. On September 10, 2020, this Court related the consumer class action and Epic case. Consumer Dkt. 29.

9.    In the ensuing months, subsequent, related consumer class action complaints were filed in the Northern District of California and the District of Columbia. A class action on behalf of developers of Android mobile apps was also subsequently filed (the "Developer Action").

10.    On November 20, 2020, this Court ordered the consolidation of the six cases filed in the Northern District of California into "*In re Google Play Consumer Antitrust Litigation*" under case number 20-cv-05761-JD (the "Consumer Action"). Consumer Dkt. 78.

11.    On December 16, 2020, this Court appointed Karma M. Guilianelli and Hae Sung Nam as co-lead Interim Class Counsel for the Consumer Action pursuant to Federal Rule of Civil Procedure 23(g)(3). Consumer Dkt. 128. In the Court's order, it further appointed Elizabeth Pritzker as Liaison Counsel; and Nanci Nishimura, Peggy Wedgworth, and George Zelcs as members of the Steering Committee. *Id.*

12.    Consumer Counsel, in conjunction with the counsel for other plaintiffs in the case at that time, served the first 203 document requests on Google on November 9, 2020.

13.    On November 10, 2020, this Court entered stipulated Orders regarding ESI discovery (Consumer Dkt. 72) and coordination of discovery (Consumer Dkt. 73), which had been negotiated by all parties, including Consumer Counsel.

14.    On November 24, 2020, the parties began to meet-and-confer on the scope of discovery. Between November 26, 2020, and May 14, 2021, the parties continued to meet-and-confer regularly on the scope of the initial document requests, as well as the custodians, search

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

4

terms, and time period that would apply to those requests. This required the parties to exchange more than 76 discovery letters. During this time, Consumer Counsel, in conjunction with counsel for other plaintiffs involved in the case at that time, also successfully moved this Court to compel the production of certain information that Google had refused to produce. *See In re: Google Play Store Antitrust Litig.*, No. 21-md-02981 (N.D. Cal.), "MDL" Dkt. 39.

15. On December 10, 2020, the Court entered the first stipulated Protective Order in this case. Consumer Dkt. 117.

16. On February 5, 2021, the Judicial Panel on Multi-District Litigation transferred to this Court the Consumer, Epic, and Developer cases. MDL Dkt. 1.

17. On March 31, 2021, Consumer Counsel, Epic, and Developer Counsel executed a common interest and confidentiality agreement (that was later amended to include all plaintiffs who filed actions in this case).

18. Moreover, during the spring of 2021, the Consumer, Epic, and Developer plaintiffs jointly served approximately 30 third-party subpoenas for documents and/or testimony.

19. On July 9, 2021, the parties filed a stipulated proposed order regarding expert discovery, which the court entered on July 15, 2021. MDL Dkt. 55.

20. On July 15, 2021, a joint Case Management Statement was filed with this Court wherein "The Parties each represent they have <u>completed substantial production of custodian documents</u> [as of June 30, 2021], although there are meet and confers underway to address additional categories of information, additional custodians, targeted 'refresh' productions, and other productions that require additional time to manage, *e.g.*, transactional data and documents subject to a non-disclosure agreement or privilege log processes." MDL Dkt. 56 at 3 (emphasis added).

21. On July 7, 2021, the State Attorneys General filed their first complaint in this matter, which was related to the pending cases, including the Consumer Action in the MDL on July 20, 2021 (the "State AGs Action"). MDL Dkt. 59. At that time, the State AGs Action sought damages for consumers of 36 States and Washington, D.C.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

5

22.     Shortly after the States' entry into the case, Consumer Counsel and the States negotiated and subsequently executed a Joint Prosecution Agreement. Attached hereto as **Exhibit 1** is a true and correct copy of the Cooperation and Joint Prosecution Agreement, entered into by Consumer Counsel and the State Attorneys General, whereby Consumer Counsel and the State Attorneys General agreed to jointly prosecute the case for the benefit of all consumers nationwide.

23.     Depositions in the case, which took many months to negotiate and schedule, began on December 2, 2021.

24.     In May 2022, the Match Group plaintiffs filed a complaint which was related to this MDL. MDL Dkt. 227.

25.     On May 25, 2022, two days before class certification motions were due, the Developer Plaintiffs announced a settlement with Google. MDL Dkt. 243.

26.     On May 26, 2022, Consumer Counsel filed a motion for class certification, which was supported by Dr. Singer's class certification export report. MDL Dkt. 251. Notably, Dr. Singer's expert report was the first time any party to this litigation had set forth a comprehensive theory and economic analysis of the case, analyzing the core conduct at issue, and assembling key documentary evidence into a narrative, drawing on evidence from over 200 Google and third-party documents.

27.     On November 28, 2022, after full briefing, an expert "hot tub" proceeding, and argument, this Court granted Consumers' motion for class certification and denied Google's motion to exclude Dr. Singer's testimony in support of class certification. MDL Dkt. 383.

28.     On February 27, 2023, the Ninth Circuit granted Google's Rule 23(f) petition to appeal the Court's class certification order. Over the following months, Consumer Counsel fully briefed the class certification appeal. Oral argument was set for September 11, 2023.

29.     On March 28, 2023, this Court issued Findings of Fact and Conclusions of Law re Chat Preservation finding that Google's conduct warranted sanctions. MDL Dkt. 469. The

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

6

Court's ruling followed a joint statement, a motion for sanctions and full briefing, a two-day evidentiary hearing, and follow-up submissions. *Id.* at 2.

30.     Beginning in April 2023, the parties fully briefed and argued motions for summary judgment, and motions to exclude expert testimony at trial. MDL Dkt. 480, 483, 484, 486, 487, 506, 508, 509, 512, 571.

31.     On August 28, 2023, the Court excluded the merits opinions of Dr. Singer and wrote that a forthcoming separate order would address Google's motion to exclude Dr. Rysman's merits opinions. MDL Dkt. 588.

32.     On September 5, 2023—two months before trial was set to begin—Consumer Counsel and the State Attorneys General, along with Google, notified this Court that a settlement in principle had been reached with respect to those cases. MDL Dkt. 596.

33.     On September 13, 2023, the Court issued an order decertifying the Consumer Class. MDL Dkt. 604.

34.     The settlement was signed October 11, 2023, and on October 12, 2023, the Court vacated all remaining pre-trial and trial dates in the consumer and state cases after reviewing the settlement agreement *in camera*. MDL Dkt. 667.

## II.     THE WORK PERFORMED BY CONSUMER COUNSEL

35.     This case proceeded on an accelerated schedule for an action of this size and complexity. In the approximately three-year period between the filing of the first consumer complaint and the announced settlement (what was a mere two months before trial), Consumer Counsel engaged in extensive fact discovery; class certification briefing and supporting expert reports; merits expert reports; merits expert discovery; two rounds of *Daubert* briefing; two expert "hot tubs"; a sanctions motion and several related hearings, including an evidentiary hearing; summary judgment briefing and argument; and significant trial preparation. Consumer Counsel directed extraordinary efforts toward litigating the case and delivered a strong result for consumers.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

7

36.     Consumer Counsel litigated this matter entirely on a contingency basis with no assurance of any payment and no outside funding. The case demanded substantial attorney, staff, and monetary resources. Though success on liability (and damages) was far from certain, throughout the prosecution of this matter, Consumer Counsel forwent other profitable work to ensure this matter was sufficiently staffed and vigorously prosecuted to the benefit of consumers.

**A.     Consumer Counsel Engaged in Substantial Case Coordination to Achieve Efficiencies.**

37.     From the beginning, Consumer Counsel worked closely with counsel for Epic and the Developer Plaintiffs (and then later counsel for Match Group and the State Attorneys General) to coordinate discovery to maximize efficiency and avoid duplicative work. These efforts took substantial time and resources from Consumer Counsel but provided considerable benefits for consumers.

38.     For example, the plaintiffs worked diligently to ensure that the various interests of the various plaintiff groups did not undermine one another while actively litigating their respective cases against Google. This required extensive coordination and compromise.

39.     Consumer Counsel worked diligently to creatively broker solutions that would both allow the case to progress in a manner consistent with consumer objectives while also allowing all plaintiffs to stand united against Google. Consumer Counsel's participation in key proceedings during the first year of litigation was critical to ensure that the interests of consumers were not overlooked by the developer plaintiffs—*e.g.*, Epic and a putative class of Android app developers.

40.     Later, when the State Attorneys General joined this litigation approximately one year in, Consumer Counsel and the State Attorneys General expanded their partnership beyond the typical common-interest agreement that was entered into by and between all plaintiff groups. Specifically, Consumer Counsel and the State Attorneys General agreed to litigate the case arm-in-arm, jointly prosecuting the action in a pathbreaking public-private partnership. The Joint Prosecution Agreement (JPA) underlying that relationship enabled Consumer Counsel and the

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

8

State Attorneys General to litigate this case more effectively and efficiently than they otherwise could, and ensured the successful resolution embodied in the parties' settlement agreement.

**B.    Consumer Counsel Zealously Litigated the Case on Behalf of Consumers.**

**1)    Offensive Document and Written Discovery.**

41.    Consumer Counsel aggressively pursued discovery from the start so that the case could proceed to trial efficiently.

42.    To lay the groundwork for discovery, and in collaboration with counsel for other plaintiffs involved in the case at that time, Consumer Counsel diligently negotiated with co-plaintiffs and Google a set of detailed protocols, including an ESI Protocol (Consumer Dkt. 72), a Coordination of Discovery Protocol (Consumer Dkt. 73), a Protective Order that was occasionally amended thereafter (Consumer Dkt. 117, 161, 223, 239, 278), a Supplemental Protective Order that was occasionally amended thereafter (Consumer Dkt. 165, 224, 277), an Expert Discovery Protocol (Consumer Dkt. 176), a Supplemental Protective Order Governing Source Code that was amended thereafter (Consumer Dkt. 267, 276), a Deposition Protocol (Consumer Dkt. 238), a Privilege Log Agreement that was not filed on the docket in this case, and a Common Interest Agreement among Plaintiffs that similarly was not filed on the docket in this case. While these protocols were all submitted to the Court in stipulated form, reaching stipulations required prolonged back-and-forth negotiation—both among the plaintiffs and with Google.

43.    Consumer Counsel, in collaboration with counsel for the other plaintiffs, also engaged in a broad discovery campaign. Consumer Counsel coordinated with the other Plaintiffs to propound over 250 document requests on Google (208 of which were served prior to the States' entry into the case) that sought documents from 40 custodians based on more than 95 search strings, 19 interrogatories (plus an additional 13 document preservation interrogatories related to Google's preservation of chats, described in more detail below), 23 requests for admission, a 30(b)(6) deposition notice that included 35 key topics, and more than 45 third-party subpoenas for documents and/or testimony (30 of which were served prior to the States' entry into the case).

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

9

44.     Each discovery request in this case was extensively negotiated, both among and between plaintiffs prior to service, and then again with Google. Google vigorously contested most of these discovery requests, requiring many hours of meet-and-confers and extensive negotiations. And despite the numerous objections raised by Google, Consumer Counsel's efforts, alongside counsel for other plaintiffs, successfully secured the broad discovery necessary to litigate this matter. Indeed, it was only after painstaking negotiations between the plaintiffs and Google over the course of more than six months at the outset of the case that the parties were able to come to ground on the primary list of document custodians whose files would be searched and the primary list of 95 search queries to be used in searching ESI for relevant evidence. As the case progressed, Consumer Counsel, together with counsel for other plaintiffs, also sought and obtained discovery from additional Google custodians, such as Ruth Porat. Consumer Counsel took a lead role in this contentious and time-consuming process.

45.     In some cases, plaintiffs, including Consumer Counsel, were forced to seek Court assistance to resolve discovery issues on which the parties had reached an impasse. For example, in the spring of 2021, plaintiffs filed discovery letters with the court that ultimately secured favorable rulings on the scope of search terms and custodial categories, the production of relevant House Judiciary Committee investigatory documents, and the production of discovery materials from *Callsome Solutions Inc. v. Google, Inc.*, Index No. 652386/2014 (N.Y. Sup.). MDL Dkt. 39.

46.     Consumer Counsel, in collaboration with counsel for the other plaintiffs, also served more than 45 third-party subpoenas for documents and/or testimony (approximately 30 of which were served prior to the States' entry into the case). Many of these parties resisted production, which required numerous hours of negotiations. As a result, plaintiffs obtained hundreds of thousands of documents from third parties. Specifically, Consumer Plaintiffs worked closely with Wiggin & Dana and Clifford Chance, counsel who handled certain key third-party discovery for Epic.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

47.     Pursuant to Consumer Counsel's efforts, Google had already produced 1.47 million documents by the time the State Attorneys General entered the case, as well as terabytes of Google transactional data. To undertake review of this considerable production, Consumer Counsel and developer plaintiffs, beginning in the winter of 2020, coordinated review through a single shared database to reduce redundant expenses, and achieve efficiencies. Consumer Counsel and developer plaintiffs jointly drafted coding manuals and protocols, onboarded the review team, and educated them on the types of relevant documents that would be key to the many facets of this case. Consumer Counsel and developer plaintiffs also developed a glossary of internal code names, projects, and terms that were shared widely among the review team and then later, those responsible for taking fact depositions. These efforts served as the basis for a joint review protocol. It also ensured Consumer Counsel and developer plaintiffs would be prepared at each stage of this fast-tracked litigation.

48.     Later, following their entry into this case, Consumer Counsel shared access to the database with State Plaintiffs including the document coding and work product to date. The protocols described above, which were created prior to the States' entry into the case, would serve as the basis for this joint review process. This ensured the State Attorneys General were ready to proceed with Google fact depositions in December 2021—a mere six-weeks after the States gained access to the database of documents.

49.     Consumer Counsel dedicated substantial resources to analyzing the millions of pages of documents and terabytes of information that Google produced. Collectively, Consumer Counsel and the States viewed more than 8.2 million pages of documents in their shared review database, logging 59,000 review hours and rating and coding more than one million documents. Consumer Counsel accounted for 78% of all pages viewed by the consumer and State Plaintiff teams, 71% of all documents rated, and 73% of total review hours.

50.     Consumer Counsel also expended significant resources developing the facts identified in the document review through the drafting of issue memorandum and summary documents. This work product was widely shared with co-plaintiffs over the course of the

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

11

litigation. Memorandum topics included: overviewing Android's billing systems; in-depth analyses of potential market entry by competitors such as mobile carriers, Amazon, Samsung, and Facebook; and summaries of Google's contracts, including its Revenue Sharing Agreements with OEMs, carriers, and large developers. These memoranda led to significant factual developments and provided a key foundation for deposition preparation, expert reports, and trial.

51.    Consumer Counsel simultaneously spent enormous time and resources identifying and negotiating the resolution of important deficiencies in Google's production, which were outlined in the more than 600 discovery letters exchanged between plaintiffs and Google during this litigation. These deficiency letters led to meet-and-confers where Google zealously advocated against additional disclosures and/or productions. Topics discussed in these letters included (but certainly were not limited to) Google's initial failures to produce Board materials, the production of missing OEM and carrier contracts, the production of relevant code-named projects, and the production of missing texts and chat messages (early efforts that were ultimately instrumental in obtaining sanctions against Google, as detailed below).

52.    During the discovery phase, Consumer Counsel also stood up a dedicated privilege team that led Consumer and State Plaintiffs' efforts to challenge Google's privilege designations. As a result of those efforts, Google re-reviewed tens of thousands of documents on its privilege logs and ultimately produced thousands of documents that it had previously improperly withheld. Consumer Counsel also successfully convinced Google to update the format of its privilege logs to disclose additional information regarding the underlying basis of the privilege claimed, facilitating further challenges to Google's privilege designations. As discussed further below, discovery of Google's privilege practices was critical to the litigation.

53.    Consumer Counsel also led efforts to require Google to identify or produce hyperlinks embedded within the document production. Pursuant to another heavily negotiated process, plaintiffs were able to identify on a weekly basis a certain number of embedded hyperlinks in Google's production for which production or identification of the hyperlinked document was sought. Google agreed to (and did) respond to each of plaintiffs' request within

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

12

one week, either by identifying the hyperlinked document in the production by bates number or otherwise producing the hyperlinked document (if not already a part of Google's existing production). This effort was critical to the litigation. In the age of cloud computing, attachments have fallen out of favor and have been replaced by hyperlinks. Thus, by requiring Google to produce or identify hyperlinked documents, plaintiffs could now establish critical context to the documents as well as identify the chain of custody (who saw what information and when).

### 2)    Defensive Document and Written Discovery.

54.    In addition to litigating this case offensively, Consumer Counsel simultaneously defended substantial written discovery propounded on the named plaintiffs represented by Consumer Counsel. Google served 45 document requests on the named Consumer Plaintiffs, 25 substantive interrogatories and 13 interrogatories concerning document preservation, and 20 requests for admission. Each of the class representatives produced substantial discovery in response to Google's discovery requests.

### 3)    Fact and 30(b)(6) Depositions.

55.    Preparation for depositions began early in the case. Consumer Counsel pressed for early depositions of Google witnesses so that the case could proceed to a trial that was initially scheduled for April 2022. Early efforts on the part of Consumer Counsel included identifying the key witnesses, obtaining documents from those witnesses, negotiating with Google on which witnesses could be deposed when, and preparing detailed deposition outlines.

56.    The deponents in this case included high-level corporate officials at Google who had responsibilities for Android and the Google Play store. In total, plaintiffs took 41 fact depositions of Google witnesses. Consumer Counsel represented Consumer Plaintiffs' interests at each and every one of these depositions.

57.    In particular, Consumer Counsel took a central role at the depositions of many of the most senior Google executives, leading the depositions of Jamie Rosenberg (Vice President of Strategy and Operations for Platforms and Ecosystems), Sameer Samat (Vice President, Product Management), Richard Miner (Co-founder Android.inc and Advisor at Google), John

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

13

Lagerling (Former Senior Director, Partnerships), Paul Bankhead (Google Play Store and Google Play Services product team lead), Donald Harrison (President, Global Partnerships and Corporate Development), Paul Gennai (Vice President of Product Management), Kirsten Rasanen (Director of Global Apps Business Development for Google Play), Christopher Li (Director and Head of Platform Growth), and Kevin Wang (Operations Consultant for Google Play)[2]; and handling a substantial portion of the substantive questioning in the depositions of Sundar Pichai (CEO), Hiroshi Lockheimer (Senior Vice President, Platforms and Ecosystems), Andy Rubin (founder of Android), Lawrence Koh (Director for Games Business Development), Paul Feng (Product Management Director for Play Monetization), Purnima Kochikar (Vice President), and Christian Cramer (Finance Director for Google Play). Preparation for those depositions involved weeks of work, including document review, drafting outlines, and coordination among the plaintiffs' group in advance to ensure topics were not duplicated and valuable questioning time of witnesses wasted.

58.     Working collaboratively with counsel for other plaintiffs, Consumer Counsel also served a 30(b)(6) notice on Google with 35 detailed topics that tested key themes of the case, including with respect to: Google's, costs, expenses, profit, and revenue from the Play Store; pricing policies and decisions; app and app update security and review processes; strategy and negotiations regarding anticompetitive agreements with OEMs and certain large app developers; and lock-in strategy. Google spread these topics over several witnesses, who Consumer Counsel deposed both in individual and in a 30(b)(6) capacity.

59.     Following depositions, Consumer Counsel regularly completed deposition summaries that were circulated among Consumer Counsel and the States, and that were subsequently used in the preparation of expert opinions.

60.     Consumer Counsel also defended all named Consumer Plaintiffs at their depositions. It required a substantial amount of time to prepare each of these witnesses.

---

[2] Of particular note, Consumer Plaintiffs led the depositions of Jamie Rosenberg and Paul Gennai, the two Google employees whose testimony was discussed at length in Epic's closing argument.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

14

4) **Expert Discovery, Class Certification and Appeal, and Summary Judgment.**

61. Over the course of this litigation, Consumer Counsel's experts provided critical support to the case. As part of class certification proceedings, Consumer Counsel submitted experts reports from a distinguished economist (Hal Singer, a managing director at Econ One, an economic consulting firm and a professor of economics at the University of Utah) and a technology expert (Douglas C. Schmidt, the Cornelius Vanderbilt Professor of Engineering in the Department of Electrical Engineering and Computer Science at Vanderbilt University and currently the Dean of the School of Computing, Data Sciences & Physics at William & Mary).

62. As part of the merits proceedings, Drs. Singer and Schmidt again submitted affirmative and reply expert reports. At the merits stage, Consumer Counsel also submitted expert reports from a forensic accounting expert (Michael H. Chase) and, together with the States, a consumer survey expert (Dr. Stanley Presser, a University of Maryland Distinguished University Professor who teaches in the Sociology Department and in the Joint Program in Survey).

63. Dr. Singer's class certification report—the first expert report filed in this matter—laid out a comprehensive theory of the case and the antitrust economics for the first time, analyzing the core conduct at issue, and assembling key documentary evidence into a narrative, drawing on evidence from over 200 Google and third-party documents. In addition to his class certification affirmative report and reply, Dr. Singer also: (1) submitted a merits affirmative report and reply; (2) sat for two depositions—one for class certification and again for the merits; and (3) participated in two hot tubs—again, one for class certification and again for the merits. Consumer Counsel assisted with the defense of those depositions and hearings, conducting numerous preparation sessions in advance.

64. Dr. Schmidt analyzed the technological aspects of Google's alleged monopolization conduct and proffered defenses. Like Dr. Singer, Dr. Schmidt submitted a class certification affirmative report and reply, and: (1) submitted a merits affirmative report and reply; and (2) sat for two depositions—one for class certification and again for the merits. Consumer Counsel defended both depositions and conducted numerous preparation sessions in advance.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

15

After Consumer Counsel served Dr. Schmidt's merits expert report, counsel for Epic asked to jointly retain Dr. Schmidt, and Consumer Counsel agreed.

65.    Mr. Chase analyzed Google's financial records to estimate Google Play's economic profits, a building block of Dr. Singer's work damages analysis. As part of that analysis, Mr. Chase submitted a merits affirmative report and reply and sat for a deposition. Consumer Counsel again defended that deposition and conducted multiple preparation sessions in advance.

66.    Dr. Presser designed a survey to estimate: (1) the proportion of U.S. Android phone users who would switch to an Apple phone in response to a 5% increase in Google Play Store prices for apps and in-app purchases; (2) the perceptions among U.S. Android phone users of two potential costs of making such a switch; and (3) the reaction of U.S. Android phone users to a warning message that may be displayed when trying to download from a website or an app store that is not preloaded on the user's phone. As part of that analysis, Dr. Presser submitted a merits affirmative report and reply and sat for a deposition. Consumer Counsel, along with the States, prepared Dr. Presser for the deposition.

67.    Dr. Marc Rysman created a variety model to quantify the value of increased utility to consumers if Google launched more apps and charged a lower service fee. MDL Dkt. 484-4, 540-1. Consumer Counsel assisted with preparing Dr. Rysman for his depositions. Consumer Counsel also took part in drafting the Opposition to Defendants' Motion to Exclude the Merits Opinions of Dr. Marc Rysman. MDL Dkt. 512. Consumer Counsel also attended Dr. Rysman's deposition and provided assistance throughout.

68.    The Court certified the Consumer Class and denied Google's motion to exclude Dr. Singer's class certification testimony on November 28, 2022. MDL Dkt. 383. Google then filed a Rule 23(f) petition seeking review of the Court's class certification order, which the Ninth Circuit granted. *See Mary Carr v. Google LLC*, No. 22-80140 (9th Cir. Feb. 27, 2023), "App." Dkt. 10. In addition to the briefing related to the 23(f) petition, Consumer Counsel fully briefed the appeal itself during the six months following the Ninth Circuit's grant of the petition and

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

16

were preparing for argument set for September 11, 2023 prior to settlement. *See Mary Carr v. Google LLC*, No. 23-15285 (9th Cir.).

69.     Google sought to use the pendency of the 23(f) appeal to stay the November 6 trial. MDL Dkt. 467. While a stay presented an opportunity to avoid significant litigation risks and expense, Consumer Counsel opposed this motion—and developed alternative trial plans, such as the proposed bifurcation of the damages proceeding—because Consumer Counsel knew that a trial delay was not in the best interests of consumers. MDL Dkt. 472.

70.     As the wide-ranging disputes played out in this Court and the 23(f) appeal before the Ninth Circuit progressed between December 2022 and March 2023, Consumer Counsel continued to vigorously litigate this case.

71.     For example, in addition to leading the briefing, document review, and in-court argument related to seeking Rule 37 sanctions against Google for its destruction of Chats, described in more detail below, Consumer Counsel: (1) opposed a second *Daubert* motion directed at Dr. Singer, who also participated in a second expert "hot tub" proceeding on August 1, 2023; (2) assisted with the narrative topics, slides, and other preparation of Dr. Rysman, who participated at the second expert "hot tub"; and (3) led the briefing and arguing the opposition to Google's motion with respect to the timeliness of Plaintiffs' claims premised on Google's early revenue share agreements with mobile carriers. MDL Dkt. 509 at 12-16.

### 5)     Sanctions Motion.

72.     Within the first six months of discovery in this case, Consumer Counsel noticed that Google's productions included no instant messages and wrote to Google demanding their production. A true and correct copy of a letter dated July 6, 2021 from Karma Giulianelli to Brian Rocca is attached to this declaration as **Exhibit 2**.

73.     After repeated follow-ups from Consumers and the plaintiff group, Google revealed in a meet and confer that it was continuing to delete Google chat messages every 24 hours.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

74.     Google Vice President Tian Lim testified at his deposition, in response to questioning from Consumer Counsel, that he used Google Chat "every day" but had never turned on his chat history. The next day, Consumer Counsel, on behalf of all plaintiffs, wrote Google a letter asking for details regarding Google's implementation of its purported Chat Retention Policy. A true and correct copy of that letter from John Byars to Brian Rocca, dated December 3, 2021, is attached to this declaration as **Exhibit 3.**

75.     With support from all plaintiffs, Consumer Counsel then pursued the issue before the Court, which led to an Order allowing plaintiffs to serve a side set of document preservation interrogatories on Google. Consumer Counsel took the lead in preparing and serving document preservation interrogatories on Google on behalf of the plaintiff group. A true and correct copy of Plaintiffs' Document Preservation Interrogatories, dated December 20, 2021, is attached to this declaration as **Exhibit 4**.

76.     Following Google's responses to these preservation interrogatories, the parties made a Court-ordered joint statement regarding Google's preservation of Instant Messages in May 2022. MDL Dkt. 230, 258. Consumer Counsel took the lead in drafting Plaintiffs' portions of the joint statement.

77.     Plaintiffs filed a motion for Rule 37 sanctions on October 13, 2022, which Consumer Counsel again took the lead in drafting. MDL Dkt. 349. One month later, the Court ordered an evidentiary hearing. MDL Dkt. 375. The hearing took place over two separate days in January 2023. MDL Dkt. 418, 446. Consumer Counsel again took a lead role in preparing for that hearing, retaining a technical expert, preparing a presentation for the Court, and presenting closing argument.

78.     When Google produced more than 100,000 chats in response to the court's order at the hearing, Consumer Counsel, working on behalf of Consumers and the States, handled the review of those documents in the joint database it shared with the State Attorneys General. Ultimately, Consumer Counsel reviewed—on a compressed time frame—more than 43,000 documents responsive to key search terms so that key documents identified could be incorporated

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

18

into a final submission to the Court a few weeks later and potentially be used at trial. MDL Dkt. 464. Chats from Margaret Lam identified during this review were later a subject of Epic's examination of Margaret Lam at trial. Throughout this process, Consumer Counsel shared memoranda of notable documents with the other plaintiffs as part of their litigation coordination. A number of those belatedly produced documents were identified as potential trial exhibits.

79.     On March 28, 2023, the Court issued its Findings of Fact and Conclusions of Law, holding that Google must be sanctioned for its destruction of chats. MDL Dkt. 469.

80.     The Court's chat opinion accelerated the momentum of the case against Google and provided additional settlement leverage to Consumer Counsel and the State Attorneys General. The sanctions ruling also provided evidence of discovery violations that public and private plaintiffs nationwide have sought to use against Google in other cases, including in the case brought by the State Attorneys General and the U.S. Department of Justice challenging Google's dominance in the search market. *See U.S. v. Google LLC*, No. 20-cv-03010 (D.C. Cir. 2024) ("Any company that puts the onus on its employees to identify and preserve relevant evidence does so at its own peril. Google avoided sanctions in this case. It may not be so lucky in the next one."); *United States v. Google LLC*, No. 1:23-cv-108, 797, 873 (E.D. Va. 2025) ("As in Google Search, the Court's decision not to sanction 'should not be understood as condoning Google's failure to preserve chat evidence.'").

81.     After the Court's sanctions ruling, Consumer Counsel continued to investigate Google's discovery misconduct. In April 2023, Consumer Counsel discovered and shared with the other plaintiffs two chats where Google in-house counsel discussed "fake privilege." A true and correct copy of a letter from Glen Summers to Glenn Pomerantz dated May 31, 2023, raising these issues is attached to this declaration as **Exhibit 5**.

82.     Prior to settlement, Consumer Counsel continued to press for discovery on Google's use of "fake privilege," including seeking depositions of Tristan Ostrowski and Emily Garber, the attorneys on the chats at issue. A true and correct copy of a letter from Glen Summers

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

to Glenn Pomerantz and Jonathan Kravis dated July 14, 2023, raising these issues is attached to this declaration as **Exhibit 6**.

### 6) Trial Preparation.

83.    Throughout summer and fall 2023, preparations for the upcoming trial with Google accelerated. Consumer Counsel devoted significant time and resources to ensuring they were trial ready. For example, Consumer Counsel prepared and hosted a mock jury exercise that was attended by all plaintiffs, and that tested the themes of the case through mock opening and closing arguments. Consumer Counsel also worked jointly with plaintiffs to prepare exhibit and witness lists, spending multiple sessions with all plaintiffs reviewing proposed exhibits that resulted in the joint trial exhibit list. Consumer Counsel also negotiated pre-trial schedules and exchanges, and undertook a variety of additional large and small tasks involved in preparing to try a complex, multi-week antitrust case.

84.    After the settlement in principle was announced on September 5 through October 12, the date the Court vacated the trial date, Consumer Counsel continued to participate in the litigation. This included trial preparation and simultaneous coordination with the Plaintiff States on the final settlement agreement and other related filings.

### 7) Mediation and Settlement.

85.    Google, the States, and Consumer Plaintiffs reached a settlement in principle on September 5, 2023. Settlement discussions began approximately 15 months earlier. Consumer Counsel had a central role in negotiations from the beginning.

86.    Three months after discussions began, the parties agreed to retain Judges Daniel Weinstein (Ret.) and Rebecca Westerfield as mediators. Consumer Counsel took the lead on drafting the mediation statement, and in preparing and giving the principal presentations to Google demonstrating the strong merits of the Consumer and State Plaintiffs' shared antitrust claims.

87.    For more than 10 months of these negotiations, Consumer Counsel and the States negotiated with Google while having the leverage of a class certified by the Court and an

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

20

overcharge theory of damages that survived *Daubert* challenges during the class certification process.

88.    As settlement talks progressed, Consumer Counsel continued to work in coordination with the States to ensure that the plaintiffs presented a unified settlement position.

89.    At the time of the Court's decision to exclude Dr. Singer's testimony and decertify the class, the State and Consumer Plaintiffs were on the eve of a settlement with Google.

90.    Although these settlements and releases are most commonly reached through certification of a settlement class, given the unique joint prosecution agreement by the States and Consumer Counsel, Consumer Counsel worked with the States and with Google to find the best path forward for achieving nationwide relief for consumers after the class was decertified.

91.    The Parties concluded that the formerly certified class and consumers nationwide were better served by the prompt entry of the remaining States as *parens patriae* into this litigation in order to join the parties' settlement agreement and provide nationwide relief. Because their consumer clients and the formerly certified class would obtain relief through the nationwide settlement, Consumer Counsel elected not to seek certification of a settlement class or to appeal.

### C.    Consumer Counsel's Fees.

92.    Consumer Counsel's fees incurred in litigating this matter reflect the substantial work outlined above to advance the claims of Consumers, put pressure on Google through litigation, and ultimately settle these claims.

93.    Pursuant to the Court's orders appointing us as Co-Lead Counsel, we have overseen and directed all legal work on behalf of the Consumer Class since December 16, 2020. As part of that oversight, we have endeavored to ensure that all legal work by Consumer Counsel was performed as capably and efficiently as possible, by attorneys with appropriate experience and skills for each task, with as little duplication of effort as possible.

94.    At our direction, each firm representing the Consumer Class has maintained contemporaneous records of the work performed in this matter, including the time, rates and narrative descriptions of the work performed by each professional. Those records follow the

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

21

requirements set out in the Court's order appointing interim class counsel. Consumer Dkt. 128 ¶ 5(a)-(d). Those records were provided to us and were reviewed by us on a regular basis throughout the litigation.

95.     As discussed above, each firm that performed work as Consumer Counsel has submitted a separate declaration certifying its fees. Attached as Annex 2 to each such declaration are summaries of the hours worked in connection with the case by attorneys and other billable professionals from their respective firms. These summaries were based on each firm's more detailed contemporaneous billing records and identify the total amount of time devoted to each category of tasks by each billable professional using codes that are consistent with those that have been used in recent class fee submissions in this Court and other federal courts within the Ninth Circuit. The summaries identify each professional's name, title, hourly rate, and a calculation of the resulting fees. Detailed time entries are also available for inspection by the Court upon request.

96.     To the best of our knowledge and belief, all work reflected in each individual firm's summary was actually performed and was reasonably necessary for the prosecution of the case. In our judgment, the requested fees are reasonable and appropriate under the circumstances.

97.     The fees submitted by Consumer Counsel in these declarations cover the period from inception of the case to October 12, 2023, which was the date that the Court vacated the Consumer and State trial date after reviewing the settlement agreement *in camera.* Consumer Dkt. 496. In the interest of efficiency, after the agreement in principle was reached on September 5, 2023, Consumer Counsel stopped all work except essential pretrial work the Court instructed the parties to continue.

98.     Even after October 12, Co-Lead Counsel and our firms have continued to assist the States with finalization and approval of the settlement, but we do not seek reimbursement for that time. Likewise, Consumer Counsel has not included any time spent on this fee motion and supporting materials in this fee request.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

22

99. In total, Consumer Counsel incurred a lodestar of $63,444,800.30, calculated using the rates applicable at the time the fees were incurred, with no adjustment for subsequent rate increases or the time-value of money.

## III. SUMMARY OF CONSUMER COUNSEL'S COMBINED EXPENSES

100. Consumer Counsel also incurred significant out-of-pocket expenses litigating this case. None of the firms received any external funding for this litigation.

101. The most significant of the out-of-pocket expenses were paid from a Litigation Fund administered by Kaplan Fox to which each of the leading firms representing the Consumer Class have contributed. As Co-Lead Counsel, we directed expenditures from the fund and coordinated Consumer Counsel's contributions to the fund. The most significant expenses paid out of the fund were expert witness fees, data hosting costs, fees for jury consultants and the mediators, fees for deposition hosting and transcriptions, along with other miscellaneous fees. The costs paid from Consumer Counsel's Litigation Fund are detailed in the separate declaration of Hae Sung Nam.

102. In addition, each firm incurred additional expenses that were paid by the individual firms and not from the Litigation Fund. Such expenses include costs of travel, legal research technology, and other minor expenses such as printing and court costs. Travel expenses complied with the Court's order appointing interim class counsel. Consumer Dkt. 128 ¶ 5(e)-(f). Those costs are detailed in each firm's individual declaration.

103. To the best of our knowledge and belief, all the out-of-pocket costs reflected in each firm's declaration were actually incurred and were reasonably necessary for the prosecution of the case. In our judgment, the costs incurred were reasonable and appropriate under the circumstances.

104. In total, Consumer Counsel incurred costs of $8,612,447.41. Consumer Counsel began incurring these out-of-pocket costs in 2020 and have not been reimbursed to date. Consumer Counsel is not seeking interest on these costs. The full details supporting these costs are contained in each firm's individual declaration.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

23

## IV.    CLASS REPRESENTATIVE SERVICE AWARDS

105.    The Class Representatives in this litigation—namely, Mary Carr, Daniel Egerter, Zachary Palmer, Serina Moglia, Matthew Atkinson, and Alex Iwamoto—were actively involved throughout the litigation in this case.

106.    Plaintiffs request service fee awards for these class representatives in the amount of $5,000 each ($30,000 in total).

107.    In this case, the $5,000 service awards are well deserved. The class representatives are Android device users who made covered purchases on Google Play and, therefore, were negatively impacted (financially) by Google's alleged misconduct.

108.    These individuals took a significant risk by bringing an action in their name against one of the largest corporations in the world. As the operator of both Android and its largest app store, Google wields enormous power over how consumers use their mobile devices, including interacting with apps, and has access to a significant amount of consumer data. Standing up to serve as a class representative in this matter took courage. The settlement, and the benefits it secured, could not have been achieved without the efforts of these class representatives.

109.    Each class representative devoted substantial time to this case. Google served 45 document requests on each class representative, resulting in the production of pages of responsive, non-privileged documents.

110.    Google also served 25 substantive interrogatories and 13 document preservation interrogatories on each class representative.

111.    In addition, Google served 20 requests for admission on each class representative.

112.    Moreover, each class representative was deposed in their individual capacity which required spending substantial time with Consumer Counsel preparing for those depositions.

113.    The class representatives also provided valuable input throughout the case, including by reviewing pleadings.

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

24

114.   It is our understanding that a fee award of this size in a case of this magnitude would be in line with the typical fee award in this District as the purpose of such awards is to encourage plaintiffs to undertake the responsibilities and risks of representing the classes and to recognize the time and effort spent in the case. Indeed, the large recovery settlement, and the benefits it provides to all consumers, were brought about through the service of these class representatives.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 12th day of September 2025 in Denver, Colorado (for Ms. Giulianelli) and in New York, New York (for Ms. Nam).

*/s/ Karma M. Giulianelli*
Karma M. Giulianelli

*/s/ Hae Sung Name*
Hae Sung Nam

LEAD COUNSEL GIULIANELLI AND NAM DECLARATION IN SUPPORT OF
CONSUMER PLAINTIFFS' FEE MOTION
Case Nos. 3:21-md-02981-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD

25